IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | HEARING REQUESTED |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO COMPEL AND FOR A PROTECTIVE ORDER

This motion is brought by all Defendants, Electricité de France, S.A. ("EDF"), Electricité De France International North America, Inc. ("EDFINA"), and Christian Nadal ("Nadal"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 26(c), to request the Court's assistance. This motion is necessary because Plaintiff's counsel ignored Defendants' repeated efforts to meet and confer over important issues relating to deposition discovery and, instead, acted unilaterally to short-circuit negotiations by noticing multiple depositions in a manner inconsistent with the parties' prior agreements and the reasonable needs of the Defendants and stating in effect that she will not negotiate further. As a result, Defendants must now request the Court's assistance in scheduling depositions to: (1) provide the three defendants with adequate time to depose Plaintiff Catherine Gaujacq; (2) provide Plaintiff with a comparable opportunity to conduct the deposition of Defendant Nadal, while at the same time coordinating his roles as an individual defendant and a 30(b)(6) representative of the corporate defendants; and (3) provide the French corporate defendant EDF with

additional time to supply a designee or designees pursuant to Plaintiff's Rule 30(b)(6) notice.

For the reasons stated more fully in Defendants' Memorandum in Support of their Motion, submitted contemporaneously herewith and incorporated herein by reference, the Court should grant Defendants the relief they seek.

Defendants request an oral hearing on this matter at the Court's earliest convenience.

Dated:  December 30, 2005

Respectfully Submitted,

Laura B. Hoguet
D.C. Bar No. 200915
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY  10016
(212)689-8808

*Counsel for Defendants Electricité de France, S.A. and Electricité de France International North America, Inc.*

Ronald S. Cooper
D.C. Bar No. 149799
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*

2

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(m), counsel for Defendants have made repeated good faith attempts to confer with Plaintiff to resolve the issues related to deposition scheduling and believe there is an impasse requiring the Court's intervention at this time.

At the time the parties filed their joint report to the Court pursuant to LCvR 16.3(d), and for some time thereafter, the parties appeared to be making progress on the subject of deposition scheduling. As reflected in their joint report, the parties discussed attempting to arrive at stipulations respecting translations and translators and agreed to work together to attempt to resolve issues that might arise because of the location of and languages spoken by the witnesses and parties (defendant EDF and many of the potential witnesses identified by Plaintiff are located in France).

Regarding deposition discovery, the parties agreed to a limit of 10 depositions for each party and to the reasonable extension of the presumptive seven-hour limit for such depositions where translation is required. Additionally, the parties recognized that they might need more than 7 hours for certain of the depositions and agreed to work in good faith toward an agreement on such expanded time limits. Lastly, the parties agreed to work in good faith with regard to the scheduling of foreign depositions to attempt to minimize the cost and inconvenience to the parties and counsel.

Following their initial report to the Court, the parties appeared to make some progress on tentative arrangements relating to these issues. However, disagreements arose, ultimately leading counsel for Plaintiff (1) to retrench and refuse to schedule

depositions beyond the presumptive limits in the rules (as the parties initially contemplated and as Defendants believe they reasonably need); and (2) to unilaterally notice depositions on what Defendants believe to be an unworkable schedule.

Plaintiff's counsel was, without explanation, unresponsive to Defendants' attempts to schedule a time to meet and confer on these matters during the two weeks preceding the Christmas holiday.[1]  Instead, counsel for Plaintiff waited until the evening of December 21 -- the evening of her departure for an extended vacation through January 3 -- to inform Defendants that she would be unavailable to confer further until at least January 3, 2006.  Additionally, the positions taken in her December 21 letters to counsel for the defendants, and the various deposition notices transmitted therewith, leave the parties at an impasse on the several important matters that are the subject of this motion.

Given the intransigence of Plaintiff's counsel on issues of deposition scheduling and duration, the proximity of Plaintiff's unilaterally noticed January deposition dates, and Plaintiff's counsel's failure to respond to defense counsels' requests to meet and confer before leaving on an extended vacation, Defendants believe that they have met their obligation to confer in good faith.  They must now bring the matter to the Court's

---

[1]  Defendants' counsel contacted counsel for Plaintiff by letter dated December 15, 2005, requesting a conference call for December 19, 2005.  Plaintiff's counsel responded by e-mail on December 19, 2005, indicating that she was not available on that date but failing to propose another time to meet and confer.  Later in the day on December 19, counsel for Defendants sent a second letter to Plaintiff's counsel, by email and facsimile, explaining that because the January 19 and 20 dates proposed for Plaintiff deposition were quickly approaching, time was of the essence and asking that Plaintiff's counsel make herself available on either December 20 or 21, 2005 to confer about these issues. Plaintiff's counsel did not reply to this request until 5:17 p.m. on the evening of December 21, at which point she sent a letter via e-mail informing counsel that she would be unavailable until at least January 3, 2006.

4

attention to protect the interests of their clients in the face of Plaintiff's unilateral decision

to notice depositions while these scheduling disputes between them remain unresolved.

Dated:  December 30, 2005

_____
Laura B. Hogue

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL AND FOR A PROTECTIVE ORDER

Defendants, Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal") submit the following Memorandum in Support of their Motion To Compel and for A Protective Order.    This motion is necessary because Plaintiff's counsel ignored Defendants' repeated efforts to meet and confer over important issues relating to deposition discovery and, instead, acted unilaterally to preempt further negotiations by noticing multiple depositions in a manner inconsistent with the parties' prior agreements and the reasonable needs of the Defendants.

As a result, the three defendants now seek an order granting them additional time to conduct Plaintiff's deposition and limiting the timing, scope and duration of the depositions noticed by Plaintiff.    Resolution of these issues is necessary prior to the Defendants' deposition of Plaintiff.

Defendants request an oral hearing on this Motion at the Court's earliest convenience.

## RELEVANT BACKGROUND

This action is an employment discrimination suit in which Plaintiff has filed a 60-page Complaint, alleging twelve different theories of recovery and hundreds of millions of dollars in damages. As a consequence of the breadth and magnitude of Plaintiff's claims, the Defendants, quite early in the litigation, stated their need to exceed the presumptive time limit in deposing Plaintiff. Indeed, as reflected in their joint report to the Court pursuant to LCvR 16.3(d), the parties discussed attempting to arrive at stipulations respecting translations and translators and agreed to work together to attempt to resolve issues that might arise because of the location of and languages spoken by the witnesses and parties (defendant EDF and many of the potential witnesses identified by Plaintiff are located in France).

The parties agreed to the reasonable extension of the presumptive seven-hour limit for such depositions where translation is required. The parties also expressly recognized in their joint report that they might otherwise require more than 7 hours for certain depositions and agreed to work in good faith toward an agreement on such expanded time limits. Lastly, the parties agreed to work in good faith with regard to the scheduling of foreign depositions to attempt to minimize the cost and inconvenience to the parties and counsel.

### Deposition of the Plaintiff

Following their initial report to the Court, the parties agreed that Plaintiff's deposition would be taken first, with the deposition of the individual defendant, Nadal, and the designees of the corporate defendants to follow reasonably promptly thereafter.

2

Defendants advised Plaintiff's counsel that they needed two to three days for the deposition of Plaintiff. Counsel for Plaintiff responded with proposals for two different two-day periods in January (January 12 and 13 or January 19 and 20). *See* 12/7/05 email from counsel for Plaintiff (proposing dates), attached as Ex. A. Defendants promptly communicated their availability to take Plaintiff's deposition on January 19 and 20, noting, however, their anticipation that Defendants might ultimately require up to 3 days to complete Plaintiff's deposition. *See* 12/9/05 email to Plaintiff's counsel (communicating availability of defense counsel on January 19 and 20, 2006), attached as Ex. B.

It was at this point that the parties' disagreements came to the fore. In responding to Defendants' email regarding the suitability of January 19 and 20 for Plaintiff's deposition, Plaintiff's counsel stated that in locking in January 19 and 20 for her client's deposition, she intended to reserve to herself the decision of whether to actually make Plaintiff available for *any* period beyond seven hours. *See* 12/12/05 email from Plaintiff's counsel, attached as Ex. C. This ran counter to what Defendants understood to be the parties' agreement that Plaintiff's deposition would proceed for at least two days. In the same email, Plaintiff's counsel also communicated her position that if Plaintiff's deposition could not be concluded over the two-day period of January 19 and 20, then Plaintiff's deposition would not be completed until *after* the depositions of each of the defendants. *Id.* This aspect of Plaintiff's counsel's response thus ran contrary to the parties' agreement that Plaintiff's deposition be taken (*i.e.*, completed in Defendants' understanding) prior to commencing the depositions of the three defendants.

Consequently, on December 15, counsel for defendants EDF and EDFINA again wrote to Plaintiff's counsel, covering several issues relevant to this Motion as well as others. As regards the issue of the scheduling and length of Plaintiff's deposition, Defendants first restated their collective need for between two and three seven-hour days (assuming Plaintiff will testify in English). *See* December 15, 2005 letter to Plaintiff's

counsel at 2, attached as Ex. D.    Second, in an effort to resolve any concern about the
potential open-endedness of Plaintiff's deposition, and to accommodate Plaintiff's stated
difficulty in being away from her new job, Defendants proposed to limit Plaintiff's
deposition to two ten-hour days.   *Id.*   Third, the Defendants highlighted the inconsistency
of Plaintiff's position in agreeing to schedule two days while simultaneously reserving
the right to deny defendants a second day of questioning.   *Id.*   Lastly, Defendants sought
confirmation that Plaintiff would be available for questioning on both January 19 and 20
and that Defendants reserved the right to schedule a third seven-hour day (unless the
parties could agree to two ten-hour days).   *Id.*

## Depositions of Defendants

As regards the other issues that are the subject of this Motion -- the scheduling of
the depositions of individual defendant Nadal and the Rule 30(b)(6) depositions of the
two corporate defendants -- the same December 15 letter (Ex. D) informed Plaintiff's
counsel of the following.   First, with respect to scheduling the 30(b)(6) deposition of
EDF, defendants observed that they would first need to know the topics on which
Plaintiff sought testimony and therefore asked Plaintiff to serve the notice to facilitate
such scheduling discussions.   *See id.* at 3.   Second, with respect to scheduling the
deposition of individual defendant Nadal, Defendants shared their view that the
appropriate length of his deposition would be affected by whether Plaintiff also seeks
Rule 30(b)(6) testimony from the corporate defendant of which defendant Nadal serves as
president (i.e., EDFINA).   *See id.*   Thus, in order to address Plaintiff's request to schedule
the deposition of individual defendant Nadal without subjecting him to two separate
depositions, Defendants requested that Plaintiff either serve her Rule 30(b)(6) notice of
defendant EDFINA or confirm that she would not be serving such a notice.   *Id.*   In
concluding this letter, Defendants expressly communicated their desire to confer about
these discovery disputes under Local Civil Rule 7(m) and asked Plaintiff's counsel to
confirm her availability for a time certain on the following Monday (December 19).   *Id.*

Rather than providing Defendants with the requested information and either agreeing on the proposed time to confer or proposing another, counsel for Plaintiff took a very large step backward in the meet and confer process, thereby precipitating the present impasse and requiring intervention by the Court. First, counsel for Plaintiff rescinded her earlier agreement to schedule Plaintiff's deposition on Thursday and Friday, January 19 and 20. Instead, counsel purported to limit Plaintiff's deposition to a single, seven-hour day and unilaterally selected the Friday date from among the two the parties had been discussing in a transparent bid to limit artificially the parties' ability to continue the deposition on a consecutive business day. *See* December 19 email from Plaintiff's counsel, attached as Ex. E.

Second, Plaintiff's counsel demanded a single date for each of the depositions of Nadal and the two corporate defendants. Moreover, Plaintiff's counsel insisted: (1) that Nadal be made available during the week immediately following the Friday date selected by Plaintiff's counsel for Plaintiff's deposition; and (2) that the Rule 30(b)(6) depositions of the corporate defendants be scheduled for the same week as individual defendant Nadal's, or the following week at the latest. *Id*. This demand was made without any regard for Defendants' previously articulated interest in identifying and reducing unfair overlap in depositions of individual defendant Nadal and corporate defendant EDFINA. It was also made with complete disregard for the availability of corporate designees on such topics as Plaintiff's counsel might ultimately select.

In a final effort to avoid having to bring deposition disputes to the Court's attention, counsel for defendants wrote to Plaintiff's counsel on December 19. *See* 12/19/05 letter to Plaintiff's counsel, attached as Ex. F. As here relevant, this letter first explained Defendants' reasons why additional time is needed to complete Plaintiff's deposition, as well as Defendants' need to know in advance how much time will be available to them in order to be able to plan their questioning and to allocate time among counsel for the various defendants. *Id*. at 3. Second, with respect to the scheduling of

5

Defendant Nadal's deposition, Defendants advised that no problem was anticipated scheduling his deposition within two weeks of the completion of Plaintiff's deposition. *Id.* However, the positions of Plaintiff's counsel regarding the scheduling of Plaintiff's deposition, as well as incomplete discovery responses from Plaintiff, were preventing Defendants from knowing when Plaintiff's deposition might be expected to be completed and thus interfered with Defendants' ability to propose a date certain for Nadal after the completion of Plaintiff's deposition. *Id.*

Similarly, Defendants advised that they were not in a position to commit to the availability of unknown corporate designees over unknown topics and that, as with the deposition of Defendant Nadal, the scheduling of any Rule 30(b)(6) depositions needed to come after scheduling for the completion of Plaintiff's deposition, consistent with the parties' agreement about the relative timing of this discovery. Once again, in this last of Defendants' letters to Plaintiff's counsel before filing this motion, Defendants asked for counsel's available times to meet and confer on these issues -- this time on either Tuesday or Wednesday of the week before Christmas (or December 20 or 21). *Id.*

And once again, this express request -- sent both by email and facsimile -- was ignored. Rather than speaking with Defendants as requested, Plaintiff's counsel remained silent until after the close of business on December 21. Then, just before departing for a vacation that would leave her unavailable to confer about Defendants' concerns until January 3, 2006, counsel for Plaintiff let fly a barrage of letters and supplemental pleadings. These included deposition notices for all defendants, which notices bore dates well outside the parameters of any that Defendants had indicated might work. *See* 12/21/05 letter from Plaintiff's counsel to counsel for Defendant Nadal, and the attached notice of Nadal's deposition, together attached hereto as Ex. G, and 12/21/05 letter from Plaintiff's counsel to counsel for EDF and EDFINA, attached hereto as Exhibit H.

In her cover letter to counsel for Defendant Nadal transmitting the deposition notice, Plaintiff's counsel recited that she had unilaterally chosen January 24 for the deposition of Defendant Nadal. Ex. G at 1. While Plaintiff's counsel did offer to move the noticed date if the particular day she selected were inconvenient, she nevertheless stated that such a change would only be made "within a few days" of the date she had selected. *Id.*

In similarly preemptive fashion, counsel for Plaintiff issued: (1) a notice for the deposition of corporate defendant EDFINA for January 26; and (2) a notice purporting to require defendant EDF – the French corporate defendant headquartered in Paris -- to appear in the Reston, Virginia offices of Plaintiff's counsel for a deposition on January 31, 2006. *See* deposition notices of EDF and EDFINA attached at Ex. I hereto. Plaintiff's counsel was as intransigent as to these deposition dates as she was with respect to the date for the Nadal deposition, stating that she would allow date changes only within a few days of the noticed dates.

Plaintiff's counsel has thus unilaterally dictated in her own favor all of the scheduling issues that Defendants had been attempting to meet and confer about and has stated her intransigence in the matter. Rather than effectively resolving the parties' scheduling disputes by taking such unilateral actions, Plaintiff has succeeded only in imbuing disputed dates with a measure of compulsory status, and Defendants must now raise these matters with the Court for their own protection. Defendants regret that this is necessary, but Plaintiff's unilateral reversion to "the Rules," combined with her stated intention not to yield and her refusal to negotiate, leave us no choice but to seek the Court's assistance.

## ARGUMENT

### I.   Defendants Should Be Afforded a Full and Fair Opportunity to Conduct Plaintiff's Deposition.

Plaintiff is a key witness in this case and the author of a Complaint lodged against three distinct defendants represented by two sets of counsel. Plaintiff has raised claims for damages totaling hundreds of millions of dollars, and she has put at issue factual allegations spanning some 354 paragraphs in her Complaint. Additionally, the case concerns a number of documents that are written in French, which will likely make Plaintiff's deposition more cumbersome than usual. Accordingly, the Defendants need at least two seven-hour days to conduct a full and fair deposition, with the usual option to re-apply to the Court for additional time should developments at deposition warrant doing so.[1]

According to Federal Rule of Civil Procedure 30(d), "the court must allow additional time [for a deposition] consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." The Advisory Committee comments accompanying Rule 30 offer the following guidance:

> …courts asked to order an extension -- might consider a variety of factors. For example, if the witness needs an interpreter, that may prolong the examination. If the examination will cover events occurring over a long period of time, that may justify allowing additional time…. In multi-party cases, the need for each party to examine the witness may warrant additional time….

Id.

---

[1]   Plaintiff's counsel has informed the Defendants that her client's ability to be absent from her new job is quite limited. Accordingly, Defendants are not confident of cooperation in the scheduling process and request the Court's assistance in obtaining consecutive dates for Plaintiff's deposition.

Many of the reasons listed in the Advisory Committee's notes are applicable to this case and warrant the Court's granting of an enlargement of time. First, Plaintiff, whose native language is French, has not yet confirmed whether her deposition will be held through an interpreter, which would itself prolong the examination. Even if Plaintiff testifies in English, the majority of the documents in this case are written in French, raising the possibility that issues of translation may need to be addressed as the deposition proceeds.

Second, Plaintiff herself has put at issue 354 separate paragraphs of factual allegations, under twelve different legal theories, against varying combinations of defendants. And she seeks to expose Defendants to a trial seeking judgments of many millions of dollars. Defendants must be given the opportunity to examine the Plaintiff fully as to each of her theories and each of her 354 paragraphs of factual allegations.

Finally, this case involves several defendants represented by two different law firms. While there is certainly a degree of overlap that will permit coordination to reduce duplicative questioning, there are also unique factual and legal issues which make a "one size fits all" deposition impossible. For example, of the 12 counts in the Complaint, only four apply to all three of the defendants. Additionally, where the corporate defendants and the individual defendant are represented by two different firms, each should be permitted a reasonable opportunity to examine Plaintiff.

In sum, defendants cannot fully and fairly complete Plaintiff's deposition in seven hours. Nor is it reasonable to suggest (as has counsel for Plaintiff) that the parties complete a single day of Plaintiff's deposition and then take up the issue of whether more time is necessary *in the estimation of Plaintiff's counsel*. Only if the Defendants know in

9

advance how much time they have available to them can they reasonably make critical decisions about the scope and depth of questioning and the fair allocation of time among defense counsel.

For such a critical deposition, Defendants should be able to count on having no less than two full days.

**II.     The Court Should Require Plaintiff To Coordinate the Depositions of Individual Defendant Nadal and the Corporate Defendants for Whom Nadal Will Also Speak.**

In this gender harassment case, it is not possible to separate the knowledge of Defendant Nadal in his personal capacity and the knowledge of the two corporate defendants concerning events in which Nadal participated. Plaintiff's case against all three defendants is predicated principally on the alleged actions of Defendant Nadal during the period in which Nadal succeeded to the position once occupied by the Plaintiff – Délégué Général of EDF to North America tasked with serving as President of EDFINA. As President of EDFINA, Nadal made decisions and otherwise acted on behalf of EDFINA during the period at issue. With respect to EDFINA, it is really only Nadal who can provide most of the facts sought by Plaintiff from EDFINA, and Nadal will be EDFINA's Rule 30(b)(6) designee for matters appropriately requested of EDFINA.

EDF, the French corporate defendant, is the entity that employed Gaujacq and that currently employs Nadal as its Délégué Général to North America tasked with serving as EDFINA's President. EDFINA is an indirect wholly owned subsidiary of EDF. The topics as to which Plaintiff seeks Rule 30(b)(6) testimony are identical for EDF and EDFINA. See Ex. I hereto. EDF will necessarily designate Nadal as to all topics

appropriately requested of EDF concerning Nadal's decisions and actions during this period.

From early in the parties' discussions of a deposition schedule, counsel for the Defendants have recognized the potential for unfair, cumulative and repetitive deposition questioning of Mr. Nadal in both his personal and representative capacities. For example, in discussing the issue of deposition scheduling in a letter to Plaintiff's counsel, defense counsel observed:

> We cannot schedule the deposition of Mr. Nadal until we know whether you intend to seek a Rule 30(b)(6) deposition of EDFINA and, if so, the scope thereof because of the possibility that Mr. Nadal would be the corporate designee for any such deposition of EDFINA. It would be unacceptable to subject him to two separate depositions.

Ex. D at p. 3 (12/15/05 Letter to Plaintiff's Counsel).

Based on the Rule 30(b)(6) notices recently served on corporate defendants EDFINA and EDF, it is now clear that Plaintiff's counsel intends to re-plow much of the same ground with Nadal in his capacity as representative of EDFINA and EDF as she plans to cover with Nadal in his personal deposition presently noticed for two days earlier. *See generally* Rule 30(b)(6) deposition notices of EDFINA and EDF, Ex. I hereto.

The deposition notices for the two corporate defendants are identical, so a review of one will serve to highlight issues common to both. As set out below in detail, the Rule 30(b)(6) notices for EDF and EDFINA seek testimony on many topics as to which only Nadal can reasonably be expected to respond on behalf of the two corporations. For example, many topics in the EDFINA notice call for testimony concerning EDFINA's reasons for taking certain actions during the period in which Nadal was Plaintiff's only

superior at EDFINA and, as President of that small company, was EDFINA's principal actor. Alternatively, topics in the notice implicate matters as to which Nadal, as the current President of EDFINA, is otherwise the logical spokesperson. Taken verbatim from the EDFINA notice, these topics include:

- The decision to revoke Ms. Gaujacq's powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses on behalf of EDFINA [Topic 1(d)];

- The decision to change the locks on the company book closet where the corporate books were kept [Topic 1(e)];

- The scope of Ms. Gaujacq's authority and changes in that authority [Topic 3(a)];

- Ms. Gaujacq's employment responsibilities and performance [Topic 3(b)];

- Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time [Topic 3(c)];

- Any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq [Topic 3(d)];

- Any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group...about a lack of information from Ms. Gaujacq [Topic 3(f)];

- Any contention by EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory... [Topic 3(g)];

- Any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed [Topic 3(h)];

- Any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses... [Topic 3(i)];

- Any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home. [Topic 3(j)];

- The audit report and recommendations [Topic 9(b)];

- Any findings or conclusions of the audit... [Topic 9(c)];

- EDFINA's financial information... [Topic 10];

- Relationship between EDFINA and EDF... [Topic 11];

- Ms. Gaujacq's position and responsibilities related to the NuStart project both while she was president of EDFINA and after Mr. Nadal became president of EDFINA [Topic 12(b)];

- Details of George Serviere's succession as...representative to NuStart in summer 2004... [Topic 12(c)]; and

- The decision to deny Mike Slavitt [a CPA doing work for EDFINA] access to the EDFINA books and the decision to terminate Mike Slavitt, including the reasons for his termination [Topic 17].

Still other topics directly implicate Nadal as the alleged actor:

- All instructions and/or demands given by Mr. Nadal to Ms. Gaujacq and her response to such instruction, including: (a) the instruction of Mr. Nadal for Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and (b) the demand that Ms. Gaujacq provide Mr. Nadal with all of her business and company contacts. [Topic 4];

- The compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present [Topic 8(b)]; and

- Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present [Topic 14]].

*See* EDF and EDFINA deposition notices, Ex. I hereto.

As this survey reveals, there will be substantial cumulative and duplicative questioning of defendant Nadal, acting in both his personal and representative capacities, unless the Court acts to afford Defendants some protection.

Rule 26(b)(2) recognizes that the generally applicable rules may require modification to protect against just such unfairness and duplication:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative....

13

Given the apparent and unavoidable overlap in subject matters to be covered in the depositions of Mr. Nadal in his personal and representative capacities, Defendants ask the Court to exercise its discretion to limit all testimony to be provided by Defendant Nadal, whether in his individual capacity or as corporate designee over certain issues for EDFINA and EDF, to two consecutive seven-hour days. Defendants' proposed order contemplates that Plaintiff will have at least seven days' advance notice of the topics over which Mr. Nadal will speak for the corporate defendants.

The relief Defendants seek should not pose a substantial burden on the other side, for Plaintiff has already indicated her belief that she will be able to accomplish her discovery goals in a single day of questioning of Nadal and an additional single day of questioning for an EDFINA designee. *See* 12/19/2005 email from Plaintiff's counsel, attached as Ex. E (stating, subject to the usual right of any party to approach the Court for additional time, "I would like to take Mr. Nadal's deposition the following week for up to the limit of 7 hours, and the corporate designees' deposition (assume both entities) either in the same week, or the following week, also within the 7 hours limit."). Moreover, the dates unilaterally selected by Plaintiff's counsel for completing the depositions of Nadal and EDFINA are only two days apart (January 24 and January 26, respectively), and Plaintiff has slated EDF's deposition for January 31. All of this suggests that Plaintiff's counsel could accomplish whatever she needs to with Nadal, in both his personal and representative capacities, in the same deposition over two days.

In conclusion, Defendants' requiring Plaintiff to complete the depositions of Defendant Nadal in both his personal and representative capacities over two consecutive

days poses no significant burden in relation to the unfairly duplicative and cumulative questioning it will undoubtedly avoid.

**III.    Given the Scope of the Notice and the Location of EDF Witnesses in France, the Court Should Quash the Present Rule 30(b)(6) Notice of EDF.**

EDF is a French corporation headquartered in Paris. Except as to matters that may fall peculiarly within the knowledge of Nadal, any potential Rule 30(b)(6) designee of EDF on most of the topics noticed by Plaintiff will work and reside in France. Additionally, as set out above, Plaintiff's counsel has stated that the date she has unilaterally selected for such a deposition -- January 31, 2006 -- is not subject to change by more than a few days. See Ex. H hereto.

Plaintiff's Rule 30(b)(6) notices were served too late to enable any consultation with EDF prior to the extensive end-of-year holiday in France. The EDF personnel needed to consult about the staffing and designation of a corporate witness for testimony on topics sought by Plaintiff are not available until mid-January due to the extended French holiday. Once the EDF designee (or designees) can be identified, counsel for EDF will then need to consult them concerning their availability to participate in the deposition Plaintiff seeks. Then it can be determined whether the deposition must proceed in France or whether it can proceed in the United States and, if so, at what location.

Given that Plaintiff's counsel committed to work in good faith with counsel for the Defendants on the scheduling of foreign depositions, and given further that Plaintiff's notice improperly selects her own counsel's office as the site of this deposition of a foreign corporation without the agreement of EDF's counsel, EDF requests that the pending notice be quashed and that Plaintiff be ordered to cooperate reasonably in

scheduling the date and place of the deposition of EDF, to include the availability of counsel and corporate designees.

## CONCLUSION

For the reasons above, Defendants request that the Court enter an Order (a) compelling Plaintiff's attendance at a deposition over two consecutive days (subject to the continuing right of either side to request further modification should developments in the deposition warrant);   (b) limiting the scope and duration of Defendant Nadal's deposition (whether in his capacity as an individual defendant or corporate designee) to two days, to be scheduled within two weeks of the completion of Plaintiff's deposition; and (c) quashing Plaintiff's pending Rule 30(b)(6) deposition notice to EDF, with direction that Plaintiff cooperate reasonably in the scheduling a future deposition of EDF.

Dated:  December 30, 2005

Respectfully Submitted,

Laura B. Hoguet, D.C. Bar No. 200915
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY  10016
(212)689-8808

*Counsel for Electricite de France, S.A., and Electricite de France International North America, Inc.*

Ronald S. Cooper, D.C. Bar No. 149799
David A. Clark, D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000

Counsel for Defendant Christian Nadal

17