**Exhibit A**



"Elaine Bredehoft"
<ebredehoft@charlsonbredeh
oft.com>

12/07/2005 08:52 AM

To    <rcooper@steptoe.com>, "David Clark <Clark, David",
"Dorothea Regal" <dregal@hnrlaw.com>, "Laura Hoguet"
<lhoguet@hnrlaw.com>

cc

bcc

Subject   Deposition Scheduling

Hello all:

I have had the opportunity to communicate with Ms. Gaujacq about the scheduling of her deposition following our discussions.  Unfortunately, Ms. Gaujacq recently moved to Mississippi for her job, which is compounding things.  Because of the newness of her job, she is also on borrowed time for vacation time, so this has been some effort.  With the dictate of reserving two days in January , Ms. Gaujacq can be here either January12 and 13 or January 19 and 20.  Both of those dates have conflicts for me, but I will move them if necessary to accommodate.  However, I need to know literally asap, as one of the dates I have committed to be a substitute judge, and another I have a court date scheduled (unfortunately, one of each of these is in the two sequences).  So I would appreciate your efforts to check your schedules and get back to me as quickly as possible, but no later than Friday if I will have any realistic chance of changing my conflicts.  Sorry to be so quick, but I had not anticipated the difficulties with Ms. Gaujacq's move and absence of vacation time.

When we arrive at Ms. Gaujacq's deposition dates, we can then fix Mr. Nadal's and the corporate designee.  If you want to send me available dates for those to get that in place for your convenience, I will be happy to work with you on that as well.

Thanks for your assistance and cooperation.  Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

**Exhibit B**

Dorothea Regal/Hoguet
Newman Regal

12/09/2005 05:17 PM

To    "Elaine Bredehoft" <ebredehoft@charlsonbredehoft.com>

cc    "Laura Hoguet" <lhoguet@hnrlaw.com>,
      rcooper@steptoe.com, dclark@steptoe.com

Subject    Gaujacq Deposition Dates

Elaine:
I am responding on behalf of all defendants regarding the scheduling of the deposition dates for Ms.
Gaujacq. We agree with your proposal for January 19 and January 20, with the caveat that we do not
agree to limit our questioning to two 7-hour sessions. As we have previously told you, we anticipate that
collectively we will need 2 to 3 days to complete the Gaujacq deposition. Please let us know how you
want to deal with this issue. We are working on dates for a Nadal deposition to follow the Gaujacq
deposition, and we will provide you with possible dates for Mr. Nadal's deposition shortly.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel.  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com

**Exhibit C**



"Elaine Bredehoft"
<ebredehoft@charlsonbredeh
oft.com>

12/12/2005 09:56 PM

To   <DRegal@hnrlaw.com>

cc   "Laura Hoguet" <lhoguet@hnrlaw.com>,
<rcooper@steptoe.com>, <dclark@steptoe.com>

bcc

Subject   RE: Gaujacq Deposition Dates

History:     📧 This message has been replied to.

Dorothea: Thanks for the email. We will lock in those two dates for Ms. Gaujacq's deposition I do not necessarily agree that there is justification for taking more than 7 hours of Ms. Gaujacq's deposition. Because of the language and interpretation issues that we discussed, I am willing to give the benefit of the doubt that more time MAY be needed. There is nothing unique or particularly complex about this case - it is pretty typical of the cases I try frequently. The part that causes me to allow the possibility of outside the Federal Rules of Civil Procedure limitation is the fact that one of the defendants is a French company, and that there are likely language barriers and the need for interpreters. I cannot imagine Ms. Gaujacq's deposition taking more than two 7 hour stretches. I will not be able to address that issue, however, until I observe the deposition and evaluate what is taking place, and what may give rise to more than one 7 hour stretch, much less two. In any event, we are allotting two 7 hour days, which will be followed by two 7 hour days of Nadal, and then two 7 hour days of the Corporate designee, potentially of each corporation. We have agreed to schedule those depositions as close together as possible, and I understand you are going to shortly be giving me dates for Nadal and the corporate designee(s), also with the caveat that I will try to provide 30(b)(6) notices as quickly as possible after receiving and reviewing the documents and responses. I think we need to lock in Nadal's deposition asap, and reserve potential dates for the corporate designee as well.

If for some reason we agree that Ms. Gaujacq (and/or Mr. Nadal, and/or the corporate designees) require more than the allotted 14 hours each, then we will have to agree on a schedule to accommodate their completion, but it will have to be after we take the first series in succession, and possibly other depositions.

I hope that clears up my position and helps you understand where I am coming from in approaching this discovery. I am willing to work with you, but only so long as the boundaries remain reasonable and just.

Elaine

-----Original Message-----
**From:** DRegal@hnrlaw.com [mailto:DRegal@hnrlaw.com]
**Sent:** Friday, December 09, 2005 5:18 PM
**To:** Elaine Bredehoft
**Cc:** Laura Hoguet; rcooper@steptoe.com; dclark@steptoe.com
**Subject:** Gaujacq Deposition Dates

Elaine:
I am responding on behalf of all defendants regarding the scheduling of the deposition dates for Ms. Gaujacq. We agree with your proposal for January 19 and January 20, with the caveat that we do not agree to limit our questioning to two 7-hour sessions. As we have previously told you, we anticipate that collectively we will need 2 to 3 days to complete the Gaujacq deposition. Please let us know how you want to deal with this issue. We are working on dates for a Nadal deposition to follow the Gaujacq deposition, and we will provide you with possible dates for Mr. Nadal's deposition shortly.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP

**Exhibit D**

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S. NEWMAN
DOROTHEA W. REGAL
JOSHUA D. RIEVMAN
EDWARD P. BOYLE
SHERYL B. GALLER
IRA J. LIPTON

TEL (212) 689-8808

FAX (212) 689-5101

www.hnrlaw.com

hnr@hnrlaw.com

December 15, 2005

SARAH K. BARICKMAN
KATHLEEN L. LOWDEN
RANDI B. MAY

EDNA R. SUSSMAN, OF COUNSEL

**By Facsimile**
Elaine Charlson Bredehoft, Esq.
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, VA 20190

Re: Gaujacq v. EDF, et al.

Dear Elaine:

I write on behalf of all defense counsel to address two discovery issues that we would like to resolve with you, if feasible, without court intervention. These matters are of some urgency because they impact our ability to prepare effectively for and complete the plaintiff's deposition, which has been scheduled for January 19 and 20, 2006.

### 1. Incomplete and Non-Responsive Response to Interrogatories

The responses to interrogatories that you served upon defense counsel on December 12, 2005 are non-responsive and evasive. In addition, they have not been signed by the party. The set of interrogatories served upon you by EDF and EDFINA contained merely 13 interrogatories, more than half of which Gaujacq has failed to answer responsively. In particular, but without limitation, the following responses are wholly insufficient:

Interrogatory No. 3: No response was given to the question of what compensation plaintiff has received from her employment subsequent to her termination, nor has the location of her employment with Entergy been provided.

Interrogatory No. 4: No response was given to the question of what persons Gaujacq had communication with relating to employment opportunities or the substance of such communications.

HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 15, 2005
Page 2

Interrogatory No. 8: This response is wholly evasive, not addressing the matter of Gaujacq's deletion of the contents of EDFINA's laptop before she returned it to EDFINA, and no response was given as to the identification of the software Gaujacq used to delete the laptop or the identification of persons with knowledge of such deletion.

Interrogatory No. 9: This response is misdirected to matters that appear to have no connection with the subject matter of the interrogatory, which was communications with Entergy Nuclear. The one paragraph in this response that does relate to Entergy Nuclear fails to identify the person or the entity with whom Gaujacq had the alleged communication.

Interrogatory No. 10: The response, to the effect that companies had knowledge of the alleged events, is not responsive to the question to describe with particularity the damages to Gaujacq's reputation that she alleged in the 8 referenced paragraphs of the complaint.

Interrogatory No. 11: The deficient response to Interrogatory No. 10, referred to in response to Interrogatory No. 11, is equally non-responsive to the question to describe with particularity the damages to Gaujacq's career that she alleged in 3 other referenced paragraphs of the complaint.

Interrogatory No. 13: No answer whatsoever has been given to this interrogatory regarding the identification of medical professionals from whom Gaujacq sought or received treatment in connection with any emotional, mental, psychological or psychiatric problems.

## 2. Deposition Scheduling

Deposition of the Plaintiff: Defendants need more than 7 hours to take the deposition of plaintiff. We believe that we will require two to three 7-hour days to complete Gaujacq's deposition. Alternatively, since you have advised us of Gaujacq's limited availability to absent herself from her new employment, we would be willing to negotiate a schedule for this deposition that would be limited to two 10-hour days. The reason that we need this amount of time is that there are three defendants and the complaint is extremely lengthy, containing 354 paragraphs of allegations. While we recognize the fact that the plaintiff's native language is French and that many of the documents are in French, we do not anticipate that those facts will require additional time for her deposition unless you intend to have an interpreter at her deposition. You have offered to schedule her deposition for January 19 and 20, 2006, but at the same time you have stated your position that defendants are not entitled to more than 7 hours with the plaintiff. We want to clarify these logistical issues as to the plaintiff's deposition.

HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 15, 2005
Page 3

- Please confirm that Gaujacq will be available for deposition for the two days scheduled. Please acknowledge that defendants reserve the right to continue the deposition on a third day to be scheduled unless we can come to an agreement as to extended deposition days for the two days scheduled. Please advise whether Gaujacq will have an interpreter at her deposition.

Rule 30(b)(6) Deposition of EDF: We cannot schedule a Rule 30(b)(6) deposition until you have advised us of the scope of such deposition.

- Please serve your 30(b)(6) notice.

Deposition of Individual Defendant Nadal: We cannot schedule the deposition of Mr. Nadal until we know whether you intend to seek a Rule 30(b)(6) deposition of EDFINA and, if so, the scope thereof because of the possibility that Mr. Nadal would be the corporate designee for any such deposition of EDFINA. It would be unacceptable to subject him to two separate depositions.

- Please confirm that you will not seek a Rule 30(b)(6) notice of EDFINA or, if you do seek such a deposition, please serve your 30(b)(6) notice.

We would like to confer with you on these matters, in compliance with Local Civil Rule 7(m), and propose a telephone conference with you on Monday, December 19, 2005 at 2:30 p.m. Please confirm your availability for this telephone conference.

Very truly yours,

Dorothea W. Regal

cc:    Ronald S. Cooper, Esq.
       David Clark, Esq.

Dorothea Regal/Hoguet
Newman Regal

12/15/2005 03:43 PM

To   "Elaine Bredehoft" <ebredehoft@charlsonbredehoft.com>

cc   dclark@steptoe.com, "Laura Hoguet"
     <lhoguet@hnrlaw.com>, rcooper@steptoe.com

Subject   Discovery Issues📄

Elaine:
Please see the letter attached below, which has also been sent to you by fax today.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel.  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com

Bredehoft.2005.12.15.pdf

**Exhibit E**



| | |
|---|---|
| "Elaine Bredehoft" <ebredehoft@charlsonbredehoft.com><br>12/19/2005 07:56 AM | To  <DRegal@hnrlaw.com> |
| | cc  <dclark@steptoe.com>, "Laura Hoguet" <lhoguet@hnrlaw.com>, <rcooper@steptoe.com> |
| | bcc |
| | Subject  RE: Discovery Issues |

History:         🖫 This message has been replied to and forwarded.

Dorothea: Thank you for your letter. I have given it quite a bit of thought before responding, as I was more than a little alarmed by its content. First, we need to deal with the deposition scheduling. Our agreement was that we would have the primary parties (Ms. Gaujacq, Mr. Nadal, and the corporate designees) first and close together in January. We have been working with you to comply. Your letter indicates to me that you do not intend to honor the agreement, and instead, are trying to use the premature claim that you need more time with Ms. Gaujacq as an excuse to put off Mr. Nadal and the corporate designees' depositions indefinitely. I think we need to get back on track with the scheduling. I will provide Ms. Gaujacq for 7 hours on January 20. I would like to take Mr. Nadal's deposition the following week for up to the limit of 7 hours, and the corporate designees' deposition (assume both entities) either in the same week, or the following week, also within the 7 hours limit. I will send out a 30(b)(6) notice in the next two days, but reserve the right to amend, given that I have not even received your documents yet (we discussed this by telephone and you seemed to understand that issue then, your letter suggests a departure from this conversation). It is irrelevant whether Mr. Nadal is a corporate designee for either of the corporate entities in scheduling his deposition. In the event any of us believe we need additional time with any of these witnesses after having taken the deposition for up to 7 hours, we can discuss it, and if we cannot agree, we can seek relief from the Court.

The assumption clearly indicated in your letter, which was introduced for the first time in your letter, is that you have the right to depose my client as long as you desire, and each of those days will be before Mr. Nadal's deposition is taken. This is not the understanding of the parties, nor is it consistent with the Rules. While I was willing to work with you on a scheduling of two days' apiece, your declared intent to depart from our earlier discussions causes me to back up and insist on compliance with the Rules, to protect my client. I repeat that there is nothing about the allegations in this case that should justify more than 7 hours of deposition of my client. The language issues for some of the potential deponents caused all of us to think that there may be justification, depending upon the circumstances, for more than 7 hours. That event has not yet arisen. We cannot possibly evaluate whether ANY deponent will take more than 7 hours until we have taken the first 7 hours. While it has been my practice to evaluate whether there is a need after the 7 hours, and have on occasion cooperated in the scheduling of additional time, it has been RARE that more than 7 hours is truly needed, if the parties are prepared, organized and efficient. There was a reason the Rules were changed to limit to 7 hours - this may be one of those circumstances contemplated in so doing.

In the event you are not willing to provide dates for Mr. Nadal's and the corporate designees' depositions, all within the two weeks following Ms. Gaujacq's deposition, I intend to seek relief from the Court. I hope you will reconsider what I consider to be purely delay tactics and render my filing motions with the Court unnecessary.

With respect to your letter respecting concerns about the discovery, I have similar concerns on your clients' discovery responses, but believe it is a waste of everyone's time to raise the issues prior to receiving the documents, which we will all receive today. My client will, however, be supplementing both the interrogatories and document responses shortly, which should allay your issues. If not, we can certainly talk further and we can address your clients' issues as well. As soon as I have gone through your clients' documents (and after sending you the 30(b)(6) notices which you are demanding immediately), I will address with you those deficiencies, and we can arrive at a mutually convenient time to cover all our issues. In any event, I am not available at your proposed time today, but again, I do not feel the request was made in good faith, given the documents have not been exchanged, and given the fact that my client will be supplementing shortly.

Please get back to me quickly with the available dates of Mr. Nadal and the corporate designees, so that we may resolve that issue or seek immediate relief from the Court. Elaine

-----Original Message-----
**From:** DRegal@hnrlaw.com [mailto:DRegal@hnrlaw.com]
**Sent:** Thursday, December 15, 2005 3:43 PM
**To:** Elaine Bredehoft
**Cc:** dclark@steptoe.com; Laura Hoguet; rcooper@steptoe.com
**Subject:** Discovery Issues


Elaine:
Please see the letter attached below, which has also been sent to you by fax today.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel.  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com

**Exhibit F**

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S. NEWMAN
DOROTHEA W. REGAL
JOSHUA D. RIEVMAN
EDWARD P. BOYLE
SHERYL B. GALLER
IRA J. LIPTON

TEL (212) 689-8808

FAX (212) 689-5101

www.hnrlaw.com

hnr@hnrlaw.com

December 19 2005

SARAH K. BARICKMAN
KATHLEEN L. LOWDEN
RANDI B. MAY

EDNA R. SUSSMAN, OF COUNSEL

**By Facsimile**
Elaine Charlson Bredehoft, Esq.
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, VA  20190

Re:  Gaujacq v. EDF, et al.

Dear Elaine:

        I write on behalf of all defense counsel in response to your e-mail of December 19, 2005, regarding my letter to you of December 16, 2005 about discovery issues concerning (1) the interrogatory responses you served on December 12, 2005 and (2) deposition scheduling.

        You have failed to respond to our substantive concerns about the deficient interrogatory response of the plaintiff, and you have refused to agree to our request regarding the amount of time for the deposition of your client, instead unilaterally reducing the amount of time you had previously offered for her deposition. You declined to meet and confer with us by telephone today, as we had requested, but you did not offer an alternative time and, in fact, appear to have ignored our request to meet and confer.

        Please provide us your earliest available times for a telephone conference  on Tuesday or Wednesday of this week (December 20 or 21) or we will conclude that you are unwilling to meet and confer on these important issues, and we will so indicate to the Court.

## Plaintiff's Non-Responsive and Evasive Interrogatory Response

        You have failed to address the serious deficiencies in plaintiff's interrogatory response that we raised in my letter to you, and you have failed to respond to our request to meet and confer on this issue.  We reject the notion that you may simply dismiss our

Elaine Charlson Bredehoft, Esq.
December 19, 2005
Page 2

request to meet and confer about the sufficiency of your client's interrogatory responses. Our concerns about the deficiency of plaintiff's interrogatory response cannot be derailed by your vague assurance of future supplementation or by your protestation that "it is a waste of time" to raise these deficiencies before receiving plaintiff's documents. The substantive deficiencies in plaintiff's interrogatory response cannot be cured by a document production because the deficiencies are unrelated to the documents. Furthermore, we have now received and reviewed plaintiff's document production, and the deficiencies in plaintiff's interrogatory response remain.

We have identified specific failures to respond at all, non-responsive answers and/or evasive answers in your client's interrogatory responses in writing, and we are entitled to have the plaintiff's answers to those questions in advance of our deposition of the plaintiff. We want to resolve this issue promptly as the date you have offered for Ms. Gaujacq's deposition is fast approaching.

**Deposition Scheduling**

Gratuitous claims that one party or the other "does not intend to honor the agreement" or "is not acting in good faith" will not advance the cause of reasonable cooperation. We have never agreed that the Nadal deposition and the 30(b)(6) deposition(s) would take place within 2 weeks of the Gaujacq deposition. We acknowledge the parties' earlier general discussions that Plaintiff's deposition would be taken first, with Mr. Nadal's deposition to follow as soon as practical thereafter. We also acknowledge your desire to accomplish promptly thereafter the depositions of the corporate defendants, although we have always said that the as-yet-unknown scope of your deposition notices of the corporations will obviously affect the staffing and the timing of those depositions in relation to the others. Furthermore, we have always anticipated that Plaintiff's deposition would be completed before moving on, and that we would have her full and complete discovery responses reasonably well in advance of her deposition. Beyond this general understanding of how the depositions would proceed, we do not agree with your characterizations and have the following concerns about your statements in your e-mail of this morning regarding deposition scheduling.

Although you initially offered the plaintiff for deposition on two consecutive days in January (January 19-20), which we accepted in writing, you have now rescinded that offer and have stated that you will make the plaintiff available for only 7 hours on January 20. This is unworkable for us. As stated in my letter to you of December 16, 2005, we are confident that the defendants, collectively, will require more than one seven-hour day to complete a full deposition of the plaintiff, due to the fact that she has filed an extremely lengthy complaint, with 354 paragraphs of allegations, and the fact that there are three defendants. Your proposal to wait until the end of the one day you have now offered and then schedule the follow-up deposition time is not acceptable. We

Elaine Charlson Bredehoft, Esq.
December 19, 2005
Page 3

need to know, in advance, the amount of time available to all defendants for this deposition for planning purposes and for purposes of allocating time among counsel for the defendants.

With respect to the other deposition scheduling issues you raised in your e-mail, we do not anticipate any problem making Mr. Nadal available for deposition in his personal capacity within two weeks of Plaintiff's deposition. Obviously, though, we need to know when Plaintiff's deposition will be -- a presently moving target depending on the date we obtain full discovery responses and on resolution of her deposition schedule. Nor is there likely to be a problem scheduling the depositions of the corporate defendants reasonably promptly thereafter, depending upon what your deposition notices may seek. We could not possibly now commit to the availability of unknown corporate designees over unknown issues. Even attempting such scheduling makes little sense until the issues of the timing of complete discovery responses from your client and the length of her deposition are resolved.

Please provide us with your earliest available times on December 20 or 21, 2005 when we can confer with you on these matters, in compliance with Local Civil Rule 7(m).

Very truly yours,

Dorothea W. Regal

cc:     Ronald S. Cooper, Esq.
        David Clark, Esq.

Dorothea Regal/Hoguet
Newman Regal

12/19/2005 07:52 PM

To  "Elaine Bredehoft" <ebredehoft@charlsonbredehoft.com>

cc  dclark@steptoe.com, "Laura Hoguet"
<lhoguet@hnrlaw.com>, rcooper@steptoe.com

Subject  RE: Discovery Issues🖹

Elaine:
Please see the attached letter below in response to your e-mail of today's date. This letter has also been
faxed to you today.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel.  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com



Bredehoft.2005.12.19.pdf

**Exhibit G**

# CHARLSON BREDEHOFT & COHEN, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

CURTIS L. CHARLSON (REL.)*
ELAINE CHARLSON BREDEHOFT◊
PETER C. COHEN◊
KATHLEEN Z. QUILL•◊
JENNIFER A. HARPER

* ADMITTED ONLY IN MINNESOTA
◊ ALSO ADMITTED IN D.C.
• ALSO ADMITTED IN MASSACHUSETTS

December 21, 2005

**BY EMAIL**
Ronald S. Cooper, Esq.
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036

> **Re:** ***Gaujacq v. Electricite de France International North America, et al.***
> ***Civil Action No. 1:05CV0969***

Dear Ron:

I have sent a separate letter to Ms. Regal responding to her letters and emails. Out of courtesy to her, I am not copying you, but she may wish to share the letter with you. In any event, I am enclosing the Notice of Deposition of Mr. Nadal, setting his deposition for January 26, 2006 at 9:30 a.m. in our offices. In the event that particular day is not convenient for you, I will be happy to work with you, but only with respect to within a few days. It is clearly my impression that there is a studied intent to delay in producing the defendants for deposition, and rather than wasting our clients' time and money in that endeavor, I am giving you more than a month's notice, it will take place shortly after my client's deposition on January 20, 2006, and my notice is consistent with our report to the Court. I recognize New York lawyers may be accustomed to practices that may be more acceptable there, but I think it is time to move forward with this litigation and stop wasting everyone's time.

I have reviewed the discovery responses sent over on behalf of Mr. Nadal. I have the following concerns and would appreciate your taking the time over the next two weeks to address these, and supplement your responses. In the event there are any remaining issues following your careful review of the issues and supplementation, I would appreciate your finding some time during the week of January 2 to schedule a conference call to discuss the issues.

11260 ROGER BACON DRIVE • SUITE 201 • RESTON • VIRGINIA 20190
TELEPHONE (703) 318-6800 • FACSIMILE (703) 318-6808

Ronald S. Cooper, Esq.
December 21, 2005
Page 2 of 5

## THE MARKING OF "HIGHLY CONFIDENTIAL" DOCUMENTS:

You may recall that the discussions leading up to even including a "Highly Confidential" designation arose out of your stated concern that EDF or EDFINA may be harmed by trade secret disclosures, given that Ms. Gaujacq works for someone they consider a competitor. The idea that Mr. Nadal may have any markings for Highly Confidential you only raised in our last discussion, and you may recall that it was in the context of something that would be extreme, such as a significant health issue or something unrelated to the issues in this case or the employment.

You may imagine my shock when I received no documents from EDFINA that were marked Highly Confidential, but the vast majority of Mr. Nadal's WERE marked Highly Confidential, including many in French, which we also agreed would try to be avoided at all costs.

I am going to assume that you were unaware of these labels, and I ask you to go through them carefully. I am officially challenging the designations on EACH of the documents marked Highly Confidential, and asking your office to remark them and reissue them. In the event you will not agree to that, for EACH document, please explain, in writing, the basis for the designation and why you believe Ms. Gaujacq, a party in this case, should not and cannot be privy to the contents of the document, even with the conditions that it be used solely for this litigation.

Absent a significant turnaround on this, I intend to seek a modification of the Protective Order, seeking to exclude any ability to mark a document "Highly Confidential." I, of course, will be happy to listen to you fully after you have reviewed the documents and responded with the individual reasons for each documents' designation as "Highly Confidential" (if you have not reconsidered and reissued them without these markations). This is precisely why I opposed such designations in the first place, and you specifically assured me that this would not be done. In fact, you told me you could not imagine that Mr. Nadal would have ANY documents marked Highly Confidential. I recall that very specifically and relied upon it in agreeing to the language of the Protective Order. I truly am hoping it was a mistake and will be corrected by the time I return to the office on January 3, 2006.

### *Discovery Responses:*

I have the following issues with Mr. Nadal's discovery responses. Again, I would appreciate your taking the time to seriously consider these, as you will note Ms. Gaujacq has done in supplementing her Interrogatory responses and Document responses. Our time is far better served on things other than needless discovery disputes. I am hopeful you will supplement your responses, also by January 3, 2006, with the following in mind:

Ronald S. Cooper, Esq.
December 21, 2005
Page 3 of 5

### Mr. Nadal's Responses to Plaintiff's First Set of Interrogatories:

Overall, Mr. Nadal failed to respond to Plaintiff's request to identify all documents reflecting his responses to each of the Interrogatories. This request was made for all but Interrogatory Nos. 1 and 20.

Further, the following deficiencies exist as to Mr. Nadal's responses to specific Interrogatories propounded in Plaintiff's First Set of Interrogatories:

Interrogatory No. 4: Mr. Nadal failed to completely respond to Interrogatory No. 4 in that he did not respond to Plaintiff's request to provide "all communications you had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms. Gaujacq." Further, with regard to his written response contending that (1) Plaintiff allegedly failed to "develop and apply sound financial and management procedures," (2) Plaintiff allegedly had "poor personnel administration," and (3) "EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA," Mr. Nadal has failed to provide specific details of these allegations as requested by Interrogatory No. 4.

Interrogatory No. 5: Mr. Nadal failed to completely respond to Interrogatory No. 5 in that he did not respond to Plaintiff's request to provide "the date of discovery, all persons whom you or the Company has not hired or fired because of the same or similar facts, and the reasons why this would have caused you or the Company not to hire or to fire Ms. Gaujacq."

Interrogatory No. 6: Mr. Nadal failed to completely respond to Interrogatory No. 6 in that he did not respond to Plaintiff's request to provide "the names of all persons who heard the alleged statement, and the ... place that the alleged statement was made" for the two statements referenced in his written response (July 12, 2004 and July 16, 2004). He also failed to identify which documents he believes contain statements against Ms. Gaujacq's interest.

Interrogatory No. 7: Mr. Nadal failed to completely respond to Interrogatory No. 7 in that he did not respond to Plaintiff's request to "state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms. Gaujacq during her tenure as President of EDFINA."

Interrogatory No. 8: Mr. Nadal failed to completely respond to Interrogatory No. 8 in that it is unclear whether he listed "all reasons why [he] had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts" and he did not respond to Plaintiff's request to "identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts."

Ronald S. Cooper, Esq.
December 21, 2005
Page 4 of 5

Interrogatory No. 15: Mr. Nadal failed to completely respond to Interrogatory No. 15 in that he did not respond to Plaintiff's request to identify "who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms. Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s)." Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Additionally, it is unclear whether the document described was produced by Mr. Nadal. If so, please provide the Bates number of such document.

Interrogatory No. 18: While Mr. Nadal responded to this interrogatory in general terms, he failed to completely respond to Interrogatory No. 18 in that he did not respond to Plaintiff's request to "explain *in detail* all action taken by you as a result of Ms. Gaujacq's complaints to you about your treatment of her, made verbally and in writing." Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Additionally, it is unclear whether the document described was produced by Mr. Nadal. If so, please provide the Bates number of such document.

Interrogatory No. 19: Mr. Nadal failed to completely respond to Interrogatory No. 19 in that he did not respond to Plaintiff's request to give the reasons for the timing of "his demand, on or about July 12, 2004, that Ms. Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office *by the next day*."

Interrogatory No. 20: Mr. Nadal failed to completely respond to Interrogatory No. 20 in that he did not respond to Plaintiff's request to "describe all facts upon which you base, or which support, any such denial" to Plaintiff's Request for Admissions.

### *Mr. Nadal's Responses to Plaintiff's First Request for Production of Documents:*

Pursuant to Federal Rules of Civil Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Because Mr. Nadal did not produce the documents as they are kept in the usual course of business, he was to organize and label the produced documents "to correspond with the categories in the request." Mr. Nadal failed to comply with Rule 34(b) as to every request. Please identify specifically, by Bates numbers, which documents produced are responsive to which request.

Further, it seems Mr. Nadal is only producing documents in his "personal" possession. Please clarify how Mr. Nadal defines "personal" and specify which documents he claims are not in his personal possession. In the event he has access to or control, he is obligated to provide these documents. Further, if any documents were withheld based upon the asserted privileges,

Ronald S. Cooper, Esq.
December 21, 2005
Page 5 of 5

please specify which documents Mr. Nadal is withholding and give sufficient details to allow
Plaintiff to assess whether Mr. Nadal's privilege designations are legally appropriate. <u>See</u>
Fed.R.Civ.Proc. 34(b).

    After the above designations are provided, we will be in a better position to assess to
which responses Mr. Nadal has failed to produce documents. However, it is clear that Mr. Nadal
is claiming, in response to Request No. 22, that his personnel file is not in his personal
possession and presumably has, therefore, not provided responsive documents to this request.
However, this claim directly contradicts Mr. Nadal's statement in his Initial Disclosures filed
October 27, 2005 where he stated that documents in Category 13 ("Documents in the personal
files of Christian Nadal relating to Plaintiff's claims and the defenses thereto, as well as
documents relating to his prior professional experience and qualifications") are "in the
possession, custody or control of Mr. Nadal." Initial Disclosures of Defendant Christian Nadal
at 11. Accordingly, please produce Mr. Nadal's personnel file and other documents requested in
Document Request No. 22.

    I would appreciate your supplementing the document requests with the specific bate
stamp numbers for each request. In addition, I ask you to take a look at all the discovery, review
what Ms. Gaujacq has done in good faith to take meaningless discovery disputes out of this
litigation, and to either change the designations of each document marked Highly Confidential,
or provide a detailed explanation for each document as set forth above.

    As we discussed some time ago in a conference call (during which I gave extensions to
EDF and EDFINA until January 3, 2006 because of my holiday schedule), I will be serving as a
substitute judge tomorrow, our office is closed on Friday, and I will be out of town all next week
for the holidays, with my family. Our office is closed on January 2, 2006. I will be returning to
the office on January 3, 2006. I am hopeful I am greeted with cooperation, full responses and
usable documents, and an ability to spend our time productively, representing our clients in this
litigation.

    Thank you for your consideration. I hope you have a wonderful holiday and New Year!

                    Very truly yours,

                    Elaine Charlson Bredehoft

cc:    Ms. Catherine Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:05CV0969 (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC., et al. | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that the Plaintiff, Catherine Gaujacq, by counsel, will take the

deposition upon oral examination of CHRISTIAN NADAL at 9:30 a.m. on Tuesday, January 24,

2006, at the offices of Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201,

Reston, Virginia, 20190. The deposition will be taken before an officer authorized by law to

administer oaths and take testimony, and will be recorded stenographically. The deposition will

continue from day to day until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
Catherine Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel for defendant Christian Nadal as follows:

> Ronald S. Cooper, Esq.
> David Clark, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> rcooper@steptoe.com
> dclark@steptoe.com
>
> Counsel for Defendant
>   Christian Nadal

With a courtesy copy sent this same day by email, addressed as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> dregal@hnrlaw.com
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America

Elaine Charlson Bredehoft

2

**Exhibit H**

# CHARLSON BREDEHOFT & COHEN, P.C.

ATTORNEYS AND COUNSELORS AT LAW

CURTIS L. CHARLSON (RET.)*
ELAINE CHARLSON BREDEHOFT◊
PETER C. COHEN◊
KATHLEEN Z. QUILL●◊
JENNIFER A. HARPER

* ADMITTED ONLY IN MINNESOTA
◊ ALSO ADMITTED IN D.C.
● ALSO ADMITTED IN MASSACHUSETTS

December 21, 2005

**BY EMAIL**
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

     *Re:*    ***Gaujacq v. Electricite de France International North America, et al.***
           ***Civil Action No. 1:05CV0969***

Dear Dorothea:

     Thank you for your discovery responses, your most recent letter and your email. Although my earlier email already addressed the issues in your letter, there appears to be quite a communication problem such that I was of the impression that we were two ships passing in the night. Again, after thinking things through carefully, rather than responding rapidly with something that would be less than satisfactory to all of us, I am endeavoring to address all of the issues.

     As you may recall from our earlier discussions, including my granting you an extension on your responses until January 3, 2006, I will be out of the office from December 22 through January 2. I have worked very hard to get all of this out to you prior to my departing, as you indicated you would be working during this period, so that you can spend the time working through these issues. I also think it would be helpful to have my concerns prior to providing your next set of discovery, so that you can comply with the Fed. R. Civ. P. 34(d) in that second set, as well as revise the earlier discovery responses, so that I may have those at the same time.

     I paid careful attention to your letter respecting your perceived deficiencies in my client's discovery responses, as well as your email requesting specific numbering on the documents produced (which we obviously were unable to do on the disk at that time). I hope that you will do the same. You will be receiving supplemental responses to the Interrogatories, which I believe address your issues. We will submit the signature page for the Supplemental responses after the holidays, when Ms. Gaujacq becomes available

Dorothea W. Regal, Esq.
December 21, 2005
Page 2 of 5

again. In the event you have any additional questions or issues, I will be happy to
address them in a global conference call during the week of January 3  I am hopeful we
can schedule that at a mutually convenient time to clear up any remaining issues, such
that if motions are required, we can file them simultaneously to minimize the burdens and
judicial resources of the Court and ensure that motions are not being filed while opposing
counsel are out of town.

        With respect to the depositions, I respectfully request that you go back and read
the prior emails on this issue. While I was willing to discuss the possibility of EACH of
the parties submitting to two days of deposition, I was not interested in the "give" with
"no take." Once it became clear that you were looking for a completely one-sided deal
(all give on my part, all take on yours), I believed it was in everyone's best interest to rely
on the Rules and address any potential or hypothetical issue at a later date. Therefore,
Ms. Gaujacq will be produced on January 20, 2006 for 7 hours, and you should plan
accordingly. I am sending you Notices of Deposition for Mr. Nadal, and each of the
Corporate Designees today, setting them for specific dates shortly after the deposition of
Ms. Gaujacq. While our recollections differ on the representations and discussions of the
parties on timing of the depositions, it is not really a good use of our clients' money to
continue the word or memory battle. I am willing to work with you on arranging these
dates within a few days of the Notices, but since you have more than a month to plan,
they should appear when noticed and that will end the dispute and my perceptions of
delay tactics. I expect to be able to take each of the depositions for up to 7 hours, and if I
need more time because of the circumstances that arise, I will discuss this with counsel,
and if I am unable to resolve it, I will seek permission from the Court to extend them. I
expect you to do the same with respect to Ms. Gaujacq.

        With respect to the Requests for Production of Documents, I noted that you have
not complied with Fed. R. Civ. P. 34(d) in that you have not identified which documents
are responsive to which requests. While we did not do that as well as possible in our first
set and instead provided disks for your convenience and faster review, we again listened
to your concern, and have numbered the documents and fully complied with Fed. R. Civ.
P. 34 (d). I ask that you supplement with these specific responses, and take care to
comply in your responses being provided on January 3, 2006.

        With respect to the specific Interrogatories, I have the following concerns that I
would appreciate your addressing and supplementing over the next two weeks:

        In several of the Interrogatory responses, EDFINA quotes the language of Rule
33(d) claiming that the burden is substantially the same for Ms. Gaujacq as for EDFINA
to obtain the answer from the documents. However, it is incumbent upon EDFINA to
identify the specific documents that provide all of the information, such that Ms. Gaujacq
would be able to review specific documents and ascertain the information. This has not
been done. Each Interrogatory response in which EDFINA relies upon this response
needs to have the specific documents identified that provide the information. The

Dorothea W. Regal, Esq.
December 21, 2005
Page 3 of 5

Interrogatories in which this response is given are: Nos. 2, 3, 4, 6, 8-12, and 14-20. I
also request that you examine further whether in fact the burden is equivalent. It appears
that it is not. This is particularly so given that many of the documents produced are in
French.

**EDFINA's Response to 1st Interrogatories:**

I have the following additional, specific comments with respect to the
Interrogatories:

Int. #2: Specific knowledge of witnesses not detailed.

Int. #3: Doesn't provide dates or specifics that Plaintiff was allegedly delinquent
in providing information to NuStart.

Int. #4: States EDFINA is unaware of favorable attestations to Plaintiff's work
performance, which is highly unlikely and we believe does not reflect true diligence in
responding to this Interrogatory.

Int. #5: Unresponsive; the Interrogatory asks for complaints made against any
other member of EDFINA's management, not just Nadal.

Int. #6: Does not include communications with Plaintiff, efforts by the Company
to improve Plaintiff's performance, or specific damage suffered as a result. Fails to
provide specific details regarding Plaintiff's alleged failure to "develop and apply sound
financial and management procedures" and Plaintiff's alleged "poor personnel
administration." Also fails to provide specific details supporting the contention that
"EDFINA has discovered material errors in official EDFINA filings that Gaujacq made
or permitted to be made during the time she served as President of EDFINA."

Int #7 - EDFINA provides no details as to the policies, practice or procedures
(cannot contend has no knowledge)

Int #8 - EDFINA provides no specific information, including the identity

Int # 9 – If EDFINA is unaware of any, it needs to so state; unresponsive

Int # 10 – Wholly unresponsive - states that only EDF knows – unlikely EDFINA
has no knowledge. Even if EDF was the primary or sole decision maker, EDFINA would
still be aware of the reasoning and/or facts surrounding the decision.

Int. #11: Wholly unresponsive to the Interrogatory. Even if EDF was the primary
or sole decision maker, EDFINA would still be aware of the reasoning and/or facts
surrounding the decision.

Int. #12: Is not responsive in that the Interrogatory asks to compare/contrast the
duties of Gaujacq and Nadal, whereas this response simply lists the duties of each
(without stating how the duties are the same and different).

Int. #13: Wholly unresponsive to the Interrogatory. Even if EDF was the primary
or sole decision maker, EDFINA would still be aware of the reasoning and/or facts
surrounding the decision.

Int. #14: Does not describe why and does not list other individuals whom Nadal
had removed from the list.

Dorothea W. Regal, Esq.
December 21, 2005
Page 4 of 5

Int. #16: Not responsive and does not indicate why audit was conducted in US offices.

Int. #17: Wholly unresponsive to the Interrogatory. Even if EDF was the primary or sole decision maker, EDFINA would still be aware of the reasoning and/or facts surrounding the decision.

Int. #18: Wholly unresponsive to the Interrogatory. Even if EDF was the primary or sole decision maker, EDFINA would still be aware of the reasoning and/or facts surrounding the decision.

Int. #19: Does not list other individuals who were given less than three months notice.

Int. #20: Unresponsive; EDFINA would have had to make representation one way or the other.

Int. #21: Does not provide the detailed facts supporting each denial.

In addition, I am assuming, because of EDFINA's statements, that EDF will be fully responding to the following Interrogatories: 3, 4, 8, 10, 11, 13, 17, 18, 19, and 20.

**EDFINA's Response to 1st RFP:**

I have the following additional, specific comments with respect to the Request for Production of Documents:

Again, no documents are identified in the actual Response, so it is difficult to ascertain what has truly been provided in response to each Request. We have done our best to parse through them, but reserve the right after you have supplemented in compliance with the Rules to provide further concerns:

It appears EDFINA is avoiding production of some documents by arguing that some documents are not in their control; they are in EDF's possession. We expect this to be resolved by EDF producing them on or before January 3, 2006. We would appreciate your ensuring these are produced.

EDFINA has refused to provide documents in response to the following requests: Nos. 23 (performance evaluations for similar employees), 24 (personnel file of Nadal - this in spite of identifying this in EDFINA's Initial Disclosures), 26 (identity and level of participation of decision makers); 43 (names and addresses of employees), 44 (all complaints), 45 (EEO-1), 46 (comparative evidence), 52 (complaints), 54 (formal complaints), and 55 (monitoring program) on the grounds (among others) that this is not a pattern or practice claim or that it's an unwarranted invasion of privacy of other employees (these all request, either directly or indirectly, info on other employees). As you know, these are not legitimate bases for objection, and the conduct of the company with respect to similar others is not only relevant, but also admissible. The United States Supreme Court has spoken to this, as has the District of Columbia Courts; 70 (docs gather in prep of defense, which may be discoverable and subject to a blanket objection) and 72

Dorothea W. Regal, Esq.
December 21, 2005
Page 5 of 5

(request for admissions – not legitimate basis for objection). I ask you to review these objections carefully, and if you believe you have case law to support your objections, I would appreciate receiving the citations, as I am unaware of such law.

In addition, EDFINA references no documents supporting any claim.

I am hopeful that upon receiving and reviewing Ms. Gaujacq's supplemental responses, and seeing that she has engaged in a serious effort to remove discovery disputes from this litigation, that you will consider the same. The Rules, this Court, and the case law, all support liberal discovery. We should truly not cause our clients to spend significant sums of money on meaningless and unnecessary discovery disputes. Let's get this case litigated and to trial, where they can have their day in Court, and air their disputes in a constructive manner, consistent with our judicial system and the Constitution.

I look forward to receiving full responses to all the discovery upon my return to the office on January 3, 2006. In the meantime, I wish you and your family a happy holiday and Happy New Year.

Very truly yours,

Elaine Charlson Bredehoft

cc:    Ms. Catherine Gaujacq

**Exhibit I(1)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ                    )
                                     )
        Plaintiff,                   )
                                     )
        v                            )        No. 1:05CV0969 (JGP)
                                     )
ELECTRICITE DE FRANCE                )
    INTERNATIONAL NORTH AMERICA,     )
    INC., et al.                     )
                                     )
        Defendants.                  )
                                     )

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff, Catherine Gaujacq, by counsel, will take the deposition upon oral examination of the corporate designee(s) of Electricite de France, S.A. ("EDF"), as to the matters set forth in Attachment A hereto, at 9:30 a.m. on Tuesday, January 31, 2006, at the offices of Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201, Reston, Virginia, 20190. The deposition will be taken before an officer authorized by law to administer oaths and take testimony, and will be recorded stenographically.  The deposition will continue from day to day until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
Catherine Gaujacq

2

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel defendant EDF as follows:

Laura B. Hoguet, Esq
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
dregal@hnrlaw.com

Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America

With a courtesy copy sent this same day by email, addressed as follows:

Ronald S. Cooper, Esq.
David Clark, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000
rcooper@steptoe.com
dclark@steptoe.com

Counsel for Defendant
  Christian Nadal

Elaine Charlson Bredehoft

3

## ATTACHMENT A

1.  All decisions relating to Ms. Gaujacq's employment with EDF and/or EDFINA, including:

    (a)  the decision to appoint Mr. Nadal to replace Ms. Gaujacq as President of EDFINA in the United States;

    (b)  the decision to pay Mr. Nadal a significantly higher salary as President of EDFINA than that paid to Ms. Gaujacq when she held the same position;

    (c)  the decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts;

    (d)  the decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA;

    (e)  the decision to change the locks on the company book closet where the corporate books were kept;

    (f)  the decision to removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

    (g)  the decision to refuse to sign Ms Gaujacq's expatriation contract and/or the expatriation contract proposed by Ms. Gaujacq in 2004, and all representations regarding the signed of that contract;

    (h)  the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

    (i)  the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004; and

    (j)  the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

2.  The employment relationship and/or contract between Ms. Gaujacq and EDF and/or EDFINA, including:

    (a)  the drafting of and completion of all contracts between EDF and/or EDFINA and Ms. Gaujacq including amendments to contracts;

    (b)  the terms of Ms. Gaujacq's expatriation contract with EDF;

(c)    Ms. Gaujacq's compensation as President of EDFINA;

(d)    the change in Ms. Gaujacq's employment relationship with EDF and/or EDFINA after Mr. Nadal became president of EDFINA, including any new expatriation contracts proposed or agreed to related to this change;

(e)    the new mission proposed for Ms Gaujacq in or about the September/October 2004 timeframe; and

(f)    the drafting and issuing of the Employment Letter as described in ¶ 187-188 in Ms Gaujacq's complaint and/or the "certificate de travail" referenced in ¶ 187 of Defendants' answer.

3.    Ms. Gaujacq's performance during her tenure as President of EDFINA, including

(a)    Ms. Gaujacq's scope of authority and changes in that authority;

(b)    Ms. Gaujacq's employment responsibilities and performance;

(c)    Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time;

(d)    any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq;

(e)    any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with EDF and/or EDFINA from August 2000 forward;

(f)    any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch which allegedly had complained on June 20, 2004 about a lack of information from Ms. Gaujacq;

(g)    any contention by the EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory, including but not limited to all performance issues referenced in the Response of Defendant EDFINA to Plaintiff's First Set of Interrogatories;

(h)    any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed;

(i)    any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses; and

(j)    any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home.

4. All instructions and/or demands given by Mr. Nadal to Ms. Gaujacq and her response to such instruction, including:

    (a) the instruction of Mr. Nadal for Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and

    (b) the demand that Ms. Gaujacq provide Mr. Nadal with all of her business and company contacts.

5. All policies and/or procedures in effect any time between 2000 and the present relating to EDF and/or EDFINA employees working abroad, including:

    (a) the amount of notice given to other employees whose United States mission was ending and EDF's policy or standard practice regarding the amount of notice to be given for cessation of a mission; and

    (b) the procedures, including terms of giving notice and terms of transition, to employees being reassigned out of country.

6. EDF and/or EDFINA EEO policies and procedures, including

    (a) EEO-1 documents submitted to the EEOC or any other agency;

    (b) any comparative evidence between treatment of female and non-female employees of EDF and/or EDFINA, including information supporting or reflecting any specific argument by Defendants that EDF and/or EDFINA does not discriminate on the basis of gender;

    (c) the policies, practices, or procedures respecting gender discrimination or retaliation for complaints of discrimination in effect as of 1996;

    (d) the policies, actual practices and procedures established for any and all employees who complained of discrimination or retaliation since 2000, and the filing and investigating of such complaints; and

    (e) all information relating to any type of program in place for monitoring, or if any investigation, assessment or evaluation has taken place, as to whether female employees are treated the same or differently from non-female employees with respect to hiring, performance evaluations, salary increases, bonuses, promotions, demotions, disciplinary actions or terminations.

7     Complaints of discrimination and/or retaliation by EDF and/or EDFINA employees, including:

    (a)    all complaints made by any employee respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the results of any such investigation, any action taken, any follow-up relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint;

    (b)    all complaints made by Ms. Gaujacq (whether oral or written, formal or informal) respecting gender discrimination, unfair, harsh or abusive treatment, or retaliation because of complaining of discrimination, including any investigation taken, the results of any such investigation, any action taken, any follow-up relating to Ms. Gaujacq's complaints, and the subject of the complaint;

    (c)    all complaints made by Ms. Gaujacq about Mr. Nadal's treatment of her to Fernando Ponasso, Didier Lamethe, Bruno Lescoeur, Mr. Creuzet and Mr. Laroche; and

    (d)    all formal complaints of gender discrimination or retaliation because of complaining of discrimination, filed with the United States Equal Employment Opportunity Commission or any state or local Human Rights Commission, or as a lawsuit, against EDF and/or EDFINA, from 2000 through the present, and any response or rebuttal to any such claim.

8.    Methods to determine compensation for employees of EDF and/or EDFINA, including:

    (a)    the seniority system, the merit system, the grade level system and all other systems of factors referenced in Defendant's fifth affirmative defense;

    (b)    the compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present;

    (c)    the compensation and method of determining such compensation paid to Ms. Gaujacq from January 2000 until her termination;

    (d)    EDF's compensation policies for high-level executives; and

    (e)    the ranking and seniority system for high-level executives, including the EDFINA President's position within this system.

9.  Information relating to the audit referenced in ¶ 105 of Ms. Gaujacq's complaint, including:

    (a)    the decision to have auditors come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President;

    (b)    the audit report and recommendations; and

    (c)    any findings or conclusions of the audit, including specifically, any documents suggesting any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA.

10.  EDF's financial information, including:

    (a)    any contention that EDF has suffered or been damaged as a result of Ms. Gaujacq's actions;

    (b)    the financial status of the EDF for the past two years with respect to gross and net revenues, expenses and profit; and

    (c)    EDFINA's monthly financial statements provided to EDF from August 2000 to January 2005.

11.  Relationship between EDFINA and EDF, including:

    (a)    number of people employed by EDFINA and EDF, combined and separately

    (b)    which entity employed Ms. Gaujacq;

    (c)    human resource and other administrative support provided by EDF to EDFINA;

    (d)    EDF contacts with the United States; and

    (e)    relationship between management and board of directors of EDFINA and management and board of EDF.

12.  NUSTART project, contracts and agreements, including:

    (a)    disclosure restrictions and confidentiality provisions of Nustart documents in 2004 as described in ¶134 of Ms. Gaujacq's complaint or otherwise;

    (b)    Ms. Gaujacq position and responsibilities related to the Nustart project both while she was president of EDFINA and after Mr. Nadal became president of EDFINA;

(c)    details of Georges Seveiere's succession as EDF's first representative to NuStart in summer 2004 as described in ¶170 of Defendants' answer.

13.    Incident wherein checks voided in the Company's books on or about June 2004, which were signed by Ms. Gaujacq but were voided and/or ripped up by Benoit Dreux.

14.    Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present.

15.    All EPRI agreements.

16.    The partial IPO of EDF/EDFINA.

17.    The decision to deny Mike Slavitt access to the EDFINA's books and the decision to terminate Mike Slavitt, including the reasons for his termination.

18.    Ms. Gaujacq's proceeding before the "Conseil des Prudhommes" as referenced in Defendants' initial disclosures at page 6.

**Exhibit I(2)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, the Plaintiff, Catherine Gaujacq, by counsel, will take the deposition upon oral

examination of the corporate designee(s) of Electricite de France International North America, Inc.

("EDFINA"), as to the matters set forth in Attachment A hereto, at 9:30 a.m. on Thursday, January

26, 2006, at the offices of Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201,

Reston, Virginia, 20190. The deposition will be taken before an officer authorized by law to

administer oaths and take testimony, and will be recorded stenographically. The deposition will

continue from day to day until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
 Catherine Gaujacq

2

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel defendant EDF as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> dregal@hnrlaw.com
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America

With a courtesy copy sent this same day by email, addressed as follows:

> Ronald S. Cooper, Esq.
> David Clark, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> rcooper@steptoe.com
> dclark@steptoe.com
>
> Counsel for Defendant
>   Christian Nadal

Elaine Charlson Bredehoft

## ATTACHMENT A

1.  All decisions relating to Ms. Gaujacq's employment with EDF and/or EDFINA, including:

    (a)  the decision to appoint Mr. Nadal to replace Ms. Gaujacq as President of EDFINA in the United States;

    (b)  the decision to pay Mr. Nadal a significantly higher salary as President of EDFINA than that paid to Ms. Gaujacq when she held the same position;

    (c)  the decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts;

    (d)  the decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA;

    (e)  the decision to change the locks on the company book closet where the corporate books were kept;

    (f)  the decision to removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

    (g)  the decision to refuse to sign Ms. Gaujacq's expatriation contract and/or the expatriation contract proposed by Ms. Gaujacq in 2004, and all representations regarding the signed of that contract;

    (h)  the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

    (i)  the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004; and

    (j)  the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

2.  The employment relationship and/or contract between Ms. Gaujacq and EDF and/or EDFINA, including:

    (a)  the drafting of and completion of all contracts between EDF and/or EDFINA and Ms. Gaujacq including amendments to contracts;

    (b)  the terms of Ms. Gaujacq's expatriation contract with EDF;

i

(c)    Ms. Gaujacq's compensation as President of EDFINA;

(d)    the change in Ms. Gaujacq's employment relationship with EDF and/or EDFINA after Mr. Nadal became president of EDFINA, including any new expatriation contracts proposed or agreed to related to this change;

(e)    the new mission proposed for Ms. Gaujacq in or about the September/October 2004 timeframe; and

(f)    the drafting and issuing of the Employment Letter as described in ¶ 187-188 in Ms. Gaujacq's complaint and/or the "certificate de travail" referenced in ¶ 187 of Defendants' answer.

3.    Ms. Gaujacq's performance during her tenure as President of EDFINA, including

(a)    Ms. Gaujacq's scope of authority and changes in that authority;

(b)    Ms. Gaujacq's employment responsibilities and performance;

(c)    Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time;

(d)    any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq;

(e)    any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with EDF and/or EDFINA from August 2000 forward;

(f)    any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch which allegedly had complained on June 20, 2004 about a lack of information from Ms. Gaujacq;

(g)    any contention by the EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory, including but not limited to all performance issues referenced in the Response of Defendant EDFINA to Plaintiff's First Set of Interrogatories;

(h)    any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed;

(i)    any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses; and

(j)    any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home.

4.    All instructions and/or demands given by Mr. Nadal to Ms. Gaujacq and her response to such instruction, including:

    (a)    the instruction of Mr. Nadal for Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and

    (b)    the demand that Ms. Gaujacq provide Mr. Nadal with all of her business and company contacts

5.    All policies and/or procedures in effect any time between 2000 and the present relating to EDF and/or EDFINA employees working abroad, including:

    (a)    the amount of notice given to other employees whose United States mission was ending and EDF's policy or standard practice regarding the amount of notice to be given for cessation of a mission; and

    (b)    the procedures, including terms of giving notice and terms of transition, to employees being reassigned out of country.

6    EDF and/or EDFINA EEO policies and procedures, including

    (a)    EEO-1 documents submitted to the EEOC or any other agency;

    (b)    any comparative evidence between treatment of female and non-female employees of EDF and/or EDFINA, including information supporting or reflecting any specific argument by Defendants that EDF and/or EDFINA does not discriminate on the basis of gender;

    (c)    the policies, practices, or procedures respecting gender discrimination or retaliation for complaints of discrimination in effect as of 1996;

    (d)    the policies, actual practices and procedures established for any and all employees who complained of discrimination or retaliation since 2000, and the filing and investigating of such complaints; and

    (e)    all information relating to any type of program in place for monitoring, or if any investigation, assessment or evaluation has taken place, as to whether female employees are treated the same or differently from non-female employees with respect to hiring, performance evaluations, salary increases, bonuses, promotions, demotions, disciplinary actions or terminations.

7.   Complaints of discrimination and/or retaliation by EDF and/or EDFINA employees, including:

   (a)   all complaints made by any employee respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the results of any such investigation, any action taken, any follow-up relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint;

   (b)   all complaints made by Ms. Gaujacq (whether oral or written, formal or informal) respecting gender discrimination, unfair, harsh or abusive treatment, or retaliation because of complaining of discrimination, including any investigation taken, the results of any such investigation, any action taken, any follow-up relating to Ms. Gaujacq's complaints, and the subject of the complaint;

   (c)   all complaints made by Ms. Gaujacq about Mr. Nadal's treatment of her to Fernando Ponasso, Didier Lamethe, Bruno Lescoeur, Mr. Cruezet and Mr. Laroche; and

   (d)   all formal complaints of gender discrimination or retaliation because of complaining of discrimination, filed with the United States Equal Employment Opportunity Commission or any state or local Human Rights Commission, or as a lawsuit, against EDF and/or EDFINA, from 2000 through the present, and any response or rebuttal to any such claim.

8.   Methods to determine compensation for employees of EDF and/or EDFINA, including:

   (a)   the seniority system, the merit system, the grade level system and all other systems of factors referenced in Defendant's fifth affirmative defense;

   (b)   the compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present;

   (c)   the compensation and method of determining such compensation paid to Ms. Gaujacq from January 2000 until her termination;

   (d)   EDF's compensation policies for high-level executives; and

   (e)   the ranking and seniority system for high-level executives, including the EDFINA President's position within this system.

9.   Information relating to the audit referenced in ¶ 105 of Ms. Gaujacq's complaint, including:

    (a)   the decision to have auditors come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President;

    (b)   the audit report and recommendations; and

    (c)   any findings or conclusions of the audit, including specifically, any documents suggesting any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA.

10.   EDFINA's financial information, including:

    (a)   any contention that EDFINA has suffered or been damaged as a result of Ms. Gaujacq's actions;

    (b)   the financial status of the EDFINA for the past two years with respect to gross and net revenues, expenses and profit; and

    (c)   EDFINA's monthly financial statements provided to EDF from August 2000 to January 2005.

11.   Relationship between EDFINA and EDF, including:

    (a)   number of people employed by EDFINA and EDF, combined and separately

    (b)   which entity employed Ms. Gaujacq;

    (c)   human resource and other administrative support provided by EDF to EDFINA;

    (d)   EDF contacts with the United States; and

    (e)   relationship between management and board of directors of EDFINA and management and board of EDF.

12.   NUSTART project, contracts and agreements, including:

    (a)   disclosure restrictions and confidentiality provisions of Nustart documents in 2004 as described in ¶134 of Ms. Gaujacq's complaint or otherwise;

    (b)   Ms. Gaujacq position and responsibilities related to the Nustart project both while she was president of EDFINA and after Mr. Nadal became president of EDFINA;

(c)    details of Georges Seveiere's succession as EDF's first representative to NuStart in summer 2004 as described in ¶170 of Defendants' answer.

13    Incident wherein checks voided in the Company's books on or about June 2004, which were signed by Ms. Gaujacq but were voided and/or ripped up by Benoit Dreux.

14.    Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present

15.    All EPRI agreements.

16.    The partial IPO of EDF/EDFINA.

17.    The decision to deny Mike Slavitt access to the EDFINA's books and the decision to terminate Mike Slavitt, including the reasons for his termination.

18.    Ms. Gaujacq's proceeding before the "Conseil des Prudhommes" as referenced in Defendants' initial disclosures at page 6.