IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05CV0969 (JGP) |
| ) | |
| ELECTRICITE DE FRANCE ) | |
| INTERNATIONAL NORTH AMERICA, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL AND FOR PROTECTIVE ORDER**

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby opposes the Motion to Compel and Motion for Protective Order of the Defendants Electricite de France ("EDF"), Electricite de France International North America ("EDFINA"), and Christian Nadal ("Mr. Nadal").

**SUMMARY OF ARGUMENT**

Defendants made a series of agreements relating to the scheduling of depositions, then apparently changed their mind. Ms. Gaujacq urged Defendants not to expend needless time and money on discovery disputes, and to instead move on and let this case take a natural, orderly progression toward trial. Instead, Defendants continue to wage an unusually vindictive war against Ms. Gaujacq. Defendants are now engaging in an aggressive effort to delay discovery and their discovery obligations, while simultaneously seeking to punish Ms. Gaujacq for picking up the coral snake, like the boy in Aesop's fable.[1]

---

[1] Referring to the old Aesop tale of the boy who was persuaded by the charming coral snake to

While Defendants present a moving target in their varying justifications for delaying the discovery in this case and to punish the Plaintiff for having the audacity to avail herself of our Judicial System,[2] the following remains clear: 1) Defendants have provided no legitimate reason that Plaintiff's deposition cannot be taken in one 7-hour day, or why this Court should speculate and order extended time for the deposition IN ADVANCE of the deposition; 2) Defendants do not deny they are available for each of the dates noticed for their respective depositions or within a few days of the dates – therefore, there is no good cause to prohibit the depositions from being taken as scheduled; 3) there is no rational justification for the insistence that Plaintiff's deposition be COMPLETED (in the event it takes more than one 7-hour day) prior to the taking of any other deposition; 4) if Defendants' suggested schedule is accepted by the Court, Plaintiff, who is at the greatest disadvantage in discovery, will not be able to access witnesses with material information before the close of discovery, as taking the remaining depositions of Defendants would be stretched out through the remainder of the discovery period ; 5) Defendants seek to quash the EDF corporate designee deposition under the auspice that the topic areas are identical to EDFINA (which is not a reason for quashing in any event); yet, EDFINA has already contended in its discovery responses, that it cannot answer certain interrogatories or provide certain documents, deferring instead to EDF, and have admonished Ms. Gaujacq because she did not serve identical discovery against both simultaneously; 6) Defendants contend that its clients will be subjected to repeat questions during their depositions without even the slightest basis for

---

pick him up and put him in his pocket, with assurances that he would not bite him, then when the boy complied, the snake bit him, contemptuous of the generous good nature of the boy.
[2] For example, after being properly served with the Complaint in May, 2005, EDFINA's counsel, who at the time informed that they would be representing EDF as well as EDFINA, with Complaint in hand, insisted Ms. Gaujacq incur the expense and time of hiring a certified interpreter to translate the entire Complaint into French, then serve it on EDF through the Hague Convention procedures in Paris, France, thereby subjecting Ms. Gaujacq to in excess of $5,000

such a contention – it is not in Ms. Gaujacq's best interests to drag out and unnecessarily expend time and money on repeat questions; rather, Ms. Gaujacq, because of the varied deferral of knowledge in discovery responses, needs to ensure that at least ONE of the defendants is able to answer the material questions on behalf of the Defendants. Defendants now represent that Mr. Nadal will be the corporate designee for EDF and EDFINA. This should make the scheduling and completion of these depositions easy to arrange in January.

Defendants' motions should be denied, and Plaintiff should be awarded her fees and costs expended in defending against these motions.

## STATEMENT OF PERTINENT FACTS

In a series of telephone conferences, the parties agreed that Ms. Gaujacq's deposition would be first, as early in January as possible, followed closely by Mr. Nadal's deposition and the corporate designees of EDFINA and EDF. The parties agreed that these depositions would be taken here, and in fact, to the extent possible, all the depositions would be taken in this area.[3] The parties agreed that they would work together to schedule other depositions of employees of EDFINA and EDF, as well as non-party depositions. Given the uncertainty of whether the parties would require interpreters at their depositions, the possibility of two days was discussed to allow for the anticipated extended time if interpreters were needed, which was reflected in the Rule 16.3 (d) Report, at ¶ 9(a)[4] Attachment 1. The parties then discussed dates in January for

---

in expenses, and causing a three-month delay in moving forward with this litigation.

[3] Defendants never objected to Defendants' depositions taking place at Ms. Gaujacq's counsel's office. In fact, it makes sense, as the office is less than 10 minutes from Dulles airport, just off the Toll Road, and the most convenient and closest to an airport. It was never agreed, or even discussed that the depositions would take place in New York, the offices of counsel for the two corporate defendants.

[4] "The parties agree to... the reasonable extension of the presumptive seven-hour limit for such depositions where translation is required. Additionally, the parties may need more than 7 hours for certain of the depositions and agree to work in good faith toward an agreement on such time

3

scheduling depositions,[5] and based upon those parameters, Ms. Gaujacq provided two series of dates with two days, January 12 and 13, January 19 and 20. It was expressed that obtaining dates for Ms. Gaujacq's deposition was a hardship, because she had a new job (after being terminated by Defendants), little vacation accumulated, and had been re-located to Mississippi. Email from Ms. Gaujacq's counsel 12/07/05, Attachment 2. Ms. Gaujacq's counsel's email expressed in writing the agreement among counsel:

> When we arrive at Ms. Gaujacq's deposition dates, we can then fix Mr. Nadal's and the corporate designee. If you want to send me available dates for those to get that in place for your convenience, I will be happy to work with you on that as well.

Attachment 2. Defendants chose the later January dates, and then suggested for the first time that they "will need 2 to 3 days to complete the Gaujacq deposition." Email from Defendants' counsel, Attachment 3. Defendants still appeared to be complying with the agreement by promising "we will provide you with possible dates for Mr. Nadal's deposition shortly." Attachment 3. Ms. Gaujacq responded:

> We will lock in those two dates for Ms. Gaujacq's deposition. I do not necessarily agree that there is justification for taking more than 7 hours of Ms. Gaujacq's deposition. Because of the language and interpretation issues that we discussed, I am willing to give the benefit of the doubt that more time MAY be needed. There is nothing unique or particularly complex about this case – it is pretty typical of the cases I try frequently. The part that causes me to allow the possibility of outside the Federal Rules of Civil Procedure limitation is the fact that one of the defendants is a French company, and that there are likely language barriers and the need for interpreters. I cannot imagine Ms. Gaujacq's deposition taking more than two 7 hour stretches. I will not be able to address that issue, however, until I observe the deposition and evaluate what is taking place, and what may give rise to more than one 7 hour stretch, much less two. In any event, we are allotting two 7 hour days, which will be followed by two 7 hour days of Nadal, and then two 7 hour days of the Corporate designee, potentially of each corporation. We have agreed to schedule those depositions as close together as possible, and I understand you are going to shortly be giving me dates for Nadal and the corporate designee(s), also with the caveat that I will try to provide 30(b)(6) notices as quickly as possible after receiving

---

limits. The parties also will work in good faith with regard to the scheduling of foreign deposition to attempt to minimize the cost and inconvenience to the parties and counsel."
[5] Plaintiff was asked to give dates after January 9, 2006, based upon counsels' schedules

and reviewing the documents and responses  I think we need to lock in Nadal's deposition asap, and reserve potential dates for the corporate designee as well.

If for some reason we agree that Ms. Gaujacq (and/or Mr Nadal, and/or the corporate designees) require more than the allotted 14 hours each, then we will have to agree on a schedule to accommodate their completion, but it will have to be after we take the first series in succession, and possibly other depositions.

Ms. Gaujacq's counsel continued: "I am willing to work with you, but only so long as the boundaries remain reasonable and just." Attachment 4, email from Ms. Gaujacq's counsel, 12/12/05. Significantly, Defendants have NEVER DENIED that this was the original agreement among counsel, nor do they ever explain their departure from the original agreement.

Instead, Defendants responded by letter December 15, 2005:

Defendants need more than 7 hours to take the deposition of plaintiff. We believe that we will require two to three 7-hour days to complete Gaujacq's deposition. Alternatively, since you have advised us of Gaujacq's limited availability to absent herself from her new employment, we would be willing to negotiate a schedule for this deposition that would be limited to two 10-hour days. The reason that we need this amount of time is that there are three defendants and the complaint is extremely lengthy, containing 354 paragraphs of allegations. **While we recognize the fact that the plaintiff's native language is French and that many of the documents are in French, we do not anticipate that those facts will require additional time for her deposition unless you intend to have an interpreter at her deposition.**

Attachment 5, Defendants' 12/15/05 letter (emphasis added). In the same letter, Defendants make it clear they do not intend to honor ANY of their agreements in producing defendants for deposition in January, or anytime even close to January:

Rule 30(b)(6) Deposition of EDF: We cannot schedule a Rule 30(b)(6) deposition until you have advised us of the scope of such deposition.....**please serve your 30(b)(6) notice.**[6]

---

[6] Significantly, EDF did not produce the documents until a day later, December 16, 2005 and based upon the earlier correspondence, it was clear they did not intend for Ms. Gaujacq to prepare a 30(b)(6) notice until she had at least received and reviewed the documents. Moreover, Defendants directed Ms. Gaujacq to serve the notice, and now they complain to this Court that she should not have.

5

Attachment 5, at 2 (emphasis added). Defendants continue:

> <u>Deposition of Individual Defendant Nadal</u>: We cannot schedule the deposition of Mr. Nadal until we know whether you intend to seek a Rule 30(b)(6) deposition of EDFINA and, if so, the scope thereof because of the possibility that Mr. Nadal would be the corporate designee for any such deposition of EDFINA **It would be unacceptable to subject him to two separate depositions**..... Please confirm that you will not seek a Rule 30(b)(6) notice of EDFINA or, if you do seek such a deposition, please serve your 30(b)(6) notice

Attachment 5, at 2 (emphasis added).[7] Again, this is a clear departure from the undisputed agreement of counsel, and in direct contravention of Defendants' previous emails promising to provide dates for Mr. Nadal's deposition "shortly."

### *A note about the timing and context of this December 15 letter:*

Because of the agreed upon extensions, the parties exchanged discovery responses on December 9, and exchanged documents by federal express on December 16 (the day AFTER the December 15 letter). The December 15 letter FIRST addresses what Defendants perceived as deficiencies in Ms. Gaujacq's discovery responses, without even seeing Ms. Gaujacq's documents. Defendants demanded a conference call for Monday December 19, less than two business days from the December 15 letter, to discuss the perceived discovery deficiencies, while simultaneously demanding that plaintiff immediately issue the 30(b)(6) notices of deposition, even though Ms. Gaujacq had not received and reviewed the documents (which the earlier correspondence makes clear was never the agreement of the parties, and makes no sense).[8]

---

[7] To date, Defendants have never explained why it would be "unacceptable" for Mr. Nadal, the alleged bad actor in this litigation and President of EDFINA to be subjected to two days of deposition, especially when Defendants have represented to the Court the Mr. Nadal was the decision-maker, was acting on behalf of EDFINA, and will be the corporate designee for both corporate defendants. Simultaneously, Defendants are insisting that Ms. Gaujacq should be subjected to three days of deposition without question.

[8] Ms. Gaujacq did not perceive the December 15 letter to be asking for a conference call on the deposition scheduling issues, since it was demanding the issuance of 30(b)(6) notices for EDF

6

While simultaneously working diligently to provide detailed, supplemental responses to Defendants to address their concerns expressed in the December 15, 2005 letter, which efforts were completed on December 21, 2005, Ms. Gaujacq took some time to think through what Defendants were now communicating, and attempted to address the sea change by Defendants, in a December 19 email:

> Thank you for your email. I have given it quite a bit of thought before responding, as I was more than a little alarmed by its content. First, we need to deal with the deposition scheduling. Our agreement was that we would have the primary parties (Ms. Gaujacq, Mr. Nadal, and the corporate designees) first and close together in January. We have been working with you to comply. Your letter indicated to me that you do not intend to honor the agreement, and instead, are trying to use the premature claim that you need more time with Ms. Gaujacq as an excuse to put off Mr. Nadal and the corporate designees' deposition indefinitely. I think we need to get back on track with the scheduling. I will provide Ms. Gaujacq for 7 hours on January 20. I would like to take Mr. Nadal's deposition the following week for up to the limit of 7 hours, and the corporate designees' deposition (assume both entities) either in the same week, or the following week, also within the 7 hours limit. I will send out a 30(b)(6) notice in the next two days, but reserve the right to amend, given that I have not even received your documents yet (we discussed this by telephone and you seemed to understand that issue then, your letter suggests a departure from this conversation). It is irrelevant whether Mr. Nadal is a corporate designee for either of the corporate entities in scheduling his deposition. **In the event any of us believe we need additional time with any of these witnesses after having taken the deposition for up to 7 hours, we can discuss it, and if we cannot agree, we can seek relief from the Court.**

---

and EDFINA, declining to schedule Mr. Nadal, and directing Ms. Gaujacq to "confirm" that Ms. Gaujacq would accede to two days of deposition unquestionably, and agree in advance to a third if Defendants so desired, before they would agree to schedule any other depositions, now far from any earlier agreement. Instead, Ms. Gaujacq perceived the demanded conference call to be about discussing their perceived deficiencies in Ms. Gaujacq's discovery responses. In fact, in her December 19, 2005 email, Ms. Gaujacq explicitly addressed their request for a conference call, telling them Ms. Gaujacq would be supplementing, that Ms. Gaujacq also had discovery issues to discuss, suggesting that Defendants await the supplemental responses and Ms. Gaujacq's issues with their discovery, and then schedule a mutually convenient time to talk through any remaining issues. Attachment 6, 12/19/05 email, at 1.

Because Ms. Gaujacq takes discovery responsibilities seriously, Ms. Gaujacq instead devoted the time to seriously addressing the concerns, and supplementing the discovery. Obviously this was the right course: Plaintiff supplemented on December 21, 2005, apparently to the complete satisfaction of Defendants.

7

> The assumption clearly indicated in your letter, which was introduced for the first time in your letter, is that you have the right to depose my client as long as you desire, and each of those days will be before Mr. Nadal's deposition is taken. This is not the understanding of the parties, nor is it consistent with the Rules. While I was willing to work with you on a scheduling of two days' apiece, your declared intent to depart from our earlier discussions causes me to back up and insist on compliance with the Rules, to protect my client. I repeat that there is nothing about the allegations in this case that should justify more than 7 hours of deposition of my client. The language issues for some of the potential deponents caused all of us to think that there may be justification, depending upon the circumstances, for more than 7 hours. That event has not yet arisen. We cannot possibly evaluate whether ANY deponent will take more than 7 hours until we have taken the first 7 hours. While it has been my practice to evaluate whether there is a need after the 7 hours, and have on occasion cooperated in the scheduling of additional time, it has been RARE that more than 7 hours is truly needed, if the parties are prepared, organized and efficient. There was a reason the Rules were changed to limit to 7 hours – this may be one of those circumstances contemplated in so doing.
>
> In the event you are not willing to provide dates for Mr. Nadal's and the corporate designees' depositions, all within the two weeks following Ms. Gaujacq's deposition, I intend to seek relief from the Court. I hope you will reconsider what I consider to be purely delay tactics and render my filing motions with the Court unnecessary.

Attachment 6, December 19, 2005 email from Ms. Gaujacq.

Defendants responded rapidly, and still before their documents were received by Ms. Gaujacq. Defendants did not provide dates for depositions. While acknowledging that Ms. Gaujacq's confirmation of the prior agreements was essentially correct, Defendants nonetheless attempted to justify departing from it and re-writing it. Significantly, Defendants confirmed that it was their intent not to schedule Mr. Nadal's deposition or the depositions of the corporate designees until after the completion of Ms. Gaujacq's deposition, however long Defendants felt it should be, notwithstanding Defendants acknowledgement that they had agreed that Mr. Nadal and the corporate designees' depositions were anticipated to be scheduled shortly after Ms. Gaujacq's deposition.[9] Defendants added an additional justification for delaying the Defendants'

---

[9] Significantly, Defendants stated in the December 19, 2005 letter that "scheduling the depositions of the corporate defendants reasonably promptly thereafter" would not likely be a problem. Attachment 7, at 3. Yet Defendants represented to this Court is its brief that it would be

8

depositions: "Even attempting such scheduling makes little sense until the issues of the timing of complete discovery responses from your client and the length of her deposition are resolved." Attachment 7, at 3.

In the same letter, Defendants ignored Ms. Gaujacq's statements that she was addressing their discovery concerns and would shortly be providing supplemental responses, and ignored Ms. Gaujacq's suggestion that Defendants await Ms. Gaujacq's supplemental responses and Ms. Gaujacq's detailed letter relating to their discovery responses so that all of the discovery issues could be resolved at one time, and instead insisted on an immediate conference call, threatening otherwise "we will conclude that you are unwilling to meet and confer on these important issues, and we will so indicate to the Court." Defendants made good on its threat. The communications speak for themselves on the accuracy of such a representation to the Court.

At the end of the day on December 21, 2005, having had less than two days to review Defendants' responses, Ms. Gaujacq provided significant supplemental responses and documents addressing Defendants' earlier expressed concerns in the December 15, 2005 letter, detailed the discovery issues she had with all the Defendants, provided the 30(b)(6) corporate designee deposition notices demanded by Defendants, and set tentative dates for the depositions of the Defendants, indicating a willingness to work with Defendants on the scheduling within reason. Attachments 8 and 9. Ms. Gaujacq concluded with the following:

> I am hopeful that upon receiving and reviewing Ms. Gaujacq's supplemental responses, and seeing that she has engaged in a serious effort to remove discovery disputes from this litigation, that you will consider the same. The Rules, this Court, and the case law, all support liberal discovery. We should truly not cause our clients to spend significant sums of money on meaningless and unnecessary discovery disputes. Let's get this case litigated and to trial, where they can have their day in Court, and air their disputes in a constructive manner, consistent with our judicial system and the Constitution.

---

a problem. Brief, at 15-16.

Attachment 9, at 5. Counsel suggested to both counsel that in the event there were remaining discovery issues following receipt of Ms. Gaujacq's supplemental discovery responses, Ms. Gaujacq's detailed expressed concerns of their discovery deficiencies and the Notices of Deposition, that the parties work together to schedule a mutual time to resolve all the issues during the week of January 3, 2006.[10]

Instead, Defendants filed this Motion while Ms. Gaujacq was out of town, did not address any of the issues raised in Ms. Gaujacq's December 21, 2006 letter, have continued to refuse to provide significant discovery responses, continued to refuse to schedule any of the depositions of Defendants, have played games with the Court's Protective Order, intentionally marking as "highly confidential" documents in French, knowing that counsel does not speak French and that the designation of "highly confidential" prohibits counsel from showing her client the documents even for interpretation, and have even refused to respond to Ms. Gaujacq's counsel's December 7, 2005 request for a change in trial date, upon discovery that the trial was scheduled at the same time as her children's scheduled Spring Break for that year (these issues are the subject of other motions, filed separately with this Court). In fact, when Ms. Gaujacq's counsel returned and learned of these actions and inactions, Ms. Gaujacq attempted to schedule a conference call, separately or together, for the week of January 3, 2006, and was given no dates during that week, and instead one date after all these motions would be filed, the following week. When Ms. Gaujacq politely asked for the reason for unavailability for any conference call, Defendants refused to provide any explanation for the unavailability, especially in light of being aware on December 21 of the need for arranging such a schedule unless they agreed with everything, and

---

[10]Defendants' protestations to the contrary, Defendants were aware of Ms. Gaujacq's judging and holiday schedule for several weeks. In fact, in early December, at Defendants' request, Ms. Gaujacq granted yet another discovery extension to Defendants in light of her anticipated

instead, admonished Ms. Gaujacq for not giving them sufficient notice of the scheduling (which was, admittedly, MORE time than Defendants had provided to Ms. Gaujacq before threatening and then representing to the Court, that Ms. Gaujacq had "refused" to meet and confer. It is clear from Defendants' pattern of conduct that it does not genuinely desire to resolve these issues, absent Court intervention.

Currently, Ms. Gaujacq has a flight arriving on January 19, 2006 and plans to be available for deposition for up to 7 hours on January 20, 2006, and absent any proposed changes to the scheduling of Defendants' depositions, anticipates taking them as noticed. This will enable the parties to move forward as earlier planned, with the scheduling of any third-party depositions and discovery, to prepare this case for trial.

## ARGUMENT

Perhaps the best way to elucidate the hidden motivations and lack of substance to Defendants' motions is to go through the specific contentions and point out the inconsistencies and absence of support for each.

*Plaintiff's Counsel Did Not "Ignore" Defendants' Repeated Efforts to Meet and Confer over Important Issues Relating to Deposition Discovery*

Defendants sent a letter out the night of December 15, 2005 addressing their perceived deficiencies in Plaintiff's discovery responses. Defendants also raised the deposition issue, but did not seek to meet and confer about those issues, instead stating: "Please confirm that Gaujacq will be available for deposition for the two days scheduled. Please acknowledge that defendants reserve the right to continue the deposition on a third day to be scheduled unless we can come to an agreement as to extended deposition days for the two days scheduled."

---

absence from the office during that time

11

While Defendants proposed a telephone conference on December 19 (less than two business days later) to discuss the discovery issues, it was clear that this was to discuss the issues with written discovery, as the deposition directive was made clear. Ms. Gaujacq nonetheless responded to the deposition issue on December 19, 2006, then received and reviewed Defendants' discovery, drafted 30(b)(6) notices (as directed by Defendants), prepared detailed explanations of perceived discovery issues, and provided significant supplemental discovery, all by December 21, 2005. Because it was clear Defendants were refusing to provide any dates of depositions for the Defendants, much less in the timeframe earlier promised, Ms. Gaujacq noticed the depositions for dates and times following Ms. Gaujacq's deposition.

As to Defendants' perceived discovery disputes, Plaintiff's counsel took these very seriously, having rarely been unable to address and resolve disputes with her client's responses, and took the next several days including over the weekend to supplement the Interrogatory responses and documents requests, obviously to the satisfaction of Defendants, as Defendants have made no further complaint since receiving them on December 21, 2005.

### *Ms. Gaujacq's Deposition Need Not be <u>Completed</u> Before the Depositions of Defendants*

Fed. R. Civ. P. 30(b) provides for the limitation of a deposition to one 7 hour day. This Rule was promulgated to prevent overlong depositions that result in undue costs and delays in some circumstances. Advisory Committee notes, at 170.[11] The notes continue: "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."

---

[11] Federal Civil Judicial Procedure and Rules, Federal Rules of Civil Procedure, 2005 Revised Edition, Tompson/West.

12

The Advisory Committee lists a number of factors to be considered, none of which apply in this instance. Moreover, the Advisory Committee indicates that where there are multiple parties, "duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest." Advisory Committee Notes, at 179. This should not be an issue anyway, as Defendants conceded the following:

> Plaintiff's case against all three defendants is predicated principally on the alleged actions of Defendants Nadal during the period in which Nadal succeeded to the position once occupied by the Plaintiff. As President of EDFINA, Nadal made decisions and otherwise acted on behalf of EDFINA during the period at issue. With respect to EDFINA, it is really only Nadal who can provide most of the facts sought by Plaintiff from EDFINA, and Nadal will be EDFINA's Rule 30(b)(6) designee for matter appropriately requests of EDFINA.
>
> EDF, the French corporate defendant, is the entity that employee Gaujacq and that currently employs Nadal...tasked with serving as EDFINA's President. EDFINA is an indirect wholly owned subsidiary of EDF. EDF will necessarily designate Nadal as to all topics appropriately requested of EDF concerning Nadal's decisions and actions during this period.

Defendants' Memorandum, ("Brief"), at 10-11. Why then are we arguing about the need for a lengthier deposition of Ms. Gaujacq, given Defendants' own assessment of the simplicity of this case?

While there is always the scurry to take the deposition of the other party first, Ms. Gaujacq had no problem letting Defendants win that battle, and offered to be deposed first. Presumably Defendants have some critical questions they wish to ask of Ms. Gaujacq first. What is absent from Defendants' motion is ANY reason why Ms. Gaujacq's deposition, in the event it were to exceed the allotted 7 hours, needs to be COMPLETED before the defendants will even permit their depositions to be SCHEDULED. Why is it that Defendants cannot ask

13

those critically strategic questions within the first 7 hours? Defendants do not even attempt to allege a cause, much less good cause, for such reasoning.

If the Court were to succumb to such reasoning that all depositions must be completed, regardless of over what time period, before another deposition takes place, chaos would surely result. As here, it would be impossible to schedule any deposition if there is any dispute about the length or likely length of a deposition. It would be a perfect instrument for delay – the longer one takes to complete a deposition, the longer it will be to schedule another deposition. This type of philosophy or feeling of "entitlement" would necessarily wreak havoc on the orderly, professional, courteous scheduling of depositions within the discovery cut-off, as has been demonstrated here.

Defendants have taken several positions on why they think Ms. Gaujacq's deposition will last more than 7 hours. The first is that Ms. Gaujacq's Complaint is detailed and lengthy. This supports a SHORTER deposition, not a longer deposition. When the plaintiff provides short, summary allegations, it arguably requires more time in the deposition to discover the allegations supporting the general allegations. Here, the details are spelled out in detail, and where Defendants sought amplification, they were provided in written discovery, obviously to Defendants' ultimate satisfaction.[12] Moreover, Defendants have summarized Ms. Gaujacq's position and claims quite succinctly at pages 10-11. This summary belies complication or confusion on Defendants' part.

The second reason given is that Ms. Gaujacq is claiming "hundreds of million of dollars in damages." Brief at 2, 8. This is a misreading of the *ad damnum* clause. While the *ad*

---

[12] Defendants also now contend that they need sufficient time to question Ms. Gaujacq on "each of her theories." Brief at 9. However, Ms. Gaujacq is not an attorney, and legal questions are not appropriate for depositions of fact witnesses.

14

*damnum* clause seeks compensatory damages of $10 million and $15 million punitive damages on each count, it is the same injury no matter how many counts, and the *ad damnum* clause is irrelevant in federal court in any event. Whether Ms. Gaujacq sued for $1 or $100 million, since the *ad* damnum would be moved to conform to the jury verdict, regardless of the amount awarded. It does not change the length of the deposition, and Defendants do not explain otherwise.

The Defendants have also now claimed that the language issues may increase the need for a lengthier deposition. Brief, at 9. However, again, Defendants' December 15, 2005 letter directly contradicts this new claim: "While we recognize the fact that the plaintiff's native language is French and that many of the documents are in French, we do not anticipate that those facts will require additional time for her deposition unless you intend to have an interpreter at her deposition."[13] Attachment 5, at 2.

Finally, Defendants contention that the agreement was that Ms. Gaujacq's deposition had to be completed "prior to commencing the depositions of the three defendants" is contradicted by Defendants own emails. Twice Defendants promised to provide the dates for Mr. Nadal's deposition "shortly." See Attachment 3. Why would Defendants EVER have endeavored to provide dates for Mr. Nadal's deposition if they believed all along that Ms. Gaujacq's deposition would take at least 2-3 days, and that it needed to be completed before Mr. Nadal's deposition? Moreover, Defendants' December 15 letter admits "We acknowledge the parties' earlier general discussions that Plaintiff's deposition would be taken first, with Mr. Nadal's deposition to follow as soon as practical thereafter. We also acknowledge your desire to accomplish promptly thereafter the depositions of the corporate defendants …." Attachment 5, at 2.

---

[13] Ms. Gaujacq does not require an interpreter at her deposition.

15

Most significantly, Defendants have not provided the Court with any reason why the Court should decide, in advance of the deposition, that there is good cause to depart from the 7-hour rule. Defendants have not yet questioned Ms. Gaujacq. They cannot possibly represent to this Court that there exists good cause to extend Ms. Gaujacq's deposition, without ever having posed a question, and received even one answer. Given that Ms. Gaujacq has provided extensive discovery responses and documents, and has laid out in much greater detail than required the facts supporting her allegations, and given that the conduct took place over a relatively short period of time, there can be no reason for Defendants to assert, in advance, that there is good cause for extending Ms. Gaujacq's deposition beyond the 7 – hour rule.[14]

Instead, given the inconsistencies, contradictions and conduct of Defendants, it should be readily apparent that Ms. Gaujacq needs the protection of the Rules and this Court, from unnecessary harassment and undue additional expense, as was intended by the amendment of Fed. R. Civ. P. 30(d).

### *There is No Justification for Court Intervention in Advance of Defendants' Requiring "Coordinating" by Plaintiff of Defendants' Depositions*

The same section of the Advisory Committee notes relating to the limitation of a 7 hour deposition explicitly states: "For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." Id. at 179.

---

[14] Two 10-hour days is extremely unreasonable. The 7-hour rule anticipates breaks in the deposition, including lunch. Advisory Committee Notes, at 179. A deposition is exceedingly taxing on an individual, regardless of whether a party or witness. They are not lawyers by profession, and our system is sometimes very confusing and stressful to them. This is likely to be even more so for persons from another country. A 10 hour day translates into much longer than 10 hours, and is simply too burdensome and taxing on everyone, including counsel and the court reporter. When the deponent is tired, it does not benefit anyone. When counsel is tired, it does not benefit anyone. In addition, the suggestion of what would amount to likely more than a 12-hour day will unreasonably take everyone away from his or her families into the night, also an unfair request.

This is a prime example of the consequences of Defendants making a mockery of the "meet and confer" rules in this case. Defendants rather tersely demanded that Ms. Gaujacq issue a 30(b)(6) Notice, even before Defendants had produced their first set of documents, and well before they produced their second set of documents (and after having procured extensions from Ms. Gaujacq for both, including one extension until January 3). Ms. Gaujacq complied and sent the Notices out on December 21. Defendants never bothered to talk with Ms. Gaujacq, and instead, knowing Ms. Gaujacq's counsel was out of town, filed this motion. The motion was filed one business day before the return of Ms. Gaujacq's counsel. One wonders at the reason for the rush to file, especially when Ms. Gaujacq's counsel had indicated on December 21 her availability and willingness to discuss all issues upon her return on January 3.

In addition, Defendants spurred every effort of Ms. Gaujacq to meet and confer in the week following counsel's return, during the time Ms. Gaujacq would necessarily be able to discuss and resolve prior to writing this response.

In sending out the Notices of Deposition, Ms. Gaujacq set the separate, non-consecutive dates to accommodate Defendants in the event they needed to prepare witnesses in between depositions. Ms. Gaujacq's letter explicitly stated that she was willing to work with Defendants on scheduling, so long as it was within days, as opposed to weeks and months, as Defendants were clearly attempting to extract through the prolonged "extension" of the completion of Ms. Gaujacq's deposition. If Defendants wish to inform Ms. Gaujacq well in advance of the topics from each set of 30(b)(6) Notices for which Mr. Nadal will be designated, Ms. Gaujacq is happy to cooperate and continue Mr. Nadal's deposition consecutively to cover these topics. There is no desire for Ms. Gaujacq to expend the additional cost and time of duplicative questions; if Defendants believe that is occurring, they can surely bring it to the attention of this Court.

17

There is no good cause for any ruling of the Court at this stage to suggest any restriction on Plaintiff's counsel, as none has been demonstrated. If Ms. Gaujacq is able to complete Mr. Nadal and all the corporate designee depositions in less than three 7-hour days, Ms. Gaujacq will be delighted. There is nothing before this Court to justify decreasing the allotted time at this stage, and nothing Ms. Gaujacq has done that would indicate that she will not seek to depose the Defendants as quickly and efficiently as she is able.[15] In fact, Defendants have not even disclosed whether Mr. Nadal, or any other designee, if they determine it will be more than Mr. Nadal, will require an interpreter, a factor that will surely impact upon the length of the deposition, as even acknowledged by the Advisory Committee. Id. at 179.

In fact, there is absolutely nothing in the Rules or case law supporting Defendants' request. Notwithstanding, Ms. Gaujacq is more than willing, and it is in the best interest of Ms. Gaujacq, to ask the questions of Mr. Nadal that Defendants designate for him. Based upon the Rules, however, Defendants may not limit the combination of Mr. Nadal and the corporate designee depositions to one 7-hour deposition, as it is contrary to Rule 30(b)(6), and Rule 30(d), as well as explicitly contrary to the guidance set forth in the Advisory Rules.

### *EDF's 30(b)(6) Should Not be Quashed*

Defendants insisted that Plaintiff immediately issue a 30(b)(6) Notice for EDF, even before Ms. Gaujacq had received EDF or EDFINA's documents, and now complains that Ms. Gaujacq issued a 30(b)(6) "too late." Defendants assert two bases for quashing the EDF 30(b)(6) Notice: 1) that they have not had sufficient time to consult with EDF to coordinate, they

---

[15] It continues to be passing strange that Defendants are ardently arguing that Plaintiff's deposition will take at least 3 days, while simultaneously arguing that the sum total of the Defendants should be restricted to 2 days.

therefore do not know who would be the representative and where the deposition will take place;[16] and 2) the 30(b)(6) Notice for EDF is identical to EDFINA's 30(b)(6) notice.

Of course, the first reason is directly contradicted by Defendants' admission in the December 15, 2005 letter "Nor is there likely to be a problem scheduling the depositions of the corporate defendants reasonably promptly thereafter, depending upon what your deposition notices may seek." Attachment 5, at 3. Given that Defendants have now represented that Mr. Nadal is anticipated to be the designee, Brief at 10-11, this should be even less of a problem. In the event there is any other person who may have to serve as a corporate designee on any topic, the Defendants have already represented that it will not be a problem to schedule them promptly, and they now will have had more than a month to do so. If there exists a problem, Defendants should let Ms. Gaujacq and the Court know – thus far there has been no representation of unavailability. As set forth earlier, Ms. Gaujacq's offices are the most convenient to an airport, and Defendants have already agreed to hold the depositions in this area.

The second reason, that the EDF corporate designee notice is identical to the EDFINA corporate designee notice, is not a basis for quashing, and in this instance, is highly justified. As set forth in Ms. Gaujacq's December 21 letter to Defendants, EDFINA declined to provide multiple documents under the auspices that these were in the possession, custody and control of EDF, and not EDFINA. Attachment 9, at 3-4. Finally, when Defendants responded to the December 21 letter two days ago (January 8, 2006, but letter is dated January 7, 2006), they

---

[16] Defendants also raise that they do not know whether the deposition will be in France. This is completely contrary to their earlier representations that the depositions would take place in this area, is contradicted by the December 15 letter where they say the scheduling can be promptly accomplished, is contradicted by Defendants' own brief where Defendants contend Mr. Nadal is the designee, Brief at 10-11. This claim, especially in the face of so many contradictions, appears to support Ms. Gaujacq's contention that Defendants are merely engaging in this conduct to effect delay.

19

insisted that it was to Ms. Gaujacq's peril that she did not issue identical discovery to EDF and EDFINA, to ensure she would receive all the information and documents, since some are with each. Attachment 10. To claim that Ms. Gaujacq engaged in some type of improper conduct in issuing the same topic areas to ensure she was able to get someone in a position to bind a defendant on the issues, is disingenuous at best, in light of Defendants' own statements and pleadings.

## CONCLUSION

For the reasons set forth above, Plaintiff requests this Court deny Defendants' Motion to Compel, for Protective Order, and to Quash. Plaintiff further requests this Court award her attorneys' fees and costs expended in this effort, given the mendaciousness of Defendants' conduct.

January 10, 2006

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
  Catherine Gaujacq