# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | )    Civil Action No. 1:05CV0969 |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, INC , | ) |
| | ) |
| ELECTRICITE DE FRANCE, S.A , | ) |
| | ) |
| and | ) |
| | ) |
| CHRISTIAN NADAL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### RULE 16.3(d) REPORT

Pursuant to Local Civil Rule ("LCvR") 16 3(a) counsel for the parties discussed the matters set forth in LCvR 16 3(c) on October 5, 2005  Below is their report to the Court pursuant to LCvR 16.3(d)

Plaintiff's Description of Claims and Case Background

Plaintiff's claims arise out of her employment with and termination of employment from Defendants Electricite de France International North America, Inc. ("EDFINA") and Electricite de France, S.A. ("EDF") and the alleged actions of Defendant Christian Nadal ("Mr. Nadal") in furtherance of defaming, interfering with her employment, and discriminating and retaliating against Ms. Gaujacq, acting within and outside the scope of employment  Plaintiff filed her complaint on May 13, 2005.  Defendant, Christian Nadal, was served on May 19, 2005.  Defendant, EDFINA, was served on May 20, 2005.  On or about September 12, 2005, Defendants Christian Nadal, EDFINA and EDF filed Answers to the Complaint.

Plaintiff asserts twelve claims: Gender Discrimination and Discriminatory Termination against EDFINA and EDF under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Count One); Retaliatory Environment, Acts of Retaliation and Retaliatory Termination against EDFINA and EDF under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Count Two); Gender Discrimination in the Course of Employment against EDFINA and EDF under the District of Columbia Human Rights Act ("DCHRA") (Count Three); Gender Discrimination in the Course of Employment against Mr. Nadal under DCHRA (Count Four); Retaliation in the Course of Employment against EDFINA and EDF under DCHRA (Count Five); Aiding and Abetting Retaliation in the Course of Employment against Mr. Nadal under DCHRA (Count Six); Tortious Interference with Contractual Relations against EDFINA and EDF under common law (Count Seven); Tortious Interference with Contractual Relations against Mr. Nadal under common law (Count Eight); Breach of Contract against EDFINA and EDF under common law (Count Nine); Duty of Faith and Fair Dealing against EDFINA and EDF (Count Ten); Violation of Equal Pay Act against EDFINA and EDF under the Equal Pay Act, 29 U S C § 206(d) (Count Eleven); and Defamation *per se* against EDFINA, EDF and Mr. Nadal under common law (Count Twelve).

Defendants' Description of Background and Defenses

For their part, Defendants dispute the characterizations above and will demonstrate that Ms. Gaujacq's claims are wholly without merit, both factually and legally, for the reasons set forth more particularly in their respective answers. Such defenses include:

- Ms Gaujacq was not discriminated against, harassed, or retaliated against in any way.
- EDF terminated Ms. Gaujacq's employment because, after her expatriation contract expired, she failed to report to her new position at EDF in France

2

- The United States anti-employment discrimination laws, including those of the District of Columbia, do not apply to employment decisions made by EDF in France affecting French national employees of EDF.
- EDF is not covered by the United States Equal Pay Act.
- EDFINA is not covered by the United States federal anti-discrimination law because it does not employ at least fifteen employees.
- Any differential in the compensation of Gaujacq and Nadal as employees of EDF was based upon their pay grades, seniority and/or merit systems, and not based upon their genders.
- No employee of EDF (working at EDFINA or not) ever defamed Ms Gaujacq.

2    There is no motion pending before the Court

3.    The parties presently do not anticipate the joining of additional parties or any amendments to their pleadings. The parties have agreed in their schedule on dates by which such amendments shall be made

4.    The parties do not consent to the assignment of the case to a magistrate judge for all purposes, including trial.

5.    The parties have explored settlement possibilities in the past, and are not ruling out the possibility of exploring settlement in the future; however, at the present time, the parties do not believe settlement is likely

6.    If at some point the parties believe that they would benefit from the Court's ADR procedures, they will notify the Court.

7.    Plaintiff does not believe this case can be resolved by summary judgment. Defendants believe that all of the case can be resolved by summary judgment. A schedule for the briefing of summary judgment motions is set forth in the proposal below.

8    The parties agree to serve the initial disclosures described in Fed R Civ P. 26(a)(1) by October 27, 2005 and that no changes need to be made to the scope or form of such disclosures.

3

9       The parties are working on a mutually agreeable Protective Order which they anticipate presenting to the Court for entry by the time of the Scheduling Hearing next week. In addition, the parties have discussed attempting to arrive at stipulations respecting translations and translators, and agree to work together to attempt to resolve issues which may arise because of the location of and languages spoken by the witnesses and parties. Regarding discovery, the parties propose:

(a)     The parties agree to a limit of 10 depositions for each party and to the reasonable extension of the presumptive seven-hour limit for such depositions where translation is required. Additionally, the parties may need more than 7 hours for certain of the depositions and agree to work in good faith toward an agreement on such time limits. The parties also will work in good faith with regard to the scheduling of foreign depositions to attempt to minimize the cost and inconvenience to the parties and counsel.

(b)     The parties jointly propose the following schedule for written discovery, depositions, expert discovery, and dispositive motions. It is based on an estimated 3 months for document discovery and 5 months for depositions, beginning with the deposition of Plaintiff and followed by the deposition of Defendant Nadal, both as close to the beginning of such period as may be arranged:

| | |
|---|---|
| **Initial Disclosures** (under 26(a)(1)) | October 27, 2005 |
| **First Day to Serve Written Discovery** | October 28, 2005 |
| **Deposition Discovery Begins** | January 2, 2006 |
| **Deadline To Amend Complaint** | March 1, 2006 |

4

| | |
|---|---|
| **Deadline To Amend Answers** | April 14, 2006 |
| **Opening Expert Reports** (per 26(a)(2) on issues for which a party carries the burden of proof) | April 1, 2006 |
| **Rebuttal Expert Reports** (per 26(a)(2) on issues for which opposing party carries burden of proof) | May 31, 2006 |
| **Close of Fact Discovery** | May 31, 2006 |
| **Expert Deposition Period** | June 1 through July 28, 2006 |
| **Dispositive and *Daubert* motions Due** | September 15, 2006 |
| **Oppositions** Due | October 13, 2006 |
| **Replies** Due | October 27, 2006 |
| **Hearing** (proposed) | November 10, 2006 |
| **Pretrial Statements** To Be Filed and Served | December 11, 2006 |
| **Pretrial Conference** | Week of December 18, 2006 |
| **Trial** | (30-60 days after pretrial conference, to be set by the Court at the October 13, 2005 Scheduling Hearing ) |

10.    Dates for the exchange of expert information are included in the schedule above.

11    The parties do not presently anticipate that the trial will need to be bifurcated or managed in phases.

12.    The parties propose that the pretrial conference be held on December 18, 2006, and the trial be scheduled at the October 13, 2005 Scheduling Hearing, consistent with the schedule set out in Paragraph 9 above.

13.    The parties are requesting the Court to set a firm trial date, as set forth in the above-proposed schedule, when the parties appear before the Court on October 13, 2005. Respectfully submitted,

5

_____/s/_____    10/06/05_____

Elaine Charlson Bredehoft        Date
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff,
  Catherine L. Gaujacq


_____/s/_____    10/06/05_____
Laura B. Hoguet                  Date
D.C. Bar No. 200915
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808

Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America, Inc.


_____/s/_____    10/06/05_____
Ronald S. Cooper                 Date
D.C. Bar No. 149799
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

Counsel for Defendant
  Christian Nadal


Add proposed Order per 19 3(d)

6

# EXHIBIT 2

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Elaine Bredehoft |
| **Sent:** | Wednesday, December 07, 2005 8:52 AM |
| **To:** | 'rcooper@steptoe com'; 'David Clark <Clark, David'; 'Dorothea Regal'; 'Laura Hoguet' |
| **Subject:** | Deposition Scheduling |

| | |
|---|---|
| **TimeMattersID:** | M13D6974666D2385 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Hello all:

I have had the opportunity to communicate with Ms. Gaujacq about the scheduling of her deposition following our discussions.  Unfortunately, Ms. Gaujacq recently moved to Mississippi for her job, which is compounding things.  Because of the newness of her job, she is also on borrowed time for vacation time, so this has been some effort.  With the dictate of reserving two days in January , Ms. Gaujacq can be here either January 12 and 13 or January 19 and 20.  Both of those dates have conflicts for me, but I will move them if necessary to accommodate.  However, I need to know literally asap, as one of the dates I have committed to be a substitute judge, and another I have a court date scheduled (unfortunately, one of each of these is in the two sequences).  So I would appreciate your efforts to check your schedules and get back to me as quickly as possible, but no later than Friday if I will have any realistic chance of changing my conflicts.  Sorry to be so quick, but I had not anticipated the difficulties with Ms. Gaujacq's move and absence of vacation time.

When we arrive at Ms. Gaujacq's deposition dates, we can then fix Mr. Nadal's and the corporate designee.  If you want to send me available dates for those to get that in place for your convenience, I will be happy to work with you on that as well.

Thanks for your assistance and cooperation.  Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

# EXHIBIT 3

## Elaine Bredehoft

| | |
|---|---|
| **From:** | DRegal@hnrlaw com |
| **Sent:** | Friday, December 09, 2005 5:18 PM |
| **To:** | Elaine Bredehoft |
| **Cc:** | Laura Hoguet; rcooper@steptoe com; dclark@steptoe com |
| **Subject:** | Gaujacq Deposition Dates |
| **TimeMattersID:** | MB0B89746F13E868 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Elaine:
I am responding on behalf of all defendants regarding the scheduling of the deposition dates for Ms  Gaujacq
 We agree with your proposal for January 19 and January 20, with the caveat that we do not agree to limit our
questioning to two 7-hour sessions   As we have previously told you, we anticipate that collectively we will need 2
to 3 days to complete the Gaujacq deposition.  Please let us know how you want to deal with this issue   We are
working on dates for a Nadal deposition to follow the Gaujacq deposition, and we will provide you with possible
dates for Mr  Nadal's deposition shortly

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw com

# EXHIBIT 4

# Elaine Bredehoft

| | |
|---|---|
| **From:** | Elaine Bredehoft |
| **Sent:** | Monday, December 12, 2005 9:57 PM |
| **To:** | 'DRegal@hnrlaw com' |
| **Cc:** | Laura Hoguet; rcooper@steptoe com; dclark@steptoe com |
| **Subject:** | RE: Gaujacq Deposition Dates |
| **TimeMattersID:** | MB00C9746C07B145 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |

**TM Matter Reference:** Gaujacq, Catherine

Dorothea:  Thanks for the email  We will lock in those two dates for Ms  Gaujacq's deposition   I do not necessarily agree that there is justification for taking more than 7 hours of Ms  Gaujacq's deposition  Because of the language and interpretation issues that we discussed, I am willing to give the benefit of the doubt that more time MAY be needed   There is nothing unique or particularly complex about this case - it is pretty typical of the cases I try frequently    The part that causes me to allow the possibility of outside the Federal Rules of Civil Procedure limitation is the fact that one of the defendants is a French company, and that there are likely language barriers and the need for interpreters   I cannot imagine Ms  Gaujacq's deposition taking more than two 7 hour stretches  I will not be able to address that issue, however, until I observe the deposition and evaluate what is taking place, and what may give rise to more than one 7 hour stretch, much less two   In any event, we are allotting two 7 hour days, which will be followed by two 7 hour days of Nadal, and then two 7 hour days of the Corporate designee, potentially of each corporation.  We have agreed to schedule those depositions as close together as possible, and I understand you are going to shortly be giving me dates for Nadal and the corporate designee(s), also with the caveat that I will try to provide 30(b)(6) notices as quickly as possible after receiving and reviewing the documents and responses.  I think we need to lock in Nadal's deposition asap, and reserve potential dates for the corporate designee as well

If for some reason we agree that Ms  Gaujacq (and/or Mr  Nadal, and/or the corporate designees) require more than the allotted 14 hours each, then we will have to agree on a schedule to accommodate their completion, but it will have to be after we take the first series in succession, and possibly other depositions

I hope that clears up my position and helps you understand where I am coming from in approaching this discovery - I am willing to work with you, but only so long as the boundaries remain reasonable and just

Elaine

-----Original Message-----
**From:** DRegal@hnrlaw.com [mailto:DRegal@hnrlaw.com]
**Sent:** Friday, December 09, 2005 5:18 PM
**To:** Elaine Bredehoft
**Cc:** Laura Hoguet; rcooper@steptoe.com; dclark@steptoe.com
**Subject:** Gaujacq Deposition Dates

Elaine:
I am responding on behalf of all defendants regarding the scheduling of the deposition dates for Ms Gaujacq.  We agree with your proposal for January 19 and January 20, with the caveat that we do not agree to limit our questioning to two 7-hour sessions  As we have previously told you, we anticipate that collectively we will need 2 to 3 days to complete the Gaujacq deposition.  Please let us know how you want to deal with this issue.  We are working on dates for a Nadal deposition to follow the Gaujacq deposition, and we will provide you with possible dates for Mr  Nadal's deposition shortly

01/10/06

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com

# EXHIBIT 5

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S NEWMAN
DOROTHEA W. REGAL
JOSHUA D RIEVMAN
EDWARD P BOYLE
SHERYL B. GALLER
IRA J. LIPTON

TEL (212) 689-8808
FAX (212) 689-5101
www.hnrlaw.com
hnr@hnrlaw.com

December 15, 2005

SARAH K. BARICKMAN
KATHLEEN L LOWDEN
RANDI B MAY

EDNA R SUSSMAN, OF COUNSEL

**By Facsimile**

Elaine Charlson Bredehoft, Esq.
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, VA 20190

Re: Gaujacq v. EDF, et al.

Dear Elaine:

I write on behalf of all defense counsel to address two discovery issues that we would like to resolve with you, if feasible, without court intervention. These matters are of some urgency because they impact our ability to prepare effectively for and complete the plaintiff's deposition, which has been scheduled for January 19 and 20, 2006.

## 1. Incomplete and Non-Responsive Response to Interrogatories

The responses to interrogatories that you served upon defense counsel on December 12, 2005 are non-responsive and evasive. In addition, they have not been signed by the party. The set of interrogatories served upon you by EDF and EDFINA contained merely 13 interrogatories, more than half of which Gaujacq has failed to answer responsively. In particular, but without limitation, the following responses are wholly insufficient:

Interrogatory No. 3: No response was given to the question of what compensation plaintiff has received from her employment subsequent to her termination, nor has the location of her employment with Entergy been provided.

Interrogatory No. 4: No response was given to the question of what persons Gaujacq had communication with relating to employment opportunities or the substance of such communications.

## HOGUET NEWMAN & REGAL, LLP

Elaine Chatlson Bredehoft, Esq.
December 15, 2005
Page 2

Interrogatory No. 8: This response is wholly evasive, not addressing the matter of Gaujacq's deletion of the contents of EDFINA's laptop before she returned it to EDFINA, and no response was given as to the identification of the software Gaujacq used to delete the laptop or the identification of persons with knowledge of such deletion.

Interrogatory No. 9: This response is misdirected to matters that appear to have no connection with the subject matter of the interrogatory, which was communications with Entergy Nuclear. The one paragraph in this response that does relate to Entergy Nuclear fails to identify the person or the entity with whom Gaujacq had the alleged communication.

Interrogatory No. 10: The response, to the effect that companies had knowledge of the alleged events, is not responsive to the question to describe with particularity the damages to Gaujacq's reputation that she alleged in the 8 referenced paragraphs of the complaint.

Interrogatory No. 11: The deficient response to Interrogatory No. 10, referred to in response to Interrogatory No. 11, is equally non-responsive to the question to describe with particularity the damages to Gaujacq's career that she alleged in 3 other referenced paragraphs of the complaint.

Interrogatory No. 13: No answer whatsoever has been given to this interrogatory regarding the identification of medical professionals from whom Gaujacq sought or received treatment in connection with any emotional, mental, psychological or psychiatric problems.

### 2. Deposition Scheduling

Deposition of the Plaintiff: Defendants need more than 7 hours to take the deposition of plaintiff. We believe that we will require two to three 7-hour days to complete Gaujacq's deposition. Alternatively, since you have advised us of Gaujacq's limited availability to absent herself from her new employment, we would be willing to negotiate a schedule for this deposition that would be limited to two 10-hour days. The reason that we need this amount of time is that there are three defendants and the complaint is extremely lengthy, containing 354 paragraphs of allegations. While we recognize the fact that the plaintiff's native language is French and that many of the documents are in French, we do not anticipate that those facts will require additional time for her deposition unless you intend to have an interpreter at her deposition. You have offered to schedule her deposition for January 19 and 20, 2006, but at the same time you have stated your position that defendants are not entitled to more than 7 hours with the plaintiff. We want to clarify these logistical issues as to the plaintiff's deposition.

## HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 15, 2005
Page 3

> • Please confirm that Gaujacq will be available for deposition for the two
> days scheduled. Please acknowledge that defendants reserve the right to
> continue the deposition on a third day to be scheduled unless we can come
> to an agreement as to extended deposition days for the two days
> scheduled. Please advise whether Gaujacq will have an interpreter at her
> deposition.

Rule 30(b)(6) Deposition of EDF: We cannot schedule a Rule 30(b)(6) deposition
until you have advised us of the scope of such deposition.

> • Please serve your 30(b)(6) notice.

Deposition of Individual Defendant Nadal: We cannot schedule the deposition of
Mr. Nadal until we know whether you intend to seek a Rule 30(b)(6) deposition of
EDFINA and, if so, the scope thereof because of the possibility that Mr. Nadal would be
the corporate designee for any such deposition of EDFINA. It would be unacceptable to
subject him to two separate depositions.

> • Please confirm that you will not seek a Rule 30(b)(6) notice of EDFINA
> or, if you do seek such a deposition, please serve your 30(b)(6) notice.

We would like to confer with you on these matters, in compliance with Local
Civil Rule 7(m), and propose a telephone conference with you on Monday, December 19,
2005 at 2:30 p.m. Please confirm your availability for this telephone conference.

Very truly yours,

Dorothea W. Regal

cc:   Ronald S. Cooper, Esq.
      David Clark, Esq.

# EXHIBIT 6

# Elaine Bredehoft

| | |
|---|---|
| **From:** | Elaine Bredehoft |
| **Sent:** | Monday, December 19, 2005 7:56 AM |
| **To:** | 'DRegal@hnrlaw com' |
| **Cc:** | dclark@steptoe com; Laura Hoguet; rcooper@steptoe com |
| **Subject:** | RE: Discovery Issues |
| **TimeMattersID:** | MB1D397532003422 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Dorothea:   Thank you for your letter   I have given it quite a bit of thought before responding, as I was more than a little alarmed by its content.   First, we need to deal with the deposition scheduling   Our agreement was that we would have the primary parties (Ms. Gaujacq, Mr. Nadal, and the corporate designees) first and close together in January   We have been working with you to comply   Your letter indicates to me that you do not intend to honor the agreement, and instead, are trying to use the premature claim that you need more time with Ms. Gaujacq as an excuse to put off Mr. Nadal and the corporate designees' depositions indefinitely    I think we need to get back on track with the scheduling   I will provide Ms. Gaujacq for 7 hours on January 20   I would like to take Mr. Nadal's deposition the following week for up to the limit of 7 hours, and the corporate designees' deposition (assume both entities) either in the same week, or the following week, also within the 7 hours limit   I will send out a 30(b)(6) notice in the next two days, but reserve the right to amend, given that I have not even received your documents yet (we discussed this by telephone and you seemed to understand that issue then, your letter suggests a departure from this conversation)   It is irrelevant whether Mr. Nadal is a corporate designee for either of the corporate entities in scheduling his deposition.   In the event any of us believe we need additional time with any of these witnesses after having taken the deposition for up to 7 hours, we can discuss it, and if we cannot agree, we can seek relief from the Court

The assumption clearly indicated in your letter, which was introduced for the first time in your letter, is that you have the right to depose my client as long as you desire, and each of those days will be before Mr. Nadal's deposition is taken   This is not the understanding of the parties, nor is it consistent with the Rules   While I was willing to work with you on a scheduling of two days' apiece, your declared intent to depart from our earlier discussions causes me to back up and insist on compliance with the Rules, to protect my client   I repeat that there is nothing about the allegations in this case that should justify more than 7 hours of deposition of my client   The language issues for some of the potential deponents caused all of us to think that there may be justification, depending upon the circumstances, for more than 7 hours   That event has not yet arisen.  We cannot possibly evaluate whether ANY deponent will take more than 7 hours until we have taken the first 7 hours.  While it has been my practice to evaluate whether there is a need after the 7 hours, and have on occasion cooperated in the scheduling of additional time, it has been RARE that more than 7 hours is truly needed, if the parties are prepared, organized and efficient   There was a reason the Rules were changed to limit to 7 hours - this may be one of those circumstances contemplated in so doing.

In the event you are not willing to provide dates for Mr. Nadal's and the corporate designees' depositions, all within the two weeks following Ms. Gaujacq's deposition, I intend to seek relief from the Court   I hope you will reconsider what I consider to be purely delay tactics and render my filing motions with the Court unnecessary

With respect to your letter respecting concerns about the discovery, I have similar concerns on your clients' discovery responses, but believe it is a waste of everyone's time to raise the issues prior to receiving the documents, which we will all receive today   My client will, however, be supplementing both the interrogatories and document responses shortly, which should allay your issues   If not, we can certainly talk further and we can address your clients' issues as well   As soon as I have gone through your clients' documents (and after sending you the 30(b)(6) notices which you are demanding immediately), I will address with you those deficiencies, and we can arrive at a mutually convenient time to cover all our issues   In any event, I am not available at your proposed time today, but again, I do not feel the request was made in good faith, given the documents have not been exchanged, and given the fact that my client will be supplementing shortly

01/10/06

Please get back to me quickly with the available dates of Mr. Nadal and the corporate designees, so that we may resolve that issue or seek immediate relief from the Court  Elaine

    -----Original Message-----
    **From:** DRegal@hnrlaw.com [mailto:DRegal@hnrlaw.com]
    **Sent:** Thursday, December 15, 2005 3:43 PM
    **To:** Elaine Bredehoft
    **Cc:** dclark@steptoe.com; Laura Hoguet; rcooper@steptoe.com
    **Subject:** Discovery Issues


    Elaine:
    Please see the letter attached below, which has also been sent to you by fax today

    Dorothea W. Regal
    HOGUET NEWMAN & REGAL, LLP
    10 East 40th Street
    New York, New York 10016

    Tel  (212) 689-8808
    Fax  (212) 689-5101
    dregal@hnrlaw com

01/10/06

# EXHIBIT 7

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S NEWMAN
DOROTHEA W REGAL
JOSHUA D RIEVMAN
EDWARD P BOYLE
SHERYL B. GALLER
IRA J LIPTON

TEL (212) 689-8808
FAX (212) 689-5101
www hnrlaw com
hnr@hnrlaw com

December 19 2005

SARAH K BARICKMAN
KATHLEEN L. LOWDEN
RANDI B. MAY

EDNA R SUSSMAN, OF COUNSEL

**By Facsimile**

Elaine Charlson Bredehoft, Esq.
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, VA  20190

Re: Gaujacq v. EDF, et al.

Dear Elaine:

I write on behalf of all defense counsel in response to your e-mail of December 19, 2005, regarding my letter to you of December 16, 2005 about discovery issues concerning (1) the interrogatory responses you served on December 12, 2005 and (2) deposition scheduling.

You have failed to respond to our substantive concerns about the deficient interrogatory response of the plaintiff, and you have refused to agree to our request regarding the amount of time for the deposition of your client, instead unilaterally reducing the amount of time you had previously offered for her deposition. You declined to meet and confer with us by telephone today, as we had requested, but you did not offer an alternative time and, in fact, appear to have ignored our request to meet and confer

Please provide us your earliest available times for a telephone conference on Tuesday or Wednesday of this week (December 20 or 21) or we will conclude that you are unwilling to meet and confer on these important issues, and we will so indicate to the Court.

## Plaintiff's Non-Responsive and Evasive Interrogatory Response

You have failed to address the serious deficiencies in plaintiff's interrogatory response that we raised in my letter to you, and you have failed to respond to our request to meet and confer on this issue. We reject the notion that you may simply dismiss our

## HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 19, 2005
Page 2

request to meet and confer about the sufficiency of your client's interrogatory responses. Our concerns about the deficiency of plaintiff's interrogatory response cannot be derailed by your vague assurance of future supplementation or by your protestation that "it is a waste of time" to raise these deficiencies before receiving plaintiff's documents. The substantive deficiencies in plaintiff's interrogatory response cannot be cured by a document production because the deficiencies are unrelated to the documents. Furthermore, we have now received and reviewed plaintiff's document production, and the deficiencies in plaintiff's interrogatory response remain.

We have identified specific failures to respond at all, non-responsive answers and/or evasive answers in your client's interrogatory responses in writing, and we are entitled to have the plaintiff's answers to those questions in advance of our deposition of the plaintiff. We want to resolve this issue promptly as the date you have offered for Ms. Gaujacq's deposition is fast approaching.

### Deposition Scheduling

Gratuitous claims that one party or the other "does not intend to honor the agreement" or "is not acting in good faith" will not advance the cause of reasonable cooperation. We have never agreed that the Nadal deposition and the 30(b)(6) deposition(s) would take place within 2 weeks of the Gaujacq deposition. We acknowledge the parties' earlier general discussions that Plaintiff's deposition would be taken first, with Mr. Nadal's deposition to follow as soon as practical thereafter. We also acknowledge your desire to accomplish promptly thereafter the depositions of the corporate defendants, although we have always said that the as-yet-unknown scope of your deposition notices of the corporations will obviously affect the staffing and the timing of those depositions in relation to the others. Furthermore, we have always anticipated that Plaintiff's deposition would be completed before moving on, and that we would have her full and complete discovery responses reasonably well in advance of her deposition. Beyond this general understanding of how the depositions would proceed, we do not agree with your characterizations and have the following concerns about your statements in your e-mail of this morning regarding deposition scheduling.

Although you initially offered the plaintiff for deposition on two consecutive days in January (January 19-20), which we accepted in writing, you have now rescinded that offer and have stated that you will make the plaintiff available for only 7 hours on January 20. This is unworkable for us. As stated in my letter to you of December 16, 2005, we are confident that the defendants, collectively, will require more than one seven-hour day to complete a full deposition of the plaintiff, due to the fact that she has filed an extremely lengthy complaint, with 354 paragraphs of allegations, and the fact that there are three defendants. Your proposal to wait until the end of the one day you have now offered and then schedule the follow-up deposition time is not acceptable. We

## HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 19, 2005
Page 3

need to know, in advance, the amount of time available to all defendants for this deposition for planning purposes and for purposes of allocating time among counsel for the defendants.

With respect to the other deposition scheduling issues you raised in your e-mail, we do not anticipate any problem making Mr. Nadal available for deposition in his personal capacity within two weeks of Plaintiff's deposition. Obviously, though, we need to know when Plaintiff's deposition will be -- a presently moving target depending on the date we obtain full discovery responses and on resolution of her deposition schedule. Nor is there likely to be a problem scheduling the depositions of the corporate defendants reasonably promptly thereafter, depending upon what your deposition notices may seek. We could not possibly now commit to the availability of unknown corporate designees over unknown issues. Even attempting such scheduling makes little sense until the issues of the timing of complete discovery responses from your client and the length of her deposition are resolved.

Please provide us with your earliest available times on December 20 or 21, 2005 when we can confer with you on these matters, in compliance with Local Civil Rule 7(m).

Very truly yours,

Dorothea W. Regal

cc:    Ronald S. Cooper, Esq.
       David Clark, Esq.

# FAX TRANSMISSION
# HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
Tel: (212) 689-8808
Fax: (212) 689-5101

| To: | Elaine Charlson Bredehoft, Esq. Charlson Bredehoft & Cohen, P.C. | Date: | December 19, 2005 |
|---|---|---|---|
| **Fax #:** | (703) 318-6808 | **Pages:** | 4 (Including Cover Sheet) |
| **From:** | Dorothea W. Regal | | |

COMMENTS:

The information contained in this telecopy message is confidential and is intended only for the exclusive use of the individual or entity named above and may contain information that is attorney work product, privileged, confidential or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this message in error, please notify us immediately by telephone (call collect) at 212-689-8808 to arrange for its return. Thank you for your courtesy.

# EXHIBIT 8

# CHARLSON BREDEHOFT & COHEN, P.C.

### ATTORNEYS AND COUNSELORS AT LAW

CURTIS L. CHARLSON (REI)*
ELAINE CHARLSON BREDEHOFT◊
PETER C. COHEN◊
KATHLEEN Z QUILL●◊
JENNIFER A. HARPER

* ADMITTED ONLY IN MINNESOTA
◊ ALSO ADMITTED IN D.C.
● ALSO ADMITTED IN MASSACHUSETTS

December 21, 2005

**BY EMAIL**
Ronald S. Cooper, Esq.
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave., NW
Washington, D.C. 20036

> *Re:*   ***Gaujacq v. Electricite de France International North America, et al.***
> ***Civil Action No. 1:05CV0969***

Dear Ron:

I have sent a separate letter to Ms. Regal responding to her letters and emails. Out of courtesy to her, I am not copying you, but she may wish to share the letter with you. In any event, I am enclosing the Notice of Deposition of Mr. Nadal, setting his deposition for January 26, 2006 at 9:30 a.m. in our offices. In the event that particular day is not convenient for you, I will be happy to work with you, but only with respect to within a few days. It is clearly my impression that there is a studied intent to delay in producing the defendants for deposition, and rather than wasting our clients' time and money in that endeavor, I am giving you more than a month's notice, it will take place shortly after my client's deposition on January 20, 2006, and my notice is consistent with our report to the Court. I recognize New York lawyers may be accustomed to practices that may be more acceptable there, but I think it is time to move forward with this litigation and stop wasting everyone's time.

I have reviewed the discovery responses sent over on behalf of Mr. Nadal. I have the following concerns and would appreciate your taking the time over the next two weeks to address these, and supplement your responses. In the event there are any remaining issues following your careful review of the issues and supplementation, I would appreciate your finding some time during the week of January 2 to schedule a conference call to discuss the issues.

Ronald S. Cooper, Esq
December 21, 2005
Page 2 of 5

## THE MARKING OF "HIGHLY CONFIDENTIAL" DOCUMENTS:

You may recall that the discussions leading up to even including a "Highly Confidential" designation arose out of your stated concern that EDF or EDFINA may be harmed by trade secret disclosures, given that Ms. Gaujacq works for someone they consider a competitor. The idea that Mr. Nadal may have any markings for Highly Confidential you only raised in our last discussion, and you may recall that it was in the context of something that would be extreme, such as a significant health issue or something unrelated to the issues in this case or the employment.

You may imagine my shock when I received no documents from EDFINA that were marked Highly Confidential, but the vast majority of Mr. Nadal's WERE marked Highly Confidential, including many in French, which we also agreed would try to be avoided at all costs.

I am going to assume that you were unaware of these labels, and I ask you to go through them carefully. I am officially challenging the designations on EACH of the documents marked Highly Confidential, and asking your office to remark them and reissue them. In the event you will not agree to that, for EACH document, please explain, in writing, the basis for the designation and why you believe Ms. Gaujacq, a party in this case, should not and cannot be privy to the contents of the document, even with the conditions that it be used solely for this litigation.

Absent a significant turnaround on this, I intend to seek a modification of the Protective Order, seeking to exclude any ability to mark a document "Highly Confidential." I, of course, will be happy to listen to you fully after you have reviewed the documents and responded with the individual reasons for each documents' designation as "Highly Confidential" (if you have not reconsidered and reissued them without these markations). This is precisely why I opposed such designations in the first place, and you specifically assured me that this would not be done. In fact, you told me you could not imagine that Mr. Nadal would have ANY documents marked Highly Confidential. I recall that very specifically and relied upon it in agreeing to the language of the Protective Order. I truly am hoping it was a mistake and will be corrected by the time I return to the office on January 3, 2006.

### *Discovery Responses:*

I have the following issues with Mr. Nadal's discovery responses. Again, I would appreciate your taking the time to seriously consider these, as you will note Ms. Gaujacq has done in supplementing her Interrogatory responses and Document responses. Our time is far better served on things other than needless discovery disputes. I am hopeful you will supplement your responses, also by January 3, 2006, with the following in mind:

Ronald S. Cooper, Esq
December 21, 2005
Page 3 of 5

### *Mr. Nadal's Responses to Plaintiff's First Set of Interrogatories:*

Overall, Mr. Nadal failed to respond to Plaintiff's request to identify all documents reflecting his responses to each of the Interrogatories. This request was made for all but Interrogatory Nos. 1 and 20.

Further, the following deficiencies exist as to Mr. Nadal's responses to specific Interrogatories propounded in Plaintiff's First Set of Interrogatories:

Interrogatory No. 4:  Mr. Nadal failed to completely respond to Interrogatory No. 4 in that he did not respond to Plaintiff's request to provide "all communications you had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms. Gaujacq." Further, with regard to his written response contending that (1) Plaintiff allegedly failed to "develop and apply sound financial and management procedures," (2) Plaintiff allegedly had "poor personnel administration," and (3) "EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA," Mr. Nadal has failed to provide specific details of these allegations as requested by Interrogatory No. 4.

Interrogatory No. 5:  Mr. Nadal failed to completely respond to Interrogatory No. 5 in that he did not respond to Plaintiff's request to provide "the date of discovery, all persons whom you or the Company has not hired or fired because of the same or similar facts, and the reasons why this would have caused you or the Company not to hire or to fire Ms. Gaujacq."

Interrogatory No. 6:  Mr. Nadal failed to completely respond to Interrogatory No. 6 in that he did not respond to Plaintiff's request to provide "the names of all persons who heard the alleged statement, and the     place that the alleged statement was made" for the two statements referenced in his written response (July 12, 2004 and July 16, 2004). He also failed to identify which documents he believes contain statements against Ms. Gaujacq's interest.

Interrogatory No. 7:  Mr. Nadal failed to completely respond to Interrogatory No. 7 in that he did not respond to Plaintiff's request to "state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms. Gaujacq during her tenure as President of EDFINA."

Interrogatory No. 8:  Mr. Nadal failed to completely respond to Interrogatory No. 8 in that it is unclear whether he listed "all reasons why [he] had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts" and he did not respond to Plaintiff's request to "identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts."

Ronald S. Cooper, Esq.
December 21, 2005
Page 4 of 5

Interrogatory No. 15: Mr. Nadal failed to completely respond to Interrogatory No. 15 in that he did not respond to Plaintiff's request to identify "who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms. Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s)." Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Additionally, it is unclear whether the document described was produced by Mr. Nadal. If so, please provide the Bates number of such document.

Interrogatory No. 18: While Mr. Nadal responded to this interrogatory in general terms, he failed to completely respond to Interrogatory No. 18 in that he did not respond to Plaintiff's request to "explain *in detail* all action taken by you as a result of Ms. Gaujacq's complaints to you about your treatment of her, made verbally and in writing." Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Additionally, it is unclear whether the document described was produced by Mr. Nadal. If so, please provide the Bates number of such document.

Interrogatory No. 19: Mr. Nadal failed to completely respond to Interrogatory No. 19 in that he did not respond to Plaintiff's request to give the reasons for the timing of "his demand, on or about July 12, 2004, that Ms. Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office *by the next day*"

Interrogatory No. 20: Mr. Nadal failed to completely respond to Interrogatory No. 20 in that he did not respond to Plaintiff's request to "describe all facts upon which you base, or which support, any such denial" to Plaintiff's Request for Admissions.

### *Mr. Nadal's Responses to Plaintiff's First Request for Production of Documents:*

Pursuant to Federal Rules of Civil Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Because Mr. Nadal did not produce the documents as they are kept in the usual course of business, he was to organize and label the produced documents "to correspond with the categories in the request." Mr. Nadal failed to comply with Rule 34(b) as to every request. Please identify specifically, by Bates numbers, which documents produced are responsive to which request.

Further, it seems Mr. Nadal is only producing documents in his "personal" possession. Please clarify how Mr. Nadal defines "personal" and specify which documents he claims are not in his personal possession. In the event he has access to or control, he is obligated to provide these documents. Further, if any documents were withheld based upon the asserted privileges,

Ronald S Cooper, Esq
December 21, 2005
Page 5 of 5

please specify which documents Mr Nadal is withholding and give sufficient details to allow
Plaintiff to assess whether Mr Nadal's privilege designations are legally appropriate  See
Fed R Civ Proc  34(b)

          After the above designations are provided, we will be in a better position to assess to
which responses Mr Nadal has failed to produce documents. However, it is clear that Mr Nadal
is claiming, in response to Request No 22, that his personnel file is not in his personal
possession and presumably has, therefore, not provided responsive documents to this request
However, this claim directly contradicts Mr Nadal's statement in his Initial Disclosures filed
October 27, 2005 where he stated that documents in Category 13 ("Documents in the personal
files of Christian Nadal relating to Plaintiff's claims and the defenses thereto, as well as
documents relating to his prior professional experience and qualifications") are "in the
possession, custody or control of Mr Nadal." Initial Disclosures of Defendant Christian Nadal
at 11  Accordingly, please produce Mr Nadal's personnel file and other documents requested in
Document Request No 22

          I would appreciate your supplementing the document requests with the specific bate
stamp numbers for each request  In addition, I ask you to take a look at all the discovery, review
what Ms Gaujacq has done in good faith to take meaningless discovery disputes out of this
litigation, and to either change the designations of each document marked Highly Confidential,
or provide a detailed explanation for each document as set forth above

          As we discussed some time ago in a conference call (during which I gave extensions to
EDF and EDFINA until January 3, 2006 because of my holiday schedule), I will be serving as a
substitute judge tomorrow, our office is closed on Friday, and I will be out of town all next week
for the holidays, with my family  Our office is closed on January 2, 2006  I will be returning to
the office on January 3, 2006   I am hopeful I am greeted with cooperation, full responses and
usable documents, and an ability to spend our time productively, representing our clients in this
litigation

          Thank you for your consideration  I hope you have a wonderful holiday and New Year!

                              Very truly yours,

                              Elaine Charlson Bredehoft

cc:    Ms Catherine Gaujacq

# EXHIBIT 9

# CHARLSON BREDEHOFT & COHEN, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

CURTIS L. CHARLSON (RET.)*
ELAINE CHARLSON BREDEHOFT◊
PETER C. COHEN◊
KATHLEEN Z. QUILL●◊
JENNIFER A. HARPER

December 21, 2005

\* ADMITTED ONLY IN MINNESOTA
◊ ALSO ADMITTED IN D.C.
● ALSO ADMITTED IN MASSACHUSETTS

**BY EMAIL**
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

  **Re:** ***Gaujacq v. Electricite de France International North America, et al.***
    ***Civil Action No. 1:05CV0969***

Dear Dorothea:

  Thank you for your discovery responses, your most recent letter and your email. Although my earlier email already addressed the issues in your letter, there appears to be quite a communication problem such that I was of the impression that we were two ships passing in the night. Again, after thinking things through carefully, rather than responding rapidly with something that would be less than satisfactory to all of us, I am endeavoring to address all of the issues.

  As you may recall from our earlier discussions, including my granting you an extension on your responses until January 3, 2006, I will be out of the office from December 22 through January 2. I have worked very hard to get all of this out to you prior to my departing, as you indicated you would be working during this period, so that you can spend the time working through these issues. I also think it would be helpful to have my concerns prior to providing your next set of discovery, so that you can comply with the Fed. R. Civ. P. 34(d) in that second set, as well as revise the earlier discovery responses, so that I may have those at the same time.

  I paid careful attention to your letter respecting your perceived deficiencies in my client's discovery responses, as well as your email requesting specific numbering on the documents produced (which we obviously were unable to do on the disk at that time). I hope that you will do the same. You will be receiving supplemental responses to the Interrogatories, which I believe address your issues. We will submit the signature page for the Supplemental responses after the holidays, when Ms. Gaujacq becomes available

Dorothea W Regal, Esq.
December 21, 2005
Page 2 of 5

again   In the event you have any additional questions or issues, I will be happy to
address them in a global conference call during the week of January 3   I am hopeful we
can schedule that at a mutually convenient time to clear up any remaining issues, such
that if motions are required, we can file them simultaneously to minimize the burdens and
judicial resources of the Court and ensure that motions are not being filed while opposing
counsel are out of town

       With respect to the depositions, I respectfully request that you go back and read
the prior emails on this issue   While I was willing to discuss the possibility of EACH of
the parties submitting to two days of deposition, I was not interested in the "give" with
"no take "  Once it became clear that you were looking for a completely one-sided deal
(all give on my part, all take on yours), I believed it was in everyone's best interest to rely
on the Rules and address any potential or hypothetical issue at a later date   Therefore,
Ms  Gaujacq will be produced on January 20, 2006 for 7 hours, and you should plan
accordingly   I am sending you Notices of Deposition for Mr  Nadal, and each of the
Corporate Designees today, setting them for specific dates shortly after the deposition of
Ms  Gaujacq   While our recollections differ on the representations and discussions of the
parties on timing of the depositions, it is not really a good use of our clients' money to
continue the word or memory battle   I am willing to work with you on arranging these
dates within a few days of the Notices, but since you have more than a month to plan,
they should appear when noticed and that will end the dispute and my perceptions of
delay tactics   I expect to be able to take each of the depositions for up to 7 hours, and if I
need more time because of the circumstances that arise, I will discuss this with counsel,
and if I am unable to resolve it, I will seek permission from the Court to extend them.  I
expect you to do the same with respect to Ms  Gaujacq

       With respect to the Requests for Production of Documents, I noted that you have
not complied with Fed  R  Civ  P  34(d) in that you have not identified which documents
are responsive to which requests   While we did not do that as well as possible in our first
set and instead provided disks for your convenience and faster review, we again listened
to your concern, and have numbered the documents and fully complied with Fed  R  Civ
P  34 (d)   I ask that you supplement with these specific responses, and take care to
comply in your responses being provided on January 3, 2006

       With respect to the specific Interrogatories, I have the following concerns that I
would appreciate your addressing and supplementing over the next two weeks:

       In several of the Interrogatory responses, EDFINA quotes the language of Rule
33(d) claiming that the burden is substantially the same for Ms  Gaujacq as for EDFINA
to obtain the answer from the documents.  However, it is incumbent upon EDFINA to
identify the specific documents that provide all of the information, such that Ms  Gaujacq
would be able to review specific documents and ascertain the information   This has not
been done   Each Interrogatory response in which EDFINA relies upon this response
needs to have the specific documents identified that provide the information   The

Dorothea W. Regal, Esq
December 21, 2005
Page 3 of 5

Interrogatories in which this response is given are: Nos. 2, 3, 4, 6, 8-12, and 14-20  I
also request that you examine further whether in fact the burden is equivalent  It appears
that it is not  This is particularly so given that many of the documents produced are in
French.

**EDFINA's Response to 1st Interrogatories:**

I have the following additional, specific comments with respect to the
Interrogatories:

Int #2: Specific knowledge of witnesses not detailed

Int #3: Doesn't provide dates or specifics that Plaintiff was allegedly delinquent
in providing information to NuStart

Int #4: States EDFINA is unaware of favorable attestations to Plaintiff's work
performance, which is highly unlikely and we believe does not reflect true diligence in
responding to this Interrogatory

Int #5: Unresponsive; the Interrogatory asks for complaints made against any
other member of EDFINA's management, not just Nadal

Int #6: Does not include communications with Plaintiff, efforts by the Company
to improve Plaintiff's performance, or specific damage suffered as a result  Fails to
provide specific details regarding Plaintiff's alleged failure to "develop and apply sound
financial and management procedures" and Plaintiff's alleged "poor personnel
administration."  Also fails to provide specific details supporting the contention that
"EDFINA has discovered material errors in official EDFINA filings that Gaujacq made
or permitted to be made during the time she served as President of EDFINA."

Int #7 - EDFINA provides no details as to the policies, practice or procedures
(cannot contend has no knowledge)

Int #8 - EDFINA provides no specific information, including the identity

Int #9 – If EDFINA is unaware of any, it needs to so state; unresponsive

Int #10 – Wholly unresponsive - states that only EDF knows – unlikely EDFINA
has no knowledge  Even if EDF was the primary or sole decision maker, EDFINA would
still be aware of the reasoning and/or facts surrounding the decision

Int #11: Wholly unresponsive to the Interrogatory.  Even if EDF was the primary
or sole decision maker, EDFINA would still be aware of the reasoning and/or facts
surrounding the decision

Int #12: Is not responsive in that the Interrogatory asks to compare/contrast the
duties of Gaujacq and Nadal, whereas this response simply lists the duties of each
(without stating how the duties are the same and different).

Int #13: Wholly unresponsive to the Interrogatory.  Even if EDF was the primary
or sole decision maker, EDFINA would still be aware of the reasoning and/or facts
surrounding the decision

Int #14: Does not describe why and does not list other individuals whom Nadal
had removed from the list

Dorothea W. Regal, Esq
December 21, 2005
Page 4 of 5

       Int #16: Not responsive and does not indicate why audit was conducted in US offices

       Int. #17: Wholly unresponsive to the Interrogatory  Even if EDF was the primary or sole decision maker, EDFINA would still be aware of the reasoning and/or facts surrounding the decision.

       Int #18: Wholly unresponsive to the Interrogatory  Even if EDF was the primary or sole decision maker, EDFINA would still be aware of the reasoning and/or facts surrounding the decision

       Int #19: Does not list other individuals who were given less than three months notice

       Int #20: Unresponsive; EDFINA would have had to make representation one way or the other

       Int #21: Does not provide the detailed facts supporting each denial

In addition, I am assuming, because of EDFINA's statements, that EDF will be fully responding to the following Interrogatories:  3, 4, 8, 10, 11, 13, 17, 18, 19, and 20.

## EDFINA's Response to 1st RFP:

       I have the following additional, specific comments with respect to the Request for Production of Documents:

       Again, no documents are identified in the actual Response, so it is difficult to ascertain what has truly been provided in response to each Request  We have done our best to parse through them, but reserve the right after you have supplemented in compliance with the Rules to provide further concerns:

       It appears EDFINA is avoiding production of some documents by arguing that some documents are not in their control; they are in EDF's possession  We expect this to be resolved by EDF producing them on or before January 3, 2006  We would appreciate your ensuring these are produced

       EDFINA has refused to provide documents in response to the following requests: Nos  **23** (performance evaluations for similar employees), **24** (personnel file of Nadal - this in spite of identifying this in EDFINA's Initial Disclosures), **26** (identity and level of participation of decision makers); **43** (names and addresses of employees), **44** (all complaints), **45** (EEO-1), **46** (comparative evidence), **52** (complaints), **54** (formal complaints), and **55** (monitoring program) on the grounds (among others) that this is not a pattern or practice claim or that it's an unwarranted invasion of privacy of other employees (these all request, either directly or indirectly, info on other employees)  As you know, these are not legitimate bases for objection, and the conduct of the company with respect to similar others is not only relevant, but also admissible. The United States Supreme Court has spoken to this, as has the District of Columbia Courts; **70** (docs gather in prep of defense, which may be discoverable and subject to a blanket objection) and **72**

Dorothea W. Regal, Esq.
December 21, 2005
Page 5 of 5

(request for admissions – not legitimate basis for objection).  I ask you to review these objections carefully, and if you believe you have case law to support your objections, I would appreciate receiving the citations, as I am unaware of such law.

In addition, EDFINA references no documents supporting any claim.

I am hopeful that upon receiving and reviewing Ms. Gaujacq's supplemental responses, and seeing that she has engaged in a serious effort to remove discovery disputes from this litigation, that you will consider the same.  The Rules, this Court, and the case law, all support liberal discovery.  We should truly not cause our clients to spend significant sums of money on meaningless and unnecessary discovery disputes. Let's get this case litigated and to trial, where they can have their day in Court, and air their disputes in a constructive manner, consistent with our judicial system and the Constitution.

I look forward to receiving full responses to all the discovery upon my return to the office on January 3, 2006.  In the meantime, I wish you and your family a happy holiday and Happy New Year.

Very truly yours,

Elaine Charlson Bredehoft

cc:     Ms. Catherine Gaujacq

# EXHIBIT 10

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW
10 EAST 40th STREET
NEW YORK, NEW YORK 10016

TEL (212) 689-8808
FAX (212) 689-5101

www.hnrlaw.com
hnr@hnrlaw.com

LAURA B HOGUET
FREDRIC S. NEWMAN
DOROTHEA W. REGAL
JOSHUA D. RIEVMAN
EDWARD P BOYLE
SHERYL B. GALLER
IRA J LIPTON

SARAH K. BARICKMAN
KATHLEEN L LOWDEN
RANDI B. MAY

EDNA R. SUSSMAN,
OF COUNSEL

January 7, 2006

**By E-Mail**
Elaine Charlson Bredehoft, Esq.
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, VA 20190

Re: <u>Gaujacq v. EDFINA et al.</u>

Dear Elaine:

I write in response to your letter of December 21, 2005. The objections you state regarding the discovery responses of defendant Electricité de France International North America, Inc. ("EDFINA") to plaintiff's discovery demands served October 28, 2005, are unfounded. I have reviewed EDFINA's responses and stand on the objections and answers made therein.

Your objection to the fact that EDFINA did not respond for its parent company, co-defendant Electricité de France, S.A. ("EDF"), is baseless. They are two separate companies. EDF (the French parent) was Ms. Gaujacq's employer and the one that made the decisions concerning her employment. The subsidiary cannot respond for the parent, as I advised you when you served the discovery demands. You did not ask for EDF responses.

You chose to omit EDF from your discovery demands, addressing them solely to EDFINA. I wrote you upon receipt of the discovery demands, by letter of November 4, 2005, alerting you to this omission and advising you that EDFINA could not and would not respond on behalf of its parent, EDF. I suggested that, if the omission was inadvertent, you amend the discovery demands to add EDF, and I requested that you let me know promptly what you intended to do. The scope of the response, as well as our effort as counsel in responding to the demands, was impacted profoundly by who the respondent would be. Yet you failed to respond

to that letter altogether. Three weeks later, as the response deadline approached, I inquired again by e-mail dated November 18, 2005. Your response in your e-mail of November 18, 2005 was: "I intentionally did not include EDF in the first set." The consequence of that choice is that you did not get EDF responses to those demands.

EDFINA's responses fully and fairly responded to all requests within the scope of EDFINA's competence and knowledge.

Plaintiff's subsequent discovery demands addressed to EDF were served November 21 and 22, 2005 (and received November 28, 2005). They were all but identical to, and entirely duplicative of, plaintiff's previous demands to EDFINA. There was no legitimate reason for you not to address EDF and EDFINA in the same set of discovery demands in the first instance and thereby avoid the unnecessary time and expense of defense counsel's preparing unnecessary and duplicative responses to extremely excessive demands. EDF and EDFINA have responded as follows to the following demands:

| | | |
|---|---|---|
| Requests to Admit to EDFINA | (253 requests) | EDFINA response 12/12/05 |
| Requests to Admit to EDF | (253 requests) | EDF response 1/3/06 |
| Interrogatories to EDFINA | (21 requests) | EDFINA response 12/12/05 |
| Interrogatories to EDF | (19 requests) | EDF response 1/3/06 |
| First Document Request to EDFINA | (72 requests) | EDFINA response 12/12/05 |
| First Document Request to EDF | (72 requests) | EDF response 1/3/06 |
| Second Document Request to EDFINA | (19 requests) | EDFINA response 1/3/06 |
| Second Document Request to EDF | (19 requests) | EDF response 1/3/06 |

Your objection that EDFINA did not list or label by category which documents were produced in response to which specific requests is also baseless. Rule 34(b) of the Federal Rules of Civil Procedure permits the respondent to choose to produce documents as they are kept in the usual course of business, and that is what was done in this case. The documents produced by EDFINA in response to plaintiff's demands were produced as they were kept in the usual course of EDFINA's business.

Similarly, Rule 33(d) of the Federal Rules of Civil Procedure explicitly permits EDFINA in its interrogatory responses to refer to the documents produced pursuant to plaintiff's document demands in lieu of undertaking itself the task of ascertaining the information from the documents. Thus, your objection to EDFINA's references to the produced documents has no basis. The fact that many of the documents are in French is an inescapable fact of this case since your French client brought this action in the United States against her French employer in Paris, its subsidiary in Washington, D.C. and Monsieur Nadal. Nearly all of the communications between the plaintiff and the defendants are naturally in French, as are most of both companies' business records. That fact does not affect the burden of ascertaining the information from the documents produced because plaintiff herself is French.

EDFINA objected to requests seeking information and documents looking for any trace of a "pattern or practice" of discrimination or regarding unnamed other employees because there

is no allegation of any kind in this disparate treatment case, which alleges sexual harassment by the individual defendant Nadal, that would in any way support a "fishing expedition" into personnel matters of individuals not involved in this case. Responses have been provided as to Mr. Nadal.

As to your various comments about specific interrogatory responses, EDFINA has provided good faith responses to the substance of each interrogatory within its competence and its knowledge. As Mr. Cooper pointed out in his letter to you of January 3, 2006, responding to similar objections that you made regarding the discovery responses of defendant Nadal, the Federal Rules of Civil Procedure set a limit of 25 interrogatories, including all discrete subparts, that a party can request and to which the respondent is required to respond. Although plaintiff's interrogatories to EDFINA had 21 numbered interrogatories, nearly every one of those interrogatories contained 2 or more discrete subparts, far exceeding the 25-interrogatory limit. EDFINA was not required to respond to more than 25 discrete interrogatories. While EDFINA could have simply chosen 25 discrete interrogatories to address, EDFINA addressed the essence of each interrogatory and responded fully and fairly with appropriate detail.

Issues regarding the scheduling of depositions referenced in your letter are the subject of defendants' Motion to Compel and for a Protective Order and are fully addressed in defendants' papers in support of that motion.

Very truly yours,

*Dorothea W. Regal*

Dorothea W. Regal

cc: Ronald S. Cooper, Esq