## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) |
| v | )    No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE<br>INTERNATIONAL NORTH AMERICA,<br>INC., et al. | ) |
| Defendants | ) |

## MOTION TO COMPEL

Plaintiff Catherine Gaujacq, by counsel, hereby moves this Court for an Order,

pursuant to Fed. R. Civ. P. 37, to compel responses to discovery requests from defendant

Electricite de France International North America ("EDFINA")  The grounds for this

Motion are set forth in the attached Memorandum.

January 11, 2006

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
  Catherine Gaujacq

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 1:05CV0969 (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC., et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**
**DISCOVERY RESPONSES FROM DEFENDANT EDFINA**

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby moves this Court for an Order compelling full and complete discovery responses from defendant Electricite de France International North America ("EDFINA"). Specifically, plaintiff moves this Court to compel EDFINA to respond fully and completely to plaintiff's First Set of Interrogatories and plaintiff's First Request for the Production of Documents.

**CERTIFICATE UNDER LOCAL RULE 37(E)**

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally and in writing,[1] to resolve the discovery matters at issue prior to placing this matter before the Court. Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the below issues.

---

[1] *See* Exhibit 1, letter from Ms. Bredehoft to Ms. Regal dated December 21, 2005; Exhibit 2, letter from Ms. Regal to Ms. Bredehoft; and Exhibit 3, series of e-mails attempting to schedule a conference to discuss outstanding discovery issues.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005.    In her complaint, Ms. Gaujacq (i)

alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the

common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal

Pay Act, 29 U S C. § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of

good faith and fair dealing.[2]  Defendants filed their answers to this complaint on September 12,

2005   A scheduling order was entered on October 14, 2005.  In this Order, the Court set the

deadline for fact discovery on May 31, 2006   The trial is scheduled to begin on April 2, 2007.

Plaintiff served her first discovery requests on Mr. Nadal and Electricite De France

International North America, Inc. ("EDFINA") on October 28, 2005.  Mr. Nadal and EDFINA

served their written responses on December 13, 2005 and sent documents out by Federal Express

on December 16, 2005.

## PRELIMINARY STATEMENT

The Rules of Civil Procedure and the Local Rules of this Court permit, and indeed require,

Plaintiff to move the Court to compel proper responses to Plaintiff's discovery requests.  The

Federal Rules provide that a party "may apply for an order compelling disclosure or discovery . . . if

. . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a

---

[2] The claims of violations of Title VII and breach of contract and the duty of good faith and fair
dealing are alleged only against the corporate defendants. The claim of tortious interference with
contractual relations and business expectancies is alleged only against Mr. Nadal

request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested . . . " Fed. R. Civ. P. 37. Moreover, "an evasive or incomplete . . . answer, or response is to be treated as a failure to . . . answer, or respond." Fed. R. Civ. P. 37(a)(3). Furthermore, if a party objects to an interrogatory, it "shall answer to the extent the interrogatory is not objectionable," Fed. R. Civ. P. 33(b)(1), and if a party objects to a request for production, "the part [of the objection] shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). In fact, the Federal Rules also prescribe that "the failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order . . ." Fed. R. Civ. P. 37(d). This Court's local rules provide that "[a]fter a discovery request is objected to, **or** not complied with, within time, and if not otherwise resolved, it is the **responsibility** of the party initiating discovery to place the matter before the Court by a proper motion . . . ." Local Rule 37.

## STATEMENT OF FACTS

Ms. Gaujacq was President of EDFINA from August 1, 2000, until May 31, 2004, having risen through management positions within EDF and EDFINA in the core energy generation business, and, most recently, in strategic consulting on behalf of the Company in the United States. Despite the size of the Company, Ms. Gaujacq was one of very few women to hold an executive level position and as President, was one of the highest ranked females in the Company. As President of EDFINA, Ms. Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all EDFINA activities and projects, identification of development opportunities in the American and Canadian electricity markets, representation of the Company in various trade associations relevant to the energy field, serving as a Director of the Board for EDF Group's United States

3

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging

technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she

was responsible for identifying and managing EDF's acquisition of enXco, a wind power

company; the establishment and development of a United States presence for Dalkia, an EDF

subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture

in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's

restructuring associated with the Company's privatization, Christian Nadal, a high level

executive with EDF, was being sent from France to the United States offices as a senior advisor

to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA

in the United States at the end of March 2004, without prior notice or explanation from the

Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the

Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA.  Mr.

Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract

that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new

expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31,

2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President.

Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President,

EDFINA and Manager of the Project, retaining management responsibility for generation and

Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq

submitted her resignation based on written assurances from the Company that her continued

mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

5

information and belief, no steps were taken to investigate and address her complaints of

discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms.

Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso.

Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on

the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter

received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later;* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that

when she returned to France she would occupy a management position of higher responsibility

and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility

with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for

her complaints of discrimination, harassment and unfair treatment. By letter dated October 7,

2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and

experience, was a demotion in every respect, and reneged upon the previous agreement of Mr.

Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of

its breach of her expatriation and employment contract with the Company. After declining the

mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

Bouton"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

Ms. Gaujacq properly served her First Set of Interrogatories and First Request for Production of Documents on EDFINA by first class mail on October 28, 2005. A copy of the Plaintiff's First Request for Production of Documents is attached as Exhibit 4, and a copy of

7

Plaintiff's First Set of Interrogatories is attached as Exhibit 5. Responses were due on November 30, 2005. EDFINA requested, and received, extra time to serve the responses. EDFINA served objections and incomplete responses on December 12, 2005. *See* Exhibit 6, EDFINA's Response to Plaintiff's First Set of Interrogatories and Exhibit 7, EDFINA's Response to Plaintiff's First Request for Production of Documents. On December 21, 2005, Plaintiff sent a letter to EDFINA's counsel requesting full and complete discovery responses and detailing the defects of EDFINA's responses. *See* Exhibit 1. Defendant responded on January 7, 2005, refusing to supplement its responses as requested. *See* Exhibit 2. An Order compelling responses to these requests is, therefore, both appropriate and warranted.

**I.**     **<u>EDFINA's Response to Plaintiff's First Set of Interrogatories</u>**

      A.     <u>EDFINA's Failure to Specify Business Records Upon Which it Relies</u>

      In Interrogatory Numbers 2, 3, 4, 6, 8-12, and 14-20, EDFINA references Federal Rules of Civil Procedure, Rule 33(d), claiming that the burden is substantially the same for Ms. Gaujacq as for EDFINA to obtain the answer from the documents. Rule 33(d) provides that "Where an answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ..., and the burden of deriving ... the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived .... ***A specification shall be in sufficient detail*** to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R.Civ. P. 33(d) (emphasis added)

      Contrary to Rule 33(d), EDFINA failed to identify the specific document or documents to which it referred at all, merely referencing documents produced generally. Accordingly, Ms.

Gaujacq is unable to review specific documents and ascertain the information on which EDFINA

relies for its response as is contemplated by Rule 33(d). Without such designation, the burden to

obtain the answer to the Interrogatories is clearly higher for Ms. Gaujacq. However, even if

EDFINA designates the referenced documents as is required by Rule 33(d), it is unlikely that the

burden for ascertaining the answer to the interrogatories will be equivalent, particularly given

that many of the documents produced and likely to be referenced are in French.[3]

      B      EDFINA's Failure to Meet the Minimum
              Burden of Ascertaining Information Within its Control

     In Interrogatory numbers 10, 11, 13, 18, 20, EDFINA fails to provide any response on the

grounds that EDF made the decision at issue or that EDF is the only entity in possession of the

information at issue. In Interrogatory numbers 8, 17, and 19, EDFINA provides only minimal

answers, again referring to EDF and its superior ability to answer the interrogatory. However,

even if EDF was the primary or sole decision maker, EDFINA would still be aware of the

reasoning and/or facts surrounding the decision because such decision directly impacted

EDFINA. It is implausible that EDFINA would not be advised by EDF of EDF's reasoning and

decisions with regard to an EDF employee working for EDFINA at the time.

      C.    EDFINA's Failures as to Specific Interrogatories

     In Interrogatory number 2, Plaintiff requests EDFINA to "describe fully the specific facts

within the knowledge of each witness and how that person came to possess such knowledge."

Exhibit 4 at 5. EDFINA responded by referencing it initial disclosures, which only vaguely and

---

[3] While EDFINA claims in its January 7, 2006 letter that Plaintiff cannot complain that the
burden is higher for her because the documents are in French because that is the nature of this
case in that Plaintiff chose to sue a French company, Rule 33(d) merely speaks of a comparison
of the burden on each party, without any adjustments for who Plaintiff chose to sue.

generally describe each witness's knowledge. See Exhibit 8, Initial Disclosures of EDFINA at 2-5. Plaintiff requires this information to ascertain which witnesses Plaintiff should depose, to prepare for all depositions and to prepare for trial witnesses, particularly for those witnesses that Plaintiff is unable to depose.

In Interrogatory number 3, Plaintiff requests EDFINA to describe in detail all adverse communications regarding Ms. Gaujacq's job performance, including the date of the complaint. Exhibit 4 at 5-6. While EDFINA responds to this Interrogatory, it fails to provide dates or specifics of all complaints and particularly about the complaint that Plaintiff was allegedly delinquent in providing information to NuStart. Exhibit 6 at 5-6.

In response to Interrogatory number 4, EDFINA states it is unaware of favorable attestations to Plaintiff's work performance. Exhibit 6 at 7. Plaintiff believes this is an incomplete response and does not reflect true diligence on the part of EDFINA in ascertaining the information sought. Plaintiff worked at EDFINA for 4 years, including in excess of three years as President. It is highly unlikely that Ms. Gaujacq received no "compliments, commendations, awards, raises, promotions, or other favorable or laudatory comments or statements" regarding her job performance during her tenure. Exhibit 4 at 6.

In response to Interrogatory number 5, Plaintiff asks for details concerning "each complaint any employee has made against any other employee of EDFINA in any management position, or against EDFINA itself, with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay, ...." Exhibit 4 at 6. EDFINA, however, responds with only a statement regarding complaints against Mr. Nadal. Exhibit 6 at 7-8. However, Plaintiff requested information about all complaints made against management or EDFINA. Such information is relevant to show Defendant's continuing discriminatory intent

10

and bad faith in discriminating against Plaintiff and to Plaintiff's allegations of retaliation and

discriminatory treatment to the extent Plaintiff's complaint were treated differently than those

not in a protected class.[4] Further, how EDFINA responded to other employees' complaints of

discrimination and/or retaliation is relevant to any claim it may make that it effectively enforces

any policy on discrimination and/or retaliation.

---

[4] The Supreme Court has made clear that other acts of discrimination, and the context in which such acts occur, are critical to an understanding of a hostile work environment:

> We have emphasized, moreover, that the objective severity of
> harassment should be judged from the perspective of a reasonable
> person in the plaintiff's position, considering "all the circumstances."
> In same-sex (as in all) harassment cases, that inquiry requires careful
> consideration of the social context in which particular behavior occurs
> and is experienced by its target . . . The real social impact of workplace
> behavior often depends on a constellation of surrounding circumstances,
> expectations, and relationships which are not fully captured by a simple
> recitation of the words used or the physical acts performed. Common
> sense, and an appropriate sensitivity to social context, will enable courts
> and juries to . . . [determine what] a reasonable person in the plaintiff's
> position would find severely hostile or abusive.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 1003 (1998) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993) (Ginsburg, J. concurring). See also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (June 10, 2002), McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Harris v. Forklift Systems, Inc., 114 S.Ct. 367 (1993); see also White v. United States Catholic Conference, 1998 WL 429842 *5 (D.D.C. May 22, 1998); Robinson v. Runyon, 149 F.3d 507 (D.D.C. 1998); Miller v. Poretsky, 595 F.2d 780 (D.C. Cir.1978), Johnson v. The Washington Times, 2002 WL 1335239 (D.D.C. June 18, 2002)(a legitimate inference of motive or intent may be drawn from such evidence), Hairston v. WMATA, 1997 WL 411946 (D.D.C. April 10, 1997); Webb v. Hyman, 861 F. Supp. 1094 (D.D.C. 1994); Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990) (allegation that supervisor "made inappropriate remarks to a number of hotel employees **other than the plaintiffs**" "suggests that an investigation might well have uncovered the problem," and is relevant to employer's liability) (emphasis added) (denying motion to dismiss); Dougherty v. Barry, 604 F. Supp. 1424, 1439 (D.D.C. 1985) (other acts of retaliation probative that a custom or policy of retaliation existed); Morris v. WMATA, 702 F.2d 1037 (D.C. Cir. 1983).

11

While responding to Interrogatory number 6 with several performance problems attributed to Ms. Gaujacq, EDFINA failed to give the details about these performance problems as requested, including "all communications EDFINA has had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present and the substance of the communication; all efforts by the Company to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage the Company has suffered as a result of such performance problem on the part of Ms. Gaujacq " Exhibit 4 at 6-7, Exhibit 6 at 8-10 For example, EDFINA failed to provide specific details regarding Plaintiff's alleged failure to "develop and apply sound financial and management procedures" and Plaintiff's alleged "poor personnel administration." Exhibit 6 at 10. EDFINA also failed to provide specific details supporting its contention that "EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA." *Id* This information is clearly relevant to Ms. Gaujacq's claims. Furthermore, Plaintiff requires this detailed information, at the minimum, to determine whether any alleged reasons for the treatment of Ms. Gaujacq are pretextual

In response to Interrogatory Number 7, EDFINA claims that it had no policy, practice or procedure for an employee making a complaint against it or any EDFINA employee with respect to discrimination, retaliation, and unfair or inappropriate treatment and provides no detail regarding the procedure EDF employees at EDFINA are to follow. Exhibit 6 at 11. It is unrealistic that EDFINA is unaware of the details associated with these procedures for the employees who work for it.

In response to Interrogatory number 8, EDFINA failed to state findings of any investigation noted and identify documents discovered during such investigation. Exhibit 6 at

12-13. Further, EDFINA stated only that EDF representatives handled any complaints directed at them without detailing how such complaints were handled. Exhibit 6 at 12. It is unbelievable that EDFINA would not be aware of actions taken by EDF with regard to Plaintiff who worked for EDFINA.

In response to Interrogatory number 9, EDFINA refused to reference or detail any statement it contends Ms. Gaujacq made that was against her interest. Exhibit 6 at 13. If EDFINA is unaware of any such statements, it needs to so state.

In response to Interrogatory number 12, while EDFINA responded by listing the duties of Mr. Nadal and then briefly listing duties of Ms. Gaujacq, it failed to compare and contrast the responsibilities and daily duties of these individuals as requested by Plaintiff in this Interrogatory. Exhibit 6 at 14-17. This information is clearly relevant to Ms. Gaujacq's equal pay claim, as well as the discrimination claims. As its answer stands now, EDFINA has failed to provide the relative value of the duties and responsibilities listed in order for a complete evaluation of the equality of the positions.

In response to Interrogatory number 14, while EDFINA details that Mr. Nadal did, in fact, remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts, it does not detail why this change was necessary other than to point to Ms. Gaujacq's change in job title. Exhibit 6 at 17-18. EDFINA further fails to list other individuals whom Mr. Nadal had removed from this list. *Id.* This is relevant to Plaintiff's claims of discrimination and retaliation.

D.     Number of Interrogatories

In response to Interrogatory Numbers 3, 4, 6 and 8, EDFINA objects on the ground that such interrogatories contain multiple interrogatories. Exhibit 6 at 5, 7, 8, 12. EDFINA further

objects to Interrogatory number 21 "on the ground that it violates the limit on number of interrogatories permitted to the plaintiff ..." Exhibit 6 at 23  In its January 7, 2006 letter, EDFINA uses this claim to justify its failure to answer any of the propounded interrogatories in the detail requested.[5]  EDFINA, however, never specifies how many interrogatories it believes were propounded by Plaintiff nor does it specify which of the purportedly additional interrogatories it chose not to answer based upon this reasoning.  If one seeks to claim that there are too many interrogatories, the solution is not to refuse to fully respond to <u>any</u> interrogatories and instead, challenge the number each time <u>any</u> response is challenged for deficiency, as was done here.

Plaintiff does not agree that she propounded more than the twenty-one numbered interrogatories.  Federal Rules of Civil Procedure, Rule 33, provides that "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all ***discrete*** subparts, ..." Fed R Civ P. 33 (emphasis added).  Within each interrogatory, Plaintiff provides a detailed explanation of what information she expects from Defendant when answering the interrogatories.  Such explanation only serves to clarify the actual interrogatory.  It does not create separate, *discrete* subparts  In the definition section of her First Set of Interrogatories, Plaintiff defines the words "identify," "describe," or "detail" as well as the terms "relating to," "regarding," and "referring to." Exhibit 4 at 3.  These definitions apply to all interrogatories.  However, instead of simply relying on Defendant to read and apply these definitions, Plaintiff details the information required for each interrogatory.  Accordingly, such explanation is not a

---

[5] In its letter EDFINA relies on a claim that "nearly every one of [Plaintiff's] interrogatories contained 2 or more discrete subparts,...." However, except as to the 5 interrogatories in which EDFINA arguably reserved this objection, EDFINA has waived any such objection and cannot rely on this argument as to those interrogatories to which it did not raise this objection

separate, discrete subpart and Plaintiff has not exceeded the number of interrogatories she is

allowed to propound. Even had Plaintiff exceeded twenty-five interrogatories, Rule 33 does not

allow Defendant to simply chose to answer only portions of each interrogatory.[6]

## II.  **EDFINA's Response to Plaintiff's First Request for Production of Documents**

### A.  EDFINA's failure to comply with Rule 34(b)

With respect to the Requests for Production of Documents, EDFINA failed to identify

which documents are responsive to which requests. Pursuant to Federal Rules of Civil

Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as

they are kept in the usual course of business or shall organize and label them to correspond with

the categories in the request." Fed.R.Civ.P. 34(b). Because EDFINA did not produce the

documents as they are kept in the usual course of business, it was to organize and label the

produced documents "to correspond with the categories in the request." EDFINA failed to

comply with Rule 34(b) as to every request. While EDFINA claims that it produced the

documents "as they were kept in the usual course of EDFINA's business" (Exhibit 2 at 2), it is

clear from the production of these 4,000 plus documents in a stack and a cardboard box without

labels of any sort, that EDFINA's production is not in compliance with Rule 34(b) unless

EDFINA keeps random and unrelated business records in cardboard boxes, which seems far-

---

[6] In its January 7, 2006 letter, EDFINA claims that "while EDFINA could have simply chosen 25 discrete interrogatories to address, EDFINA addressed the essence of each interrogatory . . ." Exhibit 2 at 3.

fetched at best.[7] Because its production is not as the documents are kept in the usual course of business, EDFINA must organize and label the documents according to the discovery request.[8]

>        B.    EDFINA's Failure to Provide Documents Related to Other EDFINA Employees

EDFINA has refused to provide documents in response to the following requests on the grounds (among others) that this is not a pattern or practice claim or that such request is an unwarranted invasion of privacy of other employees:[9] **Discovery Request Nos. 23** (performance evaluations for similar employees), **24** (personnel file of Nadal - this in spite of identifying Mr Nadal's employment records in EDFINA's Initial Disclosures and Mr. Nadal's refusal to produce his personnel file because it is not in his possession), **26** (identity and level of

---

[7] One example of the lack of order among the produced documents is that Mr. Nadal's e-mails were not all produced in consecutive bates-numbered order. *See* I.N. Taube Corporation v. Marine Midland Mortgage Corporation, 136 F.R.D. 449, 456 (W.D. N.C. 1991) ("The Court doubts very much whether Defendant complied with the command of Rule 34(b) that documents be produced as kept in the usual course of business. It is certainly improbable that Marine Midland routinely and haphazardly stores documents in a cardboard box. As such, the Court believes the purposes of discovery, and basic considerations of fairness, require Defendant to organize the documents produced on 1 October 1990 in a manner clearly indicating which of these documents respond to Plaintiff's specific requests for production."); *see also* Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., and Bridon American Corp., 174 F.R.D. 609, 630 (M.D. Pa. 1997) ("Andritz' response is unacceptable. It violates both the letter and the spirit of Rule 34(b) ... Andritz did not present the documents to Bridon in the manner in which they were kept in the ordinary course of business. They are in no discernable order. Nor are they labeled or grouped in such a way that Bridon can ascertain without an extraordinary expenditure of time and money which of the 130,000 individual pages pertain to issues relevant to the claims against it."); Stiller v. Arnold et. al., 167 F.R.D. 68, 71 (N.D.I.N. 1996) (" ... Rule 34(b) places the obligation on the responding party to 'organize and label' the documents which are produced for inspection. Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b).")
[8] In fact, Defendants made this same request of Plaintiff when she produced a disc of all responsive documents for the Defendants' convenience. In response, Plaintiff printed the documents on the disc, bates-stamped all documents and supplemented her discovery response to include reference, by bates number, of all documents responsive to each document request.
[9] These requests, either directly or indirectly, documents containing information about other EDFINA employees.

participation of decision makers); **43** (names and addresses of employees), **44** (all complaints made against EDFINA and investigations related thereto), **45** (EEO-1 documents), **46** (comparative evidence), **52** (complaints and investigations), **54** (formal complaints), and **55** (any monitoring program). Exhibit 5 at 8-13. EDFINA reiterates its objection to producing documents related to "unnamed other employees" in its January 7, 2006 letter. Exhibit 2 at 2-3. However, EDFINA has not given any legitimate bases for its objection. The conduct of the company with respect to similar other employees is not only relevant, but also admissible. The United States Supreme Court has spoken to this, as has the District of Columbia Courts. Specifically, the Supreme Court has made clear that other acts of discrimination, and the context in which such acts occur, are critical to an understanding of a hostile work environment:

> We have emphasized, moreover, that the objective severity of
> harassment should be judged from the perspective of a reasonable
> person in the plaintiff's position, considering "all the circumstances."
> In same-sex (as in all) harassment cases, that inquiry requires careful
> consideration of the social context in which particular behavior occurs
> and is experienced by its target . . . The real social impact of workplace
> behavior often depends on a constellation of surrounding circumstances,
> expectations, and relationships which are not fully captured by a simple
> recitation of the words used or the physical acts performed. Common
> sense, and an appropriate sensitivity to social context, will enable courts
> and juries to . . . [determine what] a reasonable person in the plaintiff's
> position would find severely hostile or abusive.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 1003 (1998) (*quoting* Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993) (Ginsburg, J concurring)); *see also e.g.* Pleasants v. Allbaugh, Civil Action No. 00-3094, 2002 U.S. Dist. Lexis 21777, *8 (D.C. Nov. 1, 2002).

      C     Additionally Unsupported Refusals to Produce Documents

        In request number 70, Plaintiff asked for documents that EDFINA "gathered during the preparation of the defense of this action, including documents received as responses to

subpoenae, voluntary requests for documents to outside parties, and internal document-gathering processes." Exhibit 5 at 70. While EDFINA objects on the grounds of attorney-work product doctrine and attorney-client privilege, EDFINA also seems to be refusing to produce documents it has received from third parties and documents gathered during its investigation into this matter. Such documents do not fall under either privilege cited and is clearly relevant and permitted under the Federal Rules of Civil Procedure.

In request number 72, Plaintiff requests documents that support any denial EDFINA had to Plaintiff's Request for Admissions. EDFINA refuses to produce such documents because the request is allegedly duplicative, beyond that which is required by the Federal Rules and protected by the work product doctrine. Exhibit 7 at 33. EDFINA does not, however, cite any Federal Rule in support of its position. None of its objections support a refusal to produce documents.

        D.      EDFINA's Failure to Provide Required Information about Withheld Documents

In response to some of Plaintiff's Document Requests, EDFINA asserts certain privileges as reasons for withholding responsive documents. Pursuant to Rules 26(b)(5) and 34(b) of the Federal Rules of Civil Procedure, Plaintiff requests that EDFINA specify which documents it is withholding and give sufficient details to allow Plaintiff to assess whether EDFINA's privilege designations are legally appropriate. *See* Fed. R. Civ. P. 26(b)(5) and 34(b).

## CONCLUSION

Plaintiff's motion to compel should be granted. Plaintiff requests that EDFINA be required to respond fully and completely to all outstanding discovery requests no later than January 18, 2006, including delivering copies of all responsive pleadings and documents.

January 11, 2006                    Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
   Catherine Gaujacq

19