IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ </br></br> Plaintiff, </br></br> v. </br></br> ELECTRICITE DE FRANCE </br> INTERNATIONAL NORTH AMERICA, </br> INC., et al. </br></br> Defendants. | No. 1:05CV0969 (JGP) |

## MOTION TO COMPEL

Plaintiff Catherine Gaujacq, by counsel, hereby moves this Court for an Order, pursuant to Fed. R. Civ. P. 37, to compel responses to discovery requests from defendant Christian Nadal ("Mr. Nadal"). The grounds for this Motion are set forth in the attached Memorandum.

January 11, 2006

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
  Catherine Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05CV0969 (JGP) |
| ) | |
| ELECTRICITE DE FRANCE ) | |
| INTERNATIONAL NORTH AMERICA, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT MR. NADAL

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby moves this Court for an Order compelling full and complete discovery responses from defendant Christian Nadal ("Mr. Nadal"). Specifically, plaintiff moves this Court to compel Mr. Nadal to respond fully and completely to plaintiff's First Set of Interrogatories and plaintiff's First Request for the Production of Documents.

### CERTIFICATE UNDER LOCAL RULE 37(E)

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally and in writing,[1] to resolve the discovery matters at issue prior to placing this matter before the Court. Despite counsel's best efforts, however, counsel have not been able to come to an agreement on this issue.

---

[1] *See* Exhibit 1, letter from Ms. Bredehoft to Mr. Cooper dated December 21, 2005; Exhibit 2, letter from Mr. Cooper to Ms. Bredehoft dated January 3, 2006; and Exhibit 3, series of e-mails attempting to schedule a conference to discuss outstanding discovery issues.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005. In her complaint, Ms. Gaujacq (i) alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious interference with contractual relations and business expectancies; and (vi) breach of the duty of good faith and fair dealing.[2] Defendants filed their answers to this complaint on September 12, 2005. A scheduling order was entered on October 14, 2005. In this Order, the Court set the deadline for fact discovery on May 31, 2006. The trial is scheduled to begin on April 2, 2007.

Plaintiff served her first discovery requests on Mr. Nadal and Electricite De France International North America, Inc. ("EDFINA") on October 28, 2005. Mr. Nadal and EDFINA served their written responses on December 13, 2005 and sent documents out by Federal Express on December 16, 2005.

## PRELIMINARY STATEMENT

The Rules of Civil Procedure and the Local Rules of this Court permit, and indeed require, Plaintiff to move the Court to compel proper responses to Plaintiff's discovery requests. The Federal Rules provide that a party "may apply for an order compelling disclosure or discovery . . . if . . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as

---

[2] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged only against the corporate defendants. The claim of tortious interference with contractual relations and business expectancies is alleged only against Mr. Nadal.

-2-

requested or fails to permit inspection as requested . . . ." Fed. R. Civ. P. 37. Moreover, "an evasive or incomplete . . . answer, or response is to be treated as a failure to . . . answer, or respond." Fed. R. Civ. P. 37(a)(3). Furthermore, if a party objects to an interrogatory, it "shall answer to the extent the interrogatory is not objectionable," Fed. R. Civ. P. 33(b)(1), and if a party objects to a request for production, "the part [of the objection] shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). In fact, the Federal Rules also prescribe that "the failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order . . . ." Fed. R. Civ. P. 37(d). This Court's local rules provide that "[a]fter a discovery request is objected to, **or** not complied with, within time, and if not otherwise resolved, it is the **responsibility** of the party initiating discovery to place the matter before the Court by a proper motion . . . ." Local Rule 37.

## STATEMENT OF FACTS

Ms. Gaujacq was President of EDFINA from August 1, 2000, until May 31, 2004, having risen through management positions within EDF and EDFINA in the core energy generation business, and, most recently, in strategic consulting on behalf of the Company in the United States. Despite the size of the Company, Ms. Gaujacq was one of very few women to hold an executive level position and as President, was one of the highest ranked females in the Company. As President of EDFINA, Ms. Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all EDFINA activities and projects, identification of development opportunities in the American and Canadian electricity markets, representation of the Company in various trade associations relevant to the energy field, serving as a Director of the Board for EDF Group's United States subsidiaries, and regularly making presentations on the nuclear energy industry and emerging

3

technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President. Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

4

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms.

5

Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later;* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr. Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on

6

December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

Ms. Gaujacq properly served her First Set of Interrogatories and First Request for Production of Documents on Mr. Nadal by first class mail on October 28, 2005. A copy of the Plaintiff's First Request for Production of Documents is attached as Exhibit 4, and a copy of Plaintiff's First Set of Interrogatories is attached as Exhibit 5. Responses were due on November 30, 2005. Mr. Nadal requested, and received, extra time to serve the responses. Mr.

Nadal served objections and incomplete responses on December 12, 2005. *See* Exhibit 6, Mr. Nadal's Response to Plaintiff's First Set of Interrogatories and Exhibit 7, Mr. Nadal's Response to Plaintiff's First Request for Production of Documents. On December 21, 2005, Plaintiff sent a letter to Mr. Nadal's counsel requesting full and complete discovery responses and detailing the defects of Mr. Nadal's discovery responses. *See* Exhibit 1. Defendant responded on January 3, 2005, providing some supplemental responses but such response was still inadequate and was not in the proper form of a supplemental pleading. *See* Exhibit 2. An Order compelling responses to these requests is, therefore, both appropriate and warranted.

I. **Mr. Nadal's Response to Plaintiff's First Set of Interrogatories**

    A. Mr. Nadal's Failure to Specify Business Records Upon Which He Relies

In response to Interrogatories numbers 6, 15 and 18, Mr. Nadal, either generally or specifically, responded to the interrogatory in part by relying on documents. However, in doing so, Mr. Nadal failed to comply with Rule 33(d) of the Federal Rules of Civil Procedure. Rule 33(d) provides that "Where an answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ..., and the burden of deriving ... the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived ... ***A specification shall be in sufficient detail*** to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Fed. R. Civ. P. 33(d) (emphasis added). Contrary to Rule 33(d), Mr. Nadal failed to adequately identify the specific the document or documents he referenced. In fact, it is unclear whether the documents described were even produced by Mr. Nadal, particularly because he refused to produce any documents that weren't in his personal

8

possession even if he listed such documents on his Initial Disclosures. *See* Exhibit 8, Initial Disclosures of Defendant Christian Nadal, at 10-11. Accordingly, Ms. Gaujacq is unable to review specific documents and ascertain the information on which Mr. Nadal relies for his response as is contemplated by Rule 33(d). Without such designation, the burden to obtain the answer to the Interrogatories is clearly higher for Ms. Gaujacq. However, even if Mr. Nadal designates the referenced documents as is required by Rule 33(d), it is unlikely that the burden for ascertaining the answer to the interrogatories will be equivalent, particularly given that many of the documents produced and likely to be referenced are in French.[3]

B.   Mr. Nadal's Failures as to Specific Interrogatories

Mr. Nadal failed to completely respond to Interrogatory No. 4 in that he did not respond to Plaintiff's request to provide "all communications you had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms. Gaujacq." Exhibit 4 at 5-6;Exhibit 6 at 6-9. Further, with regard to his written response contending that (1) Plaintiff allegedly failed to "develop and apply sound financial and management procedures," (2) Plaintiff allegedly had "poor personnel administration," and (3) "EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA," Mr. Nadal has failed to provide specific details of these allegations as requested by Interrogatory No.

---

[3] It is noted that the majority of the documents produced by Mr. Nadal were produced with a classification of "Highly Confidential" and, therefore, cannot be reviewed by Ms. Gaujacq, who is able to read French. This is the subject of a separate motion filed with this Court on January 10, 2006.

9

4. Exhibit 6 at 7-8. This information is clearly relevant to Ms. Gaujacq's claims. Furthermore, Plaintiff requires this detailed information, at the minimum, to determine whether any alleged reasons for the treatment of Ms. Gaujacq are pretextual.

Mr. Nadal failed to completely respond to Interrogatory No. 5 in that he did not respond to Plaintiff's request to provide "the date of discovery, all persons whom you or the Company has not hired or fired because of the same or similar facts, and the reasons why this would have caused you or the Company not to hire or to fire Ms. Gaujacq." Exhibit 4 at 6; Exhibit 6 at 9. This information regarding "after-acquired evidence" is relevant to the amount of damages Ms. Gaujacq suffered in that Defendants may claim that Ms. Gaujacq's damages are limited because she would have been terminated for reasons other than those given for the discriminatory and retaliatory conduct against Ms. Gaujacq.

Mr. Nadal failed to completely respond to Interrogatory No. 6 in that he did not respond to Plaintiff's request to provide "the names of all persons who heard the alleged statement, and the ... place that the alleged statement was made" for the two statements referenced in his written response (July 12, 2004 and July 16, 2004). Exhibit 4 at 6; Exhibit 6 at 10. Additionally, while referencing documents generally, Mr. Nadal failed to identify which documents he believes contain statements against Ms. Gaujacq's interest as is required by Rule 33(d). *Id.* Clearly, the details of any statements Ms. Gaujacq made that were against her interest are relevant for purposes of defending Ms. Gaujacq during deposition and at trial.

Mr. Nadal failed to completely respond to Interrogatory No. 7 in that he did not respond to Plaintiff's request to "state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms. Gaujacq during her tenure as President of EDFINA." Exhibit 4 at 6.

While he did respond by listing his duties and then briefly listing the duties of Ms. Gaujacq, he failed to compare and contrast his responsibilities and daily duties to those of Ms. Gaujacq's. Exhibit 6 at 11-13. This information is clearly relevant to Ms. Gaujacq's equal pay claim, as well as the discrimination claims. As his answer stands now, he has failed to provide the relative value of the duties and responsibilities listed in order for a complete evaluation of the equality of the positions.

Mr. Nadal failed to completely respond to Interrogatory No. 8 in that it is unclear whether he listed "all reasons why [he] had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts" and he did not respond to Plaintiff's request to "identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts." Exhibit 4 at 7; Exhibit 6 at 13. This is relevant to Plaintiff's claims of discrimination and retaliation.

Mr. Nadal failed to completely respond to Interrogatory No. 15 in that he did not respond to Plaintiff's request to identify "who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms. Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s)." Exhibit 4 at 8; Exhibit 6 at 17-18. Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Exhibit 6 at 17. In fact, it is unclear whether the document described was even produced by Mr. Nadal.

While Mr. Nadal responded to Interrogatory No. 18 in general terms, he failed to completely respond to this interrogatory in that he did not respond to Plaintiff's request to

11

"explain *in detail* all action taken by you as a result of Ms. Gaujacq's complaints to you about your treatment of her, made verbally and in writing." Exhibit 4 at 9; Exhibit 6 at 19. Further, although Mr. Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d). Exhibit 6 at 19. In fact, it is unclear whether the document described was even produced by Mr. Nadal.

Mr. Nadal failed to completely respond to Interrogatory No. 19 in that he did not respond to Plaintiff's request to give the reasons for the timing of "his demand, on or about July 12, 2004, that Ms. Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office *by the next day*." Exhibit 4 at 9; Exhibit 6 at 20. This information is relevant to Ms. Gaujacq's claim that Mr. Nadal's requests of her were unreasonable, discriminatory and retaliatory.

C.   Number of Interrogatories

In response to Interrogatory Numbers 2-20, Mr. Nadal objects on the ground that such interrogatories contain multiple interrogatories. Exhibit 6 at 4-20. In his January 3, 2006 letter, Mr. Nadal uses this claim to justify his failure to answer any of the propounded interrogatories in the detail requested. Mr. Nadal, however, never specifies which of the purportedly additional interrogatories he chose not to answer based upon this reasoning. If one seeks to claim that there are too many interrogatories, the solution is not to refuse to fully respond to any interrogatories and instead, challenge the number each time any response is challenged for deficiency, as was done here.

Plaintiff does not agree that she propounded more than the twenty-one numbered interrogatories. Federal Rules of Civil Procedure, Rule 33, provides that "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all *discrete*

12

subparts, ...." Fed.R.Civ.P. 33 (emphasis added). Within each interrogatory, Plaintiff provides a detailed explanation of what information she expects from Defendant when answering the interrogatories. Such explanation only serves to clarify the actual interrogatory. It does not create separate, *discrete* subparts. In the definition section of her First Set of Interrogatories, Plaintiff defines the words "identify," "describe," or "detail" as well as the terms "relating to," "regarding," and "referring to." Exhibit 4 at 3. These definitions apply to all interrogatories. However, instead of simply relying on Defendant to read and apply these definitions, Plaintiff details the information required for each interrogatory. Accordingly, such explanation is not a separate, discrete subpart and Plaintiff has not exceeded the number of interrogatories she is allowed to propound. Even had Plaintiff exceeded twenty-five interrogatories, Rule 33 does not allow Defendant to simply chose to answer only portions of each interrogatory.[4]

## II.    Mr. Nadal's Responses to Plaintiff's First Request for Production of Documents

### A    Mr. Nadal's failure to comply with Rule 34(b)

With respect to Mr. Nadal's Response to Plaintiff's First Request for Production of Documents, Mr. Nadal failed to identify which documents are responsive to which requests. Pursuant to Federal Rules of Civil Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Because Mr. Nadal did not produce the documents as they are kept in the usual course of business, he was to organize and label the produced documents "to correspond with the categories in the request." Mr. Nadal

---

[4] In his January 3, 2006 letter, Mr. Nadal states: "Faced with interrogatories that vastly exceeded the number permitted by the Rules, Mr. Nadal could have picked the 25 questions he most wanted to answer. Instead, he made a good faith attempt to answer the essence of each Interrogatory, and even included answers to discrete subparts where it made sense" (to Mr. Nadal). Exhibit 2 at 2.

13

failed to comply with Rule 34(b) as to every request. While Mr. Nadal claims that he produced the documents "as they were kept in the 'usual course of business'" (Exhibit 2 at 2), it is clear from the production of over 200 documents in a stack, without any labels or file folders referenced, that Mr. Nadal's production is not in compliance with Rule 34(b) unless Mr. Nadal keeps these unrelated business records in one big stack at his house, which seems unrealistic and is not compliant, in any event, as Mr. Nadal is not running a business from his home.[5]

Because his production is not as the documents are kept in the usual course of business, Mr. Nadal must organize and label the documents according to the discovery request.[6] While Mr. Nadal did indicate which of the first 149 documents he produced were responsive to which document requests in his January 3, 2006 letter (Exhibit 2 at 2), he must do so in a supplemental pleading in order to be in compliance with the Rules. Counsel's letter is not a pleading and cannot, and should not, be used in lieu of a discovery pleading, especially if required to be used

---

[5] See I.N. Taube Corporation v. Marine Midland Mortgage Corporation, 136 F.R.D. 449, 456 (W.D. N.C. 1991) ("The Court doubts very much whether Defendant complied with the command of Rule 34(b) that documents be produced as kept in the usual course of business. It is certainly improbable that Marine Midland routinely and haphazardly stores documents in a cardboard box. As such, the Court believes the purposes of discovery, and basic considerations of fairness, require Defendant to organize the documents produced on 1 October 1990 in a manner clearly indicating which of these documents respond to Plaintiff's specific requests for production."); see also Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., and Bridon American Corp., 174 F.R.D. 609, 630 (M.D. Pa. 1997) ("Andritz' response is unacceptable. It violates both the letter and the spirit of Rule 34(b) ... Andritz did not present the documents to Bridon in the manner in which they were kept in the ordinary course of business. They are in no discernable order. Nor are they labeled or grouped in such a way that Bridon can ascertain without an extraordinary expenditure of time and money which of the 130,000 individual pages pertain to issues relevant to the claims against it."); Stiller v. Arnold et. al., 167 F.R.D. 68, 71 (N.D.I.N. 1996) ("... Rule 34(b) places the obligation on the responding party to 'organize and label' the documents which are produced for inspection. Producing 7,000 pages of documents in no apparent order does not comply with a party's obligation under Rule 34(b).")

[6] In fact, Defendants made this same request of Plaintiff when she produced a disc of all responsive documents for the Defendants' convenience. In response, Plaintiff printed the documents on the disc, bates-stamped all documents and supplemented her discovery response to include reference, by bates number, of all documents responsive to each document request

at trial, or as evidence. Mr. Nadal must also continue to provide this information with regard to any supplemental productions of documents. This is particularly important here because Mr. Nadal has labeled the majority of his documents "Highly Confidential," thereby prohibiting Ms. Gaujacq's review of the documents, especially those in French, and because Mr. Nadal refused to produced documents not technically in his personal custody or control, while at the same refusing to indicate through his response if he was even producing any documents in response to any particular request.[7]

    B.    Mr. Nadal's Failure to Meet the Minimum
           Burden of Ascertaining Documents Within his Control

Further, it seems Mr. Nadal is only producing documents in his "personal" possession without specifying which responsive documents he is failing to provide because they are not technically within his *personal* possession, while still seeking to rely on such documents as listed in his Initial Disclosure. *See* Exhibit 8 at 10-11. In his January 3, 2003 letter, Mr. Nadal admits that he has failed to produce responsive documents that are in both his and EDFINA's custody and control.[8] In the event Mr. Nadal has access to or control of responsive documents, he is obligated to provide these documents. While Plaintiff does not seek duplicative production, Mr. Nadal must either produce all responsive documents or, at a minimum, make clear which of the documents produced by EDFINA were also in his possession and are responsive to each individual document request served upon Mr. Nadal.

---

[7] Mr. Nadal responded to the majority of requests by stating: "Mr. Nadal responds that he will produce responsive documents within his personal possession, custody and control," thereby implying that he will not produce other responsive documents in his non-personal control. *See* Exhibit 7.

[8] *See* Exhibit 2 at 1 ("Documents that are within the possession custody and control of both parties are being produced by EDFINA."); Exhibit 2 at 2 ("The rest of the documents that you requested, that were arguably under his possession custody and control, were also within the possession custody and control of EDFINA, and are being produced by that party.")

C.   Mr. Nadal's Failure to Provide Required Information about Withheld Documents

In response to some of Plaintiff's Document Requests, Mr. Nadal asserts certain privileges as reasons for his withholding responsive documents. Pursuant to Rules 26(b)(5) and 34(b) of the Federal Rules of Civil Procedure, Plaintiff requests that Mr. Nadal specify which documents Mr. Nadal is withholding and give sufficient details to allow Plaintiff to assess whether Mr. Nadal's privilege designations are legally appropriate. *See* Fed. R. Civ. P. 26(b)(5) and 34(b).

D.   Mr. Nadal's Failure to Produce Responsive Documents

Based upon his January 3, 2006 letter, it seems that Mr. Nadal only produced documents responsive to Requests Nos. 19, 42 and 50. Plaintiff requests that Mr. Nadal be required to produce documents responsive to all other document requests or state affirmatively that no such documents exist, in pleading form. Again, this is necessary for motions, as well as for trial.

Additionally, it is clear that Mr. Nadal is claiming, in response to Document Request No. 22, that his personnel file is not in his personal possession and presumably has, therefore, not provided responsive documents to this request. However, Mr. Nadal specifically lists his employment records under part B of his Initial Disclosures ("all documents ... in the possession, custody, or control of the party ..."). Nonetheless, it appears that EDFINA is refusing to provide his personnel file. *See* Exhibit 8 at 10-11; Exhibit 9, EDFINA's Response to Plaintiff's First Request for Production of Documents, at 14.[9] Accordingly, Plaintiff requests that Mr. Nadal produce his personnel file and other documents requested in Document Request No. 22.

---

[9] While EDFINA's response to Document Request No. 24 implies that EDF will produce Mr. Nadal's personnel file, it is unclear whether EDF has, in fact, done so, based upon its objections and the manner in which it produced documents (the same problem as addressed here, likely the subject of a Motion to Compel in the event EDF does not restructure).

16

## CONCLUSION

Plaintiff's motion to compel should be granted. Plaintiff requests that Mr. Nadal be required to respond fully and completely to all outstanding discovery requests no later than January 18, 2006, including delivering copies of all responsive pleadings and documents.

January 11, 2006

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
   Catherine Gaujacq