# EXHIBIT 1

## CHARLSON BREDEHOFT & COHEN, P C.
ATTORNEYS AND COUNSELORS AT LAW

CURTIS L. CHARLSON (RET )*
ELAINE CHARLSON BREDEHOFT◊
PETER C. COHEN◊
KATHLEEN Z QUILL●◊
JENNIFER A HARPER

* ADMITTED ONLY IN MINNESOTA
◊ ALSO ADMITTED IN D.C.
● ALSO ADMITTED IN MASSACHUSETTS

December 21, 2005

**BY EMAIL**
Ronald S Cooper, Esq
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave , NW
Washington, D C 20036

Re:     *Gaujacq v. Electricite de France International North America, et al.*
        *Civil Action No. 1:05CV0969*

Dear Ron:

I have sent a separate letter to Ms Regal responding to her letters and emails Out of courtesy to her, I am not copying you, but she may wish to share the letter with you In any event, I am enclosing the Notice of Deposition of Mr. Nadal, setting his deposition for January 26, 2006 at 9:30 a m in our offices In the event that particular day is not convenient for you, I will be happy to work with you, but only with respect to within a few days It is clearly my impression that there is a studied intent to delay in producing the defendants for deposition, and rather than wasting our clients' time and money in that endeavor, I am giving you more than a month's notice, it will take place shortly after my client's deposition on January 20, 2006, and my notice is consistent with our report to the Court I recognize New York lawyers may be accustomed to practices that may be more acceptable there, but I think it is time to move forward with this litigation and stop wasting everyone's time.

I have reviewed the discovery responses sent over on behalf of Mr Nadal I have the following concerns and would appreciate your taking the time over the next two weeks to address these, and supplement your responses In the event there are any remaining issues following your careful review of the issues and supplementation, I would appreciate your finding some time during the week of January 2 to schedule a conference call to discuss the issues

Ronald S Cooper, Esq
December 21, 2005
Page 2 of 5

## THE MARKING OF "HIGHLY CONFIDENTIAL" DOCUMENTS:

You may recall that the discussions leading up to even including a "Highly Confidential" designation arose out of your stated concern that EDF or EDFINA may be harmed by trade secret disclosures, given that Ms Gaujacq works for someone they consider a competitor  The idea that Mr Nadal may have any markings for Highly Confidential you only raised in our last discussion, and you may recall that it was in the context of something that would be extreme, such as a significant health issue or something unrelated to the issues in this case or the employment

You may imagine my shock when I received no documents from EDFINA that were marked Highly Confidential, but the vast majority of Mr. Nadal's WERE marked Highly Confidential, including many in French, which we also agreed would try to be avoided at all costs

I am going to assume that you were unaware of these labels, and I ask you to go through them carefully  I am officially challenging the designations on EACH of the documents marked Highly Confidential, and asking your office to remark them and reissue them  In the event you will not agree to that, for EACH document, please explain, in writing, the basis for the designation and why you believe Ms Gaujacq, a party in this case, should not and cannot be privy to the contents of the document, even with the conditions that it be used solely for this litigation

Absent a significant turnaround on this, I intend to seek a modification of the Protective Order, seeking to exclude any ability to mark a document "Highly Confidential "  I, of course, will be happy to listen to you fully after you have reviewed the documents and responded with the individual reasons for each documents' designation as "Highly Confidential" (if you have not reconsidered and reissued them without these markations)  This is precisely why I opposed such designations in the first place, and you specifically assured me that this would not be done  In fact, you told me you could not imagine that Mr Nadal would have ANY documents marked Highly Confidential  I recall that very specifically and relied upon it in agreeing to the language of the Protective Order  I truly am hoping it was a mistake and will be corrected by the time I return to the office on January 3, 2006

### _Discovery Responses:_

I have the following issues with Mr Nadal's discovery responses  Again, I would appreciate your taking the time to seriously consider these, as you will note Ms Gaujacq has done in supplementing her Interrogatory responses and Document responses  Our time is far better served on things other than needless discovery disputes.  I am hopeful you will supplement your responses, also by January 3, 2006, with the following in mind:

Ronald S Cooper, Esq
December 21, 2005
Page 3 of 5

### *Mr. Nadal's Responses to Plaintiff's First Set of Interrogatories:*

Overall, Mr Nadal failed to respond to Plaintiff's request to identify all documents reflecting his responses to each of the Interrogatories This request was made for all but Interrogatory Nos 1 and 20

Further, the following deficiencies exist as to Mr Nadal's responses to specific Interrogatories propounded in Plaintiff's First Set of Interrogatories:

Interrogatory No 4: Mr Nadal failed to completely respond to Interrogatory No 4 in that he did not respond to Plaintiff's request to provide "all communications you had with Ms Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms Gaujacq's performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms Gaujacq " Further, with regard to his written response contending that (1) Plaintiff allegedly failed to "develop and apply sound financial and management procedures," (2) Plaintiff allegedly had "poor personnel administration," and (3) "EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA," Mr Nadal has failed to provide specific details of these allegations as requested by Interrogatory No 4

Interrogatory No 5: Mr Nadal failed to completely respond to Interrogatory No. 5 in that he did not respond to Plaintiff's request to provide "the date of discovery, all persons whom you or the Company has not hired or fired because of the same or similar facts, and the reasons why this would have caused you or the Company not to hire or to fire Ms Gaujacq "

Interrogatory No 6: Mr. Nadal failed to completely respond to Interrogatory No 6 in that he did not respond to Plaintiff's request to provide "the names of all persons who heard the alleged statement, and the    place that the alleged statement was made" for the two statements referenced in his written response (July 12, 2004 and July 16, 2004) He also failed to identify which documents he believes contain statements against Ms Gaujacq's interest

Interrogatory No 7: Mr Nadal failed to completely respond to Interrogatory No 7 in that he did not respond to Plaintiff's request to "state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms Gaujacq during her tenure as President of EDFINA "

Interrogatory No 8: Mr. Nadal failed to completely respond to Interrogatory No 8 in that it is unclear whether he listed "all reasons why [he] had Ms Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts" and he did not respond to Plaintiff's request to "identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts "

Ronald S Cooper, Esq.
December 21, 2005
Page 4 of 5

Interrogatory No 15: Mr Nadal failed to completely respond to Interrogatory No 15 in that he did not respond to Plaintiff's request to identify "who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s) " Further, although Mr Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d) Additionally, it is unclear whether the document described was produced by Mr Nadal. If so, please provide the Bates number of such document

Interrogatory No 18: While Mr Nadal responded to this interrogatory in general terms, he failed to completely respond to Interrogatory No 18 in that he did not respond to Plaintiff's request to "explain *in detail* all action taken by you as a result of Ms Gaujacq's complaints to you about your treatment of her, made verbally and in writing " Further, although Mr Nadal referred to a specific document in his response, he failed to adequately identify that document as required by Federal Rules of Civil Procedure, Rule 33(d) Additionally, it is unclear whether the document described was produced by Mr Nadal If so, please provide the Bates number of such document.

Interrogatory No 19: Mr. Nadal failed to completely respond to Interrogatory No 19 in that he did not respond to Plaintiff's request to give the reasons for the timing of "his demand, on or about July 12, 2004, that Ms Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office *by the next day* "

Interrogatory No 20: Mr Nadal failed to completely respond to Interrogatory No 20 in that he did not respond to Plaintiff's request to "describe all facts upon which you base, or which support, any such denial" to Plaintiff's Request for Admissions

### *Mr. Nadal's Responses to Plaintiff's First Request for Production of Documents:*

Pursuant to Federal Rules of Civil Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request " Because Mr Nadal did not produce the documents as they are kept in the usual course of business, he was to organize and label the produced documents "to correspond with the categories in the request " Mr Nadal failed to comply with Rule 34(b) as to every request Please identify specifically, by Bates numbers, which documents produced are responsive to which request

Further, it seems Mr Nadal is only producing documents in his "personal" possession Please clarify how Mr Nadal defines "personal" and specify which documents he claims are not in his personal possession In the event he has access to or control, he is obligated to provide these documents Further, if any documents were withheld based upon the asserted privileges,

Ronald S. Cooper, Esq
December 21, 2005
Page 5 of 5

please specify which documents Mr Nadal is withholding and give sufficient details to allow
Plaintiff to assess whether Mr Nadal's privilege designations are legally appropriate  See
Fed R Civ Proc  34(b)

    After the above designations are provided, we will be in a better position to assess to
which responses Mr Nadal has failed to produce documents  However, it is clear that Mr Nadal
is claiming, in response to Request No  22, that his personnel file is not in his personal
possession and presumably has, therefore, not provided responsive documents to this request
However, this claim directly contradicts Mr Nadal's statement in his Initial Disclosures filed
October 27, 2005 where he stated that documents in Category 13 ("Documents in the personal
files of Christian Nadal relating to Plaintiff's claims and the defenses thereto, as well as
documents relating to his prior professional experience and qualifications") are "in the
possession, custody or control of Mr  Nadal "  Initial Disclosures of Defendant Christian Nadal
at 11   Accordingly, please produce Mr Nadal's personnel file and other documents requested in
Document Request No  22

    I would appreciate your supplementing the document requests with the specific bate
stamp numbers for each request  In addition, I ask you to take a look at all the discovery, review
what Ms Gaujacq has done in good faith to take meaningless discovery disputes out of this
litigation, and to either change the designations of each document marked Highly Confidential,
or provide a detailed explanation for each document as set forth above

    As we discussed some time ago in a conference call (during which I gave extensions to
EDF and EDFINA until January 3, 2006 because of my holiday schedule), I will be serving as a
substitute judge tomorrow, our office is closed on Friday, and I will be out of town all next week
for the holidays, with my family  Our office is closed on January 2, 2006  I will be returning to
the office on January 3, 2006  I am hopeful I am greeted with cooperation, full responses and
usable documents, and an ability to spend our time productively, representing our clients in this
litigation

    Thank you for your consideration  I hope you have a wonderful holiday and New Year!

                            Very truly yours,

                            Elaine Charlson Bredehoft

cc:    Ms  Catherine Gaujacq

# EXHIBIT 2

# STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Ronald S. Cooper
202.429.8075
rcooper@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

January 3, 2006

**VIA EMAIL**

Elaine Charlson Bredehoft
Charlson Bredehoft & Cohen, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190

Re    **Gaujacq v. EDF - No. 1:05CV0969**

Dear Elaine,

This responds to your letter dated December 21, 2005. Let me first address your stated concerns about the designation of a number of the documents produced by Mr. Nadal as "Highly Confidential." As a preliminary matter, it is important to set the record straight. You allege in your letter that I told you I could not imagine "that Mr. Nadal would have ANY documents marked Highly Confidential," yet on the same page, you acknowledge that I specifically sought this level of protection for Mr. Nadal's personal documents. I never represented that Mr. Nadal would not be using the Highly Confidential designation. To the contrary, the parties changed the language of the Protective Order to include expressly highly *personal* information within the definition of "Highly Confidential."

Although your letter complains that the "vast majority" of Mr. Nadal's production was labeled Highly Confidential, these designations make absolute sense in the context of Mr. Nadal's production. Mr. Nadal and EDFINA have coordinated their document production in an effort to avoid making burdensome and duplicative productions. Mr. Nadal has produced only those documents that are within his possession, custody or control and which are not also in the possession, custody or control of EDFINA (i.e., documents relating to purely personal matters, rather than documents he possesses as an officer of EDFINA). Documents that are within the possession custody and control of both parties are being produced by EDFINA. This explains why most of EDFINA's documents are not labeled Highly Confidential, while most of Mr. Nadal's documents are so labeled. It is because Mr. Nadal is only producing those documents which are truly private and personal in nature.

Elaine Bredehoft
January 3, 2006
Page 2

Finally, you have made no mention as to why you feel it is so important that your client have access to these documents. The Highly Confidential documents are almost all Mr. Nadal's private financial and tax records. These could be relevant, if ever, only on the issue of damages. You have offered no suggestion of why Ms. Gaujacq, in addition to her counsel, needs access to these private documents in order to effectively prosecute her case. On the other hand, your client has a history of absconding with, and publishing, such private information, which amply justifies our precaution. Indeed, this is why the "Highly Confidential" label was developed in the first place.

As to your stated concerns regarding Mr. Nadal's interrogatory responses, we are confident that we have made good faith responses to the substance of each interrogatory -- certainly beyond the level of responsiveness provided by Ms. Gaujacq. As you know, the parties are limited to 25 interrogatories in this case, including *all discrete subparts*. Though Plaintiff's Interrogatories to Mr. Nadal contained 20 numbered questions, almost every one contained 2 or more discrete subparts. Faced with interrogatories that vastly exceeded the number permitted by the Rules, Mr. Nadal could have picked the 25 questions he most wanted to answer. Instead, he made a good faith attempt to answer the essence of each Interrogatory, and even included answers to discrete subparts where it made sense. All in all, Mr. Nadal has already answered more than the 25 interrogatories allowed by the Rules, despite how Plaintiff may have numbered them. We will vigorously oppose any Motion to Compel on this issue.

In addition, we find your demands regarding Mr. Nadal's document production to be without merit, and particularly baseless in light of the fact that Mr. Nadal only produced 149 documents in total. You note that Rule 34(b) allows a party to produce documents "as they are kept in the usual course of business" or it can organize and label the produced documents to correspond with the categories in the request. The responding party may choose which option it will exercise. Mr. Nadal did indeed produce the documents as they are kept in the "usual course of business." Plaintiff asked for his personal documents, which is what were produced. Mr. Nadal's personal filing system may not be as elaborate as the usual corporate filing system, but that does not diminish the fact that his documents were produced as they are normally kept. In the spirit of cooperation, however, we will provide the following information:

- Bates numbers CN00001-CN00010 are produced in response to Request 19, and Request 50.

- Bates numbers CN00011-CN00149 are produced in response to Request 42.

The rest of the documents that you requested, that were arguably under his possession custody and control, were also within the possession custody and control of EDFINA, and are being produced by that party.

As to your specific contention that Mr. Nadal's response to Request 22 and his statement in his Initial Disclosures are inconsistent, we disagree. Request 22 asked for his personnel file, which indeed,

Elaine Bredehoft
January 3, 2006
Page 3

is not in his personal possession, custody, or control. The fact that Mr. Nadal generally identified that he had some personal files which might contain documents relevant to the Plaintiff's case, is not inconsistent with that statement. As for your request for a privilege log, we will be happy to discuss a mutual exchange of such logs at our upcoming conference call.

Sincerely,

Ronald S. Cooper

cc:    Laura Hoguet
       Dorothea Regal

# EXHIBIT 3

<table>
<tr><td>Filters Used:<br>1 Tagged Record</td><td># E-Mail Report<br>Form Format</td><td>Date Printed:  **1/10/2006**<br>Time Printed:  **8:17AM**<br>Printed By:    **ECB**</td></tr>
</table>

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | 1/05/2006 Time | 8:56PM | 8:56PM | Duration | 0.00 (hours) | Code | | |
| Subject | **RE: Conference Time** | | | | | Staff | **Elaine Charlson Bredehoft** | |
| Client | **Catherine Gaujacq** | | | MatterRef **Gaujacq, Catherine** | | | MatterNo **690** | |
| From | **Elaine Bredehoft** | | | | | | | |
| To | **'Clark, David'** | | | | | | | |
| CC To | **Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com** | | | | | | | |
| BCC To | | | | | | | | |
| Reminders | | (days before) | Follow  N | Done  N | Notify  N | Hide  N | Trigger  N | Private  N  Status |
| User1 | | | | | User3 | | | |
| User2 | | | | | User4 | | | |

May I ask what each of you has (and has had) on your schedule that has prohibited you from discussing these issues with me this week, and particularly tomorrow? Thank you for your thoughtful response. Elaine

-----Original Message-----
From: Clark, David [mailto:dclark@steptoe.com]
Sent: Thursday, January 05, 2006 5:00 PM
To: Elaine Bredehoft
Cc: Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
Subject: RE: Conference Time


Elaine,

We obviously do not share your views on Defendants' efforts to confer prior to filing our motion. We asked for times on more than one occasion, and you simply ignored those requests.

In contrast, we are available to meet and confer with you. We are available to discuss any issues that you may still have following our recent letter and further discovery responses from all Defendants. Given the overlap among Defendants, we do not believe it would be productive to engage in separate conferences. Late on Monday is also available for all of us if we can begin at 4:30 or 5:00. I could also check for availability next Thursday or Friday if you would like.

Dave
-----Original Message-----
From: Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
Sent: Thursday, January 05, 2006 4:20 PM
To: Clark, David
Cc: Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
Subject: RE: Conference Time


David: Thank you for your response. As you may recall, I asked everyone in my December 20 letter to keep times available this week to discuss these issues. Given that motions have already been filed by defendants without any genuine effort to confer, and I will be filing responses as well as my motions before next Wednesday (and I will be in depositions all day Wednesday in any event), I would appreciate everyone providing me with times this week. Since your email is coming late on Thursday, I guess realistically tomorrow will be the day left to talk. I am happy to hold separate conferences, as I do not believe they need to be joined. I will do my best to accommodate any times that works. Please send me an email as soon as possible with the times

| Filters Used: | **E-Mail Report** | Date Printed:  **1/10/2006** |
| --- | --- | --- |
| 1 Tagged Record | Form Format | Time Printed:  **8:17AM** |
| | | Printed By:   **ECB** |

Thank you for your consideration.  Elaine

-----Original Message-----
From: Clark, David [mailto:dclark@steptoe.com]
Sent: Thursday, January 05, 2006 4:10 PM
To: Elaine Bredehoft
Cc: Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
Subject: Conference Time

Dear Elaine,

Everyone on Defendants' side is available on Wednesday morning up until 11:15.  Let us know if this works for you and when you would like to begin.  Thank you.

Dave
-----Original Message-----
From: Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
Sent: Wednesday, January 04, 2006 2:13 PM
To: Clark, David
Cc: Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
Subject: RE: Document numbering question

David:  Happy New Year.  Yes, I believe all of the documents have been bate stamped and sent.

Can you all provide me with some available times to talk about all the outstanding discovery issues in the next few days?

Thank you.  Elaine

-----Original Message-----
From: Clark, David [mailto:dclark@steptoe.com]
Sent: Wednesday, January 04, 2006 2:07 PM
To: Elaine Bredehoft
Cc: Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
Subject: Document numbering question

Elaine,

Can you confirm that Plaintiff's entire document production as of December 2005 has now been provided to us in paper form (Bates range 1-1266)?  Specifically, we're trying to figure out what happened to the un-numbered documents on the disk you initially sent.  Are they already contained within the 1266 pages you've produced in hard copy?  If not, will you be re-providing those documents in a Bates-numbered form?  Thank you.

Dave

David A. Clark
Steptoe & Johnson LLP

| Filters Used:<br>1 Tagged Record | # E-Mail Report<br>Form Format | Date Printed:  **1/10/2006**<br>Time Printed:  **8:11AM**<br>Printed By:    **ECB** |

| | | | | | | |
|---|---|---|---|---|---|---|
| Date | **12/19/2005**Time | **7:56AM** | **7:56AM** | Duration | **0.00** (hours) | Code |
| Subject | **RE: Discovery Issues** | | | | | Staff    **Elaine Charlson Bredehoft** |
| Client | **Catherine Gaujacq** | | MatterRef**Gaujacq, Catherine** | | | MatterNo **690** |
| From | **Elaine Bredehoft** | | | | | |
| To | **'DRegal@hnrlaw.com'** | | | | | |
| CC To | **dclark@steptoe.com; Laura Hoguet; rcooper@steptoe.com** | | | | | |
| BCC To | | | | | | |
| Reminders | | (days before) | Follow   N   Done   N   Notify   N   Hide   N   Trigger   N   Private   N   Status | | | |
| User1 | | | | User3 | | |
| User2 | | | | User4 | | |

Dorothea:  Thank you for your letter.  I have given it quite a bit of thought before responding, as I was more than a little alarmed by its content.  First, we need to deal with the deposition scheduling.  Our agreement was that we would have the primary parties (Ms. Gaujacq, Mr. Nadal, and the corporate designees) first and close together in January.  We have been working with you to comply.  Your letter indicates to me that you do not intend to honor the agreement, and instead, are trying to use the premature claim that you need more time with Ms. Gaujacq as an excuse to put off Mr. Nadal and the corporate designees' depositions indefinitely.   I think we need to get back on track with the scheduling.  I will provide Ms. Gaujacq for 7 hours on January 20.  I would like to take Mr. Nadal's deposition the following week for up to the limit of 7 hours, and the corporate designees' deposition (assume both entities) either in the same week, or the following week, also within the 7 hours limit.  I will send out a 30(b)(6) notice in the next two days, but reserve the right to amend, given that I have not even received your documents yet (we discussed this by telephone and you seemed to understand that issue then, your letter suggests a departure from this conversation).  It is irrelevant whether Mr. Nadal is a corporate designee for either of the corporate entities in scheduling his deposition.   In the event any of us believe we need additional time with any of these witnesses after having taken the deposition for up to 7 hours, we can discuss it, and if we cannot agree, we can seek relief from the Court.

The assumption clearly indicated in your letter, which was introduced for the first time in your letter, is that you have the right to depose my client as long as you desire, and each of those days will be before Mr. Nadal's deposition is taken.  This is not the understanding of the parties, nor is it consistent with the Rules.  While I was willing to work with you on a scheduling of two days' apiece, your declared intent to depart from our earlier discussions causes me to back up and insist on compliance with the Rules, to protect my client.  I repeat that there is nothing about the allegations in this case that would justify more than 7 hours of deposition of my client.  The language issues for some of the potential deponents caused all of us to think that there may be justification, depending upon the circumstances, for more than 7 hours.  That event has not yet arisen.  We cannot possibly evaluate whether ANY deponent will take more than 7 hours until we have taken the first 7 hours.  While it has been my practice to evaluate whether there is a need after the 7 hours, and have on occasion cooperated in the scheduling of additional time, it has been RARE that more than 7 hours is truly needed, if the parties are prepared, organized and efficient.  There was a reason the Rules were changed to limit to 7 hours - this may be one of those circumstances contemplated in so doing.

In the event you are not willing to provide dates for Mr. Nadal's and the corporate designees' depositions, all within the two weeks following Ms. Gaujacq's deposition, I intend to seek relief from the Court.  I hope you will reconsider what I consider to be purely delay tactics and render my filing motions with the Court unnecessary.

With respect to your letter respecting concerns about the discovery, I have similar concerns on your clients' discovery responses, but believe it is a waste of everyone's time to raise the issues prior to receiving the documents, which we will all receive today.  My client will, however, be supplementing both the interrogatories and document responses shortly, which should allay your issues.  If not, we can certainly talk further and we can address your clients' issues as well.  As soon as I have gone through your clients' documents (and after sending you the 30(b)(6) notices which you are demanding immediately), I will address with you those deficiencies, and we can arrive at a mutually convenient time to cover all our issues.  In any event, I am not available at your proposed time today, but again, I do not feel the request

Filters Used:
1 Tagged Record

# E-Mail Report
Form Format

Date Printed:  **1/10/2006**
Time Printed:  **8:11AM**
Printed By:    **ECB**

was made in good faith, given the documents have not been exchanged, and given the fact that my client will be supplementing shortly.

Please get back to me quickly with the available dates of Mr. Nadal and the corporate designees, so that we may resolve that issue or seek immediate relief from the Court. Elaine

-----Original Message-----
From: DRegal@hnrlaw.com [mailto:DRegal@hnrlaw.com]
Sent: Thursday, December 15, 2005 3:43 PM
To: Elaine Bredehoft
Cc: dclark@steptoe.com; Laura Hoguet; rcooper@steptoe.com
Subject: Discovery Issues


Elaine:
Please see the letter attached below, which has also been sent to you by fax today.

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw.com

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CHRISTIAN NADAL

Plaintiff Catherine Gaujacq, by counsel, requests that defendant Christian Nadal produce, pursuant to Fed. R. Civ. P. 34, the following documents, and serve defendant's response upon plaintiff's counsel at Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201, Reston, Virginia 20190, within the time provided by law.

### DEFINITIONS AND INSTRUCTIONS

In responding to these Requests, the following definitions and instructions shall apply:

1.      "Ms. Gaujacq" or "Gaujacq" refers to plaintiff Catherine Gaujacq. "You," "your" or "Nadal" refers to defendant Christian Nadal. "EDFIN" refers to defendant, Electricite de France International North America, Inc. EDFINA, Inc., its agents, officers, and employees, and their subsidiaries, affiliates, and associated corporations, partnerships, and entities. "EDF" refers to defendant Electricite de France ("EDF"). "The Company" refers collectively to EDF and EDFINA. "Defendants" refers collectively to all three defendants.

2.    "This action" refers to this civil action now pending in the United States District Court for the District of Columbia.

3.    The term "document" is used in the broadest possible sense, and includes (but is not limited to) any written, printed, typed, photocopied, photographed, recorded (including but not limited to magnetic, mechanical, or electronic recordings) or otherwise reproduced communication or representation. This definition includes (but is not limited to) correspondence, memoranda, wires, cables, studies, maps, analyses, diagrams, electronic mail, scraps of paper, notes, loan documentation, applications, drawings, charts, graphs, plans, plats, photographs, video tapes, audio tapes, computer disks, hard drives, contracts, agreements, working papers, drafts, reports of investigations or inspections of any kind, opinions of consultants or experts, diaries, minutes, calendars, other reports, vouchers, invoices, journals, bills, orders, time slips or records, books, computations, field notes, logs, financial records or statements, or work papers, checks, receipts, bank statements and the like. Data compilations from which information may be translated into usable form (e.g., computer memory) are also included. The definition includes, as a separate document, each duplicate or reproduction or copy of a document that contains any non-conforming note, marking, material or attachment. If it is maintained that any document requested to be identified has been destroyed or is otherwise no longer within your possession or control, identify the document and state the date, place, and manner of its destruction or removal from your control, and identify the person who authorized or ordered such destruction or removal.

4.    "Person" includes individuals, agencies, government entities, corporations, partnerships, unincorporated associations, and other business entities, and specifically includes the plaintiff and defendant in this action, and includes any predecessors or successors in interest

5.    The terms "identity," or "identify," or "describe," or "detail," when used in connection with a document mean to describe the document fully, including the character of the document, its title (if any), date, author(s), addressee(s), recipient(s), number of pages, the location and custodian of each copy to the extent known, the substance of the contents thereof, and any other identifying number of information  The terms "identity," or "identify," or "describe," or "detail" when used in connection with an event or condition mean to indicate, as completely and fully as possible, all facts comprising or contributing to the event or condition. The terms "identity," or "identify," or "describe," or "detail" when used in connection with a person mean:

a    where the person is an individual, to state the person's full name, home and business addresses and telephone numbers, and business or other affiliation (including title), and

b    where the person is not an individual, to state the full name of the entity, the nature of the entity, address and telephone number of the entity, and such additional identifying information as may be necessary to enable the "person" to be contacted  When identifying a "person," information should in all cases be adequate to permit service of process or notice of a deposition upon such person.

6.    The terms "relating to," "regarding," and "referring to" shall be interpreted broadly, including both explicit and implicit reference and meaning (without limitation) relating to, regarding, referring to, constituting, defining, discussing, containing, construing, embodying, reflecting, stating, dealing with, prepared in contemplation of, prepared in connection with, prepared as a result of, or in any way pertaining to.

7.    Use of the singular tense shall be deemed to include the plural and <u>vice versa</u>. Use of either the masculine or feminine pronoun shall be deemed to include both genders. "And" as well as "or" shall be construed either disjunctively or conjunctively so as to permit the inclusion of materials or information otherwise excluded.

8.    In responding to these Requests, please furnish all information available to you or within your control, including any information in the possession of agents, attorneys, contractors, subcontractors, former employees, officers, members, or any other person acting on your behalf.

9    Each Request shall be deemed continuing so as to require supplemental answers in accordance with the Rule 26(e) of the Federal Rules of Civil Procedure

10.    In responding to each Request, please identify all contributing sources of information, including the identity of any person consulted or document used in connection with answering such interrogatory and the extent of any person's assistance.

11.    If a privilege or privileges are asserted as to any information requested by these Requests, or if any Request is otherwise not fully answered, please respond to the extent the Request is not objected to, and state the specific grounds for not fully answering, the legal basis for not fully answering (specifying any privilege asserted), and the facts allegedly giving rise to any claim of privilege. Identify any information, document, or other material for which any privilege is asserted, and identify the date and author or generator as well as all persons shown as having been, or otherwise known to you as having been, recipients of such information, document, or other material. If you contend that you have attempted to procure the waiver of the privilege, please also identify fully the persons with whom you communicated and the stated reason for refusal to waive the privilege.

12.    Where there is no time limit specified, the Requests encompass documents in existence and/or events occurring during the time period from August 1, 2000 through the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### *Documents Identified in Interrogatories and Initial Disclosures*

1.    Please produce all documents you were requested to identify in plaintiff's first set of interrogatories to you in this action, that you relied on in answering any of the interrogatories, or that reflect or otherwise support your response to any interrogatory.

2    Please produce all documents you identified in your Initial Disclosures.

3.    Please produce each insurance policy referenced in your response to interrogatories of Plaintiff's First Set of Interrogatories to you, and any policy otherwise covering the Company.

### *Plaintiff's Performance/Adverse Employment Actions*

4.    Please produce all documents which discuss, refer, identify, constitute, or support any evaluation (formal or informal) by you of Ms. Gaujacq at any time during her employment with the Company.

5.    Please produce all personnel files or other files maintained by you pertaining to Ms. Gaujacq including, but not limited to, her personnel file, central personnel file, cluster personnel file, local office or division personnel file, hiring file, disciplinary file, termination file, other informal files kept by you, and copies of any documents maintained in any file referencing Ms. Gaujacq with respect to her health, leave status, performance, compensation, or any complaints made by or concerning Ms. Gaujacq.

5

6.      Please produce all documents which constitute, identify, or refer to any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq.

7.      Please produce all documents which constitute, identify, or refer to any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with the Company from August 2000 forward.

8       Please produce copies of all correspondence between Ms. Gaujacq and you, or concerning Ms Gaujacq by or to you from any employee of the Company, or concerning Ms. Gaujacq between you and any outside person.

9.      Please produce copies of all documents prepared by you, or at your direction, respecting Ms. Gaujacq.

10.     Please produces copies of all documents that constitute, refer or relate to any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch had complained on June 20, 2004 about a lack of information from Ms. Gaujacq.

11.     Please produce all documents supporting any contention by you that Ms. Gaujacq's performance was unsatisfactory.

12.     Please produce all documents reflecting the employment relationship between the you and Ms Gaujacq (in other words, any contracts, policies or documents governing your employment relationship).

13      Please produce all documents which constitute, refer or relate to any notes taken by you reflecting any evaluation, formal or informal, of Ms. Gaujacq.

14.    Please produce all documents supporting any contention by you that because of any fact discovered by you since the departure of Ms. Gaujacq, that Ms. Gaujacq would not have been hired or would have been fired (after-acquired evidence).

15.    Please produce copies of any notes taken by you at any meetings between or among Ms. Gaujacq and any managerial employee or representative of the Company, or any meeting between any persons at which Ms. Gaujacq was discussed.

16.    Please produce all email communications between you and Ms. Gaujacq, or between you and any other person referencing Ms. Gaujacq.

17    Please produce all email communications between you and Company managers, supervisors, or employees relating in any manner to Ms. Gaujacq.

18.    Please produce all versions (whether drafts, with handwritten notations, etc.) of any communication written by you containing any allegations relating to Ms. Gaujacq.

### Mr. Nadal

19.    Please produce any and all job descriptions for each position held by you

20.    Please produce all documents reflecting any comparison, whether favorable or unfavorable, made by the Company between you and Ms. Gaujacq.

21    Please produce copies of all performance evaluations done of you

22.    Please produce a copy of your personnel file of Mr. Nadal, and any files maintained by the Company that reference you, your compensation, benefits, performance, evaluations (formal or informal), qualifications and background.

### Your Conduct of Superior/Decision Maker

23.    Please produce all documents reflecting your level of participation by any decision makers in the acts taken against Plaintiff which are the subject manner of this action.

24.     Please produce all documents that constitute, refer or relate to the decision to appoint you to replace Ms. Gaujacq as President of EDFINA in the United States

25.     Please produce all documents that constitute, refer or relate to your decision to have the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President.

26.     Please produce all documents that constitute, refer or relate to any negotiations for your salary, benefits or other compensation as President of EDFINA.

27.     Please produce all documents that constitute, refer or relate to your decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts.

28     Please produce all documents that constitute, refer or relate to your decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA.

29.     Please produce all documents that constitute, refer or relate to your decision to change the locks on the company book closet where the corporate books were kept.

30     Please produce all documents that constitute, refer or relate to the decision to deny Mike Slavitt access to the company's books.

31.     Please produce all documents that constitute, refer or relate to the decision to terminate Mike Slavitt and the reasons for the termination.

32.    Please produce all documents that constitute, refer or relate to your instruction to Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office

33.    Please produce all documents that constitute, refer or relate to the decision to remove Ms. Gaujacq from her position on the Project with EDFINA in the United States.

34.    Please produce all documents that constitute, refer or relate to the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

35.    Please produce all documents that constitute, refer or relate to the decision to refuse to sign Ms. Gaujacq's expatriation contract as earlier promised.

36.    Please produce all documents that constitute, refer or relate to the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004.

37.    Please produce all documents that constitute, refer or relate to the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

### *Policies, Procedures and Education*

38.    Please produce documents sufficient to reflect all educational materials you have received and/or seminars you have attended since 1996 regarding gender discrimination or retaliation for complaining of discrimination.

39.    Please produce copies of any employee handbook given to you by the Company or otherwise in effect since 1996.

### *Damages*

40.    If you believes you have suffered or been damaged as a result of Ms. Gaujacq's actions, please produce all documents supporting your allegation.

41.    Please produce all documents respecting Ms. Gaujacq's damages, including any documents supporting any claim that Ms Gaujacq is not entitled to all or part of the damages claimed (this request relates specifically to the amount of damages, not to the merits of the underlying claims).

### *Financials*

42    Please produce all documents reflecting your financial status for the past three years, including but not limited to, federal and state income tax returns and related schedules and attachments, W-2s and 1099s, real estate assessments for property owned by you, and copies of all statements for the past year of asset accounts (savings, stock, insurance, etc.) If you have submitted any applications for credit or refinancing in the past three years, please include a copy of the application reflecting assets and liabilities.

### *Answer and Grounds of Defense*

43.    Please produce all documents relating to or supporting your partial or full denial of any allegation contained in the Complaint.

44.    Please produce all statements, whether written, oral, electronic, or recorded, by any person regarding any aspect of the claims, defenses, or facts relevant to this case.

45.    Please produce documents supporting your Affirmative Defenses.

### *Miscellaneous*

46    Please produce copies of all documents that constitute, refer or relate to any allegations by you that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed.

47.    Please produce copies of all documents that constitute, refer or relate to your demand that Ms. Gaujacq provide you with all of her business and company contacts.

48.    Please produce all documents that constitute, refer or relate to any contention by you of any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA.

49.    Please produce all documents gathered during the preparation of the defense of this action, including documents received as responses to subpoenae, voluntary requests for documents to outside parties, and internal document-gathering processes.

50.    Please produce all documents you contend are relevant in any way to this action.

51.    For each Request for Admission you deny, either in whole or in part, please produce all documents that support any such denial.

October 28, 2005

Catherine Gaujacq,
By Counsel

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff,
    Catherine L. Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT CHRISTIAN NADAL by first-class mail, postage pre-paid, this 28th day of October, 2005, addressed to counsel as follows:

> Ronald S. Cooper, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
>
> Counsel for Defendant
>   Christian Nadal

With a courtesy copy sent this same day by first class mail, postage pre-paid, addressed as follows:

> Laura B. Hoguet, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
>
> Counsel for Defendants Electricite de France, S.A. and
>   Electricite de France International North America, Inc.

Elaine Charlson Bredehoft

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT CHRISTIAN NADAL

Plaintiff Catherine Gaujacq, by counsel, requests that defendant Christian Nadal respond,

pursuant to Fed. R. Civ. P. 33, to the following interrogatories, and serve defendant's response

upon plaintiff's counsel at Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite

201, Reston, Virginia 20190, within the time provided by law.

DEFINITIONS AND INSTRUCTIONS

In responding to these interrogatories, the following definitions and instructions shall

apply:

1.      "Ms. Gaujacq" or "Gaujacq" refers to plaintiff Catherine Gaujacq. "You," "your"

or "Nadal" refers to defendant Christian Nadal. "EDFIN" refers to defendant, Electricite de

France International North America, Inc. EDFINA, Inc., its agents, officers, and employees, and

their subsidiaries, affiliates, and associated corporations, partnerships, and entities. "EDF" refers

to defendant Electricite de France ("EDF"). "The Company" refers collectively to EDF and

EDFINA. "Defendants" refers collectively to all three defendants.

2    "This action" refers to this civil action now pending in the United States District Court for the District of Columbia.

3.    The term "document" is used in the broadest possible sense, and includes (but is not limited to) any written, printed, typed, photocopied, photographed, recorded (including but not limited to magnetic, mechanical, or electronic recordings) or otherwise reproduced communication or representation. This definition includes (but is not limited to) correspondence, memoranda, wires, cables, studies, maps, analyses, diagrams, electronic mail, scraps of paper, notes, loan documentation, applications, drawings, charts, graphs, plans, plats, photographs, video tapes, audio tapes, computer disks, hard drives, contracts, agreements, working papers, drafts, reports of investigations or inspections of any kind, opinions of consultants or experts, diaries, minutes, calendars, other reports, vouchers, invoices, journals, bills, orders, time slips or records, books, computations, field notes, logs, financial records or statements, or work papers, checks, receipts, bank statements and the like. Data compilations from which information may be translated into usable form (e.g., computer memory) are also included. The definition includes, as a separate document, each duplicate or reproduction or copy of a document that contains any non-conforming note, marking, material or attachment. If it is maintained that any document requested to be identified has been destroyed or is otherwise no longer within your possession or control, identify the document and state the date, place, and manner of its destruction or removal from your control, and identify the person who authorized or ordered such destruction or removal.

4.    "Person" includes individuals, agencies, government entities, corporations, partnerships, unincorporated associations, and other business entities, and specifically includes the plaintiff and defendant in this action, and includes any predecessors or successors in interest.

2

5       The terms "identity," or "identify," or "describe," or "detail," when used in connection with a document mean to describe the document fully, including the character of the document, its title (if any), date, author(s), addressee(s), recipient(s), number of pages, the location and custodian of each copy to the extent known, the substance of the contents thereof, and any other identifying number of information  The terms "identity," or "identify," or "describe," or "detail" when used in connection with an event or condition mean to indicate, as completely and fully as possible, all facts comprising or contributing to the event or condition. The terms "identity," or "identify," or "describe," or "detail" when used in connection with a person mean:

a.       where the person is an individual, to state the person's full name, home and business addresses and telephone numbers, and business or other affiliation (including title), and

b.       where the person is not an individual, to state the full name of the entity, the nature of the entity, address and telephone number of the entity, and such additional identifying information as may be necessary to enable the "person" to be contacted  When identifying a "person," information should in all cases be adequate to permit service of process or notice of a deposition upon such person

6.       The terms "relating to," "regarding," and "referring to" shall be interpreted broadly, including both explicit and implicit reference and meaning (without limitation) relating to, regarding, referring to, constituting, defining, discussing, containing, construing, embodying, reflecting, stating, dealing with, prepared in contemplation of, prepared in connection with, prepared as a result of, or in any way pertaining to.

3

7.    Use of the singular tense shall be deemed to include the plural and vice versa. Use of either the masculine or feminine pronoun shall be deemed to include both genders.  "And" as well as "or" shall be construed either disjunctively or conjunctively so as to permit the inclusion of materials or information otherwise excluded.

8.    In responding to these interrogatories, please furnish all information available to you or within your control, including any information in the possession of agents, attorneys, contractors, subcontractors, former employees, officers, members, or any other person acting on your behalf.

9.    Each interrogatory shall be deemed continuing so as to require supplemental answers in accordance with Fed. R. Civ. P. 26(e).

10.    In responding to each interrogatory, please identify all contributing sources of information, including the identity of any person consulted or document used in connection with answering such interrogatory and the extent of any person's assistance.

11.    If a privilege or privileges are asserted as to any information requested by these interrogatories, or if any interrogatory is otherwise not fully answered, please respond to the extent the interrogatory is not objected to, and state the specific grounds for not fully answering, the legal basis for not fully answering (specifying any privilege asserted), and the facts allegedly giving rise to any claim of privilege.  Identify any information, document, or other material for which any privilege is asserted, and identify the date and author or generator as well as all persons shown as having been, or otherwise known to you as having been, recipients of such information, document, or other material. If you contend that you have attempted to procure the waiver of the privilege, please also identify fully the persons with whom you communicated and the stated reason for refusal to waive the privilege.

4

12.    Where there is no time limit specified, the interrogatories encompass documents in existence and/or events occurring during the time period from August, 2000 through the present

## INTERROGATORIES

1    Identify fully each witness to, or person you believe possesses any knowledge of any of the allegations in the pleadings, facts relevant to the claims or defenses asserted by the parties, any of the discovery responses from plaintiff or defendants in this action, or any damages claimed by the plaintiff.

2.    For each person identified in response to Interrogatory No. 1, please describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge. Identify all documents reflecting such facts or knowledge.

3.    Describe each complaint any employee has made against you with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay, whether written or oral, internally to any EDFINA or EDF managerial or supervisory employee, or with any outside administrative agency from 1995 to the present. With respect to each complaint, describe fully each investigation or action taken by the Company and the final result of each such complaint. Identify all documents reflecting your response to this interrogatory.

4.    If you contend Ms. Gaujacq had performance problems while working at EDFINA, please describe fully each specific performance problem; all facts upon which you rely in so identifying this problem, including all persons who have so stated; all communications you had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms. Gaujacq's

performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

5.    If you contend that because of any fact discovered by you since the departure of Ms. Gaujacq, that Ms. Gaujacq would not have been hired or would have been fired or demoted (after-acquired evidence), please describe fully all facts supporting such contention, including the circumstances surrounding the discovery of such evidence, the date of discovery, all persons whom you or the Company has not hired or fired because of the same or similar facts, and the reasons why this would have caused you or the Company not to hire or to fire Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

6.    If you contend Ms. Gaujacq made any statement which is against her interest, state the nature of such statement, the names of all persons who heard the alleged statement, and the date and place that the alleged statement was made. Identify all documents reflecting your response to this interrogatory.

7    Please describe in detail your responsibilities and authority as President of EDFINA and state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms. Gaujacq during her tenure as President of EDFINA. (For example, what responsibilities are the same, and what responsibilities, if any, held by either you or Ms. Gaujacq were not held by the other person in the position of President of EDFINA.) Identify all documents reflecting your response to this interrogatory.

8.    Please describe in detail all reasons why you had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts Please include in your answer the identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts. Identify all documents reflecting your response to this interrogatory.

9.    Please describe in detail all reasons why you revoked all of Ms. Gaujacq's powers as a vice presidents of EDFINA on or about June 18, 2004. Identify all documents reflecting your response to this interrogatory.

10.    Please describe in detail all reasons why you requested the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President in or about June, 2004. Please describe any findings and/or conclusions of the audit and state whether or not any wrongdoing in the part of Ms. Gaujacq was discovered. Identify all documents reflecting your response to this interrogatory

11.    Please describe in detail the reasons for sending the letter dated June 18, 2004 Ms. Gaujacq and Mr. Dreux which revoked all of Ms. Gaujacq's and Mr. Dreux' powers as vice presidents of EDFINA, and the reason you then sent another letter, also dated June 18, 2004, addressed solely to Mr. Dreux, which granted Mr. Dreux the authority to act on behalf of the President of EDFINA, and reinstated all authority and powers that had been rescinded by the first letter. Identify all documents reflecting your response to this interrogatory

12.    Please describe in detail all bases for your allegation that there were "wrongdoings" under Ms. Gaujacq's watch. Identify all documents reflecting your response to this interrogatory.

13    Please describe in detail your reasons for changing the locks on the company book closet where the corporate books were kept, without Ms. Gaujacq's knowledge, in or about June 2004. Identify all documents reflecting your response to this interrogatory.

14.    Please describe in detail all bases for any allegations by your that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed. Identify all documents reflecting your response to this interrogatory.

15.    Please describe in detail all bases for your statements and/or allegations that the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch had complained on June 20, 2004 about a lack of information from Ms. Gaujacq. Please who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms. Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s). Identify all documents reflecting your response to this interrogatory.

16.    Please describe in detail all reasons for the termination of Mike Slavitt, including who the decision makes were in the termination decision, and whether Mr. Slavitt had any counseling to address the reasons for his termination at any time prior to the termination decision being made. Identify all documents reflecting your response to this interrogatory

17    Please explain why you failed to provide the audit findings and recommendations report to Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

18.     Please explain in detail all action taken by you as a result of Ms. Gaujacq's complaints to you about your treatment of her, made verbally and in writing (including, but not limited to, Ms. Gaujacq confronting you on several occasions in June and July 2004, and her July 22, 2004, email to you requesting that you contact her to discuss your treatment of her). Identify all documents reflecting your response to this interrogatory.

19.     Please describe in detail the reasons for your demand, on or about July 12, 2004, that Ms. Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office by the next day. Identify all documents reflecting your response to this interrogatory.

20 .     For each Request for Admission you deny, either in whole or in part, please describe all facts upon which you base, or which support, any such denial.

October 28, 2005                              Catherine Gaujacq,
                                             By Counsel

                                             Elaine Charlson Bredehoft
                                             D.C. Bar No. 441425
                                             Kathleen Z. Quill
                                             D.C. Bar No. 489079
                                             CHARLSON BREDEHOFT & COHEN, P.C.
                                             11260 Roger Bacon Drive
                                             Suite 201
                                             Reston, Virginia  20190
                                             (703) 318-6800

                                             Counsel for Plaintiff,
                                               Catherine L. Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT CHRISTIAN NADAL by first-class mail, postage pre-paid, this 28th day of October, 2005 on counsel for Mr. Nadal addressed as follows:

> Ronald S. Cooper, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
>
> Counsel for Defendant
>   Christian Nadal

With a courtesy copy sent this same day first class mail, postage pre-paid, addressed as follows:

> Laura B. Hoguet, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America, Inc.

Elaine Charlson Bredehoft

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
CATHERINE GAUJACQ                   )
                                    )
        Plaintiff,                  )
                                    )
v                                   )    No. 1:05CV0969 (JGP)
                                    )
ELECTRICITE DE FRANCE               )
INTERNATIONAL NORTH AMERICA,        )
INC , et al                         )
                                    )
        Defendants.                 )
                                    )
```

## DEFENDANT CHRISTIAN NADAL'S RESPONSES TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Christian Nadal,

by counsel, hereby objects and responds to Plaintiff Catherine Gaujacq's First Set of

Interrogatories. The answers given in response to Plaintiff's First Interrogatories are given

without prejudice to Mr. Nadal's right to present as evidence additional facts which he may later

discover or recall or which have been mistakenly omitted by him from these responses.    Mr.

Nadal makes these objections and responses without waiving any right or privilege to object to

the introduction into evidence, in this or any other action or proceeding, of any information

contained in any answer, or documents identified and/or produced in response, to any of

Plaintiff's First Interrogatories, upon the grounds of competency, relevancy, materiality, hearsay,

authenticity, or any other ground. Inadvertent disclosure of any information subject to any

applicable privilege or doctrine, including but not limited to the attorney-client privilege or work

product doctrine, is not intended to be, and shall not operate as, a waiver of any such privilege or

doctrine, in whole or in part. Nor is any such inadvertent disclosure intended to be, nor shall it

constitute, a waiver of the right to object to any use of such information.   Discovery in this case

is ongoing, and these responses are based upon information currently known to Mr. Nadal after

conducting a reasonable investigation.  Mr. Nadal reserves the right to revise or supplement any

objection or response at any time, and will supplement these responses to the extent required by

the Federal Rules.

## **GENERAL OBJECTIONS**

Each response herein is subject to the General Objections listed below.

1       Mr. Nadal objects to Plaintiff's First Interrogatories to the extent that they call for

the disclosure of information that is not relevant to the subject matter of the litigation and not

reasonably calculated to lead to the discovery of admissible evidence.

2.      Mr. Nadal objects and responds on the basis of his understanding of and

interpretation of the interrogatories in Plaintiff's First Interrogatories.  If Plaintiff understands or

interprets any of the interrogatories in Plaintiff's First Interrogatories differently, Mr. Nadal

reserves the right to supplement any of these responses, either with additional objections or

otherwise.

3.      Mr. Nadal objects to Plaintiff's First Interrogatories to the extent that they ask for

information that is protected from disclosure by the attorney-client privilege, the attorney work

product doctrine or any other privilege, immunity or protection available under the law, and no

such information will be disclosed.  Mr. Nadal does not intend by these responses or objections

to waive any claim of privilege or immunity.

4.      Mr. Nadal objects to Plaintiff's First Interrogatories to the extent that they

violate any right of privacy that he may have, or the right to privacy of any other person or entity

under the laws of the United States or France.

2

5.    Mr. Nadal objects to Plaintiff's First Interrogatories to the extent that they call for information that may be derived or ascertained from the documents produced by him or other defendants pursuant to Plaintiff's requests for production of documents, with substantially the same burden upon Plaintiff as upon him, and to that extent Mr. Nadal refers Plaintiff to said documents.

6.    Mr. Nadal objects to each Interrogatory to the extent that the Interrogatory is vague or ambiguous. Mr Nadal specifically objects to Plaintiff's definition and use of the term "Company," as it conflates and confuses two distinct corporate entities.

7.    Mr. Nadal objects to each Interrogatory to the extent that the Interrogatory seeks information that is already known to, or in the possession of, the Plaintiff.

8.    Mr Nadal objects to each Interrogatory to the extent that it is unduly burdensome and oppressive.

9.    Mr. Nadal objects to each Interrogatory to the extent that it reflects inaccurate premises and/or presumptions.

10.    Mr. Nadal objects to each Interrogatory to the extent that the instructions, definitions, or individual Interrogatories attempt to impose obligations and requirements that are different from, or more burdensome than, the obligations and requirements imposed by the Federal Rules of Civil Procedure.

11.    Mr. Nadal objects to each Interrogatory and discreet subpart that exceeds the number of interrogatories permitted pursuant to Federal Rule of Civil Procedure 33(a). Mr. Nadal also objects to any definition and/or instruction that amounts to a separate and distinct Interrogatory to the extent that those definitions and/or instructions would further increase the number of Interrogatories submitted to him.

3

12.    Mr. Nadal objects to each Interrogatory that should properly be addressed to one of the corporate defendants in this matter

## INTERROGATORIES

1.    Identify fully each witness to, or person you believe possesses any knowledge of any of the allegations in the pleadings, facts relevant to the claims or defenses asserted by the parties, any of the discovery responses from plaintiff or defendants in this action, or any damages claimed by the plaintiff

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. Subject to and without waiving the foregoing objections, Mr. Nadal states that he is presently unaware of any individuals who may possess knowledge of this matter beyond those identified in the parties' Initial Disclosures made pursuant to Rule 26 (a).

2.    For each person identified in response to Interrogatory No. 1, please describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge. Identify all documents reflecting such facts or knowledge.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory as comprising 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that the knowledge of each witness has been identified in the parties' Initial Disclosures.

3    Describe each complaint any employee has made against you with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay, whether written or oral, internally to any EDFINA or EDF managerial or supervisory employee, or with any outside administrative agency from 1995 to the present. With respect to each complaint, describe fully each investigation or action taken by the Company and the final

4

result of each such complaint. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objections 4, 6, 9, and 12. In addition, Mr. Nadal objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege or work product protections, and because the information requested is not likely to lead to admissible evidence in this case. Furthermore, this case is not a "pattern or practice" case, and for that reason, the information requested is wholly irrelevant. Additionally, the Interrogatory is comprised of 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that with the exception of the complaint that is the subject of this suit, he is unaware of any complaints made against him by any employee with regard to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay. Aside from the present action, Mr. Nadal is unaware of any investigation undertaken by EDFINA or EDF in regards to Plaintiff's Complaint.

4.    If you contend Ms. Gaujacq had performance problems while working at EDFINA, please describe fully each specific performance problem; all facts upon which you rely in so identifying this problem, including all persons who have so stated; all communications you had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by you to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage you suffered as a result of such performance problem on the part of Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

5

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objections 6 and 12. In addition, Mr. Nadal objects to this Interrogatory as comprising 6 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that Plaintiff displayed numerous performance problems including, without limitation:

1. Undermining the Leadership Transition at EDFINA

Plaintiff failed to facilitate, and in fact worked to undermine, the leadership transition at EDFINA following the appointment of Mr. Nadal in 2004 by the President of EDF to be EDF's Delegate General to North America. She incorrectly informed EDFINA employees, EDF delegates working at the EDFINA office, and the immigration lawyer handling Mr. Nadal's visa application that Mr. Nadal's role would be that of a gas analyst and that her role would be unchanged. Plaintiff provided inaccurate information that complicated Mr. Nadal's visa application and frustrated efforts to obtain suitable housing for Mr. Nadal and his family. Plaintiff's failure to acknowledge Mr. Nadal's role as EDF's Delegate General to North America, and her active undercutting of his role, engendered confusion, and required extensive time and attention from EDFINA employees and from Mr. Nadal.

From at least the time of Mr. Nadal's arrival in Washington, D.C. to assume his role as EDF's Delegate General to North America, Plaintiff failed and refused to develop an effective working relationship with him, failed to meet with him for months and failed even to attend scheduled meetings with him in June 2004 to discuss her role and responsibilities at EDFINA.

2. Failing to Report to Work

Plaintiff habitually failed to present herself at the offices of EDFINA and thereby required that all business communications be redirected to her at her residence. Plaintiff

6

appeared at EDFINA's office only one day in June 2004 and one day in July 2004.

Plaintiff also failed to attend business meetings, including meetings with Nadal, Nadal and Georges Servière, an ANS conference in Pittsburgh, Pennsylvania in June 2004, and an EDF conference in Lyon, France in June, 2004.

        3.    <u>Failing to Preserve and Maintain EDFINA Property</u>

Plaintiff failed to maintain EDFINA documents at EDFINA's office. She failed and refused to return EDFINA documents to EDFINA's office when instructed to do so by Mr. Nadal. After being instructed to return all EDFINA corporate documents to the EDFINA office, including documents stored on EDFINA's laptop computer that she utilized, Plaintiff deliberately destroyed significant portions of the contents of the EDFINA laptop prior to returning it to the corporation. Due to Plaintiff's failure to return to EDFINA all documents and other data maintained on the EDFINA laptop she utilized, and her subsequent destruction of most of the data on such laptop prior to her return of the laptop to EDFINA, EDFINA has lost data that had been maintained on said laptop, and EDFINA has been forced to undertake the task of reconstructing EDFINA files that had been under her control.

        4.    <u>Failing to Develop and Apply Sound Financial and Management Procedures</u>

The EDF audit process in July 2004 and the findings of the EDF audit revealed that Plaintiff failed during her term of service as President of EDFINA to develop and apply sound financial and management procedures. Plaintiff demonstrated poor personnel administration while serving as President of EDFINA, and poorly administered the offices of EDFINA, including but not limited to its record-keeping and information technology systems. She repeatedly stated that the offices of EDFINA were unsafe and unprepared to receive and house confidential materials when such conditions were within her own area of responsibility.

7

EDFINA has discovered material errors in official EDFINA filings that Plaintiff made or permitted to be made during the time she served as President of EDFINA.

Mr. Nadal's discovery of Plaintiff's performance problems is ongoing, and he reserves the right to supplement this Response if additional performance problems come to light.

> 5.    Additional Complaints Regarding Plaintiff's Performance

Mr. Nadal was advised by Serge Massart, director of the Engineering Division of EDF, that during the time period Plaintiff served as President of EDFINA, she was delinquent in providing information regarding NuStart Energy Development, LLC ("NuStart"). These delinquencies occurred prior to the assumption by Mr. Nadal of the position of President of EDFINA. In addition, the SEPTEN Group, a subdivision of the EDF Engineering Division, noted Plaintiff's absence from a meeting in Lyon, France on June 21, 2004, and the fact that the group was thereby deprived of her information on NuStart. Further, Mr. Nadal advised Plaintiff, in a telephone conversation of June 11, 2004, of the need for her to meet with him to discuss what role and responsibilities she might have at EDFINA going forward and the need to improve her working methods and habits. Plaintiff failed to attend meetings scheduled with Mr. Nadal to discuss these matters. Subsequently, Mr. Nadal advised Plaintiff that her ongoing failure to maintain EDFINA documents and files at the EDFINA office was unacceptable and instructed her to return to the EDFINA office immediately all EDFINA documents that she maintained at her personal residence or on the laptop computer she utilized or anywhere else. Mr. Nadal's instruction to Plaintiff was given in a meeting on July 12, 2004, confirmed by an e-mail of July 12, 2004 and repeated in another e-mail of July 16, 2004. In addition, Mr. Nadal advised EDF of: Gaujacq's failure to facilitate the immigration and relocation process for Mr. Nadal's relocation from France to Washington, D.C.; her having given incorrect information about Mr.

8

Nadal's position to EDFINA office personnel and to the immigration lawyer handling Mr.
Nadal's visa application; and her habitual failure to come to the EDFINA office for work. Mr
Nadal subsequently advised EDF of her failure to attend scheduled meetings with Mr. Nadal, Mr.
Nadal and Georges Servière, the American Nuclear Society ("ANS") and with SEPTEN and her
interference with the transition from Plaintiff to Georges Servière as EDFINA's first
representative to NuStart.

     5.     If you contend that because of any fact discovered by you since the departure of
Ms. Gaujacq, that Ms. Gaujacq would not have been hired or would have been fired or demoted
(after-acquired evidence), please describe fully all facts supporting such contention, including
the circumstances surrounding the discovery of such evidence, the date of discovery, all persons
whom you or the Company has not hired or fired because of the same or similar facts, and the
reasons why this would have caused you or the Company not to hire or to fire Ms. Gaujacq.
Identify all documents reflecting your response to this interrogatory.

    **RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the
General Objections, especially General Objection 12. In addition, Mr. Nadal objects because he
is not in a position to make hiring decisions for EDF regarding General Delegates and therefore
is not the proper party to respond to this Interrogatory. This Interrogatory also comprises 7
discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal is
presently aware that Plaintiff took EDF and/or EDFINA documents, including but perhaps not
limited to documents reflecting his pay, and provided them to third parties, including but perhaps
not limited to the EEOC. Additionally, Mr. Nadal understands that Plaintiff erased from her
company laptop EDFINA documents rather than returning them to EDFINA as she was
instructed.

6      If you contend Ms. Gaujacq made any statement which is against her interest, state the nature of such statement, the names of all persons who heard the alleged statement, and the date and place that the alleged statement was made. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objection 6. In addition, Mr. Nadal objects to this Interrogatory because it is premature and comprises 4 discreet Interrogatories. Additionally, Mr. Nadal objects to this Interrogatory on the basis that the term "against her interest" is vague and may amount to a legal determination that is protected under the attorney work product doctrine. Subject to and without waiving the foregoing objections, Mr. Nadal states that Plaintiff's statements, made on or about July 12, 2004 and July 16, 2004, wherein she refused to comply with the instruction from Mr. Nadal to bring all company documents to the EDFINA offices immediately, are statements against her interest. Additionally, many of the documents in the case, including but not limited to email and facsimile correspondence between Plaintiff and EDFINA staff, reflect what may be statements against Plaintiff's interest in that Plaintiff's conduct of EDFINA business almost exclusively from home was contrary to sound business practice, generally reflected deception, and set a poor example for subordinates.

7.      Please describe in detail your responsibilities and authority as President of EDFINA and state whether you believe your job responsibilities and authority as President of EDFINA are the same, similar, greater or less than the job responsibilities and authority held by Ms. Gaujacq during her tenure as President of EDFINA. (For example, what responsibilities are the same, and what responsibilities, if any, held by either you or Ms. Gaujacq were not held by

10

the other person in the position of President of EDFINA.) Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objections 6 and 12. In addition, Mr. Nadal objects to this Interrogatory as comprising 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal, upon his appointment by EDF in 2004 to be EDF's new Delegate General to North America, was charged by the EDF President with the responsibility of expanding the role and presence of EDF in North America. Consistent with this expansion, Mr. Nadal is responsible for exploring financial and commercial opportunities for EDF in North America compatible with the needs and plans of EDF as it has proceeded from a government-owned entity in France to a publicly held company.

Mr. Nadal is responsible for maintaining high-level contacts with United States authorities and academics in the energy field, including but not limited to the following: the United States Nuclear Regulatory Commission; the Federal Energy Regulatory Commission; the National Academy of Sciences; the United States Environmental Protection Agency; the United States Senate, the United States House of Representatives; the United States Department of Energy; the Commodities Futures Trading Commission, the Massachusetts Institute of Technology; the Nuclear Energy Institute; the Edison Electric Institute; the Electric Power Research Institute; and various utility companies in the United States. Mr. Nadal has been invited to deliver speeches and/or to organize and chair panels on nuclear energy, including an October, 2005 European Institute with panels of Undersecretaries and other members of the United States administration, Ambassadors, and various think tanks, and on Electricity Trading at a September, 2005 annual meeting of the CFTC in Chicago.

11

Mr. Nadal is also responsible for expanding EDF's role in Canada and maintains the position of associate of the Industrial Board of Electricity of Quebec.

Mr. Nadal is frequently in contact with the French Embassy and the French Ambassador and also welcomes delegations to the United States from France, including Ministers, members of Parliament, and various corporate delegations. In France, Mr. Nadal makes speeches in meetings of EDF's top executives in Paris and maintains contact with Chairmen and Commissioners of top authorities in the energy field in France (including the French equivalents of FERC and DOE, the Nuclear Waste Management Authority, and Parliament).

Mr. Nadal is also called upon from time to time to represent the President of EDF at meetings or conferences in the United States and in France when the President of EDF is unable to attend.

Mr. Nadal has primary responsibility for EDFINA's role in the NuStart program, for communicating with EDF to advise and consult regarding EDFINA activities, and for providing information about EDF to United States capital markets in respect of EDF's initial public stock offering. In addition, Nadal is responsible for the management of EDFINA, and directs all business activities.

When Plaintiff served as President of EDFINA, she was responsible for the management of EDFINA, directing all business activities including hiring and firing clerical, accounting and technical staff, retaining and coordinating the work of outside contractors and consultants supplying services to EDFINA, and working in close collaboration with leaders of United States electrical utilities for the purpose of building and strengthening ties between the United States and French energy industries and undertaking collaborative research and

12

development at a highly advanced level. She also served as EDFINA's first representative to NuStart. Additionally, Plaintiff was responsible for establishing and maintaining contacts with leaders of electrical utility companies in the United States and Canada.

8.    Please describe in detail all reasons why you had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts. Please include in your answer the identify of all other individuals whom you had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objections 9 and 12. In addition, Mr. Nadal objects to this Interrogatory as comprising 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that he sent a letter to the bank dated June 4, 2004 that changed check signing authority for EDFINA officers. Plaintiff did not yet have a defined mission at EDFINA that required her to sign checks for EDFINA. If a mission for Gaujacq as Vice President of EDFINA had been agreed upon and accepted by her, her responsibilities might have warranted that she be given check-signing authority, but no such mission was ever agreed upon. See also Response to Interrogatory No. 9, describing additional concerns Mr. Nadal had about Plaintiff.

9.    Please describe in detail all reasons why you revoked all of Ms. Gaujacq's powers as a vice president of EDFINA on or about June 18, 2004. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objection 9. In addition, Mr. Nadal objects to this

13

Interrogatory as comprising 2 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that when he assumed the position of President of EDFINA and Plaintiff resigned as President on June 1, 2004, the powers appurtenant to that position, including the authority to make commitments on behalf of EDFINA, transferred from Plaintiff to Mr. Nadal. Plaintiff had no explicit power or authority as Vice President of EDFINA because she had no mission agreed upon for her within EDFINA following her resignation as President. Although Plaintiff had been appointed Vice President by the EDFINA board, her mission had not been designated. Plaintiff was to have met with Mr. Nadal to discuss with him the role she would be given at EDFINA under his direction. However, Plaintiff did not present herself at the offices of EDFINA and otherwise failed to cooperate or meet with Mr. Nadal.

On June 18, 2004 Plaintiff failed to appear for a scheduled meeting with Mr. Nadal to discuss her role and responsibilities at EDFINA. To ensure that Plaintiff understood the change in her authority after her resignation as President of EDFINA, and to prevent any unauthorized actions by Plaintiff during his imminent three-week trip to France, Mr. Nadal sent her a letter dated June 18, 2004 delineating her current authority. Mr. Nadal sent the same letter dated June 18, 2004 to the other Vice President, Benoit Dreux ("Dreux"), to ensure that both Vice Presidents understood the scope of their authority and certain policies. In particular, Mr. Nadal advised them, "Only the President is permitted to enter into contracts with third parties on behalf of EDFINA; make representations and/or warranties on behalf of EDFINA, or incur expenses on behalf of EDFINA [except] [i]n the President's absence ... upon the express written consent of the President."

In another letter dated June 18, 2004, Mr. Nadal gave his express written consent to Dreux to act on behalf of Mr. Nadal in the particular areas quoted above. The June 18, 2004

14

letter to Dreux was intended by Mr. Nadal to be provisional in nature and to be used in case of emergency during his absence. Dreux was the appropriate person to be authorized to act for EDFINA in Mr. Nadal's absence because, unlike Plaintiff, he was generally available for regular consultation with Mr. Nadal on all business matters. Further, Plaintiff had demonstrated unprofessional behavior at least since Mr. Nadal's arrival at EDFINA and had repeatedly taken action undermining Mr. Nadal's authority. Mr. Nadal believed that it was necessary for a responsible and reliable individual to be entrusted with authority to act in his place during his absence from the office, and Dreux met those requirements.

10.    Please describe in detail all reasons why you requested the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President in or about June, 2004. Please describe any findings and/or conclusions of the audit and state whether or not any wrongdoing in the part of Ms. Gaujacq was discovered. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objections 9 and 12. In addition, Mr. Nadal objects to this Interrogatory as comprising 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that he did not request the EDF auditors to come to EDFINA to undertake the special audit. The findings and conclusions of the audit report are detailed in the audit report itself.

11.    Please describe in detail the reasons for sending the letter dated June 18, 2004, to Ms. Gaujacq and Mr. Dreux which revoked all of Ms. Gaujacq's and Mr. Dreux' powers as vice presidents of EDFINA, and the reason you then sent another letter, also dated June 18, 2004,

15

addressed solely to Mr. Dreux, which granted Mr. Dreux the authority to act on behalf of the President of EDFINA, and reinstated all authority and powers that had been rescinded by the first letter. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory as comprising 3 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal directs Plaintiff to his Response to Interrogatory # 9.

12. Please describe in detail all bases for your allegation that there were "wrongdoings" under Ms. Gaujacq's watch. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory because "wrongdoings" is vague. Additionally, this Interrogatory comprises 2 discreet Interrogatories. Mr. Nadal further objects to this Interrogatory in that it appears to refer to a specific statement, the context of which is not clear from the Interrogatory. Subject to and without waiving the foregoing objections, Mr. Nadal states that he never alleged that there were "wrongdoings" under Plaintiff's watch.

13. Please describe in detail your reasons for changing the locks on the company book closet where the corporate books were kept, without Ms. Gaujacq's knowledge, in or about June 2004. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objection 9. Mr. Nadal also objects to this Interrogatory because the term "company book closet" is vague. Additionally, Mr. Nadal objects to this Interrogatory as it comprises 2 discreet Interrogatories. Subject to and without waiving the

16

foregoing objections, Mr Nadal states that he never changed any locks inside the office that affected access to the corporation's books.

14. Please describe in detail all bases for any allegations by you that Ms Gaujacq was paying fees to consultants and contractors of the company without services being performed. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory because it is vague and comprises 2 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr Nadal states that he never alleged that Plaintiff was paying fees to consultants and contractors of the company without services being performed.

15. Please describe in detail all bases for your statements and/or allegations that the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch had complained on June 20, 2004 about a lack of information from Ms. Gaujacq. Please who made any such complaint, to whom the complaint was made, in what manner (verbally or in writing), who was present when the complaint was made, whether Ms. Gaujacq was informed of the complaint at the time it was made, and what action was taken as a result of any such complaint(s). Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory because it is vague and comprises 8 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr Nadal states that the information sought by this Interrogatory is reflected in the memorandum of the meeting in Lyon, which will be produced in accordance with Fed. Rule Civ P 33(d) Further responding, Plaintiff deprived both EDF and EDFINA of important

17

information concerning NuStart. By way of example and not limitation, Mr. Nadal is aware that

Jean-Luc Foret expended significant time and effort to recreate, or to obtain from other sources,

certain NuStart documents that should have been in the files of EDFINA and EDF but which

Plaintiff had failed to store in EDFINA's offices, to transmit to EDF in France, and/or to return

to either EDFINA or EDF at the conclusion of her employment with EDF. EDFINA and EDF

held a conference call in October of 2004 in an attempt to reconstruct the NuStart files and to

move forward with the business of EDF and EDFINA in NuStart. See also Part 5 of Response to

Interrogatory No. 4.

    16.    Please describe in detail all reasons for the termination of Mike Slavitt, including

who the decision makes were in the termination decision, and whether Mr. Slavitt had any

counseling to address the reasons for his termination at any time prior to the termination decision

being made. Identify all documents reflecting your response to this interrogatory.

    **RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the

General Objections. In addition, Mr. Nadal objects to this Interrogatory as comprising 4 discreet

Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that

Mr. Slavitt was a third party provider of accounting services to EDFINA, not an employee of

EDFINA. Mr. Slavitt's services were terminated because his work was unsatisfactory. Mr

Nadal made the decision to discontinue EDFINA's use of Mr. Slavitt's accounting services.

Finally, Mr. Nadal does not understand the reference to "counseling" with respect to third party

providers of professional accounting services.

    17.    Please explain why you failed to provide the audit findings and recommendations

report to Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections, especially General Objection 9. In addition, Mr. Nadal objects to this Interrogatory as comprising 2 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that he did not fail to provide the audit findings to Plaintiff. A copy of the audit report was provided to Plaintiff in her office mailbox.

18.    Please explain in detail all action taken by you as a result of Ms. Gaujacq's complaints to you about your treatment of her, made verbally and in writing (including, but not limited to, Ms. Gaujacq confronting you on several occasions in June and July 2004, and her July 22, 2004, email to you requesting that you contact her to discuss your treatment of her). Identify all documents reflecting your response to this interrogatory.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory because it is vague, ambiguous and comprises 2 discreet Interrogatories. Mr. Nadal also objects because the Interrogatory assumes that Mr. Nadal was aware of Plaintiff's complaints. Subject to and without waiving the foregoing objections, Mr. Nadal states that he responded appropriately to all communications from Plaintiff, whether oral or written. As to the specific e-mail referenced on July 22, 2004, Mr. Nadal replied by e-mail dated July 23, 2004, which will be produced pursuant to Fed. Rule Civ. P. 33(d).

19.    Please describe in detail the reasons for your demand, on or about July 12, 2004, that Ms. Gaujacq bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the Project to your office by the next day. Identify all documents reflecting your response to this interrogatory.

19

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory as comprising 2 discreet Interrogatories. Subject to and without waiving the foregoing objections, Mr. Nadal states that the request was made pursuant to fundamental and sound business practices counseling that company records be kept in a location where they are secure and accessible to company employees, as well as pursuant to the policy of EDFINA, articulated by him as President of EDFINA, that company records be maintained in the company's offices.

20. For each Request for Admission you deny, either in whole or in part, please describe all facts upon which you base, or which support, any such denial.

**RESPONSE:** Mr. Nadal objects to this Interrogatory for the reasons stated in the General Objections. In addition, Mr. Nadal objects to this Interrogatory as comprising dozens of discreet Interrogatories that vastly exceed the 25 permitted under Fed. Rule Civ. P. 33(a). Subject to and without waiving the foregoing objections, Mr. Nadal states that the Requests for Admissions were denied, either in whole or in part, because they were not factually correct.

As to objections:

STEPTOE & JOHNSON, LLP.

By: _____
Ronald S. Cooper,
D.C. Bar No. 149799
David Clark
D.C. Bar No. 473279
1330 Connecticut Ave., N.W.
Washington, DC 20036
(202) 429-8075
Attorneys for Defendant Christian Nadal

VERIFICATION

I, Christian Nadal, declare under penalty of perjury under the laws of the United States of America that I have reviewed the foregoing Responses to Plaintiff's First Set of Interrogatories to Defendant Christian Nadal and that the factual responses herein are true and correct to the best of my knowledge and belief

Executed on December 12, 2005

_____
Christian Nadal

21

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing CHRISTIAN NADAL'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on December 12, 2005:

Elaine Charlson Bredehoft (ebredehoft@charlsonbredehoft.com)
Kathleen Z. Quill
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

With a courtesy copy by electronic mail as follows:

Laura B. Hoguet (LHoguet@hnrlaw.com)
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808

Counsel for Defendants
Electricite de France, S.A. and
Electricite de France International North America, Inc

Ronald S. Cooper

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT NADAL'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Christian Nadal, by counsel, hereby objects and responds to Plaintiff Catherine Gaujacq's First Request for Production of Documents. By responding herein, Mr. Nadal does not waive any objection he may have to the relevance or admissibility of any document. Mr. Nadal reserves the right to revise or supplement any objection or response at any time, and will supplement these responses to the extent required by the Federal Rules.

### GENERAL OBJECTIONS

Each Request is subject to the General Objections listed below.

1. Mr. Nadal objects to each Request for Production ("Request") to the extent that it does not convey with reasonable clarity what Mr. Nadal is asked to produce, or is otherwise vague or ambiguous. Mr. Nadal specifically objects to Plaintiff's definition and use of the term "Company," as it conflates and confuses two distinct corporate entities.

2.     Mr. Nadal objects to each Request to the extent that it is unduly burdensome and oppressive.

3.     Mr. Nadal objects to each Request to the extent that it is overly broad, and not relevant to any issue in the case.

4.     Mr. Nadal objects to each Request to the extent that it reflects inaccurate premises and/or presumptions.

5.     Mr. Nadal objects to each Request to the extent it seeks information protected by the attorney-client privilege or the work product doctrine. Mr. Nadal will not provide such information.

6.     Mr. Nadal objects to each Request to the extent that the instructions, definitions, or individual Requests attempt to impose obligations and requirements that are different from, or more burdensome than, the obligations and requirements imposed by the Federal Rules of Civil Procedure.

7.     Mr. Nadal objects to each definition and instruction that purports to require identification of people or things, or otherwise require information beyond what is contained in the documents themselves. These interrogatory-style instructions are inappropriate for requests for production.

8.     Mr. Nadal objects to each Request that should properly be directed to one of the corporate defendants in this matter. Mr. Nadal object to the Requests to the extent they seek documents that are within the possession, custody or control of one of the corporate defendants in this action. Each response is limited to those documents in Mr. Nadal's personal possession, custody and control, and excludes any documents he may hold or control as an officer of defendant EDFINA, or employee of defendant EDF.

2

9       Mr Nadal objects to each Request to the extent that it requires production of

documents that are protected from disclosure by contract, or by privacy or other laws of France

or the United States. A statement that Mr Nadal will produce documents responsive to any

particular request should not be understood as representation that responsive documents exist.

10.      All documents produced pursuant to this Response will be produced subject to the

terms of Protective Order agreed among the parties and submitted to the Court on December 6,

2005.


## REQUESTS FOR PRODUCTION OF DOCUMENTS

### *Documents Identified in Interrogatories and Initial Disclosures*

1.       Please produce all documents you were requested to identify in plaintiff's first set

of interrogatories to you in this action, that you relied on in answering any of the interrogatories,

or that reflect or otherwise support your response to any interrogatory.

**RESPONSE:** Mr. Nadal objects to Request No. 1 on the basis of the General Objections

set forth above, especially General Objections 8 and 9. Subject to and without waiving those

objections, Mr. Nadal responds that he will produce responsive documents in his personal

possession, custody or control.

2.       Please produce all documents you identified in your Initial Disclosures.

**RESPONSE:** Mr. Nadal objects to Request No. 2 on the basis of the General Objections

set forth above, especially General Objections 8 and 9. Subject to and without waiving those

objections, Mr. Nadal responds that he will produce responsive documents in his personal

possession, custody or control.

3

3.    Please produce each insurance policy referenced in your response to interrogatories of Plaintiff's First Set of Interrogatories to you, and any policy otherwise covering the Company.

**RESPONSE:** Mr. Nadal objects to Request No. 3 on the basis of the General Objections set forth above, especially General Objections 4 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

### *Plaintiff's Performance/Adverse Employment Actions*

4.    Please produce all documents which discuss, refer, identify, constitute, or support any evaluation (formal or informal) by you of Ms. Gaujacq at any time during her employment with the Company.

**RESPONSE:** Mr. Nadal objects to Request No. 4 on the basis of the General Objections set forth above, especially General Objections 8 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

5.    Please produce all personnel files or other files maintained by you pertaining to Ms. Gaujacq including, but not limited to, her personnel file, central personnel file, cluster personnel file, local office or division personnel file, hiring file, disciplinary file, termination file, other informal files kept by you, and copies of any documents maintained in any file referencing Ms. Gaujacq with respect to her health, leave status, performance, compensation, or any complaints made by or concerning Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 5 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those

4

objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

6. Please produce all documents which constitute, identify, or refer to any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 6 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

7. Please produce all documents which constitute, identify, or refer to any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with the Company from August 2000 forward.

**RESPONSE:** Mr. Nadal objects to Request No. 7 on the basis of the General Objections set forth above, especially General Objections 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

8. Please produce copies of all correspondence between Ms. Gaujacq and you, or concerning Ms. Gaujacq by or to you from any employee of the Company, or concerning Ms. Gaujacq between you and any outside person.

**RESPONSE:** Mr. Nadal objects to Request No. 8 on the basis of the General Objections set forth above, especially General Objections 2, 3 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive correspondence in his personal possession, custody or control concerning the Plaintiff in this case.

5

9.     Please produce copies of all documents prepared by you, or at your direction, respecting Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 9 on the basis of the General Objections set forth above, especially General Objection 1 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

10.     Please produces copies of all documents that constitute, refer or relate to any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch had complained on June 20, 2004 about a lack of information from Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 10 on the basis of the General Objections set forth above, especially General Objection 1 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

11.     Please produce all documents supporting any contention by you that Ms. Gaujacq's performance was unsatisfactory.

**RESPONSE:** Mr. Nadal objects to Request No. 11 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

12.     Please produce all documents reflecting the employment relationship between the you and Ms. Gaujacq (in other words, any contracts, policies or documents governing your employment relationship).

6

**RESPONSE:** Mr. Nadal objects to Request No. 12 on the basis of the General Objections set forth above, especially General Objections 1, 4 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

13.     Please produce all documents which constitute, refer or relate to any notes taken by you reflecting any evaluation, formal or informal, of Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 13 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

14.     Please produce all documents supporting any contention by you that because of any fact discovered by you since the departure of Ms. Gaujacq, that Ms. Gaujacq would not have been hired or would have been fired (after-acquired evidence).

**RESPONSE:** Mr. Nadal objects to Request No. 14 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

15.     Please produce copies of any notes taken by you at any meetings between or among Ms. Gaujacq and any managerial employee or representative of the Company, or any meeting between any persons at which Ms. Gaujacq was discussed.

**RESPONSE:** Mr. Nadal objects to Request No. 15 on the basis of the General Objections set forth above, especially General Objection 3 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive notes discussing the Plaintiff which are documents in his personal possession, custody or control.

7

16.    Please produce all email communications between you and Ms. Gaujacq, or between you and any other person referencing Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 16 on the basis of the General Objections set forth above, especially General Objection 3. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive e-mails between himself and any person which discuss Plaintiff and are documents in his personal possession, custody or control.

17.    Please produce all email communications between you and Company managers, supervisors, or employees relating in any manner to Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 17 on the basis of the General Objections set forth above, especially General Objection 1 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

18.    Please produce all versions (whether drafts, with handwritten notations, etc.) of any communication written by you containing any allegations relating to Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 18 on the basis of the General Objections set forth above, especially General Objection 1. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

*Mr. Nadal*

19.    Please produce any and all job descriptions for each position held by you.

**RESPONSE:** Mr. Nadal objects to Request No. 19 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

8

20.    Please produce all documents reflecting any comparison, whether favorable or unfavorable, made by the Company between you and Ms. Gaujacq.

**RESPONSE:** Mr. Nadal objects to Request No. 20 on the basis of the General Objections set forth above, especially General Objections 1, 8, and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

21.    Please produce copies of all performance evaluations done of you.

**RESPONSE:** Mr. Nadal objects to Request No. 21 on the basis of the General Objections set forth above, especially General Objections 8 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

22.    Please produce a copy of your personnel file of Mr. Nadal, and any files maintained by the Company that reference you, your compensation, benefits, performance, evaluations (formal or informal), qualifications and background.

**RESPONSE:** Mr. Nadal objects to Request No. 22 on the basis of the General Objections set forth above, especially General Objections 8 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he does not have in his personal possession, custody or control, any documents maintained by either EDF or EDFINA.

### *Your Conduct of Superior/Decision Maker*

23.    Please produce all documents reflecting your level of participation by any decision makers in the acts taken against Plaintiff which are the subject manner of this action.

**RESPONSE:** Mr. Nadal objects to Request No. 23 on the basis of the General Objections set forth above, especially General Objection 1 and 8. Subject to and without

9

waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

   24.    Please produce all documents that constitute, refer or relate to the decision to appoint you to replace Ms. Gaujacq as President of EDFINA in the United States

**RESPONSE:** Mr. Nadal objects to Request No. 24 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control

   25.    Please produce all documents that constitute, refer or relate to your decision to have the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President.

**RESPONSE:** Mr. Nadal objects to Request No. 25 on the basis of the General Objections set forth above, especially General Objection 4. There are no documents that are responsive to this request.

   26.    Please produce all documents that constitute, refer or relate to any negotiations for your salary, benefits or other compensation as President of EDFINA

**RESPONSE:** Mr. Nadal objects to Request No. 26 on the basis of the General Objections set forth above, especially General Objections 8 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

27.    Please produce all documents that constitute, refer or relate to your decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts.

**RESPONSE:** Mr. Nadal objects to Request No. 27 on the basis of the General Objections set forth above, especially General Objection 4. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents within his personal possession, custody and control.

28.    Please produce all documents that constitute, refer or relate to your decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA.

**RESPONSE:** Mr. Nadal objects to Request No. 28 on the basis of the General Objections set forth above, especially General Objection 4 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents within his personal possession, custody and control.

29.    Please produce all documents that constitute, refer or relate to your decision to change the locks on the company book closet where the corporate books were kept.

**RESPONSE:** Mr. Nadal objects to Request No. 29 on the basis of the General Objections set forth above, especially General Objection 4. There are no documents that are responsive to this request.

30.    Please produce all documents that constitute, refer or relate to the decision to deny Mike Slavitt access to the company's books.

11

**RESPONSE:** Mr. Nadal objects to Request No. 30 on the basis of the General Objections set forth above, especially General Objection 4 and 8. There are no documents that are responsive to this request.

31.    Please produce all documents that constitute, refer or relate to the decision to terminate Mike Slavitt and the reasons for the termination.

**RESPONSE:** Mr. Nadal objects to Request No. 31 on the basis of the General Objections set forth above. Subject to and without waiving those objections, and especially General Objection 8, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

32.    Please produce all documents that constitute, refer or relate to your instruction to Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office.

**RESPONSE:** Mr. Nadal objects to Request No. 32 on the basis of the General Objections set forth above, especially General Objection 1. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

33.    Please produce all documents that constitute, refer or relate to the decision to remove Ms. Gaujacq from her position on the Project with EDFINA in the United States.

**RESPONSE:** Mr. Nadal objects to Request No. 33 on the basis of the General Objections set forth above, especially General Objections 8 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

12

34.    Please produce all documents that constitute, refer or relate to the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

**RESPONSE:** Mr. Nadal objects to Request No. 34 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

35.    Please produce all documents that constitute, refer or relate to the decision to refuse to sign Ms. Gaujacq's expatriation contract as earlier promised.

**RESPONSE:** Mr. Nadal objects to Request No. 35 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

36.    Please produce all documents that constitute, refer or relate to the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004.

**RESPONSE:** Mr. Nadal objects to Request No. 36 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

37.    Please produce all documents that constitute, refer or relate to the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

**RESPONSE:** Mr. Nadal objects to Request No. 37 on the basis of the General Objections set forth above, especially General Objection 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

### *Policies, Procedures and Education*

38.    Please produce documents sufficient to reflect all educational materials you have received and/or seminars you have attended since 1996 regarding gender discrimination or retaliation for complaining of discrimination

**RESPONSE:** Mr. Nadal objects to Request No. 38 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control

39.    Please produce copies of any employee handbook given to you by the Company or otherwise in effect since 1996.

**RESPONSE:** Mr. Nadal objects to Request No. 39 on the basis of the General Objections set forth above, especially General Objection 1. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

### *Damages*

40.    If you believes you have suffered or been damaged as a result of Ms. Gaujacq's actions, please produce all documents supporting your allegation.

14

**RESPONSE:** Mr. Nadal objects to Request No. 40 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

41.     Please produce all documents respecting Ms. Gaujacq's damages, including any documents supporting any claim that Ms. Gaujacq is not entitled to all or part of the damages claimed (this request relates specifically to the amount of damages, not to the merits of the underlying claims).

**RESPONSE:** Mr. Nadal objects to Request No. 41 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

### *Financials*

42.     Please produce all documents reflecting your financial status for the past three years, including but not limited to, federal and state income tax returns and related schedules and attachments, W-2s and 1099s, real estate assessments for property owned by you, and copies of all statements for the past year of asset accounts (savings, stock, insurance, etc.). If you have submitted any applications for credit or refinancing in the past three years, please include a copy of the application reflecting assets and liabilities.

**RESPONSE:** Mr. Nadal objects to Request No. 42 on the basis of the General Objections set forth above, especially General Objection 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

*Answer and Grounds of Defense*

43.    Please produce all documents relating to or supporting your partial or full denial of any allegation contained in the Complaint.

**RESPONSE:** Mr. Nadal objects to Request No. 43 on the basis of the General Objections set forth above, especially General Objection 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

44.    Please produce all statements, whether written, oral, electronic, or recorded, by any person regarding any aspect of the claims, defenses, or facts relevant to this case.

**RESPONSE:** Mr. Nadal objects to Request No. 44 on the basis of the General Objections set forth above, especially General Objection 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

45.    Please produce documents supporting your Affirmative Defenses.

**RESPONSE:** Mr. Nadal objects to Request No. 45 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

*Miscellaneous*

46.    Please produce copies of all documents that constitute, refer or relate to any allegations by you that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed.

16

**RESPONSE:** Mr. Nadal objects to Request No. 46 on the basis of the General Objections set forth above, especially General Objection 4. There are no documents that are responsive to this request.

47.    Please produce copies of all documents that constitute, refer or relate to your demand that Ms. Gaujacq provide you with all of her business and company contacts.

**RESPONSE:** Mr. Nadal objects to Request No. 47 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

48.    Please produce all documents that constitute, refer or relate to any contention by you of any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA

**RESPONSE:** Mr. Nadal objects to Request No. 48 on the basis of the General Objections set forth above, especially General Objection 4 and 8. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

49.    Please produce all documents gathered during the preparation of the defense of this action, including documents received as responses to subpoenae, voluntary requests for documents to outside parties, and internal document-gathering processes.

**RESPONSE:** Mr. Nadal objects to Request No. 49 on the basis of the General Objections set forth above, especially General Objections 5 and 9. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

50.    Please produce all documents you contend are relevant in any way to this action.

17

**RESPONSE:** Mr. Nadal objects to Request No. 50 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

51.    For each Request for Admission you deny, either in whole or in part, please produce all documents that support any such denial.

**RESPONSE:** Mr. Nadal objects to Request No. 51 on the basis of the General Objections set forth above. Subject to and without waiving those objections, Mr. Nadal responds that he will produce responsive documents in his personal possession, custody or control.

December 12, 2005

_Ronald S. Cooper_

Ronald S. Cooper
David A. Clark
Kathleen Teale
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

Counsel for Defendant
Christian Nadal

18

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANT NADAL'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on December 12, 2005:

> Elaine Charlson Bredehoft (ebredehoft@charlsonbredehoft.com)
> D.C. Bar No. 441425
> Kathleen Z. Quill
> D.C. Bar No. 489079
> CHARLSON BREDEHOFT & COHEN, P.C.
> 11260 Roger Bacon Drive
> Suite 201
> Reston, Virginia 20190
> (703) 318-6800

With a courtesy copy by electronic mail as follows:

> Laura B. Hoguet, Esq. (LHoguet@hnrlaw.com)
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808

> Counsel for Defendants Electricite de France, S.A. and
>   Electricite de France International North America, Inc.


David A. Clark

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ,                          )
                                            )
    Plaintiff,                           )
                                            )
v.                                          )     Civil Action No.
                                            )     1:05CV0969
                                            )
ELECTRICITE DE FRANCE                       )
INTERNATIONAL NORTH AMERICA, INC ,          )
                                            )
ELECTRICITE DE FRANCE, S.A ,                )
                                            )
and                                         )
                                            )
CHRISTIAN NADAL,                            )
                                            )
    Defendants.                          )
_____)

## INITIAL DISCLOSURES OF DEFENDANT CHRISTIAN NADAL

Defendant Christian Nadal, by and through his attorneys, Steptoe & Johnson LLP,
and pursuant to Federal Rule of Civil Procedure 26(a)(1), hereby makes his initial
disclosures  These initial disclosures are based on information presently available to Mr
Nadal.  Mr. Nadal's investigation into the matters raised in the Complaint is ongoing
These disclosures are made subject to and without waiving the attorney-client privilege,
the work product doctrine or any other applicable privilege or defense, and Mr. Nadal
reserves the right to object to other discovery procedures involving or relating to the
persons or documents identified in these disclosures.

(A)    **The name and, if known, the addresses and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

1.    The Plaintiff in this action with respect to her own knowledge and actions with respect to matters alleged in the Complaint.

2.    Plaintiff's husband with respect to matters alleged in the Complaint, including but not limited to allegations specifically involving him.

3.    Representatives or employees of Plaintiff's current employer (whose identities are as yet unknown) with respect to Plaintiff's efforts to obtain such employment, the remuneration and benefits attendant thereto, her current employer's efforts to obtain background information regarding Plaintiff, and other allegations of the Complaint.

4    Current and former employees and/or representatives of defendant EDF or defendant EDFINA, possibly including but not limited to:

Christian **Nadal**, Delegate General of EDF serving as President of EDFINA, EDF International North America Inc., Suite 509, 1730 Rhode Island Avenue, N.W, Washington, D.C  20036, (202) 429-2527, who has information about subjects including but not limited to: the relationship between EDF and EDFINA; the role of EDF employees delegated to EDFINA and the benefits and procedures associated with such assignment; his qualifications, experience and responsibilities vis-à-vis Plaintiff's; the role of EDFINA vis-à-vis EDF; the terms and conditions of his employment; the number of employees of EDFINA; the powers and responsibilities of the President of EDFINA

- 2 -

and other EDFINA officers and employees; EDF and EDFINA personnel, administrative, and other policies; the status of EDF employees under French law; Plaintiff's job performance while serving as President of EDFINA and thereafter; communications between himself and Plaintiff and the motivations thereof; Plaintiff's role in NUSTART; his rank, salary and benefits both prior and subsequent to his assignment by EDF to serve as President of EDFINA; Plaintiff's salary and benefits as an employee of EDF; the absence of any discriminatory or retaliatory motive and the legitimate business justifications for any action taken by him with respect to Plaintiff; and the specific communications between himself and Plaintiff.

Fernando **Ponasso**, former Chairman of EDFINA and Executive Vice President of EDF Branch Americas, who is no longer employed by EDF, and who has information about subjects including but not limited to: the relationship between EDF and EDFINA; the role of EDFINA vis-à-vis EDF; the powers and responsibilities of the President of EDFINA; EDF and EDFINA policies; the content of communications with Plaintiff and the purposes thereof; discussions with Plaintiff concerning Plaintiff's request to remain in the United States beyond her term of service as President of EDFINA; and the audit referenced in the Complaint.

Gerard **Creuzet**, former Chief Operating Officer of EDF, who left the employ of EDF in September, 2004, who has information about subjects including but not limited to the content of communications with Plaintiff and various statements attributed to him in the Complaint.

Yann **Laroche,** EDF Executive Vice President of Human Resources, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who has information about

subjects including but not limited to: the relationship between EDF and EDFINA; the role of EDF employees delegated to EDFINA and the benefits and procedures associated with such assignment; defendant Nadal's qualifications and experience; the role of EDFINA vis-à-vis EDF; EDF personnel and administrative policies; communications with Plaintiff and the purposes thereof; the terms and conditions of Plaintiff's employment; and the various statements attributed to him in the Complaint.

Benoit **Dreux**, EDF employee serving as Vice President of EDFINA, EDF International North America Inc, Suite 509, 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036, (202) 429-2527, who has information about subjects including but not limited to: the role of EDF employees delegated to EDFINA and the benefits and procedures associated with such assignment; the number of employees of EDFINA; the powers and responsibilities of the President of EDFINA and other EDFINA officers and employees; EDF and EDFINA personnel and administrative policies; Plaintiff's job performance while serving as President of EDFINA and thereafter; Plaintiff's statements concerning Mr. Nadal; communications and interactions between himself and Plaintiff and between Nadal and Plaintiff; Plaintiff's benefits as an officer of EDFINA; the absence of any discriminatory or retaliatory motive and the legitimate business justification for actions taken by himself and Mr. Nadal with respect to Plaintiff; the communications between himself and Plaintiff; Mr. Nadal's treatment of Plaintiff and other female employees of EDF or EDFINA; Mr. Nadal's efforts to monitor and supervise Dreux's activities as a Vice President of EDFINA; and the audit of EDFINA and statements made in connection therewith.

Jean-Luc **Foret**, EDF Technical Director for EPR Program, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, an EDF nuclear engineer who formerly worked in the offices of EDFINA, who has information about subjects including but not limited to: the role of EDF employees delegated to EDFINA and the benefits and procedures associated with such assignment; EDF and EDFINA personnel and administrative policies; Plaintiff's job performance while serving as President of EDFINA and thereafter; Plaintiff's statements concerning Mr. Nadal; the tone and content of communications and interactions between himself and Plaintiff and between Nadal and Plaintiff, including but not limited to the meeting on July 12, 2004; the NUSTART project and EDFINA's role therein; Plaintiff's personal role in NUSTART and her performance in that role; the absence of any discriminatory or retaliatory motive and the legitimate business justification for actions taken by himself and Mr. Nadal with respect to Plaintiff; Mr. Nadal's treatment of Plaintiff and other female employees of EDF or EDFINA; and the circumstances of Foret's relocation to France.

Alexandre **Audie**, an EDF employee serving as Director of Public Affairs, EDF International North America Inc., Suite 509, 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036, (202) 429-2527, who has information about subjects including but not limited to: the day to day operation of EDFINA both prior and subsequent to Plaintiff's service as President of EDFINA; Plaintiff's role in NUSTART; the benefits and procedures associated with assignment of EDF employees to EDFINA; the number of employees of EDFINA; EDF and EDFINA personnel, administrative, and other policies; Plaintiff's job performance while serving as President of EDFINA and thereafter; communications between himself and Plaintiff; Plaintiff's statements

concerning Mr. Nadal; the manner in which Plaintiff conducted the business affairs of EDFINA; Mr. Nadal's treatment of Plaintiff and other female employees of EDF or EDFINA; and the facts surrounding Mr. Nadal's arrival at EDFINA.

Bruno **Lescoeur**, Executive Vice President for International Affairs of EDF, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who may have information about subjects including but not limited to the communications and interactions between himself and Plaintiff.

Laurent **Stricker**, Executive Vice President for Generation and Engineering, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who has information about subjects including but not limited to his communications with Plaintiff, including but not limited to the September 24, 2004 letter sent from him to Plaintiff, as referenced in Paragraph 173 of the Complaint, and the position referenced therein.

Jacques **Bouron**, EDF Director of Development of Executives, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who has information about subjects including but not limited to: the relationship between EDF and EDFINA; the role of EDF employees delegated to EDFINA and the benefits and procedures associated with such assignment; defendant Nadal's qualifications and experience vis-à-vis Plaintiff's; the role of EDFINA vis-à-vis EDF; the powers and responsibilities of the President of EDFINA and other EDFINA officers and employees; EDF personnel, administrative and other policies relevant to Plaintiff's claims and defenses thereto; the content of communications with Plaintiff and the purposes thereof; the terms and conditions of Plaintiff's employment; discussions with Plaintiff and decisions concerning Plaintiff's request to remain in the United States beyond her term of service as President of

EDFINA; communications with Plaintiff concerning Mr. Nadal; various statements attributed to him in the Complaint; the content of the November 26, 2004 letter sent from him to Plaintiff, as referenced in Paragraph 183 of the Complaint; and the matters referenced therein, including but not limited to the meeting of December 10, 2004 in France.

Mame Bawo **Ba**, Market Analyst, EDF International North America Inc., Suite 509, 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036, (202) 429-2527, who has information about subjects including but not limited to: the day to day operation of EDFINA prior, during and subsequent to Plaintiff's service as President of EDFINA; the benefits and procedures associated with assignment of EDF employees to EDFINA; the number of employees of EDFINA; the powers of the President of EDFINA and other EDFINA officers and employees; certain EDF and EDFINA policies; Plaintiff's job performance while serving as President of EDFINA and thereafter; communications between herself and Plaintiff, including but not limited to Plaintiff's statements concerning Mr. Nadal; administrative changes at EDFINA following the arrival of Mr. Nadal; the manner in which Plaintiff conducted the business affairs of EDFINA; Plaintiff's role and/or activities in NUSTART; Mr. Nadal's treatment of Plaintiff and other female employees of EDF or EDFINA; the facts surrounding Mr. Nadal's arrival at EDFINA; and other matters referenced in Plaintiff's Complaint.

Maura **Stadem**, Executive Assistant, EDF International North America Inc., Suite 509, 1730 Rhode Island Avenue, N.W., Washington, D.C. 20036, (202) 429-2527, who has information about subjects including but not limited to: Mr. Nadal's

treatment of female employees of EDF or EDFINA; and issues relating to administrative matters following Plaintiff's resignation from service as President of EDFINA.

Richard **Brien**, employee of the International Energy Service (an EDF subsidiary) who worked out of EDFINA's offices during Plaintiff's service as President, who has information on subjects including but not limited to the day to day operation of EDFINA during Plaintiff's service as President of EDFINA and Plaintiff's job performance while serving as President of EDFINA.

George **Serviere**, Deputy Executive Vice President for Engineering of EDF, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who has knowledge of matters including but not limited to Plaintiff's role and performance in NuStart and communications with the Engineering Branch regarding NuStart.

Serge **Massart**, Executive Vice President for Engineering, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who has information about subjects including but not limited to: Plaintiff's position prior to her service as President of EDFINA; the position offered to Plaintiff following her service as President of EDFINA; and Plaintiff's role and performance in NuStart and communications with the Engineering Branch regarding NuStart.

Patrice **Mees**, Deputy Vice President for Engineering of EDF, EDF S.A., 22-30 Avenue de Wagram, 75008 Paris, FRANCE, who was Plaintiff's superior in the International Division and has information about subjects including but not limited to Plaintiff's performance.

Jean Louis **Betouret**, Director of Human Resources and Communications, EDF Americas, Eduardo Madero, 900 piso 23, Buenos Aires CP 1106, (54) 11-4132-

8533, who has information about subjects including but not limited to interactions with Plaintiff and the transmission to Plaintiff of information concerning Mr. Nadal's role in the U.S.

Louis **Roversi**, an EDF employee who formerly served as Vice President of EDFINA, who has information about subjects including but not limited to Plaintiff's role with respect to enExco and Dalkia, as well as the practices and procedures associated with service by employees of EDF as officers of EDFINA.

6.    Current and former employees and/or representatives of service providers to EDFINA, possibly including but not limited to Walker Nolan, Mitchell R. Slavitt (who has knowledge of accounting and tax issues), Michael McVicker (who has knowledge of immigration issues). These persons have information relating to Plaintiff's characterizations of facts surrounding EDFINA's receipt or termination of such services or other matters alleged in the Complaint.

7.    The audit personnel designated on the audit report, who have knowledge of matters including but not limited to the scope, procedures, purpose, and results of the audit described in the Complaint, as well as communications concerning the audit and its findings as alleged in the Complaint. Daniel Dubois, deceased, was EDF's Audit Director and had information about subjects including but not limited to: the nature and impetus of the audit referred to in Plaintiff's Complaint; communications with Plaintiff on the subject of the audit; the findings and recommendations of the audit; and EDF and EDFINA policies on financial and accounting matters, as well as the failures thereunder at EDFINA during the service of Plaintiff as President of EDFINA. It is not yet known to what extent others in EDF's audit department, including but not limited to Thierry Millet,

Isabel Burg and Serge Houdbine, may be a source of the same information, but each of these persons had a role in the audit.

      8.      Present and former colleagues, employees and business associates of Mr. Nadal having information on the subject of Mr. Nadal's treatment of women in the context of such relationships, including but not limited to: Nicole Kepinski, with whom Mr. Nadal worked in France for fifteen years, from his time at the French National Coal Board in 1985 up to his departure for Argentina in 1999; and Florencia Lagrava-Cucchi, with whom Mr. Nadal worked when he was CEO of EDENOR in Argentina.

      **(B)**      **A copy of, or a description by category and location of, all documents, data compilations and tangible things in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

      The process of identifying and reviewing potentially relevant documents is ongoing. Mr. Nadal thus reserves the right to supplement or amend the list below.

      1.      Plaintiff's employment records;

      2.      Documents concerning the termination of Plaintiff's employment;

      3.      E-mails and other correspondence between and among Plaintiff and any current or former officers, employees, directors or agents of EDFINA and EDF;

      4.      Agreements and drafts or proposals of agreements between or among Plaintiff and EDF and/or EDFINA concerning her employment;

      5.      Documents concerning the organization and company policies of EDF and EDFINA;

6.    Documents related to Gaujacq's proceeding before the "Conseil des Prudhommes";

7.    Documents concerning Plaintiff's visa and immigration status;

8.    Defendant Nadal's employment records;

9.    Immigration documents for Plaintiff and Defendant Nadal;

10.    Documents concerning the audit report referred to in the Complaint;

11.    Documents relating to NuStart;

12.    Documents obtained from government agencies concerning Plaintiff's allegations, including but not limited to documents obtained from the United States Equal Employment Opportunity Commission;

13.    Documents in the personal files of Christian Nadal relating to Plaintiff's claims and the defenses thereto, as well as documents relating to his prior professional experience and qualifications; and,

14.    Documents reflecting Plaintiff's activities and performance while serving as President and Vice President of EDFINA.

All of the categories of documents above are identified only to the extent that documents in such categories are not protected from disclosure by the attorney-client privilege or under attorney work product doctrine. With the exception of documents in category 13, which are in the possession, custody or control of Mr. Nadal, documents in the categories above are in the possession, custody or control of the corporate defendants.

**(C)    A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which**

- 11 -

such computation is based, including materials bearing on the nature and extent of injuries suffered.

Mr. Nadal is not presently asserting claims against the Plaintiff in this action but reserves the right to bring such claims in the future. Additionally, Mr. Nadal will seek such costs and fees as may be available at law or in equity for the defense of this action. Such costs and fees are not determinable at this stage of litigation, however.

(D)   For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

Defendant Nadal does not know whether he may be entitled to insurance coverage for all or part of any judgment pursuant to policy(ies) of insurance maintained by Defendant EDF. Furthermore, Mr. Nadal is aware of no policy of insurance purchased by him or EDFINA that may be liable for any judgment in this action.

October 27, 2005

_____/s/_____

Ronald S. Cooper (D.C. Bar No. 149799)
David A. Clark (D.C. Bar No. 473279)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
(202) 429-3000

Counsel for Defendant Christian Nadal