IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05CV0969 (JGP) |
| ) | |
| ELECTRICITÉ DE FRANCE ) | |
| INTERNATIONAL NORTH AMERICA, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PROTECTIVE ORDER

Defendants, Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal") submit the following Opposition to Plaintiff's Motion to Amend Protective Order (Dkt. # 28). Despite having agreed to include a "Highly Confidential" designation in the Protective Order entered by the Court on December 14, 2005 (Dkt # 22) to identify materials that could only be disclosed to counsel, Plaintiff now seeks to strip Defendants of that protection and to force Defendant Nadal to divulge highly personal financial information to the named Plaintiff, who has previously misused such information. To date, Plaintiff has presented no reason, either to the Court or to Defendant Nadal, that would justify her access to this sensitive information.

Moreover, Plaintiff has given the Court no reason to amend the Protective Order to eliminate the "Highly Confidential" designation for which she bargained. More than

1

an alternative means of depriving Nadal of protection, this action would also prevent the corporate Defendants from protecting sensitive business information from disclosure to the competing company for which the Plaintiff now works.

Accordingly, Defendants ask the Court to deny Plaintiff's Motion.

## Factual Background

As Plaintiff acknowledges, the parties' discussions surrounding the Protective Order in general, and the "Highly Confidential" designation in particular, were extensive. See Pl.'s Mot. to Amend Protective Order at 7. The critical distinction between the "Confidential" designation and the "Highly Confidential" designation to which Plaintiff expressly agreed is that the "Highly Confidential" designation allows the document only to be shown to the attorneys in the action, and not to the individual litigants.

Defendants are validly concerned with a number of potential situations involving Plaintiff's access to sensitive documents. First, Plaintiff does in fact work for a competitor company, and both of the corporate Defendants have a strong interest in protecting their sensitive business information from being passed to a competitor. Moreover, during the discussions leading up to her separation from Defendants, Plaintiff told an EDF senior executive that she "will do everything in [her] power to hurt EDF." [1]

Second, Defendant Nadal has a strong interest in protecting his personal information from misuse. It is specifically because of this second concern that the Defendants pressed for inclusion of language in the order ultimately entered by the Court

---

[1] In this regard, Ms. Gaujacq has destroyed a significant number of company documents. In spite of written instructions prior to her separation to return all company documents, expressly including documents resident on her laptop computer, Ms. Gaujacq employed a special software program to destroy a significant number of such documents before returning the company's laptop.

that extends the Highly Confidential designation to "highly private, personal information unrelated to the employment of a party or to a matter that the Producing Party has put in issue." See Protective Order at 8. Defendants' concerns were especially heightened in this case because the Plaintiff has a proven history of absconding with, and publishing, Defendant Nadal's confidential personal information. Indeed, during the course of the processing of Plaintiff's charge before the EEOC, Plaintiff submitted confidential pay records of Mr. Nadal's to the EEOC. See November 24, 2004 submission by Plaintiff to the EEOC, attaching Mr. Nadal's pay stub, attached as Exhibit A, hereto. Plaintiff never should have accessed these private documents, let alone taken copies of them for herself and disclosed them outside of the company.

Plaintiff misrepresents the discussions leading up to the Protective Order in two respects relevant to this motion, in both cases, without support. First, she asserts that Defense counsel told her he "could not imagine that Mr. Nadal would have ANY documents marked Highly Confidential." See Pl.'s Mot. To Amend Protective Order, Exhibit 1 at 2. Nevertheless, she admits that the proposed Order was amended at the request of Mr. Nadal's counsel specifically to permit such designations by Mr. Nadal. See id. Such a statement would have made those efforts pointless. Further, she contends that counsel for all Defendants assured her that designation of any document in French as Highly Confidential would be "avoided at all costs." Pl.'s Mot. To Amend Protective Order at 7. No such assurance was ever given. Since many of the key documents for which the Order was sought are in French, such an assurance would have vitiated the value of the Order.

After the Court entered the Protective Order, the Defendants began preparing to make their respective document productions. In light of the extensive document requests made by the Plaintiff,[2] the fact that the vast majority of the requests were duplicative, and the fact that many of the identical documents were within the "possession, custody, or control" of multiple defendants, Defendants attempted to coordinate their responses. In doing so, Defendants determined that any responsive documents under Defendant Nadal's control by virtue of his service as President of EDFINA would be produced only by Defendant EDFINA and not also by Defendant Nadal.

This sensible approach vastly reduced the need for duplicative and burdensome productions. At the same time, it ensured that the Defendants would maximize their productions of responsive documents notwithstanding Plaintiff's poorly crafted, unreasonably duplicative, and objectionable requests.

With documents in the possession, custody or control of both EDFINA and Nadal being produced only by EDFINA, that left for review and production by Nadal in his individual capacity documents of a personal nature unrelated to his employment by EDF or service as EDFINA's president. This assured that the bulk of his production would be unrelated to Plaintiff's liability case. Not surprisingly, then, Nadal produced only 149 pages of documents, with fully 139 of those pages being from his personal tax returns and other financial documents. Most of these documents are from years predating the events giving rise to Plaintiff's claims in this case. It is this small subset of documents that Defendant Nadal understandably and reasonably labeled as "Highly Confidential" and

---

[2] To date, Plaintiff has submitted 91 separate document requests to EDF and EDFINA, and 58 separate requests to Nadal.

which Plaintiff now insists upon viewing personally. These are also the pretext for Plaintiff's effort to eliminate the "Highly Confidential" category entirely.

The details of the corporate defendants' production are quite different. They produced a combined total of 10,159 pages of responsive documents. Contrary to Plaintiff's representation[3], a number of these documents were labeled "Highly Confidential" also because they contained "highly private, personal information" concerning Mr. Nadal[4]. Plaintiff has neither acknowledged nor challenged any of these designations. The corporate Defendants expect that they may also need to utilize the "Highly Confidential" designation for sensitive business information in future productions or with respect to deposition testimony. Nevertheless, Plaintiff's motion would deny EDF and EDFINA that reasonable protection.

## ARGUMENT

Plaintiff alleges that the Defendants have designated these documents Highly Confidential for no reason at all, and ignores the explanation provided in Defendants' letter of January 3, 2006, see January 3, 2006, letter from R. Cooper to E. Bredehoft[5], attached as Exhibit B, hereto, clearly setting out Defendants' discovery approach outlined above and the fact that the documents in question are Nadal's private financial and tax

---

[3] "EDF and EDFINA have not marked any documents in the first or second set of production of documents "Highly Confidential." Pl.'s Mot. to Amend Protective Order at 8.

[4] Bates Nos. EDF 000712-22 (concerning Mr. Nadal's family); 000856-60 (concerning Mr. Nadal's children).

[5] Counsel for Nadal explained both the scope of Nadal's production and the basis for applying the Highly Confidential designation in his January 3, 2006 response to Plaintiff's letter. In this response, counsel for defendant Nadal indicated clearly that the Highly Confidential documents were Nadal's "private financial and tax records" and expressed the view that such documents could only be relevant, if ever, "on the issue of damages." Counsel for Nadal also observed that Plaintiff's counsel had not made even the slightest argument for why she might need to share any such documents with her client in the prosecution of this action.

5

records. Such documents fall within the definition of "Highly Confidential" as laid out in the Protective Order.

### I.  Nadal's Private Financial Records Are Properly Designated.

The contested documents at issue here contain extensive information on Mr. Nadal's finances, including not only his salary information, but also income information for his wife and the extent and location of their assets. The documents at issue fall into the following categories:

- French Income Tax Documents (00011-00023) - These documents contain information about not only Nadal's income, but also the income of his wife. Most of the documents (00011-00019) concern periods of time prior to Nadal's employment as President of EDFINA.

- French Asset Tax Documents (00024-00071) - These documents contain information on all of Nadal's assets. They include specific confidential information such as addresses of real property, bank account numbers, automobiles and other assets.

- U.S. Income Tax Documents[6] (00072-00149) - In addition to Nadal's basic salary information, these documents also reflect a number of items listed in the Asset Tax Documents. The documents include things like income sources from other (non-EDF) sources; bank account numbers; loans; and passports of Nadal's wife and son.

These documents clearly fall within the definition of Highly Confidential documents agreed to by the parties. See Protective Order at 8 ("…highly private, personal information unrelated to the employment of a party or to a matter that the Producing Party has put in issue.").

In her Motion, Plaintiff argues for the first time that these documents are potentially related to Plaintiff's equal pay claim and are necessary to calculate damages. This argument ignores the fact that Nadal's EDF salary and benefits information was

---

[6] These documents are, of course, in English, thus negating any translation concerns Plaintiff may have.

duly produced by EDF without a Highly Confidential label.[7] Only income provided by EDF can be relevant to the equal pay claim.

Income and asset information of the sort put at issue by the instant motion could only relate, if ever, to a calculation of punitive damages. Furthermore, to the extent that the Plaintiff has any real need or appropriate use for Mr. Nadal's highly personal and confidential financial information in calculating damages, that is not a calculation that the Plaintiff need make personally. Plaintiff's counsel can either look to the other documents produced on this issue (and share them with her client), or she can have the documents translated and do the calculation herself.[8] Even a cursory review of these documents by a French speaker would immediately allow Plaintiff's counsel to focus in on what, if any, information she actually needs to have translated. Defendants have demonstrated why these documents are entitled to Highly Confidential status under the standards adopted by the parties. The predictable and necessary inconvenience associated with the use of an attorneys' eyes only class of protection simply is not an appropriate reason for overturning the otherwise proper use of that designation, especially in a case where the parties themselves (including the party now complaining) agreed that the classification might be needed.

---

[7] Nadal's salary and benefits information can be obtained from his personnel documents produced by his employer, EDF, at Bates Nos. 679-860.

[8] While reasonable efforts have and will continue to be made by Defendants to limit the number of pages of documents designated Highly Confidential, there will be some small number of pages so designated over the course of this litigation. And some will be in French. However, the fact that Plaintiff's counsel may have to seek assistance from a French speaker other than her client, in a case involving French citizens and a French company, should not come as a surprise.

7

## II.   Plaintiff has Presented No Justification to Amend the Protective Order

Plaintiff's arguments for permanently modifying the Protective Order are equally unsupported. Plaintiff alternatively suggests that the Court either remove the "Highly Confidential" designation altogether or strike the language that makes the designation applicable to highly private and personal information. Neither modification is warranted.

Plaintiff apparently bases both suggestions on her contention that Defendants have somehow abused the designation in relation to the Nadal documents mentioned above. Of course, it is the nature of protective orders that one side or the other may challenge certain designations, and those challenges may be upheld or overruled without scrapping completely the protective scheme fashioned by the parties and approved by the Court. Thus, even if the Court ultimately were to disagree with particular designations made by the defense in the first production under this protective order, there would be no reason to believe that Defendants could not and would not take the Court's guidance into account in making future designations. Here Plaintiff would go even further, depriving the corporate Defendants of the right to protect proprietary information from disclosure to a competitor even though none of the "Highly Confidential" designations they have employed has even been challenged. Stripping all the Defendants of any ability to protect sensitive documents from abuse by Plaintiff is plainly not warranted by the showing in Plaintiff's Motion.

## CONCLUSION

Defendant Nadal has perhaps the best reason possible for being concerned about the prospect of his highly confidential and personal information falling into the hands of others: Plaintiff has already demonstrated a willingness to misappropriate and disclose

that very sort of information when she feels it serves her interests to do so. The confidentiality designations Defendant Nadal applied were consistent with the express language of the Court's order, as drafted by the parties themselves, and the volume of documents produced by Defendants collectively with this designation is a minute fraction of all documents produced. Accordingly, Defendants ask this Court to deny Plaintiff's Motion to Amend Protective Order. In addition, because this motion was necessitated by Plaintiff's failure to abide by the meet and confer requirement of the Court, Defendants ask that they be awarded their costs and fees associated with this opposition.

Dated: January 24, 2006

Respectfully Submitted,

\_\_/s/ Laura B. Hoguet_____
Laura B. Hoguet
D.C. Bar No. 200915
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212)689-8808

*Counsel for Electricité de France, S.A., and Electricité de France International North America, Inc.*

_____
Ronald S. Cooper
D.C. Bar No. 149799
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

Counsel for Defendant Christian Nadal