IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | HEARING REQUESTED |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF DEFENDANT ELECTRICITE DE FRANCE
INTERNATIONAL NORTH AMERICA, INC. TO
PLAINTIFF'S MOTION TO COMPEL**

Defendant Electricité de France International North America, Inc. ("EDFINA") submits this memorandum in opposition to Plaintiff's Motion to Compel Discovery Responses from Defendant EDFINA ("Plaintiff's Motion to Compel") (Dkt. #30).

**PRELIMINARY STATEMENT**

Plaintiff's Motion to Compel is frivolous and unnecessary, serving only a tactical purpose of Plaintiff, and was made without satisfying her "meet and confer" obligation. Defendants requested that Plaintiff withdraw this motion (see Letter of January 17, 2006 from Ronald S. Cooper, Esq., attached hereto as Exhibit A), but she did not. It is now one of the five motions subject to Defendants' Motion to Strike for Failure to Meet and Confer, filed January 20, 2006 (Dkt. #33).

Plaintiff's Motion to Compel puts forth manufactured objections that Plaintiff initiated as a "counter-attack" response to Defendants' written objections to her woefully deficient and

evasive interrogatory responses, in which she had failed to respond to over half of the 13 interrogatories propounded, as set forth in letters from Dorothea W. Regal, Esq. of December 15 and 19, 2005 (attached hereto as Exhibits B and C, respectively). See December 21, 2005 letter from Elaine Bredehoft, Esq. to Dorothea Regal (attached hereto as Exhibit D). Plaintiff's Motion to Compel is part of Plaintiff's 5-motion flurry filed with or shortly after her response to Defendants' Motion to Compel and for a Protective Order (Dkt. #26).[1]

EDFINA has responded fully and fairly to all of Plaintiff's discovery demands, and its objections, where made, are proper and well-founded. Plaintiff here seeks discovery to which she is not entitled or which she already has received. Plaintiff's Motion to Compel should be denied.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

The employer in this case is Defendant Electricité de France, S.A. ("EDF"), a French corporation headquartered in Paris, France, not EDFINA. EDFINA is an indirect wholly owned subsidiary of EDF and represents EDF in the United States. Plaintiff, Catherine Gaujacq, a French citizen, was a long-time employee of EDF in France who was assigned to a temporary post, for a fixed term, as EDF's "Déléguée Générale" (Delegate General) to North America, in which post she served as President of EDFINA. Defendant Christian Nadal, a French citizen, is also an employee of EDF, and, upon the expiration of Ms. Gaujacq's term of office, EDF appointed him to succeed Ms. Gaujacq as EDF's "Délégué Général" (Delegate General) to North America, in which post he now serves as President of EDFINA. Upon the expiration of her term

---

[1]    Plaintiff filed the following motions after Defendants filed their Motion to Compel and for a Protective Order: (1) Plaintiff's Motion to Amend Protective Order (Dkt. #28), filed Jan. 10, 2006; (2) Plaintiff's Motion to Reschedule Trial (Dkt. #29), filed Jan. 10, 2006; (3) Plaintiff's Motion to Compel EDFINA (Dkt. #30), filed Jan. 11, 2006; (4) Plaintiff's Motion to Compel Nadal (Dkt. #31), filed Jan. 11, 2006; and (5) Plaintiff's Supplemental Memorandum To Alert the Court To New Developments Impacting the Motions Before This Court & Memorandum in Support of Motion for Enforcement of the Rules (Dkt. # 32), filed Jan. 18, 2006. Defendants have moved to strike all 5 of these motions for failure to meet and confer.

2

of office in the United States, Ms. Gaujacq refused to return to France to take up her next assigned post at EDF, whereupon EDF terminated her employment, effective January 7, 2005. Plaintiff instituted this action against EDF, EDFINA and Mr. Nadal asserting, inter alia, claims under Title VII and DCHRA alleging sexual harassment by Mr. Nadal, sex discrimination and retaliation.

All decisions as to the terms and conditions of Ms. Gaujacq's employment throughout her years of employment with EDF, including her termination, were made by EDF, not EDFINA.

EDFINA is a separate company from EDF, incorporated and located in Washington, D.C., and has fewer than 15 employees. EDF, headquartered in Paris, France, has over 160,000 employees. At the time of the events alleged in the Complaint, EDF was 100% owned by the Republic of France; following a public offering of equity interest in 2005, EDF is now partly publicly held but still majority owned by the Republic of France.

### Plaintiff's Discovery Demands

Plaintiff complains in her Motion to Compel that EDFINA did not answer for EDF in response to Plaintiff's first set of discovery demands. Yet Plaintiff's counsel chose initially to exclude EDF from her discovery demands. Instead, she chose to demand discovery solely from EDFINA and Mr. Nadal in her first set of discovery demands, served October 28, 2005. Counsel for EDF and EDFINA immediately wrote to Plaintiff's counsel, Elaine Bredehoft, alerting her to the omission of EDF and advising her that EDFINA could not and would not respond on behalf of its parent, EDF. (See Letter from Dorothea W. Regal, Esq., dated November 4, 2005, attached hereto as Exhibit E.) Counsel for EDF and EDFINA suggested to Ms. Bredehoft that, if the omission was inadvertent, she amend the discovery demands to add EDF, and requested that she advise promptly what she intended to do. The scope of the response, as well as counsel's effort

3

in responding to the demands, was impacted profoundly by who the respondent would be. Yet Ms. Bredehoft failed to respond to that letter altogether. Three weeks later, as the initial November 30, 2005 response deadline approached, counsel for EDF and EDFINA inquired again as to Ms. Bredehoft's intent as to EDF, and her response was: "I intentionally did not include EDF in the first set." (E-mail from Elaine Bredehoft, Esq. dated November 18, 2005, responding to E-mail from Dorothea W. Regal, Esq. dated November 18, 2005, attached collectively hereto as Exhibit F). EDFINA proceeded to respond, solely on behalf of EDFINA, to Plaintiff's first set of discovery demands, serving its responses on December 12, 2005 following an extension requested by Plaintiff.[2]   Plaintiff cannot now complain that she did not get EDF responses to her demands to EDFINA, as it is the consequence of Plaintiff's choice not to include EDF within the scope of her demands.

Plaintiff has failed to explain to the Court that she has already obtained from EDF itself the EDF responses she purports to seek from EDFINA on this Motion to Compel. Plaintiff did ultimately direct discovery demands to EDF, as well as a second set of discovery demands to EDFINA (served before the first set was even answered), to which EDF and EDFINA duly responded on January 3, 2006. Plaintiff does not challenge any of the responses to her subsequent demands in the instant Motion to Compel.

Plaintiff has been abusing the discovery process, utilizing discovery as a tool of harassment. Her subsequent discovery demands addressed to EDF (dated November 21 and 22,

---

[2]   Contrary to Ms. Bredehoft's representation to the Court ("EDFINA requested, and received, extra time to serve the responses." Pl. Mem. at 8), it was Ms. Bredehoft, not Defendants' counsel, who first sought an extension of the mutual due date for responses to all parties' written discovery and production of documents. She suggested to Mr. Cooper (counsel for Defendant Nadal) on the telephone on November 28, 2005 (two days before the November 30 due date) that the date be extended to December 9, 2005 and then when that date approached, she asked to move it to December 12, 2005. She also asked for, and received, consent to defer the mutual exchange of the parties' production of documents in response to the first set of demands to December 16, 2005, to be served by Federal Express for delivery on December 19, 2005. Her intimation that Defendants are responsible for any delay is not grounded in reality.

2005 and received November 28, 2005) were all but identical to, and entirely duplicative of, Plaintiff's previous demands to EDFINA. There was no legitimate reason for Plaintiff not to have addressed EDF and EDFINA in the same set of discovery demands in the first instance and thereby avoid the unnecessary time and expense of defense counsel's preparing unnecessary and duplicative responses to extremely excessive demands. EDF and EDFINA have duly responded as follows to the following demands:

| | | |
|---|---|---|
| Requests to Admit to EDFINA | (253 requests) | EDFINA response 12/12/05 |
| Requests to Admit to EDF | (253 requests) | EDF response 1/3/06 |
| Interrogatories to EDFINA | (21 requests) | EDFINA response 12/12/05 |
| Interrogatories to EDF | (19 requests) | EDF response 1/3/06 |
| First Document Request to EDFINA | (72 requests) | EDFINA response 12/12/05 |
| First Document Request to EDF | (72 requests) | EDF response 1/3/06 |
| Second Document Request to EDFINA | (19 requests) | EDFINA response 1/3/06 |
| Second Document Request to EDF | (19 requests) | EDF response 1/3/06 |

Moreover, Plaintiff's Requests to Admit were wholly unnecessary since they were served at the outset of discovery before any testimony and did nothing but restate, nearly word for word, the allegations of the Complaint, which Defendants had just admitted or denied in their Answer.

Plaintiff has just served a "Third Request for Production of Documents," dated January 24, 2006, upon each of EDFINA (16 requests), EDF (16 requests) and Nadal (16 requests). Plaintiff's Motion to Compel is another abuse of the discovery process, unnecessary and unwarranted, and should be denied.

## ARGUMENT

## I.    EDFINA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES ARE PROPER

Plaintiff's First Set of Interrogatories contains 21 separately numbered interrogatories, most of which have two or more discrete subparts. EDFINA responded to all of these interrogatories in compliance with Rule 33 of the Federal Rules of Civil Procedure, with

appropriate objections and with responsive answers to the extent the interrogatories are not objectionable.    Fed. R. Civ. P. 33(b)(1).    (EDFINA's Response to Plaintiff's First Set of Interrogatories is attached to Plaintiff's Motion to Compel as Exhibit 6 thereto.)

### A.    EDFINA Cannot Respond On Behalf Of EDF

Plaintiff challenges EDFINA's objections to certain interrogatories that were grounded on the fact that EDFINA cannot answer questions on behalf of its parent company, EDF, as to matters that are not within its own competence and knowledge. [Interrogatory Nos. 8, 10, 11, 13, 17, 18, 19, 20.] These interrogatories all seek information as to actions by EDF representatives, reasons that EDF took certain actions and representations by EDF.

EDFINA objected to these interrogatories to the extent that they "call[] for information known or ascertainable only by EDF." EDFINA responded to these interrogatories as to its own knowledge and competence to the extent they were not objectionable, but it could not, and did not, purport to speak for EDF as to the actions EDF representatives took, the reasons for such actions or representations that EDF representatives may have made.    They are separate companies, and EDFINA is not competent to speak for EDF.

As stated above, it was Plaintiff's decision to serve separate but identical sets of interrogatories on EDFINA and EDF and to do so notwithstanding the warning by counsel for EDF and EDFINA that the consequence would be that EDFINA would not be able to answer on behalf of EDF. Plaintiff offers no basis for her challenge other than her unsupported supposition that it is "implausible" that EDFINA would not have been "advised" of the matters by EDF. Plaintiff's challenge is unfounded.

Plaintiff's motion is further unwarranted because, as discussed above, Plaintiff already has EDF's answers to these identical interrogatories.

**B.    EDFINA's Reference to the Documents It Produced is Proper;**
**French Documents Are Not a Burden to Plaintiff**

Plaintiff's objection to EDFINA's reference in certain of its interrogatory responses to documents produced in response to Plaintiff's simultaneous document demands is unfounded. [Interrogatory Nos. 2-4, 6, 8-12, 14-20.] Each of these interrogatories included a demand to "identify all documents reflecting your response to this interrogatory" or words to that effect. EDFINA responded to these interrogatories to the extent they are not objectionable. EDFINA stated objections to the extent that "it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff."

EDFINA's reference to the produced documents is proper under Rule 33(d) of the Federal Rules of Civil Procedure, and Plaintiff's motion to compel on this point should be denied. In the first place, EDFINA did not refer to documents in lieu of answering but also provided substantive narrative responses to these interrogatories to the extent they are not objectionable, where the information was within the knowledge and competence of EDFINA. Secondly, any specific documents on which EDFINA relied in its interrogatory responses are clearly identified therein. Finally, the documents produced by EDFINA pursuant to Plaintiff's first document demand are a finite set, with separate categories of documents easily discernible. Much of the production consists of e-mail correspondence from the computers utilized by the individuals at EDFINA, which is obvious at a glance, and other groups of documents requested are equally obvious upon a brief review of the documents, such as the wage and tax information requested (Bates Nos. 938-964) and the audit documents (Bates Nos. 180-256) requested.

Plaintiff asserts that the burden upon Plaintiff to review the documents is greater than EDFINA's burden "given that many of the documents produced and likely to be referenced are in French." (Pl. Mem. at 9.) This is absurd. Plaintiff is French, and French is her native language. Moreover, the bulk of the documents written in French are communications from or to the Plaintiff herself. Plaintiff bears the burden of showing that "the burden of ascertaining the answer is not substantially the same for the interrogating party as for the interrogated party." Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co., 111 F.R.D. 318, 320 (D. Mass. 1984). Plaintiff's conclusory claim of burden, belied by the facts, does not constitute the requisite showing that she bears the greater burden of gleaning the information requested from the documents.

The parties in this discovery process are on an equal playing field in terms of language. Each party is French, or has French-speaking employees. Each party is represented by U.S. counsel. Many of the business records produced by Defendant EDFINA were generated under Plaintiff's direct supervision, and/or reviewed by her. Many of the remaining documents consist of correspondence to or from Plaintiff. Plaintiff's suggestion that she is disadvantaged because she must review these French documents is disingenuous.

To the extent that Plaintiff's counsel requires translation of any of the French documents, she has the Plaintiff herself to rely upon. It is not Defendants' burden to provide translations for Plaintiff's counsel at the pre-trial stage of litigation. See In re Puerto Rico Elec. Power Auth., 687 F.2d 501, 508 (1st Cir. 1982) ("Rule 33's imposition of costs on the requesting party when both parties have equal access to documents containing the answers to interrogatories, underscore the assumption implicit in the Federal Rules that parties must normally finance their own lawsuits.").

## C.    EDFINA's Substantive Answers Are Responsive

EDFINA provided full and fair responses to all of Plaintiff's interrogatories to the extent they were not objected to.  Plaintiff purports to complain on this Motion to Compel that she wants additional detail or that she considers a response not to be credible.  EDFINA's answers are truthful and complete within the scope of what is reasonably known to it at this time.  If Plaintiff does not agree, she is entitled to probe and test EDFINA's knowledge and discover any greater factual detail or nuance that may be relevant to her questions at deposition.

Interrogatory No. 2.    This interrogatory demands that EDFINA "describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge."  This is a Herculean, if not impossible, task, and EDFINA properly objected to its overbreadth and burden.  Nonetheless, and notwithstanding such objection, EDFINA provided the information requested to the extent possible and to the extent that the interrogatory was not objectionable.  This interrogatory (along with Interrogatory No. 1) restates the questions that were previously answered in the Initial Disclosures of EDF and EDFINA pursuant to Rule 26 (Dkt. # 19).  EDFINA responded to these interrogatories by reference to its corresponding answers in its Initial Disclosures, where it identified the persons it believed may have knowledge relevant to the allegations in the Complaint and described the knowledge it believed those individuals may have.    EDFINA's answers fully and adequately respond to Plaintiff's Interrogatories No. 1 and 2 and are more than sufficient for Plaintiff to be able to determine whether or not to depose any such witness.

Interrogatory No. 3.  This interrogatory demands a description of all complaints to Ms. Gaujacq or others regarding her job performance.  Plaintiff here complains of an alleged lack of dates or specifics, but this allegation is unfounded.  EDFINA answered this interrogatory at

length (its response to Interrogatory No. 3 is 2 pages long), giving as much detail as to the timing and the nature of complaints described therein as is reasonably known to it at this time. Indeed, EDFINA was able to provide specific dates as to three of the six complaints identified (June 21, 2004, June 11, 2004, July 12, 2004 and July 16, 2004) and as to the others provided the requested time frame as to whether it occurred before or after Mr. Nadal assumed the position of President of EDFINA.

Interrogatory No. 4. This interrogatory asks for favorable comments made about Ms. Gaujacq's job performance at EDFINA. Plaintiff here protests EDFINA's response that it is unaware of any such comments, but she has no basis for her protest other than her unsupported suspicion that it is "highly unlikely" that Ms. Gaujacq did not receive any compliments. EDFINA answered this interrogatory to the extent of its knowledge of the facts requested after a duly diligent examination of available facts.

Interrogatory No. 5. This interrogatory is a "fishing expedition," demanding information about whether there had been any discrimination complaints made by anyone against any "employee of EDFINA in any management position" over the last 10 years and, if so, what such complaints were, who made them, who they were made against, what may have been done by EDF[3] or EDFINA to investigate any such complaint and the outcome of the complaint. There are no "employee[s] of EDFINA in any management position," but EDFINA understands Plaintiff to be referring to the EDF employees delegated by EDF to terms of office in North America serving in management positions at EDFINA, such as herself and Mr. Nadal.

EDFINA objected to this interrogatory on the ground that the information sought has no relevance to the issues in this case, which alleges disparate treatment by Mr. Nadal, not a pattern

---

[3]   Interrogatory No. 5 requests this information as to the "Company," which is defined in Plaintiff's Interrogatories to mean a combination of EDF and EDFINA. See Plaintiff's Ex. 5 at 1 (Definition No. 1).

and practice of discrimination or disparate impact.    Nonetheless, and without waiver of this objection, EDFINA answered this interrogatory to the limited extent it was unobjectionable, limiting its response to any complaints against Mr. Nadal, her successor as EDFINA's President, and the person Plaintiff has alleged to be her harasser.

Plaintiff's assertions as to why she needs this information are feeble at best. She claims that it will "show Defendant's continuing discriminatory intent" with respect to her (Pl. Mem. at 10-11), but it is hard to imagine how any complaints by other employees would show EDFINA's intent with respect to Plaintiff.    She also claims that information about other employees' complaints will show the extent to which her complaints were "treated differently than those not in a protected class" (id.), an argument that is internally inconsistent, because only those in some type of protected class could be making a complaint of discrimination. Finally, she claims that the information is relevant to certain defenses EDFINA may raise (id. at 11), but such a request is premature unless and until EDFINA does indeed raise such defenses.

Any discovery as to possible complaints made by other employees should be carefully limited in scope to avoid an improper "fishing expedition." See, e.g., Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983). The cases upon which Plaintiff relies are, for the most part, completely inapposite.[4] Some courts

---

[4]    For example, the well-known cases of Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), do not address discovery issues at all but, rather, set forth general standards for discrimination actions. In Robinson v. Runyon, 149 F.3d 507 (6th Cir. 1998), the Sixth Circuit did not deal with complaints by other employees, but simply held that two possibly racist documents were not more prejudicial than probative. Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990), involved whether the employer had constructive notice of harassment, not the discoverability or admissibility of other employees' complaints. The issue in Morris v. Washington Metro. Area Transit Auth., 702 F.2d 1037 (D.C. Cir. 1983), and Dougherty v. Barry, 604 F. Supp. 1424 (D.D.C. 1985), was whether plaintiff could establish municipal liability by showing a custom or policy, which is not an issue here. Hairston v. Washington Metro. Area Transit Auth., No. Civ. 93-2127, 1997 WL 411946 (D.D.C. April 10, 1997), involved not the discoverability of a broad range of evidence, but the admissibility of testimony from three witnesses. Miller v. Poretsky, 595 F.2d 780 (D.D.C. 1978), was a housing discrimination case and so did not involve complaints by other employees.

11

have simply refused to permit discovery of complaints and lawsuits filed by other employees. See Prouty v. Nat'l R.R. Passenger Corp., 99 F.R.D. 551, 553 (D.D.C. 1983); Broderick v. Shad, 117 F.R.D. 306, 312 (D.D.C. 1987). Others limit discovery of such complaints to tailor it to the plaintiff's allegations, such as limiting it to complaints within a limited time frame and involving the individuals whom the plaintiff has accused. See, e.g., Marshall v. District of Columbia Water & Sewage Auth., 214 F.R.D. 23, 25 (D.D.C. 2003) (request for documents relating to internal investigations limited to plaintiff's department and same or similar decisionmaker during four-year period). See also Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002) (limiting discovery to complaints in same department within 2-year period); Glenn v. Williams, 209 F.R.D. 279, 281 (D.D.C. 2002) (limiting discovery to complaints in plaintiff's division and cutting requested 10-year period to 3 years); Pleasants, 208 F.R.D. at 14-15 (limiting discovery to complaints in plaintiff's subdivisions); Hardrick, 96 F.R.D. at 618-19 (denying discovery, except as to two-year period in one particular office); Childers v. Slater, No. CIV.A.97-853RMU/JMF, 1998 WL 429849, at *4 (D.D.C. May 15, 1998) (limiting discovery to complaints in plaintiffs' division or the divisions of the supervisors who allegedly discriminated). Plaintiff's cases are to the same effect.[5]

    In this case, Plaintiff claims violations of Title VII and the DCHRA because, she claims, Mr. Nadal subjected her to "unfair and discriminatory treatment based on her gender" beginning in June 2004. Comp. ¶¶ 72, 77. Yet in Interrogatory No. 5 she is seeking information regarding complaints by any employee against any other management employee with respect to "unequal,

---

[5]    Thus, the court in Johnson v. Washington Times Corp., 208 F.R.D. 16 (D.D.C. 2002), held that to be discoverable, other allegedly discriminatory acts must be "similar in motivation" to those complained of, explaining that "[d]iscrimination . . . against a truck driver in Cincinnati in 1995 is hardly probative of an intent to discriminate against another truck driver in Memphis in 2000." Id. at 19.  See also White v. U.S. Catholic Conference, No. CIV.A.97-1253, 1998 WL 429842, at *4-6 (D.D.C. May 22, 1998) (limiting discovery to complaints in plaintiff's subdivision).

unfair or inappropriate treatment" from 1995 to the present. As the above cases demonstrate, EDFINA should not be compelled to ascertain and provide information as to any complaints of discrimination except those alleging discriminatory treatment by Mr. Nadal at EDFINA from June 2004 to the present.

EDFINA did provide this information and, in fact, went further, giving the response as to Mr. Nadal unlimited in time, answering as follows:

> "EDFINA states that there have been no complaints of the type described in this Interrogatory made against Nadal during his tenure with EDFINA, other than the complaint in this litigation, and that it is unaware of any such complaints ever having been made against Nadal."

EDFINA has thus answered Interrogatory No. 5 to the extent it is not objectionable, and should not be compelled for the reasons stated to do more. Plaintiff has all the information she reasonably might want on this topic. In addition to the information EDFINA provided in its answer as to Mr. Nadal's tenure at EDFINA, Ms. Gaujacq, of course, is in a position to know about any such complaints that might have been made during the preceding period when she served as EDFINA President, from August 2000 through May 31, 2004.

Interrogatory No. 6. This interrogatory demands that EDFINA describe any problems EDFINA has identified with respect to Ms. Gaujacq's performance while she was at EDFINA and then continues to demand that EDFINA describe in detail all communications EDFINA had with Ms. Gaujacq with respect to each, all efforts by EDF and/or EDFINA to improve her performance as to each and specific damage EDF and/or EDFINA has suffered as a result of each such performance problem. By its terms, this interrogatory includes any problems identified by EDFINA after Plaintiff's termination, excludes problems identified by her employer, EDF, and is not directed in any way to performance problems that may have led to her termination.

Plaintiff here complains of an alleged lack of details about the performance problems described, but this allegation is unfounded. EDFINA answered this interrogatory at length (its response to Interrogatory No. 6 is 2.5 pages long and refers as well to EDFINA's 2-page response to Interrogatory No. 3 addressing another aspect of the same topic), giving as much detail as to the specific performance problems described therein as is reasonably necessary to describe the perceived problem to the extent reasonably known to EDFINA at this time. Her claim that she needs additional detail "to determine whether any alleged reasons for the treatment of Ms. Gaujacq are pretextual" (Pl. Mem. at 12) is disingenuous at best since the interrogatory was not even directed to performance problems leading to her termination and her allegations of alleged harassment by Mr. Nadal do not mention her performance problems.

Interrogatory No. 7. This interrogatory asks for information as to policy, practice or procedure for "any employee" making a complaint of discrimination against EDFINA or any other employee" and the "manner" of triggering and conducting an investigation. EDFINA objected to this interrogatory on the grounds of overbreadth, vagueness and relevance. Nonetheless, and notwithstanding the objections, EDFINA answered this interrogatory to the extent it was not objectionable, answering as to the lack of such procedure at EDFINA and describing the procedure at EDF. Plaintiff's complaint that it is "unrealistic" that EDFINA is "unaware" of the "details" of EDF's procedures ignores the fact that EDFINA answered as to EDF's procedure and ignores EDFINA's well-taken objection as to overbreadth. Plaintiff has made no showing as to why any greater detail should be required.

Interrogatory No. 8. This interrogatory requests information as to findings of any investigation into the allegations of the Complaint, investigation into specific complaints allegedly made by Ms. Gaujacq to certain EDF representatives and response to a specific

complaint made by Ms. Gaujacq to Mr. Nadal. EDFINA objected to this interrogatory on several grounds, including an objection that it calls for information known or ascertainable only by EDF to the extent that it concerns actions taken by EDF. Notwithstanding its objections, EDFINA answered this interrogatory to the extent it is not objectionable within its knowledge and competence, providing the response as to Ms. Gaujacq's complaint to Mr. Nadal.

As stated above, it was Plaintiff's decision to serve separate but identical sets of interrogatories on EDFINA and EDF and to do so notwithstanding the warning by counsel for EDF and EDFINA that the consequence would be that EDFINA would not be able to answer on behalf of EDF. Plaintiff's challenge is unfounded because EDFINA has provided a good faith responsive answer within its knowledge and competence, and her challenge is further unwarranted because, as discussed above, Plaintiff already has EDF's answers to this identical interrogatory.

Interrogatory No. 9. This interrogatory asks EDFINA to identify all statements against interest by Ms. Gaujacq. EDFINA objected to this interrogatory on the ground that it is premature at this stage of the litigation, it being more appropriate to identify such statements after Ms. Gaujacq has been deposed. Nonetheless, EDFINA believes that practically every written communication by Ms. Gaujacq that EDFINA has produced in response to Plaintiff's document requests is or may be a statement against her interest and has accordingly fully responded to this interrogatory by its reference to said documents.

Interrogatory No. 12. This interrogatory requests information as to the responsibilities and duties of Mr. Nadal as President of EDFINA and those of Ms. Gaujacq when she served as President of EDFINA. EDFINA answered this interrogatory at length (EDFINA's response to Interrogatory No. 12 is over 2 pages long), providing a detailed description as to the

responsibilities and duties of both individuals. Plaintiff complains that EDFINA failed to "compare and contrast" these responsibilities as requested (Pl. Mem. at 13). However, EDFINA objected to the instruction to "compare and contrast" as not being required under the Federal Rules of Civil Procedure, which objection is well-founded. EDFINA is not required to undertake an analysis or make an argument at Plaintiff's behest. EDFINA has fully provided the responsive facts, from which Plaintiff can make any comparison or contrast that she considers appropriate.

Interrogatory No. 14. This interrogatory asks for the reason that Ms. Gaujacq was removed from the list of officers authorized to sign checks on behalf of EDFINA. EDFINA answered this interrogatory. If Plaintiff wants further information, she is entitled to ask and discover any greater factual detail or nuance that may be relevant to her question at deposition.

### D.    **Plaintiff Exceeded the Permitted Number of Interrogatories**

EDFINA responded fully and fairly to all of Plaintiff's interrogatories to the extent they are not objectionable, and did so notwithstanding the fact that Plaintiff's interrogatories far exceeded the maximum of 25 when all of the discrete subparts of her 21 enumerated interrogatories are taken into account. Interrogatory Nos. 5, 6, 7, 8, 19 and 21 are egregious examples of compounded interrogatories, and all of the interrogatories that included a demand to identify all documents "reflecting" the response (Nos. 2-4, 6, 8-12, 14-20) are also examples. Interrogatory No. 21 demands that EDFINA describe all facts upon which EDFINA based its denials to Plaintiff's 253 requests to admit. EDFINA is not required to respond to more than 25 interrogatories, and it has responded already to far more than that.

16

## II.    EDFINA'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS ARE PROPER

EDFINA fully and fairly responded on December 12, 2005 to Plaintiff's 72 document requests in her first set of document demands. (EDFINA's Response to Plaintiff's First Request for Production of Documents is attached to Plaintiff's Motion to Compel, as Exhibit 7 thereto.) EDFINA produced 964 pages of documents in response thereto. EDFINA subsequently responded to Plaintiff's second set of document demands on January 3, 2006 and produced another 4,749 pages of documents in response to her second demand.

### A.    EDFINA's Document Production Complied with Rule 34(b)

Plaintiff's complaint that EDFINA did not label the documents it produced is baseless. EDFINA produced the documents as they were kept in the usual course of business, as it is permitted to do, and it is not required to label the documents. Rule 34(b) of the Federal Rules of Civil Procedure states, in pertinent part, "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business *or* shall organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b) (emphasis added). "[T]he Rule imposes no duty to organize and label the documents if they are produced as they were kept." In re G-I Holdings Inc., 218 F.R.D. 428, 439 (D.N.J. 2003). Because EDFINA produced documents as they were kept in the usual course of business, it is not required to label any of those documents. Plaintiff's motion to compel on this basis, therefore, should be denied.

### B.    The Court Should Not Compel Production of Documents Related to Other Employees of EDF or EDFINA

Plaintiff's requests to EDFINA for documents relating to other employees of EDF and EDFINA are just a further manifestation of the "fishing expedition" in which she is engaged. These requests should be denied.

Request Nos. 44, 52, 54, 55. These requests seek information concerning complaints made by other employees. EDFINA objected to these requests on the ground, among others, that such documents are not relevant or reasonably likely to lead to the discovery of admissible evidence as this case does not allege a "pattern or practice" of discrimination but instead alleges merely disparate treatment.[6] To the extent these requests for other complaints seek information as to EDFINA employees, they suffer from the same weaknesses as Interrogatory No. 5, and Plaintiff's motion as to these requests should be denied for the same reason. See discussion in Part I (C), infra.

To the extent Plaintiff seeks other complaints as to other EDF employees and EDF's actions with respect thereto that took place outside of the United States, such discovery must be denied not only because EDFINA is not competent to provide such discovery as to EDF, but because EDF is not subject to Title VII or DCHRA with respect to such conduct.[7]

Title VII does "not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer." 42 U.S.C. § 2000e-1(c)(2); see Watson v. CSA, Ltd., 376 F. Supp. 2d 588, 593 (D. Md. 2005) (Title VII does not apply to a foreign corporation operating abroad). Similarly, EDF is not subject to the DCHRA with respect to its foreign operations. Green v. Kinney Shoe Corp., 704 F. Supp. 259, 260 (D.D.C. 1988) (DCHRA was intended to cover only jobs located in the District of Columbia).

EDF's conduct in France with respect to its employees is governed by the laws and customs of France, which are not identical to the standards set forth under Title VII or the

---

[6]    Request No. 55, which seeks information about any program for monitoring or evaluating discrimination, also implicates the self-evaluative or self-critical analysis privilege. See, e.g., In re Application of Nieri, No. Civ. À. M12-329, 2000 WL 60214, at *2 (S.D.N.Y. Jan. 24, 2000); Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970), aff'd mem., 479 F.2d 920 (D.C. Cir. 1973).

[7]    Defendants assert that EDF is not subject to Title VII at all, even with respect to employees employed in the United States, but that argument must await Defendants' motion for summary judgment.

DCHRA.  EDF need not account to Plaintiff for employment actions it took with respect to its

employees outside of the United States, whether or not they are in compliance with Title VII or

the DCHRA.  Such conduct is simply irrelevant to this case.

Moreover, EDF has more than 160,000 employees.  To compel EDF to ascertain facts

and provide discovery encompassing all its employees would be extremely burdensome.

Request No. 23.    This request seeks performance evaluations for "all persons the

Company contends are comparable or superior [to plaintiff] in experience, education and

qualification."  This request jumps the gun since EDFINA has not yet contended that other

persons had comparable or superior qualifications to plaintiff.  If this case involved a reduction

in force, or a failure to promote, such documents might be relevant, but they are not relevant to

whether, as alleged by Plaintiff, Mr. Nadal treated Plaintiff unfairly based on her gender or

whether she was retaliated against.  If and when the question of Plaintiff's qualifications vis-à-

vis those of other employees becomes an issue in the case, this request can be revisited, but until

it does, and until such other employees are at least identified, Plaintiff's motion as to this request

should be denied.

Request No. 24.  This request is for the personnel file of Mr. Nadal.  EDFINA objected

since EDFINA is not Mr. Nadal's employer and did not have possession, custody or control of

such file.  This is a matter for EDF, and EDF has already produced Mr. Nadal's personnel file in

response to the separate document demand addressed to EDF.  Plaintiff's motion as to this

request is, therefore, moot.

Request No. 26.  This request seeks "all documents reflecting the identity of and level of

participation by any decision makers."  Plaintiff acts as if this were a separate category of

documents, and that they were being withheld.  In fact, any document that would contain this

information would also be responsive to one or more other requests, such as Request Nos. 8 and 9. Since these documents (to the extent they are not privileged) have already been produced, Plaintiff's motion as to Request No. 26 is also moot.

Request No. 43. This request seeks the names, addresses and positions of every EDF and EDFINA employee for the past five years. Plaintiff has made no showing of why she requires this information or why such documents might be relevant. As to EDF employees, any documents containing this information are not in the possession, custody or control of EDFINA. As to EDFINA employees, EDFINA is understandably concerned about its employees' privacy and their right to be free of harassment by Plaintiff and her counsel at their home addresses. Should Plaintiff require information from any of EDFINA's employees, she can notice their depositions through EDFINA. Plaintiff's motion as to this request should be denied.

Request No. 45. This request for EEO-1 documents for the past five years should be denied as completely irrelevant. EEO-1 documents show the statistical breakdown of employees by race, gender, etc., but do not show whether a particular supervisor treated plaintiff unfairly or whether she was subject to retaliation. Plaintiff has no need for these documents.

Request No. 46. This request also is premature as Plaintiff herself points out when she asserts that the request "anticipates all documents" supporting certain arguments that EDFINA might make. EDFINA has not yet made the arguments referred to in Request No. 46. Unless and until it does, such documents are impossible to identify. Moreover, the request is extraordinarily vague and ambiguous. What does plaintiff mean by "documents sufficient to reflect comparative evidence between treatment of female and non-female [sic] employees"? What kind of treatment? Promotions? Salaries? Scheduling of vacations? Length of lunch breaks?

**C.    EDFINA's Other Document Responses Are Also Proper**

Plaintiff posed sweeping catch-all demands in her final requests (Nos. 70-72), which embrace all the documents that were produced by EDFINA in response to all the other foregoing requests. These requests in effect ask for all documents in the case and are, thus duplicative of all other requests. Her demands for all documents gathered in preparation of the defense of this action (No. 70) and all documents that "support" any denial in EDFINA's response to Plaintiff's Request for Admissions (No. 72) also call for documents protected by the work product doctrine and the attorney-client privilege, and EDFINA properly objected on that ground.

**D.    EDFINA Will Exchange Privilege Logs With Plaintiff Upon Request**

Plaintiff never raised with EDFINA prior to filing her Motion to Compel the matter of producing a privilege log. This is not a disputed issue. EDFINA is willing to prepare and produce a privilege log with respect to its document production and wishes to do so upon a date to be agreed with Plaintiff for the mutual exchange of privilege logs by all parties.

## CONCLUSION

For the reasons above, Plaintiff's Motion to Compel should be denied. In addition, because Plaintiff filed this motion without having abided by the meet and confer requirements of the Court, and refused to withdraw the motion upon request, Defendant EDFINA asks that the Court award it its costs and fees associated with defending against this Motion to Compel.

Dated: January 25, 2006

Respectfully Submitted,

_____/s/_____

Laura B. Hoguet
D.C. Bar No. 200915
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212)689-8808

*Counsel for Electricité de France*
*International North America, Inc.*