IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ<br><br>Plaintiff,<br><br>v.<br><br>ELECTRICITÉ DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al.<br><br>Defendants. | No. 1:05CV0969 (JGP) |

## DEFENDANT NADAL'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Christian Nadal ("Nadal"), through counsel, submits the following Opposition to Plaintiff's Motion to Compel (Dkt. # 31). As a preliminary matter, Plaintiff failed to abide by her meet and confer obligation prior to filing this Motion, and thus it is one of several motions that is subject to Defendants' pending Motion to Strike (Dkt. # 33). Nadal has responded fully and completely to all of Plaintiff's discovery requests, as provided for under the Federal Rules of Civil Procedure. Plaintiff's Motion seeks discovery to which she is not entitled under the Rules, and other burdensome and duplicative discovery which she has already been given access to by the corporate defendants in this action. It should, therefore, be denied.

1

**Factual Background**

Plaintiff served Interrogatories and Document Requests on Nadal on October 28, 2005. Contrary to Plaintiff's statement, Nadal did not request an extension of time for response. It was at *Plaintiff's* request that the parties agreed to extend the discovery due dates. Pursuant to that arrangement, Nadal served his responses on Plaintiff on December 12, 2005. On December 21, 2005, Plaintiff sent a letter to Nadal's counsel demanding that Nadal embark on a number of tasks relating to discovery. Defendant promptly responded to Plaintiff's letter on January 3, 2006. See January 3, 2006, letter from R. Cooper to E. Bredehoft, attached hereto as Exhibit A. Although Nadal maintains that he is not required to identify documents he previously produced by bates range and the corresponding document request, he nevertheless did so in response to Plaintiff's request. On some points, Defendant invited further discussion from Plaintiff if she was not satisfied with Defendant's explanation. Plaintiff, however, did not contact Defendant on any of the discovery points again, and instead filed the instant Motion without participating in the required meet and confer discussion.

**ARGUMENT**

I.  **FRCP 33(d) Does Not Require Defendant to Specify Business Records In Response to Interrogatories.**

Plaintiff's first argument can be readily dismissed as a misreading of the Federal Rules. Plaintiff argues that Nadal failed to comply with Rule 33(d) in his response to several Interrogatories, because he "failed to adequately identify the specific document or documents he referenced." A reading of the Rule itself undoes Plaintiff's argument. First of all, the text of that subsection heading itself, "*Option* to Produce Business

2

Records," should have adequately dispelled Plaintiff of the notion that such production was required. Fed. R. Civ. P. 33(d) (emphasis added). The Rule further states that when an interrogatory *may* be answered by reference to a document, "that it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained." Nothing in the text of the rules *requires* a party providing a narrative response to reference any specific documents on which it may rely. Indeed, the narrative responses provided by Nadal are inherently adequate under Rule 33 (b)(1).

## II.     Nadal Provided Complete Answers to Each of Plaintiff's Interrogatories.

Plaintiff's interrogatories were poorly drafted, filled with typographical errors, and vastly overbroad and overreaching. Despite their inadequacies, Nadal provided fair and complete responses that far exceed the requirements of the Rules. The Court should not permit Plaintiff to now "redraft" her questions -- that should have been done before serving them on Defendant. Nor should the Court reward Plaintiff's blatant attempt to exceed the 25 interrogatories permitted by Rule 33, by lumping numerous separate and discrete inquiries under a single, numbered, heading. The Rule limits each party's interrogatories to "25 in number including all discrete subparts...." By Defendant's count, Plaintiff propounded no less than 62 separate and discrete interrogatories.[1] Plaintiff's attempt to justify her behavior by arguing that the numerous subparts merely "clarify" the original interrogatory will not withstand examination.

---

[1] This number is without regard to Interrogatory # 20, which states: "For each Request for Admission you deny, either in whole or in part, please describe all facts upon which you base, or which support, any such denial." Plaintiff propounded no less than 107 separate Requests for Admissions to Defendant Nadal. The discovery rules generally, and Rule 33 in particular, do not contemplate litigants being forced to write such an explanation of their discovery responses. Plaintiff's Interrogatory # 20 is just the most egregious example of Plaintiff's overreaching and unnecessarily burdensome discovery requests.

Although Plaintiff argues that the numerous clauses in her interrogatories merely describe the information required by the main interrogatory, an examination of Plaintiff's interrogatories shows this to be false. Take, for example, Plaintiff's Interrogatory # 8:

> Please describe in detail all reasons why you had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts. Please include in your answer the identify [sic] of all other individuals whom you had removed from the authorized list [sic] officers of EDFINA with signature authority on the corporate bank accounts. Identify all documents reflecting your response to this interrogatory.

See Pl.'s Mot. to Compel, Ex. 6 at 13. Defendants duly objected to this interrogatory on the basis that it has three separate and discrete subparts. Id. The main inquiry asks for reasons why Nadal had Ms. Gaujacq removed from the corporate bank account list. Defendants duly responded to this inquiry. The second sentence of the interrogatory, however, does not modify or clarify anything about the initial request for information. Instead, the second sentence asks a separate and discrete question -- Were there any other people who were removed from the list, and if so, who were they? Finally, the third sentence of the interrogatory has nothing to do with clarifying the original information, but is yet a third separate and distinct burden on Defendant -- to identify any documents "reflecting" the response to this interrogatory. Although admittedly, Defendant is unsure of exactly what "reflecting" means in the context of the above interrogatory, it clearly does not "clarify" Plaintiff's initial inquiry into the reasons Ms. Gaujacq was removed from the corporate bank account list of

4

authorized officers[2]. Interrogatory # 8 is but one example of a problem that plagued Plaintiff's interrogatories.

Faced with 62 separate inquiries, Defendant endeavored to respond fairly to Plaintiff's requests without succumbing to the onerous burden Plaintiff attempted to foist upon him. In each case, Defendant answered the "main" interrogatory in a full and complete manner. Defendant also answered any additional subparts that appeared within the basic scope of each Interrogatory. In total, Defendant answered well over the 25 interrogatories allowed by the Rules. Defendant is confident that when the Court reviews Plaintiff's Interrogatories, and Defendant's Responses, as it now must do as a result of Plaintiff's premature motion, the Court will determine that Defendant has exceeded his obligations under the Rules.

### III. Defendant Adequately and Fairly Responded to Plaintiff's Burdensome Document Requests.

Plaintiff served Defendant Nadal with 58 separate requests for production of documents in addition to the 91 requests directed to the corporate Defendants. Given the extent of document production by Defendants, Plaintiff's arguments regarding Nadal's document production are not only without merit, but also wasteful and petty.

### A. Nadal's Document Production Complies with FRCP 34(b).

As with Plaintiff's interrogatory arguments, her problems with Defendant's document production begin with a misreading of the Federal Rules.

---

[2] This request is further redundant and burdensome, since Plaintiff has sought the production of the very same documents in Document Request # 27. See Pl.'s Mot. to Compel, Ex. 4 at 8.

Plaintiff argues that Nadal's production was not in conformance with the requirements of Rule 34(b), which requires the responding party to either produce documents as they are kept in the usual course of business, or else organize and label the documents to correspond to the individual requests. Plaintiff's conclusory assertion that Nadal did not produce the documents as they are normally kept is completely untrue.

Nadal did produce his documents in the manner in which they were kept in his usual course. As indicated to Plaintiff on several occasions now, these are Nadal's *personal* files, maintained at home and not as part of a business office.

All of these documents were produced in the order in which they were kept. For example, his tax documents were produced by year and by country. Thus, all of the French documents were produced, first for 2002, then for 2003, then for 2004. These were followed by two years' worth of IRS documents… again, separated by year. Defendant did not spontaneously create this system for purposes of document production -- this is how he kept those documents, and it is a perfectly reasonable system. Overall, there are relatively few documents within the 205 pages produced. Among them, Nadal has produced copies of his housing contract and Visa application as requested by Plaintiff. These are separate, easily identifiable documents.

The Rules do not require Nadal to create a separate file folder, with a label, for each distinct document that he produces. Moreover, this discussion is especially ridiculous in light of the fact that Nadal has produced, in total, approximately one-inch of paper. The documents were presented in a manner that

anyone who spent merely a few minutes with them, could easily understand the nature of each document[3].

In any event Defendant Nadal has now provided Plaintiff with an identification by Bates number of the document requests to which each document is responsive. The fact that this is not enough to satisfy Plaintiff shows in stark relief the true nature of this motion.

> B. Plaintiff Has Received All Responsive Documents That Are Within Nadal's Control.

Plaintiff would also gladly impose the burden of duplicative discovery. As explained in Defendant's January 3, 2006, letter to Plaintiff, the three Defendants have coordinated their document responses to avoid Plaintiff's burdensome and duplicative requests.[4] See also Defendants' Opposition to Plaintiff's Motion to Amend Protective Order (Dkt. # 36) at 4-5 (further explaining the reasoning and methodology of Defendants' production). Plaintiff has received all responsive non-privileged documents that are within Nadal's control, and forcing him to produce a separate, distinct production would be an exercise in futility. Nadal, as President of EDFINA, arguably has possession, custody or control over every single document in the EDFINA office. Defendant Nadal should not be required to engage patently wasteful exercise in

---

[3] The cases Plaintiff loosely cites as supporting her position on this point are completely inapposite. Each one deals with voluminous corporate records that had either deliberately or carelessly been "shuffled" by the responding party. These cases could not be more irrelevant to the facts at hand.

[4] As to Plaintiff's premature and inaccurate arguments regarding Nadal's "personnel file," common sense dictates that such a file would not be within Nadal's or EDFINA's possession in any event. Nadal's personnel file is held by EDF, and has been produced at EDF 00679-00860.

producing documents a second time or listing documents produced by the corporate Defendants..

C.  Defendant Is Willing To Exchange A Privilege Log With Plaintiff.

The request for a privilege log is another "manufactured" dispute, of which Plaintiff appears particularly fond.[5] Defendant plainly conveyed, in its January 3, 2006, letter: "As for you request for a privilege log, we will be happy to discuss a mutual exchange of such logs at our upcoming conference call." See Ex. A at 3. Plaintiff never bothered to further correspond with Defendant on this point prior to filing her Motion.

## CONCLUSION

All of Plaintiff's discovery arguments are without merit. Worse yet, many of them appear to be contrived in a most irresponsible manner. Accordingly, Defendants ask this Court to deny Plaintiff's Motion to Compel, and to award costs and fees incurred in drafting this Opposition for Plaintiff's failure to abide by the meet and confer obligations.

Dated: January 25, 2006

Respectfully submitted,

__/s/ Ronald S. Cooper_____
Ronald S. Cooper
D.C. Bar No. 149799

---

[5] In another manufactured dispute, Plaintiff filed a Motion to Reschedule Trial (Dkt. # 29) without first consulting Defendants. Defendants were thus forced to file a responsive pleading indicating that they had no objection to the Plaintiff's request. See Defendants' Response to Plaintiff's Motion to Reschedule Trial (Dkt. # 35).

David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

Counsel for Defendant Christian Nadal