**EXHIBIT A**

STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

Ronald S Cooper
202 429 8075
rcooper@steptoe.com

1330 Connecticut Avenue NW
Washington DC 20036-1795
Tel 202 429 3000
Fax 202 429 3902
steptoe com

January 3, 2006

**VIA EMAIL**

Elaine Charlson Bredehoft
Charlson Bredehoft & Cohen, P C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190

   **Re**   **Gaujacq v. EDF - No. 1:05CV0969**

Dear Elaine,

   This responds to your letter dated December 21, 2005. Let me first address your stated concerns about the designation of a number of the documents produced by Mr. Nadal as "Highly Confidential." As a preliminary matter, it is important to set the record straight. You allege in your letter that I told you I could not imagine "that Mr. Nadal would have ANY documents marked Highly Confidential," yet on the same page, you acknowledge that I specifically sought this level of protection for Mr. Nadal's personal documents. I never represented that Mr. Nadal would not be using the Highly Confidential designation. To the contrary, the parties changed the language of the Protective Order to include expressly highly *personal* information within the definition of "Highly Confidential."

   Although your letter complains that the "vast majority" of Mr. Nadal's production was labeled Highly Confidential, these designations make absolute sense in the context of Mr. Nadal's production. Mr. Nadal and EDFINA have coordinated their document production in an effort to avoid making burdensome and duplicative productions. Mr. Nadal has produced only those documents that are within his possession, custody or control and which are not also in the possession, custody or control of EDFINA (i.e., documents relating to purely personal matters, rather than documents he possesses as an officer of EDFINA). Documents that are within the possession custody and control of both parties are being produced by EDFINA. This explains why most of EDFINA's documents are not labeled Highly Confidential, while most of Mr. Nadal's documents are so labeled. It is because Mr. Nadal is only producing those documents which are truly private and personal in nature.

Elaine Bredehoft
January 3, 2006
Page 2

Finally, you have made no mention as to why you feel it is so important that your client have access to these documents. The Highly Confidential documents are almost all Mr. Nadal's private financial and tax records. These could be relevant, if ever, only on the issue of damages. You have offered no suggestion of why Ms. Gaujacq, in addition to her counsel, needs access to these private documents in order to effectively prosecute her case. On the other hand, your client has a history of absconding with, and publishing, such private information, which amply justifies our precaution. Indeed, this is why the "Highly Confidential" label was developed in the first place.

As to your stated concerns regarding Mr. Nadal's interrogatory responses, we are confident that we have made good faith responses to the substance of each interrogatory -- certainly beyond the level of responsiveness provided by Ms. Gaujacq. As you know, the parties are limited to 25 interrogatories in this case, including *all discrete subparts*. Though Plaintiff's Interrogatories to Mr. Nadal contained 20 numbered questions, almost every one contained 2 or more discrete subparts. Faced with interrogatories that vastly exceeded the number permitted by the Rules, Mr. Nadal could have picked the 25 questions he most wanted to answer. Instead, he made a good faith attempt to answer the essence of each Interrogatory, and even included answers to discrete subparts where it made sense. All in all, Mr. Nadal has already answered more than the 25 interrogatories allowed by the Rules, despite how Plaintiff may have numbered them. We will vigorously oppose any Motion to Compel on this issue.

In addition, we find your demands regarding Mr. Nadal's document production to be without merit, and particularly baseless in light of the fact that Mr. Nadal only produced 149 documents in total. You note that Rule 34(b) allows a party to produce documents "as they are kept in the usual course of business" or it can organize and label the produced documents to correspond with the categories in the request. The responding party may choose which option it will exercise. Mr. Nadal did indeed produce the documents as they are kept in the "usual course of business." Plaintiff asked for his personal documents, which is what were produced. Mr. Nadal's personal filing system may not be as elaborate as the usual corporate filing system, but that does not diminish the fact that his documents were produced as they are normally kept. In the spirit of cooperation, however, we will provide the following information:

- Bates numbers CN00001-CN00010 are produced in response to Request 19, and Request 50.

- Bates numbers CN00011-CN00149 are produced in response to Request 42.

The rest of the documents that you requested, that were arguably under his possession custody and control, were also within the possession custody and control of EDFINA, and are being produced by that party.

As to your specific contention that Mr. Nadal's response to Request 22 and his statement in his Initial Disclosures are inconsistent, we disagree. Request 22 asked for his personnel file, which indeed,

Elaine Bredehoft
January 3, 2006
Page 3

is not in his personal possession, custody, or control. The fact that Mr Nadal generally identified that he had some personal files which might contain documents relevant to the Plaintiff's case, is not inconsistent with that statement. As for your request for a privilege log, we will be happy to discuss a mutual exchange of such logs at our upcoming conference call

Sincerely,

Ronald S Cooper

cc:    Laura Hoguet
       Dorothea Regal