# ATTACHMENT 1

## Elaine Bredehoft

**From:** Elaine Bredehoft
**Sent:** Monday, January 16, 2006 10:05 AM
**To:** 'rcooper@steptoe com'
**Cc:** 'Laura Hoguet'; 'David Clark'; 'Dorothea Regal'
**Subject:** Deposition of Catherine Gaujacq

**TimeMattersID:** M5E6A97738D8A718
**TM Contact:** Catherine Gaujacq
**TM Matter No:** 690
**TM Matter Reference:** Gaujacq, Catherine

Ron:  I was very surprised to receive you letter by email late Friday.   I did not interpret any communication from you or the other counsel for defendants as cancelling Ms. Gaujacq's deposition on January 20.  I was well aware that you wanted to extend it, but I never realized that you were taking an "all or nothing" approach to the scheduling of Ms. Gaujacq's deposition.

After receiving your email, I contacted Ms. Gaujacq.  Because she obtained a non-refundable ticket to keep the costs down and has arranged for that time off, she is not able to cancel it and will be here in any event.   In addition, she is so constricted on available dates due to her work schedule and lack of vacation time, that she will not be able to travel here again before March, and then has only limited availability.

If you decide to cancel Ms. Gaujacq's deposition, this will not affect our intention to take Mr. Nadal's deposition, or the corporate designees of EDF and EDFINA in the next few weeks as scheduled, absent Court intervention or working out a mutually agreeable alternative.  If it is still your desire to take Ms. Gaujacq's deposition prior to the other parties, this may be the defendants' only opportunity to do so.

I urge you to reconsider.  We are still able to appear for a deposition on Friday, January 20 in your offices, or if you would prefer, in our offices.

Please let me know as soon as possible whether the defendants still wish to take Ms. Gaujacq's deposition on Friday.   If you choose not to, I will schedule other things on my calendar that I have set aside because of this obligation.  I would therefore appreciate your decision as quickly as possible.

Thank you for your consideration.  I look forward to hearing from you.  Although our offices are closed in observance of Martin Luther King Day, I will be checking my emails from time to time today for your response.    Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Elaine Bredehoft |
| **Sent:** | Friday, January 20, 2006 10:20 AM |
| **To:** | 'rcooper@steptoe com'; 'David Clark'; 'Laura Hoguet'; 'Dorothea Regal' |
| **Cc:** | 'Kathy Quill' |
| **Subject:** | Noticed Depositions |

| | |
|---|---|
| **TimeMattersID:** | MA0599773C051754 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Counsel:

Given that I have properly noticed the depositions of Mr. Nadal, as well as the Corporate Designees, pursuant to Fed. R. Civ. P. 30, no Protective Order has issued relieving you of the obligation to present your witnesses at the scheduled depositions, and you have provided me with no alternative dates or indicated that you are not available on these dates for these depositions, I do plan to proceed with the depositions as scheduled on January 24, 26 and 30, each scheduled to begin at 9:30 a.m.  I just wanted to make sure you have sufficient time to re-think your position that you will not present these witnesses, and be aware that I do intend to proceed under the Rules.

This will also confirm that Ms. Gaujacq travelled here to appear at her deposition on January 20, 2006, but you did not appear, nor did you ask her to appear at another location for her deposition.

Thank you for your consideration.  I am truly hopeful that I will see you on Tuesday, Janaury 24, 2006 at 9:30 a.m. for the deposition of Mr. Nadal.

Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

# ATTACHMENT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ                          )
                                           )
            Plaintiff,                     )
                                           )
        v.                                 )          No. 1:05CV0969 (JGP)
                                           )
ELECTRICITE DE FRANCE                      )
    INTERNATIONAL NORTH AMERICA,           )
    INC., et al                            )
                                           )
            Defendants.                    )
                                           )

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that the Plaintiff, Catherine Gaujacq, by counsel, will take the

deposition upon oral examination of CHRISTIAN NADAL at 9:30 a.m. on Tuesday, January 24,

2006, at the offices of Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201,

Reston, Virginia, 20190. The deposition will be taken before an officer authorized by law to

administer oaths and take testimony, and will be recorded stenographically. The deposition will

continue from day to day until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
Catherine Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel for defendant Christian Nadal as follows:

Ronald S. Cooper, Esq.
David Clark, Esq
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
(202) 429-3000
rcooper@steptoe.com
dclark@steptoe.com

Counsel for Defendant
  Christian Nadal

With a courtesy copy sent this same day by email, addressed as follows:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
dregal@hnrlaw.com

Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America

Elaine Charlson Bredehoft

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v | ) | No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al. | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff, Catherine Gaujacq, by counsel, will take the deposition upon oral examination of the corporate designee(s) of Electricite de France International North America, Inc. ("EDFINA"), as to the matters set forth in Attachment A hereto, at 9:30 a.m. on Thursday, January 26, 2006, at the offices of Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201, Reston, Virginia, 20190. The deposition will be taken before an officer authorized by law to administer oaths and take testimony, and will be recorded stenographically. The deposition will continue from day to day until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
 Catherine Gaujacq

2

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel defendant EDF as follows:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
dregal@hnrlaw.com

Counsel for Defendants
   Electricite de France, S.A. and
   Electricite de France International North America

With a courtesy copy sent this same day by email, addressed as follows:

Ronald S. Cooper, Esq.
David Clark, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
rcooper@steptoe.com
dclark@steptoe.com

Counsel for Defendant
   Christian Nadal

Elaine Charlson Bredehoft

## ATTACHMENT A

1.    All decisions relating to Ms. Gaujacq's employment with EDF and/or EDFINA, including:

    (a)    the decision to appoint Mr. Nadal to replace Ms. Gaujacq as President of EDFINA in the United States;

    (b)    the decision to pay Mr. Nadal a significantly higher salary as President of EDFINA than that paid to Ms. Gaujacq when she held the same position;

    (c)    the decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts;

    (d)    the decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA;

    (e)    the decision to change the locks on the company book closet where the corporate books were kept;

    (f)    the decision to removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

    (g)    the decision to refuse to sign Ms. Gaujacq's expatriation contract and/or the expatriation contract proposed by Ms. Gaujacq in 2004, and all representations regarding the signed of that contract;

    (h)    the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

    (i)    the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004; and

    (j)    the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

2.    The employment relationship and/or contract between Ms. Gaujacq and EDF and/or EDFINA, including:

    (a)    the drafting of and completion of all contracts between EDF and/or EDFINA and Ms. Gaujacq including amendments to contracts;

    (b)    the terms of Ms. Gaujacq's expatriation contract with EDF;

(c)     Ms. Gaujacq's compensation as President of EDFINA;

(d)     the change in Ms. Gaujacq's employment relationship with EDF and/or EDFINA after Mr. Nadal became president of EDFINA, including any new expatriation contracts proposed or agreed to related to this change;

(e)     the new mission proposed for Ms. Gaujacq in or about the September/October 2004 timeframe; and

(f)     the drafting and issuing of the Employment Letter as described in ¶ 187-188 in Ms. Gaujacq's complaint and/or the "certificate de travail" referenced in ¶ 187 of Defendants' answer.

3.    Ms. Gaujacq's performance during her tenure as President of EDFINA, including

(a)     Ms. Gaujacq's scope of authority and changes in that authority;

(b)     Ms. Gaujacq's employment responsibilities and performance;

(c)     Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time;

(d)     any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq;

(e)     any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with EDF and/or EDFINA from August 2000 forward;

(f)     any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch which allegedly had complained on June 20, 2004 about a lack of information from Ms. Gaujacq;

(g)     any contention by the EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory, including but not limited to all performance issues referenced in the Response of Defendant EDFINA to Plaintiff's First Set of Interrogatories;

(h)     any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed;

(i)     any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses; and

(j)     any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home.

4.   All instructions and/or demands given by Mr. Nadal to Ms. Gaujacq and her response to such instruction, including:

    (a)   the instruction of Mr. Nadal for Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and

    (b)   the demand that Ms. Gaujacq provide Mr. Nadal with all of her business and company contacts

5.   All policies and/or procedures in effect any time between 2000 and the present relating to EDF and/or EDFINA employees working abroad, including:

    (a)   the amount of notice given to other employees whose United States mission was ending and EDF's policy or standard practice regarding the amount of notice to be given for cessation of a mission; and

    (b)   the procedures, including terms of giving notice and terms of transition, to employees being reassigned out of country.

6.   EDF and/or EDFINA EEO policies and procedures, including

    (a)   EEO-1 documents submitted to the EEOC or any other agency;

    (b)   any comparative evidence between treatment of female and non-female employees of EDF and/or EDFINA, including information supporting or reflecting any specific argument by Defendants that EDF and/or EDFINA does not discriminate on the basis of gender;

    (c)   the policies, practices, or procedures respecting gender discrimination or retaliation for complaints of discrimination in effect as of 1996;

    (d)   the policies, actual practices and procedures established for any and all employees who complained of discrimination or retaliation since 2000, and the filing and investigating of such complaints; and

    (e)   all information relating to any type of program in place for monitoring, or if any investigation, assessment or evaluation has taken place, as to whether female employees are treated the same or differently from non-female employees with respect to hiring, performance evaluations, salary increases, bonuses, promotions, demotions, disciplinary actions or terminations.

7.   Complaints of discrimination and/or retaliation by EDF and/or EDFINA employees, including:

    (a)   all complaints made by any employee respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the results of any such investigation, any action taken, any follow-up relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint;

    (b)   all complaints made by Ms. Gaujacq (whether oral or written, formal or informal) respecting gender discrimination, unfair, harsh or abusive treatment, or retaliation because of complaining of discrimination, including any investigation taken, the results of any such investigation, any action taken, any follow-up relating to Ms. Gaujacq's complaints, and the subject of the complaint;

    (c)   all complaints made by Ms. Gaujacq about Mr. Nadal's treatment of her to Fernando Ponasso, Didier Lamethe, Bruno Lescoeur, Mr. Cruezet and Mr. Laroche; and

    (d)   all formal complaints of gender discrimination or retaliation because of complaining of discrimination, filed with the United States Equal Employment Opportunity Commission or any state or local Human Rights Commission, or as a lawsuit, against EDF and/or EDFINA, from 2000 through the present, and any response or rebuttal to any such claim.

8.   Methods to determine compensation for employees of EDF and/or EDFINA, including:

    (a)   the seniority system, the merit system, the grade level system and all other systems of factors referenced in Defendant's fifth affirmative defense;

    (b)   the compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present;

    (c)   the compensation and method of determining such compensation paid to Ms. Gaujacq from January 2000 until her termination;

    (d)   EDF's compensation policies for high-level executives; and

    (e)   the ranking and seniority system for high-level executives, including the EDFINA President's position within this system.

9.    Information relating to the audit referenced in ¶ 105 of Ms. Gaujacq's complaint, including:

   (a)    the decision to have auditors come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President;

   (b)    the audit report and recommendations; and

   (c)    any findings or conclusions of the audit, including specifically, any documents suggesting any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA.

10.    EDFINA's financial information, including:

   (a)    any contention that EDFINA has suffered or been damaged as a result of Ms Gaujacq's actions;

   (b)    the financial status of the EDFINA for the past two years with respect to gross and net revenues, expenses and profit; and

   (c)    EDFINA's monthly financial statements provided to EDF from August 2000 to January 2005.

11.    Relationship between EDFINA and EDF, including:

   (a)    number of people employed by EDFINA and EDF, combined and separately

   (b)    which entity employed Ms. Gaujacq;

   (c)    human resource and other administrative support provided by EDF to EDFINA;

   (d)    EDF contacts with the United States; and

   (e)    relationship between management and board of directors of EDFINA and management and board of EDF.

12.    NUSTART project, contracts and agreements, including:

   (a)    disclosure restrictions and confidentiality provisions of Nustart documents in 2004 as described in ¶134 of Ms. Gaujacq's complaint or otherwise;

   (b)    Ms. Gaujacq position and responsibilities related to the Nustart project both while she was president of EDFINA and after Mr. Nadal became president of EDFINA;

(c)    details of Georges Seveiere's succession as EDF's first representative to NuStart in summer 2004 as described in ¶170 of Defendants' answer.

13.    Incident wherein checks voided in the Company's books on or about June 2004, which were signed by Ms. Gaujacq but were voided and/or ripped up by Benoit Dreux.

14.    Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present

15.    All EPRI agreements.

16.    The partial IPO of EDF/EDFINA.

17.    The decision to deny Mike Slavitt access to the EDFINA's books and the decision to terminate Mike Slavitt, including the reasons for his termination.

18.    Ms. Gaujacq's proceeding before the "Conseil des Prudhommes" as referenced in Defendants' initial disclosures at page 6.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 1:05CV0969 (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
|   INTERNATIONAL NORTH AMERICA, | ) |
|   INC., et al. | ) |
| | ) |
|     Defendants. | ) |

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, the Plaintiff, Catherine Gaujacq, by counsel, will take the deposition upon oral

examination of the corporate designee(s) of Electricite de France, S.A. ("EDF"), as to the matters

set forth in Attachment A hereto, at 9:30 a.m. on Tuesday, January 31, 2006, at the offices of

Charlson Bredehoft & Cohen, P.C., 11260 Roger Bacon Drive, Suite 201, Reston, Virginia, 20190.

The deposition will be taken before an officer authorized by law to administer oaths and take

testimony, and will be recorded stenographically. The deposition will continue from day to day

until concluded, and will be used for all lawful purposes.

December 21, 2005

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
 Catherine Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel defendant EDF as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> dregal@hnrlaw.com
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America

With a courtesy copy sent this same day by email, addressed as follows:

> Ronald S. Cooper, Esq.
> David Clark, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC  20036
> (202) 429-3000
> rcooper@steptoe.com
> dclark@steptoe.com
>
> Counsel for Defendant
>   Christian Nadal

Elaine Charlson Bredehoft

## ATTACHMENT A

1.   All decisions relating to Ms. Gaujacq's employment with EDF and/or EDFINA, including:

    (a)    the decision to appoint Mr. Nadal to replace Ms. Gaujacq as President of EDFINA in the United States;

    (b)    the decision to pay Mr. Nadal a significantly higher salary as President of EDFINA than that paid to Ms. Gaujacq when she held the same position;

    (c)    the decision to remove Ms. Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts;

    (d)    the decision to revoke Ms. Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA;

    (e)    the decision to change the locks on the company book closet where the corporate books were kept;

    (f)    the decision to removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

    (g)    the decision to refuse to sign Ms. Gaujacq's expatriation contract and/or the expatriation contract proposed by Ms. Gaujacq in 2004, and all representations regarding the signed of that contract;

    (h)    the decision to direct Ms. Gaujacq to return to France immediately, without an assigned position;

    (i)    the decision to give Ms. Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004; and

    (j)    the decision not to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004.

2.   The employment relationship and/or contract between Ms. Gaujacq and EDF and/or EDFINA, including:

    (a)    the drafting of and completion of all contracts between EDF and/or EDFINA and Ms. Gaujacq including amendments to contracts;

    (b)    the terms of Ms. Gaujacq's expatriation contract with EDF;

(c)     Ms. Gaujacq's compensation as President of EDFINA;

(d)     the change in Ms. Gaujacq's employment relationship with EDF and/or EDFINA after Mr. Nadal became president of EDFINA, including any new expatriation contracts proposed or agreed to related to this change;

(e)     the new mission proposed for Ms. Gaujacq in or about the September/October 2004 timeframe; and

(f)     the drafting and issuing of the Employment Letter as described in ¶ 187-188 in Ms. Gaujacq's complaint and/or the "certificate de travail" referenced in ¶ 187 of Defendants' answer.

3.    Ms. Gaujacq's performance during her tenure as President of EDFINA, including

(a)     Ms. Gaujacq's scope of authority and changes in that authority;

(b)     Ms. Gaujacq's employment responsibilities and performance;

(c)     Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time;

(d)     any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq;

(e)     any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with EDF and/or EDFINA from August 2000 forward;

(f)     any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch which allegedly had complained on June 20, 2004 about a lack of information from Ms. Gaujacq;

(g)     any contention by the EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory, including but not limited to all performance issues referenced in the Response of Defendant EDFINA to Plaintiff's First Set of Interrogatories;

(h)     any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed;

(i)     any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses; and

(j)     any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home.

4 All instructions and/or demands given by Mr. Nadal to Ms. Gaujacq and her response to such instruction, including:

 (a) the instruction of Mr. Nadal for Ms. Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and

 (b) the demand that Ms. Gaujacq provide Mr. Nadal with all of her business and company contacts.

5 All policies and/or procedures in effect any time between 2000 and the present relating to EDF and/or EDFINA employees working abroad, including:

 (a) the amount of notice given to other employees whose United States mission was ending and EDF's policy or standard practice regarding the amount of notice to be given for cessation of a mission; and

 (b) the procedures, including terms of giving notice and terms of transition, to employees being reassigned out of country.

6 EDF and/or EDFINA EEO policies and procedures, including

 (a) EEO-1 documents submitted to the EEOC or any other agency;

 (b) any comparative evidence between treatment of female and non-female employees of EDF and/or EDFINA, including information supporting or reflecting any specific argument by Defendants that EDF and/or EDFINA does not discriminate on the basis of gender;

 (c) the policies, practices, or procedures respecting gender discrimination or retaliation for complaints of discrimination in effect as of 1996;

 (d) the policies, actual practices and procedures established for any and all employees who complained of discrimination or retaliation since 2000, and the filing and investigating of such complaints; and

 (e) all information relating to any type of program in place for monitoring, or if any investigation, assessment or evaluation has taken place, as to whether female employees are treated the same or differently from non-female employees with respect to hiring, performance evaluations, salary increases, bonuses, promotions, demotions, disciplinary actions or terminations.

7.    Complaints of discrimination and/or retaliation by EDF and/or EDF INA employees, including:

    (a)    all complaints made by any employee respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the results of any such investigation, any action taken, any follow-up relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint;

    (b)    all complaints made by Ms. Gaujacq (whether oral or written, formal or informal) respecting gender discrimination, unfair, harsh or abusive treatment, or retaliation because of complaining of discrimination, including any investigation taken, the results of any such investigation, any action taken, any follow-up relating to Ms. Gaujacq's complaints, and the subject of the complaint;

    (c)    all complaints made by Ms. Gaujacq about Mr. Nadal's treatment of her to Fernando Ponasso, Didier Lamethe, Bruno Lescoeur, Mr Cruezet and Mr Laroche; and

    (d)    all formal complaints of gender discrimination or retaliation because of complaining of discrimination, filed with the United States Equal Employment Opportunity Commission or any state or local Human Rights Commission, or as a lawsuit, against EDF and/or EDFINA, from 2000 through the present, and any response or rebuttal to any such claim.

8.    Methods to determine compensation for employees of EDF and/or EDFINA, including:

    (a)    the seniority system, the merit system, the grade level system and all other systems of factors referenced in Defendant's fifth affirmative defense;

    (b)    the compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present;

    (c)    the compensation and method of determining such compensation paid to Ms. Gaujacq from January 2000 until her termination;

    (d)    EDF's compensation policies for high-level executives; and

    (e)    the ranking and seniority system for high-level executives, including the EDFINA President's position within this system.

9.    Information relating to the audit referenced in ¶ 105 of Ms. Gaujacq's complaint, including:

    (a)    the decision to have auditors come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President;

    (b)    the audit report and recommendations; and

    (c)    any findings or conclusions of the audit, including specifically, any documents suggesting any wrongdoing or accounting improprieties that occurred during Ms. Gaujacq's tenure as President of EDFINA.

10.    EDF's financial information, including:

    (a)    any contention that EDF has suffered or been damaged as a result of Ms. Gaujacq's actions;

    (b)    the financial status of the EDF for the past two years with respect to gross and net revenues, expenses and profit; and

    (c)    EDFINA's monthly financial statements provided to EDF from August 2000 to January 2005.

11.    Relationship between EDFINA and EDF, including:

    (a)    number of people employed by EDFINA and EDF, combined and separately

    (b)    which entity employed Ms. Gaujacq;

    (c)    human resource and other administrative support provided by EDF to EDFINA;

    (d)    EDF contacts with the United States; and

    (e)    relationship between management and board of directors of EDFINA and management and board of EDF.

12.    NUSTART project, contracts and agreements, including:

    (a)    disclosure restrictions and confidentiality provisions of Nustart documents in 2004 as described in ¶134 of Ms. Gaujacq's complaint or otherwise;

    (b)    Ms. Gaujacq position and responsibilities related to the Nustart project both while she was president of EDFINA and after Mr. Nadal became president of EDFINA;

(c)    details of Georges Seveiere's succession as EDF's first representative to NuStart in summer 2004 as described in ¶170 of Defendants' answer.

13.    Incident wherein checks voided in the Company's books on or about June 2004, which were signed by Ms. Gaujacq but were voided and/or ripped up by Benoit Dreux

14.    Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present.

15.    All EPRI agreements.

16.    The partial IPO of EDF/EDFINA.

17.    The decision to deny Mike Slavitt access to the EDFINA's books and the decision to terminate Mike Slavitt, including the reasons for his termination.

18.    Ms. Gaujacq's proceeding before the "Conseil des Prudhommes" as referenced in Defendants' initial disclosures at page 6.

# ATTACHMENT 3

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Elaine Bredehoft |
| **Sent:** | Friday, January 20, 2006 10:12 AM |
| **To:** | 'rcooper@steptoe.com'; 'Laura Hoguet'; 'Dorothea Regal'; 'David Clark' |
| **Cc:** | 'Kathy Quill' |
| **Subject:** | Deposition scheduling |

| | |
|---|---|
| **TimeMattersID:** | M9D489773368E504 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Counsel:

Based upon your clients' discovery responses and Initial Disclosures, I would like to schedule several depositions and would like to give you the opportunity to provide me with any unavailable dates you may have in March prior to noticing the depositions, so that your schedules may be accomodated if possible. At least two, possibly more, of the depositions will be third parties whom I will have to subpoena, so once I issue the subpoenae, we will not likely have flexibility. I would therefore truly appreciate your communicating any scheduling conflicts to me now to avoid any difficult issues later, and out of respect for non-party witnesses.

Some of the deponents are employees of your clients, so you may wish to check their unavailability as well. They include: Yann Laroche, Alexandre Audie, Benoit Dreux, and Adja Mame Ba. I understand that Mr. Laroche is located in Paris. I am willing to discuss with you mutually agreeable arrangements to bring him here for his deposition in March.

Please also provide me with address of Garard Creuzet, as it was not included in the Initial Disclosures or your discovery responses, although he has been identified as a witness by you.

These are the employees I currently have decided I need to depose based upon your discovery. Depending upon further depositions and discovery, I may wish to depose more on your list, but these are individuals I know I will want to depose, and I am trying to provide more than ample notice for us to accomplish all of these in March.

Thank you for your anticipated cooperation. I look forward to hearing from you within the next few business days. If I receive unavailable dates from you, I will Notice the Depositions based upon those dates quickly so that you may lock them in and keep your calendars free on the other dates you have provided.     Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

# ATTACHMENT 4

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Cooper, Ronald [RCooper@steptoe com] |
| **Sent:** | Monday, January 16, 2006 4:16 PM |
| **To:** | Elaine Bredehoft |
| **Cc:** | Clark, David; DRegal@hnrlaw.com |
| **Subject:** | Your email of earlier today |
| **TimeMattersID:** | MC027976DFBC9445 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Elaine,

It is hard to understand how you could have been laboring under the impression that Defendants would go forward with a single day of Ms. Gaujacq's deposition given the positions the parties have taken. Since you first revealed your position that the second consecutive date originally considered for Plaintiff's deposition would only be made available if it were needed in your own estimation, we have been clear on the reasons why such an approach was unworkable from our perspective I see no benefit to restating those reasons in this email, but you should know that Defendants' position (as articulated in my letter on Friday) stands

Furthermore, as we have also made clear previously, <u>Defendants have no intention of facilitating the depositions of Mr. Nadal, in his individual and representative capacities (or such further designees of the corporate defendants as may be necessary to respond to the unobjectionable aspects of your notices) until after Plaintiff's deposition</u> as previously agreed, whenever that may take place. All of these matters, including your notices, are before the Court. Accordingly, unless resolved by the parties, the basic parameters for the depositions will be sorted out by the Court in due course, and the parties may then consider their respective availability for particular dates.

It was your decision to abandon the parties' scheduling discussions in favor of unilateral action that led the parties to their present predicament and that pushed back the deposition schedule Due to your reneging on our earlier understandings regarding deposition scheduling, your refusal to meet and confer with us on those issues, and your unilateral and inflexible selection of dates for 30(b)(6) depositions, all leaving us no reasonable option but to make our Motion to Compel and for a Protective Order (which is presently pending), neither Ms. Gaujacq's deposition nor the depositions of any of the Defendants can take place in January. We hope that the Court will resolve the Defendants' pending motion soon, and we believe that Plaintiff's deposition and the presently noticed Defendants' depositions could thereafter be scheduled and completed fairly promptly (although we are probably now looking at February/March rather than January/February). How soon after the Court's decision these things may be accomplished depends in large measure on you. Thank you

Ron Cooper

Steptoe & Johnson LLP
phone- 202 429 8075
cell -   703 568 4053
fax-    202 261 0509
rcooper@steptoe com

The information in this email is confidential and may be legally privileged. It is intended solely for the addressee Access to this email by anyone else is unauthorized If you are not the intended recipient, please advise the sender by return email and delete the message and any attachments

01/30/06

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Cooper, Ronald [RCooper@steptoe com] |
| **Sent:** | Monday, January 23, 2006 11:59 AM |
| **To:** | Elaine Bredehoft |
| **Cc:** | DRegal@hnrlaw.com; Clark, David |
| **Subject:** | Friday afternoon emails |
| **TimeMattersID:** | M252D9773F3E0342 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Dear Elaine,

On behalf of all defendants, this responds to your two emails of Friday afternoon on the subjects of "Noticed Depositions" and "Deposition Scheduling " Both are reprinted below for your convenience (and, unfortunately, for the Court's as well)

"Noticed Depositions" We disagree with the basic premise of this email, i e that Plaintiff has "properly noticed" any depositions  Notices which fail to conform to the parties' agreements regarding scheduling are not reasonable or proper notices as required by Rule 30  As Rule 26 contemplates, we presented a timely motion for a protective order which is pending with the Court and sets out our position on the depositions in detail Our motion concerning depositions will be decided by the Court in due course  Until the Court has an opportunity to consider our requests, we will not be appearing in response to your notices that we view as improper, and to which we have asserted timely objections  There is no need for further posturing  Any inconvenience or expense incurred in pursuing the dates in your "notices" cannot be attributed to Defendants

Scheduling of Further Depositions  For the same reasons set out above, we submit that it would be sensible to await the Court's decision regarding the sequencing and duration of the parties' depositions (which the parties agreed would be the first order of business) before attempting to schedule the depositions of third parties  Given your representation that Ms  Gaujacq will not be available for a deposition until March, we request that you advise us of two consecutive days as early in March as possible when she would be available, in the event our motion to compel is successful  As we had agreed, we will schedule Mr. Nadal's deposition for two consecutive days as soon after those dates as practical

Once we have the tentative dates for the principal parties identified, we will be happy to cooperate in blocking out additional dates for the depositions of other of our employees and third parties  Given that the case will not be tried until well into 2007, we do not understand the urgency suggested by your recent actions and emails  If you are truly concerned about the schedule and having enough time to complete the few depositions you plan to take in the time presently allocated, we are willing to work with you to adjust any upcoming deadlines to allow these matters to be addressed in the ordinary course

Ron Cooper

-----Original Message-----

01/30/06

**From:** Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
**Sent:** Friday, January 20, 2006 10:20 AM
**To:** Cooper, Ronald; Clark, David; Laura Hoguet; Dorothea Regal
**Cc:** Kathy Quill
**Subject:** Noticed Depositions

Counsel:

Given that I have properly noticed the depositions of Mr. Nadal, as well as the Corporate Designees, pursuant to Fed. R. Civ. P. 30, no Protective Order has issued relieving you of the obligation to present your witnesses at the scheduled depositions, and you have provided me with no alternative dates or indicated that you are not available on these dates for these depositions, I do plan to proceed with the depositions as scheduled on January 24, 26 and 30, each scheduled to begin at 9:30 a.m. I just wanted to make sure you have sufficient time to re-think your position that you will not present these witnesses, and be aware that I do intend to proceed under the Rules.

This will also confirm that Ms. Gaujacq travelled here to appear at her deposition on January 20, 2006, but you did not appear, nor did you ask her to appear at another location for her deposition.

Thank you for your consideration. I am truly hopeful that I will see you on Tuesday, Janaury 24, 2006 at 9:30 a.m. for the deposition of Mr. Nadal.

Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

-----Original Message-----
**From:** Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
**Sent:** Friday, January 20, 2006 10:12 AM
**To:** Cooper, Ronald; Laura Hoguet; Dorothea Regal; Clark, David
**Cc:** Kathy Quill
**Subject:** Deposition scheduling

Counsel:

Based upon your clients' discovery responses and Initial Disclosures, I would like to schedule several depositions and would like to give you the opportunity to provide me with any unavailable dates you may have in March prior to noticing the depositions, so that your schedules may be accomodated if possible. At least two, possibly more, of the depositions will be third parties whom I will have to subpoena, so once I issue the subpoenae, we will not likely have flexibility. I would therefore truly appreciate your communicating any scheduling conflicts to me now to avoid any difficult issues later, and out of respect for non-party witnesses.

Some of the deponents are employees of your clients, so you may wish to check their unavailability as well. They include: Yann Laroche, Alexandre Audie, Benoit Dreux, and Adja Mame Ba. I understand that Mr. Laroche is located in Paris. I am willing to discuss with you mutually agreeable arrangements to bring him here for his deposition in March.

Please also provide me with address of Garard Creuzet, as it was not included in the Initial Disclosures or your discovery responses, although he has been identified as a witness by you.

01/30/06

These are the employees I currently have decided I need to depose based upon your discovery. Depending upon further depositions and discovery, I may wish to depose more on your list, but these are individuals I know I will want to depose, and I am trying to provide more than ample notice for us to accomplish all of these in March

Thank you for your anticipated cooperation. I look forward to hearing from you within the next few business days. If I receive unavailable dates from you, I will Notice the Depositions based upon those dates quickly so that you may lock them in and keep your calendars free on the other dates you have provided.    Elaine

Elaine Charlson Bredehoft
CHARLSON BREDEHOFT & COHEN, P C
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Phone
(703) 318-6808 Fax

# ATTACHMENT 5

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S. NEWMAN
DOROTHEA W. REGAL
JOSHUA D. RIEVMAN
EDWARD P. BOYLE
SHERYL B. GALLER
IRA J. LIPTON

TEL (212) 689-8808

FAX (212) 689-5101

www.hnrlaw.com

hnr@hnrlaw.com

December 15, 2005

SARAH K. BARICKMAN
KATHLEEN L. LOWDEN
RANDI B. MAY

EDNA R. SUSSMAN, OF COUNSEL

**By Facsimile**

Elaine Charlson Bredehoft, Esq.

Charlson Bredehoft & Cohen, P.C.

11260 Roger Bacon Drive

Suite 201

Reston, VA 20190

Re: Gaujacq v. EDF, et al.

Dear Elaine:

I write on behalf of all defense counsel to address two discovery issues that we would like to resolve with you, if feasible, without court intervention. These matters are of some urgency because they impact our ability to prepare effectively for and complete the plaintiff's deposition, which has been scheduled for January 19 and 20, 2006.

## 1. Incomplete and Non-Responsive Response to Interrogatories

The responses to interrogatories that you served upon defense counsel on December 12, 2005 are non-responsive and evasive. In addition, they have not been signed by the party. The set of interrogatories served upon you by EDF and EDFINA contained merely 13 interrogatories, more than half of which Gaujacq has failed to answer responsively. In particular, but without limitation, the following responses are wholly insufficient:

Interrogatory No. 3: No response was given to the question of what compensation plaintiff has received from her employment subsequent to her termination, nor has the location of her employment with Entergy been provided.

Interrogatory No. 4: No response was given to the question of what persons Gaujacq had communication with relating to employment opportunities or the substance of such communications.

HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq.
December 15, 2005
Page 2

Interrogatory No. 8: This response is wholly evasive, not addressing the matter of Gaujacq's deletion of the contents of EDFINA's laptop before she returned it to EDFINA, and no response was given as to the identification of the software Gaujacq used to delete the laptop or the identification of persons with knowledge of such deletion.

Interrogatory No. 9: This response is misdirected to matters that appear to have no connection with the subject matter of the interrogatory, which was communications with Entergy Nuclear. The one paragraph in this response that does relate to Entergy Nuclear fails to identify the person or the entity with whom Gaujacq had the alleged communication.

Interrogatory No. 10: The response, to the effect that companies had knowledge of the alleged events, is not responsive to the question to describe with particularity the damages to Gaujacq's reputation that she alleged in the 8 referenced paragraphs of the complaint.

Interrogatory No. 11: The deficient response to Interrogatory No. 10, referred to in response to Interrogatory No. 11, is equally non-responsive to the question to describe with particularity the damages to Gaujacq's career that she alleged in 3 other referenced paragraphs of the complaint.

Interrogatory No. 13: No answer whatsoever has been given to this interrogatory regarding the identification of medical professionals from whom Gaujacq sought or received treatment in connection with any emotional, mental, psychological or psychiatric problems.

### 2. Deposition Scheduling

Deposition of the Plaintiff: Defendants need more than 7 hours to take the deposition of plaintiff. We believe that we will require two to three 7-hour days to complete Gaujacq's deposition. Alternatively, since you have advised us of Gaujacq's limited availability to absent herself from her new employment, we would be willing to negotiate a schedule for this deposition that would be limited to two 10-hour days. The reason that we need this amount of time is that there are three defendants and the complaint is extremely lengthy, containing 354 paragraphs of allegations. While we recognize the fact that the plaintiff's native language is French and that many of the documents are in French, we do not anticipate that those facts will require additional time for her deposition unless you intend to have an interpreter at her deposition. You have offered to schedule her deposition for January 19 and 20, 2006, but at the same time you have stated your position that defendants are not entitled to more than 7 hours with the plaintiff. We want to clarify these logistical issues as to the plaintiff's deposition.

HOGUET NEWMAN & REGAL, LLP

Elaine Charlson Bredehoft, Esq
December 15, 2005
Page 3

- Please confirm that Gaujacq will be available for deposition for the two days scheduled. Please acknowledge that defendants reserve the right to continue the deposition on a third day to be scheduled unless we can come to an agreement as to extended deposition days for the two days scheduled. Please advise whether Gaujacq will have an interpreter at her deposition.

Rule 30(b)(6) Deposition of EDF: We cannot schedule a Rule 30(b)(6) deposition until you have advised us of the scope of such deposition

- Please serve your 30(b)(6) notice

Deposition of Individual Defendant Nadal: We cannot schedule the deposition of Mr. Nadal until we know whether you intend to seek a Rule 30(b)(6) deposition of EDFINA and, if so, the scope thereof because of the possibility that Mr Nadal would be the corporate designee for any such deposition of EDFINA. It would be unacceptable to subject him to two separate depositions.

- Please confirm that you will not seek a Rule 30(b)(6) notice of EDFINA or, if you do seek such a deposition, please serve your 30(b)(6) notice

We would like to confer with you on these matters, in compliance with Local Civil Rule 7(m), and propose a telephone conference with you on Monday, December 19, 2005 at 2:30 p m. Please confirm your availability for this telephone conference.

Very truly yours,

Dorothea W Regal

cc:    Ronald S. Cooper, Esq.
       David Clark, Esq

# ATTACHMENT 6

**Elaine Bredehoft**

| | |
|---|---|
| **From:** | DRegal@hnrlaw com |
| **Sent:** | Friday, December 09, 2005 5:18 PM |
| **To:** | Elaine Bredehoft |
| **Cc:** | Laura Hoguet; rcooper@steptoe com; dclark@steptoe com |
| **Subject:** | Gaujacq Deposition Dates |
| **TimeMattersID:** | MB0B89746F13E868 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Elaine:
I am responding on behalf of all defendants regarding the scheduling of the deposition dates for Ms  Gaujacq
 We agree with your proposal for January 19 and January 20, with the caveat that we do not agree to limit our questioning to two 7-hour sessions  As we have previously told you, we anticipate that collectively we will need 2 to 3 days to complete the Gaujacq deposition.  Please let us know how you want to deal with this issue  We are working on dates for a Nadal deposition to follow the Gaujacq deposition, and we will provide you with possible dates for Mr. Nadal's deposition shortly

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel  (212) 689-8808
Fax (212) 689-5101
dregal@hnrlaw com

# ATTACHMENT 7

## Elaine Bredehoft

| | |
|---|---|
| **From:** | Clark, David [dclark@steptoe.com] |
| **Sent:** | Friday, January 06, 2006 10:32 AM |
| **To:** | Elaine Bredehoft |
| **Cc:** | Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com |
| **Subject:** | RE: Conference Time |
| **TimeMattersID:** | MC2A3975DBE4A481 |
| **TM Contact:** | David A. Clark |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Elaine,

We have responded promptly and fairly to your request for a telephone conference on discovery issues  Your implication to the contrary is unfounded  You will recall that in your December 21 letter to Ron, you wrote: "In the event there are any remaining issues following your careful review of the issues and supplementation, I would appreciate your finding some time during the week of January 2 to schedule a conference call to discuss the issues." Of course, Defendants did undertake the review you requested, and we provided you with additional information and additional discovery on January 3 as requested  Indeed, it was only Wednesday afternoon of this week (January 4) that you first indicated you wished to discuss discovery issues -- although you have not identified them -- and requested available times

Yesterday -- or just a day after your first request  -- I provided a time on Wednesday of next week when counsel for all defendants could be available  And, when you wrote back yesterday to request a time sooner than Wednesday morning, I checked with everyone and got back to you less than an hour later to suggest the end of the day on Monday.

Please just let us know whether Monday after 4:30 will work in your schedule  And please let us know what discovery issues you wish to discuss  Thank you

Dave
-----Original Message-----
**From:** Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
**Sent:** Thursday, January 05, 2006 8:57 PM
**To:** Clark, David
**Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
**Subject:** RE: Conference Time

May I ask what each of you has (and has had) on your schedule that has prohibited you from discussing these issues with me this week, and particularly tomorrow? Thank you for your thoughtful response  Elaine

> -----Original Message-----
> **From:** Clark, David [mailto:dclark@steptoe.com]
> **Sent:** Thursday, January 05, 2006 5:00 PM
> **To:** Elaine Bredehoft
> **Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
> **Subject:** RE: Conference Time
>
> Elaine,
>
> We obviously do not share your views on Defendants' efforts to confer prior to filing our motion  We asked for times on more than one occasion  and you simply ignored those requests

01/01/06

In contrast, we are available to meet and confer with you. We are available to discuss any issues that you may still have following our recent letter and further discovery responses from all Defendants. Given the overlap among Defendants, we do not believe it would be productive to engage in separate conferences. Late on Monday is also available for all of us if we can begin at 4:30 or 5:00. I could also check for availability next Thursday or Friday if you would like.

Dave
-----Original Message-----
**From:** Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
**Sent:** Thursday, January 05, 2006 4:20 PM
**To:** Clark, David
**Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
**Subject:** RE: Conference Time

David: Thank you for your response. As you may recall, I asked everyone in my December 20 letter to keep times available this week to discuss these issues. Given that motions have already been filed by defendants without any genuine effort to confer, and I will be filing responses as well as my motions before next Wednesday (and I will be in depositions all day Wednesday in any event), I would appreciate everyone providing me with times this week. Since your email is coming late on Thursday, I guess realistically tomorrow will be the day left to talk. I am happy to hold separate conferences, as I do not believe they need to be joined. I will do my best to accommodate any times that works. Please send me an email as soon as possible with the times.

Thank you for your consideration.  Elaine

       -----Original Message-----
       **From:** Clark, David [mailto:dclark@steptoe.com]
       **Sent:** Thursday, January 05, 2006 4:10 PM
       **To:** Elaine Bredehoft
       **Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
       **Subject:** Conference Time

       Dear Elaine,

       Everyone on Defendants' side is available on Wednesday morning up until 11:15. Let us know if this works for you and when you would like to begin.  Thank you

       Dave
       -----Original Message-----
       **From:** Elaine Bredehoft [mailto:ebredehoft@charlsonbredehoft.com]
       **Sent:** Wednesday, January 04, 2006 2:13 PM
       **To:** Clark, David
       **Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
       **Subject:** RE: Document numbering question

       David: Happy New Year.  Yes, I believe all of the documents have been bate stamped and sent.

       Can you all provide me with some available times to talk about all the outstanding discovery issues in the next few days?

       Thank you.  Elaine

              -----Original Message-----
              **From:** Clark, David [mailto:dclark@steptoe.com]
              **Sent:** Wednesday, January 04, 2006 2:07 PM
              **To:** Elaine Bredehoft

**Cc:** Cooper, Ronald; DRegal@hnrlaw.com; LHoguet@hnrlaw.com
**Subject:** Document numbering question

Elaine,

Can you confirm that Plaintiff's entire document production as of December 2005 has now been provided to us in paper form (Bates range 1-1266)?  Specifically, we're trying to figure out what happened to the un-numbered documents on the disk you initially sent   Are they already contained within the 1266 pages you've produced in hard copy?  If not, will you be re-providing those documents in a Bates-numbered form?  Thank you

Dave

**David A. Clark**
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202-429-6402 (direct dial)
202-429-3902 (fax)
dclark@steptoe.com

02/01/06