IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) |
| v. | ) No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al. | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY
IN SUPPORT OF
MOTION TO STRIKE FOR FAILURE TO MEET AND CONFER**

This reply brief is submitted by all Defendants, Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA"), and Christian Nadal ("Nadal"), in support of their Motion to Strike for Failure to Meet and Confer (Dkt. #33). Notably, although Plaintiff's Opposition (Dkt. # 39) is rife with inflammatory language and personal attacks on Defendants' counsel, Plaintiff does not deny that she ignored Defendants' attempts to arrange the required meet and confer prior to the filing of the motions at issue. See Pl.'s Opp. at 9. Accordingly, Defendants ask the Court to strike the four pending submissions before this Court[1] (Dkt. #s 28, 30, 31 and 32), and to award them their costs and fees involved in filing this motion and responding to Plaintiff's original filings.

---

[1] Defendants had originally asked the Court to strike all five of Plaintiff's motions filed on January 10, 11, and 18. Base on the parties' agreement, reached in the course of a long-awaited Rule 37 conference spurred by the filing of this motion, the Court has since been able to dispose of Plaintiff's Motion to Reschedule Trial (Dkt. # 29). This merely confirms the premise of this Motion to Strike -- i.e., that the required conference would have avoided much if not all of the burden and expense of Plaintiff's motions. Defendants still seek an award of their costs and fees associated with defending the unnecessary motion related to the trial date, as well as the other premature and wastefully overbroad motions that are the subject of this Motion to Strike.

1

## ARGUMENT

Plaintiff's Opposition spends a full seven pages spinning an inaccurate yarn of injustice and delay by Defendants' counsel. It is telling that Plaintiff uses a pleading rife with insults and *ad hominem* attacks in an attempt to illustrate her claim that she has been mistreated by Defense counsel.

Plaintiff's pleadings are littered with references to Defendants' supposedly "harsh," "rude," and "hostile" remarks.[2] These claims are demonstrably false. From December 1, 2005, through January 31, 2006, -- the entire period from the breakdown of communications through the filing of motions and oppositions at issue here -- Plaintiff's counsel did not have a single oral communication of any kind with any of Defendants' counsel. Thus, everything that transpired is reflected in the written record, all of which has now been produced, several times over, for the Court's consideration. Defendants' counsel have reviewed their correspondence to Plaintiff and do not believe this record supports Plaintiff's characterizations of those communications as "harsh," "rude," "hostile," or unprofessional in any way.

Moreover, Defendants' written communications stand in stark contrast to the now several personal attacks on Defendants' counsel, whom Plaintiff has referred to (in publicly filed pleadings no less) as "a two-year old[s] with an attitude,"[3] and a "spoiled

---

[2] See, e.g., Pl.'s Opp. at 2; Pl.'s Supplement to Alert the Court to New Developments Impacting the Motions Before This Court and Motion for Enforcement of the Rules (Dkt. # 32) at 2, 4, and 6.

[3] See Pl.'s Opp. at 5.

child throwing a temper tantrum."[4] Though Plaintiff clearly does not agree with the legal positions Defendants have taken, they are, legal positions and nothing more.

Just as it is Plaintiff, not Defendants, who has engaged in strident behavior, it is Plaintiff's deliberate flouting of the Rules that has caused no fewer than 16 separate and unnecessary pleadings to be filed by the parties. These actions have exponentially and unnecessarily increased the costs of litigation and delayed the discovery schedule. Indeed, the parties recently concluded a face-to-face conference, one of a series of conferences, in which at least two of Plaintiff's contested motions were either largely or completely resolved. Discussions continue, and, hopefully, these discussions will resolve all or at least further aspects of any remaining motions. It is thus now apparent that substantial time and money could have been saved had Plaintiff met her obligations to confer in the first instance.

Plaintiff's allegations must be judged against the following undisputed chronology:

- December 21, 2005 - In Plaintiff's letters to Defendant's counsel, wherein she states that she has issues with the Defendants' discovery responses, she states that if, after careful review, there are still issues to be resolved, she would like to arrange for a conference call for the week of January 2nd. Plaintiff's counsel announced that she would be on vacation and unavailable from December 21st until January 3rd.

- December 30, 2005 - Having received no response to repeated written requests for dates to confer over deposition scheduling issues, and facing quickly approaching deposition dates that were unilaterally noticed by Plaintiff and unworkable for the Defendants, Defendants had no choice but to file their Motion to Compel and for Protective Order (Dkt. 23).

---

[4] See Pl.'s Supplemental Memorandum to Alert the Court to New Developments Impacting The Motions Before This Court & Memorandum In Support of Motion for Enforcement of the Rules (Dkt. # 32).

- January 3, 2006, on her first day back in the office since the 12/21 letter, Plaintiff's counsel receives, by e-mail, Defendant Nadal's written response to the Plaintiff's discovery concerns raised in the 12/21/05 letter. Defendants do not know whether Plaintiff's counsel will find Defendants Nadal's responses acceptable or not, and wait to hear further from Plaintiff.

- January 4, 2006, e-mail, at 2:13 p.m. - Plaintiff's counsel contacts Mr. Clark (acting on behalf of Defendants' counsel) and asks for a time "in the next few days" when counsel can discuss discovery issues. (Dkt. 31, Ex. 3).

- January 5, 2006, e-mail, at 4:10 p.m. - having consulted all of the Defendants' counsel, Mr. Clark replies that they are all available the following Wednesday, (1/11/06) at 11:15 a.m. (Dkt. 31, Ex. 3).

- January 5, 2006, e-mail, at 4:20 p.m. - Plaintiff's counsel responds that Wednesday is not soon enough, and asks for times "this week". As this request comes late on Thursday afternoon, realistically, Plaintiff's request means "tomorrow." (Dkt. 31, Ex. 3).

- January 5, 2006, e-mail, at 5:00 p.m. - in an effort to respond to Plaintiff's request, Mr. Clark states that all Defendants could be available on Monday, (1/9/06) at 4:30 or 5:00 p.m. Alternatively, Mr. Clark states that he could investigate other times later in the week. (Dkt. 31, Ex. 3).

- January 5, 2006, e-mail, at 8:57 p.m. - Plaintiff's counsel responds, and does not address any of the options presented to her, but instead demands to know what prevents each counsel from discussing her issues tomorrow (Friday, 1/6/06). (Dkt. 31, Ex. 3).

- January 6, 2006, e-mail, at 10:32 a.m. - Mr. Clark responds that Plaintiff's counsel only recently (on Jan. 4th) indicated that Defendants Nadal's responses were inadequate, and that there was still a need for the conference call. Mr. Clark again asks Plaintiff if Monday, (1/8) at 4:30 would be suitable. Plaintiff does not reply in any fashion. (Dkt. 33, Ex. A).

- January 7, 2006 - Counsel for EDF and EDFINA responds by letter to Plaintiff's discovery concerns raised in the 12/21/05 letter.

- January 9, 2006, 4:30 p.m. - Defendants' proposed time for a conference call comes and goes without contact from Plaintiff's counsel.

4

- January 10, 2006, 5:00 p.m. - Plaintiff files her Opposition to Defendants' Motion for Protective Order (regarding depositions) as well as her own Motion to Amend Protective Order and Motion to Reschedule Trial.

- January 11, 2006, 11:15 a.m. - Defendants' original proposed time for a conference call comes and goes without contact from Plaintiff's counsel.

- January 11, 2006, 4:59 p.m. - Plaintiff files her Motion to Compel (EDFINA) and her Motion to Compel (Nadal).

- January 17, 2006 - Defendants inform Plaintiff's counsel by letter that they view her filings of January 10, and 11 to be in violation of her duty to meet and confer, and ask Plaintiff to withdraw her Motions, or else Defendants will file a Motion to Strike. Plaintiff does not respond.

- January 18, 2006, 2:58 p.m. - Plaintiff, rather than conferring with Defendants and in an attempt to preempt the motion that Defendants said they would need to file absent withdrawal of Plaintiff's motions and a Rule 37 conference, instead files yet another motion -- her Supplement to Alert the Court to New Developments Impacting the Motions Before This Court and Motion for Enforcement of the Rules.

- January 20, 2006 - out of options, Defendants file their Motion to Strike.

As this record reflects, Defendants proposed several times for which they could be available for a meet and confer. Plaintiff did not choose to respond to any of Defendants' offers, nor did she take it upon herself to propose a new time.

The situation that led Defendants to file their original motion to compel and for protective order (Dkt. # 23), and which apparently precipitated Plaintiff's abandonment of efforts to negotiate the parties' disputes, was quite different from the one facing Plaintiff when she filed the motions here at issue. Defendants filed their original motion because Plaintiff had (again) ignored repeated written requests to meet and confer over deposition scheduling issues and, more provocatively still, had engaged in self-help by acting unilaterally to notice depositions inconsistently with the parties' prior scheduling

agreement and then announcing that she was leaving for an extended vacation during which she would be unavailable. The deposition issues facing Defendants were time-sensitive because, among other reasons, they involved imminent depositions of defense witnesses to be produced in Washington (including witnesses from France). In contrast, the motions that Plaintiff has filed were not time-sensitive. Indeed, before those motions were filed, Defendants had promptly responded to Plaintiff's requests to meet and confer and had proposed two available times within a few days of Plaintiff's request for a meeting. And both of the dates proposed for conferences were prior to the dates when Plaintiff ultimately filed her motions.

Plaintiff claims that Defendants intentionally proposed times for the "meet and confer" that that they knew Plaintiff could not meet and that she, therefore "ignored the outrageous and inflammatory effort" and said nothing. This charge strains credibility. To this day, Plaintiff's counsel has never claimed (and we could not have imagined) that she was generally unavailable on Wednesday mornings, the date originally proposed. It was only when Plaintiff claimed that the Wednesday morning proposal was not soon enough that Defendants proposed a 4:30 call on Monday.[5] In any event, while family is important to all, there is no reason that Defendants should have presumed that afternoon hours were irrevocably "off-limits," especially for purposes of attempting to resolve disputes apparently viewed as important enough to justify involving the Court. Indeed, the emails to which Defendants were responding had been sent during the late afternoon hours on that particular Thursday. Her last email that day was sent at 8:57 p.m.

When Plaintiff received further communication from the Defendants, clarifying that they viewed her recent Motions to be in violation of the Rules, Plaintiff again was silent. As stated in her Opposition, "rather than engage in a heated exchange about

---

[5] This late time was necessitated by one of Defense counsel's travel schedule.

personal and professional courtesies," Plaintiff instead chose to magnify the problem by filing yet another Motion. See Pl.'s Opp. at 8-9.

It is clear that Plaintiff simply chose to ignore this Court's meet and confer requirement prior to filing her four motions on January 10 and 11 and her last motion on January 18. Moreover, as recent developments have confirmed, such a conference would have reduced or eliminated completely the need for, and the substantial expense associated with, the motions that are the subject of this motion. Accordingly, this motion is not mooted by the recent and welcome détente.

The Court should strike such of Plaintiff's motions that are not first removed by Plaintiff herself as resolved (Dkt. Nos. 28, 30, 31 and 32). Equally important, the Court should order that Plaintiff reimburse Defendants for the significant fees and expenses they incurred in having their lawyers prepare six separate briefs to deal in Court with issues that should and could have been resolved through the less expensive mechanism that should have been available to them under Rule 37.

Dated: February 13, 2006

                                                Respectfully Submitted,

                                                __/s/_____
                                                Dorothea W. Regal
                                                D.C. Bar No. NY0064
                                                Laura B. Hoguet
                                                D.C. Bar No. 200915
                                                HOGUET NEWMAN & REGAL, LLP
                                                10 East 40th Street
                                                New York, NY 10016
                                                (212)689-8808

                                                *Counsel for Defendants Electricité de France, S.A. and Electricité de France International North America, Inc.*

      /s/
Ronald S. Cooper
D.C. Bar No. 149799
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*