## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### <u>MOTION TO COMPEL</u>

Plaintiff Catherine Gaujacq, by counsel, hereby moves this Court for an Order, pursuant to Fed. R. Civ. P. 37, to compel responses to discovery requests from defendant Electricite de France ("EDF"). The grounds for this Motion are set forth in the attached Memorandum.

February 16, 2006

Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ )
)
)
Plaintiff, )
)
v. )    No. 1:05CV0969 (JGP)
)
ELECTRICITE DE FRANCE )
INTERNATIONAL NORTH AMERICA, )
INC., et al. )
)
Defendants )
)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL
## DISCOVERY RESPONSES FROM DEFENDANT EDF

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby moves this Court

for an Order compelling full and complete discovery responses from defendant Electricite de

France International North America ("EDF"). Specifically, plaintiff moves this Court to compel

EDF to respond fully and completely to plaintiff's First Set of Interrogatories and plaintiff's First

and Second Request for the Production of Documents.

## CERTIFICATE UNDER LOCAL RULE 37(E)

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally

and in writing, to resolve the discovery matters at issue prior to placing this matter before the Court.

Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the

below issues.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005.  In her complaint, Ms. Gaujacq (i)

alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the
common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal
Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per se*; (iv) breach of contract; (v) tortious
interference with contractual relations and business expectancies; and (vi) breach of the duty of
good faith and fair dealing.[1]  Defendants filed their answers to this complaint on September 12,
2005.  A scheduling order was entered on October 14, 2005.  In this Order, the Court set the
deadline for fact discovery on May 31, 2006.  The trial is scheduled to begin on April 2, 2007.

Plaintiff served her first discovery requests on Electricite de France ("EDF") on
November 21, 2005.  EDF served their written responses by email on January 3, 2006 and sent
documents out by Federal Express for delivery the afternoon of January 4, 2006.

## PRELIMINARY STATEMENT

The Rules of Civil Procedure and the Local Rules of this Court permit, and indeed require,
Plaintiff to move the Court to compel proper responses to Plaintiff's discovery requests.  The
Federal Rules provide that a party "may apply for an order compelling disclosure or discovery . . . if
. . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a
request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as
requested or fails to permit inspection as requested . . . ." Fed. R. Civ. P. 37.  Moreover, "an evasive
or incomplete . . . answer, or response is to be treated as a failure to . . . answer, or respond." Fed.
R. Civ. P. 37(a)(3).  Furthermore, if a party objects to an interrogatory, it "shall answer to the extent

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair
dealing are alleged only against the corporate defendants.  The claim of tortious interference with
contractual relations and business expectancies is alleged only against Mr. Nadal.

the interrogatory is not objectionable," Fed. R. Civ. P. 33(b)(1), and if a party objects to a request

for production, "the part [of the objection] shall be specified and inspection permitted of the

remaining parts." Fed. R. Civ. P. 34(b). In fact, the Federal Rules also prescribe that "the failure to

act described in this subdivision may not be excused on the ground that the discovery sought is

objectionable unless the party failing to act has a pending motion for a protective order . . ." Fed

R. Civ. P. 37(d). This Court's local rules provide that "[a]fter a discovery request is objected to, **or**

not complied with, within time, and if not otherwise resolved, it is the **responsibility** of the party

initiating discovery to place the matter before the Court by a proper motion . . . ." Local Rule 37.

### STATEMENT OF FACTS

Ms. Gaujacq was President of Electricite de France International North America

("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management

positions within EDF and EDFINA in the core energy generation business, and, most recently, in

strategic consulting on behalf of the Company in the United States. Despite the size of the

Company, Ms. Gaujacq was one of very few women to hold an executive level position and as

President, was one of the highest ranked females in the Company. As President of EDFINA, Ms

Gaujacq was paid a salary of $169,750.00, plus benefits

Ms. Gaujacq's job responsibilities included full operational responsibility for all

EDFINA activities and projects, identification of development opportunities in the American and

Canadian electricity markets, representation of the Company in various trade associations

relevant to the energy field, serving as a Director of the Board for EDF Group's United States

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging

technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she

was responsible for identifying and managing EDF's acquisition of enXco, a wind power

3

company; the establishment and development of a United States presence for Dalkia, an EDF

subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture

in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's

restructuring associated with the Company's privatization, Christian Nadal, a high level

executive with EDF, was being sent from France to the United States offices as a senior advisor

to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA

in the United States at the end of March 2004, without prior notice or explanation from the

Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the

Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr.

Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract

that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new

expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31,

2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President.

Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President,

EDFINA and Manager of the Project, retaining management responsibility for generation and

Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq

submitted her resignation based on written assurances from the Company that her continued

mission in the United States at EDFINA for another three years had been approved, and that she

would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four

years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management

of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq

possessed while she served as President, yet Mr. Nadal's starting salary as President was

$271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with

additional responsibility as compared to Mr. Nadal's position.   In addition, Mr. Nadal did not

possess the qualifications, educational background, training or experience in nuclear energy, or

in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications,

educational background, training and experience in nuclear energy, and specifically, in the

energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms.

Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created

an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment,

including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging

in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the

Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by

sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President

Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board

member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair

treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

information and belief, no steps were taken to investigate and address her complaints of

discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms.

Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso.

Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on

5

the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter

received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later;* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that

when she returned to France she would occupy a management position of higher responsibility

and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility

with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for

her complaints of discrimination, harassment and unfair treatment. By letter dated October 7,

2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and

experience, was a demotion in every respect, and reneged upon the previous agreement of Mr.

Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of

its breach of her expatriation and employment contract with the Company. After declining the

mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within

the EDF Human Resources department, requesting her presence at a meeting in France on

December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be

allowed to have assistance at the meeting, but only if her chosen representative was an employee

6

of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company

## ARGUMENT

Ms. Gaujacq properly served her First Set of Interrogatories and First Request for Production of Documents on EDF by first class mail on November 21, 2005. A copy of Plaintiff's First Set of Interrogatories is attached as Exhibit 1, a copy of Plaintiff's First Request for Production of Documents is attached as Exhibit 2, and a copy of the Plaintiff's Second Request for Production of Documents is attached as Exhibit 3. Responses were due on December 21, 2005. EDF requested, and received, extra time to serve the responses. EDF served objections and incomplete responses on January 3, 2006. *See* Exhibit 4, EDF's Response

7

to Plaintiff's First Set of Interrogatories and Exhibit 5, EDF's Response to Plaintiff's First and
Second Requests for Production of Documents. On January 23, 2006, Plaintiff sent a letter to
EDF's counsel requesting full and complete discovery responses and detailing the defects of
EDF's responses. *See* Exhibit 6, Letter from Ms. Bredehoft to Ms. Regal dated January 23,
2006. Defendant responded on January 30, 2006, indicating EDF's expectation that these
discovery disputes would be discussed during the in-person conference between all counsel
previously set for February 1, 2006. *See* Exhibit 7, Letter from Ms. Regal to Ms. Bredehoft
dated January 30, 2006. These discovery disputes were discussed on February 1, 2006 in person
and during conference calls held on February 9, 2006 and February 14, 2006. Despite these
discussions,[2] disputes remain. An Order compelling responses to these requests is, therefore,
both appropriate and warranted.

**I.     EDF's Response to Plaintiff's First Set of Interrogatories**

     A.     EDF's Failure to Specify Business Records Upon Which it Relies

     In Interrogatory Numbers 2, 3, 4, 6, 8-12, and 14-18, EDF references Federal Rules of
Civil Procedure, Rule 33(d), claiming that the burden is substantially the same for Ms. Gaujacq
as for EDF to obtain the answer from the documents.[3] Rule 33(d) provides that "Where an
answer to an interrogatory may be derived or ascertained from the business records of the party
upon whom the interrogatory has been served ..., and the burden of deriving ... the answer is

---

[2]  During these discussions, Plaintiff's previously filed motions to compel against EDFINA and
Mr. Nadal were also discussed.

[3]  It is noted that EDF's reference to Rule 33(d) roughly corresponds to the request by plaintiff to
specifically identify documents relied on or referenced in answering the interrogatory at issue, a
request about which EDF objected. To the extent EDF is simply referring to documents
generally, rather than specific documents, it may be more proper for EDF to simply delete its
references to Rule 33(d). As it is, Plaintiff is left to guess to what documents EDF is referring, if
any.

substantially the same for the party serving the interrogatory as for the party served, it is a

sufficient answer to such interrogatory to specify the records from which the answer may be

derived .... *A specification shall be in sufficient detail* to permit the interrogating party to

locate and to identify, as readily as can the party served, the records from which the answer may

be ascertained." Fed. R.Civ. P. 33(d) (emphasis added).

    Contrary to Rule 33(d), EDF failed to identify the specific document or documents to

which it referred at all, merely referencing documents produced generally.[4]  Accordingly, Ms.

Gaujacq is unable to review specific documents and ascertain the information on which EDF

relies for its response as is contemplated by Rule 33(d). Without such designation, the burden to

obtain the answer to the Interrogatories is clearly higher for Ms. Gaujacq.  However, even if

EDF designates the referenced documents as is required by Rule 33(d), it is unlikely that the

burden for ascertaining the answer to the interrogatories will be equivalent, particularly given

that many of the documents produced and likely to be referenced are in French.

    B.    EDF's Failures as to Specific Interrogatories

    In Interrogatory number 2, Plaintiff requests EDF to "describe fully the specific facts

within the knowledge of each witness and how that person came to possess such knowledge."

Exhibit 1 at 5. EDF responded by referencing its initial disclosures, which only vaguely and

generally describe each witness's knowledge. *See* Exhibit 8, Initial Disclosures of EDF at 2-5.

Plaintiff requires this information to ascertain which witnesses Plaintiff should depose, to

prepare for all depositions and to prepare for trial witnesses, particularly for those witnesses that

---

[4] In response to Interrogatory No. 14, in addition to referencing documents generally, EDF reference a "report of the auditors" without specifying the Bates numbers of that audit report. Exhibit 4 at 19.

Plaintiff is unable to depose. This is particularly important in light of the potential costs associated with many of the witnesses listed by EDF who currently reside outside of the United States.

In response to Interrogatory number 4, EDF states it is unaware of favorable attestations to Plaintiff's work performance. Exhibit 4 at 7. Plaintiff believes this is an incomplete response and does not reflect true diligence on the part of EDF in ascertaining the information sought. Plaintiff worked at EDF for over 20 years. It is highly unlikely that Ms. Gaujacq received no "compliments, commendations, awards, raises, promotions, or other favorable or laudatory comments or statements" regarding her job performance during her tenure. Exhibit 1 at 6. Furthermore, to the extent EDF is truly relying upon Rule 33(d) in their response to this interrogatory, it must specify the documents it references.

In Interrogatory number 5, Plaintiff asks for details concerning "each complaint any employee has made against any other employee of EDF in any management position, or against EDF itself, with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay,...." Exhibit 1 at 6. EDF, however, responds with only a statement regarding complaints against Mr. Nadal. Exhibit 4 at 7-8. However, Plaintiff requested information about all complaints made against management or EDF. Such information is relevant to show Defendant's continuing discriminatory intent and bad faith in discriminating against Plaintiff and to Plaintiff's allegations of retaliation and discriminatory treatment to the

extent Plaintiff's complaint were treated differently than those not in a protected class.[5] Further,

how EDF responded to other employees' complaints of discrimination and/or retaliation is

relevant to any claim it may make that it effectively enforces any policy on discrimination and/or

retaliation.

DC Courts clearly state that documents and information related to other employees is

discoverable. *See* Section II D., *infra.* While such documents may be limited by the Court (i) to

---

[5] The Supreme Court has made clear that other acts of discrimination, and the context in which such acts occur, are critical to an understanding of a hostile work environment:

> We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target . . . The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to . . . [determine what] a reasonable person in the plaintiff's position would find severely hostile or abusive.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 1003 (1998) (*quoting* Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993) (Ginsburg, J. concurring). *See also* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed 2d 106 (June 10, 2002), McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Harris v. Forklift Systems, Inc., 114 S.Ct. 367 (1993); *see also* White v. United States Catholic Conference, 1998 WL 429842 *5 (D.D.C. May 22, 1998); Robinson v. Runyon, 149 F.3d 507 (D.D.C. 1998); Miller v. Poretsky, 595 F.2d 780 (D.C. Cir.1978), Johnson v. The Washington Times, 2002 WL 1335239 (D.D.C. June 18, 2002)(a legitimate inference of motive or intent may be drawn from such evidence), Hairston v. WMATA, 1997 WL 411946 (D.D.C April 10, 1997); Webb v. Hyman, 861 F. Supp. 1094 (D.D.C. 1994); Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990) (allegation that supervisor "made inappropriate remarks to a number of hotel employees **other than the plaintiffs**" "suggests that an investigation might well have uncovered the problem," and is relevant to employer's liability) (emphasis added) (denying motion to dismiss); Dougherty v. Barry, 604 F. Supp. 1424, 1439 (D.D.C. 1985) (other acts of retaliation probative that a custom or policy of retaliation existed); Morris v. WMATA, 702 F.2d 1037 (D.C. Cir. 1983).

the same department or agency where Plaintiff worked, (ii) to a reasonable time before and after

the alleged discrimination, and (iii) by the same or similar decision-maker, this type of

information and documents are clearly relevant to claims such as those enumerated in the

Complaint. In this case, Ms. Gaujacq was a President of the subsidiary EDFINA, so the

department would include EDFINA and similarly situated managers, both within EDFINA and

within EDF. The temporal request would include at least some portion before and after Ms.

Gaujacq was EDFINA President, and the decision-maker, which EDF conveniently limits to Mr.

Nadal, would include Mr. Nadal, people in similar positions as Mr. Nadal, and all the other

decision-makers in EDF who chose to ignore Ms. Gaujacq's complaints about Mr. Nadal, chose

to break the agreement with Ms. Gaujacq regarding future employment with EDFINA and EDF,

and chose to demote Ms. Gaujacq. In response to Interrogatory No. 5, EDF has refused to

provide any information related to employees other than Ms. Gaujacq and Mr. Nadal, thereby

ignoring the clear rulings of the DC Circuit.

 While responding to Interrogatory number 6 with several performance problems

attributed to Ms. Gaujacq, EDF failed to give the details about these performance problems as

requested, including "all communications EDF has had with Ms. Gaujacq respecting each

such problem, including the date, the place, the persons present and the substance of the

communication; all efforts by the Company to improve Ms. Gaujacq's performance with respect

to each such performance problem; and, the specific damage the Company has suffered as a

result of such performance problem on the part of Ms. Gaujacq." Exhibit 1 at 6-7, Exhibit 4 at 8-

10. For example, EDF failed to provide specific details regarding Plaintiff's alleged failure to

"develop and apply sound financial and management procedures" and Plaintiff's alleged "poor

personnel administration." Exhibit 4 at 10. EDF also failed to provide specific details

supporting its contention that "EDF has discovered material errors in official EDF filings that Gaujacq made or permitted to be made during the time she served as President of EDF." *Id.* This information is clearly relevant to Ms. Gaujacq's claims. Furthermore, Plaintiff requires this detailed information, at the minimum, to determine whether any alleged reasons for the treatment of Ms. Gaujacq are pretextual.

In response to Interrogatory number 8, EDF failed to state "the names and addresses of all persons who investigated … any of Ms. Gaujacq's written or verbal complaints to EDF," failed to state the findings of any investigation noted and failed to identify documents discovered during such investigation. *See* Exhibit 1 and 7. EDF states that "All of Gaujacq's oral and written communications to EDF representatives in which she complained about actions Nadal in his position as President of EDFINA were given duly appropriate consideration by the persons to whom they were addressed." Exhibit 4 at 12. This is particularly troubling because, in its answer to the same interrogatory, EDFINA claimed it could not answer a portion of the interrogatory and objected, indicating that such question should be directed to EDF and its representatives who handled Ms. Gaujacq's complaints, including Mr. Ponasso, Mr. Creuzet and Mr. Lamethe. *See* Exhibit 9, EDFINA's Response to Plaintiff's First Set of Interrogatories at 12.

In response to Interrogatory number 9, EDF failed to state the details of the statement referenced, including "the names of all persons who heard the alleged statement" and the "place that the alleged statement was made." Exhibit 1 at 7. If the only individual who heard the statement was Mr. Bouron, EDF needs to affirmatively so state. *See* Exhibit 4 at 13.

D.    Number of Interrogatories

In response to Interrogatory Numbers 4, 6 and 8, described above, EDF objects on the ground that such interrogatories contain multiple interrogatories. Exhibit 4 at 7, 8, 11. EDF,

13

however, never specifies how many interrogatories it believes were propounded by Plaintiff nor does it specify which of the purportedly additional interrogatories it chose not to answer based upon this reasoning, if any.   If one seeks to claim that there are too many interrogatories, the solution is not to refuse to fully respond to <u>any</u> interrogatories and instead, challenge the number each time <u>any</u> response is challenged for deficiency, as was done here.

Plaintiff does not agree that she propounded more than the twenty-one numbered interrogatories. Federal Rules of Civil Procedure, Rule 33, provides that "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all *discrete* subparts, ...." Fed.R.Civ.P. 33 (emphasis added). Within each interrogatory, Plaintiff provides a detailed explanation of what information she expects from Defendant when answering the interrogatories. Such explanation only serves to clarify the actual interrogatory. It does not create separate, *discrete* subparts. In the definition section of her First Set of Interrogatories, Plaintiff defines the words "identify," "describe," or "detail" as well as the terms "relating to," "regarding," and "referring to." Exhibit 1 at 3. These definitions apply to all interrogatories. However, instead of simply relying on Defendant to read and apply these definitions, Plaintiff details the information required for each interrogatory. Accordingly, such explanation is not a separate, discrete subpart and Plaintiff has not exceeded the number of interrogatories she is allowed to propound. Even had Plaintiff exceeded twenty-five interrogatories, Rule 33 does not allow Defendant to simply chose to answer only portions of each interrogatory.

## II.    <u>EDF's Response to Plaintiff's First Request for Production of Documents</u>

### A.    <u>EDF's failure to comply with Rule 34(b)</u>

With respect to the Requests for Production of Documents, EDF failed to identify which documents are responsive to which requests. This is particularly troubling because Plaintiff has

no way of knowing whether EDF has produced documents responsive to each of the requests in that EDF agrees to produce responsive documents only "if they exist" in response to all but four documents requests (request number 2 of plaintiff's first request and request numbers 10, 13 and 18 of plaintiff's second request).[6] *See* Exhibit 5 at 4-35. EDF further complicates our analysis of the document production by stating in response to request number 17 of plaintiff's first requests and request numbers 6 and 11 of plaintiff's second request, that it will produce them only if they both exist and if they are in EDF's possession, leaving Plaintiff to guess whether any responsive documents have been produced. *See* Exhibit 5 at 9, 30, 32.

Pursuant to Federal Rules of Civil Procedure, Rule 34(b), a "party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." Fed.R.Civ.P. 34(b). Because EDF did not produce the documents as they are kept in the usual course of business, it was to organize and label the produced documents "to correspond with the categories in the request." EDF failed to comply with Rule 34(b) as to every request. While EDF claims that it produced the documents "as they were kept in the usual course of EDF's business," it is clear from the production of these 2600 plus documents (Bates nos. 1-1718 and 3500-4446) in a cardboard box without labels of any sort, that EDF's production is not in compliance with Rule 34(b) unless EDF keeps random and unrelated business records in cardboard boxes, which seems

---

[6] Such statement was made even in EDF's response to Plaintiff's requests for documents that clearly "exist," such as: (1) documents reflecting the "financial status of company for past two years" (Request No. 58) (2) "any business or annual report provided by the Company ... since 1996" (Request No. 59); and (3) "the audit report and recommendations" (Request No. 65). *See* Exhibit 5 at 25-26.

far-fetched at best.[7]  Because its production is not as the documents are kept in the usual course

of business, EDF must identify which documents are responsive to each document request.[8]

      B.      EDF's Inappropriate Limitation

      EDF further fails to comply with the Rules of Civil Procedure by attempting to limit its

production by its definition of relevant documents when its states in response to request numbers

8, 9, 17, 18 and 51 of plaintiff's first request and request number 17 or plaintiff's second request,

that it will produce responsive documents, "as regards matters alleged in the Complaint, if any

exist." Exhibit 5 at 6, 9-10, 22. Rule 26(b) defines the limits of discovery and what is relevant

for purposes of discovery. *See* Fed.R.Civ.P. 26(b). EDF has no basis to further limit its

---

[7] One example of the lack of order among the produced documents is documents that would
presumably be in Ms. Gaujacq's personnel file are both in the beginning of the production (bates
nos. 1-212, in various places throughout the production and again at the end of the first portion
of the production (1707-1718, which contain evaluations of Ms. Gaujacq). *See* I.N. Taube
Corporation v. Marine Midland Mortgage Corporation, 136 F.R.D. 449, 456 (W.D. N.C. 1991)
("The Court doubts very much whether Defendant complied with the command of Rule 34(b)
that documents be produced as kept in the usual course of business. It is certainly improbable
that Marine Midland routinely and haphazardly stores documents in a cardboard box. As such,
the Court believes the purposes of discovery, and basic considerations of fairness, require
Defendant to organize the documents produced on 1 October 1990 in a manner clearly indicating
which of these documents respond to Plaintiff's specific requests for production."); *see also*
Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., and Bridon American Corp., 174 F.R.D. 609,
630 (M.D. Pa. 1997) ("Andritz' response is unacceptable. It violates both the letter and the spirit
of Rule 34(b) ... Andritz did not present the documents to Bridon in the manner in which they
were kept in the ordinary course of business. They are in no discernable order. Nor are they
labeled or grouped in such a way that Bridon can ascertain without an extraordinary expenditure
of time and money which of the 130,000 individual pages pertain to issues relevant to the claims
against it."); Stiller v. Arnold et. al., 167 F.R.D. 68, 71 (N.D.I.N. 1996) ("... Rule 34(b) places
the obligation on the responding party to 'organize and label' the documents which are produced
for inspection. Producing 7,000 pages of documents in no apparent order does not comply with a
party's obligation under Rule 34(b).")

[8] In fact, Defendants made this same request of Plaintiff when she produced a disc of all
responsive documents for the Defendants' convenience. In response, Plaintiff printed the
documents on the disc, bates-stamped all documents and supplemented her discovery response to
include reference, by bates number, of all documents responsive to each document request.

discovery responses by its definition of what is relevant to the complaint.

      C.    <u>EDF's Unsupported Refusals to Produce Documents</u>

In response to Request No. 3 of the Plaintiff's First Request for Production of Documents, EDF refuses to produce responsive insurance policies "on the ground that it is not permitted by its insurers to release copies of their insurance policies without their consent, which has not been given." Exhibit 5 at 4. Plaintiff has requested that EDF explain on what this statement is based and detail EDF's actions in attempting to gain the insurers' consent and the current status of such requests for consent. EDF, however, has failed to provide any response or further explanation.

In response to Request No. 22 of Plaintiff's First Request for Production of Documents, EDF agrees to produce only those responsive documents "as regards Mr. Nadal, if any exist." Exhibit 5 at 11. Plaintiff is entitled to any and all documents reflecting any comparison made by EDF between Ms. Gaujacq and any other employee (past or present) of EDF, not just Mr. Nadal. *See* Section II.D., *infra*.

Request No. 26 of Plaintiff's First Request for Production of Documents asked that EDF "produce all documents reflecting the identity of and level of participation by any decision makers in the acts taken against Plaintiff which are the subject manner of this action." Exhibit 2 at 8. In response, EDF refuses to produce responsive documents on the grounds that the request "is vague, ambiguous, unduly burdensome, and is duplicative of other requests." Exhibit 5 at 13. Contrary to these assertions the request is clear, requesting any documents that reflect the identities (in addition to Mr. Nadal) of those EDF employees who chose to ignore Ms. Gaujacq's complaints about Mr. Nadal, chose to break the agreement with Ms. Gaujacq regarding future employment with EDF, and chose to demote Ms. Gaujacq and those EDF employees who

participated in the decision to give unequal and discriminatory pay to Ms. Gaujacq, all as alleged in the Complaint. None of EDF's objections justify its refusal to produce responsive documents.

In request number 70, Plaintiff asked for documents that EDF "gathered during the preparation of the defense of this action, including documents received as responses to subpoenae, voluntary requests for documents to outside parties, and internal document-gathering processes." Exhibit 2 at 15. While EDF objects on the grounds of attorney-work product doctrine and attorney-client privilege, EDF also seems to be refusing to produce documents it has received from third parties and documents gathered during its investigation into this matter. Exhibit 5 and 28. Such documents do not fall under either privilege cited and is clearly relevant and permitted under the Federal Rules of Civil Procedure.

In request number 72, Plaintiff requests documents that support any denial EDF had to Plaintiff's Request for Admissions. EDF refuses to produce such documents because the request is allegedly duplicative, beyond that which is required by the Federal Rules and protected by the work product doctrine. Exhibit 5 at 28. EDF does not, however, cite any Federal Rule in support of its position. None of its objections support a refusal to produce documents.

D.    EDF's Failure to Provide Documents Related to Other EDF Employees

EDF has refused to provide documents in response to the following requests on the grounds (among others) that this is not a pattern or practice claim or that such request is an unwarranted invasion of privacy of other employees: **Discovery Request Nos. 23** (performance evaluations for similar employees), **43** (names and addresses of employees), **44** (all complaints made against EDF and investigations related thereto), **45** (EEO-1 documents), **46** (comparative evidence), **52** (complaints and investigations), **54** (formal complaints), and **55** (any monitoring program). Exhibit 2 at 8, 11-13; Exhibit 5 at 11, 18-19, 22-24. However, EDF has not given

any legitimate bases for its objection. The conduct of the company with respect to similar other

employees is not only relevant, but also admissible. The United States Supreme Court has

spoken to this, as has the District of Columbia Courts. Specifically, the Supreme Court has made

clear that other acts of discrimination, and the context in which such acts occur, are critical to an

understanding of a hostile work environment:

> We have emphasized, moreover, that the objective severity of
> harassment should be judged from the perspective of a reasonable
> person in the plaintiff's position, considering "all the circumstances."
> In same-sex (as in all) harassment cases, that inquiry requires careful
> consideration of the social context in which particular behavior occurs
> and is experienced by its target . . . The real social impact of workplace
> behavior often depends on a constellation of surrounding circumstances,
> expectations, and relationships which are not fully captured by a simple
> recitation of the words used or the physical acts performed. Common
> sense, and an appropriate sensitivity to social context, will enable courts
> and juries to . . [determine what] a reasonable person in the plaintiff's
> position would find severely hostile or abusive.

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 1003 (1998)

(*quoting* Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993) (Ginsburg,

J. concurring)); *see also e.g.* Pleasants v. Allbaugh, Civil Action No. 00-3094, 2002 U.S. Dist.

Lexis 21777, *8 (D.C. Nov. 1, 2002).

The courts in the DC Circuit have clearly stated that documents and information related to other employees is discoverable.[9] While such documents may be limited by the Court (i) to the same department or agency where Plaintiff worked, (ii) to a reasonable time before and after the alleged discrimination, and (iii) by the same or similar decision-maker, this type of information and documents are clearly relevant to claims such as those enumerated in the Complaint. In this case, Ms. Gaujacq was a President of the subsidiary EDFINA, so the department would include EDFINA and similarly situated managers, both within EDFINA and within EDF. The temporal request would include at least some portion before and after Ms. Gaujacq was EDFINA President, and the decision-maker, which EDFINA conveniently limits to Mr. Nadal, would include Mr. Nadal, people in similar positions as Mr. Nadal, and all the other decision-makers in EDF who chose to ignore Ms. Gaujacq's complaints about Mr. Nadal, chose to break the agreement with Ms. Gaujacq regarding future employment with EDFINA and EDF, and chose to demote Ms. Gaujacq. In its responses, EDF has refused to produce any documents or information related to employees other than Ms. Gaujacq and Mr. Nadal, thereby ignoring the clear rulings of this district.

---

[9]  *See e.g.* White v. United States Catholic Conference, 1998 WL 429842 *5 (D.D.C. May 22, 1998); Robinson v. Runyon, 149 F.3d 507 (D.D.C. 1998); Miller v. Poretsky, 595 F.2d 780 (D.C. Cir.1978), Johnson v. The Washington Times, 2002 WL 1335239 (D.D.C. June 18, 2002)(a legitimate inference of motive or intent may be drawn from such evidence), Hairston v. WMATA, 1997 WL 411946 (D.D.C. April 10, 1997); Webb v. Hyman, 861 F. Supp. 1094 (D.D.C. 1994); Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990) (allegation that supervisor "made inappropriate remarks to a number of hotel employees **other than the plaintiffs**" "suggests that an investigation might well have uncovered the problem," and is relevant to employer's liability) (emphasis added) (denying motion to dismiss); Dougherty v. Barry, 604 F. Supp. 1424, 1439 (D.D.C. 1985) (other acts of retaliation probative that a custom or policy of retaliation existed); Morris v. WMATA, 702 F.2d 1037 (D.C. Cir. 1983).

Finally, with respect to EDF's refusal to produce documents or information related to other employees, it objects that such documents are irrelevant to Ms. Gaujacq's claims. In doing so, EDF completely ignores Ms. Gaujacq's claim of EDF's violation of the Equal Pay Act. Clearly, comparative information and documents related to other employees at EDF is essential and relevant to Ms. Gaujacq's claim pursuant to the Equal Pay Act as well as her other claims. Further, any issues regarding privacy can be addressed through the protective order already entered in this case.

**CONCLUSION**

Plaintiff's motion to compel should be granted. Plaintiff requests that EDF be required to respond fully and completely to all outstanding discovery requests no later than March 6, 2006, including delivering copies of all responsive pleadings and documents.

February 16, 2006                    Respectfully submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

21