IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ, | ) | |
| | ) | |
| Plaintiff, | ) | **ECF** |
| | ) | |
| v. | ) | Civil Action No. C5-969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., ELECTRICITE DE FRANCE, S.A., | ) | |
| and CHRISTIAN NADAL, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE OF DEFENDANT ELECTRICITE DE FRANCE, S.A. TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Electricité de France, S.A. ("EDF") hereby responds to Plaintiff's First Set of Interrogatories to Defendant Electricite de France, S.A.. ("EDF") (hereafter, "Plaintiff's First Interrogatories") pursuant to Rule 33 of the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

1.      EDF objects to every Interrogatory that uses the term "Company," defined by Plaintiff to mean a combined entity consisting of EDF and its subsidiary Defendant Electricité de France International North America, Inc. ("EDFINA"), on the ground that such term renders each such Interrogatory ambiguous. EDF and EDFINA are two separate companies.

2.      The responses herein are based upon information currently known to EDF after conducting a reasonable investigation and are given without prejudice to EDF's right to present as evidence additional facts which it may later discover or recall or which have been mistakenly omitted by it from the responses. EDF reserves the right to revise or supplement any objection or response at any time.

3.      EDF objects and responds on the basis of its understanding of and interpretation of the interrogatories in Plaintiff's First Interrogatories  If plaintiff understands or interprets any of the interrogatories in Plaintiff's First Interrogatories differently, EDF reserves the right to supplement any of these responses, either with additional objections or otherwise.

4.      EDF makes these objections and responses without waiving any right or privilege to object to the introduction in evidence, in this or any other action or proceeding, of any information contained in any answer, or documents identified and/or produced in response, to any of Plaintiff's First Interrogatories, upon the grounds of competency, relevancy, materiality, hearsay, authenticity, or any other ground.

5.      EDF objects to Plaintiff's First Interrogatories to the extent that they call for the disclosure of information that is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.      EDF objects to Plaintiff's First Interrogatories to the extent that they ask for information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other privilege, immunity or protection available under the law, and no such information will be disclosed.  EDF does not intend by these responses or objections to waive any claim of privilege or immunity.

7.      Inadvertent disclosure of any information subject to any applicable privilege or doctrine, including but not limited to the attorney-client privilege and the work product doctrine, is not intended to be, and shall not operate as, a waiver of any such privilege or doctrine, in whole or in part.  Nor is any such inadvertent disclosure intended to be, nor shall it constitute, a waiver of the right to object to any use of such information.

2

8.    EDF objects to Plaintiff's First Interrogatories to the extent that they violate any right of privacy that EDF may have, or the right to privacy of any other person or entity.

9.    EDF objects to Plaintiff's First Interrogatories to the extent that they call for information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Response to Plaintiff's First Request for Production of Documents, dated January 3, 2006 ("EDF's Document Response"), with substantially the same burden upon EDF as upon plaintiff, and to that extent EDF refers plaintiff to said documents.

10.    EDF objects to Plaintiff's First Interrogatories to the extent that the instructions, definitions or individual Interrogatories purport to impose obligations and requirements that are different from or more burdensome than the obligations and requirements imposed by the Federal Rules of Civil Procedure.

## SPECIFIC RESPONSES

Subject to and without waiver of the foregoing General Objections, which are hereby incorporated by reference into each of the following Specific Responses, EDF responds to Plaintiff's First Interrogatories as follows:

## INTERROGATORY NO. 1

Identify fully each witness to, or person you believe possesses any knowledge of any of the allegations in the pleadings, facts relevant to the claims or defenses asserted by the parties, any of the discovery responses from plaintiff or defendants in this action, or any damages claimed by the plaintiff.

## RESPONSE TO INTERROGATORY NO. 1

The persons who may possess knowledge of the matters described in this Interrogatory are identified in the parties' Initial Disclosures made pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 2

3

For each person identified in response to Interrogatory No. 1, please describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge. Identify all documents reflecting such facts or knowledge.

## RESPONSE TO INTERROGATORY NO. 2

EDF objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds that the knowledge of each person identified in response to Interrogatory No. 1 has been identified in the parties' Initial Disclosures.

## INTERROGATORY NO. 3

Identify and describe in detail all warnings, cautions, counseling, criticism, reprimands, adverse evaluations, adverse comments, or other adverse or critical comments, statements, or suggestions made or communicated to Ms. Gaujacq, or made or communicated to any person respecting Ms. Gaujacq, with respect to Ms. Gaujacq's job performance, whether written or oral, during Ms. Gaujacq's tenure with the Company. Please identify the date of the complaint and state whether the complaint was made before or after Mr. Nadal replaced Ms. Gaujacq as President of EDF. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 3

EDF objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and

4

without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

Gaujacq's job performance while she was serving as President of EDFINA was evaluated by Fernando Ponasso ("Ponasso"), the head of EDF's Americas Branch, who advised her that she needed to improve in the area of finances and business law. This remark is recorded in Gaujacq's March 2003 performance evaluation and again in her March 2004 performance evaluation.

Serge Massart, director of the Engineering Division of EDF, advised EDFINA that during the time period Gaujacq served as President of EDFINA, she was delinquent in providing information regarding NuStart Energy Development, LLC ("NuStart"). These delinquencies occurred prior to the assumption by Christian Nadal ("Nadal") of the position of President of EDFINA.

After Nadal's appointment to be EDF's Délégué Général to North America, but before he assumed the position of President of EDFINA, Gaujacq impeded the transition of leadership at EDFINA. Gerard Creuzet ("Creuzet"), the former Chief Operating Officer of EDF, advised Gaujacq in March 2004 that her failure to cooperate in the transition of leadership at EDFINA was unacceptable.

The SEPTEN Group, a subdivision of the EDF Engineering Division, noted Gaujacq's absence from a meeting in Lyon, France on June 21, 2004 and the fact that the group was thereby deprived of her information on NuStart. This occurred after Nadal had assumed the position of President of EDFINA. This criticism was noted in the minutes of that meeting, dated July 8, 2004.

5

Nadal advised Gaujacq of the need for her to meet with him to discuss what role and responsibilities she might have at EDF going forward and the need to improve her working methods and habits. Gaujacq failed to attend meetings scheduled with Nadal to discuss these matters

Nadal advised Gaujacq that her failure to maintain EDFINA documents and files at the EDFINA office was unacceptable and instructed her to return to the EDFINA office immediately all EDFINA documents that she maintained at her personal residence or on the EDFINA laptop computer she utilized or anywhere else. Nadal's instruction to Gaujacq was given in a meeting on July 12, 2004, confirmed by an e-mail of July 12, 2004 and repeated in another e-mail of July 16, 2004.

Nadal advised EDF of Gaujacq's failure to facilitate the immigration and relocation process for his relocation from France to Washington, D.C.; of her having given incorrect information about Nadal's position to EDF office personnel and to the immigration lawyer handling Nadal's visa application; and of her habitual failure to come to the EDF office for work. Nadal made these comments before and after the time he assumed the position of President of EDF.

Nadal advised EDF of Gaujacq's failure to attend scheduled meetings with Nadal, the American Nuclear Society ("ANS") and SEPTEN; and of her interference with the transition from Gaujacq to Georges Servière as EDF's first representative to NuStart. Nadal made theses comments after he had assumed the position of President of EDF.

From July 2004 until the termination of Gaujacq's employment at EDF, EDF representatives advised Gaujacq that it was unacceptable for her to refuse to follow the direction

6

of EDF to return to France and take the position offered to her upon the expiration of her mission in the United States.

## INTERROGATORY NO. 4

Identify and describe in detail all compliments, commendations, awards, raises, promotions, or other favorable or laudatory comments or statements made or communicated to Ms. Gaujacq, or made or communicated to any person respecting Ms. Gaujacq, with respect to Ms. Gaujacq's job performance, whether written or oral, during Ms. Gaujacq's tenure with the Company. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 4

EDF objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds that it is unaware of any comments or statements of the type described in this Interrogatory.

## INTERROGATORY NO. 5

Describe each complaint any employee has made against any other employee of EDF in any management position, or against EDF itself, with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay, whether written or oral, internally to any  EDF managerial or supervisory employee, or with any outside administrative agency from 1995 to the present. With respect to each complaint, describe fully each investigation or action taken by the Company and the final result of each such complaint. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 5

EDF objects to this Interrogatory on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that plaintiff's

7

claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees. Notwithstanding and without waiving this or any other objections, EDF states that there have been no complaints of the type described in this Interrogatory made against Nadal during his tenure with EDF other than the complaint in this litigation.

## INTERROGATORY NO. 6

If the Company contends Ms. Gaujacq had performance problems while working at EDF, please describe fully each specific performance problem; all facts upon which you rely in so identifying this problem, including all persons who have so stated; all communications EDF has had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by the Company to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage the Company has suffered as a result of such performance problem on the part of Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 6

EDF objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. EDF further objects to this Interrogatory on the ground that it contains multiple interrogatories. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents, refers plaintiff to its response to Interrogatory No. 3 and otherwise responds that Gaujacq had numerous performance problems, including without limitation, the following:

1.    Undermining the Leadership Transition at EDFINA

Gaujacq failed to facilitate and worked to undermine the leadership transition at EDFINA following the appointment of Nadal in 2004 by the President of EDF to be EDF's Délégué Général to North America. She incorrectly informed EDFINA employees, EDF

8

delegates working at the EDFINA office and the immigration lawyer handling Nadal's visa application that Nadal's role would be that of a gas analyst and that her role would be unchanged. Gaujacq provided inaccurate information that complicated Nadal's visa application, and she frustrated efforts to obtain suitable housing for Nadal and his family. Gaujacq's failure to acknowledge Nadal's role as EDF's Délégué Général to North America, and her active undercutting of his role, engendered confusion and required extensive time and attention from EDF employees, EDFINA employees and Nadal.

From at least the time of Nadal's arrival in Washington, D.C. to assume his role as EDF's Délégué Général to North America, Gaujacq failed and refused to develop an effective working relationship with Nadal, failed to meet with Nadal for months and failed even to attend scheduled meetings with him in June 2004 to discuss her role and responsibilities at EDFINA.

### 2.    Failure to Report to Work

EDF directed Gaujacq to return to France following the expiration of her mission in the United States and to report to her new position in France on November 2, 2004, but she failed to do so.

Gaujacq habitually did not present herself at the offices of EDFINA and thereby required that all business communications be redirected to her at her residence. Gaujacq appeared at EDFINA's office only one day in June 2004 and one day in July 2004.

Gaujacq failed to attend business meetings, including an ANS conference in Pittsburgh, Pennsylvania in June 2004 and an EDF conference in Lyon, France in June 2004.

### 3.    Failure to Preserve and Maintain EDFINA Property

Gaujacq failed to maintain EDFINA documents at EDFINA's office. She failed and refused to return EDFINA documents to EDFINA's office when instructed to do so by

9

Nadal. Her failure to do so caused EDFINA to undertake the task of reconstructing EDFINA files that had been under her control. After being instructed to return all EDFINA corporate documents to the EDFINA office, including documents stored on EDFINA's laptop computer that she utilized, plaintiff deliberately destroyed significant portions of the contents of her EDFINA laptop prior to returning it to the corporation. Due to Gaujacq's failure to return to EDFINA all documents and other data maintained on the EDFINA laptop she utilized, and her subsequent destruction of most of the data on such laptop prior to her return of the laptop to EDFINA, EDFINA has lost data that had been maintained on said laptop. See also EDF's Response to Interrogatory No. 3.

4. Failure to Develop and Apply Sound Financial and Management Procedures

The EDF audit process in July 2004 and the findings of the EDF audit revealed that Gaujacq failed during her term of service as President of EDFINA to develop and apply sound financial and management procedures. Gaujacq demonstrated poor personnel administration while serving as President of EDFINA, and poorly administered the offices of EDFINA, including but not limited to its record-keeping and information technology systems. She repeatedly stated that the offices of EDFINA were unsafe and unprepared to receive and house confidential materials when such conditions were within her own area of responsibility. EDFINA has discovered material errors in official EDF filings that Gaujacq made or permitted to be made during the time she served as President of EDFINA.

The discovery of Gaujacq's performance problems is ongoing, and EDF reserves the right to supplement this Response if additional performance problems come to light.

**INTERROGATORY NO. 7**

Describe the policies, practices, and procedures to be followed by any employee making a complaint against EDF or any other employee of EDF with respect to gender

10

discrimination or retaliation and/or unequal, unfair or inappropriate treatment, whether written or oral, internally or with any outside administrative agency, and the manner by which an internal or outside investigation of such a complaint is triggered and conducted, including any investigative steps to be taken.

## RESPONSE TO INTERROGATORY NO. 7

EDF objects to this Interrogatory on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. EDF further objects to this Interrogatory on the grounds that it is overbroad and vague. Notwithstanding and without waiving these or any other objections, EDF responds as follows:

Employees of EDF are entitled to address any complaints they may have as to any matters described in this Interrogatory to the Délégué Ethique of EDF in Paris, whose function is to investigate and attempt to mediate any such complaints.

## INTERROGATORY NO. 8

State the names and addresses of all persons who investigated any of the allegations contained in the pleadings (at any time prior to the filing of this suit relating in anyway to Ms. Gaujacq), or in any of Ms. Gaujacq's written and verbal complaints to EDF, including, but not limited to Ms. Gaujacq's email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member; her verbal complaints in June and July, 2004, to Mr. Nadal; Ms. Gaujacq's July 9, 2004 formal complaint emailed to Mr. Ponasso, Chairman of EDFINA; Ms. Gaujacq's July 22, 2004 email to Mr. Nadal; and Ms. Gaujacq's email to Mr. Creuzet, the COO of EDF, and to Mr. Ponasso, Chairman of EDFINA and President of EDF Branch Americas, asking that the Company confirm that it would take corrective and remedial measures to prevent further discriminatory, harassing and unfair conduct by Mr. Nadal. For each such investigation, please state the findings, and identify all documents produced during the investigation. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 8

EDF objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDF further objects to this Interrogatory on the ground that it is confusing and ambiguous in its use of the terms "investigations" and "findings," without definition, in the context of the communications described in this

11

Interrogatory. EDF further objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, or other applicable privileges, in that it does not exclude "investigations," as described therein, occurring after plaintiff's institution of legal proceedings before the United States Equal Employment Opportunity Commission ("EEOC"). EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

An investigation was conducted into Gaujacq's complaint submitted on December 18, 2004 to EDF's Délégué Ethique. This investigation was conducted by Michel Guibert, the Délégué Ethique. There were no findings resulting from this investigation. The investigation was terminated because Gaujacq proceeded to assert her complaint through legal process.

None of Gaujacq's other communications constituted a complaint that would trigger an investigation. All of Gaujacq's oral and written communications to EDF representatives in which she complained about actions taken by Nadal in his position as President of EDFINA were given duly appropriate consideration by the persons to whom they were addressed.

Gaujacq's complaints made directly to Nadal were responded to directly by Nadal. Nadal responded to Gaujacq by e-mail dated July 23, 2004, advising her that her complaint about allegedly unfair treatment by him, as stated in her e-mail to him of July 22, 2004, was unfounded. Nadal had previously had one conversation with Gaujacq in June, 2004 in which they discussed a change in her check-signing authority following her resignation from the

12

position of President of EDF, a matter of which she now complains, but at that time Gaujacq did

not allege any discrimination in connection therewith.

## INTERROGATORY NO. 9

If you contend Ms. Gaujacq made any statement which is against her interest, state the nature of such statement, the names of all persons who heard the alleged statement, and the date and place that the alleged statement was made. Identify all documents reflecting your response to this interrogatory

## RESPONSE TO INTERROGATORY NO. 9

EDF objects to this Interrogatory on the grounds that it is premature at this stage

of the litigation and that it calls for the identification of documents and other information that

may be derived or ascertained from the documents produced by EDF pursuant to EDF's

Document Response, with substantially the same burden upon EDF as upon plaintiff, and EDF

refers plaintiff to said documents. Notwithstanding and without waiving this or any other

objections, EDF responds as follows:

On December 10, 2004 Gaujacq told Jacques Bouron ("Bouron"), EDF's

Directeur à la Direction Développement des Dirigeants and formerly head of career management

in EDF's Energy Branch, that she intended to do everything she could to harm EDF.

## INTERROGATORY NO. 10

Please state all reasons why Ms. Gaujacq was removed from her position as President of EDFINA and replaced by Mr. Nadal. Identify all documents reflecting your response to this interrogatory

## RESPONSE TO INTERROGATORY NO. 10

EDF objects to this Interrogatory on the ground that it calls for the identification

of documents and other information that may be derived or ascertained from the documents

produced by EDF pursuant to EDF's Document Response, with substantially the same burden

upon EDF as upon plaintiff. Notwithstanding and without waiving this or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

Gaujacq's term in the United States had expired, and Nadal was EDF's selected successor for the following term. Gaujacq's position as President of EDFINA was, from the beginning of her assignment, limited to her three-year term as EDF's Déléguée Générale to North America. The position was linked to her expatriation contract with EDF ("Conditions Particulières de la Mission de Longue Durée de Catherine Gaujacq à Washington, D.C."), which had a three-year term, running from August 1, 2000 through July 31, 2003, with a possible one-year extension. Prior to the expiration of her three-year term, her expatriation contract was extended for one additional year, but there was no express extension of her tenure as President of EDFINA.

Nadal was appointed by EDF in January 2004 as EDF's Délégué Général to North America and succeeded to the position of President of EDFINA in due course, as of June 1, 2004.

### INTERROGATORY NO. 11

Please state all reasons why Mr. Nadal received a higher salary for the position of President of EDFINA that Ms. Gaujacq had received in the same position. Identify all documents reflecting your response to this interrogatory.

### RESPONSE TO INTERROGATORY NO. 11

EDF objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving this or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

The salaries of Nadal and of Gaujacq, as EDF employees, were determined according to their ranking and employee classification within EDF. Nadal's rank has been "R-1," the highest ranking, during the time he has served as President of EDFINA, and Gaujacq's rank was "R-3" during the time she served as President of EDFINA. The rank which an EDF employee has achieved determines a fixed salary range that an employee in that rank may receive for any position. In addition, the responsibilities of the position of President of EDFINA increased at the time Nadal assumed the position, consistent with EDF's expansion of its role and presence in North America as it moved toward privatization.

## INTERROGATORY NO. 12

Please compare and contrast the responsibilities and daily duties of Mr. Nadal and Ms. Gaujacq in the position of President of EDFINA. (For example, what responsibilities are the same, and what responsibilities, if any, held by either Mr. Nadal or Ms. Gaujacq were not held by the other person in the position of President of EDF.) Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 12

EDF objects to this Interrogatory on the ground that it purports to require a greater obligation than is required by the Federal Rules of Civil Procedure in its requirement to "compare and contrast." EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waving these or any other objections, EDF refers to said documents and otherwise responds as follows:

Upon his appointment by EDF in 2004 to be EDF's new Délégué Général to North America, Nadal was charged by the EDF President with the responsibility of expanding the role and presence of EDF in North America. Consistent with this expansion, Nadal is

15

responsible for exploring financial and commercial opportunities for EDF in North America compatible with the needs and plans of EDF as it has proceeded from a government-owned entity in France to a publicly held company.

Nadal is responsible for maintaining high-level contacts with United States authorities and academics in the energy field, including but not limited to the following: the United States Nuclear Regulatory Commission; the Federal Energy Regulatory Commission; the National Academy of Sciences; the United States Environmental Protection Agency; the United States Senate; the United States House of Representatives; the United States Department of Energy; the Commodities Futures Trading Commission; the Massachusetts Institute of Technology; the Nuclear Energy Institute; the Edison Electric Institute; the Electric Power Research Institute; and various utility companies in the United States. Mr. Nadal has been invited to deliver speeches and/or to organize and chair panels on nuclear energy, including an October, 2005 European Institute with panels of Undersecretaries and other members of the United States administration, Ambassadors, and various think tanks, and on Electricity Trading at a September, 2005 annual meeting of the CFTC in Chicago.

Nadal is also responsible for expanding EDF's role in Canada and maintains the position of associate of the Industrial Board of Electricity of Quebec.

Nadal is frequently in contact with the French Embassy and the French Ambassador and also welcomes delegations to the United States from France, including Ministers, members of Parliament, and various corporate delegations. In France Nadal makes speeches in meetings of EDF's top executives in Paris and maintains contact with Chairmen and Commissioners of top authorities in the energy field in France (including the French equivalents of FERC, DOE and Nuclear Waste Management Authority, Parliament.).

16

Nadal is also called upon from time to time to represent the President of EDF at meetings or conferences in the United States and in France when the President of EDF is unable to attend.

Nadal has primary responsibility for EDF's role in the NuStart program, communicating with EDF to advise and consult with them regarding EDF activities, and providing information about EDF to United States capital markets in respect of EDF's initial public stock offering. In addition, Nadal is responsible for the management of EDF, directing all business activities.

When Gaujacq served as President of EDF, she was responsible for the management of EDF, directing all business activities including hiring and firing clerical, accounting and technical staff, retaining and coordinating the work of outside contractors and consultants supplying services to EDF, and working in close collaboration with leaders of United States electrical utilities for the purpose of building and strengthening ties between the United States and French energy industries and undertaking collaborative research and development at a highly advanced level. She was responsible for establishing and maintaining contacts with leaders of electrical utility companies in the United States and Canada. She also served as EDF's first representative to NuStart.

## INTERROGATORY NO. 13

Please describe in detail all reasons why Ms. Gaujacq's new contract and mission statement were never signed and/or delivered to her.

## RESPONSE TO INTERROGATORY NO. 13

EDF objects to this Interrogatory on the ground that it is incorrect in its fundamental assumption. Notwithstanding and without waiving this or any other objections, EDF responds as follows:

17

Gaujacq did not have any "new contract or mission statement " At Gaujacq's request, EDF permitted her to remain in the United States for up to one additional year following the expiration of her initial three-year term as EDF's Déléguée Générale to North America. After Nadal was appointed EDF's Délégué Général to North America in January 2004, EDF accommodated Gaujacq's request to consider permitting her to remain in the United States in some capacity. EDF did so by permitting Gaujacq to propose a role and position for herself at EDFINA that would, if acceptable to EDF, permit her to remain in the United States for an additional period of time to be agreed upon with EDF. At the same time, Gaujacq was offered a position at EDF's Energy Branch in France. Gaujacq proposed a position in which she would represent EDFINA at NuStart but would report to EDF's Energy Branch instead of to Nadal in EDF's Americas Branch. She refused to accept any position in which she would be required to report to Nadal. Although EDF considered Gaujacq's proposed new mission in the United States, ultimately EDF President François Roussely refused to create an extraordinary reporting line for Gaujacq outside of the Americas Branch, and, thus, no extended position for Gaujacq in the United States was agreed upon between EDF and Gaujacq.

## INTERROGATORY NO. 14

Please describe in detail all reasons why Mr. Nadal requested the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President in or about June, 2004. Please describe any findings and/or conclusions of the audit Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 14

EDF objects to this Interrogatory on the ground that it is incorrect in its fundamental assumption. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from

the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents, and in particular, the report of the auditors as to their findings, and otherwise responds that Nadal did not request EDF auditors to come to the United States offices of EDFINA for a special audit.

## INTERROGATORY NO. 15

Please describe in detail all reasons for the Company's directive removing Ms. Gaujacq from her position on the Project with EDFINA in the United States. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 15

EDF objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving this or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

Gaujacq's mission in the United States expired on July 31, 2004, and Gaujacq and EDF had been unable to agree upon a subsequent mission for Gaujacq which would permit her to remain in the United States, as she had requested, for the reasons set forth in EDF's Response to Interrogatory No. 13. Following the expiration of Gaujacq's mission in the United States, EDFINA notified the members of NuStart of Gaujacq's replacement by Georges Servière as EDFINA's first representative to NuStart.

## INTERROGATORY NO. 16

Please describe in detail all reasons for the Company's directive for Ms. Gaujacq to return to France immediately, without an assigned position. Identify all documents reflecting your response to this interrogatory.

19

### RESPONSE TO INTERROGATORY NO. 16

EDF objects to this Interrogatory on the ground that it is incorrect in its fundamental assumption. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

EDF directed Gaujacq to return to France because her mission in the United States had expired and because EDF had an important new position in France that it wanted her to fill. The new position was that of Chief of EDF's new project in European Pressurized Water Reactors ("EPR"). Gaujacq was afforded three months after the expiration of her mission in the United States to effectuate her relocation to France.

### INTERROGATORY NO. 17

Please describe in detail reasons for Ms. Gaujacq receiving only four days' notice that her mission in the United States would end. Please include in your answer the identity of other employees of the Company who received less than three months' notice of the impending end of their mission in the United States. Identify all documents reflecting your response to this interrogatory.

### RESPONSE TO INTERROGATORY NO. 17

EDF objects to this Interrogatory to the extent it seeks information as to other EDF employees on the ground that it is overbroad, unduly burdensome and calls for information that is not relevant or reasonably likely to lead to the discovery of admissible evidence. EDF further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon

20

plaintiff. Notwithstanding and without waiving these or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

Gaujacq had at least one year's notice that her mission in the United States expired by its terms on July 31, 2004. Gaujacq's refusal to accept any new mission in the United States where she would report to Nadal removed any reasonable possibility for her to continue working in the United States for EDF beyond the expiration of her mission. Her refusal became explicit in her letter to Messrs. Creuzet, Laroche and Ponasso dated July 25, 2004, and EDF notified her in Creuzet's letter dated July 27, 2004 that she was required to return to France following the expiration of her mission on July 31, 2004, but that she would have an additional three months in which to arrange for her relocation to France.

## INTERROGATORY NO. 18

Please describe in detail all representations made to Ms. Gaujacq, either verbally or in writing, regarding her future employment by EDF or EDFINA in the United States or in France, both before Mr. Nadal became President of EDF and after. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 18

EDF objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff. Notwithstanding and without waiving this or any other objections, EDF refers plaintiff to said documents and otherwise responds as follows:

In January 2004, Creuzet advised Gaujacq that she would be permitted to stay in the United States at EDFINA, as she had requested, through July 2004 and told her to contact the Energy Branch as to the availability of a position for her in that Branch thereafter.

21

In or about January 2004, Ponasso advised Gaujacq that she could stay in the United States at EDFINA, as she had requested, through July 2004, during which time she would continue to work on NuStart and assist Nadal in his transition to the leadership of EDFINA.

In or about March 2004, Creuzet advised Gaujacq that he would review her proposal for a new mission and contract that would permit her to remain in the United States in some capacity following the expiration of her then present mission on July 31, 2004. Gaujacq sent Creuzet a proposed new contract and mission, but that proposal was never approved by EDF.

In or about April and May 2004, Creuzet advised Gaujacq that EDF would consider a mission for Gaujacq in which she would continue to work on NuStart in the United States while reporting to the Energy Branch, but ultimately this possibility was rejected by EDF President François Roussely, who refused to create an extraordinary reporting relationship for Gaujacq outside the Americas Branch.

In or about May 2004, Bruno Lescoeur, head of EDF's Energy Branch, offered to Gaujacq a new position in France in which she would lead a new project of EDF to create a new class of nuclear reactors called European Pressurized Water Reactors (EPR) and develop protocols for the operation and organization of such reactors.

By letter dated August 24, 2004, Lescoeur advised Gaujacq that she had been appointed as of August 1, 2004 to the position of Chargée de Mission reporting to the Director of the Nuclear Production Division of the Energy Branch. By letter dated September 24, 2004, Laurent Stricker, the Director of EDF's Nuclear Division, provided Gaujacq with a mission statement for her new position in the Energy Branch as the chief of EDF's EPR project. Gaujacq refused this position.

## INTERROGATORY NO. 19

For each Request for Admission you deny, either in whole or in part, please describe all facts upon which you base, or which support, any such denial.

## RESPONSE TO INTERROGATORY NO. 19

EDF objects to this Interrogatory on the ground that it violates the limit on number of interrogatories permitted to the plaintiff in that Plaintiff's Request for Admissions to EDF consists of 253 separate requests, and this Interrogatory in effect seeks interrogatory responses as to every one of EDF's responses to those requests in which EDF denied the request. Notwithstanding and without waiving these and any other objections, EDF responds that all denials in EDF's Response to Plaintiff's First Request for Admissions were made either because EDF was unable, after reasonable inquiry, to admit or deny the facts asserted or because EDF did not know the facts asserted to be true or knew them to be untrue.

Dated: January 3, 2006

As to objections:

HOGUET NEWMAN & REGAL, LLP

By:_____/s/_____
Laura B. Hoguet, D.C. Bar No.200915
10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Defendant Electricité de France, S.A.*

23

## DECLARATION OF VERIFICATION

I, Patrick de Botherel, Directeur des Rémunerations des Dirigeants, Direction Développement des Dirigeants, of Electricité de France, S.A. ("EDF"), have reviewed the foregoing Responses to Plaintiff's First Set of Interrogatories to Defendant Electricité de France, S.A. (the "Interrogatories"). To the best of my knowledge, the facts contained in EDF's answers to the Interrogatories are correct.

Pursuant to 28 U.S.C, Section 1746, I make this declaration under penalty of perjury under the laws of the United States.

Patrick de Botherel
Directeur des Rémunerations des Dirigeants,
Direction Développement des Dirigeants
Electricité de France, S.A.

Dated: January 3, 2006

24

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing RESPONSE OF DEFENDANT ELECTRICITE DE FRANCE, S.A. TO PLAINTIFF'S FIRST SET OF INTERROGATORIES' by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on January 3, 2006

      Elaine Charlson Bredehoft (ebredehoft@charlsonbredehoft.com)
      Kathleen Z. Quill
      CHARLSON BREDEHOFT & COHEN, P.C.
      11260 roger Bacon Drive
      Suite 201
      Reston, Virginia 20190
      (703) 318-6800

      With a courtesy copy by electronic mail as follows:

      Ronald S. Cooper (rcooper@steptoe.com)
      David Clark (dclark@steptoe.com)
      STEPTOE & JOHNSON
      1330 Connecticut Avenue NW
      Washington, DC 20036
      (202) 429-3000

      Counsel for Defendant Christian Nadal

DOROTHEA W. REGAL