IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ, | ) | |
| | ) | |
| Plaintiff, | ) | **ECF** |
| | ) | |
| v. | ) | Civil Action No. C5-969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., ELECTRICITE DE FRANCE, S.A. | ) | |
| and CHRISTIAN NADAL, | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE OF DEFENDANT ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC. TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant Electricité de France International North America, Inc. ("EDFINA") hereby responds to Plaintiff's First Set of Interrogatories to Defendant Electricité de France International North America, Inc. ("EDFINA") (hereafter, "Plaintiff's First Interrogatories") pursuant to Rule 33 of the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

1.      EDFINA objects to every Interrogatory that uses the term "Company," defined by Plaintiff to mean a combined entity consisting of EDFINA and its parent company in France, Defendant Electricité de France, S.A. ("EDF"), on the ground that such term renders each such Interrogatory ambiguous. EDFINA further objects to each Interrogatory that seeks information as to EDF which is not known or reasonably ascertainable by EDFINA. EDF and EDFINA are two separate companies. EDFINA cannot and does not purport to respond to Plaintiff's First Interrogatories for EDF.

2.     The responses herein are based upon information currently known to EDFINA after conducting a reasonable investigation and are given without prejudice to EDFINA's right to present as evidence additional facts which it may later discover or recall or which have been mistakenly omitted by it from the responses. EDFINA reserves the right to revise or supplement any objection or response at any time.

3.     EDFINA objects and responds on the basis of its understanding of and interpretation of the interrogatories in Plaintiff's First Interrogatories. If plaintiff understands or interprets any of the interrogatories in Plaintiff's First Interrogatories differently, EDFINA reserves the right to supplement any of these responses, either with additional objections or otherwise.

4.     Defendant EDFINA makes these objections and responses without waiving any right or privilege to object to the introduction in evidence, in this or any other action or proceeding, of any information contained in any answer, or documents identified and/or produced in response, to any of Plaintiff's First Interrogatories, upon the grounds of competency, relevancy, materiality, hearsay, authenticity, or any other ground.

5.     Defendant EDFINA objects to Plaintiff's First Interrogatories to the extent that they call for the disclosure of information that is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.     Defendant EDFINA objects to Plaintiff's First Interrogatories to the extent that they ask for information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other privilege, immunity or protection available under the law, and no such information will be disclosed. EDFINA does not intend by these responses or objections to waive any claim of privilege or immunity.

2

7.      Inadvertent disclosure of any information subject to any applicable privilege or doctrine, including but not limited to the attorney-client privilege and the work product doctrine, is not intended to be, and shall not operate as, a waiver of any such privilege or doctrine, in whole or in part. Nor is any such inadvertent disclosure intended to be, nor shall it constitute, a waiver of the right to object to any use of such information.

8.      Defendant EDFINA objects to Plaintiff's First Interrogatories to the extent that they violate any right of privacy that EDFINA may have, or the right to privacy of any other person or entity.

9.      Defendant EDFINA objects to Plaintiff's First Interrogatories to the extent that they call for information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Response to Plaintiff's First Request to Produce Documents, dated December 12, 2005 ("EDFINA's Document Response"), with substantially the same burden upon EDFINA as upon plaintiff, and to that extent EDFINA refers plaintiff to said documents.

10.      Defendant EDFINA objects to Plaintiff's First Interrogatories to the extent that the instructions, definitions or individual Interrogatories purport to impose obligations and requirements that are different from or more burdensome than the obligations and requirements imposed by the Federal Rules of Civil Procedure.

## SPECIFIC RESPONSES

Subject to and without waiver of the foregoing General Objections, which are hereby incorporated by reference into each of the following Specific Responses, EDFINA responds to Plaintiff's First Interrogatories as follows:

3

## INTERROGATORY NO. 1

Identify fully each witness to, or person you believe possesses any knowledge of any of the allegations in the pleadings, facts relevant to the claims or defenses asserted by the parties, any of the discovery responses from plaintiff or defendants in this action, or any damages claimed by the plaintiff.

## RESPONSE TO INTERROGATORY NO. 1

The persons who may possess knowledge of the matters described in this Interrogatory are identified in the parties' Initial Disclosures made pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 2

For each person identified in response to Interrogatory No. 1, please describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge. Identify all documents reflecting such facts or knowledge.

## RESPONSE TO INTERROGATORY NO. 2

EDFINA objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that the knowledge of each person identified in response to Interrogatory No. 1 has been identified in the parties' Initial Disclosures.

## INTERROGATORY NO. 3

Identify and describe in detail all warnings, cautions, counseling, criticism, reprimands, adverse evaluations, adverse comments, or other adverse or critical comments, statements, or suggestions made or communicated to Ms. Gaujacq, or made or communicated to any person respecting Ms. Gaujacq, with respect to Ms. Gaujacq's job performance, whether written or oral, during Ms. Gaujacq's tenure with the Company. Please identify the date of the

4

complaint and state whether the complaint was made before or after Mr. Nadal replaced Ms. Gaujacq as President of EDFINA. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 3

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF in that the time period it purports to cover is Gaujacq's tenure of employment with EDF and is not limited to the time period she served as President and/or Vice President of EDFINA. EDFINA further objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds as follows:

EDFINA was advised by Serge Massart, director of the Engineering Division of EDF, that during the time period Gaujacq served as President of EDFINA, she was delinquent in providing information regarding NuStart Energy Development, LLC ("NuStart"). These delinquencies occurred prior to the assumption by Christian Nadal ("Nadal") of the position of President of EDFINA.

The SEPTEN Group, a subdivision of the EDF Engineering Division, noted Gaujacq's absence from a meeting in Lyon, France on June 21, 2004 and the fact that the group was thereby deprived of her information on NuStart. This occurred after Nadal had assumed the position of President of EDFINA.

5

Nadal advised Gaujacq, in a telephone conversation on June 11, 2004, of the need for her to meet with him to discuss what role and responsibilities she might have at EDFINA going forward and the need to improve her working methods and habits. Gaujacq failed to attend meetings scheduled with Nadal to discuss these matters.

Nadal advised Gaujacq that her failure to maintain EDFINA documents and files at the EDFINA office was unacceptable and instructed her to return to the EDFINA office immediately all EDFINA documents that she maintained at her personal residence or on the EDFINA laptop computer she utilized or anywhere else. Nadal's instruction to Gaujacq was given in a meeting on July 12, 2004, confirmed by an e-mail of July 12, 2004 and repeated in another e-mail of July 16, 2004.

Nadal advised EDF of Gaujacq's failure to facilitate the immigration and relocation process for his relocation from France to Washington, D.C.; of her having given incorrect information about Nadal's position to EDFINA office personnel and to the immigration lawyer handling Nadal's visa application; and of her habitual failure to come to the EDFINA office for work. Nadal made these comments before and after the time he assumed the position of President of EDFINA.

Nadal advised EDF of Gaujacq's failure to attend scheduled meetings with Nadal, Nadal and Georges Servière, the American Nuclear Society ("ANS") and SEPTEN; and of her interference with the transition from Gaujacq to Georges Servière as EDFINA's first representative to NuStart. Nadal made theses comments after he had assumed the position of President of EDFINA.

## INTERROGATORY NO. 4

Identify and describe in detail all compliments, commendations, awards, raises, promotions, or other favorable or laudatory comments or statements made or communicated to

6

Ms. Gaujacq, or made or communicated to any person respecting Ms. Gaujacq, with respect to Ms. Gaujacq's job performance, whether written or oral, during Ms. Gaujacq's tenure with the Company. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 4

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF in that the time period it purports to cover is Gaujacq's tenure of employment with EDF and is not limited to the time period she served as President and/or Vice President of EDFINA. EDFINA further objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that it is unaware of any comments or statements of the type described in this Interrogatory.

## INTERROGATORY NO. 5

Describe each complaint any employee has made against any other employee of EDFINA in any management position, or against EDFINA itself, with respect to gender discrimination, retaliation, and/or unequal, unfair or inappropriate treatment, or unequal pay, whether written or oral, internally to any EDFINA managerial or supervisory employee, or with any outside administrative agency from 1995 to the present. With respect to each complaint, describe fully each investigation or action taken by the Company and the final result of each such complaint. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 5

EDFINA objects to this Interrogatory on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or

practice of discrimination directed to other employees. Notwithstanding and without waiving this or any other objections, EDFINA states that there have been no complaints of the type described in this Interrogatory made against Nadal during his tenure with EDFINA, other than the complaint in this litigation, and that it is unaware of any such complaints ever having been made against Nadal.

## INTERROGATORY NO. 6

If the Company contends Ms. Gaujacq had performance problems while working at EDFINA, please describe fully each specific performance problem; all facts upon which you rely in so identifying this problem, including all persons who have so stated; all communications EDFINA has had with Ms. Gaujacq respecting each such problem, including the date, the place, the persons present, and the substance of the communication; all efforts by the Company to improve Ms. Gaujacq's performance with respect to each such performance problem; and, the specific damage the Company has suffered as a result of such performance problem on the part of Ms. Gaujacq. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 6

EDFINA objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. EDFINA also objects to this Interrogatory on the ground that it contains multiple interrogatories. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents, refers plaintiff to its response to Interrogatory No. 3 and otherwise responds that Gaujacq had numerous performance problems, including without limitation, the following:

    1.    Undermining the Leadership Transition at EDFINA

Gaujacq failed to facilitate and worked to undermine the leadership transition at EDFINA following the appointment of Nadal in 2004 by the President of EDF to be EDF's Délégué Général to North America. She incorrectly informed EDFINA employees, EDF

8

delegates working at the EDFINA office and the immigration lawyer handling Nadal's visa application that Nadal's role would be that of a gas analyst and that her role would be unchanged. Gaujacq provided inaccurate information that complicated Nadal's visa application, and she frustrated efforts to obtain suitable housing for Nadal and his family. Gaujacq's failure to acknowledge Nadal's role as EDF's Délégué Général to North America, and her active undercutting of his role, engendered confusion and required extensive time and attention from EDFINA employees and Nadal.

From at least the time of Nadal's arrival in Washington, D.C. to assume his role as EDF's Délégué Général to North America, Gaujacq failed and refused to develop an effective working relationship with Nadal, failed to meet with Nadal for months and failed even to attend scheduled meetings with him in June 2004 to discuss her role and responsibilities at EDFINA.

2.     Failure to Report to Work

Gaujacq habitually did not present herself at the offices of EDFINA and thereby required that all business communications be redirected to her at her residence. Gaujacq appeared at EDFINA's office only one day in June 2004 and one day in July 2004.

Gaujacq failed to attend business meetings, including an ANS conference in Pittsburgh, Pennsylvania in June 2004 and an EDF conference in Lyon, France in June 2004.

3.     Failure to Preserve and Maintain EDFINA Property

Gaujacq failed to maintain EDFINA documents at EDFINA's office. She failed and refused to return EDFINA documents to EDFINA's office when instructed to do so by Nadal. Her failure to do so caused EDFINA to undertake the task of reconstructing EDFINA files that had been under her control. After being instructed to return all EDFINA corporate documents to the EDFINA office, including documents stored on EDFINA's laptop computer

9

that she utilized, plaintiff deliberately destroyed significant portions of the contents of the
EDFINA laptop prior to returning it to the corporation. Due to Gaujacq's failure to return to
EDFINA all documents and other data maintained on the EDFINA laptop she utilized, and her
subsequent destruction of most of the data on such laptop prior to her return of the laptop to
EDFINA, EDFINA has lost data that had been maintained on said laptop. See also EDFINA's
Response to Interrogatory No. 3.

    4.    <u>Failure to Develop and Apply Sound Financial and Management Procedures</u>

The EDF audit process in July 2004 and the findings of the EDF audit revealed
that Gaujacq failed during her term of service as President of EDFINA to develop and apply
sound financial and management procedures.    Gaujacq demonstrated poor personnel
administration while serving as President of EDFINA, and poorly administered the offices of
EDFINA, including but not limited to its record-keeping and information technology systems.
She repeatedly stated that the offices of EDFINA were unsafe and unprepared to receive and
house confidential materials when such conditions were within her own area of responsibility.
EDFINA has discovered material errors in official EDFINA filings that Gaujacq made or
permitted to be made during the time she served as President of EDFINA.

EDFINA's discovery of Gaujacq's performance problems is ongoing, and
EDFINA reserves the right to supplement this Response if additional performance problems
come to light.

<b><u>INTERROGATORY NO. 7</u></b>

Describe the policies, practices, and procedures to be followed by any employee
making a complaint against EDFINA or any other employee of EDFINA with respect to gender
discrimination or retaliation and/or unequal, unfair or inappropriate treatment, whether written or
oral, internally or with any outside administrative agency, and the manner by which an internal
or outside investigation of such a complaint is triggered and conducted, including any
investigative steps to be taken.

10

## RESPONSE TO INTERROGATORY NO. 7

EDFINA objects to this Interrogatory on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. EDFINA further objects to this Interrogatory on the grounds that it is overbroad and vague. Notwithstanding and without waiving these or any other objections, EDFINA responds as follows:

Employees of EDF delegated to the EDFINA office, such as Gaujacq, are entitled to address any complaints they may have as to any matters described in this Interrogatory to the Délégué Ethique of EDF in Paris, whose function is to investigate and attempt to mediate any such complaints.

As to employees of EDFINA, there was no policy, practice or procedure as described in this Interrogatory at EDFINA during the period of time that Gaujacq was serving as President of EDFINA.

## INTERROGATORY NO. 8

State the names and addresses of all persons who investigated any of the allegations contained in the pleadings (at any time prior to the filing of this suit relating in anyway to Ms. Gaujacq), or in any of Ms. Gaujacq's written and verbal complaints to EDFINA, including, but not limited to Ms. Gaujacq's email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member; her verbal complaints in June and July, 2004, to Mr. Nadal; Ms. Gaujacq's July 9, 2004 formal complaint emailed to Mr. Ponasso, Chairman of EDFINA; Ms. Gaujacq's July 22, 2004 email to Mr. Nadal; and Ms. Gaujacq's email to Mr. Creuzet, the COO of EDF, and to Mr. Ponasso, Chairman of EDFINA and President of EDFINA Branch Americas, asking that the Company confirm that it would take corrective and remedial measures to prevent further discriminatory, harassing and unfair conduct by Mr. Nadal. For each such investigation, please state the findings, and identify all documents produced during the investigation. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 8

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF to the extent that it concerns actions taken by EDF. EDFINA further objects to this Interrogatory on the ground that it is ambiguous in its use of the terms "investigations" and "findings," without definition, in the context of the communications described in this Interrogatory. EDFINA further objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, or other applicable privileges, in that it does not exclude "investigations," as described therein, occurring after plaintiff's institution of legal proceedings before the United States Equal Employment Opportunity Commission ("EEOC"). EDFINA further objects to this Interrogatory on the ground that it is overbroad and unduly burdensome and contains multiple interrogatories. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds as follows:

Any communications by Gaujacq described in this Interrogatory that were addressed to EDF representatives were handled, if at all, by EDF representatives, including any and all such communications to Fernando Ponasso, Gerard Creuzet and Didier Lamethe, and cannot be addressed by EDFINA.

Nadal responded to Gaujacq's July 22, 2004 e-mail to him directly to Gaujacq by e-mail dated July 23, 2004, advising her that her complaint about allegedly unfair treatment by him was unfounded. Nadal had previously had one conversation with Gaujacq in June, 2004 in

12

which they discussed a change in her check-signing authority following her resignation from the

position of President of EDFINA, a matter of which she now complains, but at that time Gaujacq

did not allege any discrimination in connection therewith.

## INTERROGATORY NO. 9

If you contend Ms. Gaujacq made any statement which is against her interest,
state the nature of such statement, the names of all persons who heard the alleged statement, and
the date and place that the alleged statement was made. Identify all documents reflecting your
response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 9

EDFINA objects to this Interrogatory on the grounds that it is premature at this

stage of the litigation and that it calls for the identification of documents and other information

that may be derived or ascertained from the documents produced by EDFINA pursuant to

EDFINA's Document Response, with substantially the same burden upon EDFINA as upon

plaintiff, and EDFINA refers plaintiff to said documents.

## INTERROGATORY NO. 10

Please state all reasons why Ms. Gaujacq was removed from her position as
President of EDFINA and replaced by Mr. Nadal. Identify all documents reflecting your
response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 10

EDFINA objects to this Interrogatory on the ground that it calls for information

known or ascertainable only by EDF. EDFINA further objects to this Interrogatory on the

ground that it calls for the identification of documents and other information that may be derived

or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document

Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding

and without waiving these or any other objections, EDFINA refers plaintiff to said documents

and otherwise responds as follows:

13

Any and all decisions as to whom EDF would appoint as its Délégué Général to North America and to serve as President of EDFINA are and were decisions made or controlled by EDF in France.

## INTERROGATORY NO. 11

Please state all reasons why Mr. Nadal received a higher salary for the position of President of EDFINA that Ms. Gaujacq had received in the same position. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 11

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that the salaries of Nadal and of Gaujacq, as EDF employees, were determined by their employer, EDF.

## INTERROGATORY NO. 12

Please compare and contrast the responsibilities and daily duties of Mr. Nadal and Ms. Gaujacq in the position of President of EDFINA. (For example, what responsibilities are the same, and what responsibilities, if any, held by either Mr. Nadal or Ms. Gaujacq were not held by the other person in the position of President of EDFINA.) Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 12

EDFINA objects to this Interrogatory on the ground that it purports to require a greater obligation than is required by the Federal Rules of Civil Procedure in its requirement to "compare and contrast." EDFINA further objects to this Interrogatory on the ground that it calls

14

for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waving these or any other objections, EDFINA refers to said documents and otherwise responds as follows:

Upon his appointment by EDF in 2004 to be EDF's new Délégué Général to North America, Nadal was charged by the EDF President with the responsibility of expanding the role and presence of EDF in North America. Consistent with this expansion, Nadal is responsible for exploring financial and commercial opportunities for EDF in North America compatible with the needs and plans of EDF as it has proceeded from a government-owned entity in France to a publicly held company.

Nadal is responsible for maintaining high-level contacts with United States authorities and academics in the energy field, including but not limited to the following: the United States Nuclear Regulatory Commission; the Federal Energy Regulatory Commission; the National Academy of Sciences; the United States Environmental Protection Agency; the United States Senate, the United States House of Representatives; the United States Department of Energy; the Commodities Futures Trading Commission, the Massachusetts Institute of Technology; the Nuclear Energy Institute; the Edison Electric Institute; the Electric Power Research Institute; and various utility companies in the United States. Nadal has been invited to deliver speeches and/or to organize and chair panels on nuclear energy, including an October, 2005 European Institute with panels of Undersecretaries and other members of the United States administration, Ambassadors, and various think tanks, and on Electricity Trading at a September, 2005 annual meeting of the CFTC in Chicago.

15

Nadal is also responsible for expanding EDF's role in Canada and maintains the position of associate of the Industrial Board of Electricity of Quebec.

Nadal is frequently in contact with the French Embassy and the French Ambassador and also welcomes delegations to the United States from France, including Ministers, members of Parliament, and various corporate delegations. In France Nadal makes speeches in meetings of EDF's top executives in Paris and maintains contact with Chairmen and Commissioners of top authorities in the energy field in France (including the French equivalents of FERC, DOE and Nuclear Waste Management Authority and Parliament.).

Nadal is also called upon from time to time to represent the President of EDF at meetings or conferences in the United States and in France when the President of EDF is unable to attend.

Nadal has primary responsibility for EDFINA's role in the NuStart program, communicating with EDF to advise and consult with them regarding EDFINA activities, and providing information about EDF to United States capital markets in respect of EDF's initial public stock offering. In addition, Nadal is responsible for the management of EDFINA, directing all business activities.

When Gaujacq served as President of EDFINA, she was responsible for the management of EDFINA, directing all business activities including hiring and firing clerical, accounting and technical staff, retaining and coordinating the work of outside contractors and consultants supplying services to EDFINA, and working in close collaboration with leaders of United States electrical utilities for the purpose of building and strengthening ties between the United States and French energy industries and undertaking collaborative research and development at a highly advanced level. She was responsible for establishing and maintaining

contacts with leaders of electrical utility companies in the United States and Canada. She also served as EDFINA's first representative to NuStart.

## INTERROGATORY NO. 13

Please describe in detail all reasons why Ms. Gaujacq's new contract and mission statement were never signed and/or delivered to her.

## RESPONSE TO INTERROGATORY NO. 13

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF. Notwithstanding and without waiving this or any other objections, EDFINA responds that the decision as to Gaujacq's proposal for any "new contract and mission statement" was a decision made or controlled by EDF in France.

## INTERROGATORY NO. 14

Please describe in detail all reasons why Mr. Nadal had Ms. Gaujacq removed from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts. Please include in your answer the identity of all other individuals whom Mr. Nadal had removed from the authorized list officers of EDFINA with signature authority on the corporate bank accounts. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 14

EDFINA objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds as follows:

Nadal sent a letter to the bank dated June 4, 2004 that changed check-signing authority for EDFINA officers. Following her resignation from the position of President of EDFINA, Gaujacq did not have a defined mission at EDFINA that required her to sign checks

17

for EDFINA.  If a mission for Gaujacq as Vice President of EDFINA had been agreed upon and accepted by her, her responsibilities might have warranted that she be given check-signing authority, but no such mission was ever agreed upon.  See also EDFINA's Response to Interrogatory No. 15.

## INTERROGATORY NO. 15

Please describe in detail all reasons why Mr. Nadal revoked all of Ms. Gaujacq's powers as a vice president of EDFINA on or about June 18, 2004.  Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 15

EDFINA objects to this Interrogatory on the ground that it is incorrect in its fundamental assumption.  EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff.  Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds as follows:

When Nadal assumed the position of President of EDFINA and Gaujacq resigned as President on June 1, 2004, the powers appurtenant to that position, including the authority to make commitments on behalf of EDFINA, transferred from Gaujacq to Nadal.  Gaujacq had no explicit power or authority as Vice President of EDFINA because she had no mission agreed upon for her within EDFINA following her resignation as President.  Although Gaujacq had been appointed Vice President by the EDFINA board, her mission had not been designated. Gaujacq was to have met with Nadal to discuss with him the role she would be given at EDFINA

18

under Nadal's direction. However, Gaujacq did not present herself at the offices of EDFINA and otherwise failed to cooperate or meet with Nadal.

On June 18, 2004 Gaujacq failed to appear for a scheduled meeting with Nadal to discuss her role and responsibilities at EDFINA. To ensure that Gaujacq understood the change in her authority after her resignation as President of EDFINA, and to prevent any unauthorized actions by Gaujacq during his imminent three-week trip to France, Nadal sent her a letter dated June 18, 2004 delineating her current authority. He sent the same letter dated June 18, 2004 to the other Vice President, Benoit Dreux ("Dreux"), to ensure that both Vice Presidents understood the scope of their authority and certain policies. In particular, Nadal advised them, "Only the President is permitted to enter into contracts with third parties on behalf of EDFINA; make representations and/or warranties on behalf of EDFINA, or incur expenses on behalf of EDFINA [except] [i]n the President's absence . . . upon the express written consent of the President."

In another letter dated June 18, 2004, Nadal gave his express written consent to Dreux to act on behalf of Nadal in the particular areas quoted above. The June 18, 2004 letter to Dreux was intended by Nadal to be provisional in nature and to be used in case of emergency during his absence. Dreux was the appropriate person to be authorized to act for EDFINA in Nadal's absence because, unlike Gaujacq, he was generally available for regular consultation with Nadal on all business matters. Further, Gaujacq had demonstrated unprofessional behavior at least since Nadal's arrival at EDFINA and had repeatedly taken action undermining Nadal's authority. It was necessary for a responsible and reliable individual to be entrusted with authority to act in Nadal's place during Nadal's absence from the office, and Dreux met those requirements.

19

## INTERROGATORY NO. 16

Please describe in detail all reasons why Mr. Nadal requested the EDF auditors to come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms. Gaujacq had served as EDFINA's President in or about June, 2004. Please describe any findings and/or conclusions of the audit. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 16

EDFINA objects to this Interrogatory on the ground that it is incorrect in its

fundamental assumption. EDFINA further objects to this Interrogatory on the ground that it calls

for the identification of documents and other information that may be derived or ascertained

from the documents produced by EDFINA pursuant to EDFINA's Document Response, with

substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without

waiving these or any other objections, EDFINA refers plaintiff to said documents, and in

particular, the report of the auditors as to their findings, and otherwise responds that Nadal did

not request EDF auditors to come to the United States offices of EDFINA for a special audit.

## INTERROGATORY NO. 17

Please describe in detail all reasons for the Company's directive removing Ms. Gaujacq from her position on the Project with EDFINA in the United States. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 17

EDFINA objects to this Interrogatory on the ground that it calls for information

known or ascertainable only by EDF. EDFINA further objects to this Interrogatory on the ground

that it calls for the identification of documents and other information that may be derived or

ascertained from the documents produced by EDFINA pursuant to EDFINA's Document

Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding

and without waiving these or any other objections, EDFINA refers plaintiff to said documents

and otherwise responds that the decision as to whether Gaujacq could continue to work with EDFINA in any capacity in the United States after the expiration of her term as President of EDFINA was a decision made or controlled by EDF in France. Following the expiration of Gaujacq's mission in the United States as of July 31, 2004, EDFINA notified the members of NuStart of Gaujacq's replacement by Georges Servière as EDFINA's first representative to NuStart.

### INTERROGATORY NO. 18

Please describe in detail all reasons for the Company's directive for Ms. Gaujacq to return to France immediately, without an assigned position. Identify all documents reflecting your response to this interrogatory.

### RESPONSE TO INTERROGATORY NO. 18

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF in that it concerns decisions made or controlled by EDF in France. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that the decision to direct Gaujacq to return to France following the expiration of her expatriation contract was a decision made or controlled by EDF in France.

### INTERROGATORY NO. 19

Please describe in detail reasons for Ms. Gaujacq receiving only four days' notice that her mission in the United States would end. Please include in your answer the identity of other employees of the Company who received less than three months' notice of the impending end of their mission in the United States. Identify all documents reflecting your response to this interrogatory.

21

## RESPONSE TO INTERROGATORY NO. 19

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that Gaujacq had at least one year's notice that her mission in the United States expired by its terms on July 31, 2004 and that any decision regarding the timing of notices to Gaujaq regarding the expiration of her mission and/or her return to France following the expiration of her expatriation contract was a decision made or controlled by EDF in France.

## INTERROGATORY NO. 20

Please describe in detail all representations made to Ms. Gaujacq, either verbally or in writing, regarding her future employment by EDF or EDFINA in the United States or in France, both before Mr. Nadal became President of EDFINA and after. Identify all documents reflecting your response to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 20

EDFINA objects to this Interrogatory on the ground that it calls for information known or ascertainable only by EDF to the extent it concerns any representations made by EDF. EDFINA further objects to this Interrogatory on the ground that it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDFINA pursuant to EDFINA's Document Response, with substantially the same burden upon EDFINA as upon plaintiff. Notwithstanding and without waiving these or any other objections, EDFINA refers plaintiff to said documents and otherwise responds that EDFINA did not make any representations to Gaujacq of the kind described in this Interrogatory.

22

## INTERROGATORY NO. 21

For each Request for Admission you deny, either in whole or in part, please describe all facts upon which you base, or which support, any such denial.

## RESPONSE TO INTERROGATORY NO. 21

EDFINA objects to this Interrogatory on the ground that it violates the limit on number of interrogatories permitted to the plaintiff in that Plaintiff's Request for Admissions to EDFINA consists of 253 separate requests, and this Interrogatory in effect seeks interrogatory responses as to every one of EDFINA's responses to those requests in which EDFINA denied the request. Notwithstanding and without waiving these and any other objections, EDFINA responds that all denials in EDFINA's Response to Plaintiff's First Request for Admissions were made either because EDFINA was unable, after reasonable inquiry, to admit or deny the facts asserted or because EDFINA did not know the facts asserted to be true or knew them to be untrue.

Dated: December 12, 2005

As to objections:

HOGUET NEWMAN & REGAL, LLP

By: _____

    Laura B. Hoguet, D.C. Bar No. 200915
    10 East 40th Street
    New York, New York 10016
    (212) 689-8808

*Attorneys for Defendant Electricité de France International North America, Inc.*

23

## DECLARATION OF VERIFICATION

I, Christian Nadal, President of Electricité de France International North America, Inc. ("EDFINA"), have reviewed the foregoing Responses to Plaintiff's First Set of Interrogatories to Defendant Electricité de France International North America, Inc. (the "Interrogatories"). To the best of my knowledge, the facts contained in EDFINA's answers to the Interrogatories are correct.

Pursuant to 28 U.S.C. Section 1746, I make this declaration under penalty of perjury under the laws of the United States.

_____
Christian Nadal
President, Electricité de France International North America, Inc.

Dated:  December 12, 2005

24

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing RESPONSE OF DEFENDANT ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC. TO PLAINTIFF'S FIRST SET OF INTERROGATORIES by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on December 12, 2005:

Elaine Charlson Bredehoft (ebredehoft@charlsonbredehoft.com)
Kathleen Z. Quill
CHARLSON BREDEHOFT & COHEN, P.C.
11260 roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

With a courtesy copy by electronic mail as follows:

Ronald S. Cooper (rcooper@steptoe.com)
David Clark (dclark@steptoe.com)
STEPTOE & JOHNSON
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000

Counsel for Defendant Christian Nadal

DOROTHEA W. REGAL

25