IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | HEARING REQUESTED |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF DEFENDANT ELECTRICITE DE FRANCE, S.A.
TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Electricité de France, S.A. ("EDF") submits this memorandum in opposition

to Plaintiff's Motion to Compel Discovery Responses from Defendant EDF ("Plaintiff's Motion

to Compel") (Dkt. #47).

**PRELIMINARY STATEMENT**

Plaintiff's Motion to Compel is frivolous and unnecessary, serving only a tactical purpose

of Plaintiff. It puts forth the same manufactured objections that Plaintiff made in her earlier,

pending Motion to Compel Discovery Responses from Defendant EDFINA (Dkt. #30) initiated

as a "counter-attack" response to Defendants' written objections to her woefully deficient and

evasive interrogatory responses, in which she had failed to respond to over half of the 13

interrogatories propounded, as set forth in letters from Dorothea W. Regal, Esq. of December 15

and 19, 2005 (attached hereto as Exhibits A and B, respectively). Plaintiff's Motion to Compel

EDF is the sixth motion filed by Plaintiff, the latest in a series of frivolous motions designed to burden and harass defendants.[1]

EDF has responded fully and fairly to all of Plaintiff's discovery demands, and its objections, where made, are proper and well-founded. Plaintiff's Motion to Compel should be denied.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

The employer in this case is EDF, a French corporation headquartered in Paris, France. Defendant Electricité de France International North America, Inc. (EDFINA") is an indirect wholly owned subsidiary of EDF and represents EDF in the United States. Plaintiff, Catherine Gaujacq, a French citizen, was a long-time employee of EDF in France who was assigned to a temporary post, for a fixed term, as EDF's "Déléguée Générale" (Delegate General) to North America. In that post she served as President of EDFINA. Defendant Christian Nadal, a French citizen, is also an employee of EDF, and, upon the expiration of Ms. Gaujacq's term of office, EDF appointed him to succeed Ms. Gaujacq as EDF's "Délégué Général" (Delegate General) to North America, in which post he now serves as President of EDFINA. Upon the expiration of her term of office in the United States, Ms. Gaujacq refused to return to France to take up her next assigned post at EDF, whereupon EDF terminated her employment, effective January 7, 2005. Plaintiff instituted this action against EDF, EDFINA and Mr. Nadal asserting, inter alia,

---

[1]    Plaintiff previously filed the following motions after Defendants filed their Motion to Compel and for a Protective Order (Dkt.#26): (1) Plaintiff's Motion to Amend Protective Order (Dkt. #28), filed Jan. 10, 2006 and withdrawn Feb.16, 2006 (Dkt. #48); (2) Plaintiff's Motion to Reschedule Trial (Dkt. #29), filed Jan. 10, 2006 and resolved on consent Feb. 3, 2006 (Dkt. #41); (3) Plaintiff's Motion to Compel EDFINA (Dkt. #30), filed Jan. 11, 2006; (4) Plaintiff's Motion to Compel Nadal (Dkt. #31), filed Jan. 11, 2006; and (5) Plaintiff's Supplemental Memorandum To Alert the Court To New Developments Impacting the Motions Before This Court & Memorandum in Support of Motion for Enforcement of the Rules (Dkt. # 32), filed Jan. 18, 2006. Defendants moved to strike all 5 of these previous motions for failure to meet and confer.

claims under Title VII and DCHRA alleging sexual harassment by Mr. Nadal, sex discrimination and retaliation.

All decisions as to the terms and conditions of Ms. Gaujacq's employment throughout her years of employment with EDF, including her termination, were made by EDF, not EDFINA.

EDFINA is a separate company from EDF, incorporated and located in Washington, D.C., and has fewer than 15 employees. EDF, headquartered in Paris, France, has over 160,000 employees. At the time of the events alleged in the Complaint, EDF was 100% owned by the Republic of France; following a public offering of equity interest in 2005, EDF is now partly publicly held but still majority owned by the Republic of France.

## Plaintiff's Discovery Demands

Plaintiff has been abusing the discovery process, utilizing discovery as a tool of harassment. Plaintiff's counsel chose initially to exclude EDF from her discovery demands. Instead, she chose to demand discovery solely from EDFINA and Mr. Nadal in her first set of discovery demands, served October 28, 2005. Counsel for EDF and EDFINA immediately wrote to Plaintiff's counsel, Elaine Bredehoft, alerting her to the omission of EDF and advising her that EDFINA could not and would not respond on behalf of its parent, EDF. (See Letter from Dorothea W. Regal, Esq., dated November 4, 2005, attached hereto as Exhibit C.) Counsel for EDF and EDFINA suggested to Ms. Bredehoft that, if the omission was inadvertent, she amend the discovery demands to add EDF, and requested that she advise promptly what she intended to do. The scope of the response, as well as counsel's effort in responding to the demands, was impacted profoundly by who the respondent would be. Yet Ms. Bredehoft failed to respond to that letter altogether. Three weeks later, as the initial November 30, 2005 response deadline approached, counsel for EDF and EDFINA inquired again as to Ms. Bredehoft's intent as to

3

EDF, and her response was: "I intentionally did not include EDF in the first set." (E-mail from Elaine Bredehoft, Esq. dated November 18, 2005, responding to E-mail from Dorothea W. Regal, Esq. dated November 18, 2005, attached collectively hereto as Exhibit D). EDFINA proceeded to respond, solely on behalf of EDFINA, to Plaintiff's first set of discovery demands, serving its responses on December 12, 2005. Plaintiff did ultimately direct discovery demands to EDF, which were all but identical to, and entirely duplicative of, Plaintiff's previous demands to EDFINA. There was no legitimate reason for Plaintiff not to have addressed EDF and EDFINA in the same set of discovery demands in the first instance and thereby avoid the unnecessary time and expense of defense counsel's preparing unnecessary and duplicative responses to extremely excessive demands.

Plaintiff has continued to issue an unremitting barrage of unduly burdensome discovery demands to EDF and EDFINA (as well as a parallel set of demands to Defendant Nadal). Many have been unnecessary, duplicative and frivolous. For example, Plaintiff's Requests to Admit were wholly unnecessary since they were served at the outset of discovery before any testimony and did nothing but restate, nearly word for word, the allegations of the Complaint, which Defendants had just admitted or denied in their Answer. EDF and EDFINA have proceeded to respond to all of Plaintiff's discovery demands, duly and fully, as follows:

| | | |
|---|---|---|
| Requests to Admit to EDFINA | (253 requests) | EDFINA response 12/12/05 |
| Requests to Admit to EDF | (253 requests) | EDF response 1/3/06 |
| Interrogatories to EDFINA | (21 requests) | EDFINA response 12/12/05 |
| Interrogatories to EDF | (19 requests) | EDF response 1/3/06 |
| First Document Request to EDFINA | (72 requests) | EDFINA response 12/12/05 |
| First Document Request to EDF | (72 requests) | EDF response 1/3/06 |
| Second Document Request to EDFINA | (19 requests) | EDFINA response 1/3/06 |
| Second Document Request to EDF | (19 requests) | EDF response 1/3/06 |
| Third Document Request to EDFINA | (16 requests) | EDFINA response 2/27/06 |
| Third Document Request to EDF | (16 requests) | EDF response 2/27/06 |

Plaintiff's Motion to Compel is another abuse of the discovery process, unnecessary and unwarranted, and should be denied.

## ARGUMENT

### I.    EDF'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES ARE PROPER

Plaintiff's First Set of Interrogatories contains 19 separately numbered interrogatories, most of which have two or more discrete subparts.  EDF responded to all of these interrogatories in compliance with Rule 33 of the Federal Rules of Civil Procedure, with appropriate objections and with responsive answers to the extent the interrogatories are not objectionable.  Fed. R. Civ. P. 33(b)(1).  (EDF's Response to Plaintiff's First Set of Interrogatories is attached to Plaintiff's Motion to Compel as Exhibit 4 thereto.)

#### A.    EDF's Reference to the Documents It Produced is Proper; French Documents Are Not a Burden to Plaintiff

Plaintiff's objection to EDF's reference in certain of its interrogatory responses to documents produced in response to Plaintiff's simultaneous document demands is unfounded. [Interrogatory Nos. 2-4, 6, 8-12, 14-18.]  Each of these interrogatories included a demand to "identify all documents reflecting your response to this interrogatory" or words to that effect. EDF responded to these interrogatories to the extent they are not objectionable.  EDF stated objections to the extent that "it calls for the identification of documents and other information that may be derived or ascertained from the documents produced by EDF pursuant to EDF's Document Response, with substantially the same burden upon EDF as upon plaintiff."

EDF's reference to the produced documents is proper under Rule 33(d) of the Federal Rules of Civil Procedure, and Plaintiff's motion to compel on this point should be denied.  In the first place, EDF did not refer to documents in lieu of answering but also provided substantive

narrative responses to these interrogatories to the extent they are not objectionable, where the information was within the knowledge and competence of EDF. Secondly, any specific documents on which EDF relied in its interrogatory responses are clearly identified therein. Finally, the documents produced by EDF pursuant to Plaintiff's first and second document demands are a finite set, with separate categories of documents easily discernible. Much of the production consists of e-mail correspondence from the computers utilized by the individuals at EDF, which is obvious at a glance, and other groups of documents requested are equally obvious upon a brief review of the documents, such as the Plaintiff's personnel folder (Bates Nos. EDF 001-678), Mr. Nadal's personnel folder (Bates Nos. EDF 679-939), various handbooks (Bates Nos. EDF 1434-1706) and the EDF annual reports (Bates Nos. EDF 3500-4446).

Plaintiff asserts that the burden upon Plaintiff to review the documents is greater than EDF's burden "given that many of the documents produced and likely to be referenced are in French." (Pl. Mem. at 9.) This is absurd. Plaintiff is French, and French is her native language. Moreover, the bulk of the documents written in French are communications from or to the Plaintiff herself. Plaintiff bears the burden of showing that "the burden of ascertaining the answer is not substantially the same for the interrogating party as for the interrogated party." Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co., 111 F.R.D. 318, 320 (D. Mass. 1984). Plaintiff's conclusory claim of burden, belied by the facts, does not constitute the requisite showing that she bears the greater burden of gleaning the information requested from the documents.

The parties in this discovery process are on an equal playing field in terms of language. Each party is French, or has French-speaking employees. Each party is represented by U.S. counsel. Many of the documents produced by Defendant EDF consist of correspondence to or

from Plaintiff.    Plaintiff's suggestion that she is disadvantaged because she must review these French documents is disingenuous.

To the extent that Plaintiff's counsel requires translation of any of the French documents, she has the Plaintiff herself to rely upon.  It is not Defendants' burden to provide translations for Plaintiff's counsel at the pre-trial stage of litigation. See In re Puerto Rico Elec. Power Auth., 687 F.2d 501, 508 (1st Cir. 1982) ("Rule 33's imposition of costs on the requesting party when both parties have equal access to documents containing the answers to interrogatories, underscore the assumption implicit in the Federal Rules that parties must normally finance their own lawsuits.").

## B.    The Court Should Not Compel Disclosure of Information related to the Employment of Other French Employees of EDF in France

In Interrogatory No. 5, Plaintiff demands information about whether there had been any discrimination complaints made by anyone against any "employee of EDF in any management position, or against EDF itself" over the last 10 years and, if so, what such complaints were, who made them, who they were made against, what may have been done by EDF (or EDFINA)[2] to investigate any such complaint and the outcome of the complaint.    EDF objected to this interrogatory on the ground that the information sought has no relevance to the issues in this case, which alleges disparate treatment by Mr. Nadal, not a "pattern or practice" of discrimination or disparate impact.    Nonetheless, and without waiver of this objection, EDF answered this interrogatory to the limited extent it was unobjectionable, limiting its response to any complaints against Mr. Nadal, Plaintiff's successor as EDFINA's President, and the person Plaintiff has alleged to be her harasser.

---

[2]    Interrogatory No. 5 requests this information as to the "Company," which is defined in Plaintiff's Interrogatories to mean a combination of EDF and EDFINA.  See Plaintiff's Ex. 1 at 1 (Definition No. 1).

In this case, Plaintiff claims violations of Title VII and the DCHRA because, she claims, Mr. Nadal subjected her, in the United States, to "unfair and discriminatory treatment based on her gender" beginning in June 2004, when he succeeded her in the role of President of EDFINA. Comp. ¶¶ 72, 77. Yet in Interrogatory No. 5 she is seeking information regarding complaints by any employee of EDF, a French company with over 160,000 employees, against any other management employee of EDF with respect to "unequal, unfair or inappropriate treatment" from 1995 to the present, occurring in France (or presumably anywhere else in the world).

To the extent Plaintiff seeks other complaints against other EDF employees and EDF's actions with respect thereto that took place outside of the United States, such discovery must be denied because EDF is not subject to Title VII or DCHRA with respect to such conduct.[3]

Title VII does "not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer." 42 U.S.C. § 2000e-1(c)(2); see Watson v. CSA, Ltd., 376 F. Supp. 2d 588, 593 (D. Md. 2005) (Title VII does not apply to a foreign corporation operating abroad). Similarly, EDF is not subject to the DCHRA with respect to its foreign operations. Green v. Kinney Shoe Corp., 704 F. Supp. 259, 260 (D.D.C. 1988) (DCHRA was intended to cover only jobs located in the District of Columbia).

EDF's conduct in France with respect to its employees is governed by the laws and customs of France, which are not identical to the standards set forth under Title VII or the DCHRA. EDF need not account to Plaintiff for employment actions it took with respect to its employees outside of the United States, whether or not they are in compliance with Title VII or the DCHRA. Such conduct is simply irrelevant to this case.

---

[3]    Defendants assert that EDF is not subject to Title VII at all, even with respect to employees employed in the United States, but that argument must await Defendants' motion for summary judgment.

To the extent Plaintiff seeks information as to other complaints of employees as to actions taken by EDF or EDF employees in the United States, any discovery as to possible complaints made by other employees should be carefully limited in scope to avoid an improper "fishing expedition."  See, e.g., Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983).  The cases upon which Plaintiff relies are, for the most part, completely inapposite.[4]  Some courts have simply refused to permit discovery of complaints and lawsuits filed by other employees.  See Prouty v. Nat'l R.R. Passenger Corp., 99 F.R.D. 551, 553 (D.D.C. 1983); Broderick v. Shad, 117 F.R.D. 306, 312 (D.D.C. 1987).  Others limit discovery of such complaints to tailor it to the plaintiff's allegations, such as limiting it to complaints within a limited time frame and involving the individuals whom the plaintiff has accused.  See, e.g., Marshall v. District of Columbia Water & Sewage Auth., 214 F.R.D. 23, 25 (D.D.C. 2003) (request for documents relating to internal investigations limited to plaintiff's department and same or similar decisionmaker during four-year period).  See also Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002) (limiting discovery to complaints in same department within 2-year period); Glenn v. Williams, 209 F.R.D. 279, 281 (D.D.C. 2002) (limiting  discovery to complaints in plaintiff's division and cutting requested 10-year period to 3 years); Pleasants, 208 F.R.D. at 14-15 (limiting discovery to complaints in

---

[4]  For example, the well-known cases of Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), do not address discovery issues at all but, rather, set forth general standards for discrimination actions.  In Robinson v. Runyon, 149 F.3d 507 (6th Cir. 1998), the Sixth Circuit did not deal with complaints by other employees, but simply held that two possibly racist documents were not more prejudicial than probative.  Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990), involved whether the employer had constructive notice of harassment, not the discoverability or admissibility of other employees' complaints.  The issue in Morris v. Washington Metro. Area Transit Auth., 702 F.2d 1037 (D.C. Cir. 1983), and Dougherty v. Barry, 604 F. Supp. 1424 (D.D.C. 1985), was whether plaintiff could establish municipal liability by showing a custom or policy, which is not an issue here.  Hairston v. Washington Metro. Area Transit Auth., No. Civ. 93-2127, 1997 WL 411946 (D.D.C. April 10, 1997), involved not the discoverability of a broad range of evidence, but the admissibility of testimony from three witnesses.  Miller v. Poretsky, 595 F.2d 780 (D.D.C. 1978), was a housing discrimination case and so did not involve complaints by other employees.

plaintiff's subdivisions); Hardrick, 96 F.R.D. at 618-19 (denying discovery, except as to two-year period in one particular office); Childers v. Slater, No. CIV.A.97-853RMU/JMF, 1998 WL 429849, at *4 (D.D.C. May 15, 1998) (limiting discovery to complaints in plaintiffs' division or the divisions of the supervisors who allegedly discriminated). Plaintiff's cases are to the same effect.[5]

Plaintiff's assertions as to why she needs this information are feeble at best. She claims that it will "show Defendant's continuing discriminatory intent" with respect to her (Pl. Mem. at 10-11), but it is hard to imagine how any complaints by other employees would show EDF's intent with respect to Plaintiff. She also claims that information about other employees' complaints will show the extent to which her complaints were "treated differently than those not in a protected class" (id.), an argument that is internally inconsistent, because only those in some type of protected class could be making a complaint of discrimination. And, of course, EDF's French employees in France cannot be said to be in a "protected class" because that is purely a legal construct of Title VII and DCHRA, not applicable to these French employees in France. Finally, she claims that the information is relevant to certain defenses EDF may raise (id. at 11), but such a request is premature unless and until EDF does indeed raise such defenses.

As the above cases demonstrate, EDF should not be compelled to ascertain and provide information as to any complaints of discrimination except those alleging discriminatory treatment by Mr. Nadal at EDFINA from June 2004 to the present.

---

[5]    Thus, the court in Johnson v. Washington Times Corp., 208 F.R.D. 16 (D.D.C. 2002), held that to be discoverable, other allegedly discriminatory acts must be "similar in motivation" to those complained of, explaining that "[d]iscrimination . . . against a truck driver in Cincinnati in 1995 is hardly probative of an intent to discriminate against another truck driver in Memphis in 2000." Id. at 19.    See also White v. U.S. Catholic Conference, No. CIV.A.97-1253, 1998 WL 429842, at *4-6 (D.D.C. May 22, 1998) (limiting discovery to complaints in plaintiff's subdivision).

EDF did provide this information and, in fact, went further, giving the response as to Mr. Nadal unlimited in time, answering as follows:

> "EDF states that there have been no complaints of the type described in this Interrogatory made against Nadal during his tenure with EDFINA, other than the complaint in this litigation, and that it is unaware of any such complaints ever having been made against Nadal."

EDF has thus answered Interrogatory No. 5 to the extent it is not objectionable, and should not be compelled for the reasons stated to do more. Plaintiff has all the information she reasonably might want on this topic. In addition to the information EDF provided in its answer as to Mr. Nadal's tenure at EDFINA, Ms. Gaujacq, of course, is in a position to know about any such complaints that might have been made with respect to activities at EDFINA during the preceding period when she served as EDFINA President, from August 2000 through May 31, 2004.

## C.    EDF's  Other Interrogatory Responses Are Also Proper

EDF provided full and fair responses to all of Plaintiff's interrogatories to the extent they were not objected to. Plaintiff purports to complain on this Motion to Compel that she wants additional detail or that she considers a response not to be credible. EDF's answers are truthful and complete within the scope of what is reasonably known to it at this time. If Plaintiff does not agree, she is entitled to probe and test EDF's knowledge and discover any greater factual detail or nuance that may be relevant to her questions at deposition.

Interrogatory No. 2. This interrogatory demands that EDF "describe fully the specific facts within the knowledge of each witness and how that person came to possess such knowledge." This is a Herculean, if not impossible, task, and EDF properly objected to its overbreadth and burden. Nonetheless, and notwithstanding such objection, EDF provided the information requested to the extent possible and to the extent that the interrogatory was not objectionable. This interrogatory (along with Interrogatory No. 1) restates the questions that

were previously answered in the Initial Disclosures of EDF and EDFINA pursuant to Rule 26 (Dkt. # 19). EDF responded to these interrogatories by reference to its corresponding answers in its Initial Disclosures, where it identified the persons it believed may have knowledge relevant to the allegations in the Complaint and described the knowledge it believed those individuals may have. EDF's answers fully and adequately respond to Plaintiff's Interrogatories No. 1 and 2 and are more than sufficient for Plaintiff to be able to determine whether or not to depose any such witness.

Interrogatory No. 4. This interrogatory asks for favorable comments made about Ms. Gaujacq's job performance at EDF. Plaintiff here protests EDF's response that it is unaware of any such comments, but she has no basis for her protest other than her unsupported suspicion that it is "highly unlikely" that Ms. Gaujacq did not receive any compliments. EDF answered this interrogatory to the extent of its knowledge of the facts requested after a duly diligent examination of available facts.

Interrogatory No. 6. This interrogatory demands that EDF describe any problems EDF has identified with respect to Ms. Gaujacq's performance while she was at EDF and then continues to demand that EDF describe in detail all communications EDF had with Ms. Gaujacq with respect to each, all efforts by EDF and/or EDFINA to improve her performance as to each and specific damage EDF and/or EDFINA has suffered as a result of each such performance problem. By its terms, this interrogatory includes any problems identified by EDF after Plaintiff's termination and is not directed in any way to performance problems that may have led to her termination.

Plaintiff here complains of an alleged lack of details about the performance problems described, but this allegation is unfounded. EDF answered this interrogatory at length (its

12

response to Interrogatory No. 6 is 2.5 pages long and refers as well to EDF's 2-page response to Interrogatory No. 3 addressing another aspect of the same topic), giving as much detail as to the specific performance problems described therein as is reasonably necessary to describe the perceived problem to the extent reasonably known to EDF at this time. Her claim that she needs additional detail "to determine whether any alleged reasons for the treatment of Ms. Gaujacq are pretextual" (Pl. Mem. at 13) is disingenuous at best since the interrogatory was not even directed to performance problems leading to her termination and her allegations of alleged harassment by Mr. Nadal do not mention her performance problems.

Interrogatory No. 8.    This interrogatory requests information as to findings of any investigation into the allegations of the Complaint, investigation into specific complaints allegedly made by Ms. Gaujacq to certain EDF representatives and response to a specific complaint made by Ms. Gaujacq to Mr. Nadal. EDF objected to this interrogatory on several grounds, but notwithstanding its objections, EDF answered this interrogatory to the extent it is not objectionable.    EDF responded as to the investigation into a complaint Ms. Gaujacq submitted to EDF's Délégué Ethique. None of Ms. Gaujacq's other communications constituted a complaint that would trigger an investigation, and EDF so stated in its response.

Interrogatory No. 9.    This interrogatory asks EDF to identify all statements against interest by Ms. Gaujacq. EDF objected to this interrogatory on the ground that it is premature at this stage of the litigation, it being more appropriate to identify such statements after Ms. Gaujacq has been deposed. Nonetheless, EDF identified a particular oral statement made by Ms. Gaujacq with the particular date on which it was made and to whom it was made. Although Plaintiff is the one who uttered this statement on December 10, 2004, she now demands to know who else heard it and where it took place. As Plaintiff herself already knows, Patrick deBotherel

was also present when she made her threatening statement at her pre-termination hearing in Paris.

### D.    Plaintiff Exceeded the Permitted Number of Interrogatories

EDF responded fully and fairly to all of Plaintiff's interrogatories to the extent they are not objectionable, and did so notwithstanding the fact that Plaintiff's interrogatories far exceeded the maximum of 25 when all of the discrete subparts of her 19 enumerated interrogatories are taken into account. Interrogatory Nos. 5, 6, 7 and 8 are egregious examples of compounded interrogatories, and all of the interrogatories that included a demand to identify all documents "reflecting" the response (Nos. 2-4, 6, 8-12, 14-18) are also examples. Interrogatory No. 19 demands that EDF describe all facts upon which EDF based its denials to Plaintiff's 253 requests to admit. EDF is not required to respond to more than 25 interrogatories, and it has responded already to far more than that.

## II.    EDF'S RESPONSES TO PLAINTIFF'S FIRST AND SECOND REQUESTS FOR THE PRODUCTION OF DOCUMENTS ARE PROPER

EDF fully and fairly responded on January 3, 2006 to Plaintiff's 91 document requests in her first and second sets of document demands. (EDF's Response to Plaintiff's First and Second Requests for Production of Documents is attached to Plaintiff's Motion to Compel, as Exhibit 5 thereto.) EDF produced over 2,600 pages of documents in response thereto.

### A.    EDF's Document Production Complied with Rule 34(b)

Plaintiff's complaint that EDF did not label the documents it produced is baseless. EDF produced the documents as they were kept in the usual course of business, as it is permitted to do, and it is not required to label the documents. Rule 34(b) of the Federal Rules of Civil Procedure states, in pertinent part, "[a] party who produces documents for inspection shall produce them as they are kept in the usual course of business *or* shall organize and label them to

correspond with the categories in the request." Fed. R. Civ. P. 34(b) (emphasis added). "[T]he Rule imposes no duty to organize and label the documents if they are produced as they were kept." In re G-I Holdings Inc., 218 F.R.D. 428, 439 (D.N.J. 2003). Because EDF produced documents as they were kept in the usual course of business, it is not required to label any of those documents.[6]  Plaintiff's motion to compel on this basis, therefore, should be denied.

## B.    The Court Should Not Compel Production of Documents Related to Other Employees of EDF or EDFINA

Plaintiff's requests to EDF for documents relating to other employees of EDF and EDFINA are, like Interrogatory No. 5, without any basis for relevance given that EDF is not subject to Title VII or DCHRA with respect to its employment actions in France as to its French employees.  They are a further manifestation of the "fishing expedition" in which Plaintiff is engaged.  These requests should be denied.

Request Nos. 44, 52, 54, 55.  These requests seek information concerning complaints made by EDF employees other than Ms. Gaujacq against other EDF employees.  EDF objected to these requests on the ground, among others, that such documents are not relevant or reasonably likely to lead to the discovery of admissible evidence as this case does not allege a "pattern or practice" of discrimination but instead alleges merely disparate treatment.[7]  These requests for complaints against other EDF employees with respect to employment actions in France as to French employees of the French EDF suffer from the same weaknesses as

---

[6]  Plaintiff is incorrect when she states that Defendants requested that she label her documents.  She had included a CD with her document production containing documents without Bates numbers, and Defendants had simply inquired whether she was planning to produce a set with Bates numbers.

[7]  Request No. 55, which seeks information about any program for monitoring or evaluating discrimination, also implicates the self-evaluative or self-critical analysis privilege.  See, e.g., In re Application of Nieri, No. Civ. A. M12-329, 2000 WL 60214, at *2 (S.D.N.Y. Jan. 24, 2000); Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970), aff'd mem., 479 F.2d 920 (D.C. Cir. 1973).

Interrogatory No. 5, and Plaintiff's motion as to these requests should be denied for the same reason. See discussion in Part I (B), supra.

Request No. 43. This request seeks the names, addresses and positions of every EDF and EDFINA employee for the past five years. Plaintiff has made no showing of why she requires this information or why such documents might be relevant. EDF has over 160,000 employees. It would be burdensome in the extreme and a wholly unwarranted invasion of privacy for EDF to produce this information. As to all of the EDF employees, and even as to the small number of EDFINA employees, EDF is understandably concerned about these people's privacy and their right to be free of harassment by Plaintiff and her counsel at their home addresses. Should Plaintiff require information from any of EDF's or EDFINA's employees, she can notice their depositions through Defendants. Plaintiff's motion as to this request should be denied.

Request No. 45. This request for EEO-1 documents for the past five years should be denied as completely irrelevant. EEO-1 documents show the statistical breakdown of employees by race, gender, etc., but do not show whether a particular supervisor treated plaintiff unfairly or whether she was subject to retaliation. Plaintiff has no need for these documents. Furthermore, this was a completely frivolous document request to EDF since there is no requirement for EDF, a French company, to file such forms with the EEOC.

Request No. 46. This request jumps the gun, as Plaintiff herself points out when she asserts that the request "anticipates" all documents supporting certain arguments that EDF might make. EDF has not yet made the arguments referred to in Request No. 46. Unless and until it does, such documents are impossible to identify. Moreover, the request is extraordinarily vague and ambiguous. What does plaintiff mean by "documents sufficient to reflect comparative

evidence between treatment of female and non-female [sic] employees"?    What kind of treatment? Promotions? Salaries? Scheduling of vacations? Length of lunch breaks?

### B.    EDF's Other Document Responses Are Also Proper

Request No. 3.  This request seeks all insurance policies covering EDF and EDFINA, not even limited to any liability exposure arising from this case.  EDF objected on the ground of overbreadth and lack of relevance, as well as on the ground that in France EDF is constrained not to disclose its insurance policies without the consent of its insurers.  Although Plaintiff's request expressly included each insurance policy "referenced" in EDF's interrogatory response, there were no insurance policies referenced in EDF's interrogatory response and, in fact, there was no request for the identification of any insurance policies in Plaintiff's interrogatories to EDF.

In the Initial Disclosures of EDF and EDFINA pursuant to Rule 26, filed October 27, 2005, EDF and EDFINA stated that they were not aware of any insurance policy as described in Rule 26.  Subsequently, EDF has identified a policy that may be of the type described in Rule 26, which EDF's insurer has consented to permit to be disclosed in this United States court proceeding.  EDF and EDFINA have supplemented their Initial Disclosures in this regard, in the Supplemental Disclosure of Defendants Electricité de France, S.A. and Electricité de France International North America, Inc., dated March 6, 2006, and will produce a copy of the referenced insurance policy.

Request No. 22.  This request seeks documents reflecting "any comparison, whether favorable or unfavorable, made by the Company between Ms. Gaujacq and any other employee (past or present) of the Company, including, in particular, Mr. Nadal."  EDF objected to this request on the grounds of overbreadth, burdensomeness and lack of relevance but, notwithstanding such objections, stated that it would produce documents responsive to this

request as to Mr. Nadal, if any exist. Plaintiff has made no showing why there could be any reason for EDF to search its files to determine whether there had ever been any comparisons made between Ms. Gaujacq and anyone else over the 20 years of her employment with EDF. Further, this request also implicates the issue as to the lack of any possible legal relevance regarding employment in France of other French employees of EDF. The only other person whose employment credentials have been put at issue in the Plaintiff's allegations is Mr. Nadal, the EDF employee who succeeded her as President of EDFINA, and EDF responded that it would produce responsive documents, if any exist, as to Mr. Nadal. There is no basis to require any broader search, and Plaintiff's motion should be denied as to this request.

Request No. 23.    This request seeks performance evaluations for "all persons the Company contends are comparable or superior [to plaintiff] in experience, education and qualification." This request jumps the gun since EDF has not yet contended that other persons had comparable or superior qualifications to plaintiff. If this case involved a reduction in force, or a failure to promote, such documents might be relevant, but they are not relevant to whether, as alleged by Plaintiff, Mr. Nadal treated Plaintiff unfairly based on her gender or whether she was retaliated against. If and when the question of Plaintiff's qualifications vis-à-vis other employees may become an issue in the case, this request can be revisited, but until it does, and until such other employees are at least identified, Plaintiff's motion as to this request should be denied.

Request No. 26. This request seeks "all documents reflecting the identity of and level of participation by any decision makers." Plaintiff acts as if this were a separate category of documents, and that they were being withheld. In fact, any document that would contain this information would also be responsive to one or more other requests, such as Request Nos. 8 and

9. Since these documents (to the extent they are not privileged) have already been produced, Plaintiff's motion as to Request No. 26 is moot.

Plaintiff posed sweeping catch-all demands in her final requests (Nos. 70-72), which embrace all the documents that were produced by EDF in response to all the other foregoing requests. These requests in effect ask for all documents in the case and are, thus duplicative of all other requests. Her demands for all documents gathered in preparation of the defense of this action (No. 70) and all documents that "support" any denial in EDF's response to Plaintiff's Request for Admissions (No. 72) also call for documents protected by the work product doctrine and the attorney-client privilege, and EDF properly objected on that ground.

Plaintiff claims that EDF made "inappropriate limitation" in its responses to Request Nos. 8, 9, 17, 18 and 51 of Plaintiff's first request and Request No. 17 of Plaintiff's second request. Each of these requests, as written, was excessively broad and literally would encompass matters having nothing to do with the matters alleged in the complaint. EDF objected to the overbreadth (and made other pertinent objections) and, notwithstanding such objections, responded that it would produce documents responsive to these requests, if any exist, that relate to matters alleged in the complaint. Beyond documents relevant to the matters alleged in the complaint, EDF's objection as to overbreadth is well taken, and Plaintiff's motion should be denied.

## CONCLUSION

For the reasons above, Plaintiff's Motion to Compel should be denied.

Dated: March 6, 2006

Respectfully Submitted,

_____/s/_____

Dorothea W. Regal
D.C. Bar No. NY0064
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212)689-8808

*Counsel for Defendant Electricité de
France, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing OPPOSITION OF DEFENDANT ELECTRICITE DE FRANCE, S.A. TO PLAINTIFF'S MOTION TO COMPEL by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on March 6, 2006

> Elaine Charlson Bredeholf (ebredehoft@charlsonbredehoft.com)
> Kathleen Z. Quill
> CHARLSON BREDEHOFT & COHEN, P.C.
> 11260 roger Bacon Drive
> Suite 201
> Reston, Virginia 20190
> (703) 318-6800
>
> *Counsel for Plaintiff*
>
> Ronald S. Cooper (rcooper@steptoe.com)
> David Clark (dclark@steptoe.com)
> STEPTOE & JOHNSON
> 1330 Connecticut Avenue NW
> Washington, DC 20036
> (202) 429-3000
>
> *Counsel for Defendant Christian Nadal*

DOROTHEA W. REGAL