IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELECTRICITE DE FRANCE )<br>INTERNATIONAL NORTH AMERICA, )<br>INC., et al. )<br>)<br>Defendants. )<br>_____) | No. 1:05CV0969 (JGP) |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' REQUEST TO REOPEN THE DEPOSTION OF MS. GAUJACQ

Pursuant to Rules 30 and 26 of the Federal Rules of Civil Procedure ("FRCP"), plaintiff Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff") submits this memorandum in opposition to the letter brief submitted by defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Mr. Nadal", collectively "Defendants") requesting permission from the Court to reopen Ms. Gaujacq's deposition for another half-day (the "Motion").

### SUMMARY OF POSITION

Defendants conducted a 14 ½ hour deposition of Ms. Gaujacq, spanning two days, and chose the manner and methods to question Ms. Gaujacq during this deposition, including dividing responsibilities among counsel. Defendants chose to use a multitude of documents, admitted on the record during the deposition that they were moving at a "slow pace," asked duplicative and sometimes largely irrelevant questions, and now assert that they need ½ of what is typically permitted under the Rules to complete the deposition. Defendants bear a very heavy burden in establishing "good cause," especially where they have already received,

and agreed to, more than TWO times the amount permitted by the Rules. The proffered reasons by the Defendants are pretextual, and do not justify the continuation of the deposition at all, much less justify having Ms. Gaujacq travel yet again from Mississippi with limited resources and jeopardizing her status at her new job, to answer questions for an additional 50% of the time allotted litigants in all other cases filed with this Court, and all other Federal Courts in the United States.

Defendants appear to focus on the area of damages in their justification for continuing the deposition. As set forth below, Defendants propounded significant written discovery, to which Ms. Gaujacq responded fully and has diligently supplemented. None of that discovery sought the information they now claim surprises them at this late date. Moreover, the Plaintiff has consented to a Defense Mental Examination ("DME"), and the Defendants have subpoenaed Ms. Gaujacq's current employer for documents, which they have received, and have now subpoenaed Ms. Gaujacq's employer for deposition, threatening to take at least 4 hours of deposition from them. All of these sources provide ample opportunity to seek the information Defendants assert must be questioned of Ms. Gaujacq. Moreover, Defendants fail to explain to this Court why, if these areas are so important, they were not asked in the first 14 ½ hours of Ms. Gaujacq's deposition.

Ms. Gaujacq completed all of the depositions of the Defendants in the allotted time or less, even with significant translation and responsiveness issues. There is simply no reason Defendants could not accomplish the same. Given the tremendous hardship to Ms. Gaujacq, and the failure of Defendants to indicate a scintilla of prejudice if not able to take further deposition of Ms. Gaujacq, coupled with Defendants' failure to explain how or why they did not seek this information from Ms. Gaujacq earlier, through other discovery or the deposition,

and how the additional discovery will not provide sufficient information, all justify the denial of Defendants' motion.

Defendants issued requests for production consisting of over 142 document requests (not including sub-parts) to which Ms. Gaujacq has responded, a set of interrogatories to which Ms. Gaujacq has responded and dutifully supplemented four times, the timely receipt of two expert reports, and two extra-long days of depositions lasting approximately fourteen and a half hours, and an impending DME.

After lengthy disputes among the parties after Defendants scheduled, and then refused to take Ms. Gaujacq's deposition when she traveled here in January to provide the deposition, the parties entered into a Consent Order, providing for TWO days of deposition of Ms. Gaujacq, twice the amount allotted by Fed. R. Civ. P. 30(d)(2). This was an agreement arrived at by counsel. As is clear from the motion, Defendants are attempting to violate "Rule Number One of professionalism and civility among lawyers – a deal is a deal." Banks v. Office of the Senate Sergeant-At-Arms and Doorkeeper, 222 F.R.D. 7, 22 (D.D.C. 2004)(M.J. Facciola) (denying motion to reopen plaintiff's deposition in employment discrimination case after parties agreed to limit deposition to an hour and a half after the seven hours permitted by Rule 30(d)(2)).

**ARGUMENT**

**I.     STANDARD FOR REOPENING A DEPOSITION**

Pursuant to Fed. R. Civ. P. 30(d)(1), a party must seek leave of the Court to reopen a deposition after a party has been deposed for either seven hours or for a longer time as agreed to by the parties. Here, in an effort to accommodate Defendants, Ms. Gaujacq consented to

3

double the length of her deposition to two seven-hour days beginning at 9:30 a.m. *See* Consent Order, entered March 10, 2006. Attachment 1.

A motion to reopen a deposition is also regulated by Rule 26(b)(2). *See* Fed. R. Civ. P. 30(d)(2). Rule 26(b)(2) requires the Court to limit discovery in either of two circumstances, both of which apply here: (i) where "the party seeking discovery has had ample opportunity . . . to obtain the information sought," <u>or</u> (ii) where "the burden or expense of the proposed discovery outweighs its likely benefit." *See, e.g.*, Export-Import Bank of the United States v. Asia Pulp & Paper Co., 232 F.R.D. 103, 112 (S.D.N.Y. 2005)(Francis, J.) (denying motion to reopen deposition where party had opportunity to obtain information and benefit to movant was outweighed by burden of a new deposition).

Here, the Defendants propounded Interrogatories and Requests for Admissions. Although the Complaint alleges emotional distress damages, Complaint, ¶¶ 232, 251, 261, 268, 282, 292, 308, 318, 319, 330, and 353, and Ms. Gaujacq identified emotional distress as a substantial factor in her damages calculation in her Initial Disclosure Statement, p. 8 ("Ms. Gaujacq is requesting emotional distress and other compensatory damages"), none of Defendants' discovery asked for the Plaintiff to explain her emotional distress damages. Attachment 2. Notwithstanding, Ms. Gaujacq discussed her upset and emotional distress during the course of the deposition, and was cut-off by counsel when she raised it, or counsel deliberately ignored the testimony and moved to another area. Defendants further chose not to ask specific questions about Ms. Gaujacq's emotional distress damages. CJ Tr., pp. 525-530, 544-57, Attachment 3.

The parties had agreed early to a March 31 deadline for Expert Reports, and Ms. Gaujacq had already seen Dr. Gold as of the time of her deposition. However, Defendants

4

never asked Ms. Gaujacq about consulting with an expert witness; they only asked, through Interrogatories and deposition, if Ms. Gaujacq had been treated by any health care professional for emotional distress, to which Ms. Gaujacq truthfully answered that she had not. Defendants did not follow up in either mode of discovery asking Ms. Gaujacq to explain her emotional distress. Finally, Defendants have requested, and Ms. Gaujacq has consented to, a DME that Defendants contend will last up to 8 hours and will include extensive testing. Defendants will also have the opportunity to depose Ms. Gaujacq's expert witness.

Because Defendants cannot demonstrate that they were denied any opportunity to obtain the damages information they now seek or that the benefit will outweigh the burden on Ms. Gaujacq for having to sit for a third day of depositions, Defendants' Motion should be denied.

## II. DEFENDANTS PROVIDED NO LEGITIMATE EXCUSE FOR NOT BEING ABLE TO COMPLETE MS. GAUJACQ'S DEPOSITION IN TWO DAYS

Defendants argue that there are four reasons they could not timely complete Ms. Gaujacq's deposition, (1) the volume of Ms. Gaujacq's allegations, (2) the volume of documents, (3) Entergy Nuclear produced allegedly relevant documents and (4) Ms. Gaujacq's "lengthy" and "often non-responsive answers." See Motion, pp. 2-3. None of these reasons are valid. Defendants were well aware of the allegations, had conducted extensive paper discovery, and had, literally MONTHS to plan how to best use the 14 ½ hours of deposition. Moreover, as part of the resolution of the parties' discovery disputes, the Defendants agreed to take Ms. Gaujacq's deposition for two 7-hour days. Ms. Gaujacq was able to take the deposition of Mr. Nadal, who was a primary actor, an individual defendant and the primary corporate designee for both EDF and EDFINA, in two days. The topics needed to be covered for those three depositions far exceeded any need by the Defendants, yet

5

the Plaintiff complied with the Consent Order and completed the deposition in the allotted time.

Defendants further contend that they did not receive the documents from ENTERGY until after the deposition. Given when Defendants subpoenaed the documents (Feb. 23, 2006), they would not have had them if Defendants had taken Ms. Gaujacq's deposition in January, when they first scheduled it and had no expectation that they would have them for Ms. Gaujacq's deposition taken on March 16 and 17. Moreover, Ms. Gaujacq produced the responsive documents asked relating to ENTERGY in her discovery long before the deposition. Finally, Defendants have scheduled the deposition of ENTERGY (corporate designee AND Mr. Schneider, the person hiring Ms. Gaujacq) in Mississippi on May 24, 2006. Any information they assert is relevant to Ms. Gaujacq's damages can surely be obtained in that 4 hour deposition.

With respect to Ms. Gaujacq's supposed "lengthy" and "non-responsive answers," Defendants are unable to provide a single example of either. In fact, any delay or time overruns were caused by Defendants themselves. Defendants admitted in the deposition that they were asking questions "at what seems like my slow pace." Catherine Gaujacq Deposition Transcript ("CG Tr."), p. 63:7-10, Attachment 4. Defendants also made a strategic decision to interrogate Ms. Gaujacq duplicatively on the process of turning in her laptop computer to the company by two sets of attorneys -- which has no bearing on the claims and defenses raised in the lawsuit and takes up approximately 30 pages Ms. Gaujacq's deposition transcript. CG Tr., pp. 17-31, 462-472, 496-497, Attachment 5. These questions were asked notwithstanding that EDF offered to sell Ms. Gaujacq the laptop, and only after she declined the offer and returned the computer, months after her termination, did EDF raise

6

any issue of the laptop. It is a red-herring, at best, and surely not worthy of 30 pages of questions.

Far from being uncooperative, Ms. Gaujacq made every effort to accommodate Defendants, allowing them to depose her for an additional hour over the agreed time. The first day of Ms. Gaujacq's deposition started at 9:30 a.m. and lasted six hours and thirty-five minutes excluding time for breaks, ending at 5:00 p.m. The deposition ended twenty-five minutes early at Defendants' request. See CG Tr., pp. 252-53, Attachment 6. Defendants gave no indication at that time that they believed Ms. Gaujacq was being anything but cooperative, that the deposition was running behind schedule, or that they foresaw any need to extend the deposition past the agreed upon limit.

On the second day of Ms. Gaujacq's deposition, to accommodate Defendants and allow them to make up for any lost time caused by their decision to end early, Ms. Gaujacq agreed to Defendants' request to begin at 8:30 a.m., an hour earlier than the agreed time, and ending at 5:30 p.m. See id. By agreeing to start early, Ms. Gaujacq gave Defendants approximately fifty minutes of additional deposition time to which they would not otherwise have been entitled.

### III. DR. GOLD'S DIAGNOSIS OF MS. GAUJACQ'S POST-TERMINATION DEPRESSION IS NOT A BASIS FOR REOPENING THE DEPOSITION

Defendants also claim they are entitled to reopen Ms. Gaujacq's deposition because they only recently became aware that Plaintiffs' expert witness concluded that Ms. Gaujacq suffered "an episode of major depression." Motion, pp. 1-2. This diagnosis was made by Dr. Liza H. Gold, MD in connection with Plaintiffs' Expert Report, and stated that in her opinion,

7

Ms. Gaujacq suffered "an episode of major depression, beginning in approximately June or July 2004, and continuing to this time."[1]

Though Defendants act surprised by Dr. Gold's diagnosis that Ms. Gaujacq suffered a "major depression," this information is a medical conclusion by an expert, which the parties agreed was not due until March 31, 2006. Ms. Gaujacq alleged emotional distress damages in the Complaint, filed a year ago. Complaint, ¶¶ 232, 251, 261, 268, 282, 292, 308, 318, 319, 330, and 353. Notwithstanding, Defendants chose not to propound any Interrogatories asking for Ms. Gaujacq to explain her level of emotional distress. Defendants' Interrogatories, Attachment 7. When Ms. Gaujacq volunteered during her deposition aspects of her emotional distress, she was either interrupted or the response was not followed up by Defendants. It is explicitly through Defendants' choice that this was not pursued.

Even though Defendants chose not to include Ms. Gaujacq's emotional distress damages in the Interrogatories, or to follow up on any of her testimony of the distress during the deposition, the Defendants still have ample opportunity to discover that issue. Dr. Gold provided a timely written Report. Ms. Gaujacq has agreed to a DME.[2] Both parties are permitted to depose each other's experts.

Moreover, there is no way Defendants could have contended that they should have or would have known of the expert's opinion prior to the deposition of Ms. Gaujacq. Defendants agreed to the date of March 31, 2006 for the Expert Reports, and further provided in the same Order that Ms. Gaujacq's deposition would be taken, as early as possible, in January, 2006.

---

[1] The Report is not being attached because of the confidential nature of the information; both parties agree that is a conclusion in Dr. Gold's report.
[2] The terms and conditions of the DME are still being worked out and a Consent Order is expected to be submitted to the Court shortly, but Ms. Gaujacq has already made arrangements to fly to Washington D.C. and provide the DME at 10:00 a.m. on May 25, 2006 at the offices of the psychiatrist selected by Defendants.

Defendants have simply failed to even assert, much less demonstrate prejudice or good cause to depose Ms. Gaujacq on these issues.

## IV. DEFENDANTS HAD EVERY OPPORTUNITY TO OBTAIN THE DAMAGES INFORMATION THEY NOW SEEK

Defendants "had ample opportunity by discovery in the action to obtain the information sought," and therefore have not met the heavy burden of good cause. *See* Fed. R. Civ. P. 26(b)(2); *see* also Export-Import Bank, 232 F.R.D. at 112. The only substantive topic Defendants seek with the requested deposition is on Ms. Gaujacq's damages, of which they have had ample opportunity to take discovery.[3]

As discussed above, Ms. Gaujacq testified on several occasions at her deposition that she was "scared to death," "emotional," and "cried" as a result of Defendants' discriminatory and retaliatory conduct. CJ Tr., pp. 185-89, 225, 408-17, Attachment 8.

Defendants could have requested information concerning Ms. Gaujacq's mental state and/or emotional distress damages in the Interrogatories, yet failed to do so. Defendants' reliance on Interrogatory No. 13 also does nothing for their argument and takes Ms. Gaujacq's response entirely out of context. *See* Motion, p.2. Defendants' Interrogatory No. 13 merely requests that Ms. Gaujacq identify "all medical professionals . . . from whom [she] sought or received treatment." (emphasis added). Ms. Gaujacq did not seek treatment from her expert witness, Dr. Gold. Ms. Gaujacq's response to this question that she has not "seen any health

---

[3] Defendants also raise an issue concerning the need to depose Ms. Gaujacq's on her errata sheet discussing a non-substantive issue whether she was in France or Washington, DC on a specific date. *See* Motion, p.2. This argument is a red-herring; Defendants admit that the only relevance of this line of questioning would be Ms. Gaujacq's credibility, does not pertain to any claims or defenses and can easily be addressed at trial. *See* Stamp v. Brown, 1990 U.S. Dist. Lexis 16071 (N.D. Ill. 1990) (affirming Magistrate's decision to deny motion to reopen depositions based on newly discovered evidence because the "deposition information sought did not address the merits of the claims presented in the complaint, but only went to the credibility of the witnesses"). Attachment 10.

9

professional for any emotional or mental health reasons" was accurate when made and remains accurate today. Attachment 9. In fact, in a telephone conversation raising this issue with Defendants, Defendants conceded Ms. Gaujacq correctly responded and that the Interrogatory was not asking for expert witness information.

## V. THE BURDEN TO MS. GAUJACQ FROM A THIRD DAY OF DEPOSITIONS OUTWEIGHS ANY BENEFIT TO DEFENDANTS

Defendants' Motion should also be denied for the separate and distinct reason that Defendants have asserted no prejudice, have provided no basis constituting "good cause," are seeking relief that would exceed the Federal Rules of Civil Procedures' limitation by more than double, and the burden on Ms. Gaujacq of having to take more time off work and travel here for a third day of deposition far outweighs any benefits to Defendants.

Ms. Gaujacq began a new job, after 25 years with Defendants. She has used up her vacation time, and is under an immense amount of pressure to succeed. Ms. Gaujacq is the sole source of income for her family. The Defendants have already compounded the problems for Ms. Gaujacq by unnecessarily subpoenaing documents and TWO separate depositions of ENTERGY employees, where any possible relevance is marginal, but is a common tactic by defendants to harass and make the plaintiff uncomfortable in her new employment.

This is on top of Ms. Gaujacq traveling here for a deposition that was never taken by Defendants in January, traveling here for the examination with Dr. Gold, traveling here for the two-day deposition in this case, and traveling here later this month for the DME. While Ms. Gaujacq was willing to make such sacrifices to give Defendants' an extra day of deposition on top of what they were entitled to under the Rules, she should not be forced into yet another deposition due to Defendants' discovery mistakes. Kifafi v. Hilton Hotels Retirement Plan,

Case 1:05-cv-00969-HHK    Document 56    Filed 05/11/2006    Page 11 of 11


2000 U.S. Dist. Lexis 17967, * 3-4 (D.D.C. 2000)(M.J. Kay), *citing* Stamp v. Brown, 1990 U.S. Dist. Lexis 16071 (N.D. Ill. 1990) ("discovery should not be reopened to enable a party to deal with its own deposition mistakes"). Attachment 10.

Given the Defendants' failure to even assert prejudice, the multitude of opportunities Defendants have had, and continue to have, to discover the damages through other sources, or the two day deposition of Ms. Gaujacq, the absence of explanation for the admittedly slow taking of the first two days of deposition, the decision not to ask what are now asserted as necessary in the first two days, and the ample opportunities still ahead to discover this information, Defendants' motion should be denied.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court deny Defendants' Motion to Reopen the Deposition of Ms. Gaujacq.

May 11, 2006                              Respectfully Submitted,

                                          Elaine Charlson Bredehoft
                                          D.C. Bar No. 441425
                                          S. Christian Wickwire
                                          D.C. Bar No. 488797
                                          CHARLSON BREDEHOFT & COHEN, P.C.
                                          11260 Roger Bacon Drive
                                          Suite 201
                                          Reston, Virginia 20190
                                          (703) 318-6800

                                          Counsel for Plaintiff
                                            Catherine Gaujacq

11