# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ           )
                            )
        Plaintiff,          )
                            )
        v.                  )        No  1:05CV0969 (JGP)
                            )
ELECTRICITE DE FRANCE       )
INTERNATIONAL NORTH AMERICA, )
INC , et al.                )
                            )
        Defendants          )
_____)

**CONSENT ORDER**

On December 30, 2005, Defendants Electricite de France ("EDF"), Electricite de France

International North America ("EDFINA"), and Christian Nadal ("Mr Nadal"), filed Defendants'

Motion to Compel and For a Protective Order  On January 18, 2006, Plaintiff, Catherine Gaujacq

("Ms. Gaujacq"), filed a Supplement to Alert this Court to New Developments Impacting the

Motions Before this Court and Motion for Enforcement of the Rules  The parties having come to an

agreement concerning the issues raised in those motions, hereby agree to withdraw these motions,

based upon the following agreement reached between the parties  Accordingly, it is hereby

**ORDERED**, as follows:

1)      The deposition of Ms. Gaujacq will be taken at the offices of Charlson, Bredehoft &

        Cohen, P C C. in Reston, Virginia on March 16 and 17, 2006, beginning at 9:30 a m

        each day.  The deposition will be limited to 7 hours each day (excluding reasonable

        breaks taken by either party), unless agreed upon otherwise by the parties, or unless a

        party seeks further Order of this Court;

2)      EDF will provide counsel for Plaintiff by close of business March 17, 2006 a list of

        the areas of knowledge from Attachment A of Plaintiff's 30(b)(6) deposition notice

to EDFINA and Plaintiff's 30(b)(6) deposition notice to EDF detailing which
specific topic areas (by number and letter) the EDF corporate designee will be
prepared to testify at his or her deposition scheduled for March 23 and 24, and which
areas Mr Nadal will testify to on behalf of EDIFINA or EDF at his deposition
scheduled for April 4 and 5. In the event there are areas of Attachment A not
designated for either witness, EDF and EDFINA shall provide plaintiff with
designations of the witnesses to testify as to those topic areas, and arrange for a
mutually agreeable time, date and place for such testimony;

3)    The deposition of the corporate designee for EDF, pursuant to Rule 30(b)(6), will be
taken at the offices of Steptoe & Johnson, LLP in Washington D.C on March 23 and
24, 2006, beginning each day at 9:30 a.m. each day  An interpreter will be provided
at the expense of Ms. Gaujacq  The deposition will be limited to 7 hours each day
(excluding reasonable breaks taken by either party), unless agreed upon otherwise by
the parties, or unless a party seeks further Order of this Court;

4)    The deposition of Mr Nadal, both in his individual capacity and in his capacity as
corporate designee for EDF and EDFINA, will be taken at the offices of Steptoe &
Johnson, LLP in Washington D.C on April 4 and 5, 2006, beginning at 9:30 a.m.
The deposition will be limited to 7 hours each day (excluding reasonable breaks
taken by either party), unless agreed upon otherwise by the parties, or unless a party
seeks further Order of this Court;

5)    The deposition of Mr. Yann Laroche will be taken on April 21, 2006, in Paris,
France at the offices of EDF's outside counsel, Gide Loyrette Nouel, 26, cours
Albert 1er, 75000 Paris, beginning at 8:30 a.m  An interpreter will be provided at the
expense of Ms Gaujacq and a court reporter will be obtained at the expense of Ms.

2

Gaujacq  The parties agree to abide by the Federal Rules of Civil Procedure governing the taking of the deposition, and that the deposition may be used for all purposes permitted by the Federal Rules of Civil Procedure and the Local Rules of this Court. No party will challenge the legality of the taking of the deposition or the use of the deposition transcript in this litigation;

6)    The deposition of Ms. Adja Ba will be taken at the offices of Steptoe & Johnson, LLP in Washington D C  on April 17, 2006, beginning at 10:00 a m ;

7)    The deposition of Mr  Alexandre Audie will be taken at the offices of Steptoe & Johnson, LLP in Washington D C  on April 25, 2006, beginning at 10:00 a m ;

8)    Unless otherwise set forth in this Order, agreed upon by the parties, or by further Order of this Court, each day of deposition will last a maximum of seven (7) hours, excluding reasonable breaks taken by either party;

9)    All parties are free to request this Court's assistance in scheduling less than or additional time of deposition for each deponent, if any party feels the deposition is being unreasonably extended or delayed, or there is otherwise good cause to extend or decrease the time for completion of the deposition;

10)   Of the depositions scheduled in this Order, Plaintiff is responsible for providing interpreters for only the depositions of the EDF 30(b)(6) corporate designee and Mr Laroche, and, if EDF and EDFINA determine in good faith that Mr. Audie requires an interpreter, Ms  Gaujacq is responsible for providing an interpreter for Mr Audie's deposition as well;

11)   Ms  Gaujacq, Mr  Nadal, and Ms  Ba do not require interpreters during their respective depositions  Counsel for EDF and EDFINA will advise Ms  Gaujacq's

3

counsel by April 6, 2006 if an interpreter will be required for the deposition of Mr

Audie.

**SO ORDERED.**

DATE: _____          _____
                               Hon. John Garrett Penn
                               United States District Judge

**AGREED TO AS TO FORM AND CONTENT:**

*Counsel for Plaintiff*                    *Counsel for Defendant*
  *Catherine Gaujacq*                        *Christian Nadal*

CHARLSON BREDEHOFT & COHEN, P.C.           STEPTOE & JOHNSON, LLP

_____             _____
Elaine Charlson Bredehoft                  Ronald S. Cooper
D.C. Bar No. 441425                        D.C. Bar No. 149799
Kathleen Z. Quill                          David A. Clark
D.C. Bar No. 489079                        D.C. Bar No. 473279
CHARLSON BREDEHOFT & COHEN, P.C.           STEPTOE & JOHNSON, LLP
11260 Roger Bacon Drive, Ste. 201          1330 Connecticut Ave., NW
Reston, Virginia 20190                     Washington, D.C. 20036
(703) 318-6800                             (202) 429-3000


Counsel for Defendants
*Electricite de France International North America
& Electricite de France*

HOGUET NEWMAN & REGAL, LLP

_____
Laura B. Hoguet
D.C. Bar No. 200915
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808

4

# ATTACHMENT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

CATHERINE GAUJACQ )
)
Plaintiff, )
)
v )  Civil Action No 1:05CV0969 (JGP)
)
ELECTRICITE DE FRANCE )
INTERNATIONAL NORTH AMERICA, )
et al. )
)
Defendants )
)

### PLAINTIFF'S INITIAL DISCLOSURE STATEMENT

Plaintiff, Catherine Gaujacq, by counsel and pursuant to Fed.R.Civ P. 26 (a)

submits the following initial disclosures:

**Subpart (a):**  Individuals who may have information in support of Plaintiff's

claims in addition to the Plaintiff:

| Name/Role | Address/Phone | Subject |
|---|---|---|
| **Christian Nadal**<br>Replacement as President of EDFINA<br>Former supervisor as President of EDFINA | Washington, DC-USA | Harassment, discrimination, retaliation, defamation, interference. |
| **Fernando Ponasso**<br>EDF Senior VP<br>Chairman of EDFINA | Washington, DC-USA<br>Paris(FRANCE) | Knowledge of discrimination, retaliation and unequal pay   Plaintiff's performance  Knowledge of EDF HR policies for high level executives |

| | | |
|---|---|---|
| **Yann Laroche**<br>Senior VP<br>Human Resources EDF<br>S A | Paris(FRANCE) | Knowledge of expectations, retaliation and unequal pay. Knowledge of EDF HR policies for high level executives |
| **Bernard Dupraz**<br>Senior VP EDF<br>Former | Paris(FRANCE) | Knowledge of EDF R&D and Engineering businesses of EDF in the US Knowledge of harassment and discrimination |
| **Laurent Stricker**<br>Senior VP EDF<br>Former supervisor | Paris(FRANCE) | Knowledge of harassment and discrimination |
| **Jean-Luc Foret**<br>Former co-worker | Lyon (FRANCE) | Knowledge of harassment and defamation Knowledge of work environment |
| **Walker Nolan**<br>Consultant with EDFINA | Washington, DC-USA | Plaintiff's performance and conduct  Knowledge of defamation |
| **Mike Slavitt**<br>Former CPA with EDFINA | Washington, DC-USA | Knowledge of harassment, discrimination  Knowledge of EDF/EDFINA accounting |
| **Adja MAME BA**<br>Former co-worker | Washington, DC-USA | Plaintiff's and Defendant's performance and conduct Knowledge of harassment and discrimination Knowledge of work environment  Knowledge of EDF/EDFINA accounting |
| **Benoit Dreux**<br>Co-worker<br>VP of EDFINA | Washington, DC-USA | Knowledge of harassment, discrimination  Knowledge of work environment Knowledge of EDF/EDFINA accounting |

2

**Subpart (b):**  Documents that may support the Plaintiff's claims are as follows:

1  Plaintiff's Employment contracts EDF and EDFINA 2000

2.  Plaintiff's Employment contracts EDF and EDFINA 2004

3  EDFINA Plaintiff's housing lease contract

4  EDFINA applications for L1A visas Plaintiff's and Defendant Christian Nadal to the INS

5  Plaintiff's Pay-stubs and W2s

6.  CG performance evaluation documents 2002 2003 2004 and 2000

7  Plaintiff's diplomas and recognitions

8  EDFINA Defendant Christian Nadal housing lease contract

9.  EDFINA applications for L1A visas Plaintiff's and Defendant Christian Nadal to the INS

10  Defendant Christian Nadal Pay-stub

11  Insurance policy protecting EDFINA Officers from personal civil liability when acting in the course of their employment

12  EDFINA Business credit cards statements and activities related to the period of the dispute

13  List of EDFINA employees

14  EDFINA monthly financial statements to EDF S A  over the period

15  EDF compensation policy for high level executives over the period of the dispute

16  Guide of French EDF employees working abroad relevant to the period of the dispute

17  Statistics on EDF S A  gender discriminatory practices with high level executives

18  Corporate documents related to EDF S A and EDFINA businesses in the USA and worldwide

19  Documents related to Plaintiff's current revenues and expenses

3

20  Documents related to damages incurred

21  Documents received from EEOC

22  Letters, e-mails, transcripts, records of phone conversations related to the events asserted and described in the Complaint

**Documents anticipated to be produced by Defendants**

23  Plaintiff's Employment contracts EDF and EDFINA 2000 and 2004

24  EDFINA housing lease contracts Plaintiff's and Defendant Christian Nadal

25  EDFINA applications for visas Plaintiff's and Defendant Christian Nadal to the Department of Homeland Security

26  EDF/EDFINA Plaintiff's and Defendant Christian Nadal Pay-stubs and W2s

27  Checks voided in the company's books because of Benoit Dreux shredding in front of other employees

28  EDFINA monthly financial statements to EDF S.A over the period of the dispute

29  EDFINA Business credit cards statements and activities related to the period of the dispute

30  List of EDFINA employees

31  Christian Nadal employment contracts with EDF and EDFINA June, 1st, 2004

32  CG performance evaluation documents 2002 2003  and 2000

33  EDF compensation policies for high level executives

34  Guide of French EDF employees working abroad

35  Statistics on EDF S.A  gender discriminatory practices with high level executives

36  NUSTART agreements

37  EPRI agreements

38  Letters, e-mails, transcripts and records of phone conversations related to the events

39  EDFINA active visa applications of all employees over the period

40  Pay-stubs and W2 Christian Nadal 2004

41  Christian Nadal performance evaluation documents 2000 to 2004

42.  CN employment contract EDF and EDFINA 2004

43.  EDF compensation policy for high level executives describing ranking and seniority system, as well as EDFINA President position place in the system

44  EDFINA articles of incorporations, by-laws and board decisions 2004.

45.  Guide of French EDF employees working abroad

46  EDF internal financial Audit report of EDFINA July 2004

47  List of EDFINA employees over the period with indication of active visas sponsored employees

48.  Corporate documents related to EDF S A and EDFINA businesses in the USA and worldwide such as the official document prepared for the partial IPO of the company

49  Insurance policy protecting EDFINA Officers from civil personal liability when acting in the course of their employment

50  Letters, e-mails, transcripts and records of phone conversations related to the events

**Subpart (c):**

A        Plaintiff's damages claim, and method of computation, are set forth as

follows (these are subject to supplementation through discovery):

| Relief EPA TITLE VII until September 30th, 2005: | |
|---|---|
| 11/01/2001 to 10/31/2004 3-years back-pay difference in compensation male/female President EDFINA | $ 359,958 |
| 11/01/2004 to 01/07/2005 difference in compensation male President EDFINA Plaintiff's | $ 37,761 |
| 01/07/2004 to 04/04/2005 difference in compensation male President EDFINA Plaintiff unemployed | $ 84,314 |
| 04/04/2005 to 09/30/2005 front pay difference in compensation male President EDFINA Plaintiff's new job | $ 112,737 |
| **TOTAL:** | **$ 594,770** |

6

| Actual monetary losses until September 30th, 2005: | | |
|---|---|---|
| Differed bonus at termination owed and not paid | | $ 114,384 |
| Moving expenses differential male President of EDFINA and Plaintiff | | $ 45,118 |
| Unpaid expenses EDFINA-EDF | | $ 1,721 30 |
| Loss of 27 vacation days | | $ 29,996 |
| Health insurance 11/01/2004 to 04/03/2005 | | $ 2,503 |
| Moving expenses following EDF breach of housing lease contract | | $ 4,500 |
| Unpaid bonus and profit sharing 2004 | | $ 21,975 |
| 4 round trips Washington-Paris 2004 airfares not paid | | $ 16,000 |
| Loss of Husband's one year salary because of company's action | | $ 38,519 |
| Expenses to find a job | | $ 500 |
| Expenses in the new job caused by Defendants' action | | $ 24,540 |
| **TOTAL:** | | **$ 299,756.30** |

**All calculations are based on the following template for which all documents are available in EDF and EDFINA books and Plaintiff's documents:**

| Net compensation male President of EDFINA | | $ 337,254 |
|---|---|---|
| Net compensation Plaintiff President and Vice-President of EDFINA until 10/31/2004 | | $ 217,268 |
| Net compensation Plaintiff EDF 11/01/2004 to 01/07/2005 | | $ 110,688 |
| Net compensation Plaintiff unemployed 01/08/2005 to 04/04/2005 | | $ 0 |
| Net compensation Plaintiff new job 04/04/2005 to 09/30/2005 | | $ 111,780 |

7

B    Future lost income and expenses: Ms. Gaujacq will be claiming future lost income and expenses. The amounts would be based upon the information above, as well as below:

| Future Monetary losses after September 30th, 2005: | |
|---|---|
| Preferential Stock owed and not proposed | Still in calculation |
| 04/04/2005 to 07/31/2007 front pay difference in compensation male President EDFINA Plaintiff's new job | $ 453,238 |
| Pension differential from termination at 47 instead of 60 years old | Still in calculation |
| Moving of furniture in the USA stored under contract with EDF in France | $ 20,000 |
| Expenses in the new job caused by Defendants' action | $ 11,400 |
| **TOTAL:** | **$ 484,638** |

C    Compensatory damages other than lost income and benefits: Ms. Gaujacq is requesting emotional distress and other compensatory damages. This amount is determined by the jury.

D    Punitive damages: Ms. Gaujacq is requesting punitive damages. The jury determines this amount.

E    Attorney fees and costs: Ms. Gaujacq is requesting attorneys' fees and costs. These amounts will continue to be incurred, and are to be determined by the Court upon Petition submitted after trial.

**Subpart (d):** Insurance information is not applicable to Plaintiff

8

October 27, 2005                    Respectfully submitted,

                                    Elaine Charlson Bredehoft /JAH
                                    Elaine Charlson Bredehoft
                                    Virginia Bar No. 23766
                                    Kathleen Z. Quill
                                    Virginia Bar No. 66323
                                    CHARLSON BREDEHOFT & COHEN, P.C.
                                    11260 Roger Bacon Drive
                                    Suite 201
                                    Reston, Virginia 20190
                                    (703) 318-6800

                                    Counsel for Plaintiff,
                                      Catherine Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S INITIAL
DISCLOSURE STATEMENT by first class mail, postage pre-paid, this 27th day of
October, 2005 on counsel for defendants addressed as follows:

                    Laura B. Hoguet, Esq.
                    HOGUET NEWMAN & REGAL, LLP
                    10 East 40th Street
                    New York, New York 10016
                    (212) 689-8808

                    Counsel for Defendants
                      Electricite de France, S.A. and
                      Electricite de France International North America, Inc.

                    Ronald S. Cooper, Esq.
                    STEPTOE & JOHNSON LLP
                    1330 Connecticut Avenue, NW
                    Washington, DC 20036
                    (202) 429-3000

                    Counsel for Defendant
                      Christian Nadal

                                    Elaine Charlson Bredehoft /JAH
                                    Elaine Charlson Bredehoft

9

# ATTACHMENT 3

In the U.S. District Court

For the District of Columbia

------------------------------x

Catherine Gaujacq                    :

                                     : NO. 1:05CV0969

              v                      :

                                     :

Electricite de France                :
International, North                 :
America, et al                       :

------------------------------x

March 17, 2006

DEPOSITION OF:

              Catherine Gaujacq (Cont'd)

a witness, called by counsel pursuant to notice,

commencing at 8:41 a.m., which was taken at 11260

Roger Bacon Drive, Reston, VA

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                          www.DCCourtReporters.com
                          0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 525

1    remember, I did prepare this.

2    BY MR. COOPER:

3        Q.    Did you do it on a spreadsheet, on a

4    computer spreadsheet?

5        A.    I guess so.  I don't recall the document

6    you are talking about.

7        Q.    We're going to mark a series of documents

8    now.

9            These are basically -- the next one is going

10   to be a document that's called initial disclosures.

11           These are things that you filed at the

12   outset of this case that are required.  That's

13   number 82.

14                (Whereupon the proffered item was

15        marked as exhibit number 82.)

16       Q.    83 is going to be your supplemental

17   objections and responses to EDFINA's first set of

18   interrogatories.

19                (Whereupon the proffered item was

20        marked as exhibit number 83.)

21       Q.    And last but certainly not least we're

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area              Fax - (301) 593-8353
                              www.DCCourtReporters.com
                              0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 526

1    going to mark supplemental, plaintiff's supplemental

2    objections and responses to EDFINA's first request

3    for production of documents to plaintiff.  That's

4    number 84.

5                    (Whereupon the proffered item was

6            marked as exhibit number 84.)

7        Q.    Those are going to be sort of reference

8    materials for some of what we're going to do now.

9            If you'll look on page, the first document

10   that we just marked, 82 I think, look on --

11       A.    Would you mind?

12                    (Pause)

13   BY MR. COOPER:

14       Q.    If you'll look on page six of the initial

15   disclosures, that's where you began specifying the

16   relief that you're seeking in this action.

17       A.    Yes.

18       Q.    If you'll flip over to page seven, I want

19   to confirm my understanding that the figures that

20   appear at the bottom of the page are sort of the

21   basic ingredients for all of your damage

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 527

1    calculations.

2         These are the figures that you used in order

3    to make your calculations that appear elsewhere, is

4    that right?

5              MS. BREDEHOFT:   Objection to form.

6         A.   I'm not a specialist at all of these

7    things so what I can do is just explain, you know.

8    BY MR. COOPER:

9         Q.   Do the best you can.

10        A.   -- explain to you what -- where the debate

11   is of those figures.

12        Q.   I'm going to ask you particular questions

13   so you can tell me --

14        A.   I'm not really a specialist of these

15   things.

16        Q.   Are the net compensation figures for the

17   male president of EDFINA who I assume is Mr. Nadal,

18   is that correct?

19             Is that Mr. Nadal?

20        A.   Yes.

21        Q.   The net compensation for the plaintiff

Overnite Court Reporting Service  (301) 593-0671       Fax - (301) 593-8353
Washington, DC Metro Area       www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK   Document 56-3   Filed 05/11/2006   Page 21 of 42
CATHERINE GAUJACQ DEPOSITION   March 17, 2006          Gaujacq v. EDFINA

Page 528

1   president and vice-president of EDFINA, that's you?

2        A.   Yes.

3        Q.   Are those annual compensation figures?

4        A.   That's my estimate at this time.

5        Q.   You're going to need to borrow back

6   exhibit one perhaps, or you can take my word for it,

7   either way.

8        The complaint says that Mr. Nadal's annual

9   salary is $271,163.  It says that in your complaint.

10       Your initial disclosure says his salary is

11  $337,254.

12       Where did you get those two figures and

13  which one do you think is right?

14       A.   I took those two figures from estimates

15  from Christian Nadal's pay stub in December 2003 and

16  based on comparison with the benefits of the

17  expatriation contract.

18       To answer your question of which one is the

19  right one today, I don't think any of those is the

20  right one.  Because of the production of documents

21  that you did, I understand that these figures are

Overnite Court Reporting Service  (301) 593-0671      Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
                                         0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 529

1    not right.

2        Q.    We'll put that aside for the minute.

3    These figures aren't correct.

4            But the numbers that you would use for

5    making a damage calculation, would they include

6    differentials that are paid to EDF employees

7    stationed abroad?

8        A.    Yes, sure.  It's a total compensation.

9        Q.    Would they include fringe benefits?

10       A.    Yes.

11       Q.    Now, all these damage figures are

12   expressed in dollars.

13       A.    Yes.

14       Q.    You were paid and Mr. Nadal was paid and

15   is paid, I guess, in Euros, is that not right?

16       A.    Some elements are paid, were paid -- I'm

17   not working with this company any more so most of

18   the base elements were paid in Euros, yes, and some

19   benefits were paid by EDFINA.

20       Q.    But the payments that were made in Euros,

21   they were paid in France, were they not, into your

Page 530

1    bank in France?

2        A.    Yes.

3        Q.    How did you access the funds there?

4        A.    How did I access the funds?

5        Q.    Right.  If you needed money what did you

6    do?

7        A.    I would make a transfer on my American

8    account.

9        Q.    But you would exercise your power over the

10   French account to cause money to be transferred into

11   the United States?

12       A.    When needed, if needed.

13       Q.    How would you convert these figures that

14   are expressed in Euros into dollars?  How did you do

15   it?

16       A.    I took a website what were -- it was a

17   unique value I put on it.  I don't recall which one.

18   That's the basis.

19       Q.    But you would have to do that to come up

20   with dollars because the payments were in Euros?

21       A.    Yes, because some payments were in Euros

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 544

1    leave.

2         I understand you didn't want to go but you

3    had been instructed to return.

4         A.    I had been instructed to return but I had

5    refused the positions that were offered to me very

6    clearly in October.

7         I said no, I don't want this position.  I'm

8    going to lose too much money.  This position

9    was -- well, you don't want to hear that.

10        Q.    The next item on 82, which is your recap

11   of damages, is for the period when you were

12   unemployed.

13        A.    Yes.

14        Q.    Did you during that time have no earnings

15   whatsoever?

16        A.    The only earnings I had during this period

17   were the interest on a money market fund.

18        Q.    Did you qualify or try to qualify for any

19   sort of unemployment compensation?

20        A.    I did not, no.  I was worried about my

21   coverage of health insurance and I was really

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area        Fax - (301) 593-8353
                                 www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK   Document 56-3   Filed 05/11/2006   Page 25 of 42
CATHERINE GAUJACQ DEPOSITION   March 17, 2006         Gaujacq v. EDFINA

Page 545

1    worried at finding a job.

2         Q.   83, which is your response to

3    interrogatories.

4         A.   83?

5         Q.   Interrogatory number four -- I thought

6    this would speed it up if you look at what you've

7    already told us about anyone that you communicated

8    with about employment opportunities, and you say

9    that you didn't talk to anyone at all from the time

10   you went to work for EDFINA until August of 2004.

11   Is that correct?

12        A.   If I read my response, I have not been

13   employed or engaged as a freelancer or consultant.

14        Q.   This is earnings, not mitigation.  But you

15   did communicate -- no, I'm sorry.  It is about

16   efforts to seek employment.  From August 2000 to

17   August 2004 you didn't talk to anybody about

18   employment, is that right?

19        A.   You are asking me if I talked with anyone

20   about employment before?

21        Q.   August 2004.

Overnite Court Reporting Service  (301) 593-0671           Fax - (301) 593-8353
Washington, DC Metro Area              www.DCCourtReporters.com
                                                    0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 546

1          A.    I didn't.

2          Q.    You just confirmed what you told us in the

3     interrogatories.  That's fine.

4          A.    Okay.

5          Q.    It says in the fall of 2004 your situation

6     had deteriorated and you sent out resumes to

7     headhunters and companies and institutions in the

8     United States.

9          A.    I did.

10         Q.    I take it through August of 2004 you

11    thought the situation at EDFINA could be repaired?

12         A.    During that period and until I received my

13    termination letter by EDF I always had in mind that

14    this company would change its mind about what

15    happened to me and so I was not really looking at

16    any specific job until I got this famous termination

17    letter.

18         I really thought they would change their

19    mind.  I mean, I worked 25 years with this company.

20         Q.    In the fall of 2004 you sent resumes to

21    headhunters?

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
                                   0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 547

1          A.    Yes.

2          Q.    What headhunters?

3          A.    That's a good question.  I don't remember

4     the names.

5          Q.    Did you keep any records of who you

6     communicated with?

7          A.    No.

8          Q.    No copies of the letters?

9          A.    Well, my resume.

10         Q.    What companies did you communicate with?

11         A.    In the energy sector I would try to -- I

12    sent a resume in the energy sector.

13         Q.    To what companies?

14         A.    I don't remember.  There are 200 companies

15    or so in the United States.  I sent an e-mail to

16    some of those and ...

17         Q.    Did you keep any copies of those e-mails?

18         A.    No.

19         Q.    Were any of the companies you communicated

20    with NuStart partners of EDF?

21         A.    Well, I guess my resume was sent to some

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK    Document 56-3    Filed 05/11/2006    Page 28 of 42
CATHERINE GAUJACQ DEPOSITION    March 17, 2006                Gaujacq v. EDFINA

Page 548

1    companies who were partners, yes.

2         Q.    By you or by the headhunters?

3         A.    They may have and I may have.  I cannot

4    tell you.

5         Q.    The next paragraph here lists people you

6    talked to at Entergy.

7         A.    Yes.

8         Q.    Before we go there, are there any other

9    individuals with whom you interviewed for employment

10   at other companies?

11        A.    I interviewed at INPO in late October.

12        Q.    What's the name of the company again?

13        A.    INPO.

14        Q.    Is that the only other company you

15   interviewed with?

16        A.    Yes.

17        Q.    Who did you interview at INPO?

18        A.    I don't recall the name.  Some high level

19   executive with INPO.

20        Q.    All the people for whom you sought -- with

21   whom you sought employment were in the

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
                                                      0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK   Document 56-3   Filed 05/11/2006   Page 29 of 42
CATHERINE GAUJACQ DEPOSITION   March 17, 2006        Gaujacq v. EDFINA

Page 549

1    United States.

2          You didn't seek employment in France or

3    anywhere else in the world?

4          A.   I did not in France because I knew -- EDF

5    has a monopoly in France over nuclear generation.

6    So I was done.  I was done.

7          I had no chance to find a job in a different

8    company in France.

9          Q.   The industry is bigger than generation,

10   isn't it?

11         A.   Yes.  Even though in the energy sector EDF

12   or GDF -- it was about the same thing and I knew

13   that in France I had no chance whatsoever to find a

14   job of a certain level and so my only chance was in

15   the US.

16         As you can see, I found a company where I'm

17   working now but in a less senior position that I was

18   at EDF and EDFINA and -- well, I'm glad I'm working

19   and I found a job.

20         Q.   Is the US a particularly attractive

21   economic environment for someone with your skills?

Page 550

1                    MS. BREDEHOFT:  Objection to form.

2       Go ahead.

3            A.    Could you rephrase?  I'm sorry.  Maybe I'm

4       tired.

5       BY MR. COOPER:

6            Q.    Let me tell a short story and I'll see if

7       you agree with me.

8                 In the United States we have been out of the

9       nuclear generation race compared to other parts of

10      the world for a long time; hence NuStart.

11                I would suspect that there's a shortage of

12      people with experience like you have in the industry

13      and that you would be an attractive candidate for a

14      lot of positions in the US.

15                Am I wrong?

16           A.    Well --

17                    MS. BREDEHOFT:  Objection to form but

18      go ahead.

19           A.    Depends on the part of your statement.

20      First, I think nuclear energy in this country is

21      20 percent of the base load and still growing even

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area                Fax - (301) 593-8353
                          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK   Document 56-3   Filed 05/11/2006   Page 31 of 42
CATHERINE GAUJACQ DEPOSITION   March 17, 2006        Gaujacq v. EDFINA

Page 551

1    without building new plants.

2         I think there's really an opportunity right

3    now to build new plants in this country but it's a

4    long way in the future.

5         I would have thought there were some

6    opportunities but obviously the only company at that

7    time answered to my request was Entergy and I can't

8    understand, since you have to be very qualified in

9    the nuclear industry, no offense to any other

10   generation or transmission or whatever, at the level

11   of employment I was thinking I was with EDF, well,

12   they didn't -- they didn't take it on my word what

13   my qualifications were and they were, I guess, all

14   of them, since EDF has clout on the nuclear

15   industry, they all asked, well, how crazy can you be

16   with such a brilliant career to leave EDF.

17        They always thought, I guess, I did

18   something wrong or I had been dishonest or whatever.

19        Right now I'm working my way with this

20   company to work for six months in different

21   locations kind of drove me crazy and, well, I'm

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area         www.DCCourtReporters.com
                                              0c0f48af-5751-478a-b896-e6bbdf0dd6d8

1    trying to show that my French skills in the nuclear

2    industry are helpful at Entergy.  It's not easy.

3    BY MR. COOPER:

4        Q.   You said that a lot of people were

5    concerned about why you would leave EDF.

6        A.   Oh, yes.

7        Q.   Who were these people?

8        A.   For example, I guess the INPO persons that

9    I had an interview with, because they were the only

10   one I had an interview with, ask me, you know, how

11   is it that you are leaving this company?

12       I didn't want to tell what was going on.  I

13   guess I was maybe too respectful of EDF at this time

14   and they ended up with a proposal that was just

15   really not, you know, way, way below my expectations

16   and --

17       Q.   And you don't remember the person you

18   talked to at INPO?

19       A.   Just a second.

20       I talked with two or three persons at INPO

21   and the person who asked me this question and I told

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
                                        0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 553

1    him I don't want to talk about it.  I'm looking for

2    his name.  I don't recall if it was the president or

3    the CEO of INPO.

4         Q.    What did you tell these people?

5         A.    Nothing.  I told them I don't want to talk

6    about why I'm leaving.

7         Q.    INPO is the only one that raised this

8    issue with you?

9         A.    Entergy did.

10        Q.    Who at Entergy?

11        A.    I don't recall who.

12        Q.    You've given us the --

13        A.    I went through some assessment or whatever

14   with one of their consultants in the process.  I

15   didn't say anything either, just said I don't want

16   to talk about it.

17        Q.    You say you talked to Pete Schneider,

18   vice-president of human resources?

19        A.    This was in December but I had other

20   meetings because I was employed by Entergy in

21   April 2004.  So I had other meetings with different

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 554

1   people later and those are the first I talked to at

2   Entergy.

3               MS. BREDEHOFT:  2005 or 2004 when you

4   became employed with Entergy?

5       A.   2005, I guess.

6               MS. BREDEHOFT:  I wanted to clean

7   that up.  Excuse me.

8               MS. HOGUET:  That's what it says here

9   too.

10              MS. BREDEHOFT:  It says 2004?

11      A.   It says what?

12  BY MR. COOPER:

13      Q.   Communications about employment

14  opportunities with Entergy in late December, 2004.

15      A.   That is right.  The other sequence of

16  recruitment were in 2005.

17           I don't recall if it was February.  I guess

18  it was February also.

19      Q.   So you were hired in April?

20      A.   Yes.

21      Q.   You continued to interview within the

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
                                          0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK    Document 56-3    Filed 05/11/2006    Page 35 of 42
CATHERINE GAUJACQ DEPOSITION    March 17, 2006    Gaujacq v. EDFINA

Page 555

1    company about other assignments?

2         A.    Excuse me.  I must be tired.  Can you say

3    that again?

4         Q.    I get the impression you're saying that

5    you interviewed initially and then were hired in

6    April but then there was more interviewing within

7    the company?

8         A.    The interview I was talking about were

9    before the job offer I received from Entergy.

10        Q.    Have you sought employment anywhere else

11   since Entergy?

12        A.    No.  I can tell you I was glad to find

13   this job because I had no other call, no other

14   contact from any other company and, well, I was

15   unemployed.

16        Q.    Back to 82.  The next line item is

17   $112,737 front pay difference in compensation, male

18   president, EDFINA, to plaintiff's new job.

19        A.    Yes.

20        Q.    On page eight -- I'm sorry.  Must be page

21   seven, net compensation in your new job is -- this

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 556

1    is a partial year, $111,780.

2         A.    On page seven where?

3         Q.    The last line says net compensation,

4    plaintiff, new job, 4/4/2005 to 9/30/2005 which is

5    five months short of a year.

6         A.    I would say this was a yearly -- I recall

7    I messed up on this thing -- well, I would say that

8    this was the net compensation, the yearly one, and I

9    forgot to adhere the term annual.

10        I say all calculations are based on the

11   following and the following are yearly net -- well,

12   net should be talked about.  So all the figures here

13   are annual.

14        Q.    So you're saying the 111,780 is your

15   annual compensation and not a partial year

16   compensation?

17        A.    Yes.

18        Q.    We just received within the last day this

19   document.  I'm going to hand you what's been marked

20   as 88.

21             (Whereupon the proffered item was

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 557

1          marked as exhibit number 88.)

2          Q.    I guess this is a pay stub for Entergy,

3     from Entergy.

4          A.    Yes.

5          Q.    It's the last one you received?

6          A.    The last 2005 pay stub, yes.

7          Q.    It shows year to date earnings, right?

8          A.    Yes.    It shows the yearly earnings.

9          Q.    Where would I find the yearly earnings?

10         A.    Year to date?

11         Q.    That's 168,000 something.

12         A.    That's the gross one and the net one is

13    153,000 -- no.

14         Q.    That's --

15         A.    Well, you've got it on the W2.

16         Q.    But this is a --

17         A.    It's easy.

18         Q.    This is a year to date figure, right, as

19    opposed -- this is not your -- it says year to date

20    so I'm assuming this is not a projection of what you

21    would earn in a complete year.

Overnite Court Reporting Service  (301) 593-0671           Fax - (301) 593-8353
Washington, DC Metro Area              www.DCCourtReporters.com
                                       0c0f48af-5751-478a-b896-e6bbdf0dd6d8

CATHERINE GAUJACQ DEPOSITION   March 17, 2006

Gaujacq v. EDFINA

Page 564

## Certificate of Deponent

1
2       I hereby certify that I have read and
3   examined the foregoing transcript, and the same
4   is a true and accurate record of the testimony
5   given by me.
6       Any additions or corrections that I feel
7   are necessary I will attach on a separate sheet
8   of paper to the original transcript.
9
10      _____
11          Signature of witness
12      I hereby certify that the individual
13  representing him/herself to be the above named
14  individual, appeared before me this _17th_
15  day of __April__ and executed the above
16  certificate in my presence.
17
18
19
20
21                              _____
                                        Notary Public

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area              Fax - (301) 593-8353
                                www.DCCourtReporters.com
                                0c0f49af-5751-478a-b896-e8bbdf0dd9d9

# ATTACHMENT 4

Page 1

In the U.S. District Court

For the District of Columbia

-----------------------------x

Catherine Gaujacq                 :

                                  : NO  1:05CV0969

              v.                  :

                                  :

Electricite de France             :
International, North              :
America, et al                    :

-----------------------------x

March 16, 2006

DEPOSITION OF:

Catherine Gaujacq,

a witness, called by counsel pursuant to notice,

commencing at 9:30 a.m., which was taken at 11260

Roger Bacon Drive, Reston, VA

Page 63

1        I mean, the mission was to provide

2   information to whoever needed it.

3        May I just add something to my answer?

4        Q.   Sure.

5        A.   This expatriation contract changes for the

6   reporting structure in 2002.

7        Q.   If you give me a minute I will get there.

8   We'll get through this day faster if you just give

9   me a chance to go even at what seems like my slow

10  pace.

11             MS. HOGUET:   I'm marking exhibit nine

12  which I'm putting in front of you with again an

13  informal translation for the benefit of your

14  counsel.

15             (Whereupon the proffered item was

16        marked as exhibit number 9.)

17        Q.   You spoke a minute ago about the decision

18  that appointed you to the position of delegate

19  general to the United States.

20        I've put in front of you as exhibit nine a

21  document dated the 23rd of June 2000 signed by

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 255

1          Certificate of Deponent

2        I hereby certify that I have read and

3    examined the foregoing transcript, and the same

4    is a true and accurate record of the testimony

5    given by me.

6        Any additions or corrections that I feel

7    are necessary I will attach on a separate sheet

8    of paper to the original transcript.

9

10

11                Signature of witness

12        I hereby certify that the individual

13    representing him/herself to be the above named

14    individual, appeared before me this 17th

15    day of _April_____ and executed the above

16    certificate in my presence.

17

18

19

20

21                              Notary Public

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                              www.DCCourtReporters.com
                                    ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed