# ATTACHMENT 5

Page 1

In the U.S. District Court

For the District of Columbia

-----------------------------x

Catherine Gaujacq              :

                               : NO. 1:05CV0969

          v.                   :

                               :

Electricite de France          :
International, North           :
America, et al                 :

-----------------------------x

March 16, 2006

DEPOSITION OF:

                Catherine Gaujacq,

a witness, called by counsel pursuant to notice,

commencing at 9:30 a.m., which was taken at 11260

Roger Bacon Drive, Reston, VA

Case 1:05-cv-00969-HHK    Document 56-4    Filed 05/11/2006    Page 3 of 47
CATHERINE GAUJACQ DEPOSITION    March 16, 2006
Gaujacq v. EDFINA

Page 17

1        Did you read the documents that were

2    produced by you?

3        A.    Yes, I did.

4        Q.    Before they were produced?

5        A.    Yes.  Well, almost all of them.

6        Q.    Have you read them since?

7        A.    No.

8        Q.    Have you seen the documents that have been

9    produced by EDF and EDFINA?

10        A.    Yes.

11        Q.    Have you read them?

12        A.    Some of them.

13        Q.    Thank you.  In preparing for the

14    deposition today to the extent that you did prepare

15    did you review any documents that are not among the

16    documents that were produced in the discovery

17    process?

18        A.    No.

19        Q.    When you were in Washington as the

20    president of EDFINA, Ms. Gaujacq, did you have a

21    laptop computer that belonged to the company?

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area        www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

1          A.    Throughout my employment with EDF and

2    EDFINA I had a few computers, yes.

3          Q.    Did you have -- excuse me.  I'll rephrase

4    that.

5               At the time that you left your position as

6    president -- excuse me, withdrawn.

7               In February 2005 did you return a laptop

8    computer to EDFINA?

9          A.    Yes.

10         Q.    Was that a computer that belonged to the

11   company?

12         A.    Yes.

13         Q.    Did you have any other computers that you

14   used in doing work for the company?

15         A.    Yes, I guess.

16         Q.    In your home?

17         A.    No, not in my home.

18         Q.    Where were they?

19         A.    At the office.

20         Q.    Did you have any computer other than the

21   laptop at your home?

1    A.    Yes.

2    Q.    Did you use that computer other than the

3  laptop for work?

4    A.    It might have happened a few times, yes.

5    Q.    Was the laptop the main computer you used

6  for work, the principal computer you used for work?

7    A.    You are talking about the one of the

8  company, right?

9    Q.    Yes.

10    A.    Yes.

11    Q.    Now, prior to -- let me withdraw that.

12        When we said you returned it to EDFINA,

13  actually you left it in the house, correct?

14    A.    No, that's not correct.

15    Q.    How was it delivered to EDFINA?

16    A.    EDFINA had a lawyer present the day I left

17  the premises I was assigned to.

18    Q.    The premises you were assigned to, being

19  your house in Great Falls?

20    A.    Yes.

21    Q.    There was a lawyer there?

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area            Fax ~ (301) 593-8353
                        www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Case 1:05-cv-00969-HHK    Document 56-4    Filed 05/11/2006    Page 6 of 47
CATHERINE GAUJACQ DEPOSITION    March 16, 2006
Gaujacq v. EDFINA

Page 20

1    A.    Yes.

2    Q.    And you turned over the keys to the house

3    to the lawyer?

4    A.    The keys of the house, the furniture,

5    silverware, equipment that was at the house, the car

6    that I was assigned to by the company, the laptop,

7    the cell phone.

8    Q.    Before that happened, the day that you

9    turned the laptop and everything else over to the

10   lawyer, had you removed the information that had

11   been on the laptop, stored on the laptop?

12   A.    Yes.

13   Q.    Did you keep a copy of what you removed?

14   A.    No.

15   Q.    You simply destroyed it?

16   A.    Yes.

17   Q.    Information on the laptop had been used

18   for work, correct?

19   A.    Some of it, yes.

20   Q.    So some of the information that you

21   destroyed was information that belonged to EDFINA or

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

1  EDF, correct?

2     A.  It's difficult to answer your question.  I

3  guess so, yes.

4     But I had no specific instruction from the

5  company not to do that.  It was a good protection

6  for the company to wipe out the laptop.

7     Q.  The information on the laptop was the

8  property of EDF and EDFINA, correct?

9     A.  Some of the information was, yes.

10     Q.  So when you destroyed the information, you

11  destroyed property of EDF or EDFINA, correct?

12     A.  Well, you may say so.  It was not the

13  practice of the company at all.

14     I mean, when you just would return a laptop

15  to the company, you would make sure that this laptop

16  is clean, mostly to protect the property of the

17  company, meaning you are not allowed to resell the

18  license of the software or this kind of -- or this

19  kind of issues.

20     Q.  If there was information on that laptop

21  that belonged to EDF or EDFINA did you provide it to

1    anybody else before you destroyed the contents of

2    the hard drive?

3        A.    The information I had that was needed by

4    EDF and EDFINA was provided to EDF and EDFINA, yes.

5        Q.    You made the judgment as to what

6    information you would provide and what you would

7    destroy, is that correct?

8        A.    Yes EDFINA.

9        Q.    I'm going to mark as exhibit six a letter

10    which my firm sent to your attorney, Ms. Bredehoft,

11    on September 21, 2005.

12                (Whereupon the proffered item was

13        marked as exhibit number 6.)

14        Q.    Have you ever seen that letter before?

15        A.    Yes.

16        Q.    We have never received a response to it so

17    I thought this might be a good time to ask you to

18    respond to it.

19                MS. BREDEHOFT:  I'm going to object

20    to the form of the question.

21                MS. HOGUET:  I just made a statement.

Overnite Court Reporting Service  (301) 593-0671      Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
                                          ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 23

1    It was not a question.

2    BY MS. HOGUET:

3        Q.    The letter asks you, asks your attorney

4    with whom we were communicating to deliver any and

5    all copies of the contents of the laptop prior to a

6    deletion thereof.

7            Are there any copies of the contents of that

8    laptop in existence in your possession?

9        A.    Today?

10       Q.    Yes.

11       A.    The personal information is in my

12   possession, yes, and when I'm talking about personal

13   information, I'm talking about pictures or personal

14   stuff, nothing related with EDF or EDFINA.

15       Q.    What about information related to attempts

16   by you to secure employment with companies other

17   than EDF or EDFINA?

18       A.    No.

19       Q.    No what?

20       A.    Maybe I don't understand your question.

21       Q.    Is there any information of that nature

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

CATHERINE GAUJACQ DEPOSITION    March 16, 2006

Gaujacq v. EDFINA

Page 24

1    that was on that laptop that you have preserved for

2    your own use?

3         A.    I don't know.  I don't know.

4         Q.    Prior to destroying the information that

5    was on the laptop did you preserve any of it?

6         A.    I'd like to understand what information

7    you are talking about.

8         Q.    Any information that was on the laptop

9    that you decided to keep.

10        A.    The information I decided to keep was

11   personal information.

12        Q.    What did you do to keep it?

13        A.    I transferred it to my new computer.  I

14   just want to point out something.

15        The letter you're talking about is dated

16   September 21, 2005.

17        The events we are talking about on the day I

18   send the laptop back to EDFINA was February 28,

19   2005, which means that for all this, you know, this

20   period I was never asked anything about this.

21        Q.    Now you are being asked.  My question

1    is:  Prior to destroying the information that was on

2    the laptop did you make a copy of it and preserve

3    it?

4            A.    None of EDF and EDFINA information.

5            Q.    But you did keep some information from the

6    laptop, correct?

7            A.    Personal information, yes.

8            Q.    Do you still have it?

9            A.    I don't know.  I don't know.

10           Q.    In the category personal -- let me start

11    this way.

12            How did you define to yourself "personal"?

13    You said you made the decision as to what was

14    personal and what was not.  How did you make that

15    choice?

16           A.    Obviously, you know, the pictures of my

17    family are not something that relate to EDF and

18    EDFINA that I know of.

19           Q.    What about correspondence with people who

20    either work for EDFINA or had previously worked for

21    EDFINA that were not specifically pertaining to work

1    assignments?

2         A.    I would delete them on a regular basis.   I

3    can't even tell you what was the content of the

4    information at this stage.

5         Q.    Are there any e-mails between yourself and

6    Mr. Creuzet or Mr. Ponasso, other people at EDF or

7    EDFINA that you preserved?

8         A.    I guess so, yes.

9         Q.    When you produced documents in this

10   lawsuit, Ms. Gaujacq, you produced a large number of

11   e-mails, is that right?

12        A.    It was not e-mails.  It was copies of

13   e-mails that I had saved.

14        Q.    Did you save them in paper form?

15        A.    Yes.

16        Q.    Did you also have them saved

17   electronically?

18        A.    No.

19        Q.    In this lawsuit, and I don't have a copy

20   of this, I'm holding a CD-ROM in a cover case that's

21   marked EDF Gaujacq document production, 12/16/05.

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area    Fax - (301) 593-8353
www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 27

1   What we got says plaintiffs document production

2   12/16/05 and it has a case number on it and it's a

3   CD-ROM.

4           Have you seen it before?

5       A.   No.

6       Q.   Did you make it?

7       A.   No.

8       Q.   Do you know what it was made from?

9       A.   I have no idea.

10      Q.   When you said a moment ago that you had

11  previously provided information to the company, to

12  whom did you provide that information?

13              MS. BREDEHOFT:  Object to the form of

14  the question, but go ahead.

15      A.   What kind of information are you talking

16  about?

17  BY MS. HOGUET:

18      Q.   I'm talking about whatever you were

19  talking about.  Let's see if we can go back and pick

20  up the thread.

21          You said that prior to the time that you

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Case 1:05-cv-00969-HHK   Document 56-4   Filed 05/11/2006   Page 14 of 47
CATHERINE GAUJACQ DEPOSITION   March 16, 2006        Gaujacq v. EDFINA

Page 28

1   destroyed the information on the EDF computer you

2   had supplied some information to somebody at EDF or

3   EDFINA pertinent to the work you had been doing,

4   correct?

5        A.   Yes.

6        Q.   To whom did you supply that information?

7        A.   To Mr. George Serviere.

8        Q.   Did you supply information from your work

9   at EDF or EDFINA to anybody other than Mr. Serviere?

10            MS. BREDEHOFT:   Objection to form.

11   Go ahead.

12        A.   I had some exchange with EDF and EDFINA at

13   this time talking about the fall 2004 period, so I

14   may have just provided some information, sure.

15   BY MS. HOGUET:

16        Q.   Do you know whether you did or not?   I

17   don't want you to guess or speculate.   I'm trying to

18   find out everybody to whom you may have supplied

19   information, provided information about your work at

20   EDF or EDFINA?

21            MS. BREDEHOFT:   Objection to form.

Overnite Court Reporting Service   (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
                                                    ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 29

1    Go ahead.

2         A.    I had some e-mail exchange with EDF and

3    EDFINA over the period so if that's information,

4    then I did, yes.

5    BY MS. HOGUET:

6         Q.    What I'm talking about is business

7    information.

8         A.    Okay, that's different.

9         Q.    That's what I'm talking about.

10        I'm talking about information about the

11   business you were doing on behalf of EDF or EDFINA

12   and I'm asking whether there's anybody besides

13   Mr. Serviere to whom you provided such information.

14        A.    No.

15        Q.    Can you describe for me the information

16   that you destroyed in general terms?

17        A.    No.

18        Q.    Or in particular terms?

19        A.    E-mails, word files.

20        Q.    Did you destroy files that pertained to

21   NuStart?

Overnite Court Reporting Service    (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
                                   ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Case 1:05-cv-00969-HHK    Document 56-4    Filed 05/11/2006    Page 16 of 47
CATHERINE GAUJACQ DEPOSITION    March 16, 2006    Gaujacq v. EDFINA

Page 30

1    A.    There were some, of course.  I would

2    destroy it all over the course of my business, like

3    every employee would do that.

4    Q.    Were there contracts pertaining to NuStart

5    that were stored electronically on your laptop?

6    A.    Those were destroyed and those are the

7    ones that I gave to George Serviere.

8    Q.    You gave them to George Serviere and is it

9    your testimony that you destroyed whatever was on

10    your laptop as well?

11    A.    Yes.

12    Q.    If there was anything that you didn't send

13    to Mr. Serviere but was on your laptop and you

14    destroyed it then it's lost, is that correct?

15    A.    Electronically lost, yes.  Can I have a

16    comment on your question?

17    Q.    I don't think so.  Thank you.

18    MS. BREDEHOFT:  But if you have a

19    further answer to the question, you --

20    MS. HOGUET:  I think the answer was

21    finished and we're not going to have commentary.

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 31

1    Otherwise we will be using my time.

2    BY MS. HOGUET:

3         Q.    Ms. Gaujacq, I'm going to put in front of

4    you exhibit seven which is a document that's marked

5    with your Bates number 213.  Can you tell me what it

6    is?

7                   MS. BREDEHOFT:  Do you have a copy?

8                   MS. HOGUET:  We're looking for it.

9                   (Whereupon the proffered item was

10        marked as exhibit number 7.)

11   BY MS. HOGUET:

12        Q.    Can you tell me what that documents,

13   Ms. Gaujacq?

14        A.    I guess it's a resume.

15        Q.    Did you prepare it?

16        A.    Looks like, yes.

17        Q.    It's your resume, isn't it?

18        A.    Yes.

19        Q.    When did you prepare it?

20        A.    I have no idea.

21        Q.    It has --

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area              Fax - (301) 593-8353
                                       www.DCCourtReporters.com
                                       ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

CATHERINE GAUJACQ DEPOSITION    March 16, 2006

Gaujacq v. EDFINA

Page 255

1          Certificate of Deponent

2        I hereby certify that I have read and

3    examined the foregoing transcript, and the same

4    is a true and accurate record of the testimony

5    given by me.

6        Any additions or corrections that I feel

7    are necessary I will attach on a separate sheet

8    of paper to the original transcript.

9

10                    _____

11                    Signature of witness

12        I hereby certify that the individual

13    representing him/herself to be the above named

14    individual, appeared before me this 17th

15    day of ___April___ and executed the above

16    certificate in my presence.

17

18

19

20

21                    _____

                      Notary Public

In the U.S. District Court

For the District of Columbia

----------------------------x

Catherine Gaujacq                :

                                 : NO. 1:05CV0969

                v.               :

                                 :

Electricite de France            :
International, North             :
America, et al                   :

----------------------------x

March 17, 2006

DEPOSITION OF:

Catherine Gaujacq (Cont'd)

a witness, called by counsel pursuant to notice,

commencing at 8:41 a.m., which was taken at 11260

Roger Bacon Drive, Reston, VA

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
                                   0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 462

1    NuStart documents, the proprietary documents, and

2    those documents were at home in a closet in my

3    basement to protect them because we had to do some

4    work over the summer to make sure that they would be

5    protected at EDFINA.

6          Q.    You had them in a closet in your basement?

7          A.    Yes.

8          Q.    Did you have NuStart documents on your

9    laptop computer?

10         A.    Not any documents that were not printed

11   out and sent to EDF.

12         Q.    Answer my question first.  I'm happy for

13   you to give me whatever qualification you want but

14   did you have NuStart documents on your laptop

15   computer?

16         A.    At one point, yes.

17         Q.    You had EDF documents on your laptop

18   computer?

19         A.    At one point or another I had some

20   documents that I would then, you know, review in the

21   normal course of business.

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          www.DCCourtReporters.com          Fax - (301) 593-8353
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 463

1       Q.    Or destroy before you --

2       A.    The term "destruction" is certainly not

3    adapted in this situation.  Every employee at EDF --

4       Q.    I don't want to argue.  I really don't

5    want to argue with you and I really don't want you

6    to argue with me even more than I don't want to

7    argue with you.

8           It is clear, I think, on the record that

9    before you returned the laptop computer you employed

10   a special software to obliterate records from the

11   computer, is that correct?

12              MS. BREDEHOFT:   Object to the form,

13   go ahead.

14      A.    At this time there was no documents or

15   whatever of EDF or EDFINA.  I would just, like every

16   employee, like every employee of EDF, EDFINA does, I

17   mean when you need a document you just use it and

18   then those documents were at EDFINA if they needed

19   to be --

20   BY MR. COOPER:

21      Q.    Okay, let's --

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 464

1      A.   Or I would delay them like every employee

2  does in every company every day.

3      Q.   Let me be sure you understand what I'm

4  asking you about.

5           Before you returned the laptop to EDFINA,

6  did you go out and buy a computer software program

7  to run on it?

8      A.   I didn't do that.

9      Q.   It's your testimony under oath that you

10  did not employ a software program intended to erase

11  permanently material from the laptop computer?  I

12  want to be very clear on this.

13      A.   If you are very clear on it, I did give

14  the computer to some friends who erased it.  That's

15  it.

16           I cannot tell you how they did that.  Yes,

17  because I didn't want at this time to have some

18  issue, whatever they were, and it was the proper way

19  under EDF policies to erase the software that the

20  company had bought.

21      Q.   Who were the people you gave the computer

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK    Document 56-4    Filed 05/11/2006    Page 23 of 47
CATHERINE GAUJACQ DEPOSITION    March 17, 2006
Gaujacq v. EDFINA

Page 465

1    to?

2        A.    Well, I don't know.  My husband took care

3    of this.  I don't know.

4        Q.    You gave it to your husband?

5        A.    Yes.

6        Q.    And he took it somewhere?

7        A.    Yes.

8        Q.    To people you don't know?

9        A.    Yes.

10        Q.    And they used software that you don't know

11    about?

12        A.    Yes.

13        Q.    To remove documents that you can't

14    identify for me from your laptop?

15        A.    They did not remove documents.  They

16    removed the software because you may recall that you

17    proposed me to buy this thing.

18        Q.    Ms. Gaujacq, you seem to think that I have

19    been personally involved in every step of this about

20    your computer, and I was not.  So, I'm sorry.

21        A.    I'm sorry, but you should know that we got

Page 466

1    from your firm a price for the computer and that

2    this price was not fair so I decided not to keep the

3    computer.  No one cared about it.

4         Q.    Is that among the documents that have been

5    produced to us, the letter from my firm offering to

6    sell you the computer?

7         A.    No, no.  It's my recollection.

8         Q.    So you don't have such a documents?

9         A.    I had to remind the company in late

10   October that I had some company's property at my

11   home and I did make a list of one in every

12   silverware, of one in every furniture or whatever,

13   and I just -- there was a laptop and there was also,

14   if I recall, a cell phone and there was also the

15   issue of the company's car and --

16        Q.    Ms. Gaujacq --

17        A.    I reminded the company that they are to in

18   the next future take care of these things.  At this

19   moment you did ask me -- well --

20        Q.    This is astounding.

21        A.    That's astounding, but that's the truth.

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Case 1:05-cv-00969-HHK    Document 56-4    Filed 05/11/2006    Page 25 of 47
CATHERINE GAUJACQ DEPOSITION    March 17, 2006
Gaujacq v. EDFINA

Page 467

1      Q.   First of all, we're going to be here much,

2   much longer than we can possibly accommodate if this

3   free association is going to continue when I ask you

4   a question.

5        I'm asking you about the laptop computer,

6   not about the car, not about any silverware or

7   anything else that was in the house.  I'm asking you

8   about the laptop computer.

9        My understanding of your testimony from

10  perhaps yesterday, but certainly earlier testimony,

11  was that there were documents on that computer that

12  you did not print out before whatever was done to it

13  was done to it to eradicate the contents.  Is that

14  right?

15     A.   I'm not sure I get what you are telling me

16  at this stage.

17       In late November I had some personal

18  documents on this computer, I mean, almost on a

19  continuous basis I did ask EDF, EDFINA if I could

20  just keep this computer because I had to buy

21  another.

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 468

1      That's as simple as this is.  Since we

2   couldn't find an agreement, then I said okay, I'm

3   going to -- it's going to be --

4      Q.    Who did you ask if you could buy the

5   computer?

6      A.    To you and to Mr. Nadal.

7      Q.    Ms. Gaujacq, I have never before laid eyes

8   on you or spoken to you on the phone and neither

9   could I have because --

10     A.    You spoke --

11     Q.    -- you've been represented by a lawyer for

12  as long as I've known who you were so I've never had

13  any contacts with you.

14     A.    You had contact with Mrs. Harris and

15  that's exactly what happened and what I understand

16  you had numerous contacts at this time because you

17  were both representing EDF, EDFINA, Mr. Nadal and

18  all.

19         So this issue was just -- I'm sorry if you

20  don't recall it but for me, I mean, it was just an

21  event.

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area         Fax - (301) 593-8353
                                  www.DCCourtReporters.com
                                  0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 469

1          It was in the middle of all the nice stuff

2    you were doing to me at this time.  You don't want

3    to -- well, you may laugh, sir.  I'm sorry.

4          Q.   I'm not laughing.  I'm not laughing.

5          A.   The laptop was just something coming up

6    with all the rest of the stuff that was coming up.

7          So obviously no one cared, either EDF,

8    EDFINA or with the exception of Mr. Nadal, that's

9    for sure, no one cared about the laptop or about

10   anything.  That's for sure.

11         Q.   You did not print out the contents of the

12   laptop before you turned it over to your husband to

13   have it erased, did you?

14         A.   It was --

15         Q.   Did you?  Just answer my question.  I'd

16   like to be able to move on.

17         A.   I cannot tell you, you know, what was the

18   content of the laptop the day I prepared it to give

19   it back to you.

20         Q.   One of the things some people would do if

21   they were going to wipe a disk clean is they might

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                   www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 470

1    print out its contents so they would have a record

2    of it.

3           I'm asking you if you did that.  I think

4    you've testified that you didn't.

5        A.    I didn't.

6        Q.    So you sent it through your husband to

7    someone who erased the disk?

8        A.    Yes.

9        Q.    And you never returned the in connection

10   with 10,000 of that disk to Mr. Nadal or to EDFINA?

11       A.    I did restitute the content of the

12   computer the way it was you came to pick it up.

13   It's pretty easy.

14       Q.    I don't understand that.  What did you

15   just say?

16       A.    Well, you may recall that you had a lawyer

17   coming to my house by the end of February.  Least of

18   all these things was there and --

19       Q.    You said you restituted the computer when

20   it was turned over.  Do you mean you somehow

21   restored the data to the computer?

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

1     A.    No.

2     Q.    You gave the computer back to us?

3     A.    Yes.

4     Q.    But the contents or a substantial part of

5  the contents had been erased because your husband

6  got someone to do that, is that correct?

7     A.    Yes.

8     Q.    And you don't have any longer the

9  documents that have been erased from the computer in

10  any form?

11     A.    No.  I mean, they were, you know, I would

12  guess some personal stuff that I would move from

13  this computer to the one I had to buy.

14     Q.    You never returned that material, hard

15  copy, electronic data, to Mr. Nadal?

16     A.    I returned to the person that Mr. Nadal

17  had designated and EDF had designated as my

18  successor the documents we are talking about, the

19  12 inches.

20     Q.    Did you return them to Mr. Nadal?

21     A.    No.  I returned them to Mr. George

Page 472

1    Serviere.

2        Q.    Let me just review, if I can, the extent

3    of your contacts with Mr. Nadal.   Well, back to the

4    computer.   Did you transfer -- you have a new

5    computer.

6            Is this a desktop, laptop?   What kind of

7    computer is it?

8        A.    I've got two or three computers at home.

9        Q.    Did you transfer any of the documents that

10   have subsequently been deleted from the EDFINA

11   laptop to any of these other computers?

12       A.    Personal information, yes, nothing related

13   to EDF, EDFINA.

14       Q.    I want to recap your contacts with

15   Mr. Nadal.   I think the first one is in February, is

16   it the 25th 2004?

17       A.    Yes.

18       Q.    A two hour lunch and meeting in the

19   office?

20       A.    Yes.

21       Q.    Lunch at the Mayflower I think you said?

CATHERINE GAUJACQ DEPOSITION     Case 1:05-cv-00969-HHK     Document 56-4     Filed 05/11/2006     Page 31 of 47
March 17, 2006                                                                    Gaujacq v. EDFINA

Page 496

1          Q.    You removed the document from EDFINA?

2                     MS. BREDEHOFT:  Objection to form.

3      Go ahead.

4      BY MR. COOPER:

5          Q.    Did you not?

6          A.    I removed the document from EDFINA?

7          Q.    Yes.  In order to provide it to the EEOC

8      it had to leave EDFINA.  Did you take it?

9          A.    It was an electronic file and I printed it

10     out.

11         Q.    From your laptop computer?

12         A.    I don't know where from.

13         Q.    But you removed it electronically from

14     EDFINA, printed it out and gave it to --

15         A.    I did not -- you mean to get to the EEOC,

16     yes, it was printed out and I just made a copy of it

17     to the EEOC, yes.

18         Q.    Was it resident on your computer at the

19     time you printed it?

20         A.    I've got no idea.

21         Q.    Did you access an EDFINA file at the

Overnite Court Reporting Service  (301) 593-0671          Fax - (301) 593-8353
Washington, DC Metro Area          www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

Page 497

1    office to download this?

2        A.    I don't know.

3        Q.    Can you look at exhibit J.  It's 000277.

4        A.    Yes.

5        Q.    What is that?

6        A.    That's a printout of EDFINA budget.

7        Q.    Is that a proprietary document of EDFINA?

8        A.    I've got no idea.

9        Q.    You don't?

10       A.    No.

11       Q.    How did this come to be submitted to EEOC

12   among your filings?

13       A.    Same thing, same answer as I did for

14   Christian Nadal's pay stub.

15       Q.    You downloaded it from your computer?

16       A.    Yes.

17       Q.    You printed it out and gave it to your

18   lawyer to go to EEOC?

19       A.    Yes.

20       Q.    And you don't know whether or not the

21   budget records or the financial records of EDFINA

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area         Fax - (301) 593-8353
                                  www.DCCourtReporters.com
0c0f48af-5751-478a-b896-e6bbdf0dd6d8

CATHERINE GAUJACQ DEPOSITION    March 17, 2006

Gaujacq v. EDFINA

Page 564

1                           Certificate of Deponent

2              I hereby certify that I have read and

3       examined the foregoing transcript, and the same

4       is a true and accurate record of the testimony

5       given by me.

6              Any additions or corrections that I feel

7       are necessary I will attach on a separate sheet

8       of paper to the original transcript.

9

10                          I Laujacq

11      _____

                        Signature of witness

12             I hereby certify that the individual

13      representing him/herself to be the above named

14      individual, appeared before me this _17th___

15      day of _April___ and executed the above

16      certificate in my presence.

17

18

19

20

21                          _____

                                    Notary Public

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area          Fax - (301) 593-8353
                                www.DCCourtReporters.com
                                0c5f48af-5751-478a-b896-a5bbdf0dd5d8

# ATTACHMENT 6

Page 1

In the U.S. District Court

For the District of Columbia

------------------------------x

Catherine Gaujacq                 :

                                  : NO. 1:05CV0969

              v.                  :

                                  :

Electricite de France             :
International, North              :
America, et al                    :

------------------------------x

March 16, 2006

DEPOSITION OF:

                    Catherine Gaujacq,

a witness, called by counsel pursuant to notice,

commencing at 9:30 a m , which was taken at 11260

Roger Bacon Drive, Reston, VA

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
Fax - (301) 593-8353
www.DCCourtReporters.com
ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 252

1    to do that, yes.

2        Q.    Do you have a recollection as to the name

3    of the partner of the firm with whom you dealt on

4    behalf of EDFINA?

5        A.    There were two of them.

6        Not two partners, but one partner was

7    William Lamb and he had a lawyer working with him

8    from the Washington, D.C. office.  We had different

9    lawyers working over the years.

10        Q.    So the name doesn't stand out in your mind

11    as to who prepared these documents?

12        A.    No, honestly, no.  It's a big firm.  I

13    would guess a partner does not do that himself.

14        Q.    In preparing these documents, though, you

15    were acting, as you understood it, at the direction

16    of Mr. Creuzet, is that correct?

17        A.    Of Mr. Ponasso, Mr. Creuzet and the

18    chairman of EDF, all those people.

19            MS. HOGUET:    Thank you.  I think

20    we've reached a point that it makes sense to stop

21    for the day.  We're going to come back tomorrow

Overnite Court Reporting Service  (301) 593-0671       Fax - (301) 593-8353
Washington, DC Metro Area       www.DCCourtReporters.com
                                 ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

1    morning at 8:30.  I'm sure that everybody desires to

2    get this over with.  Somehow it seems that starting

3    sooner makes it end faster.

4                     (Deposition adjourned at 5:00 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Overnite Court Reporting Service  (301) 593-0671        Fax - (301) 593-8353
Washington, DC Metro Area           www.DCCourtReporters.com
                                          ccb4a962-60e8-4fa0-b2d8-f9cd3dd6d8ed

Page 255

1         Certificate of Deponent

2       I hereby certify that I have read and

3   examined the foregoing transcript, and the same

4   is a true and accurate record of the testimony

5   given by me.

6       Any additions or corrections that I feel

7   are necessary I will attach on a separate sheet

8   of paper to the original transcript.

9

10                    _____

11                    Signature of witness

12       I hereby certify that the individual

13   representing him/herself to be the above named

14   individual, appeared before me this 17th

15   day of __April__ and executed the above

16   certificate in my presence.

17

18

19

20

21                    _____

                      Notary Public

Overnite Court Reporting Service  (301) 593-0671
Washington, DC Metro Area
                              Fax - (301) 593-8353
                      www.DCCourtReporters.com
                      ccb4a96Z-60e8-4fa0-b2d8-f9cd3dd9d8ed

# ATTACHMENT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ,                          )
                                            )
              Plaintiff,                    )
                                            )
v.                                          )
                                            )   Civil Action No. 1:05CV0969
ELECTRICITE DE FRANCE and                   )
INTERNATIONAL NORTH AMERICA, INC.,          )
ELECTRICITE DE FRANCE, S.A.,                )
                                            )
              Defendants.                   )
                                            )
                                            )
                                            )
                                            )

## FIRST SET OF INTERROGATORIES OF DEFENDANTS
## ELECTRICITE DE FRANCE, S.A. AND ELECTRICITE DE FRANCE
## INTERNATIONAL NORTH AMERICA, INC.

PLEASE TAKE NOTICE THAT, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Electricité de France, S.A. ("EDF") and Electricité de France International North America, Inc. ("EDFINA") hereby request that Plaintiff Catherine Gaujacq ("Gaujacq") answer separately in writing and under oath the Interrogatories set forth below, and serve her answers on the undersigned counsel, no later than 30 days from the date these Interrogatories are served.

## GENERAL INSTRUCTIONS

1    In the event that any answer to an Interrogatory or part thereof is not answered on the basis of any legal objection or claim of privilege, indicate the following information, as applicable, for each such undisclosed response, or part thereof:

        a.    The date of the communication;

        b.    The identity of the people present or involved in the communication;

c.    The general subject matter of the communication; and

d.    The legal basis, including, but not limited to any claim of, privilege;

2.    These Interrogatories are continuing in character. If, after serving initial answers to these Interrogatories, Plaintiff obtains or becomes aware of any additional information responsive hereto, Plaintiff is required to serve supplemental answers promptly.

3.    If Plaintiff cannot answer any Interrogatory in full, after exercising due diligence to obtain information to do so, answer each Interrogatory to the extent possible, specifying the reasons for Plaintiff's inability to answer it in full and describing, with whatever information, knowledge, or belief, Plaintiff does have, the subject matter and contents of the unanswered portion thereof.

4.    Unless otherwise specified, the relevant time period is April 1, 2000 through present.

## SPECIFIED DEFINITIONS AND CONSTRUCTION

1.    "Document" shall mean and refer to any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, represented in handwriting, printing, photocopy, tape-recording, computer file, e-mail or otherwise however stored (including magnetic, digital, mechanical, tape or other means of electronic storage, video recording, audio recording and every other means of recording). A reference to the word "documents" includes, without limitation: e-mails, letters, correspondence, communications, agreements, proposals, notes, records, reports, telegrams, telexes, computer print-outs, memoranda, analyses, projections, manuals, guidelines, work papers, lists, diaries, calendars, journals, telephone logs, minutes of meetings, notebooks, summaries or records of conversations, statistical statements, drafts of any documents, stenographic or stenotype notes,

voice recordings, computer data, non-paper information storage such as tapes, films and computer memory devices. "Documents" include all drafts of the foregoing and all non-identical copies of documents, whether such copies are different from the original by reason of a notation made thereon or added thereto or otherwise.

2. "Plaintiff" shall mean Catherine Gaujacq, her attorneys, agents and any other person acting on her behalf.

3. "Defendants" shall mean Electricité de France, S.A. Electricité de France International North America and Christian Nadal.

4. "EDF" shall mean Defendant Electricité de France, S.A.

5. "EDFINA" shall mean Defendant Electricité de France International North America, Inc.

6. "Nadal" shall mean Defendant Christian Nadal.

7. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8. "Concerning" shall mean directly or indirectly, referring, relating or pertaining to or containing, constituting, reflecting, recording, embodying, memorializing, discussing, underlying, commenting upon, forming the basis for, analyzing, mentioning, comprising, considering, explaining, showing or describing the subject matter of the Interrogatory containing the phrase.

9. "Relating to" (or any form thereof) shall mean constituting, consisting, reflecting, concerning, representing, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, or

- 3 -

relevant to. As indicated, the term necessarily includes information which is in opposition to as well as in support of the position(s), defenses, and/or counterclaim(s) of Plaintiff in this action.

10.    For purposes of construing the scope of these Interrogatories, the terms used are to be given their most expansive and inclusive interpretation unless otherwise specifically limited in the Interrogatory itself. This includes, without limitation, the following:

11.    When "identify" is used when referring to a natural person, state

     a.    his or her full name;

     b.    the person's present or last known home address, business address and telephone number;

     c.    the person's present or last known employment or business affiliation,

     d    the person's job title and job duties or the person's relationship to the Plaintiff, and

     e.    any other identifying feature.

12.    When "identify" is used with respect to a document, provide, to the extent known,

     a.    the type of document;

     b.    the document's general subject matter;

     c.    the date of the document;

     d.    the author(s), addressee(s) and recipient(s) of the document; and

     e.    the current custodian of the document and its whereabouts.

13.    When "identify" is used with respect to any communication, state:

     a.    the identity of the person(s) making and receiving the communication;

     b.    the date of the communication;

     c    the manner, time and place of the communication;

     d.    the subject matter and substance of the communication; and

     e     identity of anyone overhearing the communication. "Date" means the exact day, month and year, if ascertainable, or, if not, the best approximation thereof.

14.    "Describe" means:

     a.    with respect to a discussion or communication;

     b     state the manner (e.g., whether in person, by telephone, by letter) in which it occurred;

     c.    the date it occurred;

     d.    the names of all Persons who could see, hear or otherwise perceive any part of or all of the discussion or communication and the substance of each discussion or communication; or

     e     with respect to damages or relief you seek

          i   the nature of the damages or relief;

          ii.  each and every ground you rely upon to support your claims;

          iii.  the amount of monetary relief you claim; and

          iv.  the method of calculating the monetary relief you seek.

## INTERROGATORIES

## INTERROGATORY NO. 1

Identify all individuals whom you believe have information relating to the allegations contained within the pleadings in this matter and describe that information in detail.

## INTERROGATORY NO. 2

Identify each Person whom you expect to call as a witness, or whom you have contacted about appearing as a witness, at trial in this matter and describe the subject matter on which he or she is expected to testify, the substance of the facts and opinions on which he or she is expected to testify, and an identification of any and all documents which he or she has considered or will rely upon.

## INTERROGATORY NO. 3

State whether you are currently employed, engaged as a freelancer or consultant (or have been since November 1, 2004) with any Person from November 1, 2004 through the present; the date or dates on which you became so employed or engaged; where you have been so employed or engaged; and the compensation received from each such employment from the date you began such employment or engagement to the present.

## INTERROGATORY NO. 4

Identify any Person with whom you had any communication relating to opportunities for your employment or work for hire, by any Person other than EDF or EDFINA, from January 1, 2000 to the present, and describe in detail the substance of those communications.

## INTERROGATORY NO. 5

Identify all visas, grants of immigrant status, residence cards or other documents issued by the United States Immigration and Naturalization Service permitting you to remain and work in the United States; and state when each such document was first requested by you and when it was issued.

## INTERROGATORY NO. 6

Identify any Person with whom your husband has been employed and with whom your husband has had any communication relating to employment opportunities, or work for

- 6 -

hire, from January 1, 2000 to the present, and describe in detail the substance of those communications.

## INTERROGATORY NO. 7

Identify all security measures you took to maintain the confidentiality of and to prevent the loss or destruction of or damage to documents and things belonging to EDF and/or EDFINA while in your possession, custody or control.

## INTERROGATORY NO. 8

State by what authority you deleted the contents of the EDF laptop that was in your possession, describe with particularity how and when said contents were deleted and identify all Persons with knowledge concerning such deletion and all software used in connection therewith.

## INTERROGATORY NO. 9

Identify all communications and attempted communications between or among any employee or representative of ENTERGY Nuclear and any employee or representative of EDF or EDFINA relating to your employment with EDF and/or with ENTERGY Nuclear.

## INTERROGATORY NO. 10

Describe with particularity the damages to your reputation as alleged in paragraphs 268, 292, 302, 305, 308, 318, 330, and 352 of the Complaint.

## INTERROGATORY NO. 11

Describe with particularity the damages to your career as alleged in paragraphs 292, 305, and 318 of the Complaint

## INTERROGATORY NO. 12

Describe with particularity your claims for damages for "medical expense" as alleged in paragraphs 268 and 292 of the Complaint.

INTERROGATORY NO. 13

Identify all medical professionals, including but not limited to, physicians, nurses, paramedics or other paraprofessionals, physical therapists, psychiatrists, psychologists, psycho-pharmacologists, psycho-therapists, or any other medical providers or social workers from whom you sought or received treatment in connection with any emotional, mental, psychological or psychiatric problems; and, as to each such medical provider or social worker,  state the nature of the medical or social problem for which you sought or received treatment.

Dated:  October 28, 2005

HOGUET NEWMAN & REGAL, LLP

By: *Laura B Hoguet* (RBM)
Laura B. Hoguet
D.C. Bar No. 200915
10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Defendants Electricité
de France, S.A. and Electricité
de France International North
America, Inc.*