UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., | ) |
| ELECTRICITE DE FRANCE, S.A., | ) |
| and | ) |
| CHRISTIAN NADAL | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on defendants' May 9, 2006 **Request to Reopen the Deposition of Ms. Gaujacq [#55]** ("Def.'s Mot."), which the Court will treat as a Motion, moving for "an additional half of a day (3.5 hours)" to further depose plaintiff.[1] Def.'s Mot. at 1. Defendants specifically argued therein that this additional time is warranted on the following three grounds:

First, "[t]wo weeks" after her deposition, which was held on March 16th and 17th, 2006, "[p]laintiff, *for the first time*, indicated that she claims damages due to an alleged 'major depression[.]'" *Id*. (emphasis added). Plaintiff supported this claim by submitting a report drafted by "her psychiatric expert, Dr. Gold . . . ." *Id*. at 2; *see generally* Expert Report of Dr.

---

[1] The Court notes that on May 15, 2006, a status conference was held where defendants' instant Motion was heard and held in abeyance.

Liza Gold, March 8, 2006.  Notwithstanding this claim, plaintiff previously "stated in her interrogatory responses that she '*has not seen any health professional for any emotional or mental health responses*.'" Def.'s Mot. at 2 (emphasis added).  Second, according to defendants, plaintiff substantively reversed herself regarding her explanation of why she missed a meeting in June of 2004 with Christian Nadal. *See id*. at 2.  That is, defendants asserted, plaintiff originally wrote a letter to Nadal indicating that she had to leave the United States for France to care for her ailing mother-in-law. *See id*.  Thereafter, however, Nadal purportedly learned from other sources that plaintiff traveled to France to care for her ailing dog, which he testified to in his own deposition. *See id*.  In an ERRATA to her deposition, which followed Nadal's testimony, plaintiff stated the following:

> [M]y mother-in-law was in a coma, *and* our dog became very ill, and died at the same time. This was very distressing as well, as Philippe[, plaintiff's husband,] and I are very close to our dogs - we have no children, so they are like our children to us.

Defendants' Exhibit 4 at 1 (emphasis added).  And third, defendants claimed they "were unable to conclude their examination on the issue of damages during the two days the parties had allotted for the plaintiff's deposition due to the multitude of plaintiff's factual allegations [and] the large number of writings relevant thereto . . . ." Def.'s Mot. at 2-3.

In Plaintiff's Opposition to Defendants' Request to Reopen the Deposition of Ms. Gaujacq [#56] ("Pl.'s Opp."), which was filed on May 11, 2006, plaintiff argued that the Court should deny defendants' Motion on the following four grounds:

First, "defendants provided no legitimate excuse for not being able to complete Ms. Gaujacq's deposition in two days[.]" Pl.'s Opp. at 5.  It is plaintiff's position in this regard that

2

"[f]ar from being uncooperative, [she] made every effort to accommodate Defendants, allowing them to depose her for an additional hour over the agreed time." *Id*. at 7; *see generally* Consent Motion for Consent Order [#53]. Second, according to plaintiff, "Dr. Gold's diagnosis of Ms. Gaujacq's post-termination depression is not a basis for reopening the deposition[.]" Pl.'s Opp. at 7. This is so, despite defendants' apparent "surprise[] by Dr. Gold's diagnosis that Ms. Gaujacq suffered a 'major depression,'" because "this information is a medical conclusion *by an expert*, which the parties agreed was *not due until March 31, 2006*." *Id*. at 8 (emphasis added). Moreover on the point, plaintiff argued, "[d]efendants chose not to propound any Interrogatories asking for Ms. Gaujacq to explain her level of emotional distress." *Id*. (citation omitted). Third, "defendants had every opportunity to obtain damages information they now seek" as "Ms. Gaujacq testified on several occasions at her deposition that she was 'scared to death,' 'emotional,' and 'cried' as a result of Defendants' [alleged] discriminatory and retaliatory conduct." *Id*. at 9 (citation omitted). And fourth, "the burden to Ms. Gaujacq from a third day of depositions outweighs any benefit to defendants[,]" were the Court to grant defendants' instant Motion, because plaintiff would "hav[e] to take more time off work and travel here for a third day of deposition . . . ." *Id*. at 10.

As a legal matter, in the context of pretrial civil discovery, it is well-settled that the trial judge has broad discretion. *See Waterview Mgmt. Co. v. FDIC*, 1999 U.S. App. LEXIS 13342 (D.C. Cir. 1999) (citing *Naartex Consulting Corp. v. Watt*, 232 U.S. App. D.C. 293, 722 F.2d 779, 788 (D.C. Cir. 1983)); *In re Sealed Case No. 98-3077*, 331 U.S. App. D.C. 385, 151 F.3d 1059, 1068 (D.C. Cir. 1998) ("In general, district courts are accorded a wide degree of latitude in the oversight of discovery-related proceedings, and we review orders pertaining to discovery only

for abuse of discretion.").

Here, plaintiff has failed to adequately counter defendants' argument that they were caught off-guard by Dr. Gold's diagnosis of "major depression" because it was only revealed to them *after* plaintiff had submitted her responses to defendants' First Set of Interrogatories, and *after* plaintiff had been deposed. *See*, *e.g.*, Def.'s Mot. at 2.  In addition, plaintiff did not deny in her Opposition that "Dr. Gold's diagnosis of Ms. Gaujacq's post-termination [major] depression" would be the basis of additional damages claims. Pl.'s Opp. at 5; *cf.*, *e.g.*, LCvR 7(h) (noting that "the court may assume that facts identified by the moving party . . . are admitted, unless such a fact is controverted [by the nonmoving party] . . . in opposition to the motion.").  For this reason, "the information sought by defendants" regarding Dr. Gold's diagnosis "is *central* to any damages that may have been sustained by plaintiff, and defendants are certainly entitled to know with specificity, to the extent it is reasonably known or can be learned [from] plaintiff, the details of th[is] allegation[]." *Lohrenz v. Donnelly*, 187 F.R.D. 1, 4 (D.D.C. 1999) (emphasis added). Given that defendants were unable to depose her on this issue, it therefore is not unreasonable that defendants have requested additional time to gather this information under oath. *See*, *e.g.*, *Heat & Control*, *Inc. v. Hester Industries*, *Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) "[A] court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." (quoting Fed. R Civ. P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment)).

Accordingly, and for good cause shown, it is hereby

**ORDERED** that Defendants' Request to Reopen the Deposition of Ms. Gaujacq [#55]

shall be **GRANTED**.[2]

|  |  |
|---|---|
| **Date: May 16, 2006** | **JOHN GARRETT PENN**<br>**United States District Judge** |

---

[2] The Court does not reach the issue of whether or not plaintiff reversed herself regarding her explanation of why she missed a meeting with Nadal and visited France in June of 2004. Moreover, the Court is unpersuaded by plaintiff's argument that an additional half day of deposition would be unduly burdensome to her work schedule considering that she has chosen to bring her claim here in this Court.