IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CATHERINE GAUJACQ                       )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )   No. 1:05CV0969 (JGP)
                                        )
ELECTRICITE DE FRANCE                   )
INTERNATIONAL NORTH AMERICA,            )
INC., et al.                            )
                                        )
    Defendants.                         )
_____)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY SCHEDULING ORDER AND REQUEST FOR EXPEDITED BRIEFING AND RESOLUTION**

This motion by Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal") is necessary to provide federal district courts in Florida, Pennsylvania and Mississippi with clarification concerning this Court's interpretation of its Scheduling Order in this case. Expedited briefing and decision is requested because each of the courts from which the subpoenas were issued is facing emergency motions to quash filed by Plaintiff raising issues of timeliness under this Court's Scheduling Order and relevance to the issues in this case. Defendants ask this Court to (1) require Plaintiff to respond to this Motion on an expedited basis and (2) issue an Order that makes clear that this Court does not view three outstanding Rule 45 subpoenas issued by Defendants to be untimely under the October 14, 2005 Scheduling Order in this case.

**Relevant Factual Background**

Plaintiff, who worked for Defendant Electricité de France, S.A. ("EDF") pursuant to an expatriation contract in the United States, claims in this litigation a variety of damages arising from the Equal Pay Act, Title VII, and the District of Columbia Human Rights Act. Plaintiff has put at issue the question whether her husband Philippe Gaujacq obtained employment in the United States during the time she was employed in the United States, and she has claimed as elements of her damages (1) loss of income of her husband that he allegedly could have earned had Defendants not discriminated and/or retaliated against her and (2) damages involving housing expenses and (3) damages related to business expenses.

Accordingly, Defendants issued a subpoena *duces tecum* to Philippe Gaujacq pursuant to FRCP Rule 45 (the "Initial Subpoena") on May 4, 2006 for, among other things, Mr. Gaujacq's bank records and his appearance to testify at deposition. *See* Exhibit A, attached hereto. The Initial Subpoena was issued well within the discovery period. Objections, if any, to the subpoena were required to be made by May 22, 2006 based on service on May 8. Fed. R. Civ. P. 45. Plaintiff's husband was represented by counsel for Plaintiff in connection with that subpoena and deposition.

Indeed, Defendants took further steps to ensure production by Mr. Gaujacq pursuant to the Initial Subpoena. Given that discovery was about to end and this information was needed for expert discovery related to damages and eventually for summary judgment purposes, counsel for Defendants wrote to remind counsel serving as counsel for Mr. Gaujacq (also counsel for Plaintiff) that Mr. Gaujacq's documents, including the bank records at issue in this Motion, were due and should be produced at his deposition. *See* May 31, 2006 email from D. Regal to E. Bredehoft, attached hereto as Ex. B. ("Since you are representing Philippe Gaujacq in connection

with defendants' subpoena, I am writing to you to request that you ensure that Mr. Gaujacq brings with him to his deposition of June 2 all of the documents listed in the subpoena that are within his possession, custody or control.").

Neither Phillipe Gaujacq nor Plaintiff served timely Objections or otherwise gave notice within the May 31, 2006 discovery cut off that either objected to the Initial Subpoena. Rather, on Friday, June 2, 2006 Mr. Gaujacq appeared for deposition pursuant to the Initial Subpoena, did not produce the subpoenaed bank records, and waited until that time – two days *after* the close of discovery and well beyond the May 22, 2006 production time required under Rule 45 -- to inform Defendants that he would not be producing bank records called for in the subpoena.[1]

Faced with Phillipe Gaujacq's untimely defiance of the subpoena, Defendants ascertained through the depositions of Plaintiff and Mr. Gaujacq that day the location of their banks. As early as feasible the following week Defendants issued three follow up Rule 45 document subpoenas, issued from district courts in Mississippi, Florida and Pennsylvania, to obtain the bank records from the banks themselves (the "Subsequent Subpoenas"). *See* Exhibit C hereto. *Compare* Initial Subpoena, attached hereto as Ex. A, with Attachment A to each of the Subsequent Subpoenas.[2] Thereafter, having thwarted Defendants' legitimate and timely

---

[1] Plaintiff's counsel tendered by hand at the deposition a document entitled Philippe Gaujacq's Objections and Responses to Defendants' Request for the Production of Documents to Philippe Gaujacq, attached hereto as Ex. D. This document was ineffective since it did not comply with the timing requirements of FRCP Rule 45, requiring any objection to production of subpoenaed documents to be made within 14 days of service of the subpoena.

[2] Counsel for Defendants promptly informed Plaintiff's counsel of the additional subpoenas for bank records and why they were necessary. *See* June 8 Email from D. Regal to E. Bredehoft, attached hereto as Ex. E ("Following the failure of Philippe Gaujacq to produce at his deposition on June 2 the bank records called for in his subpoena, EDF and EDFINA are seeking these records directly from the banks that he identified at his deposition. Please see the attached subpoenas, which are in the process of being served upon Bank of America, PNC Bank and Trustmark Bank.").

discovery under this Court's Scheduling Order, Plaintiff and/or Phillipe Gaujacq have filed emergency motions to quash in district courts in all three of these other states in a further attempt to block this discovery.  Worse still, having themselves failed to provide discovery within the limits set by this Court's scheduling order, Plaintiff and her husband now argue that this Court's Scheduling Order precludes compliance with Defendants' subpoenas to the banks.

The instant motion is necessary because one of the district courts faced with Plaintiff's motion to quash has already expressed concern about not contravening this Court's wishes and expectations with regard to scheduling.  *See* Preliminary Order Re: Emergency Motion to Quash Defendants' Document Subpoena at ¶ 2, attached hereto as Ex. F.   In that order that court has stated:

> Defendants shall respond to this motion [Plaintiff's motion to quash]-- addressing first the question of the discovery deadline having passed.  This Court has no jurisdiction to extend said

---

In the Initial Subpoena, Philippe Gaujacq was commanded to produce, *inter alia*, his "bank account records from April 2000 to present."  The Subsequent Subpoenas seek the same information -- albeit with more specificity since discovery after issuance provided names of the banks at which Phillipe Gaujacq had accounts and the number of one of the accounts. The Subsequent Subpoenas also covered  the full year 2000 rather than April 2000 forward.  *Compare* Exhibit A to Initial Subpoena, at ¶ 4 of p. 7 ("Your bank account records from April 2000 to present.") *with* (1) Attachment A of the Trustmark Bank Subpoena ("All records, including records of deposits, bank statements and any correspondence, relating to any and all accounts held by Philippe Gaujacq, held individually and any and all accounts held by Philippe Gaujacq jointly with his wife, Catherine Gaujacq, at Trustmark Bank from January 2000 through the present"); (2) Attachment A of the PNC Bank Subpoena (identical in scope to the Trustmark Bank Subpoena, except that it calls for records from PNC Bank or Riggs Bank as the predecessor bank); and (3) Attachment A of the Bank of America Subpoena (also identical in scope to the Trustmark Bank Subpoena, except that it calls for records from Bank of America "including but not limited to, account number 004132130417 [an account identified by Defendants from a check produced at the close of discovery], and including but not limited to any account held at any branch in Mississippi and/or Virginia [based on Defendants' knowledge of the couple's having lived both places in the time period]….).

>deadline and even if it did, would not interfere with deadlines set
>by the District Judge presiding over the case.

Exhibit F.

Accordingly, Defendants ask this Court on an expedited basis to clarify that the Scheduling Order does not preclude on a timing basis discovery of the records at issue, that such records were properly and timely sought by Defendants, that the timing of the bank subpoenas was necessitated by Philippe Gaujacq's untimely response to the Initial Subpoena, and that the Scheduling Order poses no basis to quash the subpoenas.

## ARGUMENT

This discovery sought via the subpoenas to the banks is timely, and it is reasonably calculated to lead to admissible evidence on damages and other issues.[3] Entry of the Order proposed here will assist the federal courts that are now required to rule on Plaintiff's emergency motions to quash in ancillary proceedings. *See Truswal Sys. Corp. v. Hydro-Air Eng'g. Inc.,* 813 F.2d 1207, 1211-1212 (Fed. Cir. 1987) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.") (internal quotations omitted).

I.   **This Discovery is Timely.**

As the facts stated on pages 1 to 5 of this Memorandum unmistakably show, the *only* reason that discovery regarding Plaintiff's husband's bank records is still outstanding is

---

[3] To the extent Plaintiff or her husband have confidentiality concerns the bank records to be produced are amply protected by the Protective Order already entered in this case on December 14, 2005. *See* Protective Order, attached hereto as Ex. G. This is a particularly robust Protective Order, providing for up to three increasingly restrictive levels of protection, and with all information produced in discovery being automatically limited to use in this litigation. *See id.* at ¶¶ 3, 4, and 7.

because of willful defiance of the Initial Subpoena and a failure to timely or properly object to that subpoena. The discovery reflected in the Subsequent Subpoenas is simply a timely attempt to rectify the failure to comply with discovery initiated well prior to the discovery cutoff on May 31, 2006 and was necessitated by the obstructive tactics of the subpoenaed party.

Defendants, having received no objection whatsoever to the Initial Subpoena, had every reason to believe that Philippe Gaujacq would bring the subpoenaed documents to his deposition. The deposition was set for June 2, 2006 because, as the Court will recall, Plaintiff had been ordered, pursuant to a prior Order issued by this Court on May 16, 2006, to submit to further deposition in this case, and June 2 was the first date mutually convenient to conduct her deposition. The parties agreed that Mr. Gaujacq should be deposed on the same day. Thus, given this timing, there was no way that Defendants could have issued the Subsequent Subpoenas to the banks any earlier than the week of June 5, once they discovered that Philippe Gaujacq's bank records would not be produced as expected.

A discovery cut off should not be used to deprive Defendants of documents, reasonably calculated to the discovery of admissible evidence, that Defendants were led to believe would be provided when no objections were made before the date to complete discovery. Under such circumstances, Defendants submit that the proposed Order should be entered, clarifying that the date of issuance of the Subsequent Subpoenas is not considered by this Court to be untimely under the Scheduling Order.

## II.     This Discovery is Needed.

Defendants seek the relief requested here because the documents sought are important to ferreting out facts at issue in this case. The information sought by the Initial and Subsequent Subpoenas is reasonably calculated to lead to the discovery of admissible evidence. First, it is relevant to the credibility of Plaintiff and to the credibility of Phillipe Gaujacq, who is likely to

be called as a witness by Plaintiff.  As indicated earlier, Plaintiff herself has put at issue the question of whether her husband, Philippe Gaujacq, obtained employment in the United States since the time she was assigned to her term in Washington, D.C.  Philippe Gaujacq accompanied Plaintiff to the United States on her fixed-term assignment in Washington, D.C., entitling the couple to substantial annual payments for two years so long as he did not obtain employment in the United States during that time.  *See Deposition Transcript of Catherine Gaujacq*, pages 93:12 – 95:8 ("Gaujacq Tr.").[4]  During her temporary assignment in the United States, Plaintiff persuaded EDF to agree to sponsor her application to the U.S. Immigration Service for permanent residency status (a green card) on her representation that it would better enable her husband to find employment in the United States. Id. at 92:11 – 95:17.

Plaintiff maintained and continues to maintain that her husband never obtained employment in the United States.  *Id*., at 94:20 - 96:2. Both she and Philippe Gaujacq testified that he has never been employed in the United States.  *Id*. at 95:7 – 96:2; *Deposition Transcript of Philippe Gaujacq*, page 41:7-11 (attached hereto as Exhibit I).  However, Defendants have reason to believe that in fact Philippe Gaujacq was employed in the United States working "off the books."  Even he admitted in his deposition that he did certain construction work over the course of a year during the time Ms. Gaujacq was stationed in the United States.[5]  Defendants expect that Mr. Gaujacq's bank records will reveal whether he in fact received cash income during the relevant period, clearly relevant to the above allegations, and will bear on the credibility both of the Plaintiff and her husband.

---

[4] Portions of the transcript of the deposition testimony of Catherine Gaujacq are attached hereto, collectively, as Exhibit H.

[5] Philippe Gaujacq testified that the friend for whom he performed construction services gave him "gifts" *Id*. at 41:15-42:17.  Philippe Gaujacq now is an investor in a different business with the same individual.

Equally important, the documents sought in the Subsequent Subpoenas are relevant to Plaintiff's damages claims. Ms. Gaujacq seeks damages for, among other things, the loss of income of Philippe Gaujacq that he allegedly could have had if he had returned to France, in the amount of at least $38,519.  Indeed, in Plaintiff's Initial Disclosure Statement she claims as an element of her alleged damages: "Loss of Husband's one year salary because of company's action."  *See* Plaintiff's Initial Disclosure Statement, attached hereto as Ex. J, at p. 7.[6]

Plaintiff's Initial Disclosures also establish the relevance of the joint banking records of Mr. and Mrs. Gaujacq as a potential source of evidence of the couple's living expenses and payments for housing and other utilities, all of which Plaintiff claims as an aspect of her damages in this case.  *See id.* at p. 7 (claiming tens of thousands of dollars in damage for such things as "Unpaid expenses EDFINA-EDF;" "Moving expenses following EDF breach of housing lease contract;" and "Expenses in the new job caused by Defendants' actions.").

In sum, the relevance of the bank records at issue as a potential source of evidence to dispute Plaintiff's damages claims in the underlying employment litigation may not reasonably be disputed by Plaintiff.

---

[6] These disclosures by Plaintiff relate to allegations in the Complaint itself wherein Plaintiff alleges the following concerning Philippe Gaujacq:

> 58. Both Mr. Roussely and Mr. Creuzet [high-level employees of Defendant EDF allegedly involved in certain decisions concerning Plaintiff's employment] were well aware that it was extremely important for Ms. Gaujacq to know by January whether she was expected to remain in the United States, because Ms. Gaujacq's husband, who had taken leave from his job at the University in France when Ms. Gaujacq became assigned to the United States was required to give the University notice of Mr. Gaujacq's intent to return by January, 2004 in order to resume his position for the upcoming academic year (starting in September, 2004).
>
> 59. If Ms. Gaujacq's husband failed to notify the University of his intent to return by January, he would be ineligible to return to his position.

**CONCLUSION**

Given that Defendants timely initiated their efforts to obtain these bank records under the Court's Scheduling Order, that production of these records is demonstrably calculated to lead to the discovery of admissible evidence, and that the confidentiality of such records is assured, Defendants request that this Court promptly clarify that nothing in the October 14, 2005 Scheduling Order precludes Defendants from obtaining this follow up discovery. Other courts considering these issues need this guidance, and Defendants deserve it in opposing Plaintiff's pending motions to quash..

Dated: June 16, 2006

Respectfully submitted,

_____/s/_____
Dorothea Regal
D.C. Bar No. NY0064
Randi B. Seltzer-May
D.C. Bar No. NY0063
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212)689-8808

*Counsel for Defendants Electricité de France, S.A. and Electricité de France International North America, Inc.*

_____/s/_____
Morgan D. Hodgson
D.C. Bar No. 186528
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

Counsel for Defendant Christian Nadal