IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:05CV0969 (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC., et al. | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION**

Plaintiff Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff") submits this memorandum in Opposition to Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal's (collectively "Defendants") Motion for Clarification (the "Motion") to the extent it seeks an order that the subpoenae for documents (the "Subpoenae") to Bank of America, Trustmark Bank, and PNC Bank (collectively the "Banks") served on June 8, 2006 are "permissible", notwithstanding the Court's Scheduling Order closing discovery on May 31, 2006. Instead, any "clarification" should be that the Subpoenae are invalid and unenforceable because (1) they are untimely, (2) they are not reasonably calculated to lead to the discovery of admissible evidence and (3) Defendants do not have a "substantial need" for the confidential financial documents pertaining to third-party Philippe Gaujacq.

**PRELIMINARY STATEMENT**

Pending before the court is a request by the Defendants that the Court issue an order "clarifying" the Court's October 14, 2005 Scheduling Order "to permit Defendants to pursue their Subpoenae for documents from the Banks without regard to the May 31, 2006 cut-off date

for fact discovery." *Defendants Proposed Order*. The October 14, 2005 Scheduling Order ("Scheduling Order") is clear, discovery ended on May 31, 2006. Instead of complying with the schedule the parties agreed to eight months ago, Defendants chose to violate the Scheduling Order by serving subpoenae for documents on third-party Banks, none of whom have been involved in this litigation until now, for documents relating to third-party Philippe Gaujacq ("Mr. Gaujacq").

Defendants' sole argument for their violation of the Scheduling Order is as follows: because Philippe Gaujacq submitted an objection at his deposition to the subpoena *duces tecum* to him for his "bank account records," then Defendants should be entitled to subpoena third-parties for all their documents *relating to* Mr. Gaujacq *after* the discovery period has ended. A refusal by a third-party to produce certain categories of their documents does not give a party license to disavow the discovery deadline and pursue discovery against other third-parties for other documents. Nor have Defendants articulated a single reason why they were unable to pursue discovery against the Banks during the discovery period.

Defendants would have the Court believe that the Subpoenae to the Banks for their documents "relating to" Mr. Gaujacq is the same as the subpoena to Mr. Gaujacq for *his* documents. This is simply untrue. The subpoena to Mr. Gaujacq is very limited, requesting his "bank account records from April 2000 to the present." Attachment 1. Defendants do not define "bank account records," though a likely interpretation is that it means bank statements.

The Subpoenae on the other hand request more than just Mr. Gaujacq's banks statements. They are very broad, requesting "all records" "relating to" Mr. Gaujacq's bank accounts owned individually and jointly with Plaintiff, and includes as examples "bank statements," "records of

2

deposits" and "any corresponding."[1] The Subpoenae are also broader in scope of time, requesting documents from January 2000, while the subpoena to Mr. Gaujacq only goes back to April 2000. The Subpoenae to the Banks patently call for documents that are outside the possession, custody or control of Mr. Gaujacq, and are entirely new discovery requests served outside the discovery period.

It is also important to examine what this Motion does not request. The Motion does not seek an extension of the discovery period, nor has such a motion for an extension ever been filed. The Motion does not seek to compel documents from Mr. Gaujacq or enforcement of the subpoenae to him. Nor, with respect to the Subpoenaes' request for documents relating to Mr. and Ms. Gaujacq's joint-accounts, does the Motion seek enforcement of any requests for production served on plaintiff Catherine Gaujacq. Indeed, it is notable that Defendants' recently filed motion to compel to Plaintiff does not seek to compel the production of any bank account information from her.[2] If such bank account information was so critical, why have Defendants chosen not seek the documents from Plaintiff directly?

The Subpoenae for the Banks' documents are simply not reasonably likely to lead to the discovery of admissible evidence. Defendants' first stated purpose for the Banks' documents is impeachment. Impeachment, however, is not proper grounds and support an inference that the Subpoenae are nothing more than a fishing expedition for inconsistent statements.

Defendants' second argument that the Banks' documents could be relevant to Plaintiff's damages is also fatally flawed: Plaintiff no longer claims damages arising from her husband's

---

[1] The documents requested in each of the Subpoena are identical: "all records, including records of deposits, bank statements and any correspondence, relating to any and all accounts held by Phillippe [sic]Gaujacq, held individually and any and all accounts held by Phillipe [sic] Gaujacq jointly with his wife, Catherine Gaujacq, at a [Bank] from January 2000 through the present." Attachment 2

[2] The Motion to Compel does seek to compel Plaintiff to produce her monthly credit card statements for the years 2004 and 2005, but not "bank records" going back to the year 2000. Attachment 3

3

unemployment in the United States, and this element of her damages claims is not included in the report of Plaintiff's assessing her damages. Further, contrary to Defendants' assertions, Plaintiff's "living expenses" and "payments for housing and other utilities" are not relevant to her damages in this case. As Defendants are aware, and is clearly set forth in the complaint, Plaintiff's Initial Disclosures, and her expert's report, the housing expenses are a contractual, set-amount that were denied to Plaintiff and are not tied in any way to her actual expenses.

Lastly, even if there was some remote connection between the Bank Account Records and Plaintiff's damages, Defendants have not even come close to demonstrating a substantial need for their invasion of Mr. Gaujacq's privacy.

**FACTUAL HISTORY**

Fact discovery ended in this case on May 31, 2006 pursuant to the Court's October 14, 2005 Scheduling Order. Attachment 4. In a subpoena dated May 4, 2006, Defendants requested a deposition of Mr. Gaujacq and the production of documents. Attachment 1. The deposition of Mr. Gaujacq was held on June 2, 2006, after the discovery period ended. On that day, Mr. Gaujacq served Defendants with his Objections and Responses to Defendants' Request for the Production of Documents. Attachment 5. Mr. Gaujacq's responses stated that the requested documents had already been produced, including documents concerning efforts to seek employment, compensation earned, his tax returns from August 2000 to the present, with the exception of his bank account records, which he objected to on the grounds of breadth and relevance. Id.

On June 8, 2006, Defendants notified Plaintiff by email that they were in the process of serving the Subpoenae on Bank of America in Florida, Trustmark Bank in Mississippi and PNC Bank in Pennsylvania. Attachment 6. The Subpoenae request that the Banks produce all their

4

documents relating to Philippe Gaujacq by June 16, 2006, just eight days after service of the Subpoenae. See *Subpoenae*, Attachment 2.

Due to Defendants' artificially-constricted time-frame for the document production, Plaintiff was forced to move to quash the Subpoenae on an emergency basis in order to ensure that Plaintiff's motions would not be rendered moot by a production of the documents by the Banks. See *Plaintiff's and Third Party Movant Philippe Gaujacq's Emergency Motions and Memoranda in Support of Motions to Quash*, Attachment 7.

Two of the District Courts have issued preliminary orders granting Plaintiff's motions to quash the Subpoenae. See *Orders of the District Courts for the S.D. Fl. and the S.D. Miss.*, Attachment 8. The third District Court denied Plaintiff's motion to quash. See *Order of the W.D. Pa.*, Attachment 9. However, Plaintiff's emergency motion to stay that order (Attachment 10) is pending and Defendants have agreed to extend the return date on the subpoena until Tuesday, June 27, 2006 (*June 21, 2006 letter to Mr. Gold*, Attachment 11).

## ARGUMENT

### I. DEFENDANTS' SUBPOEANAE VIOLATE THE SCHEDULING ORDER

The subpoenae are invalid because they violate the Court's Scheduling Order. The discovery period ended on May 31, 2006. The Subpoenae are dated June 7, 2006, a week after the close of discovery. Defendants should not be able to seek permission to conduct discovery outside the discovery period without making a showing of "good cause."

Fed. R. Civ. P. 16(b) and Local Rule 16.4 make it clear that the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here. In Olgyay v. Society for Environmental Graphic Design, Inc., 169 F.R.D. 219 (D.D.C. 1996) (Attachment 12), for example, the Court noted the Scheduling Order is "intended

5

to serve 'as the unalterable road map (absent good cause) for the remainder of the case.'" (citation omitted).

Defendants have not shown good cause for their violation of the Scheduling Order. The Subpoenae do not seek discovery of Mr. Gaujacq or plaintiff Catherine Gaujacq. Instead, they seek the production of documents from third-party Banks that merely *pertain* to Mr. and Ms. Gaujacq. Defendants have failed to articulate a single reason why they were unable to pursue discovery of the Banks within the discovery period.

Defendants had every opportunity to obtain the Bank Account information they now seek at this late hour. In December 2005, approximately six months ago, Ms. Gaujacq produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses. Attachment 13. Defendants deposed Ms. Gaujacq for three days and still never complained that the information produced was insufficient or moved to compel production of her bank statements. Indeed Defendant's deposed Ms. Gaujacq for two full days during the discovery period and failed to ask a single question about her bank accounts. Instead, with these out of time Subpoenae, Defendants are attempting an "end around" Ms. Gaujacq's discovery responses by requesting her and her husband's private financial information from the banks directly. Such manipulation of the discovery process should not be allowed.

Because Defendants do not have good cause for waiting until after the close of discovery to serve their Subpoena, the Motion should denied and an Order should be entered stating that the Subpoenae are untimely.

6

## II. THE BANK RECORDS ARE NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should deny Defendants' Motion for the additional reason that the documents requested by the Subpoenae are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued."[3]

The burden on Defendants in this case to show that their document request is relevant is especially high because it involves discovery of private and confidential financial information of a third-party. Discovery is not "unbridled and not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy." Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969), Attachment 14. The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not

---

[3] Ms. Gaujacq has standing to object to the Subpoenae because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551 (D. Ga. 2001).

7

privileged, and it is not, it still may be oppressive or unreasonable to require disclosure. It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff's and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. The Banks' documents are irrelevant to both liability and damages

Indeed, Defendants' only explanation for why the bank account records are relevant is for (1) impeachment of Plaintiff and her husband, third-party Mr. Gaujacq and (2) the possibility that the Banks' documents will somehow bear on "the couple's living expenses and payments for housing and other utilities." *Defendants' Memorandum in Support of Motion to Clarify*, at p. 6-8. Neither of these reasons are sufficient. Impeachment, without any basis for asserting that there will be any inconsistencies between Mr. and Ms. Gaujacq's testimony and the contents of the Banks' documents, cannot form the basis for a subpoena for confidential financial records, and smacks of a fishing expedition. By Defendants' logic, discovery is limitless because a party may turn over every stone for impeachment evidence, regardless of relevance to the allegations, claims and defenses in the complaint. Such fishing for evidence should not be permitted.

Defendants' second stated basis for relevance, that the Bank Records will bear on Ms Gaujacq's living expenses is equally flawed. First, such information is not relevant. Ms Gaujacq's claim for her unpaid housing expenses are a contractual, set-amount that were denied to Plaintiff and are not tied in any way to her actual expenses. In addition, the Subpoenae seek cumulative discovery, Ms. Gaujacq has already produced financial information in the form of the couple's tax returns. *Philippe Gaujacq's Objections And Responses To Defendants' Request*

8

*For The Production Of Documents To Philippe Gaujacq*, p. 3, Attachment 5. In addition, Ms. Gaujacq produced over forty pages of documents in response to Defendants' request for documents concerning her claim for unpaid business expenses (Attachment 13) and credit card information (Attachment 15).

Because Defendants have no reasonable basis for believing the Bank Records contain impeachment evidence, the information is readily available to Defendants in their own files, and Ms. Gaujacq has already produced her financial information pertaining to the damages issues, the Subpoenae should be declared invalid and unenforceable.

### III. DEFENDANTS HAVE NOT EVEN ALLEGED THEY HAVE A SUBSTANTIAL NEED FOR THE REQUESTED DISCOVERY

Finally, even if there was some remote connection between the Banks' documents and Plaintiff's damages, the Motion should be denied on the grounds that the Subpoenae are oppressive and seek confidential financial information that Defendants do not need. Defendants have not even come close to demonstrating a substantial need for their invasion of Mr. Gaujacq's privacy, a necessary element of their position. See U.S. v. Federation of Physicians and Dentists, Inc., 63 F. Supp. 2d 475 (D. Del. 1999) (granting motion to quash subpoena because "[fi]inancial information of non-parties in a lawsuit has been held by courts to be private and not routinely available for discovery"); Litton Indus. V. Chesapeake & Ohio Railway Co., 129 F.R.D. 528 (E.D. Wisc. 1990) (granting motion to quash because need for disclosure of financial information did not outweigh privacy concerns). As the Court stated in Hecht, "discovery is not unbridled and not unlimited. There must be restrictions to protect individuals in their natural privacy." Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969).

The Banks' records at issue here are inherently private. Moreover, they are likely to contain privileged information in the form of checks related to attorney representation and other

personal matters. The discovery process was not designed to permit such unfettered access into the daily spending habits of Plaintiff and her husband. Documents responsive to the Subpoenae could also be protected by the marital privilege.

Nor will any protective order address the concerns of Plaintiff and her husband, as Defendants have argued in the past. "There is a constant danger inherent in disclosure of confidential information pursuant to a protective order." Litton, 129 F.R.D. at 531 (posing the question "how does one practically police a protective order?"). Furthermore, a protective order will not protect the Gaujacq's private financial information from being aired by those involved in this case, including the attorneys and any experts hired by Defendants.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court deny Defendants' Motion and enter an order stating that the Subpoenae are invalid and unenforceable because (1) they are untimely, (2) they are not reasonably calculated to lead to the discovery of admissible evidence and (3) Defendants do not have a "substantial need" for the confidential financial documents pertaining to third-party Philippe Gaujacq.

June 22, 2006                                   Respectfully Submitted,

*[signature]* /sc

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq