# ATTACHMENT 1

S. AO88  (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

|                     |                     |                     |
|---------------------|---------------------|---------------------|
| Southern            | DISTRICT OF         | Mississippi         |

Catherine Gaujacq

V.

Electricite de France International North America,
    Inc , Electricite de France, Christian Nadal

TO:  Philippe Gaujacq
      125 Livingston Drive
      Madison, MS  39110

## SUBPOENA IN A CIVIL CASE

Case Number:[1]  1:05CV0969    (Pending in
the U.S. District Court for the District
of Columbia)

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION   Butler, Snow, O'Mara, Stevens & Cannada pllc, AmSouth Plaza, 17th Floor, 210 East Capital Street, Jackson, MS 39225 | DATE AND TIME 6/1/2006 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):

SEE ATTACHED EXHIBIT

| PLACE   Butler, Snow, O'Mara, Stevens & Cannada pllc, AmSouth Plaza, 17th floor, 210 East Capital Street, Jackson, MS 39225 | DATE AND TIME 5/25/2006 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Randi Seltzer May, Esq., Attorney for EDF and EDFINA* | *May 4, 2006* |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
*Randi Seltzer May, Esq., Hoguet Newman & Regal, LLP, 10 East 40th Street, New York,
NY 10016    (212) 689-8808*

[See Rule 45  Federal Rules of Civil Procedure  Parts C & D on next page]

[1] If action is pending in district other than district of issuance, state district under case number

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) No. 1:05CV0969 (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC., et al. | ) |
| | ) |
| Defendant | ) |
| | ) |

## Exhibit A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants

Electricité de France, S.A. ("EDF"), Electricité de France International North America,

Inc. ("EDFINA") and Christian Nadal, by their respective counsel, request that Philippe

Gaujacq produce, by the date identified in the accompanying subpoena, for inspection

and copying, all responsive documents and things that are within his possession, custody,

or control.

## GENERAL INSTRUCTIONS

1    You are required to furnish all documents and things responsive to this

subpoena that are known or available to you, regardless of whether these documents are

possessed directly by you, your agents, employees, or investigators, or possessed by your

attorney or his or her agents, employees, representatives or investigators.

2.    When producing documents in response to this subpoena, produce the

documents as they are kept in the usual course of business.

3.    In the event that any document responsive to this subpoena is withheld on

the basis of any legal objection or claim of privilege, indicate the following information

for each such withheld document or portion thereof:

    a.    the date of the document;

    b.    the general character or type of document (i.e., letter, memorandum, notes of meeting, etc.) and the number of pages thereof;

    c.    the identity of the person in possession of the document;

    d.    the identity of the author or generator of the document;

    e.    the identity of the original recipient, recipient of blind copies, or holder of the document;

    f.    the identity of the addressor(s) and addressee(s);

    g.    the relationship of author, addressee and any other recipient of the document, including, but not limited to, recipients of blind copies;

    h.    the general subject matter of the document;

    i.    the legal basis, including but not limited to any claim of privilege for withholding the document; and

    j.    all attachments, enclosures and appendices, if any, with all of the information specified in clauses (a) through (i) of this paragraph as to any such attachment, enclosure and appendix withheld.

4.    If a portion of a document responsive to this subpoena contains

information subject to a claim of privilege, such portion of the document subject to such

claim may be redacted from the document, and the rest of the document shall be

produced. Every such document shall bear a notation indicating where each redacted

portion was redacted. As to any document produced in a redacted version, identify each

document that has been redacted and set forth the basis for the redaction in sufficient

detail to permit the court to adjudicate the validity of the basis for redaction. Provide all of the information specified in clauses (a) through (i) of paragraph 3 for any redacted portion of any document.

5.    If any document or thing responsive to this subpoena was at one time in existence but has been lost, destroyed, discarded or otherwise disposed of, state as to each such document or the thing the following:

    a.    the author or generator and the position or title of the author or generator, including the organization or business with which such author or generator is associated;

    b.    the addressee or recipient and, if an individual, his or her position or title;

    c.    as to documents, the people whom the document indicated as recipients of carbon copies or blind copies;

    d.    the date of the document or, if a thing, the date it was

generated;

    e.    the subject matter;

    f.    the size (number of pages, length of recording, etc. as

appropriate);

    g.    the attachments, enclosures or appendices, if any;

    h.    all persons to whom the document or thing was distributed shown, explained or discussed;

    i.    the nature of the document or thing;

    j.    the date of loss, destruction or disposal;

    k.    the reason for the loss, destruction or disposal;

    l    the person who lost, destroyed or disposed of it; and

    m.    the manner in which it was lost, destroyed or disposed of.

6. If any document or thing responsive to this subpoena cannot be produced in full, produce each such document or thing to the extent possible, specifying the reasons for your inability to produce it in full and describing, with whatever information, knowledge, or belief you do have, the subject matter and contents of the unproduced portion thereof.

7. If any document or thing responsive to this subpoena was never in your possession, but you are aware of its custodian and location, identify the document or thing and its present custodian and/or location.

8. Unless otherwise specified, the relevant time period is from August 1, 2000 through the present.

## DEFINITIONS AND CONSTRUCTION

1. "Plaintiff" shall mean Catherine Gaujacq, her attorneys, agents and any other person acting on her behalf.

2. "You" and "your" shall mean Philippe Gaujacq, your attorney, agent or any other person acting on your behalf.

3. "Defendants" shall mean Electricité de France, S.A., Electricité de France International North America, Inc. and Christian Nadal.

4. "EDF" shall mean Defendant Electricité de France, S.A.

5. "EDFINA" shall mean Defendant Electricité de France International North America, Inc.

6. "Nadal" shall mean Defendant Christian Nadal.

7. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9.    "Concerning" shall mean directly or indirectly, referring, relating or pertaining to or containing, constituting, reflecting, recording, embodying, memorializing, discussing, underlying, commenting upon, forming the basis for, analyzing, mentioning, comprising, considering, explaining, showing or describing the subject matter of the request containing the phrase.

10.    "Document" shall mean and refer to any form of communication, correspondence or representation, including letters, words, pictures, sounds or symbols or combinations thereof, represented in handwriting, printing, photocopying, tape-recording, computer file, e-mail or otherwise however stored (including magnetic, digital, mechanical, tape or other means of electronic storage, video recording, audio recording and every other means of recording), and all attachments thereto. A reference to the word "documents" includes, without limitation: e-mails (and all attachments thereto), letters, correspondence, communications, agreements, proposals, notes, records, reports, telegrams, telexes, computer print-outs, memoranda, analyses, projections, manuals, guidelines, work papers, lists, diaries, calendars, journals, telephone logs, minutes of meetings, notebooks, summaries or records of conversations, statistical statements, drafts of any documents, stenographic or stenotype notes, voice recordings, computer data, non-paper information storage such as tapes, films and computer memory devices. "Documents" include all drafts of the foregoing and all non-identical copies of documents, whether such copies are different from the original by reason of a notation made thereon or added thereto or otherwise.

11.    "Person" shall mean any individual, corporation, organization, domestic or foreign company, association, sole proprietorship, business trust, partnership, limited

partnership, firm, joint venture, government or governmental body, governmental or

public authority, agency, governing board, authority, department or division or any other

entity

      12.    For purposes of construing the scope of this subpoena, the terms used are

to be given their most expansive and inclusive interpretation unless otherwise specifically

limited in the text itself. This includes, without limitation, the following:

          a.    The use of the singular form of any word includes the plural, and

              the plural includes the singular, as necessary to bring within the

              scope of the subpoena all documents that might otherwise be

              construed to be outside the scope of this subpoena.

          b.    The connectives "and" and "or" shall be construed either

              disjunctively or conjunctively as necessary to bring within the

              scope of the discovery subpoena all documents that might

              otherwise be construed to be outside the scope of this subpoena.

          c.    The words "any" and "all" as used in this subpoena shall be

              construed to mean "any and all," as necessary to make the

              subpoena more inclusive.

          d    The phrase "including, without limitation" and the phrase

              "including but not limited to" shall mean including without in any

              way qualifying, limiting or restricting the foregoing text to which

              the phrase refers.

## DOCUMENTS TO BE PRODUCED

1.    All documents and communications reflecting any and all of your efforts to seek employment or work of any kind in the United States from August 2000 to the present.

2.    All documents reflecting any compensation you have earned or received, monetary or otherwise, including compensation in kind, for any work or services you performed from the period of August 2000 to the present.

3.    All tax returns from August 2000 to the present that report income received by you.

4    Your bank account records from April 2000 to the present.

# ATTACHMENT 2

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

# Issued by the
## UNITED STATES DISTRICT COURT

_____ Southern _____    DISTRICT OF    _____ Florida _____

Catherine Gaujacq

## SUBPOENA IN A CIVIL CASE

### V.

Electricite de France International North America, et al.

CASE NUMBER: [1]  1 : 05cv0969

TO:   Legal Order Processing Department, Bank of America          (Pending in the U.S. District
      1425 NW 62nd Street                                          Court for the District of Columbia)
      Ft. Lauderdale, FL 33309

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Legal Order Processing Department, Bank of America<br>1425 NW 62nd Street        Ft. Lauderdale, FL 33309 | June 16, 2006   5:00 pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_        Attorney for Defendants EDF and EDFINA | 6/7/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dorothea Regal        Noguet, Newman & Regal, LLP
                      10 East 40th Street    New York, NY 10016-0301    (212) 689-5101

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

1.    All records, including records of deposits, bank statements and any
correspondence relating to any and all accounts held by Phillipe Gaujacq, held
individually and any and all accounts held by Phillipe Gaujacq jointly with his wife,
Catherine Gaujacq, at Bank of America including, but not limited to, account number
004132130417, and including but not limited to any account held at any branch in
Mississippi and/or Virginia from January 2000 through the present.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

# Issued by the
# UNITED STATES DISTRICT COURT

_____Western_____    **DISTRICT OF**    _____Pennsylvania_____

Catherine Gaujacq

## SUBPOENA IN A CIVIL CASE

**V.**

Electricite de France International North America, et al.

CASE NUMBER: [1]   1 : 05cv0969

TO:   Records Unit, PNC Bank
      500 1st Avenue
      Pittsburgh, PA 15222
      Internal Mail Stop: P7-PFSC-02-F

(Pending in the U.S. District Court for
the District of Columbia)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Records Unit, PNC Bank    500 1st Avenue | June 16, 2006  5:00 pm |
| Pittsburgh, PA 15222    Internal Mail Stop: P7-PFSC-02-F | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Defendants EDF and EDFINA | 6/7/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dorothea Regal        Hoguet, Newman & Regal, LLP
                      10 East 40th Street    New York, NY 10016-0301    (212) 689-5101

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)    (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance,
(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

. (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)  If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    DUTIES IN RESPONDING TO SUBPOENA

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

All records, including records of deposits, banks statements and any correspondence relating to any and all accounts held by Phillippe Gaujacq, held individually and any and all accounts held by Phillipe Gaujacq jointly with his wife, Catherine Gaujacq, at a Riggs Bank or PNC Bank from January 2000 through the present.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

_____Southern_____          **DISTRICT OF** _____Mississippi_____

Catherine Gaujacq

### SUBPOENA IN A CIVIL CASE

V.

Electricite de France International North America, et al.

CASE NUMBER: [1]   1 : 05cv0969

TO:   Legal Department, Trustmark Bank
       348 East Capitol
       Jackson, MS 39201

(Pending in the U.S. District Court
Court for the District of Columbia)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Butler, Snow, O'Mara, Stevens and Cannada PLLC, AmSouth Plaza, 17th Floor 210 East Capitol Street, Jackson, MS 39225 | June 16, 2006   5:00 pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify   Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]    Attorney for Defendants EDF and EDFINA | 6/7/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Dorothea Regal      Hoguet, Newman & Regal, LLP
                    10 East 40th Street    New York, NY 10016-0301    (212) 689-5101

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
           DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)   (A)   A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which this subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)   (A)   On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)   fails to allow reasonable time for compliance,

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to incur substantial expense to travel more than 100 miles within the state in which the trial is held, or

(iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)   If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)   DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A

All records, including records of deposits, bank statements and any correspondence, relating to any and all accounts held by Phillippe Gaujacq, held individually and any and all accounts held by Phillipe Gaujacq jointly with his wife, Catherine Gaujacq, at a Trustmark Bank from January 2000 through the present.

i

# ATTACHMENT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No  1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITÉ DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC , et al | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

This motion is brought by all Defendants, Electricité de France, S.A ("EDF"), Electricité de France International North America, Inc ("EDFINA"), and Christian Nadal ("Nadal"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 37(a), to compel full and complete discovery from Plaintiff and to obtain relief for Plaintiff's failure to make timely discovery. This motion is necessary because Plaintiff has refused to produce documents in response to proper requests.

Defendants ask the Court to: (1) overrule Plaintiff's unfounded objections to individual document requests and require full production of responsive documents; (2) permit reasonable follow-on depositions by Defendants as necessary in light of late-produced documents; and (3) award Defendants all reasonable expenses, including attorneys' fees, associated with this motion  The grounds for this motion are more fully described in the accompanying supporting Memorandum  A proposed Order has been submitted

Dated:  June 16, 2006

Respectfully submitted,

_____/s/_____

Dorothea Regal
D.C  Bar No  NY0064

Randi B. Seltzer-May
D.C. Bar No. NY0063
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY  10016
(212)689-8808

*Counsel for Defendants Electricité de France, S.A.*
*and Electricité de France International North*
*America, Inc.*

_____/s/_____

Morgan D. Hodgson
D.C. Bar No. 186528
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(m), counsel for Defendants have made good faith attempts to confer with Plaintiff to resolve the issues relating to Plaintiff's failure to respond to individual document production requests  These efforts have included a letter to Plaintiff's counsel sent by email on May 30, 2006, as well as a telephonic meet and confer conference among all counsel on June 5, 2006  The positions of Plaintiff's counsel adopted during the telephone conference and in a follow up email of June 8, 2006 leave the parties at impasse on the issues addressed in the instant motion, and Plaintiff has made clear that she opposes the discovery sought by this motion

Dated:  June 16, 2006

/s/
_____

Morgan D  Hodgson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ            )
                             )
      Plaintiff,             )
                             )
      v.                     )      No. 1:05CV0969 (JGP)
                             )
ELECTRICITE DE FRANCE        )
INTERNATIONAL NORTH AMERICA, )
INC., et al                  )
                             )
      Defendants.            )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal")'s Motion to Compel is necessary to obtain full and complete discovery from Plaintiff and to assess and redress Plaintiff's failure to produce responsive documents before the discovery cutoff. The federal courts have consistently expressed a preference for a broad scope of discovery. *See*, *Hickman v Taylor*, 328 U.S. 495, 501 (1947); *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005). Plaintiff has overtly refused to produce documents in response to proper requests, thereby depriving Defendants of access to potentially important evidence.

Plaintiff was obligated to provide Defendants with the documents sought in this Motion to Compel in time to make use of them in discovery.[1] Defendants should have them still, and the Court should ensure that Defendants

_____

[1] Following receipt of Plaintiff's Objections late in the day on May 26, 2006 Defendants' counsel asked to meet and confer with Plaintiff's counsel on these issues *prior* to the resumption of Plaintiff's deposition on June 2, 2006 at 8:30 a.m. *See* May 30, 2006 letter from Defendants' counsel to Plaintiff's counsel regarding Plaintiff's Objections and Requesting Meet and Confer Conference ("Defendants' Meet and Confer Letter")(attached hereto as Exhibit A). Plaintiff's counsel informed Defendants' counsel that she could not accommodate Defendants' meet and confer request prior to Monday, June 2, 2006 due to other scheduling conflicts. *See* May 31, 2006 email from Defendants' counsel to Plaintiff's counsel dated May 31, 2006, and Plaintiff counsel's May 31, 2006 response thereto (attached hereto as Exhibit B).

are not prejudiced by Plaintiff's conduct by permitting necessary additional discovery to be completed or other

corrective measures implemented once there is compliance with the proposed Order

## ARGUMENT

I.     **Plaintiff Should Produce Documents Relating to Housing and Storage Costs in France.**

At the same time she is pursuing damages involving claims for both U S housing payments and storage

charges for furniture in France, Plaintiff has refused production of documents closely related to those subjects  The

two requests and responses at issue state:

> **7.      All documents concerning any residence owned or otherwise maintained by
> you in France over the period of January 1, 2000 to date, including but not limited to deeds,
> mortgages, leases, and payments.**
>
> **OBJECTION:**  Plaintiff objects to this Request on the grounds that it is overly broad,
> unduly burdensome, and that the information sought is neither relevant to any issue in this
> litigation, nor reasonably calculated to lead to the discovery of admissible evidence
>
> **RESPONSE:**  Plaintiff stands on her objections
>
> **16.      All documents relating to the furniture you had in France, including but
> not limited to contracts or bills, which you referenced at page 452 of your deposition.**
>
> **OBJECTION:**  Plaintiff objects to this Request on the grounds that it is overly broad,
> unduly burdensome, and that the information sought is neither relevant to any issue in this
> litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff also
> objects to this Request to the extent it seeks information protected by the attorney-client privilege,
> and on the grounds that this Request invades protected litigation work product and would require
> disclosure of core opinion work product and mental impression of counsel, which is prohibited by
> Fed R Civ P 26(b)(3)
>
> **RESPONSE:**  Plaintiff stands on her objections.

Plaintiff's Objections and Responses to Defendants' Second Request for the Production of Documents, (attached

hereto as Exhibit C) at 4-5, 8

Regarding Plaintiff's relevance objection to questions directed at housing and furniture storage expenses in

France, Defendants explained to Plaintiff, both in writing and in conference, that this information is relevant to an

analysis of Plaintiff's damages claim, particularly since her claim includes compensation based on the payment by

EDF of housing expenses for expatriates serving abroad  *See* Ex. A at 3  Documents regarding any residence in

France are also relevant for comparisons of the net benefit to Plaintiff under various damages scenarios, some of

which include payments of U.S. housing costs designed to offset expenses that might continue in France for employees serving abroad. *See id.*

The relatedness of Plaintiff's housing in France to housing benefits paid by EDF in the U.S. can be seen, *inter alia*, at p. 4 of the translation of the agreement entitled "Specific Conditions Applicable to the Long Term Assignment of Catherine Gaujacq to Washington, (attached hereto as Exhibit D). There, Ms. Gaujacq: (1) elects domicile at a residence in Montgenevre, France; (2) secures certain furniture storage benefits in France; and (3) secures the benefit of housing in the U.S. at no cost to her. *Id.*

After discussing these Requests at the meet and confer conference on June 5, Plaintiff's counsel responded to Defendants on June 8. Plaintiff refused to provide the documents sought, her counsel stating her position as follows: "On the ownership of a home in France, I discussed this with Neil Demchick [who is *Plaintiff's* damages expert] and he said he would need more specific reasons provided by you to fathom the relevance." June 8, 2006 Email of Elaine Bredehoft, (attached hereto as Exhibit E) ¶ 5. With all due respect, the choice whether to produce is not one for Plaintiff's damages expert to make. Here, Defendants have made clear that they may wish to consider this information in their rebuttal position on damages, plainly a relevant subject in this litigation. It is more than enough justification for a legitimate discovery request that Plaintiff seeks damages that include the loss of a housing expense benefit paid by Defendant EDF for expatriates serving abroad and that Defendants wish to *develop* their arguments concerning the nature and extent of Plaintiff's actual housing expenses in the U.S. and France.

For these reasons, documents relating to Plaintiff's French residence(s) and expenses related to storage of furniture in France may reasonably lead to the discovery of admissible evidence on Plaintiff's damages claim and Defendants' defenses thereto. Fed. R. Civ. P. 26 (b)(1). All documents responsive to Defendants' Request Nos. 7 and 16 should be ordered produced forthwith.

**II.    Plaintiff Should Produce Her Calendars and Similar Documents.**

Defendants have sought documents that would reveal (among other things) Plaintiff's whereabouts during the last year of her employment (*e.g.*, Plaintiff's calendars).

**9.    All calendars or other documents showing travel dates and/or meetings for 2004-2005.**

**OBJECTION:** Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects to this Request to the extent it seeks information protected by the attorney-client privilege,

and on the grounds that this Request invades protected litigation work product and would require disclosure of core opinion work product and mental impression of counsel, which is prohibited by Fed. R. Civ. P. 26(b)(3).

**RESPONSE:** Without waiving objections, please see documents Bates stamp nos. 2509-2528. Other documents produced may also be responsive to this Request.

*See* Ex. C at 5.

As the Court is aware from argument at the May 15, 2006 status conference, there are disputes regarding statements that Plaintiff made -- both in 2004 and later under oath at her deposition -- as to her location in 2004. In response to this document request, however, Plaintiff produced only a hard copy of an Excel file (Bates Nos. 2509-2528) (attached hereto as Exhibit F). That Excel file, subsequently used as Gaujacq Deposition Exhibit 93, is not a contemporaneous calendar or record, but a document created from scratch by Plaintiff that lists selective information about Plaintiff's location at various points in time. At deposition, Plaintiff also testified that there have been prior versions of Exhibit 93, that she did not know if she had produced all earlier versions, that she may have destroyed some prior versions, and that she had constructed Exhibit 93 from other documents. The relevant deposition testimony regarding Exhibit 93 makes clear that Plaintiff's approach to providing all responsive non-privileged documents has been appallingly inadequate. *See* deposition excerpts concerning Exhibit 93 (attached hereto as Exhibit G).

In addition to the disputes about Plaintiff's locations at specific points in time and questions of her truthfulness to her superiors in that regard, calendars and similar documents, travel schedules, and other documents detailing the whereabouts and activities of Plaintiff are also relevant to assertions Plaintiff is making in this litigation about the comparative scope of Plaintiff's and Defendant Nadal's jobs for purposes of her claim under the Equal Pay Act. *See. e.g.*, Complaint ¶ 332 [2] Indeed, Plaintiff herself has demanded the production of Defendant Nadal's calendars in discovery, and those calendars have been produced.

---

[2] Paragraph 332 of the Complaint alleges: "Ms. Gaujacq was replaced as President of EDFINA by Mr. Nadal, a male. Mr. Nadal was paid a salary that was approximately 60% higher than the salary paid to Ms. Gaujacq.

After discussing these issues with defense counsel in the meet and confer conference on June 5, 2006 Plaintiff's counsel initially indicated that she would undertake to confirm with Plaintiff whether Plaintiff had her calendars for the requested time period, presumably for purposes of producing them. However, the June 8, 2006 email from Plaintiff's counsel, provides no further information on this subject as promised. *See* Ex. E. Production of *all* documents responsive to Request No. 9, including Plaintiff's calendars and all other documents providing calendar-type or chronological information, and all prior versions of Exhibit 93 and all documents that would reflect dates on any version of Exhibit 93, should be ordered at this time. If Plaintiff has deleted or destroyed any responsive materials, including prior iterations or versions of Gaujacq Deposition Exhibit 93, full particulars should be disclosed to the Court and Defendants.

III.    **Plaintiff Should Produce Her Credit Card Statements.**

Plaintiff has flatly refused to produce documents in response to the following request for credit card information:

> **10.    All credit card statements for any account in Plaintiff's name or on which Plaintiff was authorized to incur charges for each month in the years 2004 and 2005.**
>
> **OBJECTION:** Plaintiff objects to this Request on the grounds that it is overly broad, unduly burdensome, and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.
>
> **RESPONSE:** Plaintiff stands on her objections

*See* Ex. C at 5

Following Plaintiff's outright refusal to produce these documents, Defendants' May 30, 2005 letter explained the relevance of the requested documents in an attempt to avoid the need for this motion:

> Request 10 seeks Plaintiff's credit card statements for 2004 and 2005, and Plaintiff has made no production in response. Once again, given Plaintiff's own

---

as President. Mr. Nadal had the same responsibilities (or less, since Ms. Gaujacq retained all responsibility for the Project and Mr. Nadal did not pick up additional responsibilities to make up for that difference) as Ms. Gaujacq had as President."

> document production requests for the same or similar documents [a reference to
> Plaintiff's demand for, and Defendants' production of, the American Express
> statements reflecting charges by all EDF employees using EDFINA cards], it is
> difficult to believe that the Court would entertain such a blanket relevance
> objection. In any event, without limitation, these documents may lead to
> discovery of admissible evidence concerning Plaintiffs whereabouts during the
> periods in question, the lack of effect on Plaintiff of claimed actions with respect
> to her EDFINA charge privileges, and information relating to expenses she
> claims as elements of her damages in this case. The objection should be
> withdrawn and full production made immediately, particularly in light of the
> Court-ordered resumption of Plaintiff's deposition on Friday, June 2, to inquire,
> *inter alia*, about Plaintiff's damage claims

*See* Ex. A at 3.

These requested documents may lead to admissible evidence regarding disputes with respect to Plaintiff's

location during the period that she worked for Defendants. They may also lead to admissible evidence to defend

against Plaintiff's claims of damages in terms of expenses incurred, and to defend against Plaintiff's claims

regarding cancellation of a credit card by Defendants.

Plaintiff failed to make the required production in time for use in Plaintiff's deposition on June 2, and, even

following the deposition, has continued to stand on her general objection. When the parties conferred about these

issues, Plaintiff's counsel provided no response to any of the arguments made by Defendants, other than to say that a

motion to compel would be required.

The discovery rules do not permit Plaintiff to serve as the arbiter of what she will produce absent valid

objections, which do not exist here. Permitting Plaintiff to determine what documents the Defendants need invades

the authority of the Court. *See Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (ordering

defendant to produce documents previously withheld for reasons of relevance, because "[t]he defendant, having no

incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance

which is unquestionably the decision of the judge"). Plaintiff should be ordered to produce these documents

forthwith and Defendants afforded a reasonable opportunity to question Plaintiff about them.

## CONCLUSION

Plaintiff's groundless objections should be overruled, and she should be ordered to comply forthwith. For

the reasons above, Defendants request that the Court: (1) overrule Plaintiff's objections to the individual Document

Requests 7, 9, 10 and 16 and compel full production of responsive documents forthwith and a full explanation

regarding any such responsive documents that no longer exist; (2) permit Defendants, as necessary, to continue

Plaintiff's deposition in Washington, DC at her expense to examine her on any late-produced documents and to reopen, if necessary, other depositions for further inquiry into late-produced documents; and (3) order that Plaintiff pay Defendants' reasonable expenses, including attorneys' fees, of litigating this motion to compel.

Dated:  June 16, 2006

Respectfully submitted,

_____

Dorothea Regal
D.C. Bar No. NY0064
Randi B. Seltzer-May
D.C. Bar No. NY0063
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212) 689-8808

*Counsel for Defendants Electricité de France. S.A*
*and Electricité de France International North*
*America, Inc.*

_____

Morgan D. Hodgson
D.C. Bar No. 186528
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*

# ATTACHMENT 4

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | |
|---|---|
| CATHERINE GAUJACQ, )<br><br>Plaintiff, )<br><br>v. )<br><br>ELECTRICITE DE FRANCE )<br>INTERNATIONAL NORTH AMERICA, INC., )<br><br>ELECTRICITE DE FRANCE, S.A., )<br><br>and )<br><br>CHRISTIAN NADAL )<br><br>Defendants. )<br>_____ ) | Civil Action No. 05-0969 (JGP) |

## ORDER

This case came before the Court for an initial scheduling conference on October 13, 2005

Upon consideration of the parties' **Rule 16.3(d) Report** [#16], it is hereby

**ORDERED** that a status hearing shall be held on **May 9, 2006 at 10:00 a.m.** in

Courtroom 15  And it is further

**ORDERED:**

| | |
|---|---|
| **Initial Disclosures** (under 26(a)(1)) | October 27, 2005 |
| **First Day to Serve Written Discovery** | October 28, 2005 |
| **Deposition Discovery Begins** | January 2, 2006 |
| **Deadline to Amend Complaint** | March 1, 2006 |
| **Deadline to Amend Answers** | April 14, 2006 |

**Opening Expert Reports** (per 26(a)(2) on issues for which a party carries the burden of
proof)                                                                  April 1, 2006

**Rebuttal Expert Reports** (per 26(a)(2) on issues for which a party carries the burden of proof)                              May 31, 2006

**Close of Fact Discovery**                    May 31, 2006

**Expert Disposition Period**                  June 1 through July 28, 2006

**Dispositive and *Daubert* motions Due**      September 15, 2006

    **Oppositions** Due           October 13, 2006

    **Replies** Due               October 27, 2006

    **Hearing** (proposed)        November 10, 2006

**Pretrial Statements** To Be Filed And Served    December 11, 2006

**Pretrial Conference**                        Week of December 18, 2006

**Trial**                                      April 7, 2007

Date: October 14, 2005                         **JOHN GARRETT PENN**
                                               **United States District Court**

# ATTACHMENT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | No 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC , et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PHILIPPE GAUJACQ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUEST FOR THE PRODUCTION OF DOCUMENTS TO PHILIPPE GAUJACQ

Philippe Gaujacq ("Mr Gaujacq"), by counsel, pursuant to the Rule 34 of the Federal

Rules of Civil Procedure, hereby objects to the Request for Production of Documents by

Defendants Electricite de France, S A ("EDF"), Electricite de France International North America

("EDFINA"), and Christian Nadal ("Mr. Nadal") as follows.

## GENERAL OBJECTIONS

The following objections apply to the Requests as a whole, and to each of the separate

Requests

The provision or identification of any document or information in connection with this

response does not constitute an admission that such document or information is relevant to any

issue in this case or is admissible at trial of this action

1.      Mr. Gaujacq objects to the Requests to the extent they would require Mr. Gaujacq

to provide or reveal the contents of any document or information privileged from disclosure

pursuant to the attorney-client privilege, the qualified immunity provided to litigation work

product, or any other applicable privilege  Mr Gaujacq will not provide such information.

Notwithstanding the above, for those responses Mr. Gaujacq will be providing documents, Mr

Gaujacq will not be producing those which are privileged or protected, or are far afield of

relevant issues in the case

2.    Mr. Gaujacq objects to the Requests to the extent they seek to impose a duty

to supplement in addition to that required by the Rules  Mr. Gaujacq will supplement his

responses to the extent required by law

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    **All documents and communications reflecting any and all of your efforts to
seek employment or work of any kind in the United States from August 2000 to the present.**

**OBJECTION**:  Mr Gaujacq objects on the grounds that this Interrogatory is overly

broad and that the information sought is neither relevant to any issue in this litigation, nor

reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**  Without waiving objections, please see documents Bates stamp nos  P.

Gaujacq 0001 – 22

2.    **All documents reflecting any compensation you have earned or received,
monetary or otherwise, including compensation in kind, for any work or services you
performed from the period of August 2000 to the present.**

**OBJECTION**:  Mr. Gaujacq objects on the grounds that this Interrogatory is overly

broad and that the information sought is neither relevant to any issue in this litigation, nor

reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:**  None

3.    **All tax returns from August 2000 to the present that report income received
by you.**

**OBJECTION:** Mr. Gaujacq objects on the grounds that this Interrogatory is overly broad and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:** The tax returns were provided in discovery by my wife

4. **Your bank account records from April 2000 to the present.**

**OBJECTION:** Mr. Gaujacq objects on the grounds that this Interrogatory is overly broad and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.

**RESPONSE:** Mr. Gaujacq stands on his objections.

June 2, 2006

Philippe Gaujacq,
By Counsel

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia  20190
(703) 318-6800

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PHILIPPE GAUJACQ'S OBJECTIONS AND RESPONSES TO DEFENDANTS' REQUEST FOR THE PRODUCTION OF DOCUMENTS TO PHILIPPE GAUJACQ by hand delivery and email this 2nd day of June 2006 on counsel for Defendants addressed as follows:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq
Randi B. May, Esq
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com

Counsel for Defendants
    Electricite de France, S.A. and
    Electricite de France International North America

David A. Clark, Esq
Morgan Day Hodgson, Esq
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com

Counsel for Defendant
    Christian Nadal

Elaine Charlson Bredehoft

4

# ATTACHMENT 6

o

## Elaine Bredehoft

| | |
|---|---|
| **From:** | DRegal@hnrlaw com |
| **Sent:** | Thursday, June 08, 2006 12:39 PM |
| **To:** | Jessica Bogo; Elaine Bredehoft |
| **Cc:** | dclark@steptoe.com; lhoguet@hnrlaw com; mhodgson@steptoe.com; RMay@hnrlaw com |
| **Subject:** | Subpoenas |
| **TimeMattersID:** | MAEA697F97490632 |
| **TM Contact:** | Catherine Gaujacq |
| **TM Matter No:** | 690 |
| **TM Matter Reference:** | Gaujacq, Catherine |

Counsel:
Following the failure of Philippe Gaujacq to produce at his deposition on June 2 the bank records called for in his subpoena, EDF and EDFINA are seeking these records directly from the banks that he identified at his deposition Please see the attached subpoenas, which are in the process of being served upon Bank of America, PNC Bank and Trustmark Bank

Dorothea W. Regal
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016

Tel  (212) 689-8808
Fax  (212) 689-5101
dregal@hnrlaw com

# ATTACHMENT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CATHERINE GAUJACQ )
)
    Plaintiff, )
)
        v )    No. 1:05CV0969 (JGP)
)    (Pending in the United States District
ELECTRICITE DE FRANCE )    Court for the District of Columbia)
    INTERNATIONAL NORTH AMERICA, )
    INC., et al )
)
    Defendants. )
)

## PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO BANK OF AMERICA

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to Bank of America, which return

date is June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for

Defendants on June 8, 2006. The grounds for this motion are set forth in the accompanying

Memorandum.

June 9, 2006                Respectfully Submitted,

                            *Elaine Bredehoft /scw*
                            Elaine Charlson Bredehoft
                            D.C. Bar No. 441425
                            S. Christian Wickwire
                            D.C. Bar No. 488797
                            CHARLSON BREDEHOFT & COHEN, P.C.
                            11260 Roger Bacon Drive
                            Suite 201
                            Reston, Virginia 20190
                            (703) 318-6800

                            Counsel for Plaintiff
                              Catherine Gaujacq

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S EMERGENCY
MOTION TO QUASH THE DOCUMENT SUBPOENA TO BANK OF AMERICA by first
class U.S. mail postage prepaid and email this 9th day of June 2006 on counsel for
Defendants addressed as follows:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com

Counsel for Defendants
    Electricite de France, S.A. and
    Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com

Counsel for Defendant
    Christian Nadal

With a copy sent via Federal Express to:

Bank of America
Legal Order Processing Department
1425 NW 62nd Street
Ft. Lauderdale, FL 33309


Elaine Charlson Bredehoft    /scw
Elaine Charlson Bredehoft

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CATHERINE GAUJACQ       )
                           )
     Plaintiff,           )
                           )
       v.              )    No. 1:05CV0969 (JGP)
                           )    (Pending in the United States District
ELECTRICITE DE FRANCE     )    Court for the District of Columbia)
   INTERNATIONAL NORTH AMERICA,  )
   INC., et al.            )
                           )
     Defendants        )
                           )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO BANK OF AMERICA

Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms.

Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash

the subpoena for documents from defendants Electricité de France, S.A. ("EDF") and Electricité

de France International North America, Inc. ("EDFINA", collectively with defendant Christian

Nadal "Defendants") to Bank of America.

### CERTIFICATE UNDER LOCAL RULE 7.1(A)(3)

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally

and in writing, to resolve the discovery matters at issue prior to placing this matter before the Court.

Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the

below issues.

### PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's

counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of

serving a subpoena (the "Subpoena") on Bank of America (Attachment 1) and two additional

banks in other districts (collectively, the "Subpoenae"). Attachment 2  The Subpoenae request

the production of certain bank account records relating to accounts (the "Bank Records") held by

Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife,

plaintiff Catherine Gaujacq  The Subpoenae request that the Bank Records be produced by

Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the

Subpoenae.

　　　This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA

and supervisor Mr Nadal. Neither the net worth of Ms. Gaujacq and her husband Philippe

Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank

accounts are at issue in this litigation  There have been no allegations, claims or defenses, such

as a misappropriations of funds, that might justify a request to produce the private and

confidential bank records of third-parties

　　　Defendants have never articulated a single basis for their untimely Subpoenae for Mr and

Ms Gaujacq's personal and confidential Bank Records and, indeed, they cannot have one

because the Bank Records have nothing to do with any claims or defenses raised in this case.

Without any basis or justification for the request for the Bank Records, one must infer that the

Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and

her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c).

　　　Further, Discovery closed on May 31, 2006. Defendants do not have good cause for

failing to pursue discovery against third-party Bank of America before the discovery cut-off

## PROCEDURAL HISTORY

　　　Ms. Gaujacq filed her Complaint on May 13, 2005. In her complaint, Ms. Gaujacq (i)

alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U S C §

2000e, et seq , the District of Columbia Human Rights Act, D C Code § 2-1401 01 et seq , and the

common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal

Pay Act, 29 U S C § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of

good faith and fair dealing [1] Defendants filed their answers to this complaint on September 12,

2005 A scheduling order was entered on October 14, 2005. See Attachment 3. In this Order,

the Court set the deadline for fact discovery on May 31, 2006. On June 8, 2006, Defendants sent

Plaintiffs' counsel and email stating that they were in the process of serving the Subpoenae at

issue in this Motion Attachment 4

## STATEMENT OF FACTS

Ms Gaujacq was President of Electricite de France International North America

("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management

positions within EDF and EDFINA in the core energy generation business, and, most recently, in

strategic consulting on behalf of the Company in the United States Despite the size of the

Company, Ms Gaujacq was one of very few women to hold an executive level position and as

President, was one of the highest ranked females in the Company. As President of EDFINA, Ms

Gaujacq was paid a salary of $169,750 00, plus benefits

Ms Gaujacq's job responsibilities included full operational responsibility for all

EDFINA activities and projects, identification of development opportunities in the American and

Canadian electricity markets, representation of the Company in various trade associations

relevant to the energy field, serving as a Director of the Board for EDF Group's United States

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged
only against the corporate defendants The claim of tortious interference with contractual relations and business
expectancies is alleged only against Mr Nadal

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President. Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued

4

mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

5

information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later,* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

6

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

### I. GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.1(E). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents

7

be produced on June 16, 2006, approximately one week later. Due to the extremely compressed return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed prior to the return date if done so on an emergency basis

## II    THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should quash Defendants' Subpoena because the Bank Records are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion. Dean v. Anderson, 2002 U.S. dist. Lexis 11536, *5 (D. Ka. 2002). Where as here, the relevancy is not apparent on the face of the request, "the burden is on the party *seeking* discovery to show the relevancy of the discovery request." Id. at 7 (finding that discovery of bank account information was not facially relevant, though party seeking discovery carried burden for limited discovery).

The burden on Defendants in this case is especially high because it involves discovery of private and confidential financial information of a third-party. Discovery is not "unbridled and not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy."

---

[2] Ms. Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551 (D. Ga. 2001)

Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure . . . . It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint (Attachment 5) plainly reveals the irrelevancy of the Bank Records.

Further, Mr. Gaujacq has already voluntarily produced financial records in the form of his tax returns, which should be sufficient for any of Defendants' needs. See Philippe Gaujacq's Objections And Responses To Defendants' Request For The Production Of Documents To Philippe Gaujacq, p. 3, Attachment 6.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that

the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here. See also Sosa v. Airprint Sys., 133 F 3d 1417 (11th Cir. 1998) (good cause required to amend scheduling order)

The discovery period here ended on May 31, 2006. The Subpoena is dated June 7, 2006 and is, therefore, invalid on its face. Because Defendants do not have good cause for waiting until the close of discovery to serve their Subpoena, the Subpoena should be quashed

**CONCLUSION**

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to Bank of America.

June 9, 2006                                Respectfully Submitted,

Elaine Charlson Bredehoft /scw
D.C Bar No  441425
S  Christian Wickwire
D C  Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH THE DOCUMENT SUBPOENA TO BANK OF AMERICA by first class U.S. mail postage prepaid and email this 9th day of June 2006 on counsel for Defendants addressed as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> Randi B. May, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> DRegal@hnrlaw.com
> RMay@hnrlaw.com
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America
>
> David A. Clark, Esq.
> Morgan Day Hodgson, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> dclark@steptoe.com
> mhodgson@steptoe.com
>
> Counsel for Defendant
>   Christian Nadal

With a copy sent via Federal Express to:

> Bank of America
> Legal Order Processing Department
> 1425 NW 62nd Street
> Ft. Lauderdale, FL 33309

Elaine Charlson Bredehoft

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | No. 1:05CV0969 (JGP) |
| | ) | (Pending in the United States District |
| ELECTRICITE DE FRANCE | ) | Court for the District of Columbia) |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC , et al | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## PHILIPPE GAUJACQ'S EMERGENCY MOTION TO QUASH
## DEFENDANTS'DOCUMENT SUBPOENA TO PNC BANK

Third-party PHILIPPE GAUJACQ ("Mr. Gaujacq"), by counsel, hereby moves this Court to

quash the subpoena for the production of documents to PNC Bank, which return date is June 16,

2006. The subpoena was received by Mr Gaujacq via e-mail from counsel for Defendants on June

8, 2006. The grounds for this motion are set forth in the Emergency Motion and accompanying

Memorandum filed concurrently herewith by Plaintiff Catherine Gaujacq to Quash Defendants'

Document Subpoena to PNC Bank ("Plaintiff's Motion").

Mr. Gaujacq fully joins in Plaintiff's Motion and the reasoning therein. Mr. Gaujacq further

submits that the subpoena to PNC Bank for Mr. Gaujacq's bank account information is beyond the

scope of discovery because it is not reasonably calculated to lead to the discovery of admissible

evidence. Mr. Gaujacq further states that Defendants have no rational basis to intrude on his private

and confidential financial records to the extent he is a non-party to the lawsuit and any relevance of

such information is far outweighed by Mr. Gaujacq's legitimate and substantial privacy concerns

June 12, 2006

Respectfully Submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
  Philippe Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE GAUJACQ )
)
Plaintiff, )
)
v. )
)
ELECTRICITE DE FRANCE )
INTERNATIONAL NORTH AMERICA, )
INC., et al. )
)
Defendants. )
)

No. 1:05CV0969 (JGP)
(Pending in the United States District
Court for the District of Columbia)

## PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO PNC BANK

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to PNC Bank, which return date is

June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for Defendants

on June 8, 2006. The grounds for this motion are set forth in the accompanying Memorandum.

June 12, 2006

Respectfully Submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
Catherine Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) |
| | ) |
| ELECTRICITE DE FRANCE | ) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC , et al | ) |
| | ) |
| Defendants | ) |

No. 1:05CV0969 (JGP)
(Pending in the United States District
Court for the District of Columbia)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUPBOENA TO PNC BANK

Pursuant to Fed R Civ P 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms.

Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash

the subpoena for documents from defendants Electricité de France, S A. ("EDF") and Electricité

de France International North America, Inc ("EDFINA", collectively with defendant Christian

Nadal "Defendants") to PNC Bank.

## CERTIFICATE UNDER LOCAL RULE 37.1

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally

and in writing, to resolve the discovery matters at issue prior to placing this matter before the Court

Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the

below issues.

## PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's

counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of

serving a subpoena (the "Subpoena") on PNC Bank (Attachment 1) and two additional banks in

other districts (collectively, the "Subpoenae")  Attachment 2.  The Subpoenae request the
production of certain bank account records relating to accounts (the "Bank Records") held by
Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife,
plaintiff Catherine Gaujacq  The Subpoenae request that the Bank Records be produced by
Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the
Subpoenae.

This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA
and supervisor Mr. Nadal  Neither the net worth of Ms. Gaujacq and her husband Philippe
Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank
accounts are at issue in this litigation.  There have been no allegations, claims or defenses, such
as a misappropriations of funds, that might justify a request to produce the private and
confidential bank records of third-parties.

Defendants have never articulated a single rational basis for their untimely Subpoenae for
Mr. and Ms. Gaujacq's personal and confidential Bank Records and, indeed, they cannot have
one because the Bank Records have nothing to do with any claims or defenses raised in this case.
Without any basis or justification for the request for the Bank Records, one must infer that the
Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and
her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c).

Further, Discovery closed on May 31, 2006  Defendants do not have good cause for
failing to pursue discovery against third-party PNC Bank before the discovery cut-off.

### PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005  In her complaint, Ms. Gaujacq (i)
alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the
common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal
Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious
interference with contractual relations and business expectancies; and (vi) breach of the duty of
good faith and fair dealing.[1]   Defendants filed their answers to this complaint on September 12,
2005. A scheduling order was entered on October 14, 2005. See Attachment 3. In this Order,
the Court set the deadline for fact discovery on May 31, 2006. The trial is scheduled to begin on
April 2, 2007. On June 8, 2006, Defendants sent Plaintiffs' counsel and email stating that they
were in the process of serving the Subpoenae at issue in this Motion. Attachment 4.

### STATEMENT OF FACTS

Ms. Gaujacq was President of Electricite de France International North America
("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management
positions within EDF and EDFINA in the core energy generation business, and, most recently, in
strategic consulting on behalf of the Company in the United States. Despite the size of the
Company, Ms. Gaujacq was one of very few women to hold an executive level position and as
President, was one of the highest ranked females in the Company. As President of EDFINA, Ms.
Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all
EDFINA activities and projects, identification of development opportunities in the American and
Canadian electricity markets, representation of the Company in various trade associations
relevant to the energy field, serving as a Director of the Board for EDF Group's United States

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged
only against the corporate defendants. The claim of tortious interference with contractual relations and business
expectancies is alleged only against Mr. Nadal.

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued

mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later,* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

6

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

## I.    GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.1(D). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents

be produced on June 16, 2006, approximately one week later. Due to the extremely compressed return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed prior to the return date if done so on an emergency basis.

II.     **THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE**

The Court should quash Defendants' Subpoena because the Bank Records are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion. _Dean v. Anderson_, 2002 U.S. dist. Lexis 11536, *5 (D.Ka. 2002). Where as here, the relevancy is not apparent on the face of the request, "the burden is on the party _seeking_ discovery to show the relevancy of the discovery request." _Id._ at 7 (finding that discovery of bank account information was not facially relevant, though party seeking discovery carried burden for limited discovery).

The burden on Defendants in this case is especially high because it involves discovery of private and confidential financial information of a third-party. Discovery is not "unbridled and not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy."

---

[2] Ms. Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. _See, e.g., Stevenson v. Stanley Bostitch, Inc._, 201 F.R.D. 551 (D. Ga. 2001).

Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure ... It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff's and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint (Attachment 5) plainly reveals the irrelevancy of the Bank Records.

Indeed, Defendants' only explanation for why the bank account records are relevant is for (1) impeachment of Catherine Gaujacq and (2) the possibility that the Bank Records will somehow bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses. Neither of these reasons are sufficient. Impeachment, without any basis for asserting that there will be any inconsistencies between Ms. Gaujacq's testimony and the contents of her Bank Records, cannot form the basis for a subpoena for confidential financial records, and smacks of a fishing expedition. By Defendants' logic, discovery is limitless because a party may turn over every

9

stone for impeachment evidence, regardless of relevance to the allegations, claims and defenses in the complaint. Such fishing for evidence should not be permitted.

Defendants' second stated basis for relevance, that the Bank Records will bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses, is likewise insufficient for several reasons. First, such information is readily available to Defendants; they can determine from their own files whether or not they reimbursed Ms. Gaujacq for her expenses. Second, Ms. Gaujacq has already produced financial information on the issue. Mr. and Mrs. Gaujacq have produced their tax returns. See Philippe Gaujacq's Objections And Responses To Defendants' Request For The Production Of Documents To Philippe Gaujacq, p. 3, Attachment 6. In addition, Ms. Gaujacq produced over forty pages of documents in response to Defendants' request for documents concerning her claim for unpaid business expenses. Attachment 7.

Because Defendants have no reasonable basis for believing the Bank Records contain impeachment evidence, the information is readily available to Defendants in their own files, and Ms. Gaujacq has already produced her financial information pertaining to the damages issue, the Subpoena should be quashed.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here. See also Sosa v. Airprint Sys., 133 F.3d 1417 (11th Cir. 1998) (good cause required to amend scheduling order).

The discovery period here ended on May 31, 2006. The Subpoena is dated June 7, 2006 and is, therefore, invalid on its face. Defendants had every opportunity to obtain the Bank Account information they now seek at this late hour. In December 2005, approximately six

months ago, Ms. Gaujacq produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses. Attachment 7 Defendants deposed Ms. Gaujacq for three days and still never complained that the information produced was insufficient or moved to compel. Instead, with these out of time Subpoenae, Defendants are attempting an "end around" Ms. Gaujacq's discovery responses by requesting her private financial information from the banks directly. Such manipulation of the discovery process should not be allowed.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to PNC Bank.


June 12, 2006                              Respectfully Submitted,

                                          Elaine Charlson Bredehoft
                                          D.C. Bar No. 441425
                                          S. Christian Wickwire
                                          D.C. Bar No. 488797
                                          CHARLSON BREDEHOFT & COHEN, P.C.
                                          11260 Roger Bacon Drive
                                          Suite 201
                                          Reston, Virginia 20190
                                          (703) 318-6800

                                          Counsel for Plaintiff
                                              Catherine Gaujacq



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISCELLANEOUS NO. _3:06 MC 27 JCS_

CATHERINE GAUJACQ                                              Plaintiff

VERSUS                                    CIVIL ACTION NO. 1:05CV0969 (JGP)
                                          (Pending in the United States District
                                          Court for the District of Columbia)

ELECTRICITE DE FRANCE                                         Defendants
INTERNATIONAL NORTH AMERICA, INC., et al.

### PHILIPPE GAUJACQ'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO TRUSTMARK BANK

Third-party PHILIPPE GAUJACQ ("Mr. Gaujacq"), by counsel, hereby moves this Court to quash the subpoena for the production of documents to TRUSTMARK Bank, which return date is June 16, 2006. The subpoena was received by Mr. Gaujacq via e-mail from counsel for Defendants on June 8, 2006. The grounds for this motion are set forth in the Emergency Motion and accompanying Memorandum filed concurrently herewith by Plaintiff Catherine Gaujacq to Quash Defendants' Document Subpoena to TRUSTMARK Bank ("Plaintiff's Motion").

Mr. Gaujacq fully joins in Plaintiff's Motion and the reasoning therein. Mr. Gaujacq further submits that the subpoena to TRUSTMARK Bank for Mr. Gaujacq's bank account information is beyond the scope of discovery because it is not reasonably calculated to lead to the discovery of admissible evidence. Mr. Gaujacq further states that Defendants have no rational basis to intrude on his private and confidential financial records to the extent he is a non-party to the lawsuit and any relevance of such information is far outweighed by Mr. Gaujacq's legitimate and substantial privacy concerns.

Respectfully submitted, this 13th day of June, 2006.

          BY:   BALCH & BINGHAM LLP

          BY:   *Tara P. Ellis*
                   Tara P. Ellis (101034)
                   BALCH & BINGHAM LLP
                   401 East Capitol Street
                   Suite 200
                   Jackson, MS 39201
                   Telephone: (601) 961-9900
                   Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of the

Court and sent copies via U.S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
  Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
  Counsel for Defendant
  Christian Nadal

Trustmark Bank
Legal Department
348 East Capitol
Jackson, MS 39201

_Tara P. Ellis_

TARA P. ELLIS



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISCELLANEOUS NO. *3:06MC-27-JCS*

CATHERINE GAUJACQ                                                          **Plaintiff**

**VERSUS**                                      **CIVIL ACTION NO. 1:05CV0969 (JGP)**
                                                (Pending in the United States District
                                                Court for the District of Columbia)

**ELECTRICITE DE FRANCE**                                               **Defendants**
**INTERNATIONAL NORTH AMERICA, INC., et al.**

### PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO TRUSTMARK BANK

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to Trustmark Bank, which return

date is June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for

Defendants on June 8, 2006. The grounds for this motion are set forth in the accompanying

Memorandum.

Respectfully submitted, this 13th day of June, 2006.

BY:    BALCH & BINGHAM LLP

BY:    _Tara P. Ellis_
       Tara P. Ellis (101034)
       BALCH & BINGHAM LLP
       401 East Capitol Street
       Suite 200
       Jackson, MS 39201
       Telephone: (601) 961-9900
       Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of the Court and sent copies via U.S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
    Counsel for Defendants
    Electricite de France, S.A. and
    Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
    Counsel for Defendant
    Christian Nadal

TRUSTMARK Bank
Legal Department
348 East Capitol
Jackson, MS 39201

_Tara P. Ellis_
TARA P. ELLIS

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 1 3 2006

J T NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISCELLANEOUS NO. _3:06 MC 27 JCS_

CATHERINE GAUJACQ                                                    Plaintiff

VERSUS                                        CIVIL ACTION NO. 1:05CV0969 (JGP)
                                              (Pending in the United States District
                                              Court for the District of Columbia)

ELECTRICITE DE FRANCE                                              Defendants
INTERNATIONAL NORTH AMERICA, INC., et al.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUPBOENA TO TRUSTMARK BANK

Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash the subpoena for documents from defendants Electricité de France, S.A. ("EDF") and Electricité de France International North America, Inc. ("EDFINA", collectively with defendant Christian Nadal "Defendants") to Trustmark Bank.

### PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of serving a subpoena (the "Subpoena") on Trustmark Bank (Exhibit 1) and two additional banks in other districts (collectively, the "Subpoenae") (Exhibit 2). The Subpoenae request the production of certain bank account records relating to accounts (the "Bank Records") held by Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife, plaintiff Catherine Gaujacq. The Subpoenae request that the Bank Records be produced by

Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the Subpoenae.

This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA and supervisor Mr. Nadal. Neither the net worth of Ms. Gaujacq and her husband Philippe Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank accounts are at issue in this litigation. There have been no allegations, claims or defenses, such as a misappropriation of funds, that might justify a request to produce the private and confidential bank records of third-parties.

Defendants have never articulated a single rational basis for their untimely Subpoenae for Mr. and Ms. Gaujacq's personal and confidential Bank Records and, indeed, they cannot have one because the Bank Records have nothing to do with any claims or defenses raised in this case. Without any basis or justification for the request for the Bank Records, one must infer that the Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c).

Further, Discovery closed on May 31, 2006. Defendants do not have good cause for failing to pursue discovery against third-party Trustmark Bank before the discovery cut-off.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005. In her complaint, Ms. Gaujacq (i) alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per se*; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of good faith and fair dealing.[1] Defendants filed their answers to this complaint on September 12, 2005. A scheduling order was entered on October 14, 2005. See Exhibit 3. In this Order, the Court set the deadline for fact discovery on May 31, 2006. The trial is scheduled to begin on April 2, 2007. On June 8, 2006, Defendants sent Plaintiffs' counsel an email stating that they were in the process of serving the Subpoenae at issue in this Motion. Exhibit 4.

## STATEMENT OF FACTS

Ms. Gaujacq was President of Electricite de France International North America ("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management positions within EDF and EDFINA in the core energy generation business, and, most recently, in strategic consulting on behalf of the Company in the United States. Despite the size of the Company, Ms. Gaujacq was one of very few women to hold an executive level position and as President, was one of the highest ranked females in the Company. As President of EDFINA, Ms. Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all EDFINA activities and projects, identification of development opportunities in the American and Canadian electricity markets, representation of the Company in various trade associations relevant to the energy field, serving as a Director of the Board for EDF Group's United States subsidiaries, and regularly making presentations on the nuclear energy industry and emerging technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged only against the corporate defendants. The claim of tortious interference with contractual relations and business expectancies is alleged only against Mr. Nadal.

subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President. Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq

possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on

the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq' s expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later;* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr. Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee

of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

## I.    GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.2(H). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents be produced on June 16, 2006, approximately one week later. Due to the extremely compressed return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed prior to the return date if done so on an emergency basis.

## II.   THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should quash Defendants' Subpoena because the Bank Records are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion. Dean v. Anderson, 2002 U.S.dist. Lexis 11536, *5 (D.Ka. 2002). Where as here, the relevancy is not apparent on the face of the request, "the burden is on the party *seeking* discovery to show the relevancy of the discovery request." Id. at 7. (finding that discovery of bank account information was not facially relevant, though party seeking discovery carried burden for limited discovery).

The burden on Defendants in this case is especially high because it involves discovery of private and confidential financial information of a third-party. Discovery is not "unbridled and not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy." Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the

---

[2] Ms. Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551 (D. Ga. 2001).

grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure ..... It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

     Defendants have not – and cannot – demonstrate that Plaintiff and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint, Exhibit 5, plainly reveals the irrelevancy of the Bank Records.

     Indeed, Defendants' only explanation for why the bank account records are relevant is for (1) impeachment of Catherine Gaujacq and (2) the possibility that the Bank Records will somehow bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses. Neither of these reasons are sufficient. Impeachment, without any basis for asserting that there will be any inconsistencies between Ms. Gaujacq's testimony and the contents of her Bank Records, cannot form the basis for a subpoena for confidential financial records, and smacks of a fishing expedition. By Defendants' logic, discovery is limitless because a party may turn over every stone for impeachment evidence, regardless of relevance to the allegations, claims and defenses in the complaint. Such fishing for evidence should not be permitted.

Defendants' second stated basis for relevance, that the Bank Records will bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses, is likewise insufficient for several reasons. First, such information is readily available to Defendants; they can determine from their own files whether or not they reimbursed Ms. Gaujacq for her expenses. Second, Ms. Gaujacq has already produced financial information on the issue. Mr. and Mrs. Gaujacq have produced their tax returns. See Philippe Gaujacq's Objections And Responses To Defendants' Request For The Production Of Documents To Philippe Gaujacq, p. 3, Exhibit 6. In addition, Ms. Gaujacq produced over forty pages of documents in response to Defendants' request for documents concerning her claim for unpaid business expenses. Exhibit 7.

Because Defendants have no reasonable basis for believing the Bank Records contain impeachment evidence, the information is readily available to Defendants in their own files, and Ms. Gaujacq has already produced her financial information pertaining to the damages issue, the Subpoena should be quashed.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here. Further, Miss. Local R. 26.1(B)(2) states that "[c]ounsel must initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery cut-off date so as to comply with this rule, and discovery requests that seek responses or schedule depositions that would otherwise be answerable after the discovery cut-off are not enforceable except by order of the court for good cause shown."

The discovery period here ended on May 31, 2006. The Subpoena is dated June 7, 2006 and is, therefore, invalid on its face. Defendants had every opportunity to obtain the Bank

Account information they now seek at this late hour. In December 2005, approximately six months ago, Ms. Gaujacq produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses. Exhibit 7. Defendants deposed Ms. Gaujacq for three days and still never complained that the information produced was insufficient or moved to compel. Instead, with these out of time Subpoenae, Defendants are attempting an "end around" Ms. Gaujacq's discovery responses by requesting her private financial information from the banks directly. Such manipulation of the discovery process should not be allowed.

Because Defendants do not have good cause for waiting until after the close of discovery to serve their Subpoena, the Subpoena should be quashed.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to Trustmark Bank.

Respectfully submitted, this 13th day of June, 2006.

BY:     BALCH & BINGHAM LLP

BY:     _Tara P. Ellis_
        Tara P. Ellis (101034)
        BALCH & BINGHAM LLP
        401 East Capitol Street
        Suite 200
        Jackson, MS 39201
        Telephone: (601) 961-9900
        Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of

the Court and sent copies via U.S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
    Counsel for Defendants
    Electricite de France, S.A. and
    Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
    Counsel for Defendant
    Christian Nadal

TRUSTMARK Bank
Legal Department
348 East Capitol
Jackson, MS 39201

                                    _Tara P. Ellis_
                                    TARA P. ELLIS

# ATTACHMENT 8

06-60821.o1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60821-CIV-COOKE
Magistrate Judge Brown

CATHERINE GAUJACQ,

     Plaintiff,

vs.

ELECTRICITE DE FRANCE
INTERNATIONAL NORTH
AMERICA, INC , et al ,

     Defendant

_____/

## PRELIMINARY ORDER RE: EMERGENCY
## MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA

This matter is before this Court on Plaintiffs' Emergency Motion to Quash Defendants'

Document Subpoena to Bank of America, filed June 12, 2006  The Court has considered the

motion and all pertinent materials in the file.

The Court being otherwise fully advised in the premises it is hereby **ORDERED AND**

**ADJUDGED** as follows:

1  The motion to quash is **GRANTED**, without prejudice, and pending further order of

the Court

2.  Defendants shall respond to this motion - addressing first the question of the

discovery deadline having passed  This Court has no jurisdiction to extend said deadline and

even if it did, would not interfere with deadlines set by the District Judge presiding over the case

3  If - and only if - the deadline is not applicable, defendants shall also address the other

arguments of plaintiffs.

    4   Plaintiffs may file a reply as permitted

    5   A final order will follow

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14 day of June, 2006

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
Honorable Marcia G. Cooke
Elaine Charlson Bredehoft, Esq
Laura B. Hoguet, Esq
David A. Clark, Esq
Bank of America, Legal Order Processing Dept.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CATHERINE GAUJACQ                                                    PLAINTIFF

VS.                                                   CIVIL ACTION NO. 3:05mcJCS

ELECTRICITE DE FRANCE
INTERNATIONAL NORTH
AMERICA, INC., et al.                                               DEFENDANTS

ORDER

      This cause is before the court for the management of the emergency motions to

quash filed by Plaintiff and by third-party Philippe Guajacq. It is hereby ordered that the

motions are granted to the extent that the subpoena requires compliance by June 16,

2006. The court will make a final ruling on the merits of the motions after receipt of a

response from Defendants Electricite de France, S.A. and Electricite de France

International North America, Inc. (collectively EDFINA) and any rebuttal which movants

desire to submit. EDFINA shall submit their response to the motions to quash by June

30, 2006. Any rebuttal by movants shall be submitted within three days of service of the

response.

      SO ORDERED this the 14th of June, 2006.

                         /s/ James C. Sumner

                         UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT 9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

Misc. Nos. 06-0175 & 06-176

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| | ) |
| Plaintiff, | ) |
| | )Case Pending in the U.S. District Court |
| v. | ) for the District of Columbia (JGP) |
| | ) |
| ELECTRICITE DE FRANCE | )No. 1:05CV0969 (JGP) |
| INTERNATIONAL NORTH AMERICA, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER

Plaintiff, Catherine Gaujacq, having moved, by counsel, for an order quashing the

subpoena to PNC Bank, and Defendants, Electricité de France, S.A., Electricité de France

International North America, Inc., and Christian Nadal, by respective counsel, having

opposed such motion to quash the subpoena to PNC Bank, and upon consideration of the

papers and arguments in this case, it is hereby

ORDERED, that Plaintiff's motion is DENIED; and it is

FURTHER ORDERED, that the subpoena to PNC Bank is not quashed; and it is

FURTHER ORERED, that counsel for Plaintiff serve a copy of this Order on the

recipient if the subpoena in the same manner as the original subpoena was served within

24 hours of this Order being entered.

SO ORDERED

United States District Judge

# ATTACHMENT 10

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v | ) | 2:06-mc-00176-GLL |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC , et al | ) | (No. 1:05CV0969 (JGP) Pending in the United States District Court for the District of Columbia) |
| Defendants | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR STAY PENDING RECONSIDERATION OF JUNE 19, 2006 ORDER DENYING MOTION TO QUASH SUBPOENA

Plaintiff CATHERINE GAUJACQ, by counsel, hereby moves this Court for a stay

pending reconsideration of its June 19, 2006 Order denying Ms Gaujacq's Emergency Motion to

Quash Defendants' Document Subpoena from defendants Electricité de France, S A and

Electricité de France International North America, Inc. to PNC Bank   The grounds for this

motion are set forth in the accompanying Memorandum

June 19, 2006                                  Respectfully Submitted,

Elaine Charlson Bredehoft
D C  Bar No  441425
S  Christian Wickwire
D C  Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P C
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v | ) | 2:06-mc-00176-GLL |
| ELECTRICITE DE FRANCE | ) | (No 1:05CV0969 (JGP) |
| INTERNATIONAL NORTH AMERICA, | ) | Pending in the United States District |
| INC., et al | ) | Court for the District of Columbia) |
| Defendants | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING RECONSIDERATION OF JUNE 19, 2006 ORDER DENYING MOTION TO QUASH SUBPOENA

Plaintiff, Catherine Gaujacq ("Ms Gaujacq"), by counsel, hereby moves this Court, pursuant to Federal Rules of Civil Procedure 59(e), for a stay pending reconsideration of its June 19, 2006 Order denying Ms Gaujacq's Emergency Motion to Quash Defendants' Document Subpoena from defendants Electricité de France, S A ("EDF") and Electricité de France International North America, Inc ("EDFINA", collectively with defendant Christian Nadal "Defendants") to PNC Bank (the "Subpoena")

### PRELIMINARY STATEMENT

Plaintiff files this emergency motion to stay pending reconsideration of her emergency motion to quash the Subpoena based on new developments in the case On Friday, at 8:26 p m, Plaintiff was served electronically with Defendants' Motion for Clarification of Judge Penn's Order in the United States District Court for the District of Columbia, the court in which the main case is pending A ruling by Judge Penn in the District of Columbia District Court

regarding the Scheduling Order entered in this case could resolve the issues raised by Plaintiff's Motion to Quash the Subpoena

This morning, at 7:39 a m , Plaintiff received an email indicating that the contents of Defendants' Motion for Clarification was forwarded to Mr  Palus, assistant to Hon  Judge Lancaster  Attachment 1  Approximately an hour and a half later, at 9:07 a m , Plaintiff received an email from Mr  Palus containing the Court's Order denying Plaintiff's Emergency Motion to Quash the Subpoena  Attachment 2  It is unclear if the Court received notice of Defendants' Motion for Clarification prior to making its decision with respect to Plaintiff's Emergency Motion to Quash

Because the Motion for Clarification could resolve the issues raised in Plaintiff's Motion to Quash the Subpoena and because this Court's June 19, 2006 Order could result in rulings inconsistent with the Motions to Quash similar subpoenae for bank records pending in Florida and Mississippi, Plaintiff respectfully asks the Court to reconsider its June 19, 2006 and to stay the Order pending such reconsideration

A stay is necessary because the Order compels Plaintiff to serve PNC Bank with a copy of the Order within twenty-four (24) hours, at which time any motion for reconsideration is likely to become moot.

## ARGUMENT

## I.   DEFENDANTS' SUBPOEANA TO PNC BANK VIOLATES JUGE PENN'S SCHEDULING ORDER

Plaintiff's Motion should be granted to enable Judge Penn to decide whether the Subpoena was timely  Plaintiff expects Judge Penn to rule that the service of the Subpoena was a violation of the Court's scheduling order  Contrary to the arguments made in the Opposition of Defendants to Emergency Motions to Quash Defendants' Documents Subpoena to PNC Bank

2

("Opposition"),[1] the Subpoena to PNC Bank is not the same as the subpoena to Philippe Gaujacq, nor does it seek the same documents  Nor is there any motion to compel directed to Philippe Gaujacq pending

The subpoena to Philippe Gaujacq is very limited, requesting his "bank account records from April 2000 to the present "  Attachment 3  Defendants did not define "bank account records," though a likely interpretation is that it asks for his bank statements  The Subpoena to PNC Bank, on the other hand, is extremely broad  It asks for more than just Mr  Gaujacq's bank statements, it requests "all records" "relating to" Mr  & Ms  Gaujacq's bank accounts, and includes as examples not just bank statements, but records of deposits and any correspondence relating thereto

This request patently calls for documents outside the possession, custody or control of Mr  Gaujacq, and are entirely new discovery requests outside the discovery period  As the Florida court decided, any modification of the Scheduling Order should be an issue for the District of Columbia Court  See Order of District Court of Florida ("This Court has no jurisdiction to extend said deadline and even if it did, would not interfere with deadlines set by the District Judge presiding over the case "), Attachment 4

## II.    THE BANK RECORDS ARE NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Plaintiff also expects Judge Penn to deny their motion for clarification on the ground that the Subpoenae are not reasonably calculated to lead to the discovery of admissible evidence  Defendants' primary stated reason for the bank account records is that they may relate to Plaintiff's claim for damages stemming from her husbands inability to find work in the United States  Def. Opp. at 5-6  Plaintiff is no longer claiming this element as part of her claim for

---

[1] Citations to the Opposition herein shall be in the form "Def  Opp  at _ _ "

3

damages, and this factor, as Defendants' know, was specifically omitted from Plaintiff's expert's damages report

Defendants' second argument is that the discovery may relate to Plaintiff's claim for un-reimbursed business expenses. Id. at 6-7. Plaintiff denies that the Bank Records are relevant to her damages in this regard Nevertheless, if the Court were to conclude that such records were somehow remotely relevant, the Subpoena is overbroad because it requests records going back to 2000 These expenses did not arise until August 2004, and Defendants have not even attempted to argue that records prior to that date are even possibly relevant Therefore, even if relevant, Plaintiff expects any determination that the subpoena is enforceable to be limited to the period August 2004 to the present

## III.    DEFENDANTS HAVE NOT EVEN ALLEGED THEY HAVE A SUBSTANTIAL NEED FOR THE REQUESTED DISCOVERY

Finally, even if there was some remote connection between the Bank Account Records and Plaintiff's damages, Plaintiff expects Judge Penn to deny their Motion for Clarification on the grounds that the Subpoenae are oppressive and seek confidential client information that Defendants do not need Defendants have not even come close to demonstrating a substantial need for their invasion of Mr Gaujacq's privacy, a necessary element of their position See U.S. v. Federation of Physicians and Dentists, Inc., 63 F Supp 2d 475 (D Del 1999) (granting motion to quash subpoena because "[fi]inancial information of non-parties in a lawsuit has been held by courts to be private and not routinely available for discovery"); Litton Indus. V Chesapeake & Ohio Railway Co., 129 F R D 528 (E D Wisc 1990) (granting motion to quash because need for disclosure of financial information did not outweigh privacy concerns)

The PNC bank records at issue here are inherently private and are likely to contain privileged information in the form of checks related to attorney representation and other personal

4

matter  The discovery process was not designed to permit such unfettered access into the daily spending habits of Plaintiff and her husband  Documents responsive to the Subpoena could also be protected by the marital privilege  Further, the  Subpoena is unlimited in both time and breadth  There is no limitation on relevancy and the Subpoena requests documents more than three years prior to the time for which Defendants state they are relevant

Nor will any protective order address the concerns of Plaintiff and her husband  See Def. Opp. at 7-8  As courts have stated, "[t]here is a constant danger inherent in disclosure of confidential information pursuant to a protective order "  Litton, 129 F R D  at 531  (posing the question "how does one practically police a protective order?") [2]  Furthermore, a protective order will not protect the Gaujacq's private financial information from being aired by those involved in this case, including the attorneys and any experts hired by Defendants

---

[2] Ironically, Defendants have refused to produce files of EDF and EDFINA executives on privacy ground – the exact type of information discussed in the case cited by Defendants for the proposition that private information can be protected by a protective order, Morrison v. Philadelphia Hous. Auth., 203 F R D  195 (E D  Pa  2001)

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant

Plaintiff's Motion and stay it's June 19, 2006 Order pending reconsideration in light of the new

filings by Defendants

June 19, 2006                         Respectfully Submitted,


                                     Elaine Charlson Bredehoft
                                     D C Bar No 441425
                                     S Christian Wickwire
                                     D C Bar No 488797
                                     CHARLSON BREDEHOFT & COHEN, P C
                                     11260 Roger Bacon Drive
                                     Suite 201
                                     Reston, Virginia 20190
                                     (703) 318-6800

                                     Counsel for Plaintiff
                                        Catherine Gaujacq

6

## CERTIFICATE OF SERVICE

**I hereby certify that I served the foregoing by email, which is effective service pursuant to agreement between the parties, this 19th day of June 2006 on counsel for Defendants addressed as follows:**

> Laura B. Hoguet, Esq
> Dorothea W. Regal, Esq
> Randi B. May, Esq
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> DRegal@hnrlaw.com
> RMay@hnrlaw.com
>
> Counsel for Defendants
>   Electricite de France, S.A. and
>   Electricite de France International North America
>
> David A. Clark, Esq
> Morgan Day Hodgson, Esq
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> dclark@steptoe.com
> mhodgson@steptoe.com
>
> Counsel for Defendant
>   Christian Nadal

With a copy mailed to:

> PNC Bank
> Records Unit
> 500 1st Avenue
> Pittsburgh, PA 15222
> Internal mail Stop: P7-PFSC-02-F

Elaine Charlson Bredehoft

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v | ) | 2:06-mc-00176-GLL |
| ELECTRICITE DE FRANCE | ) | (No. 1:05CV0969 (JGP) |
| INTERNATIONAL NORTH AMERICA, | ) | Pending in the United States District |
| INC., et al | ) | Court for the District of Columbia) |
| Defendants | ) | |

## ORDER

Plaintiff, Catherine Gaujacq, having moved, by counsel, for an order quashing the subpoena to PNC Bank, and upon consideration of the papers and argument in this case, it is hereby

ORDERED, that Plaintiff's motion is GRANTED to the extent the subpoena requires compliance by June 16, 2006; and it is

FURTHER ORDERED, that the subpoena to PNC Bank is quashed until a final order is issued on the merits after receipt of a final order regarding Defendants' Motion to Clarify Scheduling Order pending in the United States District Court for the District of Columbia

SO ORDERED

DATE: _____    _____

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE GAUJACQ   )
          )
 Plaintiff,     )
          )
  v       )  2:06-mc-00176-GLL
          )
ELECTRICITE DE FRANCE  )  (No  1:05CV0969 (JGP)
INTERNATIONAL NORTH AMERICA, )  Pending in the United States District
INC , et al      )  Court for the District of Columbia)
          )
 Defendants    )
          )

## PHILIPPE GAUJACQ'S EMERGENCY MOTION FOR STAY PENDING RECONSIDERATION OF JUNE 19, 2006 ORDER DENYING MOTION TO QUASH SUBPOENA

Third-party PHILIPPE GAUJACQ ("Mr  Gaujacq") by counsel, hereby moves this Court for a stay pending reconsideration of its June 19, 2006 Order denying Ms  Gaujacq's Emergency Motion to Quash Defendants' Document Subpoena from defendants Electricité de France, S A and Electricité de France International North America, Inc  to PNC Bank  The grounds for this motion are set forth in Plaintiff's Emergency Motion for Stay Pending Reconsideration of June 19, 2006 Order Denying Motion to Quash Subpoena and the materials submitted therewith

In addition, Mr  Gaujacq submits that his Motion be granted because the financial information at issue is highly personal and confidential and that any need for such information at this time by Defendants is outweighed by his privacy interests  In addition, Mr  Gaujacq submits that any documents produced by PNC Bank could consist of protected information based on the attorney work product privilege and the marital privilege

1

June 19, 2006

Respectfully Submitted,

Elaine Charlson Bredehoft
D C Bar No 441425
S Christian Wickwire
D C Bar No 488797
CHARLSON BREDEHOFT & COHEN, P C
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Third-Party
  Philippe Gaujacq

2

CERTIFICATE OF SERVICE

      **I hereby certify that I served the foregoing by email, which is effective service pursuant to agreement between the parties, this 19th day of June 2006 on counsel for Defendants addressed as follows:**

          Laura B. Hoguet, Esq.
          Dorothea W. Regal, Esq.
          Randi B. May, Esq.
          HOGUET NEWMAN & REGAL, LLP
          10 East 40th Street
          New York, New York 10016
          (212) 689-8808
          lhoguet@hnrlaw.com
          DRegal@hnrlaw.com
          RMay@hnrlaw.com

          Counsel for Defendants
           Electricite de France, S.A. and
           Electricite de France International North America

          David A. Clark, Esq.
          Morgan Day Hodgson, Esq.
          STEPTOE & JOHNSON LLP
          1330 Connecticut Avenue, NW
          Washington, DC 20036
          (202) 429-3000
          dclark@steptoe.com
          mhodgson@steptoe.com

          Counsel for Defendant
           Christian Nadal

With a copy mailed to:

          PNC Bank
          Records Unit
          500 1st Avenue
          Pittsburgh, PA 15222
          Internal mail Stop: P7-PFSC-02-F

          Elaine Charlson Bredehoft

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) | |
| v | ) | 2:06-mc-00176-GLL |
| ELECTRICITE DE FRANCE | ) | (No. 1:05CV0969 (JGP) |
| INTERNATIONAL NORTH AMERICA, | ) | Pending in the United States District |
| INC., et al. | ) | Court for the District of Columbia) |
| Defendants | ) | |

ORDER

Third-Party, Philippe Gaujacq, having moved, by counsel, for an order quashing the subpoena to PNC Bank, and upon consideration of the papers and argument in this case, it is hereby

ORDERED, that Philippe Gaujacq's motion is GRANTED to the extent the subpoena requires compliance by June 16, 2006; and it is

FURTHER ORDERED, that the subpoena to PNC Bank is quashed until a final order is issued on the merits after receipt of a final order regarding Defendants' Motion to Clarify Scheduling Order pending in the United States District Court for the District of Columbia

SO ORDERED

DATE: _____        _____

United States District Judge

# ATTACHMENT 11

# HOGUET NEWMAN & REGAL, LLP

ATTORNEYS AT LAW

10 EAST 40TH STREET

NEW YORK, NEW YORK 10016

LAURA B. HOGUET
FREDRIC S. NEWMAN
DOROTHEA W. REGAL
JOSHUA D. RIEVMAN
EDWARD P. BOYLE
SHERYL B. GALLER
IRA J. LIPTON

TEL (212) 689-8808
FAX (212) 689-5101
www.hnrlaw.com
hnr@hnrlaw.com

SARAH K. BARICKMAN
KATHLEEN L. LOWDEN
RANDI B. MAY

EDNA R. SUSSMAN, OF COUNSEL

June 21, 2006

**VIA EMAIL**
Joel Gold, Esq.
Counsel
PNC Bank
Pittsburgh, Pennsylvania 15222

> Re: <u>Gaujacq v. Electricite de France International North
> America, Inc.</u>, No. 1:05CV0969 (D.D.C.) (JGP)

Dear Mr. Gold:

This will confirm our telephone conversation this afternoon regarding the attached subpoena to PNC Bank issued in the above-captioned litigation pending in the United States District Court for the District of Columbia. This firm represents Electricité de France, S.A. and Electricité de France International North America, Inc., the parties who issued the attached subpoena to PNC Bank for bank records of Philippe Gaujacq.

As you know, a motion to quash was filed with respect to this subpoena by the plaintiff in this case and by third-party Philippe Gaujacq, and Judge Lancaster of the United States District Court for the Western District of Pennsylvania denied that motion, by order dated June 19, 2006. As you also know, the movants subsequently filed a motion to stay the June 19th order pending a motion for reconsideration of the order.

I have been advised by Michael Palus of Judge Lancaster's chambers that he is out of the office this week and so not able himself to address the motion to stay at this time. As a result of this, we have agreed voluntarily to extend the return date on the subpoena to Tuesday, June 27, 2006.

HOGUET NEWMAN & REGAL, LLP

Joel Gold, Esq.
June 21, 2006
Page 2

Thank you for your attention to this matter.

Very truly yours,

Dorothea W. Regal

Attachment

cc:   Christian Wickwire, Esq.
      Elaine Bredehoft, Esq.
      Morgan D. Hodgson, Esq.
      David A. Clark, Esq.
      Randi B. May, Esq.

# ATTACHMENT 12

6 of 6 DOCUMENTS

**NORA OLGYAY, Plaintiff, v. SOCIETY FOR ENVIRONMENTAL GRAPHIC DESIGN, INC., et al., Defendants.**

**Civil Action No. 96-0186 (PLF)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*169 F.R.D. 219; 1996 U.S. Dist. LEXIS 15785*

**September 16, 1996, Decided**
**September 17, 1996, FILED**

**COUNSEL:** [**1] Attorney(s) for Plaintiff: Curt S. Hansen, Fisher Morin & Kagan-Kans, Washington, DC.

Attorney(s) for Defendants: Harry J. Carleton, Cotter Fiscella & Carleton, Fairfax, VA.

**JUDGES:** PAUL L. FRIEDMAN, United States District Judge

**OPINIONBY:** PAUL L. FRIEDMAN

**OPINION:**

[*219] ORDER

This case is before the Court on plaintiff's Motion to Extend Discovery Deadlines and Motion to Amend Complaint filed on September 3, 1996. Plaintiff states that prior to mediation, the parties agreed not to engage in formal discovery and to extend the discovery period if mediation was unsuccessful. As a result, plaintiff's counsel advises, "no formal discovery has been exchanged between the parties . . . ." Plaintiff now seeks to extend the discovery deadlines contained in this Court's Scheduling Order of March 21, 1996. Plaintiff's counsel also represents that he has attempted to contact defendants' counsel in order to obtain defendants' consent to this motion but has received no response.

The Court's mediation referral Order of March 21, 1996, expressly provided that "discovery shall proceed concurrently with mediation as provided for in the Scheduling Order issued this same day" (emphasis added). The Scheduling [**2] Order required the parties to complete all discovery by July 16, 1996, and to file all papers related to dispositive motions by September 26, 1996. Mediation concluded unsuccessfully on July 30, 1996; yet neither party informed the Court that the parties intended to disregard the Court-ordered discovery

schedule until a full month had passed, during which time no formal discovery was conducted at all. The parties therefore are in violation of the Court's orders.

Neither the parties nor their counsel have the authority to stipulate or otherwise agree to changes in the Court's orders regarding discovery or any other scheduling matter unless expressly authorized to do so by Rule or by Court order. *Rule 16 of the Federal Rules of Civil Procedure* makes plain that a scheduling order entered by a district judge "shall not be modified except upon a showing of good cause and by leave of the district judge . . . ," *Rule 16(b), Fed. R. Civ. P.*, and it authorizes the judge to impose sanctions on a party or a party's attorney for failure to obey a scheduling order. Rule 16(f), Fed. R. Civ. P. Rule 206 of the Rules of this Court requires counsel to meet and confer before the scheduling conference [**3] and to propose to the Court, [*220] inter alia, a specific date for the completion of all discovery. Local Rule 206(c)(8). Once the schedule proposed by the parties is accepted or modified by the Court and memorialized in a scheduling order, the scheduling order may not be modified except by the Court and then only upon a showing of good cause. Local Rule 206.1.

The purpose of these Rules is to promote the ability of the Court to manage cases, to develop "a sound plan to govern the particular case from start to finish" and to "set[] and keep[] firm pretrial and trial dates." Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia 37-39 (Aug. 1993). The scheduling order that results from this process is intended to serve "as the unalterable road map (absent good cause) for the remainder of the case." Id. at 39. As the Advisory Group noted:

> The Advisory Group believes that from this point forward, the parties and their counsel should be bound by the dates specified in any first scheduling or other

Case 1:05-cv-00969-HHK    Document 79-2    Filed 06/22/2006    Page 113 of 124

Page 2

169 F.R.D. 219, *; 1996 U.S. Dist. LEXIS 15785, **

scheduling order, and that no extensions or continuances should be granted, except on a timely showing of [**4] good cause. Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause.

Once the schedule is set at the scheduling conference, the presumption should be firmly against the granting of continuances. If good cause is shown, a reasonable extension of time for a particular purpose may be granted by the Court; stipulations by the parties should not be accepted in the absence of good cause.

Id. at 41. Counsels' unilateral decision to modify the Scheduling Order without the Court's approval and without good cause is a clear violation of the Federal and Local Rules. Accordingly, it is hereby

ORDERED that all discovery in this case shall be completed by November 13, 1996; it is

FURTHER ORDERED that dispositive motions shall be filed by December 13, 1996; oppositions by December 30, 1996; and replies, if any, by January 9, 1997; it is

FURTHER ORDERED that a pretrial conference is scheduled for January 30, 1997 at 4:00 p.m.; it is

FURTHER ORDERED that the parties' Joint Pretrial Statement is due on January 24, 1997. See Local Rule 209; it is

FURTHER ORDERED that trial will begin [**5] on February 10, 1997 at 9:30 a.m.; and it is

FURTHER ORDERED that defendant shall respond to plaintiff's motion to amend the complaint on or before September 25, 1996, at which time the Court will rule on the motion. All dates in this Order are firm, may not be altered by the parties and, absent truly exceptional circumstances, will not be altered by the Court.

SO ORDERED.

PAUL L. FRIEDMAN

United States District Judge

DATE: 9/16/96

# ATTACHMENT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al. | ) ) ) ) | |
| Defendants | ) ) ) | |

## PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO EDF AND EDFINA'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

Plaintiff, Catherine Gaujacq ("Ms Gaujacq"), pursuant to the Rule 34 of the Federal Rules of Civil Procedure, hereby objects and responds to Defendants Electricite de France, S.A. ("EDF") and Electricite de France International North America ("EDFINA") First Request for Production of Documents as follows.

### GENERAL OBJECTIONS

The following objections apply to the Requests as a whole, and to each of the separate Requests.

The provision or identification of any document or information in connection with this response does not constitute an admission that such document or information is relevant to any issue in this case or is admissible at trial of this action

1      Ms. Gaujacq objects to the Requests to the extent they would require Ms. Gaujacq to provide or reveal the contents of any document or information privileged from disclosure pursuant to the attorney-client privilege, the qualified immunity provided to litigation work

would require disclosure of core opinion work product and mental impression of counsel, which

is prohibited by Fed. R. Civ. P. 26(b)(3)

**RESPONSE:** Without waiving objections, please see documents Bates stamp nos. 58-

60,312,315,316,317,728-730. Other documents produced may also be responsive to this

Request

 123. **All documents concerning the allegation contained in paragraph 212 of the
Complaint that there had been "assurances by the Company that during the 'transition'
period, [Ms. Gaujacq] would continue to receive the same benefits of the compensation
arrangement she had during her U.S. assignment."**

**OBJECTION:** Plaintiff objects to this Request on the grounds that it is overly broad,

unduly burdensome, and that the information sought is neither relevant to any issue in this

litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff

also objects to this Request to the extent it seeks information protected by the attorney-client

privilege, and on the grounds that this Request invades protected litigation work product and

would require disclosure of core opinion work product and mental impression of counsel, which

is prohibited by Fed. R. Civ. P. 26(b)(3)

**RESPONSE:** Without waiving objections, please see documents Bates stamp nos.

58-60,312,315,316,317,728-730. Other documents produced may also be responsive to this

Request.

 124. **All documents concerning the allegation contained in paragraph 213 of the
Complaint that "[b]usiness expenses incurred by Ms. Gaujacq, including business related
travel, insurance premiums and utility expenses, totaling over $2,500.00, have not been
reimbursed by the Company."**

**OBJECTION:** Plaintiff objects to this Request on the grounds that it is overly broad,

unduly burdensome, and that the information sought is neither relevant to any issue in this

litigation, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff

also objects to this Request to the extent it seeks information protected by the attorney-client

privilege, and on the grounds that this Request invades protected litigation work product and

would require disclosure of core opinion work product and mental impression of counsel, which

is prohibited by Fed. R. Civ. P. 26(b)(3)

RESPONSE: Without waiving objections, please see documents Bates stamp nos

61,62,75-77,313-317,318,319,617-621,739-760,1250-1252   Other documents produced may

also be responsive to this Request

125.    All    documents    concerning    Plaintiff's    claims    for    damages    for
"embarrassment, humiliation, inconvenience, severe mental anguish, stress, pain and
suffering" as alleged in paragraphs 232, 251, 261, 268, 282, 292, 308, 330, 352 of the
Complaint

OBJECTION: Plaintiff objects to this Request on the grounds that it is overly broad,

unduly burdensome, and that the information sought is neither relevant to any issue in this

litigation, nor reasonably calculated to lead to the discovery of admissible evidence   Plaintiff

also objects to this Request to the extent it seeks information protected by the attorney-client

privilege, and on the grounds that this Request invades protected litigation work product and

would require disclosure of core opinion work product and mental impression of counsel, which

is prohibited by Fed. R. Civ. P. 26(b)(3)

RESPONSE: Without waiving objections, please see documents Bates stamp nos.

1-1266  Other documents produced may also be responsive to this Request

126.    All documents concerning Plaintiff's claim for damages for "emotional pain"
and "loss of enjoyment of life and other nonpecuniary injury" as alleged in paragraphs 308
and 319 of the Complaint.

OBJECTION: Plaintiff objects to this Request on the grounds that it is overly broad,

unduly burdensome, and that the information sought is neither relevant to any issue in this

litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff

66

December 21, 2005                    Catherine Gaujacq,
                                        By Counsel

                                     Elaine Charlson Bredehoft
                                     D.C. Bar No. 441425
                                     Kathleen Z. Quill
                                     D.C. Bar No. 489079
                                     CHARLSON BREDEHOFT & COHEN, P.C.
                                     11260 Roger Bacon Drive
                                     Suite 201
                                     Reston, Virginia 20190
                                     (703) 318-6800

                                     Counsel for Plaintiff,
                                        Catherine L. Gaujacq

74

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO EDF AND EDFINA'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF by email (response only) and Federal Express (response and documents) this 21st day of December 2005 on counsel for EDF and EDFINA addressed as follows:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
dregal@hnrlaw.com

Counsel for Defendants
Electricite de France, S.A. and
Electricite de France International North America

With a courtesy copy sent this same day by email (response only) and Federal Express (response and documents), addressed as follows:

Ronald S. Cooper, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
rcooper@steptoe.com

Counsel for Defendant
Christian Nadal

Elaine Charlson Bredehoft

75

# ATTACHMENT 14

LEXSEE 46 F.R.D. 605,AT 1969

**Norman F. HECHT, et al. v. PRO-FOOTBALL, INC., et al.**

**Civil Action 2815-66**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*46 F.R.D. 605; 1969 U.S. Dist. LEXIS 12484; 13 Fed. R. Serv. 2d (Callaghan)
1123; 1969 Trade Cas. (CCH) P72,834*

**March 21, 1969**

**JUDGES:** [**1]

Holtzoff, D.J.

**OPINIONBY:**

HOLTZOFF

**OPINION:**

[*606] Opinion

HOLTZOFF, D.J.:

This is a motion by prospective witnesses, who are not parties to the action and whose depositions are about to be taken by the plaintiffs to limit subpoenas *duces tecum* that have been issued against them. The action is brought to recover triple damages under the antitrust Acts. This matter is governed by *Rule 45 of the Federal Rules of Civil Procedure.* Subsection (b) of that rule authorizes the issuance of subpoenas *duces tecum* and then goes on to provide that "but the Court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, may . . quash or modify the subpoena if it is unreasonable and oppressive . . ." The question, therefore, is whether the subpoenas involved in this motion are unreasonable or oppressive. It may be added that the Court has inherent power to protect anyone from oppressive use of process, even if no oppression is actually intended.

The principal defendant is a league composed of professional football clubs. The plaintiffs are individuals, who had planned to organize a professional football club in Washington, [**2] D.C., and to procure a franchise from a rival league, namely, a league known as the American Football League. The gravamen of their action is that they were prevented from achieving their purpose by the fact that the authorities that operated the stadium in the District of Columbia had made an exclusive agreement for the use of that stadium for football games

by the defendant National Football League. This exclusive agreement is claimed to be violative of the Sherman law.

Plaintiffs are now engaged in taking depositions. One of the purposes of their taking depositions is to obtain evidence on the issue of damages. The evidence that it is desired to obtain by the depositions is profits made by active clubs that are members of professional football leagues and the price paid on the sale of franchises. At this juncture the Court will not and should not rule on the admissibility of this evidence. It is always dangerous to make advance rulings on the admissibility of evidence, because very frequently the admissibility of an item of evidence depends upon the exact posture of the case at the time that the evidence is offered. The fact, however, that the evidence may be relevant and [**3] admissible at the trial is not sufficient to dispose of a motion such as the Court has before it at this time. It is possible for a subpoena *duces tecum* to be unreasonable or oppressive, even though the evidence sought to be procured may prove to be thereafter relevant at the trial.

There are two moving parties on this motion. One is a club known as the Miami Dolphins, Ltd., whose deposition is to be taken and the other is an individual named David A. Werblin. Objection is made to Items 4 and 5 in the subpoena *duces tecum* against the Miami Dolphins. Item 4 seeks the production of profit and loss statements of the Dolphins for the years 1966, 1967 and 1968. Item 5 seeks records showing prices paid for each partnership interest by persons [*607] who have acquired such interests in the Dolphins. The subpoena *duces tecum* issued to Werblin seeks the production of documents showing the total sales price of the interest he sold in the Gotham Football Club in 1968.

It will be noted that these requests seek private financial records of persons who are not parties to this action. The fact that they may be allied to the parties as argued by learned counsel for the plaintiffs [**4] does

46 F.R.D. 605, *; 1969 U.S. Dist. LEXIS 12484, **;
13 Fed. R. Serv. 2d (Callaghan) 1123; 1969 Trade Cas. (CCH) P72,834

not necessarily change the situation even though it may be of some interest. The right of privacy and the right to keep confidential one's financial affairs is well recognized. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure at the taking of a deposition. This information can be obtained at the trial if the trial progresses to a point where it becomes relevant. It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Modern civil procedure in the Federal courts contemplates liberal disclosure. Discovery is in the interest of justice. Nevertheless, discovery is not unbridled and not unlimited. There must be restrictions to protect individuals in their natural privacy.

The Court is of the opinion that the request is both unreasonable and oppressive. It may become reasonable at the trial, but it is unreasonable at this early [**5] stage of the controversy. If it becomes relevant at the trial, a short continuance can be had if necessary in order to obtain the information.

The motion to limit subpoenas *duces tecum* in the manner indicated is granted without prejudice to the right to renew such requests if the matter becomes relevant at that time.

Counsel may submit an appropriate order.

# ATTACHMENT 15



# RIGGS

| | | Statement Date: | 10/08/04 - 11/07/04 |
| | | Payment Due Date: | 12/02/04 |
| | | Minimum Payment Due: | $54.00 |

**CUSTOMER SERVICE**
In U.S.          1-888-200-6071
Español       1-888-446-3368
TDD             1-800-955-8060
Outside U S call collect
                      1-302-594-8200

## VISA ACCOUNT SUMMARY

Account Number:

| Previous Balance | $2,225.14 | Total Credit Line | $10,000 |
| Payment Credits | $2,225.14 | Available Credit | $7,250 |
| Purchases Cash Debits | +$2,749.34 | Cash Access Line | $2,000 |
| New Balance | $2,749.34 | Available for Cash | $2,000 |

**ACCOUNT INQUIRIES**
P.O. Box 15298
Wilmington DE 19850-5298

**PAYMENT ADDRESS**
P.O. Box 15153
Wilmington DE 19886-5153

**VISIT US AT:**
www.cardmemberservices.com

*paid baa 108*
*11/4/04*

## TRAVELPLUS SUMMARY

| Previous miles balance | 56,570 |
| Miles earned on purchases this period | 2,750 |
| New total miles balance | 59,320 |

1,000 miles due to expire on 03/2007

To redeem your miles, call 1-800-603-2265  or log on to www.ChooseMyRewards.com for 24-hour access to your rewards program.

## TRANSACTIONS

| Trans Date | Reference Number | Merchant Name or Transaction Description | Amount Credit | Debit |
|---|---|---|---|---|
| 10/07 | 2448804283314282415829 | UNITED AIR 0162118111213 WOODALE IL | | 5.00 |
| | 1 X | WAS  ATL | | |
| | 2 X | ATL  WAS | | |

Statement Date   10/08/04 - 11/07/04
Account Number:

Page 2 of 2

## TRANSACTIONS

| Trans Date | Reference Number | Merchant Name or Transaction Description | Amount Credit | Debit |
|---|---|---|---|---|
| 10/21 | 24229704208226400460668 | EMBASSY SUITES  6321 ATLANTA GA | | 249.99 |
| 10/21 | 24418004208206076872709 | DULLES INTERNATIONAL WASHINGTON DC | | 30.00 |

2180