# ATTACHMENT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | (Pending in the United States District |
| ELECTRICITE DE FRANCE | ) | Court for the District of Columbia) |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO BANK OF AMERICA

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to Bank of America, which return

date is June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for

Defendants on June 8, 2006. The grounds for this motion are set forth in the accompanying

Memorandum.

June 9, 2006                                        Respectfully Submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S EMERGENCY MOTION TO QUASH THE DOCUMENT SUBPOENA TO BANK OF AMERICA by first class U.S. mail postage prepaid and email this 9th day of June 2006 on counsel for Defendants addressed as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq
> Randi B. May, Esq
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> DRegal@hnrlaw.com
> RMay@hnrlaw.com

> Counsel for Defendants
>    Electricite de France, S.A. and
>    Electricite de France International North America

> David A. Clark, Esq.
> Morgan Day Hodgson, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> dclark@steptoe.com
> mhodgson@steptoe.com

> Counsel for Defendant
>    Christian Nadal

With a copy sent via Federal Express to:

> Bank of America
> Legal Order Processing Department
> 1425 NW 62nd Street
> Ft. Lauderdale, FL 33309


_Elaine Bredehoft_ /scw
Elaine Charlson Bredehoft

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CATHERINE GAUJACQ )
)
Plaintiff, )
)
v )  No 1:05CV0969 (JGP)
) (Pending in the United States District
ELECTRICITE DE FRANCE ) Court for the District of Columbia)
INTERNATIONAL NORTH AMERICA, )
INC , et al )
)
Defendants )
)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUPBOENA TO BANK OF AMERICA

Pursuant to Fed R Civ P 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms

Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash

the subpoena for documents from defendants Electricité de France, S A ("EDF") and Electricité

de France International North America, Inc ("EDFINA", collectively with defendant Christian

Nadal "Defendants") to Bank of America

### CERTIFICATE UNDER LOCAL RULE 7.1(A)(3)

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally

and in writing, to resolve the discovery matters at issue prior to placing this matter before the Court

Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the

below issues

### PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's

counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of

serving a subpoena (the "Subpoena") on Bank of America (Attachment 1) and two additional

banks in other districts (collectively, the "Subpoenae").  Attachment 2  The Subpoenae request the production of certain bank account records relating to accounts (the "Bank Records") held by Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife, plaintiff Catherine Gaujacq.  The Subpoenae request that the Bank Records be produced by Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the Subpoenae.

This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA and supervisor Mr. Nadal.  Neither the net worth of Ms. Gaujacq and her husband Philippe Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank accounts are at issue in this litigation.  There have been no allegations, claims or defenses, such as a misappropriations of funds, that might justify a request to produce the private and confidential bank records of third-parties.

Defendants have never articulated a single basis for their untimely Subpoenae for Mr. and Ms. Gaujacq's personal and confidential Bank Records and, indeed, they cannot have one because the Bank Records have nothing to do with any claims or defenses raised in this case.  Without any basis or justification for the request for the Bank Records, one must infer that the Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c).

Further, Discovery closed on May 31, 2006.  Defendants do not have good cause for failing to pursue discovery against third-party Bank of America before the discovery cut-off.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005.  In her complaint, Ms. Gaujacq (i) alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U S C. §

2000e, et seq , the District of Columbia Human Rights Act, D C  Code § 2-1401.01 et seq , and the

common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal

Pay Act, 29 U S C  § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of

good faith and fair dealing.[1]  Defendants filed their answers to this complaint on September 12,

2005  A scheduling order was entered on October 14, 2005. See Attachment 3  In this Order,

the Court set the deadline for fact discovery on May 31, 2006  On June 8, 2006, Defendants sent

Plaintiffs' counsel and email stating that they were in the process of serving the Subpoenae at

issue in this Motion  Attachment 4

## STATEMENT OF FACTS

Ms  Gaujacq was President of Electricite de France International North America

("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management

positions within EDF and EDFINA in the core energy generation business, and, most recently, in

strategic consulting on behalf of the Company in the United States  Despite the size of the

Company, Ms. Gaujacq was one of very few women to hold an executive level position and as

President, was one of the highest ranked females in the Company. As President of EDFINA, Ms

Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all

EDFINA activities and projects, identification of development opportunities in the American and

Canadian electricity markets, representation of the Company in various trade associations

relevant to the energy field, serving as a Director of the Board for EDF Group's United States

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged only against the corporate defendants  The claim of tortious interference with contractual relations and business expectancies is alleged only against Mr  Nadal

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President. Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued

4

mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later,* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

6

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

**ARGUMENT**

I.    **GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION**

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.1(E). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents

7

be produced on June 16, 2006, approximately one week later. Due to the extremely compressed

return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed

prior to the return date if done so on an emergency basis.

## II.    THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should quash Defendants' Subpoena because the Bank Records are not

reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c)

provides that a court, upon a showing of good cause, "may make any order which justice requires

to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written

objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall

not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by

which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion. Dean v. Anderson,

2002 U.S. dist. Lexis 11536, *5 (D. Ka. 2002). Where as here, the relevancy is not apparent on

the face of the request, "the burden is on the party *seeking* discovery to show the relevancy of the

discovery request." Id. at 7 (finding that discovery of bank account information was not facially

relevant, though party seeking discovery carried burden for limited discovery).

The burden on Defendants in this case is especially high because it involves discovery of

private and confidential financial information of a third-party. Discovery is not "unbridled and

not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy."

---

[2] Ms. Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551 (D. Ga. 2001).

Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure. . . It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint (Attachment 5) plainly reveals the irrelevancy of the Bank Records.

Further, Mr. Gaujacq has already voluntarily produced financial records in the form of his tax returns, which should be sufficient for any of Defendants' needs. See Philippe Gaujacq's Objections And Responses To Defendants' Request For The Production Of Documents To Philippe Gaujacq, p. 3, Attachment 6.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that

the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here  See also Sosa v. Airprint Sys., 133 F 3d 1417 (11th Cir. 1998) (good cause required to amend scheduling order)

The discovery period here ended on May 31, 2006  The Subpoena is dated June 7, 2006 and is, therefore, invalid on its face  Because Defendants do not have good cause for waiting until the close of discovery to serve their Subpoena, the Subpoena should be quashed

**CONCLUSION**

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to Bank of America

June 9, 2006                                   Respectfully Submitted,

Elaine Charlson Bredehoft  /scw

Elaine Charlson Bredehoft
D.C Bar No. 441425
S  Christian Wickwire
D C  Bar No  488797
CHARLSON BREDEHOFT & COHEN, P C
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH THE DOCUMENT SUBPOENA TO BANK OF AMERICA by first class U.S. mail postage prepaid and email this 9th day of June 2006 on counsel for Defendants addressed as follows:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> Randi B. May, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, New York 10016
> (212) 689-8808
> lhoguet@hnrlaw.com
> DRegal@hnrlaw.com
> RMay@hnrlaw.com
>
> Counsel for Defendants
>    Electricite de France, S.A. and
>    Electricite de France International North America
>
> David A. Clark, Esq.
> Morgan Day Hodgson, Esq.
> STEPTOE & JOHNSON LLP
> 1330 Connecticut Avenue, NW
> Washington, DC 20036
> (202) 429-3000
> dclark@steptoe.com
> mhodgson@steptoe.com
>
> Counsel for Defendant
>    Christian Nadal

With a copy sent via Federal Express to:

> Bank of America
> Legal Order Processing Department
> 1425 NW 62nd Street
> Ft. Lauderdale, FL 33309

*Elaine Bredehoft /xu*
Elaine Charlson Bredehoft

11

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE GAUJACQ                          )
                                           )
    Plaintiff,                             )
                                           )
        v.                              )       No. 1:05CV0969 (JGP)
                                           )       (Pending in the United States District
ELECTRICITE DE FRANCE                      )       Court for the District of Columbia)
  INTERNATIONAL NORTH AMERICA,             )
  INC., et al.                             )
                                           )
    Defendants.                            )
                                           )

## PHILIPPE GAUJACQ'S EMERGENCY MOTION TO QUASH
## DEFENDANTS'DOCUMENT SUBPOENA TO PNC BANK

        Third-party PHILIPPE GAUJACQ ("Mr. Gaujacq"), by counsel, hereby moves this Court to

quash the subpoena for the production of documents to PNC Bank, which return date is June 16,

2006. The subpoena was received by Mr. Gaujacq via e-mail from counsel for Defendants on June

8, 2006. The grounds for this motion are set forth in the Emergency Motion and accompanying

Memorandum filed concurrently herewith by Plaintiff Catherine Gaujacq to Quash Defendants'

Document Subpoena to PNC Bank ("Plaintiff's Motion").

        Mr. Gaujacq fully joins in Plaintiff's Motion and the reasoning therein. Mr. Gaujacq further

submits that the subpoena to PNC Bank for Mr. Gaujacq's bank account information is beyond the

scope of discovery because it is not reasonably calculated to lead to the discovery of admissible

evidence. Mr. Gaujacq further states that Defendants have no rational basis to intrude on his private

and confidential financial records to the extent he is a non-party to the lawsuit and any relevance of

such information is far outweighed by Mr. Gaujacq's legitimate and substantial privacy concerns.

June 12, 2006

Respectfully Submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Philippe Gaujacq

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CATHERINE GAUJACQ            )
                             )
        Plaintiff,           )
                             )
        v                    )          No. 1:05CV0969 (JGP)
                             )          (Pending in the United States District
ELECTRICITE DE FRANCE        )          Court for the District of Columbia)
   INTERNATIONAL NORTH AMERICA, )
   INC., et al.              )
                             )
        Defendants.          )
                             )

## PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO PNC BANK

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to PNC Bank, which return date is

June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for Defendants

on June 8, 2006. The grounds for this motion are set forth in the accompanying Memorandum.

June 12, 2006                          Respectfully Submitted,


                                       Elaine Charlson Bredehoft
                                       D.C. Bar No. 441425
                                       S. Christian Wickwire
                                       D.C. Bar No. 488797
                                       CHARLSON BREDEHOFT & COHEN, P.C.
                                       11260 Roger Bacon Drive
                                       Suite 201
                                       Reston, Virginia 20190
                                       (703) 318-6800

                                       Counsel for Plaintiff
                                           Catherine Gaujacq

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | No. 1:05CV0969 (JGP) |
| | ) | (Pending in the United States District |
| ELECTRICITE DE FRANCE | ) | Court for the District of Columbia) |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUPBOENA TO PNC BANK

Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash the subpoena for documents from defendants Electricité de France, S.A. ("EDF") and Electricité de France International North America, Inc. ("EDFINA", collectively with defendant Christian Nadal "Defendants") to PNC Bank.

## CERTIFICATE UNDER LOCAL RULE 37.1

Counsel for the plaintiff hereby certifies that counsel have made good faith efforts verbally and in writing, to resolve the discovery matters at issue prior to placing this matter before the Court. Despite counsel's best efforts, however, counsel have not been able to come to an agreement on the below issues

## PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of serving a subpoena (the "Subpoena") on PNC Bank (Attachment 1) and two additional banks in

other districts (collectively, the "Subpoenae")    Attachment 2    The Subpoenae request the production of certain bank account records relating to accounts (the "Bank Records") held by Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife, plaintiff Catherine Gaujacq.   The Subpoenae request that the Bank Records be produced by Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the Subpoenae

This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA and supervisor Mr. Nadal.  Neither the net worth of Ms. Gaujacq and her husband Philippe Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank accounts are at issue in this litigation    There have been no allegations, claims or defenses, such as a misappropriations of funds, that might justify a request to produce the private and confidential bank records of third-parties.

Defendants have never articulated a single rational basis for their untimely Subpoenae for Mr. and Ms. Gaujacq's personal and confidential Bank Records and, indeed, they cannot have one because the Bank Records have nothing to do with any claims or defenses raised in this case Without any basis or justification for the request for the Bank Records, one must infer that the Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c)

Further, Discovery closed on May 31, 2006   Defendants do not have good cause for failing to pursue discovery against third-party PNC Bank before the discovery cut-off.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005   In her complaint, Ms. Gaujacq (i) alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory

termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the

common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal

Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per* se; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of

good faith and fair dealing.[1]  Defendants filed their answers to this complaint on September 12,

2005. A scheduling order was entered on October 14, 2005. See Attachment 3. In this Order,

the Court set the deadline for fact discovery on May 31, 2006. The trial is scheduled to begin on

April 2, 2007. On June 8, 2006, Defendants sent Plaintiffs' counsel and email stating that they

were in the process of serving the Subpoenae at issue in this Motion. Attachment 4.

## STATEMENT OF FACTS

Ms. Gaujacq was President of Electricite de France International North America

("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management

positions within EDF and EDFINA in the core energy generation business, and, most recently, in

strategic consulting on behalf of the Company in the United States. Despite the size of the

Company, Ms. Gaujacq was one of very few women to hold an executive level position and as

President, was one of the highest ranked females in the Company. As President of EDFINA, Ms.

Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all

EDFINA activities and projects, identification of development opportunities in the American and

Canadian electricity markets, representation of the Company in various trade associations

relevant to the energy field, serving as a Director of the Board for EDF Group's United States

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged only against the corporate defendants. The claim of tortious interference with contractual relations and business expectancies is alleged only against Mr. Nadal.

subsidiaries, and regularly making presentations on the nuclear energy industry and emerging

technologies at industry conferences. During Ms. Gaujacq's four-year tenure as President, she

was responsible for identifying and managing EDF's acquisition of enXco, a wind power

company; the establishment and development of a United States presence for Dalkia, an EDF

subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture

in the United States.

    In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's

restructuring associated with the Company's privatization, Christian Nadal, a high level

executive with EDF, was being sent from France to the United States offices as a senior advisor

to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA

in the United States at the end of March 2004, without prior notice or explanation from the

Company

    Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the

Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr.

Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract

that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new

expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31,

2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President

Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President,

EDFINA and Manager of the Project, retaining management responsibility for generation and

Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq

submitted her resignation based on written assurances from the Company that her continued

mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 -- 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on

information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq's expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later*, and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that when she returned to France she would occupy a management position of higher responsibility and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for her complaints of discrimination, harassment and unfair treatment. By letter dated October 7, 2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and experience, was a demotion in every respect, and reneged upon the previous agreement of Mr. Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of its breach of her expatriation and employment contract with the Company. After declining the mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

6

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within the EDF Human Resources department, requesting her presence at a meeting in France on December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be allowed to have assistance at the meeting, but only if her chosen representative was an employee of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se*.

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

## I.    GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.1(D). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents

be produced on June 16, 2006, approximately one week later  Due to the extremely compressed

return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed

prior to the return date if done so on an emergency basis

## II.    THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should quash Defendants' Subpoena because the Bank Records are not

reasonably calculated to lead to the discovery of admissible evidence  Fed R Civ P 26(c)

provides that a court, upon a showing of good cause, "may make any order which justice requires

to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Likewise, Fed R Civ P 45(c)(2)(B) provides that a party may serve written

objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall

not be entitled to inspect and copy the materials    except pursuant to an order of the court by

which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion  Dean v. Anderson,

2002 U S dist. Lexis 11536, *5 (D.Ka. 2002)  Where as here, the relevancy is not apparent on

the face of the request, "the burden is on the party *seeking* discovery to show the relevancy of the

discovery request."  Id. at 7  (finding that discovery of bank account information was not facially

relevant, though party seeking discovery carried burden for limited discovery)

The burden on Defendants in this case is especially high because it involves discovery of

private and confidential financial information of a third-party  Discovery is not "unbridled and

not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy "

---

[2] Ms Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue  See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F R D 551 (D. Ga. 2001).

Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure. It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff's and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint (Attachment 5) plainly reveals the irrelevancy of the Bank Records.

Indeed, Defendants' only explanation for why the bank account records are relevant is for (1) impeachment of Catherine Gaujacq and (2) the possibility that the Bank Records will somehow bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses. Neither of these reasons are sufficient. Impeachment, without any basis for asserting that there will be any inconsistencies between Ms. Gaujacq's testimony and the contents of her Bank Records, cannot form the basis for a subpoena for confidential financial records, and smacks of a fishing expedition. By Defendants' logic, discovery is limitless because a party may turn over every

9

stone for impeachment evidence, regardless of relevance to the allegations, claims and defenses in the complaint. Such fishing for evidence should not be permitted

Defendants' second stated basis for relevance, that the Bank Records will bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses, is likewise insufficient for several reasons. First, such information is readily available to Defendants; they can determine from their own files whether or not they reimbursed Ms. Gaujacq for her expenses. Second, Ms. Gaujacq has already produced financial information on the issue. Mr. and Mrs. Gaujacq have produced their tax returns. See Philippe Gaujacq's Objections And Responses To Defendants' Request For The Production Of Documents To Philippe Gaujacq, p. 3, Attachment 6. In addition, Ms. Gaujacq produced over forty pages of documents in response to Defendants' request for documents concerning her claim for unpaid business expenses. Attachment 7.

Because Defendants have no reasonable basis for believing the Bank Records contain impeachment evidence, the information is readily available to Defendants in their own files, and Ms. Gaujacq has already produced her financial information pertaining to the damages issue, the Subpoena should be quashed.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that the scheduling order entered into this case may not be altered after the fact without a showing of "good cause", which cannot be shown here. See also Sosa v. Airprint Sys., 133 F.3d 1417 (11th Cir. 1998) (good cause required to amend scheduling order).

The discovery period here ended on May 31, 2006. The Subpoena is dated June 7, 2006 and is, therefore, invalid on its face. Defendants had every opportunity to obtain the Bank Account information they now seek at this late hour. In December 2005, approximately six

months ago, Ms. Gaujacq produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses. Attachment 7. Defendants deposed Ms. Gaujacq for three days and still never complained that the information produced was insufficient or moved to compel. Instead, with these out of time Subpoenae, Defendants are attempting an "end around" Ms. Gaujacq's discovery responses by requesting her private financial information from the banks directly. Such manipulation of the discovery process should not be allowed.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to PNC Bank.

June 12, 2006                           Respectfully Submitted,

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISCELLANEOUS NO. _3:06MC 27.JCS_

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 1 3 2006

J. T. NOBLIN, CLERK
BY_____ DEPUTY

CATHERINE GAUJACQ                                                        Plaintiff

VERSUS                                    CIVIL ACTION NO. 1:05CV0969 (JGP)
                                          (Pending in the United States District
                                          Court for the District of Columbia)

ELECTRICITE DE FRANCE                                                   Defendants
INTERNATIONAL NORTH AMERICA, INC., et al.

## PHILIPPE GAUJACQ'S EMERGENCY MOTION TO QUASH
## DEFENDANTS' DOCUMENT SUBPOENA TO TRUSTMARK BANK

Third-party PHILIPPE GAUJACQ ("Mr. Gaujacq"), by counsel, hereby moves this Court to

quash the subpoena for the production of documents to TRUSTMARK Bank, which return date is

June 16, 2006. The subpoena was received by Mr. Gaujacq via e-mail from counsel for Defendants

on June 8, 2006. The grounds for this motion are set forth in the Emergency Motion and

accompanying Memorandum filed concurrently herewith by Plaintiff Catherine Gaujacq to Quash

Defendants' Document Subpoena to TRUSTMARK Bank ("Plaintiff's Motion").

Mr. Gaujacq fully joins in Plaintiff's Motion and the reasoning therein. Mr. Gaujacq further

submits that the subpoena to TRUSTMARK Bank for Mr. Gaujacq's bank account information is

beyond the scope of discovery because it is not reasonably calculated to lead to the discovery of

admissible evidence. Mr. Gaujacq further states that Defendants have no rational basis to intrude on

his private and confidential financial records to the extent he is a non-party to the lawsuit and any

relevance of such information is far outweighed by Mr. Gaujacq's legitimate and substantial privacy

concerns.

Respectfully submitted, this 13th day of June, 2006.

                BY:    BALCH & BINGHAM LLP

                BY:    *Tara P. Ellis*

                        Tara P. Ellis (101034)
                        BALCH & BINGHAM LLP
                        401 East Capitol Street
                        Suite 200
                        Jackson, MS 39201
                        Telephone: (601) 961-9900
                        Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of the

Court and sent copies via U S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
  Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
  Counsel for Defendant
  Christian Nadal

Trustmark Bank
Legal Department
348 East Capitol
Jackson, MS 39201

*Tara P. Ellis*

TARA P. ELLIS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 1 3 2006

J T NOBLIN, CLERK
BY_____DEPUTY

MISCELLANEOUS NO. _3:6MC 29 JCS_

CATHERINE GAUJACQ                                              **Plaintiff**

**VERSUS**                          **CIVIL ACTION NO. 1:05CV0969 (JGP)**
                                    **(Pending in the United States District**
                                    **Court for the District of Columbia)**

**ELECTRICITE DE FRANCE**                                     **Defendants**
**INTERNATIONAL NORTH AMERICA, INC., et al.**

### PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS'
### DOCUMENT SUBPOENA TO TRUSTMARK BANK

Plaintiff CATHERINE GAUJACQ ("Ms. Gaujacq"), by counsel, hereby moves this

Court to quash the subpoena for the production of documents to Trustmark Bank, which return

date is June 16, 2006. The subpoena was received by Plaintiff via e-mail from counsel for

Defendants on June 8, 2006. The grounds for this motion are set forth in the accompanying

Memorandum.

Respectfully submitted, this 13th day of June, 2006.

                    BY:    BALCH & BINGHAM LLP

                    BY:    _Tara P. Ellis_
                           Tara P. Ellis (101034)
                           BALCH & BINGHAM LLP
                           401 East Capitol Street
                           Suite 200
                           Jackson, MS 39201
                           Telephone: (601) 961-9900
                           Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of

the Court and sent copies via U.S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
  Counsel for Defendants
  Electricite de France, S.A. and
  Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
  Counsel for Defendant
  Christian Nadal

TRUSTMARK Bank
Legal Department
348 East Capitol
Jackson, MS 39201

_Tara P. Ellis_

TARA P. ELLIS

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 13 2006

J T NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISCELLANEOUS NO. _3:06MC 27 JCS_

CATHERINE GAUJACQ                                                          **Plaintiff**

**VERSUS**                              **CIVIL ACTION NO. 1:05CV0969 (JGP)**
                                        **(Pending in the United States District**
                                        **Court for the District of Columbia)**

**ELECTRICITE DE FRANCE**                                                  **Defendants**
**INTERNATIONAL NORTH AMERICA, INC., et al.**

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO QUASH DEFENDANTS' DOCUMENT SUBPOENA TO TRUSTMARK BANK

Pursuant to Fed. R. Civ. P. 26(c) and 45(c)(2)(B), plaintiff Catherine Gaujacq ("Ms.

Gaujacq" or "Plaintiff") submits this memorandum in support of her emergency motion to quash

the subpoena for documents from defendants Electricité de France, S.A. ("EDF") and Electricité

de France International North America, Inc. ("EDFINA", collectively with defendant Christian

Nadal "Defendants") to Trustmark Bank.

## PRELIMINARY STATEMENT

This discovery dispute arises out of an email from Defendants' counsel to Plaintiff's

counsel on June 8, 2006, eight days after the close of discovery, that they were in the process of

serving a subpoena (the "Subpoena") on Trustmark Bank (Exhibit 1) and two additional banks in

other districts (collectively, the "Subpoenae") (Exhibit 2). The Subpoenae request the

production of certain bank account records relating to accounts (the "Bank Records") held by

Phillippe Gaujacq, who is not a party to this lawsuit, individually and jointly with his wife,

plaintiff Catherine Gaujacq. The Subpoenae request that the Bank Records be produced by

Friday, June 16, 2006, approximately one week after Defendants notified Plaintiff of the Subpoenae.

This is a discrimination case by Ms. Gaujacq against her former employer EDF, EDFINA and supervisor Mr. Nadal. Neither the net worth of Ms. Gaujacq and her husband Philippe Gaujacq ("Mr. Gaujacq"), who is not a party to this lawsuit, nor the contents of their bank accounts are at issue in this litigation. There have been no allegations, claims or defenses, such as a misappropriation of funds, that might justify a request to produce the private and confidential bank records of third-parties.

Defendants have never articulated a single rational basis for their untimely Subpoenae for Mr. and Ms. Gaujacq's personal and confidential Bank Records and, indeed, they cannot have one because the Bank Records have nothing to do with any claims or defenses raised in this case. Without any basis or justification for the request for the Bank Records, one must infer that the Subpoenae have been propounded for the sole purpose to invade the privacy of Ms. Gaujacq and her husband, to harass embarrass and annoy, which is prohibited by Fed. R. Civ. P. 26(c).

Further, Discovery closed on May 31, 2006. Defendants do not have good cause for failing to pursue discovery against third-party Trustmark Bank before the discovery cut-off.

## PROCEDURAL HISTORY

Ms. Gaujacq filed her Complaint on May 13, 2005  In her complaint, Ms. Gaujacq (i) alleges discrimination and retaliation on the basis of gender, and discriminatory and retaliatory termination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq., and the common law of the District of Columbia; (ii) disparate and unequal pay, in violation of the Equal Pay Act, 29 U.S.C. § 206(d); (iii) defamation *per se*; (iv) breach of contract; (v) tortious

interference with contractual relations and business expectancies; and (vi) breach of the duty of good faith and fair dealing.[1]  Defendants filed their answers to this complaint on September 12, 2005.  A scheduling order was entered on October 14, 2005.  See Exhibit 3.  In this Order, the Court set the deadline for fact discovery on May 31, 2006.  The trial is scheduled to begin on April 2, 2007.  On June 8, 2006, Defendants sent Plaintiffs' counsel an email stating that they were in the process of serving the Subpoenae at issue in this Motion.  Exhibit 4.

## STATEMENT OF FACTS

Ms. Gaujacq was President of Electricite de France International North America ("EDFINA") from August 1, 2000, until May 31, 2004, having risen through management positions within EDF and EDFINA in the core energy generation business, and, most recently, in strategic consulting on behalf of the Company in the United States.  Despite the size of the Company, Ms. Gaujacq was one of very few women to hold an executive level position and as President, was one of the highest ranked females in the Company.  As President of EDFINA, Ms. Gaujacq was paid a salary of $169,750.00, plus benefits.

Ms. Gaujacq's job responsibilities included full operational responsibility for all EDFINA activities and projects, identification of development opportunities in the American and Canadian electricity markets, representation of the Company in various trade associations relevant to the energy field, serving as a Director of the Board for EDF Group's United States subsidiaries, and regularly making presentations on the nuclear energy industry and emerging technologies at industry conferences.  During Ms. Gaujacq's four-year tenure as President, she was responsible for identifying and managing EDF's acquisition of enXco, a wind power company; the establishment and development of a United States presence for Dalkia, an EDF

---

[1] The claims of violations of Title VII and breach of contract and the duty of good faith and fair dealing are alleged only against the corporate defendants. The claim of tortious interference with contractual relations and business expectancies is alleged only against Mr. Nadal.

subsidiary; and the development of NuStart Energy Development, LLC, a strategic joint venture in the United States.

In February 2004, Mr. Roussely informed Ms. Gaujacq that in connection with EDF's restructuring associated with the Company's privatization, Christian Nadal, a high level executive with EDF, was being sent from France to the United States offices as a senior advisor to EDFINA. Instead, Mr. Nadal was appointed to replace Ms. Gaujacq as President of EDFINA in the United States at the end of March 2004, without prior notice or explanation from the Company.

Ms. Gaujacq made it clear to the Company that she wanted to continue to work on the Project and was even asked to propose to Mr. Creuzet a new role for herself in EDFINA. Mr. Creuzet directed Ms. Gaujacq to prepare and deliver a mission letter and expatriation contract that reflected her new role, which Ms. Gaujacq did. Mr. Creuzet agreed in writing to the new expatriation contract for three years in the United States proposed by Ms. Gaujacq. On May 31, 2004, at the request of Mr. Roussely, Ms. Gaujacq tendered her written resignation as President. Ms. Gaujacq submitted her resignation and concurrently assumed the position of Vice President, EDFINA and Manager of the Project, retaining management responsibility for generation and Nuclear Projects as stipulated in the new expatriation contract, awaiting signature. Ms. Gaujacq submitted her resignation based on written assurances from the Company that her continued mission in the United States at EDFINA for another three years had been approved, and that she would retain responsibility for the Project.

Mr. Nadal's job responsibilities were the same as those held by Ms. Gaujacq for four years, with the exception that Ms. Gaujacq retained the responsibility of day-to-day management of the Project. In other words, Mr. Nadal's job responsibilities were less than those Ms. Gaujacq

possessed while she served as President, yet Mr. Nadal's starting salary as President was $271,163.00 — 60% more than Ms. Gaujacq's salary for performing the same position with additional responsibility as compared to Mr. Nadal's position. In addition, Mr. Nadal did not possess the qualifications, educational background, training or experience in nuclear energy, or in the energy generation field, that Ms. Gaujacq possessed. Instead, Mr. Nadal's qualifications, educational background, training and experience in nuclear energy, and specifically, in the energy generation field, were significantly less than that possessed by Ms. Gaujacq.

Immediately after assuming the role of President, Mr. Nadal began subjecting Ms. Gaujacq to unfair and discriminatory treatment based on her gender, female. Mr. Nadal created an abusive and hostile work environment by subjecting Ms. Gaujacq to increasing harassment, including effectively removing Ms. Gaujacq's authority to properly carry out her job, engaging in concerted efforts to impugn Ms. Gaujacq's record and to undermine her position in the Company, and transferring many of Ms. Gaujacq's duties to a less experienced, male colleague.

Ms. Gaujacq complained about Mr. Nadal's discriminatory and unfair treatment of her by sending an email to Fernando Ponasso, EDFINA's Chairman and EDF Senior Vice-President Branch Americas, and Didier Lamethe, EDF's in-house legal counsel and EDFINA Board member, advising them of the actions taken by Mr. Nadal, which she regarded as unfair treatment and improper. Ms. Gaujacq received no response from Mr. Ponasso, and on information and belief, no steps were taken to investigate and address her complaints of discriminatory and unfair treatment by Mr. Nadal and the Company. On July 27, 2004, Ms. Gaujacq telephoned first, Mr. Creuzet, and, when she was unable to reach him, Mr. Ponasso. Mr. Ponasso stated that Mr. Creuzet had prepared a letter extending Ms. Gaujacq's mission on

the Project in the United States for three years. Contrary to Mr. Ponasso's statement, the letter

received by Ms. Gaujacq by facsimile contained the following directives:

- the Company removed Ms. Gaujacq from her position on the Project with EDFINA in the United States;

- the Company directed Ms. Gaujacq to return to France immediately, without an assigned position;

- the Company refused to sign Ms. Gaujacq' s expatriation contract as earlier promised, and expressly stated that Ms. Gaujacq's mission in the United States would end on August 1, 2004 – *just four days later;* and

- the Company refused to propose a position for Ms. Gaujacq in the EDF Energy Branch in France until November 1, 2004. In addition, there was no mention of a promotion upon Ms. Gaujacq's return to France as Mr. Roussely had previously indicated.

Contrary to the promises and representations made to Ms. Gaujacq in January 2004, that

when she returned to France she would occupy a management position of higher responsibility

and compensation, the mission proposed to Ms. Gaujacq was a position of lower responsibility

with decreased compensation. Ms. Gaujacq was offered the lower level position in retaliation for

her complaints of discrimination, harassment and unfair treatment. By letter dated October 7,

2004, Ms. Gaujacq declined the mission since it did not take into account her qualifications and

experience, was a demotion in every respect, and reneged upon the previous agreement of Mr.

Creuzet that Ms. Gaujacq could remain in the United States. She also informed the Company of

its breach of her expatriation and employment contract with the Company. After declining the

mission, Ms. Gaujacq received a letter, dated November 26, 2004, from Jacques Bouron ("Mr.

Bouron"), who reported to Yann Laroche and who was in charge of high level executives within

the EDF Human Resources department, requesting her presence at a meeting in France on

December 10, 2004, to consider her termination. Ms. Gaujacq was informed she would be

allowed to have assistance at the meeting, but only if her chosen representative was an employee

of the Company. After the meeting, by letter dated January 6, 2005, Ms. Gaujacq's employment was terminated, allegedly for performance related issues. The termination of Ms. Gaujacq for "performance reasons" was false, the Company knew them to be false, impugned Ms. Gaujacq's competency to perform her job and general reputation, and therefore constituted defamation *per se.*

Ms. Gaujacq, who devoted 24 years to the Company and whose performance was excellent and her achievements many, is no longer employed, because she refused to tolerate the conduct of a man who believed women should be treated as lesser human beings, and when she exercised the rights recognized in the District of Columbia and the United States to complain when discrimination occurs, she was told her career was dead by a Company who condoned, and continues to condone discriminatory and retaliatory conduct. The Company made good on its threat. Meanwhile, the man, who believes women should be treated as lesser human beings and are not capable of and should not be trusted holding high-level positions, remains employed in a high level position at the Company. His discriminatory and retaliatory conduct has been sanctioned, approved, protected and fostered, by the Company.

## ARGUMENT

### I.     GOOD CAUSE EXISTS FOR THIS EMERGENCY MOTION

Plaintiff has good cause for asking that their Motion be briefed and heard on an emergency basis in accordance with Local Rule 7.2(H). The Subpoena, bearing the date June 7, 2006 was first brought to Plaintiff's attention on June 8. The Subpoena requests that documents be produced on June 16, 2006, approximately one week later. Due to the extremely compressed return date imposed by Defendants, Plaintiff's objections to the Subpoena can only be addressed prior to the return date if done so on an emergency basis.

## II.   THE BANK RECORDS ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

The Court should quash Defendants' Subpoena because the Bank Records are not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Likewise, Fed. R. Civ. P. 45(c)(2)(B) provides that a party may serve written objections to the party issuing the subpoena, in which case the party issuing the subpoena "shall not be entitled to inspect and copy the materials . . . except pursuant to an order of the court by which the subpoena was issued.[2]

The decision to quash a subpoena is within the Court's discretion. Dean v. Anderson, 2002 U.S.dist. Lexis 11536, *5 (D.Ka. 2002). Where as here, the relevancy is not apparent on the face of the request, "the burden is on the party *seeking* discovery to show the relevancy of the discovery request." Id. at 7. (finding that discovery of bank account information was not facially relevant, though party seeking discovery carried burden for limited discovery).

The burden on Defendants in this case is especially high because it involves discovery of private and confidential financial information of a third-party. Discovery is not "unbridled and not unlimited" and "[t]here must be restrictions to protect individuals in their natural privacy." Hecht v. Pro-Football, Inc., 46 F.R.D. 605 (D.D.C. 1969). The oft-cited Hecht case is directly on point. In Hecht, the plaintiffs sought financial statements from third parties as comparatives to prove their own damages. The district court granted the motions to quash the subpoenae on the

---

[2] Ms. Gaujacq has standing to move to quash the Subpoena because she has a personal interest in the privacy and confidentiality of the Bank Records at issue. See, e.g., Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551 (D. Ga. 2001).

grounds that such private financial information oppressive and unreasonable, though such information could potentially be obtained at trial if it progressed to a point where it would become relevant. Id. at 607. In so holding, the court noted that:

> The right of privacy and the right to keep confidential one's financial affairs is well recognize. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure .... It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.

Id.

Defendants have not – and cannot – demonstrate that Plaintiff and her husband's Bank Records are relevant to any allegations, claims or defenses in this litigation. Nor is there any reasonable basis to infer that the Bank Records are likely to lead to the discovery of admissible evidence. It is indisputable that the Bank Records are irrelevant to both liability and damages alleged by Plaintiff. Any examination of the allegations in the Complaint, Exhibit 5, plainly reveals the irrelevancy of the Bank Records.

Indeed, Defendants' only explanation for why the bank account records are relevant is for (1) impeachment of Catherine Gaujacq and (2) the possibility that the Bank Records will somehow bear on Ms. Gaujacq's claim for reimbursement of unpaid business expenses. Neither of these reasons are sufficient. Impeachment, without any basis for asserting that there will be any inconsistencies between Ms. Gaujacq's testimony and the contents of her Bank Records, cannot form the basis for a subpoena for confidential financial records, and smacks of a fishing expedition. By Defendants' logic, discovery is limitless because a party may turn over every stone for impeachment evidence, regardless of relevance to the allegations, claims and defenses in the complaint. Such fishing for evidence should not be permitted.

Defendants' second stated basis for relevance, that the Bank Records will bear on Ms.
Gaujacq's claim for reimbursement of unpaid business expenses, is likewise insufficient for
several reasons. First, such information is readily available to Defendants; they can determine
from their own files whether or not they reimbursed Ms. Gaujacq for her expenses. Second, Ms.
Gaujacq has already produced financial information on the issue. Mr. and Mrs. Gaujacq have
produced their tax returns. See Philippe Gaujacq's Objections And Responses To Defendants'
Request For The Production Of Documents To Philippe Gaujacq, p. 3, Exhibit 6. In addition,
Ms. Gaujacq produced over forty pages of documents in response to Defendants' request for
documents concerning her claim for unpaid business expenses. Exhibit 7.

Because Defendants have no reasonable basis for believing the Bank Records contain
impeachment evidence, the information is readily available to Defendants in their own files, and
Ms. Gaujacq has already produced her financial information pertaining to the damages issue, the
Subpoena should be quashed.

## III.    THE SUBPOENA IS UNTIMELY

The Subpoena should be quashed for the additional reason that it is an improper attempt
to take discovery after the discovery period has ended. Fed. R. Civ. P. 16(b) makes it clear that
the scheduling order entered into this case may not be altered after the fact without a showing of
"good cause", which cannot be shown here. Further, Miss. Local R. 26.1(B)(2) states that
"[c]ounsel must initiate discovery requests and notice or subpoena depositions sufficiently in
advance of the discovery cut-off date so as to comply with this rule, and discovery requests that
seek responses or schedule depositions that would otherwise be answerable after the discovery
cut-off are not enforceable except by order of the court for good cause shown."

The discovery period here ended on May 31, 2006. The Subpoena is dated June 7, 2006
and is, therefore, invalid on its face. Defendants had every opportunity to obtain the Bank

Account information they now seek at this late hour. In December 2005, approximately six months ago, Ms. Gaujacq produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses. Exhibit 7. Defendants deposed Ms. Gaujacq for three days and still never complained that the information produced was insufficient or moved to compel. Instead, with these out of time Subpoenae, Defendants are attempting an "end around" Ms. Gaujacq's discovery responses by requesting her private financial information from the banks directly. Such manipulation of the discovery process should not be allowed.

Because Defendants do not have good cause for waiting until after the close of discovery to serve their Subpoena, the Subpoena should be quashed.

## CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion and quash the Subpoena to Trustmark Bank.

Respectfully submitted, this 13th day of June, 2006.

BY:    BALCH & BINGHAM LLP

BY:    _Tara P. Ellis_

Tara P. Ellis (101034)
BALCH & BINGHAM LLP
401 East Capitol Street
Suite 200
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2006, I physically filed the foregoing with the Clerk of

the Court and sent copies via U.S. Mail to the following:

Laura B. Hoguet, Esq.
Dorothea W. Regal, Esq.
Randi B. May, Esq.
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
lhoguet@hnrlaw.com
DRegal@hnrlaw.com
RMay@hnrlaw.com
 Counsel for Defendants
 Electricite de France, S.A. and
 Electricite de France International North America

David A. Clark, Esq.
Morgan Day Hodgson, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
dclark@steptoe.com
mhodgson@steptoe.com
 Counsel for Defendant
 Christian Nadal

TRUSTMARK Bank
Legal Department
348 East Capitol
Jackson, MS 39201

_Tara P. Ellis_
TARA P. ELLIS