IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITÉ DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO CLARIFY SCHEDULING ORDER**

Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA"), and Christian Nadal ("Nadal"), by and through undersigned counsel, submit this reply brief in support of their Motion to Clarify Scheduling Order, filed June 16, 2006 (the "Motion"), to address arguments presented in Plaintiff's Opposition to Defendants' Motion for Clarification ("Opposition").

**I.    Defendants Have Shown Good Cause for Issuing the Subpoenas to the Banks After May 31, 2006 Due to Plaintiff's and Mr. Gaujacq's Own Conduct In Violation of Rule 45 of the Federal Rules of Civil Procedure**

Plaintiff's Opposition is most remarkable for what it does not contest. First, Plaintiff does not contest that the Initial Subpoena was properly issued and served weeks before the May 31, 2006 close of discovery. Plaintiff likewise does not contest that the Initial Subpoena required the production of all of Philippe Gaujacq's bank records at the time of his deposition on June 2 and for objections, if any, to be served by May 22, 2006. *See* Defendants' Memorandum in Support of Motion To Clarify ("Moving Br.") at 2 and Ex. A (establishing issuance and service dates, content, and return at deposition).

As she must, Plaintiff also effectively concedes, through silence, that Defendants diligently sought to ensure that the subpoenaed banking documents would be timely produced -- namely, by reminding counsel for Mr. Gaujacq (who is also counsel for Plaintiff) that these documents were due and should be produced at his deposition.[1] Counsel for Mr. Gaujacq and Plaintiff made no response to this email and thus deliberately failed to advise Defendants until after the discovery deadline that, even though they had served no objections to the Initial Subpoena, Mr. Gaujacq had no intention of producing the specified documents at his deposition.

Nor does Plaintiff take issue with the fact that Philippe Gaujacq's "objections" -- served by hand on June 2 (the day of his deposition) were untimely both under Rule 45 (by 11 days) and under the October 14, 2005 scheduling order for the close of fact discovery (by two days). The untimely objections were thus ineffective under Fed. R. Civ. P. 45. *See* Moving Br. at 2 and Ex. A.

By Plaintiff's own admission, then, what the Court is presented with is Plaintiff's and Mr. Gaujacq's violation of the Federal Rules and the Court's October 14, 2005 scheduling order in the days and weeks immediately prior to the close of fact discovery. Defendants reasonably expected production of bank records, pursuant to a valid and timely subpoena as to which the time for any objections had expired. During that same period, Plaintiff and her husband stood mute, all the while intending to deprive Defendants of these documents and to wait until the morning of Philippe Gaujacq's deposition, two days *after* the close of discovery, to even disclose this unexcused failure

---

[1] *See* May 31, 2006 email from D. Regal to E. Bredehoft, attached as Ex. B to the Moving Br. ("Since you are representing Philippe Gaujacq in connection with defendants' subpoena, I am writing to you to request that you ensure that Mr. Gaujacq brings with him to his deposition of June 2 all of the documents listed in the subpoena that are within his possession, custody or control.").

to Defendants. And, equally troubling is what Plaintiff herself was doing in the way of third-party discovery over those last few days while saying nothing about the fact that her husband would refuse to produce the documents Defendants were expecting until after the May 31 deadline had passed. While the Initial Subpoena to Philippe Gaujacq for bank records went ignored, Plaintiff was busily preparing her own third party subpoenas for financial records, which were served on the last day of the discovery period with return dates well after.[2] Indeed, Exhibit A, the May 31 email from counsel for Plaintiff and her husband attaching a copy of those subpoenas, was sent shortly *after* the email from Ms. Regal on behalf of EDF and EDFINA, reaffirming Defendants' expectation that bank records would be produced to them based on discovery already issued.[3]

Had Philippe or Catherine Gaujacq made timely objections to the Initial Subpoena, or otherwise timely revealed their intention to withhold production in response to the email from Defendants' counsel, Defendants would have issued the Subsequent Subpoenas, the timeliness of which are at issue here, on or before May 31 -- precisely as Plaintiff issued hers. In light of this sequence of events, Plaintiff's assertion that "Defendants have failed to articulate a single reason why they were unable to pursue discovery of the Banks within the discovery period" (Opposition at 6) rings hollow indeed.

This case is set for trial in April 2007. Expert discovery does not close until July 31, 2006. Under such circumstances there is no prejudice to Plaintiff in allowing

---

[2] *See* Exhibit A hereto, May 31 email, sent at 1:57 p.m., by J. Bogo of the office of Charlson, Bredehoft & Cohen, counsel for Plaintiff and her husband, to counsel for all Defendants, attaching subpoenas to PNC Bank and American Express. Defendants have not interposed objections to those subpoenas, and the documents have been produced by the third party financial institutions.

[3] *Compare* Exhibit A hereto *with* May 31, 2006, 1:21 p.m., email from D. Regal to E. Bredehoft, attached as Ex. B to Moving Brief.

Defendants' subpoenas to the banks to proceed even though the May 31, 2006 discovery cut-off for fact discovery has passed, and Plaintiff has not asserted any. Defendants have shown more than good cause why the discovery should go forward in the face of Plaintiff's and her husband's conduct in response to the issuance of the Initial Subpoena.

To provide guidance to the Florida district court on the timeliness issue, Defendants ask that this Court promptly issue the Order proposed by Defendants to make clear that Defendants' discovery against the banks constitutes a legitimate effort to follow up on the improper withholding of discovery initiated well within this Court's schedule and should not be considered as untimely. Defendants note that the United States District Court for the Western District of Pennsylvania (Lancaster, J.) has already rejected the arguments of Plaintiff and her husband twice, having now denied both Plaintiff's and Mr. Gaujacq's original Motions to Quash as well as their subsequent Requests for a Stay and Reconsideration of that court's first Order.[4]

## II. Both the Initial Subpoena and Subsequent Subpoenas Seek All Bank Transaction Records And Show the Necessity of Seeking Third Party Discovery in this Case

Plaintiff argues (Opposition at 2) that because the Initial Subpoena to Philippe Gaujacq sought all "bank account records" of Mr. Gaujacq and the Subsequent Subpoenas sought "all records, including records of deposits, bank statements, and any correspondence" for Mr. Gaujacq's accounts that the two requests are somehow qualitatively different. Plaintiff says that the Initial Subpoena should be interpreted as only covering monthly bank statements. *Id.* Plaintiff has even gone so far as to argue

---

[4] *See* Ex. B hereto (attaching Judge Lancaster's June 19 and June 26 Orders).

that "bank records" as sought in the Initial Subpoena would not include, for example, deposit records. *Id*.

Plaintiff's argument that the types of records sought by the two subpoenas are different is nonsensical. There is no principled reason for Plaintiff to read the request for "bank records" in the Initial Subpoena and the articulation in the Subsequent Subpoenas as requests for different documents. Plaintiff's argument falls flat based on the terms of the Initial Subpoena itself. The Initial Subpoena specified: "You are required to furnish all documents and things responsive to this subpoena that are known or available to you." *See* Moving Br. Exhibit A at 1. The Initial Subpoena further stated: "For purposes of construing the scope of this subpoena, the terms used are to be given their most expansive and inclusive interpretation, unless otherwise specifically limited in the text itself." *Id.* at ¶ 12. And the Initial Subpoena defined "document" to include, *inter alia,* records, correspondence, and reports. *Id.* at ¶ 10.

Tellingly, the untimely objection to the request for bank records tendered by counsel for Philippe Gaujacq and Plaintiff expressed the view that such a request was "overly broad" -- without further explanation. Philippe Gaujacq's Objections and Responses to Defendants' Request for the Production of Documents to Philippe Gaujacq at p. 3 (attached as Ex. D. to Moving Br.). It is a challenge, to say the least, to square Philippe Gaujacq's position taken on June 2, 2006 that the term "bank records" sought too *broad* a collection of documents with Plaintiff's current position that the Initial Subpoena's request for documents sought a much *narrower* group of documents than those sought in the Subsequent Subpoenas. This paradoxical position is an unprincipled

and transparent attempt by Plaintiff, yet again, to thwart Defendants' legitimate discovery.

Plaintiff also misleadingly suggests (Opposition at 6) that Defendants never sought information about bank records from her directly. First, it is important to note that the Subsequent Subpoenas seek records pertaining to the bank accounts of Philippe Gaujacq, albeit including such accounts held jointly. Second, in fact Defendants did seek from Plaintiff "[a]ll documents concerning any income received by Plaintiff from any source other than Defendants since April 1, 2000."[5] Thus, records showing bank deposits from non-Defendant sources should have been produced many months ago. And, in the face of the failure of Philippe Gaujacq's refusal to adhere to Rule 45 requirements and timely respond to the Initial Subpoena issued to him, Defendants also immediately sought information from Plaintiff about the location of her banking records at her deposition (resumed only after Defendants procured a Court order requiring its continuation). *See* C. Gaujacq Dep. Tr. June 2, 2006 at 675-676, attached as Exhibit C hereto.[6]

In sum, there is no basis to credit Plaintiff's arguments that the Initial and Subsequent Subpoenas seek different documents or that Defendants did not diligently pursue such documents before the May 31, 2006 fact discovery deadline. Plaintiff's arguments in her Opposition only serve to show why there is good cause for making clear that this Court's scheduling order does not impede enforcement of the Subsequent Subpoenas.

---

[5] Defendants Electricité de France, S.A. and Electricité de France International North America's First Request for Production of Documents, served on October 28, 2005, at Request No. 132.

[6] That deposition was scheduled on June 2, 2006 by agreement among counsel.

Defendants submit that the only issue upon which this Court need rule is whether Defendants have shown good cause for the service on June 8, 2006 of the Subsequent Subpoenas. However, because Plaintiff has argued relevance, privilege, and privacy protection in her Opposition in this Court, Defendants respond to those arguments in Parts III and IV below in the event that the Court wishes to address these subjects.

### III. The Documents Sought Are Reasonably Calculated to Lead to the Discovery of Admissible Evidence

Defendants have explained that the bank account records are reasonably calculated to lead to the discovery of admissible evidence in multiple ways: (a) because they pertain to Plaintiff's claims and Defendants' defenses regarding damages and (b) because they will reasonably lead to evidence contradictory to that offered by Plaintiff.

As described on pp. 6-8 of Defendants' Moving Brief, Plaintiff herself has put at issue the question of whether her husband, Philippe Gaujacq, obtained employment in the United States during the time she was assigned to her term in Washington, D.C. She and her huband have testified that he has not worked, but his testimony suggests otherwise. *Id.* Defendants expect that Mr. Gaujacq's bank records may reveal cash income from the work he performed, clearly relevant to Plaintiff's claims and representations, that will bear on the credibility both of Plaintiff and her husband.

The banking records sought are also relevant to Plaintiff's stated damage claim for, among other things, loss of income of her husband that he allegedly could have had if he had returned to France. *See* Defendants' Moving Brief at 8 and citations therein.[7]

---

[7] In her Opposition (at 3-4) Plaintiff suggests that she may be planning on revising her claim for damages to not seek such damages. Plaintiff's eleventh-hour attempt to recast her claim to avoid Defendants' relevance argument should be seen for what it is – a frantic attempt to thwart legitimate discovery that she knows will be damaging to her claims and prior sworn testimony.

And Plaintiff's Initial Disclosure also establishes the relevance of the joint banking records of her and Mr. Gaujacq as a potential source of evidence of the couple's living expenses and payments for housing and other utilities, all of which Plaintiff claims as an aspect of her damages in this case. *See id.* at 8 and citations to Initial Disclosure therein. Plaintiff's payments for utilities and housing expenses are also relevant to Defendants' damage analysis regarding losses associated with those expenses at her home in Virginia and, now, in Mississippi.

The relevance of the bank records at issue as a potential source of evidence (1) on Plaintiff's husband's purported loss of income in the United States, (2) on costs of housing and utility expenses, as claimed by Plaintiff as damages and as necessary for Defendants' damages analyses, and (3) on the credibility of Plaintiff and her husband may not reasonably be disputed by Plaintiff.

### IV. Production of Bank Records is Permissible Discovery Not Protected by Claims of Privilege or Privacy

Plaintiff's last series of arguments (Opposition at 9-10) purport to state concerns that the Subsequent Subpoenas are "oppressive and seek confidential financial information," that they are an "invasion of Mr. Gaujacq's privacy," and, perhaps most incredibly, that they seek documents that are privileged and thereby protected from production.

Defendants' first response is that Philippe Gaujacq himself *raised none of these considerations* when he failed to produce the documents on June 2, 2006. His out-of-time objection merely cited relevance and overbreadth. *See* Ex. D. to Moving Br. Notably, Plaintiff did not even join in the objections made by her husband or state her own objections.

Moving to Plaintiff's new concern that the Subsequent Subpoenas are "oppressive," Defendants respectfully suggest that any such objection, even if timely made, would be one to be raised by the responding financial institution having the obligation to produce the records. None of the financial institutions subject to the Subsequent Subpoenas has done so. And, as for any confidentiality and privacy considerations of the financial information being produced, federal law holds otherwise. *United States v. Miller*, 425 U.S. 435, 442, (1975) (checks, deposit slips, bank financial statements are not confidential communications but instruments of commercial transactions; no reasonable expectation of privacy attaches to them); *accord, Clayton Brokerage Co., Inc. v. Clement,* 87 F.R.D. 569, 571 (D. Md. 1980). Moreover, the Protective Order already in place by order of this Court of December 14, 2005 provides ample protection.[8]

Plaintiff's newly-minted privilege claims (Opposition at 9-10) are perhaps the most extraordinary. Plaintiff asserts both attorney-client privilege and marital privilege in a misguided attempt to suggest some sort of prejudice arising from issuance of the Subsequent Subpoenas. *Id.*

If there were a privilege issue here, it was waived weeks ago when neither Philippe Gaujacq nor Plaintiff complied with the requirements of Rule 45(d)(2), Fed. R. Civ. P.. That rule requires that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged, the claim shall be made expressly and shall be supported by a

---

[8] Plaintiff's argument (Opposition at 10) that the Protective Order will not prevent Defendants' counsel and experts from seeing her financial information misses the point. Plaintiff elected to bring this action, and elected to allege damage claims that make the information sought pertinent. Just like tax records which are routinely produced in cases of this kind, there is inevitably some intrusion into other financial matters in cases such as this one. The Protective Order, fully agreed-to by Plaintiff, provides the requisite protection for Plaintiff as a litigant in this Court.

description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claims." Philippe Gaujacq, in his untimely objections to the Initial Subpoena, *made no privilege objection*, either on attorney-client or marital privilege grounds, and he did not provide a privilege log as required by the Rules.[9]  Nor did Plaintiff object to the Initial Subpoena on either ground. Similarly, *no privilege claims have been made in the form of Objections to the Subsequent Subpoenas, in the form of a privilege log responding to those Subpoenas, or in Plaintiff's and Mr. Gaujacq's Motions to Quash or opening supporting memorandums filed in Mississippi, Florida, or Pennsylvania*.  Any privilege objections, therefore, are waived.

There is good reason why no claim of privilege was asserted in response to either the Initial or Subsequent Subpoenas -- because no such claim would be valid. Documentation of payment of an attorney's bill, as evidenced by a check or bank record, contains neither the confidential advice of counsel nor facts communicated in confidence to counsel from the client seeking legal advice. *See United States v. Union First Nat'l Bank*, 1980 U.S. Dist. LEXIS 11218 (D.D.C. 1980) (attorney-client privilege is not applicable to bank records merely because they derive from transactions involving an attorney's trust account); *Najjar v. United States Dep't of Treasury,* 2003 U.S. Dist. LEXIS 9070 (D. Ind. 2003) (no attorney client privilege in bank records).

---

[9] The only example of a document Plaintiff even claims to be protected by attorney-client privilege is a check showing payment to legal counsel.  Mr. Gaujacq would have had such a document in his possession, custody, or control, either on a bank statement, as a cancelled check, or as a record of an electronic banking transaction, yet no claim of privilege was asserted in the objection proffered to the Initial Subpoena.  *See* Ex. D to Moving Br.

Plaintiff next asserts, without support or explanation, that "[d]ocuments responsive to the Subpoenae could also be protected by the marital privilege." Opposition at 10. The brevity and lack of specificity with which this claim of privilege is made underscore its weakness. There can be no claim of marital privilege in the banking documents sought. Under federal common law, which governs any claim of marital privilege in this case, *see Engelmann v. National Broadcasting Co,* 1995 WL 214500 (SDNY 1995), the privilege arises only for (1) a communication, (2) made during a valid marriage, (3) in confidence. *See SEC v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997). Generally "communications" extends only to "utterances or expressions intended by one spouse to convey a message to the other …." *Engelmann,* 1995 WL 214500 at *3; *United States v. Lustig*, 555 F.2d 737, 748 (9th Cir. 1977). "In confidence" requires that the communication take place between the husband and wife without others present; voluntary disclosure to a third person waives the privilege. *See Lien v. Wilson & McIlvaine*, 1988 WL 87067, *1, *2 (N.D. Ill. 1988). The Bank records neither constitute communications made between Mr. and Mrs. Gaujacq nor communications made in confidence without others present.

In sum, any claims of privilege have been waived, and, in any event, are meritless.

**Conclusion**

The issue before the Court is whether the Subsequent Subpoenas should be considered timely under the letter and spirit of the Court's scheduling order. Defendants respectfully submit that they have demonstrated good cause, based on the undisputed facts regarding Plaintiff's conduct over the waning days of the fact discovery period, to justify an affirmative answer to that question. The Federal Rules of Civil Procedure and this Court's scheduling order must be read as importing a requirement of good faith in the conduct of discovery. Under that standard, this Court should reject Plaintiff's tactics, making it clear to Plaintiff and to the sister courts who have not already upheld the Subsequent Subpoenas, that this discovery is authorized by this Court.

Dated: June 27, 2006                    Respectfully submitted,

_____/s/_____
Dorothea Regal
D.C. Bar No. NY0064
Randi B. Seltzer-May
D.C. Bar No. NY0063
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY  10016
(212)689-8808
*Counsel for Defendants Electricité de France, S.A. and Electricité de France International North America, Inc.*

_____/s/_____
Morgan D. Hodgson
D.C. Bar No. 186528
David A. Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 429-3000
*Counsel for Defendant Christian Nadal*