IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al | ) ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff") submits this memorandum in Opposition to Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal's (collectively "Defendants") Motion to Compel Production of Documents to Plaintiff, dated June 16, 2006 (the "Motion")[1]

### PRELIMINARY STATEMENT

Defendants' motion seeks four categories of documents: (1) documents related to Plaintiff's residence in France, including deeds, mortgages, leases and payments; (2) document related storage of furniture in France; (3) calendars showing travel dates or meetings for the years 2004-05, and (4) Plaintiff's monthly credit card statements for the years 2004-05

As demonstrated below, Defendants' motion to compel production of documents responsive to these requests should be denied, because each of the requests are either not reasonably calculated to lead to the discovery of admissible evidence, overly broad and unduly burdensome, or because all documents responsive to the requests have already been produced.

---

[1] Citations to Defendants Memorandum in Support of their Motion are "Def. Mem. at __".

## ARGUMENT

### A. DOCUMENTS RELATED TO PLAINTIFF'S RESIDENCE IN FRANCE ARE IRRELEVANT BECAUSE PLAINTIFF DOES NOT SEEK ACTUAL HOUSING COSTS

Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." While a determination of whether any given request is relevant has been broadly construed, "relevancy does not encompass discovery of information with 'no conceivable bearing on the case.'" Burlington Ins. Co. v. Okie Dokie, Inc., 368 F. Supp. 2d 83 (D.D.C. 2005) (denying defendant's motion to compel documents because they were irrelevant to the plaintiff's claims and "inapposite" to the defendant's possible defenses").

Defendants' request for production No. 7 ("Request No. 7") seeks "all documents concerning any residence owned or otherwise maintained by you in France over the period of January 1, 200 to date, including but not limited to deeds, mortgages, leases, and payments." Def. Mem., at 2. Plaintiff timely objected on the grounds that the request is "overly broad, unduly burdensome, and that the information sought is neither relevant to any issue in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence." Id. Plaintiff maintains her objection.

Defendants do not argue, and thereby admit, that Plaintiff does not seek damages relating to any <u>actual</u> expenses incurred by her with respect to maintaining a residence in France, including with respect to any deed, or payment of any mortgage, lease or other payments. Therefore, Defendants' Request No. 7 seeking documents relating to such actual expenses is overbroad and has "no conceivable bearing" on this case.

Defendants try to confuse the issue by stating in their memorandum that "her claim includes compensation based on the payment by EDF of housing expenses for expatriates

2

serving abroad." Def. Mem., at 3. This statement is blatantly misleading. As Defendants are well aware, Plaintiff's damages relate to a contractual stipend, which is an amount set forth in Article 7 to Ms. Gaujacq's expatriation contract ("Expatriation Contract"), and a comparison between this amount and the discriminatorily higher amount granted to defendant Mr. Nadal. See Exhibit D to Motion, at 13.

This contractual stipend, set forth in the Expatriation Contract in clauses under Article 7 entitled "Expatriate indemnity" and "Cost of living differential indemnity," is an amount based on a fixed-calculation related to several factors, <u>none of which have to do with Plaintiff's actual expenses</u>. The "Expatriate indemnity" calculation includes the salary level of the employee (here Ms. Gaujacq), a salary increase of 25% due to the housing increase applicable to Paris, and a 15% increase in salary for "expatriation and hardship" due to living in Washington. The "Cost of living differential indemnity" is also based on a set-calculation based on the cost of living index determined by a human resources company hired by EDF, and is not related to Ms. Gaujacq's actual expenses.

Plaintiff has consistently based her damages calculation on the contractual stipend set forth in her Expatriation Contract, and not on any calculation of her actual housing expenses in France. This is not denied by Defendants. In fact, Plaintiff would not be entitled to claim damages from her actual expenses, because there are specific amounts set in the contract.

Defendants mischaracterize the contractual stipend by calling it a "loss of housing expense benefit." Def. Mem., at 3. To the contrary, the Expatriation Contract makes it clear that the stipend is related to all "expatriation and hardship" caused by the relocation from Paris to Washington, and is not connected in any way to compensation just for housing expenses.

3

Because Plaintiff has not included any expenses relating to her maintenance of a residence in France as an element of her damages, Defendants have been forced to concoct a new theory for why their document request is proper. This new theory is that they "may" wish to consider this information in some sort of "rebuttal position on damages." Def. Mem., at 3. Defendants maintain that it is this theoretical "rebuttal position on damages" that makes their document request proper. Defendants have never disclosed any such a "rebuttal position on damages" to Plaintiff, and certainly not one that would make any request seeking documents relating to her residence in France, including her "deeds, mortgages, leases, and payments" relevant to this case and not overly broad.

Request No. 7 is also overly broad in scope of time, seeking documents from January 1, 2000 to present. However, Ms. Gaujacq's employment with Electricite De France did not even commence until August 1, 2000. See Exhibit D to Motion.

Defendants cannot articulate a single plausible reason why their Request No. 7 is reasonably calculated to lead to the discovery of admissible evidence, and is not overly broad and merely designed to harass, annoy and further invade Plaintiff's privacy. Therefore, Defendants' Motion with respect to this Request should be denied.

## II. PLAINTIFF HAS ALREADY PRODUCED ALL DOCUMENTS RELATED TO FURNITURE STORAGE IN FRANCE IN RESPONSE TO REQUEST NO. 16

Defendants also seek to compel production of documents in response to document request No. 16 ("Request No. 16"), which requests "all documents relating to the furniture you had in France, including but not limited to contracts or bills, which you reference at page 452 of your deposition." Def. Mem., at 2. Plaintiff timely objected to this request as well, on grounds of over-breadth, burden, relevance and privilege. Id.

4

Defendants' Request No. 16 is moot because, notwithstanding her objections, Plaintiff has already produced all responsive documents. Attachment 1. The portion of Defendants' Motion with respect to this Request should, therefore, be denied.

### III. PLAINTIFF HAS ALREADY PRODUCED ALL DOCUMENTS RELATED TO CALENDARS AND DOCUMENTS SHOWING TRAVEL DATES IN RESPONSE TO REQUEST NO. 9

Defendants seek to compel production of documents in response to document request No. 16 ("Request No. 9"), which requests "all calendars or other documents showing travel dates and/or meetings for 2004-2005." Def. Mem., at 4. Plaintiff stated objections, but has provided all such information notwithstanding her objections, including a document identified in her Response as a "documents Bates stamp nos. 2509-2528." Id.

Defendants' Motion with respect to Request No. 9 is moot, as Plaintiff has already produced all documents in response to Request No. 9. Plaintiff's travel records, as well as her business calendars, were all located at the offices of EDFINA. The Plaintiff was on a "vacation leave" at the time of her termination, and therefore never had the opportunity to go back to the office and obtain any of these documents, or copies of these documents. They remain solely in the possession of the Defendants. Indeed, Plaintiff went over and beyond the duties imposed on her for discovery responses. Even though the request came in the form of a Request for Production of Documents, and therefore requires no duty to create any documents, only provide those in your possession, Ms. Gaujacq took it upon herself to create for Defendants a document of her timeline of events, the document identified in her Response as Bates stamp nos. 2509-2528, which is attached to Defendants' Motion as Exhibit F.

In addition to Exhibit F, Plaintiff produced several documents containing dates and times, including several EEOC complaints (collectively, attachment 2) and an additional timeline

5

prepared prior to Exhibit F in connection with her EEOC complaints (attachment 3, with Ms. Gaujacq's Deposition Transcript pp. 300-09)

Defendants pick and choose deposition transcript cites, and conveniently omit Ms. Gaujacq's testimony regarding the EEOC complaints and timeline. Moreover, the transcript pages that Defendants do cite clearly indicate that Ms. Gaujacq has produced all documents in response to Request No. 9. For example, on page 640 of her transcript reads as follows:

> Q: I'm asking whether you have a more detailed chronology of events for the January 2004 to December 2005 time period.
>
> A: This is the best of my recollection.
>
> Q: I am not asking whether this is the best. I'm asking whether you have another chronology of events for this time period that has not been produced.
>
> A: No.

Motion, at Exhibit G, p. 640.

Because Plaintiff has already produced all documents in response to Request No. 9, Defendants' Motion with respect to that Request should be denied, as Moot.

### IV. REQUEST FOR ALL CREDIT CARD STATEMENTS FOR A TWO YEAR PERIOD IS OVERBROAD AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Defendants' Request for Production No. 10 ("Request No. 10") seeks "all credit card statements for any account in Plaintiff's name or on which Plaintiff was authorized to incur charges for each month in the years 2004 and 2005." Def. Mem., at 5. Plaintiff timely objected to this Request on the ground that it is overly broad, unduly burdensome, and not relevant. Id. Plaintiff stands by her objections.

Despite Plaintiff's objections, Defendants claim that Request No. 10 is relevant because it "may lead to admissible evidence" regarding (1) "evidence regarding disputes with respect to Plaintiff's location during the period that she worked for Defendants;" (2) "damages in terms of

6

expenses incurred;" and (3) "to defend against Plaintiff's claims regarding cancellation of a credit card by Defendant;" Def. Mem., at p.6. None of these reasons are grounds for forcing Ms. Gaujacq to divulge her entire credit card history over the course of two years related to any and all matters whatsoever.

### A. Plaintiff's Location Is Not In Dispute

Defendants argue in their Motion that Ms. Gaujacq's credit card statements may be relevant to "disputes with respect to Plaintiff's location during the period that she worked for Defendants." Def. Mem., at 6. Defendant has not cited to any particular dispute with respect to Ms. Gaujacq's location during any given period, nor is Ms. Gaujacq aware of any such dispute. Therefore, this "dispute" cannot form the basis for a production of Ms. Gaujacq's credit card statements.

To the extent that a dispute with respect to Ms. Gaujacq's location during a given day is somehow established, is found to be material to the case, and the Court is persuaded that her credit card statements are relevant to Ms. Gaujacq's location on that day, then Ms. Gaujacq respectfully requests that Request No. 10 be limited to that day or reasonably period surrounding that day, and be limited to entries showing Ms. Gaujacq's location on that day.[2]

### B. Documents Relating To Plaintiff's Expenses Have Been Produced

Defendants argue in their Motion that Ms. Gaujacq's credit card statements may be relevant to her "damages in terms of expenses incurred," but fail to specify what those expenses are. Def. Mem., at 6. Because Defendant cannot recite any of Ms. Gaujacq's expenses with

---

[2] Recall Defendants have all of Ms. Gaujacq's expense and travel records while she was still employed with EDF; in fact, an audit was conducted and concluded in July, 2004, which found all of Ms. Gaujacq's travel expenses to be appropriate. Notwithstanding, Defendants have not produced these underlying documents to the Plaintiff, only the Audit reflecting the review, which is in French.

7

which they take issue, it is impossible to respond to this argument. Indeed, Ms. Gaujacq has already produced over forty pages of documents in response to a request for all documents concerning her claim for un-reimbursed business expenses related to travel, insurance premiums and utility expenses. Attachment 4.

To the extent any of Ms. Gaujacq's expenses are deemed relevant by the Court and legitimately at issue with the Defendants, Plaintiff respectfully requests that Request No. 10 be limited in time to the day or reasonable period surrounding the day on which the expense was incurred, and be limited to the entries pertaining to that particular expense.

### C. Documents Relating To Defendants' Cancellation Of Her Corporate Credit Card Are Entirely Within Defendants' Control

Defendants argue in their Motion that Ms. Gaujacq's credit card statements may be relevant "to defend against Plaintiff's claims regarding cancellation of a credit card by Defendant." Def. Mem., at 6.

To the extent Defendants refer to the cancellation by Mr. Nadal of Ms. Gaujacq's corporate credit card on or about August 9, 2004, identified in the Complaint in ¶212 and in deposition transcript of Ms. Gaujacq, pp. 506-08 (attachment 5), such documentation is wholly and necessarily within the control of Defendants. Ms. Gaujacq's personal credit card statements simply have no conceivable bearing on the cancellation of her corporate credit card. To the extent any such link can be established, however implausible, Plaintiff respectfully requests that Request No. 10 be limited to August 9, 2004, the date the cancellation was discovered by Ms. Gaujacq while attending a conference on behalf of EDFINA/EDF.

## CONCLUSION

For the reasons set forth above, plaintiff Catherine Gaujacq respectfully requests that the Court deny Defendants' Motion to Compel in its entirety, or in the alternative, narrow the document requests as suggested herein.

July 14, 2006                                     Respectfully Submitted,

*/s/*
Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq