UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHERINE GAUJACQ )
)
Plaintiff, )
)
)
v. )    No. 1:05CV0969 (JGP)
)
ELECTRICITE DE FRANCE )
INTERNATIONAL NORTH AMERICA, )
INC., et al. )
)
Defendants. )
)

**OPPOSITION OF DEFENDANTS ELECTRICITE DE FRANCE, S.A.
AND ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC.
TO PLAINTIFF'S MOTION TO COMPEL**

**Dorothea W. Regal**
**Randi Seltzer May**

**Hoguet Newman & Regal**
**10 East 40th Street**
**New York, New York 10016**
**(212) 689-8808**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS RELEVANT TO THIS MOTION......................................................5

ARGUMENT

I.      THE INSTANT MOTION SHOULD BE DENIED
        BECAUSE PLAINTIFF HAS HAD AMPLE
        OPPORTUNITY TO DISCOVER THE FACTS SOUGHT ..................................6

II.     EDF'S and EDFINA'S RESPONSES TO PLAINTIFF'S
        REQUESTS FOR THE PRODUCTION OF DOCUMENTS ARE PROPER.......6

        A.      Mr. Nadal's E-Mails Concerning Plaintiff and
                Concerning this Litigation Have Been Produced.........................................7

        B.      Plaintiff's Request for Audits of Mr. Nadal's Prior
                Divisions 1992-1997 Is Vexatious and Harassing.......................................8

        C.      E-Mails of Other EDF and EDFINA Employees
                Concerning Plaintiff and this Litigation Have Been Produced..................8

        D.      E-Mails Sent or Received By Ms. Gaujacq Have Been
                Produced and are Otherwise in Plaintiff's Possession................................9

        E.      The Court Should Not Compel Disclosure of Information related
                to the Employment of Other French Employees of EDF in France............11

                1.      Complaints of Other EDF or EDFINA Employees.........................12

                2.      Personnel Information About Other EDF and
                        EDFINA Employees.......................................................................16

CONCLUSION.................................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Broderick v. Shad, 117 F.R.D. 306 (D.D.C. 1987)............................................................14

Childers v. Slater, No. CIV.A.97-853RMU/JMF, 1998 WL 429849, at *4 (D.D.C.
    May 15, 1998) ......................................................................................................14, 15

Dougherty v. Barry, 604 F. Supp. 1424 (D.D.C. 1985)....................................................14

Glenn v. Williams, 209 F.R.D. 279 (D.D.C. 2002) ..........................................................14

Green v. Kinney Shoe Corp., 704 F. Supp. 259 (D.D.C. 1988) .......................................13

Hairston v. Washington Metropolitan Area Transit Authority, No. Civ. 93-2127,
    1997 WL. 411946 (D.D.C. April 10, 1997)...............................................................14

Hardrick v. Legal Services Corp., 96 F.R.D. 617 (D.D.C. 1983)......................................14

Harris v. Forklift System, Inc., 510 U.S. 17 (1993)...........................................................14

Johnson v. Washington Times Corp., 208 F.R.D. 16 (D.D.C. 2002) .................................15

Jones v. Trailways Corp., 477 F. Supp. 642 (D.D.C. 1979) ..............................................20

Marshall v. District of Columbia Water & Sewage Authority, 214 F.R.D. 23
    (D.D.C. 2003) .............................................................................................................14

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...............................................14

Miller v. Poretsky, 595 F.2d 780 (D.D.C. 1978) ...............................................................14

Mitchell v. National R.R. Passenger Corp., 208 F.R.D. 455 (D.D.C. 2002).....................14

Morris v. Washington Metropolitan Area Transit Authority, 702 F.2d 1037 (D.C.
    Cir. 1983)....................................................................................................................14

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)......................................14

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998) ..................................14

Pleasants v. Allbaugh, 208 F.R.D. 7 (D.D.C. 2002)..........................................................14

Prouty v. National R.R. Passenger Corp., 99 F.R.D. 551 (D.D.C. 1983)..........................14

Rauh v. Coyne, 744 F. Supp. 1186 (D.D.C. 1990) ............................................................14

Robinson v. Runyon, 149 F.3d 507 (6th Cir. 1998) ...........................................................14

Turner v. District of Columbia, 382 F. Supp. 2d 157 (D.D.C. 2005)................................20

Watson v. CSA, Ltd., 376 F. Supp. 2d 588 (D. Md. 2005) .................................................13

White v. U.S. Catholic Conference, No. CIV.A.97-1253, 1998 WL. 429842
    (D.D.C. May 22, 1998) ................................................................................................15

## STATUTES

42 U.S.C. § 2000e-1(c)(2).....................................................................................................13

29 C.F.R. § 1620.13(b)(4)......................................................................................................20

Fed. R. Civ. P. 26(b)(2)...........................................................................................................6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION OF DEFENDANTS ELECTRICITE DE FRANCE, S.A.
AND ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC.
TO PLAINTIFF'S MOTION TO COMPEL**

Defendants Electricité de France, S.A. ("EDF") and Electricité de France International North America, Inc. ("EDFINA") submit this memorandum in opposition to Plaintiff's Motion to Compel Discovery Responses from Defendants EDFINA and EDF, dated July 28, 2006 ("Plaintiff's Motion to Compel") (Dkt. #86 ).

**PRELIMINARY STATEMENT**

Plaintiff's sweeping new Motion to Compel is untimely, frivolous and abusive. Defendants have already produced more than 13,000 documents to Plaintiff in this case, and the cut-off for fact discovery was May 31. Many of the documents Plaintiff seeks in this Motion have already been produced; others were the subject of Plaintiff's prior Motions to Compel that the Court deemed withdrawn by order dated March 10, 2006, and none would contribute to Plaintiff's case in any material or new way. Plaintiff's Motion is make-work for Defendants and unnecessary work for the Court, and it should be summarily denied.

*Plaintiff's Motion Is Untimely*

By order of this Court, May 31 was the cut-off date for fact discovery, yet, counsel for Plaintiff did not complain about Defendants' responses until June 15. (See letter of Christian C. Wickwire, dated June 15, 2006, Att. 1 hereto). A meet and confer was held on June 20 after counsel for Plaintiff unilaterally cancelled a scheduled meet and confer at the last minute. (See e-mail of Christian C. Wickwire, dated June 19, 2006, Att. 2 hereto). Plaintiff then sat idly, waiting until July 28 to file and serve the instant Motion. Nearly half of Plaintiff's supporting memorandum (14 pages) is devoted to a self-serving "Statement of Facts," not relevant to the instant Motion but calculated, apparently, to color the Court's perception of the case before Defendants' summary judgment motions are filed on September 15.

*Plaintiff's Motion Is Abusive*

Plaintiff's discovery demands have far exceeded what was reasonable or necessary for the individual Title VII case that, at bottom, this case is. Not only have Defendants EDF and EDFINA previously responded to five separate requests for production of documents (four each to EDF and EDFINA and one addressed to all Defendants), totaling 371 requests, but Defendants also responded to extensive Requests for Admissions and Interrogatories.[1] EDF and EDFINA have duly responded as follows to all of the following demands:

| | | |
|---|---|---|
| First Document Request to EDFINA | (72 requests) | EDFINA response 12/12/05 |
| First Document Request to EDF | (72 requests) | EDF response 1/3/06 |
| Second Document Request to EDFINA | (19 requests) | EDFINA response 1/3/06 |
| Second Document Request to EDF | (19 requests) | EDF response 1/3/06 |
| Third Document Request to EDF | (16 requests) | EDF response 2/27/06 |
| Third Document Request to EDFINA | (16 requests) | EDFINA response 2/27/06 |
| Fourth Document Request to EDF | (39 requests) | EDF response 5/11/2006 |

---

[1]     Plaintiff's abuse of the discovery process is further underscored by her handling of expert discovery; Plaintiff has served two supplemental expert discovery reports although neither was based on new information, in each case after Defendants' rebuttal reports had been submitted, thereby imposing on Defendants the additional and unnecessary burden of responding to the supplemental reports.

| | | |
|---|---|---|
| Fourth Document Request to EDFINA | (39 requests) | EDFINA response 5/11/2006 |
| Fifth Document Request to Defendants | (79 requests) | Joint response 6/05/2006 |

| | | |
|---|---|---|
| Requests to Admit to EDFINA | (253 requests) | EDFINA response 12/12/05 |
| Requests to Admit to EDF[2] | (253 requests) | EDF response 1/3/06 |
| Interrogatories to EDFINA | (21 requests) | EDFINA response 12/12/05 |
| Interrogatories to EDF | (19 requests) | EDF response 1/3/06 |

Plaintiff has also served five separate document requests on Defendant Nadal (four to

Nadal alone and one addressed to all Defendants jointly), totaling 286 requests, as well as extensive

Requests for Admissions and Interrogatories, each of which was timely and duly responded to by

Defendant Nadal as follows:

| | | |
|---|---|---|
| First Document Request to Nadal | (51 requests) | Nadal response 12/12/05 |
| Second Document Request to Nadal | (7 requests) | Nadal response 1/03/06 |
| Third Document Request to Nadal | (10 requests) | Nadal response 2/27/06 |
| Fourth Document Request to Nadal | (133 requests) | Nadal response 2/27/06 |
| Fifth Document Request to Defendants | (79 requests) | Joint response 6/5/06 |
| | | |
| Requests to Admit to Nadal | (107 requests) | Nadal response 12/12/05 |
| Interrogatories to Nadal | (20 requests) | Nadal response 12/12/05 |

In response, Defendants have produced, collectively, more than 13,000 pages of

documents. Specifically, Defendant EDF has produced 4840 pages, EDFINA has produced 8502

pages and Mr. Nadal has produced 259 pages. Additionally, Defendants have produced, at their

own expense, and at Plaintiff's insistence, a fully operational hard drive containing a complete

mirror-image of the hard drive of the laptop computer used by Plaintiff, which Plaintiff could

hook up and manipulate herself.

Further, many of the documents requested in Plaintiff's Fourth Requests for the

Production of Documents from EDF and EDFINA (dated April 27, 2004) and Fifth Request for

---

[2] Plaintiff's Requests for Admissions were wholly unnecessary since they were served at the outset of discovery before any testimony and did nothing but restate, nearly word for word, the allegations of the Complaint, which Defendants had just admitted or denied in their Answers.

the Production of Documents from Defendants (dated May 4, 2004) were virtually identical to, and duplicative of, Plaintiff's previous demands. Many of the requests which form the subject of Plaintiff's instant Motion to Compel were the subject of Plaintiff's earlier Motion to Compel EDFINA, served and filed on January 10, 2006, and Plaintiff's previous Motion to Compel EDF, served and filed on February 16, 2006, both of which this Court deemed to be withdrawn by its order dated March 10, 2006. Plaintiff never moved for reconsideration notwithstanding her counsel's concession, following discussion with the Court, that a motion to reconsider was necessary in order to preserve the issues raised. (See e-mail of Elaine Bredehoft, dated March 14, 2006, Att. 3 hereto).

### *Plaintiff's Motion Is Frivolous*

The reality is that Plaintiff has received all the information she needs to present her claims, and Plaintiff essentially acknowledges this reality when she repeatedly argues in support of the instant Motion that the requested documents may "further support" her claims. (Pl. Mem. at 2, 3 and 4). As set forth below, Defendants have in fact already produced many of the documents sought in this Motion, and Plaintiff cannot show any legitimate need for the additional documents demanded here, such as facially overbroad demands for all e-mails of EDF employees having to do with the company's business generally but nothing to do with Plaintiff, or personnel information about the tens of thousands of EDF employees who live and work in France and, again, have nothing to do with Plaintiff or her claims. Consistent with the pattern of Plaintiff's discovery in this case to date, her requests impose a burden on the Defendants that is far out of proportion to any conceivable value that the documents could have to the Plaintiff.

We turn to a short statement of facts relevant to this Motion, and then to the individual document requests that are in dispute.

4

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

The employer in this case is EDF, a French corporation headquartered in Paris, France. Defendant EDFINA is a subsidiary of EDF and represents EDF in the United States. Plaintiff, Catherine Gaujacq, a French citizen, was a long-time employee of EDF in France who was assigned to a temporary post in the United States, for a fixed term, as "Directeur" (Director) USA/Canada for EDF's Americas Branch. Among her duties in that post she served as President of EDFINA. Defendant Christian Nadal, a French citizen, is also an employee of EDF. He was appointed as EDF's "Délégué Général" (Delegate General) to North America. As one aspect of his duties as Delegate General, he succeeded Ms. Gaujacq as President of EDFINA. Upon the expiration of her assignment in the United States, Ms. Gaujacq refused to return to France to take up her next assigned post at EDF, whereupon EDF terminated her employment, effective January 7, 2005. Plaintiff instituted this action against EDF, EDFINA and Mr. Nadal asserting, inter alia, claims under Title VII and DCHRA alleging sexual harassment by Mr. Nadal, sex discrimination and retaliation, and disparate pay between herself and Mr. Nadal under the Equal Pay Act ("EPA").

All decisions as to the terms and conditions of Ms. Gaujacq's employment throughout her years of employment with EDF, including her termination, were made by EDF, not EDFINA.

EDFINA is a separate company from EDF, incorporated and located in Washington, D.C., and has fewer than 15 employees. EDF, headquartered in Paris, France, has over 160,000 employees. At the time of the events alleged in the Complaint, EDF was 100% owned by the Republic of France; following a public offering of equity interest in 2005, EDF is now partly publicly held but still majority owned by the Republic of France.

**ARGUMENT**

## I.     THE INSTANT MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS HAD AMPLE OPPORTUNITY TO DISCOVER THE FACTS SOUGHT

Plaintiff has had ample opportunity throughout the months and months of fact discovery in this case to obtain <u>all</u> the information sought in this Motion.  Plaintiff was free to elicit the information now sought in the instant Motion in the depositions she took of EDF and EDFINA witnesses, or other witnesses she may have deposed.  She chose not to.  Plaintiff should not be permitted a second bite of the apple now, months after the cut-off date for fact discovery. The Federal Rules of Civil Procedure specifically provide that where, as here, Plaintiff has had ample opportunity to obtain the information sought, the court may limit the number of document requests.  Fed. R. Civ. P. 26(b)(2).  This Court should deny Plaintiff's Motion in its entirety on the ground that she has already had more than ample opportunity to obtain all the information pertinent to her claims.

## II.    EDF'S AND EDFINA'S RESPONSES TO PLAINTIFF'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS ARE PROPER

The responses of EDF and EDFINA to Plaintiff's requests are proper.  Plaintiff's requests for e-mails and personnel information of other EDF employees in France, which have nothing whatsoever to do with her or her case are not likely to lead to the discovery of admissible evidence.  Defendants have produced the information that relates to Plaintiff and her allegations. Furthermore, the requests by Plaintiff about other EDF employees are harassing and invasive and would impose upon Defendants an undue burden.  Plaintiff has not demonstrated a single legitimate reason for placing such an undue burden on Defendants, nor for invading the privacy of its French workforce.

**A.    Mr. Nadal's E-Mails Concerning Plaintiff and Concerning this Litigation
Have Been Produced**

Request No. 31 of the 5th Request for Production of Documents ("RFP").    This

request seeks copies of all e-mails sent or received by Mr. Nadal during the period January 2004

through September 2004.    Defendants EDF and EDFINA have already produced all of Mr.

Nadal's non-privileged e-mails concerning matters alleged in the Complaint, including all such

e-mails to and from Plaintiff from August 2000 to the present, as previously requested in

Plaintiff's First Request for Documents from EDFINA and Plaintiff's First Request for

Documents from EDF.    What Plaintiff seeks to compel, then, is the complete universe of Mr.

Nadal's e-mails, i.e., every e-mail Mr. Nadal may have received from or sent to anyone else on

any subject, whether business or personal.

On its face, the scope of such a request far exceeds any legitimate concern of

Plaintiff or this litigation.    Plaintiff claims that Mr. Nadal's e-mails generally pertaining to EDF

business (themselves but a subset of what she demands) will reflect on his performance,

responsibilities and evaluations.    However, Mr. Nadal's personnel file has already been

produced, and the suggestion that Plaintiff can present evidence regarding Mr. Nadal's job

performance by randomly surveying his general business correspondence does not pass the

"straight-face test."    Moreover, Mr. Nadal's job performance, including the aspect of his job in

which he serves as President of EDFINA, is not at issue in this case. Plaintiff's request is

cumulative, unduly burdensome and harassing and should be denied.

7

**B.      Plaintiff's Request for Audits of Mr. Nadal's Prior Divisions 1992-1997 Is Vexatious and Harassing**

Request Nos. 27- 29 of the 4th RFP.  These requests seek documents concerning internal audits of the divisions of EDF for which Mr. Nadal was responsible in 1992, 1993, 1994 and 1997.  Here again, Plaintiff's purported reason for seeking documents about audits is that they may reflect on the responsibilities, performance, qualifications and evaluations of Mr. Nadal.    Here again, however, these are not remotely at issue in this case.    The prior audit experience from different business units of the person who succeeded Plaintiff in serving as EDFINA President is irrelevant.  Plaintiff already has whatever information is available to fuel her campaign to impugn Mr. Nadal's professional abilities (including his resume, personnel file and extensive deposition testimony).  Moreover, EDF has already produced audit reports of Mr. Nadal's prior divisions for the periods 1999-2001.    Audits from nine, twelve, thirteen and fourteen years ago have no conceivable relevance to any issue in this case.  It is apparent that Plaintiff seeks these documents solely to oppress and harass Defendants.  The vexatious nature of these requests, coupled with the undue burden that would be thrust upon Defendants if they were required to collect and produce these old files far outweighs any possible need for such material on Plaintiff's part.  This request should therefore be denied.

**C.      E-Mails of Other EDF and EDFINA Employees Concerning Plaintiff and this Litigation Have Been Produced**

Request Nos. 32 - 35 of the 5th RFP.  These requests seek copies of all e-mails sent or received by Jean Luc Foret, Benoit Dreux, Alexandre Audie, and Adja Ba, during the period January 2004 through September 2004.  Messrs. Foret, Dreux and Audie are French employees of EDF who were or are expatriates appointed for a term to work at EDFINA's office

in Washington, D.C., and Ms. Ba is an EDFINA employee.  Defendants have already produced
the non-privileged e-mails to and from these individuals concerning Plaintiff and her allegations
in this litigation from August 2000 to the present, as previously requested in Plaintiff's prior
document requests.  Having already put Defendants to the expense of a search and privilege
review over a broad and comprehensive scope of issues, Plaintiff has now decided she wants the
universe of these people's e-mails.  This request is overbroad on its face, representing a classic
fishing expedition.  Plaintiff can show no relevance whatsoever to these e-mails that do not
pertain to herself or the allegations of her lawsuit.  She asserts merely that they "may"
nonetheless show bias, inconsistencies, and schedules (Pl. Mem. at 30).  No proper basis exists
for requiring collection and production of this information.

      Before filing this Motion, Plaintiff's counsel offered to forego the request for
these extraneous e-mails altogether, in favor of pressing only for the universe of e-mails sent or
received by Ms. Gaujacq and Mr. Nadal. (See Att. 1).  Counsel for EDF and EDFINA duly
pursued a compromise along the lines suggested, but Plaintiff's counsel abandoned the effort
without compromise.  (See discussion in Section D below.)

**D.     E-Mails Sent or Received By Ms. Gaujacq Have Been Produced and
        are Otherwise in Plaintiff's Possession**

      <u>Request No. 36 of the 5th RFP</u>.  This request seeks the production of all e-mails
sent or received by Plaintiff during the period January 2004 through September 2004.  Plaintiff
seeks to compel production of these e-mails while simultaneously conceding that Plaintiff indeed
already has them. (See Pl. Mem. at 31). Following counsel's meet and confer and in an effort to
compromise, Defendants have produced, at their own expense, and at Plaintiff's insistence, a
fully operational hard drive bearing a mirror image of all the information contained on the hard
drive of the laptop computer used by Plaintiff.  This image of the hard drive contains all of

Plaintiff's e-mails to which Defendants have access beyond the searches and productions described above. As described above, EDF and EDFINA have in fact already produced hard copies of the e-mails sent from or to Plaintiff relating to matters alleged in the Complaint from August 2000 to the present, as previously requested in Plaintiff's First Request for the Production of Documents from EDFINA and Plaintiff's First Request for the Production of Documents from EDF. Plaintiff now seeks the universe of e-mails to and from Ms. Gaujacq from which the previously requested e-mails were produced.

As stated above, Plaintiff's counsel initially offered by letter to compromise Plaintiff's requests for the complete universe of e-mails of the named individuals (Requests 31 – 36), foregoing the request as to all but Ms. Gaujacq and Mr. Nadal. (Att. 1). Defendants offered to re-examine the hard copies in their possession of e-mails sent to or from Plaintiff and produce any others (i.e., not relating to the litigation) not previously called for and produced, if Plaintiff would withdraw her overly broad, duplicative and cumulative request for *all* the e-mails from and to Messrs. Nadal, Foret, Dreux and Audie and Ms. Ba (since non-privileged e-mails from and to these individuals related to Plaintiff and this litigation had already been produced) and shorten the time period by a few months. Plaintiff refused. (See e-mail of Christian C. Wickwire, dated June 21, 2006, Att. 4 hereto). Defendants repeated the compromise offer without a shortened time period (See e-mail of Dorothea W. Regal, dated June 27, 2006, Att. 5 hereto). Plaintiff never responded, abandoning the effort to compromise in favor of making this Motion.

Moreover, Plaintiff did not use an EDF e-mail address while stationed at EDFINA; rather, she used an AOL e-mail account. In other words, Plaintiff has access, through her AOL account, to the same e-mails that she is demanding from Defendants EDF and

10

EDFINA. Plaintiff has indeed produced in this litigation many e-mails she sent to and received from EDF and EDFINA employees. Obviously Plaintiff has access to these e-mails herself via her AOL account (or has printed them out). Beyond the production of relevant, non-privileged e-mails already made by Defendants pursuant to Plaintiff's prior requests, Plaintiff cannot legitimately seek to compel Defendants to bear the burden and expense of supplying her with copies of all the e-mails she sent or received from anyone on any subject over such a length of time simply because she does not wish to pay to do so herself from a data base to which she, obviously, has access.

**E.    The Court Should Not Compel Disclosure of Information related to the Employment of Other French Employees of EDF in France**

Plaintiff's demands that EDF and EDFINA search for and produce what would be overwhelming volumes of highly personal documents relating to EDF and EDFINA employees, having no relationship to Plaintiff's allegations, are more "fishing expeditions" seemingly intended to show the French defendants in this case just how burdensome, expensive and invasive discovery in U.S. litigation can be. None of this massive discovery is justified by Title VII or the DCHRA claims in the instant Complaint, which allege that Mr. Nadal subjected Plaintiff, in June-August 2004 when he succeeded her in serving as President of EDFINA in Washington, D.C. to "unfair and discriminatory treatment based on her gender." Comp. ¶¶ 72, 77. Plaintiff also claims a violation of the EPA based *solely* on the fact that Mr. Nadal was paid a higher salary than she was. Comp. ¶¶ 74, 76.

Based on these allegations, Plaintiff seeks two general categories of documents with respect to EDF employees in France: (1) complaints, and (2) personal employment information, including but not limited to, compensation, qualifications, resumes, contracts, rank, and comparisons among and between the EDF employees. Contrary to Plaintiff's tenuous

assertions, EDF should not be compelled to collect and produce information about other EDF employees for four independent reasons. First, EDF is a French employer of French employees, and its conduct in France with respect to its French employees is governed by the laws and customs of France -- not Title VII, the DCHRA or the EPA. EDF's employment actions with respect to its French employees outside of the United States cannot possibly have any relevance to Plaintiff's claims of alleged violation of United States employment laws because those actions were not and are not subject to such laws. Second, information about other employees other than those who succeeded or preceded Plaintiff in serving as EDFINA President has no relation whatsoever to any of Plaintiff's claims.   She does not claim a pattern and practice of discrimination; rather, she claims disparate treatment and retaliation, and that she was paid less than Mr. Nadal, who succeeded her in serving as EDFINA President. Third, EDF employs over 160,000 people; to compel EDF to ascertain facts and provide the detailed information sought, encompassing all its employees, would be burdensome in the extreme.   Fourth, the disclosure of personnel information of French employees would constitute an unwarranted invasion of their privacy.

### 1.    *Complaints of Other EDF or EDFINA Employees*

Request Nos. 14 of the 4th RFP and Nos. 58-59 of the 5th RFP.  These requests seek information concerning complaints made by any other EDF or EDFINA employees concerning discrimination or retaliation from 2003 to the present and EDF's investigations, policy, practice and procedures concerning discrimination and retaliation and termination of employees. EDF and EDFINA objected to these requests on the ground, among others, that such documents are not relevant or reasonably likely to lead to the discovery of admissible evidence because Plaintiff's claim is a claim under United States law and these are matters of French law

and because this case does not allege a "pattern or practice" of discrimination but instead alleges

merely disparate treatment between Plaintiff and Mr. Nadal, not between Plaintiff and any other

employee. Nonetheless, EDF and EDFINA did agree to and did produce documents relating to

such policies and procedures, while standing on their objections as to complaints of employees

and a "practice."

To the extent Plaintiff seeks documents concerning complaints of other EDF

employees and EDF's actions with respect thereto that took place outside of the United States,

such discovery must be denied because EDF is not subject to Title VII or DCHRA with respect

to such conduct.[3] Even if any conduct of EDF with respect to its French employees in France

were, hypothetically, inconsistent with the dictates of these United States employment laws, it

could not possibly be legally relevant in this case. It could not be any "evidence" of conduct

violative of these United States laws because EDF's conduct in France was not and is not subject

to these United States employment laws.

Title VII does "not apply with respect to the foreign operations of an employer

that is a foreign person not controlled by an American employer." 42 U.S.C. § 2000e-1(c)(2); see

Watson v. CSA, Ltd., 376 F. Supp. 2d 588, 593 (D. Md. 2005) (Title VII does not apply to a

foreign corporation operating abroad). Similarly, EDF is not subject to the DCHRA with respect

to its foreign operations. Green v. Kinney Shoe Corp., 704 F. Supp. 259, 260 (D.D.C. 1988)

(DCHRA was intended to cover only jobs located in the District of Columbia.

To the extent Plaintiff seeks information on employee complaints as to actions

taken by EDF, or EDF employees, in the United States, any discovery as to any such complaints

should be carefully limited in scope to avoid an improper "fishing expedition." See, e.g.,

---

[3]    Defendants assert that EDF is not subject to Title VII at all, even with respect to employees employed in the
United States, but that argument must await Defendants' motion for summary judgment.

13

Pleasants v. Allbaugh, 208 F.R.D. 7, 9 (D.D.C. 2002); Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983).  The cases upon which Plaintiff relies are, for the most part, completely inapposite.[4]  Some courts have simply refused to permit discovery of complaints and lawsuits filed by other employees.  See Prouty v. Nat'l R.R. Passenger Corp., 99 F.R.D. 551, 553 (D.D.C. 1983); Broderick v. Shad, 117 F.R.D. 306, 312 (D.D.C. 1987).  Others limit discovery of such complaints to tailor it to the plaintiff's allegations, such as limiting it to complaints within a limited time frame and involving the individuals whom the plaintiff has accused.  See, e.g., Marshall v. District of Columbia Water & Sewage Auth., 214 F.R.D. 23, 25 (D.D.C. 2003) (request for documents relating to internal investigations limited to plaintiff's department and same or similar decisionmaker during four-year period).  See also Mitchell v. Nat'l R.R. Passenger Corp., 208 F.R.D. 455, 460 (D.D.C. 2002) (limiting discovery to complaints in same department within 2-year period); Glenn v. Williams, 209 F.R.D. 279, 281 (D.D.C. 2002) (limiting discovery to complaints in plaintiff's division and cutting requested 10-year period to 3 years); Pleasants, 208 F.R.D. at 14-15 (limiting discovery to complaints in plaintiff's subdivisions); Hardrick, 96 F.R.D. at 618-19 (denying discovery, except as to two-year period in one particular office); Childers v. Slater, No. CIV.A.97-853RMU/JMF, 1998 WL 429849, at *4

---

[4]  For example, the well-known cases of Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), do not address discovery issues at all but, rather, set forth general standards for discrimination actions.  In Robinson v. Runyon, 149 F.3d 507 (6th Cir. 1998), the Sixth Circuit did not deal with complaints by other employees, but simply held that two possibly racist documents were not more prejudicial than probative.  Rauh v. Coyne, 744 F. Supp. 1186, 1189 (D.D.C. 1990), involved whether the employer had constructive notice of harassment, not the discoverability or admissibility of other employees' complaints.  The issue in Morris v. Washington Metro. Area Transit Auth., 702 F.2d 1037 (D.C. Cir. 1983), and Dougherty v. Barry, 604 F. Supp. 1424 (D.D.C. 1985), was whether plaintiff could establish municipal liability by showing a custom or policy, which is not an issue here.  Hairston v. Washington Metro. Area Transit Auth., No. Civ. 93-2127, 1997 WL 411946 (D.D.C. April 10, 1997), involved not the discoverability of a broad range of evidence, but the admissibility of testimony from three witnesses.  Miller v. Poretsky, 595 F.2d 780 (D.D.C. 1978), was a housing discrimination case and so did not involve complaints by other employees.

(D.D.C. May 15, 1998) (limiting discovery to complaints in plaintiffs' division or the divisions of the supervisors who allegedly discriminated). Plaintiff's cases are to the same effect.[5]

Plaintiff's assertions as to why she needs this information are feeble at best. She claims that it will show Defendants have a practice of discriminatory treatment and retaliation and how Defendants enforce their policies. (Pl. Mem. at 26). As discussed above, Plaintiff does not have any claims for pattern and practice. Plaintiff further seems to claim that Defendants' history may be relevant to knowledge, willfulness and punitive damages, but makes absolutely no showing how this is so. (Pl. Mem. at 3). It is simply not possible that, in a case that arises from alleged discrimination by Mr. Nadal against Plaintiff over a three-month period in Washington D.C in 2004, Plaintiff could convict a French company under United States legal standards based on the way it treats its employees in France, as the employment relationship in that country is regulated by an extensive set of legal requirements that are completely different from the legal requirements that Plaintiff argues are applicable here.

As the above cases demonstrate, EDF and EDFINA should not be compelled to ascertain and provide information as to any employee complaints of discrimination except any such complaints alleging discriminatory treatment by Mr. Nadal at EDFINA from June 2004 to the present, which would relate to Plaintiff and her present claims. There are no such complaints, and this information has already been provided to Plaintiff.[6] With respect to policies

---

[5]    Thus, the court in <u>Johnson v. Washington Times Corp.</u>, 208 F.R.D. 16 (D.D.C. 2002), held that to be discoverable, other allegedly discriminatory acts must be "similar in motivation" to those complained of, explaining that "[d]iscrimination . . . against a truck driver in Cincinnati in 1995 is hardly probative of an intent to discriminate against another truck driver in Memphis in 2000." <u>Id.</u> at 19. <u>See also</u> <u>White v. U.S. Catholic Conference</u>, No. CIV.A.97-1253, 1998 WL 429842, at *4-6 (D.D.C. May 22, 1998) (limiting discovery to complaints in plaintiff's subdivision).

[6]    In response to Interrogatory Number 5 of Plaintiff's First Set of Interrogatories to EDF, dated October 28, 2006, EDF responded as follows:

and procedure, as Plaintiff is fully aware, Defendants have responded that, notwithstanding and without waiver of their objections, they will produce such documents and have done so. Plaintiff therefore has all the information she reasonably might want on this topic, and EDF and EDFINA should not be compelled, for the reasons stated, to do more.

Request No. 15 of the 4th RFP. This request for EEO-1 documents for the past two years should be denied as completely irrelevant. EEO-1 documents show the statistical breakdown of employees by race, gender, etc., but do not show whether a particular supervisor treated Plaintiff unfairly or whether she was subject to retaliation. Plaintiff has no need for these documents because as stated in Defendants' objections, Plaintiff's claim is not a pattern and practice claim but, rather, a claim of disparate treatment between Plaintiff and Mr. Nadal, so that personnel information about other employees in general has no bearing on her claims. Furthermore, this was a completely frivolous document request to EDF since there is no requirement for EDF, a French company, to file such forms with the EEOC.

### 2. *Personnel Information About Other EDF and EDFINA Employees*

Plaintiff has not made, and cannot make, any showing whatsoever as to why EDF and EDFINA should be compelled to search for and surrender comprehensive personnel information about hundreds, if not thousands, of EDF's French employees. The employment decisions of EDF with respect to its French employees in France, and the resulting employment history of such employees, cannot have any relevance to Plaintiff's claims of alleged violation of United States employment laws because those decisions were not and are not subject to such laws. The only person whose employment credentials have been at issue in the Plaintiff's

---

EDF states that there have been no complaints of the type described in this Interrogatory made against Nadal during his tenure with EDFINA, other than the complaint in this litigation, and that it is unaware of any such complaints ever having been made against Nadal.

allegations is Mr. Nadal, the EDF employee who succeeded Plaintiff in serving as President of EDFINA, and EDF has produced Mr. Nadal's personnel file and other documents related to his career and ranking at EDF. EDF has also produced documents related to the EDF employees who, prior to Plaintiff's service, previously served as President of EDFINA in Washington, D.C. Defendants have also produced documents describing EDF's employee ranking system and Patrick de Botherel, EDF's Director of Remunerations, further explained the system in his deposition testimony. There is no basis to require any broader search for comparisons, and Plaintiff's Motion for this attenuated information should be denied.

Request No. 45 of the 5th RFP    This request seeks extensive personnel information about EDF employees who filled any positions which "opened up" or were available during the period April 1, 2004 through the present for employees ranked R-1, R-2 and R-3 within EDF's ranking system. Defendants objected on the ground, among others, that the request is unduly burdensome and not relevant or reasonably likely to lead to the discovery of admissible evidence because the personnel, career and employment information about the French employees of a French company has no relevance to Plaintiff's claims under United States or District of Columbia law. Defendants have produced information concerning the position in France to which Plaintiff was assigned upon the expiration of her expatriate assignment, which she refused, and information concerning the EDF employee who ultimately filled the position. The personnel information of French EDF employees who may have taken new positions since April 2004 cannot have any bearing whatsoever on Plaintiff's claims of disparate treatment or retaliation. Plaintiff's complaint is not that she was denied some other position in France; she refused to return to France when her term expired. Plaintiff is now simply "fishing" for any new

facts to make a new claim, well after the end of fact discovery in this case. This request should be denied.

> Request Nos. 13 and 16 of the 4th RFP and Nos. 44, 63, 64 and 71 of the Fifth RFP. These requests seek extensive personnel information of EDF employees who were or are stationed in foreign countries with the rank of R-1, R-2 and R-3, including their qualifications and compensation, comparisons of male and female employees of EDF and EDFINA, extensive information about other EDF employees, the terms of their expatriation contracts, their missions or job descriptions, information (compensation and qualifications) about female EDF employees who are ranked R-1, R-2, and R-3 and how they compare to males of the same rank, comparisons between Plaintiff and any other EDF or EDFINA employee, and comparisons between male and female employees of EDF and EDFINA.

Defendants objected on the grounds, among others, of overbreadth, ambiguity, lack of relevance and undue burden, but, notwithstanding such objections, stated they would produce responsive documents as to Mr. Nadal, and they have done so. Defendants further objected on the grounds that the requested information as to other employees is not relevant because (1) personnel, career and employment information about the French employees of a French company has no relevance to Plaintiff's claims under United States or District of Columbia law and (2) Plaintiff's claim is not a pattern and practice claim but, rather, a claim of disparate treatment, so that personnel information about other employees in general has no bearing on her claims. These objections are proper and well-founded.

Plaintiff has made no showing why there could be any reason for EDF to search its files to determine whether there has ever been any comparison made between the male and female employees of EDF. Employment statistics by gender with respect to EDF's French

18

workforce would be entirely irrelevant, no matter what the statistics might show, because the employment practices of EDF with respect to its French employees in France cannot possibly be violative of United States employment laws since they are not subject to such laws.[7]  EDF should not be compelled to search and produce the personnel files, compensation information and/or evaluations of virtually its entire French workforce.  As stated above, EDF has over 160,000 employees.  It would be burdensome in the extreme and a wholly unwarranted invasion of privacy of the individuals involved for EDF to search for and produce the information sought by Plaintiff concerning its other employees.

Request Nos. 7, 25 - 27, 44, 53, 71 and 79 and of the Fifth RFP and Nos. 1-3, 18-21, 33 -35 and 38 of the 4th RFP.  These requests seek extensive personnel information, such as compensation, evaluations, qualifications, ranking, expatriation contracts or other contracts, resumes, background information and current positions and the gender of thousands of EDF employees (and, in one instance, one EDFINA employee) since 1990.  Defendants objected on the grounds, among others, that the requested information as to other employees is not relevant because (1) personnel, career and employment information about the French employees of a French company has no relevance to Plaintiff's claims under United States or District of Columbia law, (2) Plaintiff's claim is not a pattern and practice claim but, rather, a claim of disparate treatment, and (3) Plaintiff's claim is not a claim of alleged inequality in treatment between Plaintiff and any other employee; rather, it is a claim of alleged inequality in treatment between Plaintiff and Mr. Nadal, so that personnel information about other employees in general has no bearing on her claims.  These objections are proper and well-founded.

---

[7] Further, any such statistics are irrelevant to Plaintiff's case because her complaint is one of disparate treatment and retaliation, not a pattern and practice of discrimination

Plaintiff's assertion that this information is relevant to her EPA claim is utterly baseless. (Pl. Mem. at 21-23). Plaintiff's claim under the EPA is based solely on her allegation that Mr. Nadal was paid more than she was, and not on any comparisons between herself and any other employees, nor is it based on EDF's pay practices generally.

The EPA is clear: Plaintiff can compare herself to either a successor or a predecessor who held the same job. See Turner v. District of Columbia, 382 F. Supp. 2d 157, 179 (D.D.C. 2005) (plaintiff compares herself to predecessor); Jones v. Trailways Corp., 477 F.Supp. 642, 644-45 (D.D.C. 1979) (noting that both predecessors and successors are proper comparators); 29 C.F.R. § 1620.13(b)(4) (can compare oneself to predecessor). Although Mr. Nadal holds a different and broader job than did Plaintiff, one aspect of both of their jobs included serving as President of EDFINA, and Mr. Nadal's service in that capacity did come after Plaintiff's service in that office Accordingly, while the jobs are different, Defendants have nevertheless produced Mr. Nadal's compensation information as well as his personnel file. Similarly, Messrs. Cottave, Boussard, Gery and Herbin, all EDF employees, whose jobs with EDF included responsibility to serve as President of EDFINA, preceded Plaintiff in their service in that office and Defendants have produced their compensation information as well. Defendants have also produced the expatriation contract of Mr. Cottave, the EDF employee who served as President of EDFINA immediately before Plaintiff.

Defendants have also produced information on Mr. Virleux, the EDF employee who accepted and currently fills the position in France which Plaintiff refused upon the expiration of her expatriate contract, including his curriculum vitae and personnel data. Plaintiff therefore already has the information about the only EDF employees who have any connection to

her claims.[8]  Plaintiff's purported characterization of any other employees as "comparables" is utterly disingenuous.  (Pl. Mem. 21-23).  Plaintiff is fully aware of the job responsibilities of those who were working at or employed by EDFINA during her term at EDFINA because they were working for her, and she knows that none had the same job responsibilities as she did.

The pay, qualifications and evaluations of hundreds, if not thousands of other employees, whose terms and conditions of employment are decided by their French employer in France in accordance with French law, have no bearing whatsoever on Plaintiff's claim that Mr. Nadal was paid more than she was in alleged violation of U.S. laws.

Likewise, Plaintiff's requests for performance evaluations of other employees has no bearing whatsoever on whether, as alleged by Plaintiff, Mr. Nadal treated Plaintiff unfairly based on gender, whether she was retaliated against, or whether Mr. Nadal was paid more than Ms. Gaujacq for the same job.  Here again, EDF's employment actions as to its French employees in France, including their performance evaluations, cannot have any relevance to Plaintiff's claims of alleged violation of United States employment laws because those actions were not and are not subject to such laws.

Further, Plaintiff's assertion that Mr. Audie and Ms. Ba, both people who worked for Ms. Gaujacq while she was serving as President of EDFINA, received increases in compensation after Plaintiff left has no import and in no way entitles Plaintiff to discover all of their personnel information.  Likewise, that other EDF employees may have received extensions on the term of their expatriation assignments beyond the initial three-year period, as did Plaintiff, does not require EDF to collect and turn over to Plaintiff all the highly personal and confidential

---

[8] To the extent that Defendants' damages expert, Mr. Walker, used the compensation of any other employees as comparators,  Plaintiff has that information as well. Contrary to Plaintiff's representation, Mr. Walker did not use any compensation information as to Mr. Serviere (who assumed responsibilities for the NuStart project ).

expatriation contracts of all EDF's employees. Plaintiff has the information regarding policies and procedures for expatriate assignments, including duration and extensions, from her deposition of Mr. de Botherel.

Request Nos. 57, 62 of the Fifth RFP. These requests seek documents about any EDF employee whose employment was terminated for refusing to accept another position offered, and who had 23 years or more experience (as well as their qualifications, compensation, rank, and details about the position offered and refusals to accept them, and the reason for termination). In addition to seeking documents about employment decisions made by EDF with respect to its French employees in France, which would be irrelevant to claims of alleged violation of United States employment laws since those actions were not and are not subject to such laws, and the disclosure of which would constitute an unwarranted invasion of privacy, this request seeks documents that have no bearing on any of Plaintiff's allegations. Plaintiff has no claims that she was discriminated against by being treated any differently than anyone other than Mr. Nadal. EDF terminated Plaintiff's employment when she refused to show up for her assigned post in France (following a hearing, in accordance with French law). If Plaintiff seriously seeks to discover documents for the purpose of arguing that refusal to show up for work is not a legitimate business reason for terminating employment (as she argues in this Motion), she has had ample opportunity prior to the discovery cut-off to discover information on that topic. She should not be permitted to re-open discovery for this frivolous request.

Request No. 54 of the Fifth RFP. This request seeks information about any employees terminated for "destruction" of EDF property. In addition to seeking documents about employment decisions made by EDF with respect to its French employees in France, which would be irrelevant to claims of alleged violation of United States employment laws since

22

those actions were not and are not subject to such laws, and the disclosure of which would constitute an unwarranted invasion of personal privacy, this request seeks documents that have no bearing on any of Plaintiff's allegations. Plaintiff's employment was not terminated for "destruction" of property. Rather, it was terminated for her failure to report to her position in France when her expatriation assignment expired. Here again, Plaintiff has had ample opportunity to discover information in support of any assertion she might make that failure to report is not a legitimate business reason for termination of employment – as far-fetched as such a position may be. Plaintiff should not be permitted to re-open discovery for this frivolous request.

## CONCLUSION

For the reasons above, Plaintiff's Motion to Compel should be denied in its entirety.

Dated: August 11, 2006

Respectfully Submitted,
_____/s/_____
Dorothea W. Regal
D.C. Bar No. NY0064
Randi Seltzer May
D.C. Bar No. NY0063
HOGUET NEWMAN & REGAL, LLP
10 East 40th Street
New York, NY 10016
(212)689-8808

*Counsel for Electricité de France*
*International North America, Inc.*
*and Electricité de France, S.A.*

23