IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al | ) ) ) ) ) |
| Defendants. | ) ) |

### REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff, Catherine Gaujacq ("Ms. Gaujacq" or "Plaintiff"), by counsel, hereby submits this reply memorandum in further support of its motion for an Order compelling the production of documents from defendants Electricite de France International North America ("EDF") and Electricité de France International North America, Inc. ("EDFINA") (collectively "Defendants") in response to certain requests set forth in Plaintiff's Fourth and Fifth Requests for the Production of Documents.

### PRELIMINARY STATEMENT

As Ms. Gaujacq set out in her Memorandum in Support of Plaintiff's Motion to Compel Production of Documents ("Moving Brief"), Defendants have refused to produce all documents in response to her Fourth and Fifth Requests for Production of Documents (respectively "Fourth RFP" and "Fifth RFP") with respect to certain topics, including the following:

- Documents related to the payment, responsibilities and evaluations of certain EDF and EDFINA employees, including their employment/expatriate agreements, resumes, evaluations and pay-stubs;

- Emails to and from Mr. Nadal during the period January through September 2004 and audits of divisions of which Mr. Nadal was a part of;

- Documents reflecting and explaining Defendants' policies regarding discrimination and retaliation and other instances in which Defendants have engaged or have been accused of engaging in discriminatory or retaliatory conduct against other employees;

- Documents related to the policy and practice with respect to the treatment of confidential and proprietary information and the collection of computers and computer information for each employee transferring to another position; and

- Documents related to the manner in which Defendants treated other employees in similar situations to Ms. Gaujacq, including other employees that were terminated for "destruction" of EDF property, other employees that were terminated for refusing transfers to other positions, other employees that were terminated after more than 23 years of experience with the company, other employees who were requested to return to France after the expiration of their contracts, and other employees who worked for more than six months without a written job description or mission statement.

Defendants' primary response to Ms. Gaujacq's Motion consists of *ad hominem* attacks on the form and procedural posture of Ms. Gaujacq's Requests for Production and on Ms. Gaujacq's Motion to Compel itself. These side arguments make up Defendants' entire Preliminary Statement in a blatant attempt to cloud the real issue – Ms. Gaujacq's need for the relevant and potentially damaging documents that are being withheld by the Defendants. To the extent Defendants attempt to address specific Requests, Defendants' Opposition[1] consists solely of conclusory statements that some documents responsive to the Requests may not be relevant in their view, or that responding to such Requests may be burdensome.

To assist the Court, Plaintiff attached to her Moving Brief just some of the devastating documents that have been uncovered in this case so far. The existence of these documents leads to the inescapable conclusion that Defendants' blatant withholding of discoverable documents is

---

[1] See Opposition of Defendants Electricite De France, S.A. and Electricite De France International North America, Inc. To Plaintiff's Motion to Compel ("Opposition")

2

meant as a method of "damage control" to keep Plaintiff from uncovering even more such information to prove her claims and defend against the Defendants' proffered legitimate business justification defenses.

Each of Defendants' general attacks on the Requests and their conclusory objections fall short of providing legitimate bases for preventing the discovery of relevant and potentially admissible evidence.

## ARGUMENT

### I.   DEFENDANTS' *AD HOMINEM* ATTACKS SHOULD BE REJECTED

The entire Preliminary Statement of Defendants' Opposition consists of *ad hominem* attacks on the form and procedure with respect to Ms. Gaujacq's Requests for Production and her Motion to Compel, without any objection to or discussion regarding the types of documents requested. Defendants argue that Plaintiff's Motion to Compel was untimely, abusive, and frivolous. There are no legitimate bases for any of Defendants' arguments, and each will be addressed in turn.

#### A.   Ms. Gaujacq's Motion is Timely

First, Defendants argue, without support, that Ms. Gaujacq's Motion to Compel is untimely. Opposition at 2. Defendants do not argue that the timing of Ms. Gaujacq's Motion violates any Rule or Order of the Court, which is not surprising, considering that Defendants filed their own Motion to Compel well after the discovery cut-off. Instead, Defendants take the curious position that postponing the filing of the instant motion to compel, while the parties attempted to meet and confer to narrow or eliminate the discovery dispute, works as some kind of an estoppel.

The parties negotiated over the course of several weeks to clarify and narrow the points

of dispute. Only after these communications with the Defendants did Plaintiff reluctantly determine that she would have to file this Motion to Compel to obtain the documents that are relevant and necessary to her claims and defenses. This Court supports the policy of encouraging the narrowing and resolution of areas of dispute before filing motions. The Plaintiff has done just that. The Plaintiff should not be penalized for engaging in good faith efforts with opposing counsel to narrow and resolve disputes, particularly when it is in the best interests of the parties and judicial economy.

Further, Defendants take issue with the fact that Ms. Gaujacq provided the Court with a detailed statement of the facts of the case with supporting documentation. Id. Defendants do not take issue with the substance of Defendants' Statement of Facts, and instead attack the Facts section as an attempt to "color the Court's perception of the case." Id. To the contrary, Ms. Gaujacq provided the detailed Statement of Facts in order to establish through more than mere allegations that the documents she seeks with this Motion to Compel are both relevant and necessary to her claims and to highlight the devastating documents uncovered to date and which partially form the basis for believing there are more.

B.   Ms. Gaujacq's Motion is not "Abusive"

Defendants' second attack is that Ms. Gaujacq's Motion to Compel is "abusive." Opposition at 2. Defendants' principle support for this argument is that by counting up each of Ms. Gaujacq's discovery requests, including interrogatories, document requests and requests for admissions, propounded on each of the three separate defendants in this case, there appears to Defendants to be "extensive" requests for discovery. Defendants raise this argument for the first time in their Opposition and do not argue that the number of discovery requests propounded by Ms. Gaujacq violates any Rule or Order of the Court.

4

Defendants' argument is especially misleading because if fails to take into account the fact, as set forth in Ms Gaujacq's Moving Brief, that instead of burdening the Court and the parties with a motion to reconsider the Court's March 10, 2006 Order, she decided to redraft the discovery requests in order to address the concerns and objections made by Defendants. Moving Brief at 4-6. In making their numerosity argument, Defendants are essentially double-counting Ms. Gaujacq's earlier Requests for Production. Moreover, there are requests Plaintiff made that Defendants refused to answer that Plaintiff has not pursued, determining instead to limit the Motion to Compel to the key issues. If the number of requests is relevant, then Defendants should tell the Court the number of requests it actually answered. That number is less than the number Plaintiff has responded to.

Defendants also take issue with the issuance of supplemental expert discovery reports, asserting that they were not "based on new information." This assertion is particularly surprising, given that the supplemental report of Dr. Gold was submitted at the request of Defendants (*see* Attachment 1) and the supplemental report of Mr. Demchick was submitted in part in response to the report submitted by Defendants, which report relied on documents and information that was not previously produced to Ms. Gaujacq and also upon depositions that had not been taken. Because of the duty to supplement and in fairness before his deposition was taken, Mr Demchick supplemented his report.

C. Ms. Gaujacq's Motion is not "Frivolous"

Defendants' also argue, without support, that Ms. Gaujacq's Motion to Compel is frivolous because Defendants have already produced "many of the documents sought in this Motion." Opposition at 4. Defendants do not claim any violation of Fed. R Civ P Rule 11 or any other rule or order of the Court. Defendants' statement that they have produced many, but

5

not all, documents in response to the Requests only underscores Plaintiff's point that Defendants are withholding important and potentially damaging documents to which Ms. Gaujacq is entitled.

Defendants even go so far as to say that "Plaintiff has received all the information she needs to present her claims." Id. If Defendants are to be taken at their word, and acknowledge that Plaintiff has all "she needs to present her claims" and prove her case, then Ms. Gaujacq respectfully requests that the Court take judicial notice and enter Summary Judgment in favor of the Plaintiff. To the extent Defendants are arguing that as soon as Plaintiff receives any evidence supporting her claim then she is forever prohibited from gathering more information in support of her claim, Defendants' argument should be summarily rejected as against the very principal of the Federal Rules governing discovery in a civil case. With respect to the Defendants, it is not up to them to decide which pieces of evidence are "sufficient" to prove her claims and defenses, unless Defendants are willing to withdraw their defenses and submit to Summary Judgment. It is up to the jury. The Federal Rules permit liberal discovery to enable the parties to adequately, and if appropriate, forcefully pursue their claims.

## II.   MS. GAUJACQ IS ENTITLED TO DISCOVERY OF COMPARABLES

Ms. Gaujacq demonstrated in her Moving Brief that she is entitled to documents related to the payment, responsibilities and evaluations of certain EDF and EDFINA employees, including their employment/expatriate agreements, resumes, evaluations and pay-stubs ("Comparables"). Moving Brief at 2, 21-23. Documents concerning these Comparables are directly relevant to Defendants' liability, including to a determination of why Ms. Gaujacq only received an R3 ranking instead of the higher R1 ranking awarded to Mr. Nadal for essentially the same title but with lesser responsibilities, or why Ms. Gaujacq failed to earn an R1 ranking as the head of a major subsidiary, while the Presidents of other subsidiaries received R1 rankings. As

6

such, the Comparables are relevant to liability under Ms. Gaujacq's EPA, Title VII, and DC Human Rights claims.

In addition to liability, the documents concerning Comparables are directly relevant to damages. For example, the Comparables are necessary to assess the compensation Ms. Gaujacq should have received absent Defendants' discriminatory conduct, which is relevant to her EPA, Title VII, and DC Human Rights claims. Such damages are based in part on the difference between what her compensation should have been but for Defendants' discriminatory conduct, and her lower salary at Entergy. In addition, the Comparables are necessary to rebut the assertions made in Defendants' own damages report, which props up several individuals, including executives of other companies and past presidents of EDFINA, as "more relevant" comparables, but refused to produce discovery with respect to Comparables or even of the former EDFINA presidents, cited by Defendants' expert.

Further, such information is relevant to incentives of Defendants' employees to provide untruthful or biased in their testimony, including the fact that at least two, and we suspect more, of the employees had their salaries <u>doubled</u> after Ms. Gaujacq was terminated, and when Defendants suddenly needed their testimony.

Defendants do not even attempt to address Plaintiff's arguments regarding the need for Comparables to determine damages to Ms. Gaujacq and to rebut the use of such comparables in Defendants' own damages report. Defendants instead rely on conclusory allegations that Plaintiff's Requests for Comparables are not relevant or burdensome. See Opposition at 19-22

Defendants state that such information is irrelevant to Ms. Gaujacq's Equal Pay claim, but do not address Ms. Gaujacq's claim that it is relevant to her Title VII or DC Human Rights claims. The information concerning Comparables is relevant to liability and damages with

respect to both claims, and Defendants do not and cannot, argue that because information may not be relevant to one of several claims, it makes the information non-discoverable even though it relates to others.

Defendants' remaining relevancy objections are either nonsensical or based on a misstatement of Ms. Gaujacq's claims. Specifically, Defendants' Opposition misleadingly implies that Ms. Gaujacq's claims of discrimination and unequal are based solely on the compensation, qualifications and actions of Mr. Nadal. For example, Defendants' Opposition states that Ms Gaujacq's claims is limited to "inequality in treatment between Plaintiff and Mr. Nadal,", that "Mr. Nadal treated Plaintiff unfairly," and that "Mr. Nadal was paid more than Ms. Gaujacq for the same job" Opposition at 19-21. To the contrary, Plaintiff's claims are not limited to comparisons between Ms. Gaujacq and Mr. Nadal; the defendants in this case include both EDF and EDFINA, their employees' actions, and their treatment of all male and female employees as compared to their discriminatory treatment of Ms. Gaujacq. In addition, as stated above, Plaintiff's damages and Defendants' own damages report are based in part on a comparison of EDF and EDFINA employees with Ms. Gaujacq, and is not limited to Mr. Nadal

Defendants also argue, again without any bases or support, that because they have produced some documents with respect to Comparables with some of Defendants' employees, then they do not have to fully respond to Plaintiff's discovery requests. Plaintiff respectfully submits that the production of cherry-picked "compensation information" and the "expatriation contract of Mr. Cottave" does not begin to fulfill Defendants' discovery obligations with respect to Ms. Gaujacq's' Requests for Comparables, nor does it address the majority of the Comparables. See Opposition at 20.

Defendants argue that Ms. Gaujacq is not entitled to discovery of Comparables because as the past President of EDFINA, she is already "fully aware of the job responsibilities of those who were working or employed at EDFINA," and that the Comparables of employees by a French employer is somehow non-discoverable. Opposition at 21. Plaintiff is unaware of any rule that states that just because a Plaintiff may have some knowledge with respect to an issue, that she is then barred from any further discovery on the issue. At least one aspect of the case is not focused on what the Plaintiff knows, but what the Defendants know. Nor does Defendants' argument that Defendants are immune from discovery merely because they have connections with a foreign country and its legal system hold any merit. More significantly, Defendants provide no support for this contention, have consented to this Court's jurisdiction, and have used all discovery Rules to their advantage. It is not a one-sided process.

Finally, Defendants' argument that discovery into the pay and qualifications of other employees of Defendants should be prohibited because it is an invasion of privacy should be rejected. As Defendant is aware, and has argued already in this case with respect to discovery of private financial information from third-party Philippe Gaujacq, there is a Protective Order entered in this case designed to protect such privacy interests in exactly this type of situation.

For the reasons stated above, Defendants should be compelled to produce all documents concerning the treatment, pay and qualifications of certain specific EDF and EDFINA employees, i.e. the Comparables.

### III. MS. GAUJACQ IS ENTITLED TO DISCOVERY OF MR. NADAL'S EMAILS AND AUDITS PERFORMED OF HIS DIVISIONS OF EDF

Ms. Gaujacq demonstrated in her Moving Brief that she is entitled to Mr. Nadal's emails during the nine-month period January through September 2004 and certain documents pertaining to the audits of his divisions in 1992-94 and audits conducted of the Development position at

9

EDF in 1997 while Mr. Nadal was Vice President of Strategy and Development. <u>Moving Brief</u> at 24-25.

With respect to the request for Mr. Nadal's emails, Defendants' reasons for withholding such emails include that Mr. Nadal's emails that Defendants determined were relevant have already been produced, and that Mr. Nadal's job performance is not at issue. <u>Opposition</u> at 7. Defendants are incorrect on both assertions. Moreover, as Plaintiff demonstrated in her opening brief, there are significant gaps in time and communications between Nadal and EDF, as well as between Nadal and EDFINA. There are inconsistent documents during this timeframe as to EDF's intentions with respect to Ms. Gaujacq and Mr. Nadal. If Mr. Nadal knew he was going to be taking over for Ms. Gaujacq in December 2003, why are there no emails relating to it in January or February? Even thought EDF contends Mr. Nadal was communicating all of these issues in April – September, why are there very few emails and only on limited issues?

Defendants do not have the authority to unilaterally decide that certain emails may not "concern matters alleged in the Complaint" and refuse to produce them on that basis, nor have Defendants provided any authority to support such a position.

Moreover, Mr. Nadal's job performance is directly at issue in this case. One of the key aspects of this case is that Mr. Nadal was compensated more than Ms. Gaujacq, yet he was less qualified. Mr. Nadal's job performance is directly related to his qualifications.

With respect to the audits, Defendants argue in their Opposition that Ms. Gaujacq is not entitled to documents concerning the audits performed of Mr. Nadal's divisions because "Plaintiff already has whatever information is available to fuel her campaign to impugn Mr. Nadal's professional abilities" and that EDF has already produced some audit documents. <u>Id.</u> at 8. Neither of these arguments are proper reasons to withhold the documents to which Ms.

10

Gaujacq is entitled. Defendants are not permitted to dictate what Plaintiff needs to prove her case. Neither are Defendants entitled to cherry-pick which audit information Plaintiff receives and which audit information she should be denied. Given that the audits reflect issues relating to Mr. Nadal's performance and skills, and given that Mr. Nadal ordered an audit of Ms. Gaujacq's work, these documents are relevant on a number of issues

For the reasons stated above, Ms. Gaujacq's Motion to Compel with respect to Mr. Nadal's emails and for documents concerning the audits of his divisions should be granted.

## IV. MS. GAUJACQ IS ENTITLED TO DISCOVERY REGARDING OTHER INSTANCES OF DISCRIMINATION BY DEFENDANTS

As Ms. Gaujacq set out in her Moving Brief, she is entitled to and Defendants are withholding documents related to Defendants' practices and policies regarding discrimination and other instances in which Defendants have engaged or have been accused of engaging in discriminatory conduct against employees, which are necessary to demonstrate that Defendants have a history of treating employees in the same discriminatory manner to as they treated Ms. Gaujacq Moving Brief at 26-27.

Such documents are clearly relevant to show that Defendants have a practice of discriminatory practice and the unequal treatment of Ms. Gaujacq conformed to that practice Further, such documents are relevant to the manner in which Defendants respond to claims of discrimination and retaliation, which in turn is relevant to any claim by Defendants that they effectively enforce any policy they have with respect to such conduct. Id.

Defendants' response that their discriminatory treatment of other employees is not relevant because such discrimination may be legal in France or because this is not a pattern or practice claim is a *non sequitor*, and not supported by the facts. Opposition at 12-16. Yann Laroche, designated as corporate designee, explicitly stated it is illegal in France to discriminate

11

against women, as did Mr. De Botherel. See Deposition Transcripts of Mr. Laroche at 55-9 and Mr. De Botherel at 135-40, Attachment 2. As Ms. Gaujacq set forth in her Moving Brief, the purpose of discovery into other acts of discrimination by Defendants is to prove, inter alia, that Defendant have a history of discriminatory conduct and fostered such an environment for their employees and that Defendants knowingly and willfully discriminated against Ms. Gaujacq, not whether Defendants would be immune from prosecution from such conduct. Moving Brief at 26-27. Moreover, the Defendants' knowledge that it was illegal and their degree of willfulness are relevant to punitive damages.

For the reasons stated above, Plaintiff's Motion to Compel production of all documents regarding complaints against the Defendants and other instances of Defendants' discriminatory conduct should be granted.

## V. MS. GAUJACQ IS ENTITLED TO DISCOVERY REGARDING ALL EMAILS THAT SHE SENT AND RECEIVED

As Ms. Gaujacq set forth in her Moving Brief, Defendants have refused to produce her emails for the period January 2004 through September 2004 and provided a laundry list of reasons demonstrating why all these emails are relevant, particularly in this limited timeframe being requested. Moving Brief at 27-29.

Defendants respond that they have produced some emails via a lap-top hard drive that would cost Plaintiff thousands of dollars to access, that Defendants have produced some emails that they decided in their sole discretion "relat[e] to matters alleged in the Complaint," and that Ms. Gaujacq may have access to some of the emails she sent or received via her AOL email account, and that there may be some burden involved. Opposition at 9-11. None of these proffered explanations excuse Defendants from their discovery obligations.

12

First, with respect to the hard-drive, as explained in the Moving Brief, Plaintiff does not have the capabilities to access the hard-drive herself, and would have to expend thousands of dollars to hire information technology professionals to do so. See Moving Brief at 29-30. She is therefore unable to confirm or deny the contents of the hard-drive. However, Defendants admit that the hard-drive does not contain all the requested emails and that Defendants have the ability to conduct searches of hard copies of the emails for the production. Opposition at 10.

Second, Defendants do not have the authority to unilaterally decide which emails are relevant and which are not. Their obligation is to produce documents that are responsive to Ms. Gaujacq's discovery requests. Because Ms. Gaujacq has demonstrated that her requests are proper, Defendants must produce all responsive documents and may not cherry-pick by declaring that some in their view do not "relate[e] to matter alleged in the Complaint."

Third, Defendants should be required to produce the emails, regardless of whether Ms. Gaujacq has access to some of them via her AOL web account. For example, Plaintiff is entitled to know which emails were actually received by Defendants and their employees and stored in their files, which cannot be determined by a review of Ms. Gaujacq's internal email accounts.

Fourth, Defendants state that they cannot be compelled to shoulder the "burden and expense of supplying her with copies" of the emails on "any subject." Id. at 11. Defendants' argument makes no sense. As they stated already, they were agreeable to producing Ms. Gaujacq's emails, and any expense would be less by producing all of them during a short nine-month window, as opposed to sorting through them for subject matter.

Defendants should, therefore, be compelled to produce all emails sent or received by Ms. Gaujacq in this critical period.

## VI.   MS. GAUJACQ IS ENTITLED TO DISCOVERY REGARDING ALL EMAILS SENT AND RECEIVED BY MESSRS. FORET, DREUX, AUDIE, AND BA

In her Fifth RFP, Nos. 32-35, Ms. Gaujacq sought from Defendants: "[c]opies of all emails sent or received by [Jean Luc Foret, Benoit Dreux, Alexandre Audie, and Adja Ba] during the period January 2004 through September 2004." Moving Brief at 29-30. Ms. Gaujacq's request is reasonably calculated to seek the discovery of admissible evidence, and relate directly to bias, inconsistent testimony, vacation schedules, what they were working on, the level and substance of their communications with and about Mr. Nadal and Ms. Gaujacq and is the key time period in which Ms. Gaujacq has alleged Mr. Nadal had repeated contact with these individuals, as well as while Ms. Gaujacq had repeated contact with these individuals and would shed light on Plaintiff's allegations, as well as defend against claims of improper document retention and job responsibilities and contact with EDF and their clients.

Defendants respond that they are not obligated to further respond to these Requests because they have already produced such emails that hey have determined "concern[] Plaintiff and her allegations in this litigation." Opposition at 9-10. Again, Defendants are not permitted to pick emails that they have unilaterally determined to concern Plaintiff and her allegations, nor have they cited any authority or support for such a position. More importantly, it does not answer Plaintiff's stated reasons for relevance and potential admissibility.

For the reasons stated above, Plaintiff's Motion to Compel with respect to Ms. Gaujacq's Requests for emails sent or received by Messrs. Foret, Dreux, Audie and Ba should be granted.

## VII.   MS. GAUJACQ IS ENTITLED TO DISCOVERY REGARDING DEFENDANTS' POLICIES AND PRACTICES WITH RESPECT TO TREATMENT OF CONFIDENTIAL INFORMATION AND COLLECTION OF COMPUTERS AND COMPUTER INFORMATION FROM EMPLOYEES

Ms. Gaujacq requested in her Moving Brief that Defendants be compelled to produce documents related to their policies and practices with respect to the treatment of confidential and

14

proprietary information and with respect to the retrieval of information from computers of employees transferred to other positions. Moving Brief at 30-31. Such documents are necessary to defend against the implied accusations by Defendants that Ms. Gaujacq acted improperly with respect to her actions as to the return of her laptop computer. Id. Defendants do not deny the relevance.

### VIII. MS. GAUJACQ IS ENTITLED TO DISCOVERY REGARDING TREATMENT OF EMPLOYEES IN SIMILAR SITUATIONS TO MS. GAUJACQ'S

Ms. Gaujacq requested in her Moving Brief that Defendants be compelled to produce documents related to the manner in which Defendants treated other employees in similar situations to Ms. Gaujacq, including other employees that were terminated for "destruction" of EDF property, other employees that were terminated for refusing transfers to other positions, other employees that were terminated after more than 23 years of experience with the company, other employees who were requested to return to France after the expiration of their contracts, and other employees who worked for more than six months without a written job description or mission statement. Moving Brief at 31-32. These documents are essential to demonstrate that Ms. Gaujacq was singled out for unequal treatment and that there was no business justification for her termination. Id. Defendants do not deny the legitimate bases for the request.

Defendants first respond that production of such documentation may be burdensome, with a generalized statement that they will have to conduct a search of "hundreds, if not thousands, of EDF's French employees." Opposition at 16. There is no doubt that discovery can be burdensome, but the standard is that such burden must be "undue." There can be no argument here that the relevancy and need for documents pertaining to the treatment of other employees in identical circumstances as Ms. Gaujacq renders any such burden a necessary element of discovery in this case. Neither do Defendants make any sort of allegations with respect to how

15

burdensome such a production will be. This is Defendants' burden of proof, and it has not been met. Without any information as to costs and figures associated with the production, it is difficult if not impossible to assess the burden to Defendants.

Second, Defendants take specific issue with Requests Nos. 57 and 62 of the Fifth RFP, requesting documents related to employees terminated because of their refusal of a job position and related to employees terminated who had more than 23 years of experience with EDF at the time of the termination. If Ms. Gaujacq is the only employee of Defendants that was terminated after 23 years experience with the company and/or the only employee to be terminated for refusing a job position, then she is entitled to know that and establish for the jury the unusual and retaliatory circumstances of her termination. If not, then she is entitled to discovery into those circumstances where others were similarly situated and similarly treated.

Third, Defendants object by artificially limiting Ms. Gaujacq's claims to the difference in treatment of her as compared to Mr. Nadal. Opposition at 22. As stated above, this is a complete misstatement of Ms. Gaujacq's claim, which is that she was discriminated against on the basis of her sex, and more importantly here, that she was retaliated against, which does not make her a Comparator to Mr. Nadal on that aspect of her case under these circumstances.

In addition, Ms. Gaujacq's damages determined in part by what she should have been paid as an executive of her stature, which necessarily encompasses a comparison of her to all other EDF and EDFINA employees of her status, and is not limited to Mr. Nadal.

Ms. Gaujacq is entitled into the discovery of other EDF and EDFINA employees that were in similar situations to hers and how they were treated in those situation. Ms. Gaujacq's Motion to Compel with respect to the treatment of such individuals should be granted.

## **CONCLUSION**

Plaintiff's motion to compel should be granted. Plaintiff requests that Defendants be required to respond fully and completely to all outstanding discovery requests no later than August 31, 2006, including delivering copies of all responsive pleadings and documents.

August 21, 2006                                    Respectfully Submitted,

*[signature]*

Elaine Charlson Bredehoft
D.C. Bar No. 441425
S. Christian Wickwire
D.C. Bar No. 488797
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq