IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) |
| v. | ) No. 1:05CV0969 (JGP) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al. | ) |
| Defendants. | ) |

## GENUINE MATERIAL FACTS IN DISPUTE – LAROCHE DECLARATION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7(h) and 56.1 of the United States District Court for the District of Columbia, plaintiff, Catherine Gaujacq, states that the following material facts are in dispute for the purpose of opposing the Declaration of Yann Laroche.[1] The numbered paragraphs below correspond to the numbered paragraphs in the Declaration of Yann Laroche submitted jointly by Defendants in support of the Defendants' motions for Summary Judgment. Because Defendants rely upon these declarations as if they are undisputed facts within their factual and legal arguments as noted below, Plaintiff submits this document to demonstrate that these statements are also in dispute.

1. Ms. Gaujacq does not dispute this statement.

2. Ms. Gaujacq does not dispute this statement.

3. From its creation to 2004, EDF was a French government owned Company

---

[1] Ms. Gaujacq also incorporates the arguments contained in her Motion to Strike filed in conjunction with this Opposition

called EPIC (Etablissement Public a caractere Industriel et Commercial), which owned companies and equity interests worldwide while enjoying a monopoly on the French territory for supply and distribution of electricity. (EDF annual reports 2001-2003). EDF lost its monopoly on the French electricity market following enactment of European laws starting in 2000 for industrial customers, followed by commercial customers in 2002, with residential customers to follow in 2007. A law enacted on November 17, 2004 changed EDF to a private corporation ("société anonyme"). (Def. Exh. 8 at EDF 4162, Def. Exh. 9.) Shares in EDF were sold to EDF and affiliate employees and retirees at preferential price, and to the public in October 2005, the second worldwide IPO of the year. (Def. Exh. 11, EDF 5679-5783 [excerpts], Att. 1, EDF 4093, Att. 2, Plaintiff 4419).

4. Ms. Gaujacq does not dispute this statement.

5. Ms. Gaujacq does not dispute this statement.

6. Like EDF in France, EDFINA was a commercial and industrial entity ("EPIC"), and was incorporated as a corporation in 1991. EDFINA is not a non-profit organization. (Att. 3, EDFINA Articles of Incorporation.)

7. Objection, hearsay. Objection, statement not based on personal knowledge. Without waiving these objections, see Gaujacq Decl. at ¶¶ 15, 19, 98.

8. Ms. Gaujacq had experience in the electricity generation markets, as well as environmental issues because of her position as "Director of Penly", and her experience as plant manager of a coal-fired power plant. Ms. Gaujacq was, to her knowledge, the first woman in the world to have management responsibility for a commercial nuclear power plant from 1994-2000. Ms. Gaujacq became Site Vice-President ("Directeur CNPE Penly") and became an EDF "Dirigeant"("personnel de Direction") on May 1, 1994, becoming one of the

2

350 higher-level Executives in the company worldwide (Def. Exh. 12, Def. Exh. 16, Laroche Declaration, Exh. A).

9. EDF Executive Compensation is governed by "EDF Executive Compensation Policy" ("La politique de rémunération des cadres Dirigeants") (Def. Exh. 91.) The compensations of Executives are individualized (Att. 4, de Botherel Deposition at 50-51.) The Defendants did not produce one document showing Ms. Gaujacq's rank or Nadal's rank. The Defendants did not produce any EDF document indicating the ranking of the positions of "President of EDFINA" or "General Delegate." Laroche HR organization stipulated that on March 31, 2004 the position of Vice-President EDFINA "Nuclear Projects" would be her third R3 position (Director of Penly – President of EDFINA – VP EDFINA) (Laroche Declaration, Exh. A). Ms. Gaujacq became Site Vice-President ("Directeur CNPE Penly") and became an EDF "Dirigeant" ("personnel de Direction") on May 1, 1994, thus becoming one of the 350 higher-level Executives in the company worldwide (Def. Exh. 12, Def. Exh. 16, Laroche Declaration, Exh. A.)

10. Objection, hearsay. Objection, not based upon Laroche's personal knowledge. Without waiving this objection, Gaujacq's Expatriation Contract provided that the **envisioned** duration of her assignment in the United States was three years. (Def. Exh. 15, at 438-439).

11. Laroche admits that he did not know about Ms. Gaujacq's position and performance (Att. 4, Laroche Dep. at 31, 38, 48, 81), and who was reporting to Creuzet and Ponasso. To the contrary, Creuzet and Ponasso approved Nadal's appointment as President of EDFINA on the exact same terms as Ms. Gaujacq's terms as President of EDFINA in 2000 on March 29, 2004, as well as the Executive Committee in April 2004. (Def. Exh. 41; see also Gaujacq Decl. at ¶¶ 54, 98, 110.)

3

12. Objection, hearsay. Objection, not based upon Laroche's personal knowledge. Without waiving these objections, *see* Gaujacq Decl. at ¶¶ 21, 35, 36, 37, 110.

13. Objection, hearsay. Objection, not based upon Laroche's personal knowledge. Without waiving these objections, *see* Gaujacq Decl. at ¶¶ 21, 36, 37, 110.

14. Objection, hearsay. Objection, not based upon Laroche's personal knowledge. Without waiving these objections, *see* Gaujacq Decl. at ¶¶ 21, 36.

15. Objection, hearsay. Objection, not based upon Laroche's personal knowledge. Without waiving these objections, Nadal had no background in the core business of the company, with the exception of two years as a Director serving as EDENOR CEO in the supply/ distribution electricity business (an R3 position) under the leadership of Fernando Ponasso. Nadal had no experience in the United States. Nadal had experience in PR and Communications in France. (Defs. Exh. 28.)

16. *See* Response to paragraph 11 above.

17. *See* Response to paragraph 11 above.

18. Ms. Gaujacq did not refuse this proposal. *See* Gaujacq Decl. at ¶¶ 41, 50, 55, 58.

19. Objection, not based on Laroche's personal knowledge. Without waiving this objection, they did not make an effort to find a mission that would keep Ms. Gaujacq in the United States. Metais and Bethouret expressed interest in speaking with Ms. Gaujacq about a new assignment in London, England (Def. Exh. 47).

20. Ms. Gaujacq never bypassed the hierarchy of EDFINA. See Gaujacq Decl. at ¶¶ 99, 113.

21. The company did not know what Ms. Gaujacq's reporting structure should be

4

so it was left open. (Def. Exh. 42).

22. Objection to relevance of Exhibit A to Laroche Declaration referenced in this paragraph. Objection, not based on Laroche's personal knowledge. Objection, hearsay.

23. Ms. Gaujacq does not dispute this statement.

24. Objection, hearsay. Without waiving the objection, *see* Gaujacq Decl. at ¶ 55.

25. Objection, hearsay. Without waiving this objection, this proposal was not acceptable to Ms. Gaujacq. (Laroche Declaration, Exh. C).

26. Objection, hearsay.

27. Objection, hearsay as to what Gaujacq had been directed to discuss with Bruno Lescoeur; hearsay as to what EDF had decided; and hearsay as to what Lescoeur and EDF wanted. Objection, not based on Laroche's personal knowledge. Without waiving these objections, *see* Gaujacq Decl. at ¶¶ 55, 58.

28. Objection, hearsay. Objection, not based on Laroche's personal knowledge. Without waiving these objections, Ms. Gaujacq's expatriation contract was agreed on by Creuzet on March 29, 2004. As well, the executive committee had agreed on Ms. Gaujacq's reporting structure defined by her contract.

29. Objection, hearsay. Without waiving this objection, on May 25, 2004, Creuzet told Ms. Gaujacq about the April EDF Executive Committee's final decision on her reporting structure to report to EDFINA President. Ms. Gaujacq immediately confirmed this agreement (Def. Exh. 48.) On May 25, Chairman Roussely directed that Nadal take up his duties in Washington. He confirmed that Ms. Gaujacq was appointed Vice-President of EDFINA, reporting to Nadal. He wrote "If Gaujacq wants to come back to France, it's her decision."

5

The EDF Chairman and CEO also "dissuade Nadal from renegotiating." (Def. Exh. 48.) Roussely also directed the HR organization to implement the decisions of the Executive Committee. (Def. Exh. 48.)

30. Objection, hearsay. Objection to interpreting Ms. Gaujacq's emails. Without waiving these objections, getting no reaction or response from the Chairman of EDFINA, Ponasso, on July 22, Ms. Gaujacq emailed and faxed EDF's Chairman, Roussely, and Chief Operating Officer, Creuzet, in Paris "Are you going to stop the illegal behavior of Christian Nadal against me?" (Def. Exh. 69.). Ponasso knew Ms. Gaujacq's complaint was about sex discrimination and harassment. (Att. 5, EDF 1038-42.) In his email, Ponasso refers to the two letters of June 18, 2004, and tells Creuzet: "I think this is what triggered it all"

31. Objection, draws a legal conclusion. Objection, hearsay. Without waiving these objections, *see* Gaujacq Decl. at ¶¶ 74, 75.

32. Laroche did not speak to Ms. Gaujacq about the <u>French</u> nuclear project. He could not speak with her about the project because he could not ignore the decisions of the Executive Committee in April, reinforced by the decision of the EDF Chairman on May 25, 2004. *See* Gaujacq Decl. at ¶ 103.

33. Ms. Gaujacq was not blackmailing the company by advising them she was going to file a complaint with the EEOC. *See* Gaujacq Decl. at ¶ 78.

34. Laroche knew Ms. Gaujacq's complaints pertained to Nadal's discriminatory and illegal behavior based on her gender. Def. Exh. 72 (Gaujacq asking for acknowledgement of her equal status with other male VP's); s*ee also* Gaujacq Decl. at ¶ 76.

35. Objection, hearsay. Without waiving this objection, Laroche knew her

6

complaints pertained to Nadal's discriminatory and illegal behavior based on her gender. Defs. Exh. 72 (Gaujacq asking for acknowledgement of her equal status with other male VP's); see also Gaujacq Decl. at ¶ 76.

36. By email dated July 25, 2004, to Creuzet, Laroche and Ponasso, Ms. Gaujacq confirmed their previous conversations. Defendants clearly show they perfectly understood the nature of the activity and knew they could be retaliating (Def. Exh. 72). They asked their legal counsel, Binet, to advise them on their decision. (Def. Exh. 72 at 1047A-50; Att. 6, Gaujacq Dep. at 420-22; Laroche Declaration, Exh. F). Laroche and Metais, with legal counsel Binet and Nadal, advised Creuzet to sign the July 27, 2004 letter.

37. Objection, hearsay. Objection, not based on Laroche's personal knowledge. Without waiving these objections, EDF knew the basis of Ms. Gaujacq's complaints. See Gaujacq Decl. at ¶¶ 73, 74, 75, 76, 77, 78.

38. Objection, not based on Laroche's personal knowledge. Without waiving this objection, legal counsel, Binet, together with Nadal, advised Creuzet to sign the July 27, 2004 letter. Their actions were a deliberate effort to avoid the enforcement of United States employment laws (Def. Exh. 72 and 73.)

39. Objection, not based on Laroche's personal knowledge. Without waiving this objection, this letter was a deliberate effort to avoid the enforcement of United States employment laws (Def. Exh. 72, Def. Exh. 73.)

40. Objection, not based on Laroche's personal knowledge. Without waiving this objection, the letter dated July 30, 2004, from Metais to Ms. Gaujacq, indicated she was

7

being reassigned to Paris. (Def. Exh. 74, Def. Exh. 75). The compensation package was unknown and the job offer was not as head of the EPR project in France. *See* Gaujacq Decl. at ¶ 104.

41. Objection, draws a legal conclusion. Objection, hearsay. Objection, not based on Laroche's personal knowledge. Without waiving these objections, Ms. Gaujacq refused to accept the discrimination and harassment by Nadal, as well as the retaliation of the Company and her employment with EDF was terminated on January 7, 2005 due to "faute grave" (grave fault) (Def. Exh. 88); *see also* Gaujacq Decl. at ¶¶ 73, 76, 83, 105.

42. Ms. Gaujacq refused to accept the discrimination and harassment of Christian Nadal, as well as the retaliation of EDF and EDFINA. *See* Gaujacq Decl. at ¶¶ 78, 105.

43. Objection, draws a legal conclusion.

44. Objection, this is a legal request, which Laroche cannot make.

November 20, 2006

Respectfully Submitted,

*Carla Brown*

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
Carla D. Brown
D.C. Bar No. 474097
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq