IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ, | ) | No. 1:05CV0969 (JGP) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA | ) | |
| INC., ELECTRICITE DE FRANCE, S.A. | ) | |
| and CHRISTIAN NADAL | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
TO STRIKE PORTIONS OF DECLARATIONS**

Morgan D. Hodgson *(D.C. Bar No. 186528)*
David A. Clark *(D.C. Bar No. 473279)*

Steptoe & Johnson, LLP
1330 Connecticut Avenue, N.W.
Washington, D. C. 20036
(202) 429-3000

*Attorneys for Defendant, Christian Nadal*

Laura B. Hoguet *(D.C. Bar No. 200915)*
Dorothea W. Regal *(D.C. Bar No. NY0064)*
Randi Seltzer May *(D.C. Bar No. NY0063)*

Hoguet Newman & Regal, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808

*Attorneys for Defendants Electricité de
France, S.A. and Electricité de France
International North America, Inc.*

Of Counsel:
Kathleen L. Lowden

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

A.   The Declaration Statements Cited in
      Defendants' 56.1 Statement Are All Admissible...............................................3

      1.   Nadal's Statements Cited in
            Defendants' 56.1 Statement Are Admissible..........................................3

      2.   Laroche's Statements Cited in
            Defendants' 56.1 Statement Are Admissible..........................................7

      3.   De Botherel's Statements Cited in
            Defendants' 56.1 Statement Are Admissible..........................................13

B.   The Remaining Portions of the Declarations are Also Admissible ....................18

      1.   Nadal's Other Statements Are Admissible .............................................18

            a.   Statements Challenged as Hearsay Are Admissible ...................18

      2.   Laroche's Other Statements Are Admissible...........................................26

            a.   Statements Challenged as Legal Conclusions Are Admissible ...26

            b.   Statements Challenged as Hearsay Are Admissible ...................28

            c.   Statements on Behalf of EDF Are Admissible ...........................33

            d.   Statement Challenged as Opinion Is Admissible........................34

      3.   De Botherel's Other Statements Are Admissible ....................................34

            a.   Statements Challenged as Legal Conclusions Are Admissible ...34

            b.   Statements Challenged as Hearsay Are Admissible ...................37

            c.   Statements Challenged As Irrelevant Are Admissible.................39

Conclusion .........................................................................................................40

# TABLE OF AUTHORITIES

## CASES

Page

AGI Realty Serv. Group, Inc. v. Red Robin Int'l Inc., 81 F.3d 160
    1996 WL. 143465 (6th Cir. Mar. 28, 1996).........................................................9, 10, 30

Barry v. Trustees of the International Association Full-Time Salaried Officers &
    Employees of Outside Local Unions, No. Civ. A. 02-2371,
    (D.D.C. Aug. 29, 2006)........................................................................................5, 19, 20

Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336 (4th Cir. 1994) ...............................14

Broadus v. O.K. Industrial, Inc., 226 F.3d 937 (8th Cir. 2000)........................................14

Crockett v. Abraham, 284 F.3d 131 (D.C. Cir. 2002) ...............................................5, 19, 20

Ingram v. Brink's, Inc., 414 F.3d 222 (1st Cir. 2005).........................................................14

Self-Realization Fellowship Church v. Ananda Church of Self-Realization,
    206 F.3d 1322 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2001).......................9, 30

Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601 (D.N.J. 2004).............................9, 10, 30

U.S. v. Castro-Lara, 970 F.2d 976 (1st Cir. 1992), cert. denied sub. nom,
    Sarraff v. U.S., 508 U.S. 962 (1993)..................................................................11, 28, 29

U.S. v. Gatling, 96 F.3d 1511 (D.C. Cir. 1996).......................................................11, 28, 29

U.S. v. Stover, 329 F.3d 859 (D.C. Cir. 2003), cert. denied, 541 U.S. 1018 (2004).........38

U.S. v. Williams, 358 F.3d 956 (D.C. Cir. 2004) ....................................................11, 28, 29

Wade v. WMATA, Nos. Civ. 01-0334 & 01-2385, 2006 WL. 890679
    (D.D.C. Apr. 5, 2006) .............................................................................................5, 6, 20

Williams Enterprises, Inc. v. Sherman R. Smoot Co., 938 F.2d 230 (D.C. Cir.
    1991) ..............................................................................................................................12

## STATUTES

Federal Rules of Evidence 401 ................................................................4

Federal Rules of Evidence 701 ..............................................12, 17, 18, 27, 34, 35

Federal Rules of Evidence 704 ..............................................12, 17, 18, 27, 34, 35

Federal Rules of Evidence 801(c)..............................................................4, 30, 38

Federal Rules of Evidence 801(d)..............................................................30

Federal Rules of Evidence 801(d)(1)..............................................................26

Federal Rules of Evidence 801(d)(2)..............................................................39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————

CATHERINE GAUJACQ,

PLAINTIFF,

v.

ELECTRICITE DE FRANCE
INTERNATIONAL NORTH AMERICA,
INC., ELECTRICITE DE FRANCE, S.A. and
CHRISTIAN NADAL,

DEFENDANTS,

—————————————————————

Civil Action No. C5-969 (JGP)

## **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DECLARATIONS**

Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal"), through undersigned counsel, submit this opposition to Plaintiff's Motion To Strike Portions Of Declarations ("Pl. Mot.") [Dkt. # 114].

Plaintiff's motion to strike portions of Defendants' Declarations submitted in support of their Motions for Summary Judgment is a diversionary tactic designed to distract the Court from the fundamental reality that Defendants are entitled to summary judgment dismissing Plaintiff's claims.

Plaintiff's evidentiary objections are irrelevant to Defendants' Motions for Summary Judgment. The evidentiary support for Defendants' Statement Pursuant to Rule 56.1 ("Defendants' 56.1 Statement" or "Def. 56.1") would stand unimpaired even if the Court were to sustain Plaintiff's challenges to the evidence put forth in Defendants'

Declarations. The Declarations themselves were not submitted as additional Rule 56.1 statements, and the infrequent statements from the Declarations relied upon in Defendants' 56.1 Statement either are not challenged at all -- and thereby admitted as material undisputed fact -- or the challenges are baseless.

The Declarations submitted by Defendants in support of their motions for summary judgment are:

(1)    Declaration of Christian Nadal, dated October 13, 2006 ("Nadal Decl.") [Dkt. # 103]. Nadal is an individual Defendant and is also Délégue Général (Delegate General) of EDF for North America and serves as President of EDFINA.

(2)    Declaration of Yann Laroche, dated October 12, 2006 ("Laroche Decl.") [Dkt. # 102]. Laroche is the Deputy General Manager of Defendant EDF, the second-highest ranking officer of EDF, and, as the former General Manager of EDF's Human Resources, the executive in charge of managing the human resources aspects of EDF's executives during the times relevant hereto. Laroche Decl. ¶1.

(3)    Declaration of Patrick De Botherel, dated October 12, 2006 ("De Botherel Decl.") [Dkt. #104]. De Botherel is EDF's Director of Executive Compensation and Benefits, in charge of remuneration for EDF executives, including remuneration pursuant to expatriation contracts for EDF executives assigned to expatriate positions outside of France. De Botherel Decl. ¶¶1, 3.

All three declarants give evidence in the nature of direct testimony as to matters within their personal knowledge. They all expressly declare that they have personal knowledge as to the matters set forth in their Declarations and thereby satisfy the personal knowledge requirement of Rule 56(e) of the Federal Rules of Civil Procedure.

Nadal Decl. ¶1; Laroche Decl. ¶1; De Botherel Decl. ¶1. De Botherel, who provided

evidence as to Gaujacq's employment history and prior EDFINA Presidents, also

declared that, as to matters preceding his employment at EDF, he believed them to be

true based on his review of EDF records reviewed in the regular course of his job. De

Botherel Decl. ¶1.

**A.      The Declaration Statements Cited in
          Defendants' 56.1 Statement Are All Admissible**

The challenged Declaration statements that are relied upon in Defendants' 56.1

Statement are those set forth below in this Part A, all of which are admissible.

**1.      Nadal's Statements Cited in
          Defendants' 56.1 Statement Are Admissible**

Nadal Decl. ¶¶9-10: cited at Def. 56.1 ¶37. Plaintiff challenges the statements in

Paragraphs 9 and 10 of Nadal's Declaration as hearsay (Pl. Mot. at 8). Gaujacq seeks to

strike these paragraphs in their entirety because they "detail what Chairman Roussely told

Mr. Nadal in a meeting or meetings in 2003." Pl. Mot. at 8. The statements are as

follows:

> 9.      In 2003 Chairman Roussely told me that EDF wished to
> send me to Washington, D.C. on a long-term mission. Roussely
> told me that EDF wanted to upgrade and broaden EDF's
> representation in the United States to optimize EDF's ability to
> take advantage of opportunities in North America that may be
> available to EDF as a result of changes affecting EDF. In
> particular, at that time, EDF was looking ahead to the upcoming
> change of EDF from a governmental entity to a private company in
> 2004 and the subsequent offering of stock to the public. This
> change introduced the possibility that EDF could become involved
> in interesting commercial ventures -- particularly in the United
> States where the energy industry was poised to exploit
> commercially viable alternatives to oil, including a new approach
> to nuclear energy. EDF wanted me to upgrade the relationships of
> EDF with potential energy partners in the United States and
> Canada. EDF wanted me to develop investment opportunities for

EDF in the North American energy market. And EDF wanted me to prepare the North American investment market for EDF's planned Initial Public Offering ("IPO"), by establishing relationships with potential investors and investment bankers in the United States.

10. In addition, the imminent privatization of EDF also meant that EDF would likely be facing many of the issues arising out of deregulation that many energy companies in the United States had already been through, and EDF wanted to have the benefit of insights from government and industry leaders in the United States for its strategic planning going forward. EDF also wanted me to develop information and strategic options in this area of deregulation.

This evidentiary challenge is irrelevant to Defendants' Motions for Summary Judgment because Plaintiff does not dispute Paragraph 37 of Defendants' 56.1 Statement as to EDF's new goals and needs; rather, she argues that she could have filled those needs. Plaintiff's Statement of Genuine Material Facts in Dispute ("Pl. 56.1 Statement") [Dkt. # 119] ¶37.

Plaintiff's objection to these statements fails because the statements are not hearsay. The Federal Rules of Evidence provide that out-of-court statements are hearsay only if they are offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Accordingly, Defendants' Declarants may freely testify, as does Nadal in Paragraphs 9 and 10 of his Declaration, to statements made to them by others that are offered for reasons other than to prove the truth of the matter asserted, such as the declarant's state of mind, relevant to the reasons for his actions. Fed. R. Evid. 401 (defining relevant evidence), 403 (providing for the admission of evidence admissible for one purpose even if not admissible for another purpose).

The importance of Roussely's statements to Nadal is not for their truth in an absolute sense, but for the non-hearsay use of the effect the statements had upon Nadal's

state of mind, particularly as to what Nadal understood when he heard them.[1]  As such,

these statements are not hearsay under Rule 801(c) of the Federal Rules of Evidence.

See, e.g., Crockett v. Abraham, 284 F.3d 131, 134 (D.C. Cir. 2002) (agency officer's

reports of committee's views not hearsay because not offered for truth but to explain their

effect on her actions);  Barry v. Trustees of the Int'l Ass'n Full-Time Salaried Officers &

Employees of Outside Local Unions, No. Civ. A. 02-2371, 2006 WL 2507557, at *5 n.2

(D.D.C. Aug. 29, 2006) (statements of chairman introduced for effect they had on those

at board meeting);  Wade v. WMATA, Nos. Civ.  01-0334 & 01-2385, 2006 WL 890679,

at *6 (D.D.C. Apr. 5, 2006) (statements offered to prove listener's state of mind).

The fact that Roussely told Nadal that EDF wanted "to upgrade and broaden

EDF's representation in the United States" and further told Nadal that EDF wanted *him*

(as opposed to others, including Gaujacq) to be responsible for leading EDF's US effort

(including in the nuclear arena) is important evidence as to Nadal's state of mind and his

motivations for the various actions he took when he came to the United States.  Indeed,

the Court need only look to the pleadings filed by Gaujacq herself to confirm some of the

many issues and incidents as to which Nadal's beliefs about the nature and scope of his

assignment are relevant and that Roussely's statements to Nadal are admissible to prove

Nadal's understanding.

Granting all reasonable inferences in Gaujacq's favor as required for summary

judgment, many key facts deal with the parties' different understandings of Nadal's role

at EDFINA.  As Gaujacq details in her summary judgment opposition, she claims that

---

[1]   Whether or not Roussely accurately relayed EDF's intent for the Washington delegation is not at issue in determining the admissibility of the statement.  Roussely's statement is accurate nonetheless, as evidenced by Laroche's evidence as to EDF's strategic goals and business plans for the Washington delegation, set forth in his Declaration and his deposition testimony.

when she learned Nadal was being assigned to Washington, her initial understanding was that he would be an advisor, not a replacement for her, and that Roussely had approved this role for Nadal. Plaintiff's Opposition to Nadal's Motion for Summary Judgment ("Pl. SJ Opp. (Nadal)) [Dkt. # 117] at 5; Declaration of Catherine Gaujacq, dated November 19, 2006 ("Gaujacq Decl.") [Dkt. # 116] at ¶ 44. She also admits that she advised EDFINA's immigration attorney that Nadal was to be employed as such an advisor and introduced him as such to others. Id. at ¶¶ 47, 49. This, of course, was diametrically opposed to Nadal's understanding.

The evidence that Gaujacq improperly seeks to exclude is Nadal's own testimony as to the basis for his differing understanding of the reasons for and scope of his assignment. Paragraphs 9 and 10 of his Declaration provide important context, not necessarily for the truth of what Chairman Roussely stated, but for what Nadal's understanding was of his new position. These paragraphs show that Nadal understood from his conversation with Roussely that he was to be "in charge of EDF's delegation in Washington" and not merely an advisor. These facts explain why Gaujacq's actions in informally and inaccurately introducing him to those working at EDFINA in a "minor" role appeared "strange" and even "rude." See Nadal Decl. at ¶¶ 16-17. Nadal's understanding, based on Roussely's statement, is also important to explain why Nadal was upset that Gaujacq had mischaracterized his position with EDFINA's immigration counsel, Nadal Decl. at ¶ 20, and why he concluded "that Gaujacq had created a situation at EDFINA and with [him] where it would be extremely difficult to work with her" and began to make his views known to EDF, including in an email dated April 1, 2004. See Nadal Decl. at ¶ 22.

The hearsay rules do not deprive Nadal of the opportunity to offer evidence as to the reasons for his actions – indeed, the opportunity to articulate legitimate nondiscriminatory reasons is central to both an employment discrimination defense and to counter any claims of malice for state tort claims. The Declaration paragraphs at issue do nothing more than set the backdrop for Nadal's contrary understanding to Gaujacq's. They are not hearsay – they set forth facts "as would be admissible in evidence" as required by Rule 56(e). Plaintiff's motion to strike these statements should be denied.

    **2.**    **Laroche's Statements Cited in Defendants' 56.1 Statement Are Admissible**

    1.    <u>Laroche Decl. ¶¶12-15</u>: cited at Def. 56.1 ¶37. Plaintiff challenges Paragraphs 12 through 15 of Laroche's Declaration on the ground that they are "statements on behalf of EDF generally" as to EDF's plans and the goals that EDF intended and wanted to accomplish through EDF's delegation in Washington at the time that EDF appointed Nadal to the position in Washington Pl. Mot. at 3-4.[2] The paragraphs state as follows:

> 12.    EDF wanted to increase its profile in the United States, deal successfully with Wall Street investors and attempt to enter into beneficial commercial ventures with potential energy partners in the United States. EDF wanted to send a top-level executive to Washington as its 'ambassador' who would have the diplomacy, 'savoir-faire' and expertise to deal with the strategic, financial and political issues we envisioned would be involved in achieving our new goals in the United States.

> 13.    Accordingly, EDF wanted someone to lead its delegation in Washington, D.C. with the stature and skill to position EDF most advantageously for its IPO, someone with substantial financial, marketing and strategic experience, as well as someone who could

---

[2]   Plaintiff erroneously states that Laroche neglected to indicate that he has personal knowledge of the matters stated (Pl. Mot. at 3). <u>See</u> Laroche Decl.¶1.

establish relationships with senior management and executives at investment firms and banks. In addition, concerning EDF's commercial goals, we wanted someone with the stature, skill and business experience to explore and negotiate business deals with potential energy partners in the United States. And, as regards the global political issues affecting energy and EDF's business, EDF wanted a representative in Washington, D.C. to establish and maintain high-level contacts with U.S. decision-makers in government and business and act as EDF's "ambassador."

14.     Because of the importance of this new mission, EDF wanted to place a top-level senior executive there, at the top executive rank of "R-1," thereby demonstrating to the U.S. market the importance EDF attached to its new mission.

15.     EDF determined that Christian Nadal ("Nadal") was its choice to head its delegation in Washington following Gaujacq. He had the skills, stature, experience, business background and rank that EDF required to implement its new strategic goals and business plans in the United States. This decision was made by EDF's Chairman, President and CEO, François Roussely, following consultation with the Executive Committee.

This evidentiary challenge is irrelevant to Defendants' Motions for Summary Judgment because Plaintiff does not dispute Paragraph 37 of Defendants' 56.1 Statement as to EDF's new goals and needs; rather, she argues that she could have filled those needs. See Pl. 56.1 Statement ¶37.

This challenge fails because (1) Laroche expressly stated that he has personal knowledge of the matters in his Declaration (Laroche Decl. ¶1); and (2) Laroche is thoroughly competent, as the second-highest ranking officer of EDF and a long-time member of its Executive Committee, to testify as to the goals and plans of EDF at all relevant times and in particular why EDF appointed Nadal to head its delegation in Washington after Gaujacq. The decision was made in consultation with the Executive Committee of which Laroche is a member. Laroche Decl. ¶¶ 15, 26.

Further, a corporate officer, such as Laroche, is deemed to have personal knowledge of the acts of the corporation. See Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000), cert. denied, 531 U.S. 1126 (2001) (affiant's position as corporate officer permitted court to presume affiant had personal knowledge of the corporate activities at issue); AGI Realty Serv. Group, Inc. v. Red Robin Int'l Inc., 81 F.3d 160 (Table), 1996 WL 143465, at *4 (6th Cir. Mar. 28, 1996) ("Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment."); Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 606 (D.N.J. 2004) (as managing director, declarant would have sufficient personal knowledge of company operations to support his assertions). See also Moore's Federal Practice §56.14 [1][c] (3d ed. 1999) ("Corporate officers are presumed to have personal knowledge of acts of their corporation.").

    2.    Laroche Decl. ¶ 38: cited at Def. 56.1 ¶ 122. Plaintiff also challenges Paragraph 38 of Laroche's Declaration on the ground that Laroche's statement is a "statement on behalf of EDF generally," stating what EDF did upon receiving Gaujacq's threat that she would file a complaint unless EDF acceded to her demand to sign the contract she proposed. Pl. Mot. at 3-4. The Paragraph states as follows:

> EDF did not give in to Gaujacq's "blackmail" and did not make any other proposals to her for a mission in the United States. Instead, EDF determined, after consultation with French counsel, to rely upon the expiration term of Gaujacq's then current expatriation contract, which expired July 31, 2004, and to notify Gaujacq that she must return to France for her next mission thereafter.

Plaintiff admits that EDF was advised by French counsel in sending her the July

27, 2004 letter, Pl. 56.1 Statement, ¶ 122, notifying her of the coming expiration of her expatriate contract and her ensuing repatriation.

This challenge fails for the same reason as Plaintiff's challenges to the preceding paragraphs (Laroche ¶¶ 12-15) fails. Laroche is fully competent, as the second-highest ranking officers of EDF and the General Manager of EDF's Human Resources directly involved in EDF's corporate decision, to testify as to the decision made by EDF and the reasons for it. He clearly has personal knowledge as to these corporate acts and decisions, and his testimony on those points is admissible. See <u>AGI Realty</u>, 1996 WL 143465, at *4; <u>Seltzer</u>, 339 F. Supp. 2d at 606.

The "blackmail" to which Laroche refers in Paragraph 39 of his Declaration is his characterization of Gaujacq's threat to file a complaint unless EDF signed the contract she had proposed, the terms of which EDF had previously rejected. Laroche Decl. ¶33. He so testified at his deposition as well. Def. 56.1 Ex. 4 (Excerpts from Laroche Deposition Transcript) at Tr. 88-92.

3. <u>Laroche Decl. ¶39</u>: cited at Def. 56.1 ¶122. Plaintiff challenges Paragraph 39 of Laroche's Declaration as hearsay on the ground that it "describes" the attached exhibit. The paragraph states as follows:

> By letter from Creuzet dated July 27, 2004, EDF sent Gaujacq formal notice of the termination of her overseas assignment as of July 31, 2004, giving her until November 1, 2004 -- three additional months -- to prepare to return to France. She was advised that EDF would offer her an appropriate position in the Energy Branch, which she should continue to discuss with Lescoeur. A copy of Creuzet's July 27 letter to Gaujacq is attached hereto as **Exhibit H.**

This challenge is irrelevant to Defendants' Motions for Summary Judgment as the statement merely describes an admissible document on which Plaintiff herself relies. <u>See</u> Pl. 56.1 ¶ 123.

Plaintiff's objection fails because the statement is not hearsay. It is admissible because it is relevant for the non-hearsay purpose of explaining and placing in context the statements in the attached letter, not for the truth of the statements in the document itself. <u>See</u> <u>U.S. v. Williams</u>, 358 F.3d 956, 963 (D.C. Cir. 2004) (out-of-court statement may be admitted to provide background information); <u>U.S. v. Gatling</u>, 96 F.3d 1511, 1524 (D.C. Cir. 1996) (statements offered simply to provide background for the rest of the witnesses' testimony not hearsay); <u>U.S. v. Castro-Lara</u>, 970 F.2d 976, 981 (1st Cir. 1992), <u>cert. denied sub. nom.</u> <u>Sarraff v. U.S.</u>, 508 U.S. 962 (1993) (testimony offered for purpose of providing relevant context or background not considered hearsay).

4.    <u>Laroche Decl. ¶35 (second sentence)</u>: cited at Def. 56.1 ¶127. Plaintiff challenges the referenced sentence in Paragraph 35 of Laroche's Declaration as hearsay (Pl. Mot. at 3). The paragraph states as follows (with the challenged sentence in italics):

> The first time I knew that Gaujacq was complaining about sex discrimination and sexual harassment under United States law was after EDF received a copy of the claim she filed with the United States Equal Employment Opportunity Commission ("EEOC"). *To my knowledge, none of the other EDF executives who had any involvement with the matter of Gaujacq's mission or her complaints knew that she was complaining about sex discrimination or sexual harassment either, since that topic never came up in discussions about the matter prior to receipt of her EEOC claim.*

This challenge fails because there is no hearsay statement, and Laroche's statement does not incorporate anybody else's statement. He states the fact, as to which he is completely competent to testify, that in his discussions with other EDF executives

involved with the Gaujacq mission or her complaints, the topic of complaints of sex discrimination or sexual harassment never came up. It is also not hearsay for Laroche to state that due to the lack of any such reference in discussions, "to [his] knowledge, none of those other EDF executives knew Gaujacq was complaining of sex discrimination either." It is clearly Laroche's legitimate inference drawn from the stated facts, and such inference is legally cognizable as personal knowledge and admissible under Rule 56(e). See Williams Enters., Inc. v. Sherman R. Smoot Co., 938 F.2d 230, 234 (D.C. Cir. 1991) (witness entitled to draw conclusions and inferences from facts of which he had personal knowledge).

     5.     Laroche Decl. ¶41 (third sentence): cited at Def. 56.1 ¶¶139, 141. Plaintiff challenges the referenced sentence in Paragraph 41 of Laroche's Declaration as a legal conclusion (Pl. Mot. at 2). This sentence states as follows:

> Under the circumstances, her absence from her new post since November 2 constituted a grave fault, which warranted dismissal under the French national statute governing personnel in the industries of electricity and gas ("Le Statut National du Personnel des Industries Electriques et Gazières"), and, as a result, EDF concluded that her employment must be terminated.

This challenge fails because the statement is merely a statement of fact that, in the estimation of her employer EDF at the time, Gaujacq's failure to report to her assigned post in France was a "grave fault," which is a ground for dismissal of an EDF employee. The grounds are among those set forth in the National Statute, to which he refers. Laroche was for years the EDF General Manager responsible for Human Resources at EDF. He is fully competent to testify as to what the factual grounds for dismissal of EDF employees are according to EDF policy and procedure, and to what his opinion is as to the existence of facts meeting those grounds. See Fed. R. Evid. 701, 704.

Laroche is also the EDF executive who signed Gaujacq's termination notice, and his statement is competent evidence of EDF's grounds for Gaujacq's termination.

### 3. De Botherel's Statements Cited in Defendants' 56.1 Statement Are Admissible

1. <u>De Botherel Decl. ¶31</u>: cited at Def. 56.1 ¶¶12, 19. Plaintiff challenges Paragraph 31 of De Botherel's Declaration as irrelevant, arguing that compensation of Plaintiff's male predecessors is not relevant under the Equal Pay Act (Pl. Mot. at 6-7). The paragraph states as follows:

> EDF has rotated EDF executives in the position heading its delegation in Washington since EDFINA was established in 1991 as its representative office. Prior to Gaujacq's appointment in 2000, EDF's delegation in Washington had been headed by a series of four prior EDF executives assigned by EDF, each of whom served as President of EDFINA for periods ranging from two to four years. They were: Henri Herbin (August 1990-1992), Marc Géry (October 1992-June 1996), Pierre Boussard (July 1996-June 1998) and Jean Cottave (July 1998-July 2000). Every one of those prior heads of EDF's delegation in Washington was an EDF employee. Cottave occupied the pay grade level at the time equivalent to the current "R-3." The others occupied inferior pay grade levels.

This challenge is irrelevant to Defendants' Motions for Summary Judgment because Plaintiff admits the rotation of EDF executives at EDFINA, Pl. 56.1 Statement ¶¶ 12, 19, and Defendants have not raised in Defendants' 56.1 Statement the fact that the EDF ranks of prior Presidents of EDFINA were equal to or lower than Gaujacq's rank as an "R-3."

Plaintiff's objection fails because the statement is relevant to the points for which it is cited in Defendant's 56.1 Statement -- that EDF's practice is to rotate executives assigned to head its delegation in Washington, which in turn is relevant to the fact that

Plaintiff's expatriate assignment there was never expected to be for longer than her contractual rotation.

It is also relevant to EDF's defense to Plaintiff's Equal Pay Act ("EPA") claim because in an EPA action, it is appropriate to compare the plaintiff-employee's compensation to that of her immediate (and non-immediate) successors and predecessors. Ingram v. Brink's, Inc., 414 F.3d 222, 233 n.10 (1st Cir. 2005); Broadus v. O.K. Indus., Inc., 226 F.3d 937, 941-42 (8th Cir. 2000); Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 352 (4th Cir. 1994). The fact that Gaujacq's male predecessors occupied ranks equal to or lower than hers is relevant to prove that the salary of the person heading EDF's Washington delegation is based on rank, which is a factor other than sex.

      2.    De Botherel Declaration ¶5: cited at Def. 56.1 ¶48. Plaintiff challenges Paragraph 5 of De Botherel's Declaration as irrelevant, arguing that the French statutory grade level ranking system described does not apply to Gaujacq and Nadal (Pl. Mot. at 6). The paragraph states as follows:

> EDF has a *bona fide* grade-level ranking system for all its French employees throughout its work force. This system is governed, in part, by a French statute, the National Statute of Personnel of the Electric and Gas Industries ("Le statut national du personnel des industries électriques et gazières") (hereafter referred to as the "National Statute"), which applies to French employees of EDF. Excerpts from the National Statute are attached hereto (together with English translations thereof) collectively as Exhibit A.

This challenge fails because the statutory component of EDF's employee ranking system is relevant to the gender-neutral reason why Gaujacq had the grade levels and corresponding compensation levels she had from the time she was hired in 1980 through her term as manager of a nuclear power plant in 2000, from which she was promoted in 2000 to the executive ranks at the bottom level "R-3." It is also relevant to show the

hierarchical employment structure at EDF and to show the slow pace at which EDF employees may rise in rank.

       3.     <u>De Botherel Decl. ¶6</u>: cited at Def. 56.1 ¶¶148, 149.

> The National Statute established and regulates a hierarchical system for EDF's non-management employees and the employees at the first level of management. This consists of a classification or ranking of employees based on type of job, with the ranks ranging from grade 1 (the lowest) to grade 20. **(Ex. A, Art. 8)**. The statutory non-management ranks expressly include engineers. The basic salary ranges for employees in the statutory ranks 1-20 are established, by rank, by agreement between EDF and the national union representing employees in the electrical and gas industries. **(Ex. A, Art. 9)**.

Plaintiff challenges this statement as irrelevant on the same ground as her challenge to the preceding challenged statement (De Botherel Decl. ¶5), and the challenge fails for the same reason set forth above.

       4.     <u>De Botherel Decl. ¶10</u>: cited at Def. 56.1 ¶154.

> EDF utilized a grade–level ranking system for the entire time that Gaujacq was employed by EDF (1980-2005).

Plaintiff challenges this statement as irrelevant on the same ground as her challenge to the preceding challenged statement (De Botherel Decl. ¶5), and the challenge fails for the same reason set forth above.

       5.     <u>De Botherel Decl. Ex. A</u>: cited at Def. 56.1 ¶148.

Exhibit A is excerpts from the French National statute governing grade level classifications (and other terms and conditions of employment) for employees in the electric and gas industries (the National Statute).

Plaintiff challenges this exhibit of statutory excerpts as irrelevant on the same ground as her challenge to the three preceding challenged statements (De Botherel Decl. ¶¶5, 6, 10), and the challenge fails for the same reasons set forth above.

6.    <u>De Botherel Decl. ¶40 (fifth, six, seventh sentences)</u>: cited at Def. 56.1 ¶166. Plaintiff challenges the referenced sentences in Paragraph 40 of De Botherel's Declaration as a legal conclusion (Pl. Mot. at 5).  The paragraph states as follows (with the challenged sentences in italics):

> EDF is not obligated to provide any particular advance notice to the expatriate employee of his or her required repatriation to France. EDF requires that its employees return to France upon the expiration of their expatriate assignment unless the employee is assigned to another position abroad. The Gaujacq Expatriate Contract refers to a management guide that contains EDF policies generally applicable to the assignment of EDF employees to work abroad, entitled "Guide de Gestion des Agents Travaillant à l'Etranger" (Management Guide for Representatives Working Abroad (hereafter, the "Guide").  An excerpt from the Guide, together with an English translation thereof, is attached hereto as **Exhibit G**.  *The Guide does not contain any requirement to give any particular advance notice of repatriation.  It states that "it is appropriate" for home management in France to have an "evaluative discussion" with the expatriate "if possible annually, at the latest 6 months before the return" to France.  (Ex. G, art. 2.31).*  This generally means that EDF home management should stay in communication with the expatriate and recommends a discussion (which may include discussion about repatriation) 6 months before the return, but it is not a requirement.

This challenge fails because it is patently a statement of fact in which De Botherel, the EDF executive charged with managing the compensation aspects of EDF expatriate assignments, explains the role and function of the "Management Guide" for expatriate assignments.  The statement explains that there is no requirement in the Guide that an expatriate be given 6 months' advance notice of the end of an expatriate

assignment and explains the context of the Management Guide's reference to a 6-month

time frame and its factual lack of applicability to Gaujacq's situation.

Even if this and similar testimony of EDF witnesses were to be viewed as opinion

testimony on "ultimate" issues, the testimony would still not be objectionable.   Lay

witnesses are competent to offer opinions that are rationally based on their perceptions

and helpful to determining a fact in issue, Fed. R. Evid. 701, and this is true even if such

opinions "embrace[] an ultimate issue to be decided by the trier of fact." Fed. R. Evid.

704.

      7.    De Botherel Decl. ¶41: cited at Def. 56.1 ¶167.   Plaintiff challenges

Paragraph 41 of De Botherel's Declaration as a legal conclusion (Pl. Mot. at 5).   The

paragraph states as follows:

> Although Gaujacq's expatriate assignment expired according to its
> terms on the extended date of July 31, 2004, EDF could have
> terminated Gaujacq's assignment earlier if EDF decided it was in
> its interest to do so. In fact, the Guide expressly provides that EDF
> retains the discretion to terminate an expatriate assignment "at any
> time," even before the expiration of the assignment, "if the interest
> of EDF requires it or for any other justifiable reason." (Ex. G, art
> 2.32-1(2)).

This challenge is irrelevant to Defendants' Motions for Summary Judgment

because Plaintiff herself admits that the Guide sets forth EDF's policies and practices

relating to EDF expatriates working abroad, and she does not state any dispute as to the

Guide's provisions on termination of an expatriation assignment.   See Pl. 56.1 Statement

¶¶166, 167.

Plaintiff's objection fails for the same reason as the preceding challenged

statement (De Botherel Decl. ¶40).   This statement is a factual explanation of the freedom

EDF expressly retains to terminate any expatriate assignment at any time if EDF interests

so require or for any other justifiable reason, as set forth expressly in the Management Guide. Moreover, to the extent that it may be viewed as an opinion on the existence of a right EDF contends it has, it is admissible because lay witnesses are competent to offer opinions that are rationally based on their perceptions and helpful to determining a fact in issue, Fed. R. Evid. 701, whether or not such opinions "embrace[] an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704.

8.    De Botherel Decl. ¶30 (first sentence): cited at Def. 56.1 ¶13. Plaintiff challenges the referenced sentence in Paragraph 30 of De Botherel's Declaration as a legal conclusion (Pl. Mot. at 5). The paragraph states as follows (with the challenged sentence in italics):

> *Throughout Gaujacq's expatriate assignment in Washington, she was an employee of EDF.* EDF paid her salary and benefits in French Francs and then in Euros, deposited into her bank account in France. Gaujacq continued to receive insurance benefits from EDF and to accrue rights to EDF pension benefits. The terms and conditions of her employment with EDF continued to be subject to all the rules, procedures and policies that apply to all of EDF's employees.

This challenge fails for the same reason as the two preceding challenged statements (De Botherel Decl. ¶¶40, 41). Fed. R. Evid. 701, 704.

**B.    The Remaining Portions of the Declarations Are Also Admissible**

The rest of Plaintiff's challenges to portions of Defendants' Declarations are equally without merit. All such statements are admissible.

**1.    Nadal's Other Statements Are Admissible**

**a.    Statements Challenged as Hearsay Are Admissible**

The following Nadal statements, challenged by Plaintiff as hearsay, are all admissible for the reasons stated.

1.     Nadal Decl. ¶¶9-10.

This was addressed in Part A.

2.     Nadal Decl. ¶14 (first, second, last sentences).

Plaintiff challenges the referenced sentences of Nadal's Declaration. The paragraph states as follows (with the challenged sentences in italics):

> *Chairman Roussely had decided that my title was to be Delegate General of EDF for North America. From my discussion with Chairman Roussely in 2003, I understood that I was to be in charge of EDF's delegation in Washington.* The very title signifies that, and of course our discussions in 2003 about the mission made it clear to me as well. I did not at that time discuss with Chairman Roussely the role of Catherine Gaujacq ("Gaujacq") in Washington. *He told me that she expected to remain until the summer of 2004.*

These statements are not hearsay. The Paragraph 14 testimony at issue again concerns Nadal's understanding of what Chairman Roussely decided, the information Roussely passed on to Nadal, and what Nadal's understandings were based on discussions with Roussely. Because these statements all informed Nadal's understanding of EDF's intentions about Nadal's and Gaujacq's respective roles at EDFINA and are offered solely for that reason, none of these statements is objectionable as hearsay.

In the first sentence, Nadal is merely referring to the title of Delegate General to which Nadal was appointed pursuant to the Decision executed by Roussely. This document is a business record of EDF and is filed under seal with the Court as Exhibit 27 to Defendants' 56.1 Statement. The statement in the second sentence is also not hearsay. Nadal does not purport to relay any Roussely statement regarding Nadal being in charge of EDF's delegation in Washington. It is simply a statement of Nadal's understanding and is therefore admissible. Crockett, 284 F.3d at 134; Barry, 2006 WL 2507557, at *5

n.2; Wade, 2006 WL 890679, at *6. The statement in the last sentence of Paragraph 14 is

not hearsay either. It is a statement of what Roussely told Nadal, in a discussion between

the two of them. Roussely's communication to Nadal is relevant for the non-hearsay

purpose of the effect on Nadal's state of mind of Roussely's making of the statement to

him. Because the statement is offered for a purpose other than the truth of what Gaujacq

"expected," it is admissible.

        3.      <u>Nadal Decl. ¶19 (second, third sentences)</u>.

     Gaujacq also challenges the second and third sentences of Paragraph 19 of

Nadal's Declaration. Pl. Mot. at 8. Paragraph 19 provides as follows (with the

challenged sentences in italics):

> After meeting Gaujacq on February 25, I returned to Paris, where I
> spoke with François Metais, the head of EDF's Delegation for
> Management of Executives ("Délégation des Cadres Dirigeants")
> ("DELCADIR"), to clarify my mission vis-à-vis that of Gaujacq.
> *He had told me that Gaujacq had been previously informed of my*
> *appointment and that he had in fact previously provided to*
> *Fernando Ponasso, head of EDF's Americas Branch, at his*
> *request for purposes of informing Gaujacq, a copy of Chairman*
> *Roussely's appointment of me to that position. Metais undertook*
> *to make sure that the confusion on the part of Gaujacq was cleared*
> *up.*

     Gaujacq claims that the italicized sentences are inadmissible hearsay because they

"state what Mr. Metais told Mr. Nadal after February 25, 2004 and what Mr. Metais

"undertook" after that discussion. Pl. Mot. at 8.

     What Metais told Nadal about EDF informing Gaujacq about Nadal's

appointment is not hearsay because it is relevant for a non-hearsay purpose, the effect on

Nadal's state of mind of Metais making the communication. Crockett, 284 F.3d at 134;

Barry, 2006 WL 2507557, at *5 n.2; Wade, 2006 WL 890679, at *6. The fact that Nadal

was told that Gaujacq had previously been informed of his appointment before she met him in Washington and nonetheless behaved as she did during that encounter (see Nadal Decl. ¶¶16-18) is the relevance, not whether or not Metais was accurate.

As with Roussely's statements discussed above, Metais' statements and promised undertakings are not offered by Nadal for the purpose of proving that Gaujacq had in fact been told of Nadal's role in the United States prior to Nadal's strange meeting with Gaujacq on February 25 or to prove that Metais actually acted to clear up any remaining confusion on Gaujacq's part. Indeed, Gaujacq herself admits elsewhere both that she was informed of Nadal's appointment before the February 25, 2005 meeting and received further "clarification" afterward. See Gaujacq Decl. at ¶ 43 ("On January 28, 2004, Ponasso's human resource assistant in Buenos Aires, Jean-Louis Betouret, called me while he was in France and told me Nadal had been appointed General Delegate to USA-Canada.") and ¶ 51 ("In our meeting on March 23, 2004 in Buenos Aires, Ponasso communicated to me the official announcement of Nadal's appointment as 'General Delegate' and President of EDFINA."). Rather, once again, the point is that this evidence is relevant and offered to show that Nadal believed, based on the statements from and undertaking by Metais, that Gaujacq had already been informed of his position at EDFINA when the two first met on February 25 and that she would soon be reminded of his role vis-à-vis hers. Nadal's reports of Metais' statements and undertaking -- not offered for their truth -- are thus admissible.

Plaintiff's challenge misreads the word "undertook" in the context of the statement. There is no reference in this paragraph to any statement by Metais after the discussion described in this paragraph.

4.     <u>Nadal Decl. ¶20 (fourth sentence).</u>

Gaujacq challenges on hearsay grounds Nadal's testimony in Paragraph 20 of his

Declaration recounting what EDFINA attorney McVicker told Nadal on March 11, 2004.

Pl. Mot. at 8.  The contested sentence of Paragraph 20 is shown in italics:

> However, I learned several weeks later that the matter had
> evidently not been resolved.  Gaujacq had undertaken to arrange
> for an immigration lawyer to process my application for a visa
> permitting me to work in the United States.  (In fact, Gaujacq had
> told me on February 25 that I was not permitted under US
> immigration law to come back to the United States to work until
> my visa application was approved, and she had said she would
> handle it.)  *On March 11, I received a call at my home in Paris
> from the immigration lawyer, Michael McVicker, in which he told
> me that it would be very difficult for me to get a visa because my
> background did not support an application for a position as a "gas
> analyst," which is how Gaujacq had described my position.*  This,
> of course, was not my position.  The news from McVicker was
> very surprising to me and extremely unsettling since it indicated
> that Gaujacq was for some reason working against me and that,
> evidently, EDF had not yet clarified the situation adequately with
> Gaujacq.  I communicated this news to Metais and, again,
> requested that the situation be clarified.

The McVicker statement is relevant for a non-hearsay purpose, namely, the effect

on Nadal's state of mind.  On its face, this testimony is not offered for the truth of

whether it would in fact be difficult for Nadal to get a visa to serve as a gas analyst in

view of his background or even to establish that Gaujacq did in fact tell McVicker that

Nadal would be serving in that capacity.  Indeed, Gaujacq has admitted that she

ultimately corrected the submission to make clear that Nadal would serve as President of

EDFINA and that she did in fact earlier tell McVicker that Nadal would not be serving as

President but rather as an advisor on gas issues.  See Pl. 56.1 Statement ¶ 55 ("Ms.

Gaujacq redirected the company's immigration attorney to prepare Nadal's visa

application to be employed as President of EDFINA on March 24, 2004.") and Gaujacq

Decl. at ¶49 ("On or about February 25, 2004, I signed a retainer with EDFINA's immigration attorney, Michael McVicker, to process Nadal's visa application as an International Manager to be employed with EDFINA as a Senior Advisor focusing on gas and equity markets.").

Rather, as with the other statements Gaujacq challenges, the challenged testimony is relevant to explain Nadal's state of mind. See Nadal Decl. ¶ 20 ("The news from McVicker was very surprising to me and extremely unsettling since it indicated that Gaujacq was for some reason working against me and that, evidently, EDF had not yet clarified the situation adequately with Gaujacq."). As such, it too is admissible.

> 5.    Nadal Decl. ¶24 (fourth sentence).

> Chairman Roussely told me that he would resolve the matter immediately, with Gaujacq reporting to me on nuclear matters if she stayed at EDFINA, and that he wanted me in place in Washington at the beginning of June.

This is not hearsay because what Roussely said to Nadal is relevant for a non-hearsay purpose, namely, the effect on Nadal of being told that the issue of the reporting structure would be resolved and that Roussely wanted Nadal in place in Washington in June. Whether or not Roussely's statements of intent were true and accurate when Roussely made them is not the purpose for which they are offered. The Paragraph 24 testimony at issue again concerns Nadal's understanding of what Chairman Roussely decided, the information Roussely passed on to Nadal, and what Nadal's understandings were based on his discussions with Roussely. Because these statements all informed Nadal's understanding of EDF's intentions about Nadal's and Gaujacq's respective roles at EDFINA and are offered for that reason, none of these statements is objectionable as hearsay.

6.     Nadal Decl. ¶54 (last sentence).

Gaujacq seeks to strike the final sentence of Paragraph 54 of Nadal's Declaration on hearsay grounds because it "repeats an alleged statement made generally by the 'Energy Branch' [of EDF]." Pl. Mot. at 8. The full paragraph, with the allegedly offending sentence highlighted, reads as follows:

> At all times in this meeting I was professional and did not raise my voice with her, even though she was refusing to follow my very reasonable instructions and even when she said to me "Are you kidding?" I told Gaujacq that she must do as I instructed because I was the head of EDF's delegation and that I needed this information to perform my mission. As to the NuStart documents, I told her that I particularly needed them so that I could keep the Energy Branch in France adequately informed of the status and developments of this matter. *Gaujacq said that she took care of informing the Energy Branch about nuclear matters, and I told her that the Energy Branch had complained during the meeting in Lyon on June 21 about not having adequate information and that I had agreed to provide the information they needed.*

Gaujacq's objection is not well-taken. As the context of Paragraph 54 makes clear, the import of this sentence is not whether or not Gaujacq *in fact* provided EDF's Energy Branch with adequate information. Rather, the purpose of the statement is to demonstrate what Nadal understood based on these *reports* regarding a lack of information from Gaujacq on EDF's part. That information is relevant to explain why he believed it important to insist that Gaujacq return to EDFINA the only copies of documents on that subject and to undercut any inference that such demands were arbitrary or discriminatory. Such evidence is particularly relevant and should be admitted to show Nadal's understanding of the situation, given that Gaujacq contends that the only plausible explanation for his actions is his lack of respect towards women. See, e.g., Pl. SJ Opp. (Nadal) at 2. The underlying complaint of the Energy Branch that Nadal told

Gaujacq about is not here presented for the truth of the matter, just for the fact that Nadal told Gaujacq about it.

       7.    Nadal Decl. Ex. B

This exhibit is notes taken by Jean-Louis Betouret of EDF, the head of Human Resources for EDF's Americas Branch, of a conversation he had with Nadal on February 10, 2004 in which Nadal expressed his willingness to work with Gaujacq. Plaintiff has waived any objection to the admissibility of this Exhibit because she herself relies on it. Pl. 56.1 Statement ¶52 & Ex 39.

Gaujacq challenges the admissibility of Exhibit B to the Nadal Declaration on hearsay grounds. Pl. Mot. at 8. The exhibit is offered in Nadal's Declaration in support of the following testimony:

> In a telephone conversation on February 10, 2004 with the person in charge of human resources for the Americas Branch (Jean-Louis Betouret), I said that I had an open mind about having Gaujacq continue working at EDFINA in some capacity. Nadal Decl. ¶ 14.

In pertinent part, Betouret's notes corroborate that Nadal said he was: "open as far as C. Gaujacq is concerned. Stay, why not. She convinced [Nadal] that there was 'lots of work.'" Ex. B. to Nadal Decl.

Gaujacq says little about the nature of her objection to this exhibit. Beyond simply identifying the exhibit as "Mr. Betouret's notes of a conversation with Nadal," the Motion says only that the notes "purport to confirm what Mr. Nadal states he said to Mr. Betouret." Pl. Mot. at 8.

If Gaujacq's argument is that Betouret is the declarant and has not testified to its accuracy, her objection is moot because Defendants have submitted evidence from the declarant himself attesting that the notes are his, were made contemporaneously with the

conversation and accurately reflect the conversation between him and Nadal in which Nadal said that he was open to having Gaujacq stay at EDFINA. Declaration of Jean-Louis Betouret, dated December 2, 2006 ("Betouret Declaration") ¶¶ 3-5.

Alternatively, if Gaujacq's hearsay argument is as to a prior consistent statement of Nadal as the declarant, such objection would not be well taken. Nadal's earlier statement to Betouret is a prior statement by a witness (Nadal), as to which he has been subject to cross-examination (Nadal was deposed for two days by Plaintiff's counsel), and so would not be hearsay under Rule 801. Fed. R. Evid. 801(d)(1) ("A statement is not hearsay if the declarant . . . is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....").

## 2. **Laroche's Other Statements Are Admissible**

### a. **Statements Challenged as Legal Conclusions Are Admissible**

The following statements in the Laroche Declaration, challenged by Plaintiff as legal conclusions (Pl. Mot. at 2), are all admissible for the reasons stated:

(1)     Laroche Decl. ¶31(sixth sentence).[3]

> However, it certainly would be legitimate for EDF to terminate the employment of any employee who refused to accept the assignment we wanted her to take, particularly where the assignment is suited to the employee's career, as were all the proposals EDF made to Gaujacq.

This is not a legal conclusion. It is a statement of fact by the EDF General Manager of Human Resources as to the legitimacy of terminating any EDF employee for

---

[3] Plaintiff's motion here refers to the "fifth sentence" of ¶31, but we believe her ensuing characterization of the statement indicates that she meant to challenge the sixth sentence. The fifth sentence is separately challenged as "opinion" below.

refusing to accept a job assignment under the circumstances there stated. There is no mention whatsoever of law or legality. Plaintiff is apparently reading law into the word "legitimate," perverting it from its normal usage into a legal term. Even if it could be considered a statement regarding legal propriety, it would necessarily be regarding propriety under the applicable French regime, not Title VII, which does not apply to EDF's French employees in France.

        (2)     <u>Laroche Decl. ¶41</u> (third sentence).

This was addressed in Part A above.

        (3)     <u>Laroche Decl. ¶43</u>.

> EDF was completely within its rights as an employer and completely justified under the employment policies, laws and regulations under which EDF operates in France to take the actions it did with respect to the terms and conditions of Gaujacq's employment, to appoint Nadal to Washington, to recall Gaujacq to France and to terminate Gaujacq's employment upon her refusal to report to her new post in France. EDF fully complied with all such procedures and laws.

This statement is not a legal conclusion. It is an opinion from EDF's then General Manager of Human Resources that the actions EDF took with respect to Gaujacq were justified as a matter of fact under the French regime under which EDF operates. He is qualified to make this statement due to his role and actual involvement in this case as the corporate officer of EDF responsible for Human Resources. <u>See</u> Fed. R. Evid. 701, 704 (lay opinions admissible even as to ultimate issues).

        (4)     <u>Laroche Decl. ¶44</u>.

> For all of these reasons, and those set forth in the other papers submitted in support of the motion of EDF and EDFINA, I respectfully request that this Court grant summary judgment dismissing Gaujacq's complaint.

This is simply a request that this Court grant summary judgment dismissing Gaujacq's complaint. It is not a legal conclusion by the declarant.

> **b.**      <u>**Statements Challenged as Hearsay Are Admissible**</u>

The following statements in the Laroche Declaration, challenged by Plaintiff as inadmissible hearsay (Pl. Mot. at 2-3), are all admissible for the following reasons:

> (1)      <u>Laroche Decl. ¶22</u>.

> I forwarded Gaujacq's proposal to François Metais, who was then in charge of executive career development as the Director of EDF's Delegation for Management of Executives ("DELCADIR"), for review and consideration by DELCADIR. The response of DELCADIR was that certain of the proposed terms could be acceptable if we wished to accept her proposal except that the proposal that Gaujacq would report to the Director of the Americas Branch and to the Director of the Energy Branch would have to be further validated. This response is set forth in an e-mail from Metais to me dated March 31, 2004, a copy of which is attached hereto as **Exhibit A.**

This statement is not hearsay because it is relevant for the non-hearsay purpose of explaining or placing in context the written statements in the attached exhibit. This is a non-hearsay purpose under FRE Rule 801(c), and therefore the statement is admissible. See <u>Williams</u>, 358 F.3d at 963; <u>Gatling</u>, 96 F.3d at 1524; <u>Castro-Lara</u>, 970 F.2d at 981.

Moreover, as demonstrated above, Laroche is the second-highest ranking EDF executive and is competent to relate corporate knowledge and the actions of the corporation in various particulars.

> (2)      <u>Laroche Decl. ¶24</u>.

> Metais then proposed a different structure, which would avoid this reporting problem. He proposed an appointment attaching her solely to the Energy Branch in France, outside of the EDFINA structure and outside of the Americas Branch. While she would be posted to the Energy Branch in France, she would be assigned to work on the nuclear project in the United States. Metais' proposal

> is set forth in an e-mail from him to me and other EDF leadership dated April 6, 2004, a copy of which is attached hereto as **Exhibit B**. Creuzet communicated this proposal to Gaujacq. A copy of his e-mail to her dated April 7, 2004 is attached hereto as **Exhibit C**.

This statement is not hearsay because it is relevant for the non-hearsay purpose of explaining or placing in context the written statements in the attached exhibit. This is non-hearsay under FRE Rule 801(c) and admissible. See Williams, 358 F.3d at 963; Gatling, 96 F.3d at 1524; Castro-Lara, 970 F.2d at 981. Additionally, Laroche is the second-highest ranking EDF executive and is competent to relate corporate knowledge and the actions of the corporation in various particulars. The fact that in providing this testimony Laroche gives additional information regarding the identities of the particular persons through whom EDF was acting does not strip Laroche of his competence to say what EDF did as an entity and why.

> (3)     Laroche Decl. ¶25 (last sentence).

> This proposal never resulted in an actual appointment, however, because it was unacceptable to Gaujacq and it was unacceptable to Nadal. It was unacceptable to Gaujacq because she insisted on remaining an officer of EDFINA although reporting to another branch. (See Ex. C). *It was unacceptable to Nadal because, as he advised Metais, the nuclear project was one of the significant activities of the Washington delegation and it was not acceptable for Gaujacq to keep this matter and report outside EDFINA to the Energy Branch.*

This statement is not hearsay. This is a statement by EDF's corporate officer explaining why EDF did not adopt Metais' counter-proposal to Gaujacq's proposal for a new expatriation assignment in the US: it was unacceptable to Gaujacq and to Nadal. Laroche is entirely competent to testify as to EDF's reasoning and EDF's actions in response to Gaujacq's proposal. As demonstrated above, Laroche, as a high-ranking officer, is competent to relate EDF's motivations for taking particular actions. Regardless

of the accuracy of EDF's understandings about the reasons Gaujacq and Nadal each
opposed the proposal in question, EDF's understanding of the nature of their opposition is
relevant to understanding EDF's motives for making the decisions it did. Laroche's
reference to the stated reason why the counter-proposal was unacceptable to Nadal is
relevant for the non-hearsay purpose of showing the effect of the communicated reason
on EDF, not for the truth of the matter communicated by Nadal or Gaujacq. Finally, even
if this testimony were viewed as imputing statements to Gaujacq and Nadal, the
testimony would still not be hearsay because Nadal is a witness and Gaujacq is a party-
opponent. See Fed. R. Evid. 801(d).

Accordingly, this statement is admissible as non-hearsay. Fed. R. Evid. 801(c).
The truth of Nadal's reasons is addressed by Nadal.

     (4)    Laroche Decl. ¶26.

> The matter was addressed by EDF's Executive Committee
> ("COMEX") in April 2004. COMEX, of which I am a member,
> concluded that Gaujacq could report functionally to the Energy
> Branch but that she must report operationally to Nadal.

This statement is not hearsay. It is a statement reporting that EDF's Executive
Committee, of which Laroche is a member, addressed and decided the referenced matter
(i.e., the problem of the reporting structure if EDF wished to accept Gaujacq's proposal
for a new expatriation assignment in the US (see Laroche Decl. ¶¶21-25). As a corporate
officer, he is presumed to have personal knowledge of the acts of the corporation, Self-
Realization Fellowship, 206 F.2d at 1330; AGI Realty, 1996 WL 143465, at *4; Seltzer,
339 F. Supp. 2d at 606, and his report of this matter is admissible.

(5)     <u>Laroche Decl. ¶27 (first, third sentences)</u>.  Plaintiff challenges the first and third sentences of Paragraph 27 of Laroche's Declaration as hearsay.  The paragraph states as follows (with the challenged sentences in italics):

> *In the meantime, Gaujacq had been directed to discuss her mission with Bruno Lescoeur, head of the EDF Energy Branch.*  By the time she met with Lescoeur in France in May 2004, EDF had decided that it would be better to appoint Gaujacq to a new and important nuclear position in France.  *Lescoeur told Gaujacq that EDF wanted her to return to France to head up an important new initiative for EDF in the nuclear energy field, implementing the introduction of European Pressurized Reactors ("EPR") in France.*  This was a very important project for EDF, important to future development of nuclear production within EDF.

These statements are not hearsay.  The first sentence, which Plaintiff challenges, does not even refer to someone else's statement.  The first sentence is a predicate reference, to a company directive (which is not in dispute) for Gaujacq to contact Bruno Lescoeur.  It is relevant to explain the context of the second sentence stating the decision EDF had made by the time Gaujacq met with Lescoeur.  As to the third sentence,  Laroche is competent to testify concerning acts and knowledge of EDF as a corporate entity.  On its face, this testimony shows that Lescoeur was merely acting as the conduit for transmitting EDF's wishes.  This testimony could just as easily read that "Gaujacq was informed" without changing the relevance of the evidence, which would be admissible.  The fact that Laroche specifies the name of the EDF employee who relayed EDF's wishes does not transform this testimony into inadmissible hearsay.

(6)     <u>Laroche Decl. ¶28 (second, third, fourth sentences)</u>.  Plaintiff challenges the second, third and fourth sentences of Paragraph 28 of Laroche's Declaration as hearsay.  The paragraph states as follows (with the challenged sentences in italics):

Gaujacq, however, continued to press to stay in the United States without reporting to Nadal and claimed that Creuzet had engaged with her that she could do so. *This was not the case. EDF did not make any such engagement with Gaujacq and did not enter into any contract with her concerning her next mission. All along, from the time she first sent her proposal to Creuzet in March 2004, EDF was discussing with her possibilities for her next mission and making its best efforts to accommodate her wishes while meeting the needs and interests of EDF.* EDF also suggested to her a project in London, but she turned that down as well.

These statements are not hearsay. These statements report corporate acts through a corporate officer.

     (7)    <u>Laroche Decl. ¶29.</u>

Chairman Roussely resolved the matter definitively at the end of May. He decided that if Gaujacq were to stay in the United States, she must have operational reporting solely to Nadal and that otherwise she must return to France. This decision is set forth in an e-mail from Igor Czerny (Chairman Roussely's deputy) dated May 25, 2004, a copy of which is attached hereto as **Exhibit D**.

This statement is not hearsay. It is a statement by a corporate officer relating corporate acts and decisions effected through the CEO of the corporation and reflected in the attached report of the CEO's decision (Exhibit D). The attached report of the CEO's decision is also admissible as a business record of EDF. The EDF decision is not disputed.

     (8)    <u>Laroche Decl. ¶31 (first sentence).</u>

The next day, July 23, 2004, I spoke with Gaujacq on the telephone at Creuzet's request.

This statement is not hearsay as it is relevant for the non-hearsay purpose of explaining why Laroche telephoned Gaujacq. It is not offered for the truth of whatever words Creuzet may have used to request that Laroche call Gaujacq.

      (9)     <u>Laroche Decl. ¶35 (second sentence)</u>.

This was addressed in Part A.

      (10)    <u>Laroche Decl. ¶37 (last sentence)</u>.[4]

> His report concluded that the discord between Gaujacq and Nadal was based on "reciprocal hostility." Betouret's report, dated July 26, 2004, is attached hereto as **Exhibit G**.

This statement is not hearsay as it is offered for the non-hearsay purpose of explaining or highlighting a portion of the attached written exhibit, Betouret's report, on his investigation of Gaujacq's claims against Nadal.

      (11)    <u>Laroche Decl. ¶39</u>.

These was addressed in Part A.

      (12)    <u>Laroche Decl. ¶40 (second, third sentences)</u>.

> A copy of the Decision is attached hereto as **Exhibit I**. As was explained to her in an e-mail dated September 8, 2004 from Jacques Bouron, then Director of DELCADIR, her new position was classified as an "R-3" position in EDF's executive ranking system and would involve an increase in base salary over her current base salary.

These statements are not hearsay. They are direct statements by a corporate officer of corporate acts taken – the appointment of Gaujacq to a new position in France with a raise in pay. The fact that Laroche also states that these acts were explained to Gaujacq in the attached exhibit does not make either statement hearsay.

      **c.**      <u>**Statements on Behalf of EDF Are Admissible**</u>

Plaintiff's challenges to portions of the Laroche Declaration on the purported ground that statements by him as to acts and decisions taken by EDF are inadmissible (Pl.

---

[4] Plaintiff's motion here refers to the "last sentence" of ¶37, but we believe that her ensuing characterization of the statement indicates that she meant to challenge to the immediately preceding sentence.

Mot. at 3-4) are without merit and counter to the law. As discussed above in Part A, a corporate officer is deemed to have personal knowledge of the acts of the corporation, and statements by the officer on matters that he would know by virtue of his corporate position are admissible on motions for summary judgment.

### d.    Statement Challenged as Opinion Is Admissible

Laroche Decl. ¶31 (fifth sentence).[5]

> While I cannot speak to whatever conversation Gaujacq had with Creuzet, I believe it extremely unlikely that Creuzet threatened anything.

This is a statement of opinion, by someone whose testimony otherwise establishes that he was intimately familiar with the situation and the players, about whether Creuzet threatened Gaujacq in a telephone conversation. Laroche's opinion on this important fact is thus rationally based on his own unique perceptions and thus will be helpful in the determination of a fact in issue. As such, it is admissible opinion testimony. Fed. R. Evid. 701, 704 (witness may offer opinion or inference which is rationally based on his perception).

### 3.    De Botherel's Other Statements Are Admissible

### a.    Statements Challenged as Legal Conclusions Are Admissible

The following statements in the De Botherel Declaration, challenged by Plaintiff as legal conclusions (Pl. Mot. at 4-5), are all admissible.

(1)    De Botherel Decl. ¶4.

> The difference in the compensation EDF paid to Gaujacq and to Nadal during their expatriate assignments in Washington, D.C. is not due to gender. It is due to the fact that they had different ranks

---

[5] Plaintiff's motion here refers to the "fourth and fifth sentences" of 31, but we believe that her ensuing characterization of the statement indicates that she meant to challenge here only the fifth sentence.

in EDF's executive grade-level ranking system and to the fact that
they had different jobs and different employment histories.

This statement is not a legal conclusion and does not purport to be one. It is

instead a factual statement by EDF's head of executive remuneration as to why EDF paid

Gaujacq and Nadal different salaries. He does not purport to state any conclusion as to

the legality of the salaries under Title VII or the Equal Pay Act.

Even if viewed as an opinion about EDF's motivations for salary differences, lay

witnesses are competent to offer opinions that are rationally based on their perceptions

and helpful to determining a fact in issue, Fed. R. Evid. 701, whether or not such

opinions "embrace[] an ultimate issue to be decided by the trier of fact." Fed. R. Evid.

704.

> (2)     De Botherel Decl. ¶30.

This was addressed in Part A.

> (3)     De Botherel Decl. ¶33.

> The Gaujacq Expatriation Contract provided that her expatriate
> assignment had a fixed term of three years, beginning August 1,
> 2000, extendable for one year by tacit agreement and that it would
> automatically terminate at the end of the assignment.  It also
> provided, as is normal for EDF's expatriate contracts, that the local
> rules concerning matters related to hours of work, weekly breaks
> and local holidays will apply.

These statements are not legal conclusions nor do they purport to be. These are

merely a description of certain components of Gaujacq's expatriate contract with EDF for

her assignment in Washington and a statement as to the common practice for EDF's

expatriate contracts to refer to the application of local law concerning hours of work,

weekly breaks and local holidays.  De Botherel's responsibilities concerning EDF

executives on expatriate assignments qualify him to speak to common provisions in EDF's expatriate contracts.

(4)    De Botherel Decl. ¶40 (first sentence).

EDF is not obligated to provide any particular advance notice to the expatriate employee of his or her required repatriation to France. EDF requires that its employees return to France upon the expiration of their expatriate assignment unless the employee is assigned to another position abroad.

This is not a legal conclusion.  This is a statement of fact admissible in any suit involving employment practices that describes the practices that EDF follows and the procedures under which it operates with regard to the termination of an expatriate's foreign assignment.  It is followed by descriptions of sections of EDF's Management Guide, attached as an exhibit, applicable to termination of expatriate assignments and repatriation to France, which fully support De Botherel's statement.

(5)    De Botherel Decl. ¶40 (fifth, sixth, seventh sentences).

This has been addressed in Part A.

(6)    De Botherel Decl. ¶41.

This has been addressed in Part A.

(7)    De Botherel Decl. ¶49.

EDF fully complied with all of the requirements of French law and procedure in the termination of Gaujacq's employment.

This is a statement as to the propriety under the French regime under which EDF operates regarding the termination of Gaujacq's employment.  It does not purport to state any conclusion as to U.S. law.    It is admissible as opinion testimony about the sufficiency in fact of EDF's compliance in fact with the steps for termination established

under French law, and De Botherel's testimony otherwise establishes his experience and familiarity with employment procedures.

      (8)    <u>DeBotherel Decl. ¶50.</u>

> For all of these reasons, and those set forth in the other papers submitted in support of the motion of EDF and EDFINA, I respectfully request that this Court grant summary judgment dismissing Gaujacq's complaint.

This is simply a request that the Court grant summary judgment dismissing the complaint. It is not a legal conclusion of the declarant.

      **b.**      <u>**Statements Challenged as Hearsay Are Admissible**</u>

The following De Botherel statements, challenged by Plaintiff as hearsay (Pl. Mot. at 5-6), are all admissible.

      (1)    <u>De Botherel Decl. ¶39 (second sentence).</u>

> Gaujacq's expatriate assignment ended, according to its terms, on July 31, 2004. Although EDF executives had had many communications with Gaujacq in 2004 about her proposal to stay in the United States with a new position after her mission expired, no agreement for another expatriate assignment was reached, and Gaujacq's assignment expired according to its terms as of July 31, 2004. EDF gave Gaujacq an additional three months after the expiration of her assignment to arrange for her relocation back to France.

This statement is not hearsay, and there are no hearsay statements incorporated therein. This is merely a statement that there were many communications between EDF and Gaujacq on the topic of her proposal to stay in the US. As a corporate officer of EDF, De Botherel is competent to testify to EDF's actions, to his opinion concerning whether there was in fact a meeting of the minds concerning Gaujacq's various proposals and to EDF's actions as reflected in the many communications with Gaujacq during this period on this topic (which are not contested).

(2)    De Botherel Decl. ¶42 (third sentence).

She was directed to report to this position in France by November 1, 2004.

This statement is not hearsay. It does not purport to be a description of a communication by any person. It is a statement of an EDF directive to Gaujacq to report to her new position in France by November 1. In point of fact, the EDF directive was communicated to Gaujacq by EDF in a letter dated July 27, 2004, which Gaujacq expressly admits. Pl. 56.1 Statement ¶123.

(3)    De Botherel Decl. ¶43.

In November 2004 Jacques Bouron, then head of EDF's Delegation for Management of Executives ("DELCADIR") in Paris notified Gaujacq in writing that EDF was considering terminating her employment and invited her, as required under French law and procedure, to attend a pre-termination interview in Paris.

This statement is not hearsay. It is a statement of a verbal act, that EDF gave Gaujacq written notice that EDF was considering her termination. See U.S. v. Stover, 329 F.3d 859, 870 (D.C. Cir. 2003), cert. denied, 541 U.S. 1018 (2004) (a "verbal act" is a statement that "affects the legal rights of the parties" or has "independent legal significance" and is not hearsay) (citing Advisory Committee Notes to Fed. R. Evid. 801(c)). It is not offered to prove the truth of the matters said to have been contained in the notice provided to Gaujacq but, rather, to establish what Gaujacq was told and when. It is direct testimony regarding the fact that EDF gave Gaujacq written notice of the fact that EDF was considering her termination. This is fact testimony that this witness is competent to provide by virtue of his role at EDF.

(4)    <u>De Botherel ¶44</u> (last sentence).   Paragraph 44 states as follows (with the challenged sentence in italics):

> Gaujacq appeared on December 10, 2004 in Paris, France at her pre-termination interview with Jacques Bouron and myself. At this interview Gaujacq read a prepared statement to us. She refused to answer Bouron's questions, responding only with the threat that EDF would hear from her in the future. *EDF subsequently determined that Gaujacq should be terminated for grave fault and proceeded in accordance with French law and procedure to terminate her employment.*

This statement is not hearsay.  As a corporate officer, De Botherel has personal knowledge of the acts of the corporation, and this is merely a statement of the corporation's act in determining to terminate Gaujacq's employment.   Moreover, if Plaintiff is claiming that the reports of her own statements and actions represent hearsay, that would be incorrect.  Reports of Gaujacq's own statements and actions are not hearsay because she is a party-opponent. Fed. R. Evid. 801(d)(2).

**c.    <u>Statements Challenged As Irrelevant Are Admissible</u>**

(1)    <u>De Botherel Decl. ¶5.</u>

This was addressed in Part A.

(2)    <u>De Botherel Decl. ¶6.</u>

This was addressed in Part A.

(3)    <u>De Botherel Decl. ¶8</u> (first sentence).

> EDF follows the statutory system for its employees from grade 1 through grade 20 and also uses a grade-level ranking system for its executive employees.

This statement is relevant for the same reasons as De Botherel's other statements regarding the statutory component of EDF's grade-level ranking system are relevant,

discussed above in Part A.  They are relevant to how and why Gaujacq was paid at the levels she was paid from the beginning of her employment.

    (4)    <u>De Botherel Decl. ¶10.</u>

This was addressed in Part A.

    (5)    <u>De Botherel Decl. Ex. A.</u>

This was addressed in Part A.

    (6)    <u>De Botherel Decl. ¶31.</u>

This was addressed in Part A.

### Conclusion

For the foregoing reasons, Plaintiff's Motion to Strike Portions of Declarations should be denied in its entirety.

Dated: December 4, 2006

Respectfully Submitted,


                                    /s/
                         Dorothea W. Regal
                         D.C. Bar No. NY0064
                         Randi Seltzer May
                         D.C. Bar No. NY0063
                         HOGUET NEWMAN & REGAL, LLP

                         *Counsel for Electricité de France*
                         *International North America, Inc.*
                         *and Electricité de France, S. A.*

Morgan D. Hodgson
D.C. Bar No. 186521
David Clark
D.C. Bar No. 473279
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*