# DECLARATION OF JEAN-LOUIS BETOURET

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., ELECTRICITE DE FRANCE, S.A. and CHRISTIAN NADAL,<br><br>Defendants, | Civil Action No. C5-969 (JGP)<br><br>**DECLARATION OF**<br>**JEAN-LOUIS BETOURET** |

Aux termes de la section 1746 du chapitre 28 du Code des Etats-Unis, je, soussigné, **JEAN-LOUIS BETOURET**, atteste par la présente, et sous serment de la loi américaine :

1. De 2003 à 2005 j'ai exercé les fonctions de Directeur des Ressources Humaines pour la Branche Amériques de la société défenderesse, Electricité de France, S.A. (« EDF »), qui est la société-mère d'Electricité de France International North America, Inc. (« EDFINA »). J'étais notamment en charge de gérer les questions de ressources humaines touchant aux employés d'EDF affectés au bureau de Washington d'EDFINA. J'ai une connaissance directe des faits ici exposés.

2. Ma déclaration vient à l'appui de la motion posée par EDF et par EDFINA pour l'obtention d'un jugement sommaire de rejet de la plainte de la partie demanderesse, Catherine Gaujacq (« Gaujacq »).

**L'entretien téléphonique avec Nadal**

3. Le 10 février 2004, j'ai eu une conversation téléphonique avec Christian Nadal, qui venait d'être nommé par EDF Délégué Général d'EDF pour l'Amérique du Nord et affecté au bureau de Washington d'EDFINA. A l'époque, Nadal n'était pas encore arrivé à Washington pour entrer en fonctions. Catherine Gaujacq était alors Directrice USA/Canada de la Branche Amériques et exerçait les fonctions de Président d'EDFINA, sa mission d'expatriation devant toucher à son terme à la fin juillet 2004.

4. Lors de notre conversation téléphonique du 10 février 2004, Nadal m'a dit qu'il n'était pas opposé à ce que Gaujacq reste à EDFINA une fois qu'il serait entré en fonctions. Ses termes furent « pourquoi ne resterait-elle pas ? » Je lui ai indiqué qu'il faudrait que la direction d'EDF à Paris approuve le fait d'avoir à la fois Gaujacq et Nadal au bureau de Washington : en effet, celle-ci approchait de la limite théorique de cinq ans posée par EDF pour ce qui est des missions d'expatriation et le budget d'EDFINA ne prévoyait pas de financer les deux postes. J'ai également dit qu'on ne pouvait pas laisser Gaujacq rester pour des raisons purement personnelles et qu'il faudrait trouver une justification fonctionelle au maintien de son poste.

5. Au moment même de notre entretien du 10 février 2004, j'ai pris des notes de la conversation avec Nadal, lesquelles sont reproduites en Annexe A. C'est en tant que Directeur des Ressources Humaines de la Branche Amériques, et dans l'exercice habituel de mes fonctions, que j'ai pris ces notes et que je les ai conservées. Ces notes rendent compte avec justesse de mon entretien avec Nadal, tenu le 10 février 2004.

3.

**Le rapport sur la plainte de Gaujacq**

6. À la fin mois de juillet 2004, j'ai préparé, pour mes supérieurs hiérarchiques, un rapport sur la plainte déposée par Gaujacq au sujet de Nadal. Il s'agit de la plainte qu'elle a exposée dans un email en date du 22 juillet 2004, adressé au PDG d'EDF, François Roussely, et au Directeur Général Opérations, Gérard Creuzet, et par la suite dans une lettre en date du 25 juillet 2004, adressée au Directeur Général des Ressources Humaines, Yann Laroche, ainsi qu'à Creuzet et à Fernando Ponasso, le directeur de la Branche Amériques. [Des copies de l'email du 22 juillet 2004 et de la lettre du 25 juillet 2004 sont reproduites respectivement en Annexes E et F de la Déclaration de Yann Laroche, en date du 12 octobre 2006].

7. À l'occasion de mon enquête sur la plainte de Gaujacq, je lui ai parlé au téléphone au moins à deux reprises à la fin juillet 2004, et je l'ai interrogée sur l'objet de sa plainte. Elle ne m'a pas dit qu'elle portait plainte pour discrimination sexuelle ni pour harcèlement sexuel, et ce n'est pas l'impression que m'ont donnée nos entretiens.

8. Lors de mon enquête sur la plainte de Gaujacq, j'ai également eu plusieurs échanges téléphoniques avec Nadal à la fin du mois de juillet 2004, durant lesquels je l'ai interrogé sur la plainte de Gaujacq. J'ai aussi eu des échanges avec Jacques Bouron, Laroche et Ponasso.

9. J'ai conclu de mon enquête qu'il existait un conflit entre Gaujacq et Nadal et qu'il y avait un manque de confiance et une hostilité mutuels, mais je n'en ai pas conclu que Nadal avait fait quoi que ce soit de mal. J'en ai conclu que les actes précis dont Gaujacq se plaignait reposaient sur des décisions commerciales sensées. Je n'ai vu aucun signe de préjugés sexuels dans les actes de Nadal. N'ayant vu aucun signe de discrimination liée au sexe ni aucun signe de harcèlement sexuel, je n'ai tiré aucune conclusion dans ce sens. J'ai préparé un rapport écrit de

4.

mon enquête, dans lequel j'expose mon enquête et mon analyse en détails. Une copie de ce rapport, en date du 26 juillet 2004, est reproduite en Annexe B.

Fait à: Paris, France

Le: 1 Décembre 2006

JEAN-LOUIS BETOURET

# BETOURET ENGLISH

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., ELECTRICITE DE FRANCE, S.A. and CHRISTIAN NADAL,<br><br>Defendants, | Civil Action No. C5-969 (JGP)<br><br>**DECLARATION OF<br>JEAN-LOUIS BETOURET** |

**JEAN-LOUIS BETOURET** hereby declares, under penalty of perjury under the laws of the United States, in accordance with 28 U.S.C. Section 1746, as follows:

1. During the years 2003 through 2005, I was the head of Human Resources for the Americas Branch of Defendant Electricité de France, S.A. ("EDF"), which had organizational responsibility for Electricité de France International North America, Inc. ("EDFINA"). My responsibilities included managing human resource issues affecting EDF employees assigned to work at the EDFINA office in Washington, D.C. I have personal knowledge of the facts set forth herein.

2. I make this Declaration in support of the motion of EDF and EDFINA for summary judgment, dismissing the Complaint of Plaintiff Catherine Gaujacq ("Gaujacq").

1

### Telephone Conversation with Nadal

3.  On February 10, 2004 I had a telephone conversation with Christian Nadal, who had recently been appointed by EDF to be EDF's Délégué Général (Delegate General) to North America and assigned to EDFINA in Washington. At that time Nadal had not yet arrived to take over his post in Washington. Catherine Gaujacq was at that time the Directeur (Director) USA/Canada of the Americas Branch and serving as President of EDFINA, and her expatriation mission was due to expire at the end of July 2004.

4.  In our telephone conversation on February 10, 2004, Nadal told me that he was open to having Gaujacq remain at EDFINA after he took up his post. His comment to me was "why not stay?" I said that EDF management in Paris would have to approve having both Gaujacq and Nadal at the Washington office because she was near EDF's 5-year theoretical limit for number of years to be on an expatriation assignment and because EDFINA was not budgeted for both of them. I also said that permitting Gaujacq to stay could not simply be done for her personal convenience but that there would have to be a functional justification for her to stay.

5.  I made notes of my conversation with Nadal on February 10, 2004 at the time of the conversation, attached hereto as **Exhibit A**. I took these notes in the regular course of my business as head of Human resources for the Americas Branch and I kept them in the regular course of my business. These notes accurately reflect my conversation with Nadal on February 10, 2004.



### Report on Gaujacq's Complaint

6.  In late July 2004 I prepared a report for my superiors regarding a complaint that Gaujacq had made concerning Nadal. This was a complaint that she stated in an e-mail dated July 22, 2004 to EDF's CEO François Roussely and EDF's COO Gerard Creuzet and subsequently in a letter dated July 25, 2004 from Gaujacq to EDF's Human Resources General Manager Yann Laroche, Creuzet and Fernando Ponasso, the head of the Americas Branch. [Copies of the July 22, 2004 e-mail and the July 25, 2004 letter are attached as Exhibit E and Exhibit F, respectively, to the Declaration of Yann Laroche, dated October 12, 2006.]

7.  In my investigation of Gaujacq's complaint, I spoke to Gaujacq on the telephone on at least two occasions at the end of July 2004 and inquired about the nature of her complaint. She did not tell me she was complaining about sex discrimination or sexual harassment, and I did not understand so from my conversations with her.

8.  In my investigation of Gaujacq's complaint, I also spoke to Nadal on the telephone several times at the end of July 2004 and questioned him about Gaujacq's complaints. I also spoke to Jacques Bouron, Laroche and Ponasso.

9.  Based upon my investigation, I concluded that there was discord between Gaujacq and Nadal and that there was a reciprocal lack of trust and reciprocal hostility, but I did not conclude that Nadal had done anything wrong. I concluded that the specific actions Gaujacq complained of were appropriate business decisions. I did not observe any indication that Nadal's actions were the result of sexual bias. I did not observe any indication or conclude that there was any discrimination on account of sex or

any sexual harassment. I prepared a written report of my investigation in which I set out the details of my investigation and my analysis. A copy of this report, dated July 26, 2004, is attached hereto as **Exhibit B**.

Dated: December 2, 2006
       Paris, France

                                                            /s/
                                          JEAN-LOUIS BETOURET





# Trustforte Language Services

## CERTIFICATE OF ACCURACY

STATE OF NEW YORK   )
                    )SS:
COUNTY OF NEW YORK )

Sabine Serre, being duly sworn, deposes and says:
I am fluent in both the English and French languages. I have reviewed the attached English translation of the *DECLARATION OF JEAN-LOUIS BETOURET* from a copy of the original documents in the French language and hereby certify that the same is a true translation to the best of my knowledge, ability, and belief.

_____
Sabine Serre
Trustforte Language Services

Sworn before me this
4th day of December, 2006

_____
Notary Public

MOHAMMED MUJUMDER ASS UL
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2010

271 Madison Avenue • Third Floor • New York, New York 10016
Telephone: (212) 481-4980 • Facsimile: (212) 481-4971, 683-4801
www.trustfortelanguages.com • e-mail: info@trustfortelanguages.com