IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ<br><br>Plaintiff,<br><br>v.<br><br>ELECTRICITE DE FRANCE<br>INTERNATIONAL NORTH AMERICA,<br>INC., et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:05CV0969 (JGP)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO STRIKE PORTIONS OF DECLARATIONS**

Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby submits her Reply in Support of her Motion to Strike Portions of Declarations. Instead of opposing her Motion, Defendants Electricite de France ("EDF"), Electricite de France International North America ("EDFINA"), and Christian Nadal's ("Nadal") Opposition to Plaintiff's Motion to Strike ("Motion") provides support for the exclusion of certain portions of Defendants' declarations. Defendants are unable to dispute that the portions of the declarations relied upon in their Rule 56.1 Statement of the Facts ("Def. 56.1") and in their Motions for Summary Judgment are proffered for an inadmissible purpose and contain inadmissible hearsay, baseless legal conclusions, irrelevant opinions, and are not based on the declarant's personal knowledge.

Defendants' contention that the declarations are irrelevant to their Summary Judgment pleadings is belied by the fact that the declarations are referred to throughout, and are offered as support for, Defendants' Motions for Summary Judgment and Rule 56.1 Statement. Furthermore, Defendants' claim that Ms. Gaujacq did not challenge the statements in the

declarations is belied by the fact that she filed the instant Motion, and disputed the statements in her Oppositions to Defendants' Motions to Summary Judgment, in her Declaration, and in her individual objections to Defendants' declarations. Accordingly, because statements in all three Declarations are based upon inadmissible hearsay, are irrelevant, or contain inadmissible legal conclusions, such statements should be stricken and not considered by this Court.[1]

## I. Portions of Yann Laroche's Declaration are Inadmissible

### A. Legal Conclusions

As stated in Ms. Gaujacq's Motion, the below statements by Laroche should be stricken as legal conclusions. In his declaration, Laroche fails to provide any qualifications that would render him sufficient to make the self-serving legal conclusions contained in the below portion of his declaration. He admits that he is "Deputy General Manager of Defendant EDF" with no specialized legal or legislative training. *See* Laroche ¶ 1. As a layperson, he lacks the basis to render legal conclusion and Federal Rule of Evidence 701 is inapplicable. Contrary to Defendants' contentions, Laroche's opinion is inadmissible under Rule 704 as it is not based on "scientific, technical or other specialized knowledge," which would, in this instance, include rendering legal analysis. Accordingly, the following legal conclusions are inadmissible:

(1) the fifth sentence of ¶ 31 (describing that it would be legitimate for EDF to terminate an employee who refused to accept an assignment);

(2) the third sentence of ¶ 41 (stating that dismissal was warranted under the French national statute);

---

[1] Similarly, the declaration of Jean-Louis Betouret and related exhibits submitted with Defendants' Opposition to this Motion should be stricken because Defendants provided the materials: almost two months after the court-ordered and consented to deadline for the submission of their Summary Judgment pleadings and papers; and after Ms. Gaujacq had already submitted her Opposition to Defendants' Motions for Summary Judgment. Similarly, Betouret's declaration contains inadmissible conclusions and statements. Therefore, Defendants should be precluded from offering Betouret's declaration in their flagrant attempt to save the inadmissible statements contained in their previous declarations.

2

(3)      all of ¶ 43 (claiming that EDF was within its rights to take actions against Ms. Gaujacq and that it complied with all procedures and laws); and

(4)      all of ¶ 44 (request for dismissal of Ms. Gaujacq's complaint).

B.     <u>Inadmissible Hearsay</u>

Similarly, as discussed in Ms. Gaujacq's Motion to Strike, the following statements by Laroche should be stricken because they contain inadmissible hearsay as they are either based completely on another person's knowledge or on an interpretation of an attached exhibit. Despite Defendants' attempt to categorize the statements as being used for non-hearsay purposes, it is evident from the plain language of Laroche's statements and their use in Defendants' Summary Judgment Motions and Rule 56.1 Statement that his assertions are offered for their alleged truth. As such, the following statements are inadmissible:

(1)      ¶ 22, which describes the response of the DELCADIR whose response is attached as Exhibit A;

(2)      ¶ 24, which describe proposals by Metais, summarizing the attached Exhibits B and C;

(3)      the last sentence of ¶ 25, which purports to state feelings of and statements by Mr. Nadal;

(4)      ¶ 26, which purports to state conclusions by EDF's Executive Committee, COMEX[2];

(5)      first sentence of ¶ 27, which states that "Gaujacq had been directed" but does not state by who or that he has personal knowledge of the this allegation;

(6)      the third sentence of ¶ 27 which purports to attest to what Mr. Lescoeur said to Ms. Gaujacq;

(7)      the second through fourth sentences of ¶ 28, which purport to state what Creuzet said to Ms. Gaujacq;

---

[2] Although Laroche was evidently a member of COMEX, the statement does not give his basis for knowledge of the conclusion, whether he was part of COMEX's decision, whether it was his statement or someone else's conclusion, nor who else was in COMEX or took part in the conclusion. Laroche merely speaks on behalf of this committee without basis.

3

(8)   ¶ 29, which describes a decision made by Mr. Roussely based upon exhibit C, which is an email from Mr. Czerny;

(9)   the first sentence of ¶ 31, which states what Mr. Creuzet requested of him;

(10)  the second sentence of ¶ 35, through which Mr. Laroche attempts to give the knowledge of all EDF executives ("To may knowledge, none of the other EDF executives ... knew that she was complaining about sex discrimination ...");

Specifically, with regard to this paragraph, Defendants' attempted explanation of their basis for concluding that the above statement does not contain hearsay only reaffirms that it is inadmissible hearsay. Despite Laroche's assertion that none of the EDF executives knew that Ms. Gaujacq was complaining of sex discrimination, Defendants admit that Laroche lacked the knowledge to make this statement: "In [Laroche's] discussions with other EDF executives involved with the Gaujacq mission or her complaints, the topic of complaints of sex discrimination or sexual harassment never came up." Def. Opp at 11. Defendants disingenuously claim that Laroche "inferred" that there were no complaints. *Id.* The paragraph is clearly inadmissible on its face, as it is offered to prove that none of EDF's officers or executives had any knowledge regarding Ms. Gaujacq's discrimination complaints.

Prior to Defendants' above admission that this paragraph lacks any factual support, Defendants' offered Laroche's alleged out-of-court discussions with other EDF executives for alleged their truth -- that Nadal, EDFINA and EDF lacked knowledge of her complaints. Def 56.1 ¶ 127. As such, this paragraph contains inadmissible hearsay.

(11)  the last sentence of ¶ 37, which describes Mr. Betouret's conclusions based upon Mr. Betouret's report attached as Exhibit G;

(12)  ¶ 39, which describes statements made in a letter from Mr. Creuzet, attached as Exhibit H; and

Specifically, Paragraph ¶ 39 of Laroche's Declaration contains hearsay within hearsay. Ms. Gaujacq objects to this statement as hearsay because Defendants offer the statement to prove

4

two alleged out-of-court statements: (1) that EDF sent a letter to Ms. Gaujacq notifying her of her return to France and (2) that EDF offered an "appropriate" position in the energy branch. *Id.*

Recognizing that Laroche's statements are hearsay, Defendants' claim that the statements are not offered for their truth but, rather, "for the purpose of placing in context the statements in the letter." Def. Opp. at 11. Defendants' attempt to save Laroche's hearsay statements is contradicted by the plain language of the paragraph at issue and its use in Defendants' 56.1 statement, wherein Defendants offer the statement to show that Ms. Gaujacq was given reasonable notice and offered an appropriate position. Laroche Dec. ¶ 39; Def. 56.1 at ¶ 122. Accordingly, this paragraph contains inadmissible hearsay.

> (13)   the second and third sentences of ¶ 40, which describe an explanation given by Mr. Bouron in an email attached as Exhibit J.

<u>Statements on Behalf of EDF Generally</u>

The following statements by Laroche should be stricken because Laroche makes statements on behalf of EDF generally, without indicating whether he has actual personal knowledge of the statements and without identifying the source of the statement or actual person allegedly with knowledge of the statement or allegation.

Although Laroche was designated as one of EDF's witnesses to represent the corporation in response to a Rule 30(b)(6) deposition request, Rule 56(e) does not allow affidavits or declarations from a person in his corporate designee capacity purporting to speak on behalf of the corporation. Rule 30(b)(6) does not change the Rules of Evidence or the requirements of the Federal Rules of Civil Procedure. Even if Laroche had made statements in his deposition based on his interviewing or investigation, it does not create an exception to the hearsay rules.

Moreover, with regard to declarations submitted after deposition, "[U]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or

5

different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest and Paper Assoc.*, 26 F. Supp. 2d 82, 94 (D.C. Cir. 1998). EDF designated Laroche as the corporate designee in response to Ms. Gaujacq's Notice of Deposition for a 30(b)(6) deponent. *See* Notice, Att. 1. Ms. Gaujacq's requested that the 30(b)(6) deponent testify regarding "[A]ll decisions relating to Ms. Gaujacq's employment with EDF and/or EDFINA" with further specification contained in the Notice. *Id.* Yet, Laroche's declaration contains new and different allegations that those that he could have testified to during the 30(b)(6) deposition, and, therefore, should be stricken.

In addition, Defendants rely upon several cases outside of this Circuit to support their illogical claim that an officer of a company is presumed to have personal knowledge of all aspects of a company's operations. *See* Def. Opp. at 9; *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) *cert denied* 531 U.S. 1126 (2001); *AGI Realty Serv. Group, Inc. v. Red Robin Int'l Inc.*, 81 F.3d 160, 1996 U.S. App. LEXIS 18014 (6th Cir. March 28, 1996). However, this position is in stark contrast to the corporate defendants' decision to designate multiple individuals to respond to Ms. Gaujacq's Notice of Rule 30(b)(6) deposition. *See* Att. 1. Defendants clearly recognized that the different individuals have differing levels of information relating to the company's affairs.

Moreover, "self-serving" declarations are inadmissible at the Summary Judgment stage. *See Lemmons v. Geogetown Univ. Hosp.*, 431 F.Supp.2d 76, 90 (2006). Accordingly, the following paragraphs are inadmissible:

 (1) second sentence of ¶10, which purports to state what "EDF intended;"

 (2) ¶¶ 12-14, which purports to state what "EDF wanted;"

 (3) ¶13, which purports to state what "EDF wanted" or "we wanted;"

6

(4) ¶14, which purports to state what "EDF wanted;"

(5) ¶15, which purports to state what "EDF determined;"

(6) ¶19, which purports to state what "EDF discussed" and "we made;"

(7) ¶22, which purports to state what was "a problem for EDF;"

(8) second sentence of ¶27, which purports to state what "EDF had decided;"

(9) third sentence of ¶ 27, which purports to state what "EDF wanted;"

(10) third through fifth sentences of ¶ 28, which purports to state what "EDF did not make," what "EDF was discussing," and what "EDF also suggested;"

(11) ¶ 37, which purports to state what "EDF considered" and what "EDF directed;"

(12) ¶ 38, which purports to state that "EDF did not give in to Gaujacq's blackmail"[3] and what "EDF determined;"

Here, Defendants' offer Laroche's hearsay statements for their truth claiming that EDF determined that Ms. Gaujacq's pleas for assistance from Nadal's conduct were "blackmail" and then EDF ignored them. *Id.* The statements do not give Laroche's basis for knowledge of EDF's determination, whether he was part of the decision, whether it was his statement or someone else's conclusion, nor who else took part in the conclusion. Defendants offer Laroche's statements to prove the truth of their assertions and the related assertions contained in its 56.1 Statement (¶ 122). As such, this paragraph contains inadmissible hearsay.

(13) ¶ 39, which purports to state what "EDF sent" and what EDF advised Ms Gaujacq (referencing Exhibit H);

(14) ¶ 40, which purports to state that "EDF appointed (referencing Exhibit I); and

(15) ¶ 41, which purports to state what "EDF concluded."

---

[3] This is also argumentative.

7

C   Inadmissible Opinions

The following statements of Mr. Laroche's Declaration should be stricken as inadmissible opinion testimony from a fact witness, in that Mr. Laroche states that he "believes" Mr. Creuzet would not threaten Ms. Gaujacq in the manner Ms. Gaujacq has alleged:

(1)   fourth and fifth paragraph of ¶ 31 ("I believe")

**II.   Portions of Patrick de Botherel's Declaration are Inadmissible**

A.   Legal Conclusions

The following statements by Mr. de Botherel should be struck as legal conclusions for the same reasons discussed in Section I(A) above. Defendants erroneously claim that Laroche's opinion is admissible under Federal Rules of Evidence 701 and 704. Rule 701 does not allow lay witnesses to render expert legal opinions. Similarly, de Botherel's opinion is inadmissible under Rule 704 as it is not based on "scientific, technical or other specialized knowledge," which would, in this instance, include legal interpretation of statutes. In addition, de Botherel declared that he is the Director of Executive Compensation and Benefits. *See* De Botherel Dec. ¶ 1. As such, he has no training or other specialized knowledge to allow him to interpret French Statutes. His statements cannot be offered to support EDF's position that its actions were legal and that it terminated Ms. Gaujacq pursuant to a French statute. Accordingly, the following legal conclusions are inadmissible:

(1)   ¶ 4 (conclusory statement regarding the reason for the pay disparity between Ms. Gaujacq and Mr. Nadal);

(2)   ¶ 30 (asserting what rules, procedures and policies applied to Ms. Gaujacq's employment);

(3)   ¶ 33 (interpreting Ms. Gaujacq's expatriate contract);

(4)   first sentence of ¶ 30, 40, 41 (declaring EDF's legal obligations to Ms. Gaujacq);

8

(5)   fifth through seventh sentence of ¶ 40 (interpreting EDF's legal obligations under the EDF Guide);

(6)   ¶ 41 (asserting EDF's rights under Ms. Gaujacq's contract and the Guide);

(7)   ¶ 49 (asserting that EDF fully complied with French law and procedure);

(8)   ¶ 50 (request for dismissal of Ms. Gaujacq's complaint).

B.   Inadmissible Hearsay

For all of the reasons discussed in Section I(B) above, the following statements by de Botherel should be struck because they contain inadmissible hearsay, based completely on another person's knowledge or purporting to speak on behalf of EDF generally, without indicating that he has actual personal knowledge of the statements and without even indicating the source of the statement or actual person allegedly possessing personal knowledge. Moreover, Defendants are precluded from offering new and different statements that could have been made at the time of the 30(b)(6) deposition." *Rainey*, 26 F. Supp. 2d at 94. Accordingly the following statements are inadmissible:

(1)   second sentence of ¶ 39, which describes EDF communications with Ms. Gaujacq generally;

(2)   third sentence of ¶ 42, which purports to state what Mr. Lescoeur directed Ms. Gaujacq to do ("she was directed");

(3)   ¶ 43, which purports to state what Mr. Bouron notified Ms. Gaujacq of in writing without referencing the writing; and

(4)   last sentence of ¶ 44, which purports to state what "EDF subsequently determined."

C.   Irrelevant Statements

The following statements by de Botherel, and Exhibit A attached to his declaration, should be stricken as irrelevant because they pertain to a "grade level" system inapplicable to Ms. Gaujacq and Nadal. Despite Defendants' claim that de Botherel's interpretation of the

9

French statute is relevant, it is inapplicable to the facts in this dispute because Ms Gaujacq was not subject to the ranking system contained in the statute. In her Declaration, Ms. Gaujacq explained that:

> I was promoted out of this ranking system on May 1, 1994. Beginning May 1, 1994, I was a High-level Executive (Personnel de Direction, "Dirigeant," Director) and this ranking system did not apply to me anymore, nor to any of the positions I was assigned to from May 1, 1994 forward. (de Botherel Dec., Exh. A, but see Att. 19, Plaintiff's translation).

Gaujacq Dec. ¶ 85. Logically, Nadal who assumed her title was also not subject to the ranking system. Thus, the payment of other EDF/EDFINA employees under the system itself, and the ranking system, are not relevant.

Moreover, as de Botherel clearly states, "employees at the executive level are outside of the statutory classifications ... established in Article 8 of the National Statute." de Botherel Dec ¶ 7. Pursuant to this "National Statute," the grade level system is not applicable to executives, such as Ms. Gaujacq and Nadal, whose "remuneration is determined solely by the board of directors" of EDF. Exhibit A attached to de Botherel Decl ; *see also* de Botherel Decl ¶¶ 7, 11 Accordingly, these statements and Exhibit A are completely irrelevant to the only compensation at issue in this case, that of Ms Gaujacq and Nadal, and these statements should be stricken:

(1) ¶¶ 6, 8, 10 and Exhibit A (relating to the grade level system governed by French "National Statute");

The following statement by Mr. de Botherel should be stricken as irrelevant because it is contrary to the legal standard established under the Equal Pay Act ("EPA"):

(1) ¶ 31 (explaining generally compensation of prior heads of EDF's delegation to Washington back to August 1990).

The "grade levels" of Mr. Herbin (8/90-10/92), Mr. Gery (10/92-6/96), and Mr. Boussard (7/96-6/98) are not relevant because the Equal Pay Act recognizes comparison only between

10

immediate successors. *See* 1620.13(4) ("If a person of one sex succeeds a person of the opposite sex on a job at a higher rate of pay than the predecessor, and there is no reason for the higher rate other than difference in gender, a violation as to the predecessor is established and that person is entitled to recover the difference between his or her pay and the higher rate paid the successor employee."); *see also Goodrich v. IBEW*, 815 F.2d 1519, 1524 (D.C. Cir. 1987) (plaintiff only required to show that she performed work that was substantially equal to one male employee who was paid more). Other individuals are additionally irrelevant because Defendants refused to provide documentation regarding the actual work done by these individuals so there is no evidence that could lead a fact finder to the conclusion that they performed substantial equal work as Ms. Gaujacq and Nadal.[4] *See* 29 CFR 1620.13 ("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance"); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 449 (D.C. Cir. 1976 (same).

### III. Portions of Christian Nadal's Declaration are Inadmissible

#### A. Inadmissible Hearsay

For all of the reasons set forth in I(A), the following statements by Mr. Nadal should be stricken because they contain inadmissible hearsay, either based completely on another person's knowledge or as an interpretation of an attached exhibit.

Recognizing that the allegations in the below paragraphs clearly contain inadmissible hearsay, Defendants allege that they are not offered for the truth as stated, but reflect Nadal's "state of mind" regarding his appointment and duties in Washington.[5] Def. Opp at 4. The

---

[4] Because such documentation is under their control and reasonably available to EDF and EDFINA, the law permits the inference that the evidence would be unfavorable to the Defendants and would fail to show that substantially equal work was required. *See* § 72,16 Devitt, Blackmar, and Wolff

[5] Notably, however, Defendants admit that there are material facts in dispute as to Nadal's role at EDFINA. "[M]any key facts deal with the parties different understandings of Nadal's role at EDFINA." Def. Opp at 5

11

statements speak for themselves. Moreover, Defendants clearly offer the statements for their alleged truth. In EDF/EDFINA's Motion, Defendants' offer the statement to show which individuals made decisions as to Nadal and Ms. Gaujacq's position. *See* Def. EDF/EDFINA's Mot. SJ at 16. In Nadal's Motion for Summary Judgment, he also offers the above paragraphs for their alleged truth. *See* Nadal's SJ Mot at 5. There is absolutely no reference to Nadal's "state of mind" in the Defendants' pleadings. In fact, there is no reference in Defendants' pleadings to any of the other claimed non-hearsay basis for Nadal's declaration as alleged in their Opposition to this Motion. Accordingly, Defendants' attempts to save the below inadmissible hearsay statements contained in Nadal's declaration fail:

(1) ¶¶ 9, 10, 14 and 24 (Chairman Roussely's statements to Nadal), and 20 (EDF's attorney's statements to Nadal) which purports to detail what Chairman Roussely told Mr. Nadal in a meeting or meetings in 2003;

(2) first and last sentence of ¶ 14, which purports to state what Mr. Roussely decided and what Mr. Roussely told Mr. Nadal;

(3) second sentence of ¶ 14, which ultimately attempts to state what Mr. Roussely told Mr. Nadal, by stating what Mr. Nadal understood based upon his discussions with Mr. Roussely;

(4) second and third sentences of ¶ 19, which purports to state what Mr. Metais told Mr. Nadal after February 25, 2004 and what Mr. Metais "undertook" after that discussion;

(5) fourth sentence of ¶ 20, which purports to state what Mr. McVicker told Mr. Nadal on March 11, 2004;

(6) fourth sentence of ¶ 24, which purports to state what Mr. Roussely told Mr. Nadal at the end of May 2004; and

(7) last sentence of ¶ 54, which repeats an alleged statement made generally by the "Energy Branch."

Additionally, the following exhibit attached to Mr. Nadal's declaration should be stricken because it constitutes inadmissible hearsay:

12

(1)    Exhibit B

Exhibit B contains Mr. Betouret's notes of a conversation with Mr. Nadal, which purport to confirm what Mr. Nadal states he said to Mr. Betouret.

### CONCLUSION

For these reasons, plaintiff Catherine Gaujacq respectfully requests that the Court grant Plaintiff's Motion to Strike Portions of Declaration.

December 14, 2006                             Respectfully Submitted,

*Carla Brown*
Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
Carla D. Brown
D.C. Bar No. 474097
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq