IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | No 1:05CV0969 (JGP) |
| ) | |
| ELECTRICITE DE FRANCE ) | |
| INTERNATIONAL NORTH AMERICA, ) | |
| INC , et al ) | |
| ) | |
| Defendants ) | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff, Catherine Gaujacq, by counsel, will take the deposition upon oral examination of the corporate designee(s) of Electricite de France, S A ("EDF"), as to the matters set forth in Attachment A hereto, at 9:30 a m on Tuesday, January 31, 2006, at the offices of Charlson Bredehoft & Cohen, P C , 11260 Roger Bacon Drive, Suite 201, Reston, Virginia, 20190 The deposition will be taken before an officer authorized by law to administer oaths and take testimony, and will be recorded stenographically The deposition will continue from day to day until concluded, and will be used for all lawful purposes

December 21, 2005

*/s/ Elaine Charlson Bredehoft*

Elaine Charlson Bredehoft
D.C. Bar No. 441425
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive,
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
 Catherine Gaujacq

2

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION this 21st day of December, 2005, by email, addressed to counsel defendant EDF as follows:

>Laura B. Hoguet, Esq.
>Dorothea W. Regal, Esq.
>HOGUET NEWMAN & REGAL, LLP
>10 East 40th Street
>New York, New York 10016
>(212) 689-8808
>lhoguet@hnrlaw.com
>dregal@hnrlaw.com
>
>Counsel for Defendants
>  Electricite de France, S.A. and
>  Electricite de France International North America

With a courtesy copy sent this same day by email, addressed as follows:

>Ronald S. Cooper, Esq.
>David Clark, Esq.
>STEPTOE & JOHNSON LLP
>1330 Connecticut Avenue, NW
>Washington, DC 20036
>(202) 429-3000
>rcooper@steptoe.com
>dclark@steptoe.com
>
>Counsel for Defendant
>  Christian Nadal

_____
Elaine Charlson Bredehoft

## ATTACHMENT A

1. All decisions relating to Ms Gaujacq's employment with EDF and/or EDFINA, including:

   (a) the decision to appoint Mr Nadal to replace Ms. Gaujacq as President of EDFINA in the United States;

   (b) the decision to pay Mr. Nadal a significantly higher salary as President of EDFINA than that paid to Ms Gaujacq when she held the same position;

   (c) the decision to remove Ms Gaujacq from the list of authorized officers of EDFINA with signature authority on the corporate bank accounts;

   (d) the decision to revoke Ms Gaujacq powers as vice president of EDFINA, including but not limited to revoking the authority to enter into contracts with third parties; the authority to make any representation and/or warranties on behalf of EDFINA; and, the authority to incur any expenses of behalf of EDFINA;

   (e) the decision to change the locks on the company book closet where the corporate books were kept;

   (f) the decision to removed Ms Gaujacq from her position on the Project with EDFINA in the United States;

   (g) the decision to refuse to sign Ms Gaujacq's expatriation contract and/or the expatriation contract proposed by Ms Gaujacq in 2004, and all representations regarding the signed of that contract;

   (h) the decision to direct Ms Gaujacq to return to France immediately, without an assigned position;

   (i) the decision to give Ms Gaujacq only four days' notice that her mission in the United States would end on August 1, 2004; and

   (j) the decision not to propose a position for Ms Gaujacq in the EDF Energy Branch in France until November 1, 2004

2. The employment relationship and/or contract between Ms Gaujacq and EDF and/or EDFINA, including:

   (a) the drafting of and completion of all contracts between EDF and/or EDFINA and Ms Gaujacq including amendments to contracts;

   (b) the terms of Ms. Gaujacq's expatriation contract with EDF;

i

    (c)    Ms. Gaujacq's compensation as President of EDFINA;

    (d)    the change in Ms. Gaujacq's employment relationship with EDF and/or EDFINA after Mr. Nadal became president of EDFINA, including any new expatriation contracts proposed or agreed to related to this change;

    (e)    the new mission proposed for Ms. Gaujacq in or about the September/October 2004 timeframe; and

    (f)    the drafting and issuing of the Employment Letter as described in ¶ 187-188 in Ms. Gaujacq's complaint and/or the "certificate de travail" referenced in ¶ 187 of Defendants' answer.

3.    Ms. Gaujacq's performance during her tenure as President of EDFINA, including

    (a)    Ms. Gaujacq's scope of authority and changes in that authority;

    (b)    Ms. Gaujacq's employment responsibilities and performance;

    (c)    Ms. Gaujacq's performance, and any evaluations (formal or informal) of Ms. Gaujacq at any time;

    (d)    any written or oral reprimand, warning, or caution, or any compliment, award, or commendation, given to or concerning Ms. Gaujacq;

    (e)    any opportunities, positions, intentions to promote, career plans, or other considerations being given to the future employment of Ms. Gaujacq with EDF and/or EDFINA from August 2000 forward;

    (f)    any complaints regarding Ms. Gaujacq or her performance, including, but not limited to, any complaints by the SEPTEN group in charge of nuclear reactor designs in Lyon (France) within the France Energy Branch which allegedly had complained on June 20, 2004 about a lack of information from Ms. Gaujacq;

    (g)    any contention by the EDF and/or EDFINA that Ms. Gaujacq's performance was unsatisfactory, including but not limited to all performance issues referenced in the Response of Defendant EDFINA to Plaintiff's First Set of Interrogatories;

    (h)    any allegations that Ms. Gaujacq was paying fees to consultants and contractors of the company without services being performed;

    (i)    any allegation that Ms. Gaujacq submitted requests for reimbursement for unauthorized expenses; and

    (j)    any allegation that Ms. Gaujacq improperly or inappropriately conducted EDFINA business at her home.

4   All instructions and/or demands given by Mr Nadal to Ms Gaujacq and her response to such instruction, including:

   (a)   the instruction of Mr Nadal for Ms Gaujacq to bring all files, documents and any electronic email or other data she had at home or on her laptop relating to the multi-national nuclear power joint venture and a key, strategic initiative of EDFINA and EDF (the "Project") to his office; and

   (b)   the demand that Ms Gaujacq provide Mr Nadal with all of her business and company contacts

5   All policies and/or procedures in effect any time between 2000 and the present relating to EDF and/or EDFINA employees working abroad, including:

   (a)   the amount of notice given to other employees whose United States mission was ending and EDF's policy or standard practice regarding the amount of notice to be given for cessation of a mission; and

   (b)   the procedures, including terms of giving notice and terms of transition, to employees being reassigned out of country.

6   EDF and/or EDFINA EEO policies and procedures, including

   (a)   EEO-1 documents submitted to the EEOC or any other agency;

   (b)   any comparative evidence between treatment of female and non-female employees of EDF and/or EDFINA, including information supporting or reflecting any specific argument by Defendants that EDF and/or EDFINA does not discriminate on the basis of gender;

   (c)   the policies, practices, or procedures respecting gender discrimination or retaliation for complaints of discrimination in effect as of 1996;

   (d)   the policies, actual practices and procedures established for any and all employees who complained of discrimination or retaliation since 2000, and the filing and investigating of such complaints; and

   (e)   all information relating to any type of program in place for monitoring, or if any investigation, assessment or evaluation has taken place, as to whether female employees are treated the same or differently from non-female employees with respect to hiring, performance evaluations, salary increases, bonuses, promotions, demotions, disciplinary actions or terminations.

7  Complaints of discrimination and/or retaliation by EDF and/or EDFINA employees, including:

   (a)  all complaints made by any employee respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the results of any such investigation, any action taken, any follow-up relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint;

   (b)  all complaints made by Ms Gaujacq (whether oral or written, formal or informal) respecting gender discrimination, unfair, harsh or abusive treatment, or retaliation because of complaining of discrimination, including any investigation taken, the results of any such investigation, any action taken, any follow-up relating to Ms Gaujacq's complaints, and the subject of the complaint;

   (c)  all complaints made by Ms Gaujacq about Mr. Nadal's treatment of her to Fernando Ponasso, Didier Lamethe, Bruno Lescoeur, Mr. Cruezet and Mr. Laroche; and

   (d)  all formal complaints of gender discrimination or retaliation because of complaining of discrimination, filed with the United States Equal Employment Opportunity Commission or any state or local Human Rights Commission, or as a lawsuit, against EDF and/or EDFINA, from 2000 through the present, and any response or rebuttal to any such claim

8.  Methods to determine compensation for employees of EDF and/or EDFINA, including:

   (a)  the seniority system, the merit system, the grade level system and all other systems of factors referenced in Defendant's fifth affirmative defense;

   (b)  the compensation and method of determining such compensation paid to Christian Nadal from January 2000 to the present;

   (c)  the compensation and method of determining such compensation paid to Ms. Gaujacq from January 2000 until her termination;

   (d)  EDF's compensation policies for high-level executives; and

   (e)  the ranking and seniority system for high-level executives, including the EDFINA President's position within this system

9. Information relating to the audit referenced in ¶ 105 of Ms. Gaujacq's complaint, including:

   (a) the decision to have auditors come to the United States offices of EDFINA for the purpose of undertaking a special audit of EDFINA operations and finances during the period Ms Gaujacq had served as EDFINA's President;

   (b) the audit report and recommendations; and

   (c) any findings or conclusions of the audit, including specifically, any documents suggesting any wrongdoing or accounting improprieties that occurred during Ms Gaujacq's tenure as President of EDFINA

10. EDF's financial information, including:

    (a) any contention that EDF has suffered or been damaged as a result of Ms. Gaujacq's actions;

    (b) the financial status of the EDF for the past two years with respect to gross and net revenues, expenses and profit; and

    (c) EDFINA's monthly financial statements provided to EDF from August 2000 to January 2005

11. Relationship between EDFINA and EDF, including:

    (a) number of people employed by EDFINA and EDF, combined and separately

    (b) which entity employed Ms. Gaujacq;

    (c) human resource and other administrative support provided by EDF to EDFINA;

    (d) EDF contacts with the United States; and

    (e) relationship between management and board of directors of EDFINA and management and board of EDF

12. NUSTARI project, contracts and agreements, including:

    (a) disclosure restrictions and confidentiality provisions of Nustart documents in 2004 as described in ¶134 of Ms. Gaujacq's complaint or otherwise;

    (b) Ms Gaujacq position and responsibilities related to the Nustart project both while she was president of EDFINA and after Mr Nadal became president of EDFINA;

  (c) details of Georges Seveiere's succession as EDF's first representative to NuStart in summer 2004 as described in ¶170 of Defendants' answer.

13. Incident wherein checks voided in the Company's books on or about June 2004, which were signed by Ms. Gaujacq but were voided and/or ripped up by Benoit Dreux

14. Christian Nadal's employment contract(s), titles and positions with EDF and EDFINA from 2000 to the present

15. All EPRI agreements

16. The partial IPO of EDF/EDFINA.

17. The decision to deny Mike Slavitt access to the EDFINA's books and the decision to terminate Mike Slavitt, including the reasons for his termination

18. Ms. Gaujacq's proceeding before the "Conseil des Prudhommes" as referenced in Defendants' initial disclosures at page 6.