# ATTACHMENT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| Plaintiff, | ) ) ) | |
| v | ) ) | No. 1:05CV0969 (HHK) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al | ) ) ) ) | |
| Defendants | ) ) ) | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Catherine Gaujacq ("Ms Gaujacq"), by counsel, hereby files this Supplemental Memorandum in Support of her Opposition to Defendants Electricite de France, S.A. ("EDF") and Electricite de France International North America, Inc.'s ("EDFINA") (collectively "Defendants") Motion for Summary Judgment

Between October 2006 and December 2006, Ms. Gaujacq and Defendants EDF/EDFINA and Christian Nadal submitted to this Court all of their briefs and arguments for and against Summary Judgment. After the filing of the Parties' Summary Judgment submissions: (1) Ms. Gaujacq received a ruling from the French E.E.O.C. – "the HALDE" – denying her the ability to bring her claims in France, and, thus, contradicting Defendants' claim that the appropriate jurisdiction for Ms. Gaujacq's claims is in France; and (2) Ms. Gaujacq discovered that, throughout this case, Defendants hid the indictment of Defendant, Christian Nadal, and the indictment and conviction of the subsidiary he managed, Edenor S.A., instead claiming he was

selected to replace Ms. Gaujacq based on his history of strong performance in the financial world and with energy industry leaders.

Despite questions and discovery which should have elicited this information, Defendants failed to disclose the true reason for Mr. Nadal's leaving Argentina, which involved his indictment relating to allegations of mismanagement and criminal activity. Defendants have never disclosed Mr. Nadal's indictment to Ms. Gaujacq, in spite of direct questioning about his criminal background. Instead, Ms. Gaujacq discovered this relevant fact on her own long after the Parties submitted Summary Judgment briefs. Ms. Nadal's indictment took place before he was assigned to replace Ms. Gaujacq and renders Defendants' stated reasons for assigning Mr. Nadal to the United States false, thereby rendering the legitimate business justification for replacing Ms. Gaujacq false and pretextual, or at a minimum sufficiently suspect to create a compelling jury issue.

### I.    The HALDE Opinion Makes Clear That The Appropriate Forum For Ms. Gaujacq's Claims is the United States District Court for the District of Columbia

In their brief, Defendants EDF/EDFINA argue, *inter alia,* because EDF is a French Company and Ms. Gaujacq worked in France for several years before her assignment to the United States, United States law does not apply to EDF's decisions and actions pertaining to Ms. Gaujacq. *See* Defs. EDF/EDFINA's Memo. in Supp. of SJ, dated 10/16/06, hereinafter "Defs'. Memo," at 16-20. Defendants erroneously contend Title VII, the Equal Pay Act, and the D.C. Human Rights Act, do not apply to decisions affecting Ms. Gaujacq. *Id.* at 17.

Defendants ignore that Ms. Gaujacq worked in the United States *for years*, worked for EDF's North American subsidiary, and that the acts that form the basis of Ms. Gaujacq's claims took place in the United States and/or impacted her in the United States. Ms. Gaujacq: (1)

2

worked in the District of Columbia; (2) resided in the United States; (3) her Contract specified that the District of Columbia and federal laws applied; and (4) the effects of Defendants' discriminatory actions were felt in the District of Columbia and the United States. *See Shekoyan v. Sibley Int'l*, 409 F.2d 414, 422 (D.C.Cir. 2005) (finding that the place of employment written in an employee's employment contract and the place where the employee resided was controlling as to whether he worked in a foreign country and **rejecting** plaintiff's argument that he was actually employed in the United States because he was "hired and trained in the United States" and because "many of the decisions related to his employment were made in the United States")

Instead, Defendants claim U.S. law does not reach this dispute because EDF is a French company, Ms. Gaujacq and Mr. Nadal were citizens of France at the time the dispute arose, and that the agreements for Ms. Gaujacq's and Mr. Nadal's appointment were originally entered into in France. *Id.*

However, the French equivalent of the United States Equal Employment Opportunity Commission, the High Authority to Fight Discrimination and to Promote Equality (known by the French acronym HALDE), has recently rejected Defendants' claim that France is the appropriate forum. The HALDE issued a ruling refusing to investigate or process Ms. Gaujacq's claims and denying her the ability to have her discrimination and retaliation claims heard in France. *See* HALDE ruling dated 10/24/07, Attachment 1, as translated at Attachment 2. The HALDE confirmed that French law could not reach or govern this dispute arising from Ms. Gaujacq's employment in the United States. *See* Atts. 1 & 2. Thus, the United States District Court for the District of Columbia is the most appropriate, and sole, forum to obtain the relief Ms. Gaujacq is entitled to receive.

Accordingly, Defendants' claim that United States law does not apply to this dispute and should instead by left to the French tribunals, is not only without merit, it is now moot.

## II. Defendants' Stated Reason For Christian Nadal's Appointment To Replace Ms. Gaujacq In The United States is Contradicted by His Criminal Indictment, Which Defendants Failed to Disclose

Defendants EDF/EDFINA represented that Nadal had served, from 1999 to 2001, as the CEO of an Argentinean energy company in which EDF had an equity interest. *See* Defs.' Statement of Facts in Supp. of Summary Judgment of 10/16/06 ("Defs.' Facts") at ¶31. Defendants contend that Nadal was appointed to succeed Ms. Gaujacq because the company was moving toward privatization; and that the appointment of an "ambassador" level executive to Washington with experience and contacts in the financial world and with industry leaders was in its interest. *See* Defs.' Facts at ¶ 37.

However, after the parties submitted their Summary Judgment briefs, the facts regarding EDF, Edenor, and Mr. Nadal have come to light quite differently. Nadal did not have the operational or international experience Defendants have represented to this Court. *See generally* Resume of Christian Nadal, Attachment 3. According to EDF/EDFINA, Mr. Nadal was appointed CEO of Edenor in 1999 for the sole purpose of facilitating EDF's acquisition of 60% of Edenor shares from its fellow shareholders. *See* EDF testimony to the French Congressional Investigation, Att. 4 at 12, as translated at 5. Tellingly, when EDF sold Edenor on April 10, 2007, they sustained a considerable loss, from an acquisition in the amount of $1.4 billion to a sale of approximately $281 million. *See* Opinion N#2005-A-8, Attachment 6, as translated at Att. 7 at 3.

As the CEO of Edenor, Mr. Nadal did not have experience in international finance, necessary for his position with EDFINA, and he did not have the contacts in the international

4

finance community. Mr. Nadal testified his prior managerial focus was that of "day-to-day" manager. Nadal Dep., Att. 8 at 83. However, because of Mr. Nadal's management of environmental regulations and operational matters with an energy company, Edenor encountered serious environmental issues. *See* Nadal PCB 2000 "Still transformers with a highly toxic substance" translated at Att. 9 at 2.

Mr. Nadal left Edenor after only two years as its CEO. *See* Nadal Dep., Att. 8 at 22. Mr. Nadal was not assigned any meaningful position after this and ceased contact with financial and energy business leaders from December 2001 until June 2004. *See* Calendars of Mr. Nadal dated January 2002 – June 2004, Att. 10.

On May 24, 2005, Edenor, three of its managers, including Mr. Nadal, and some Argentinean officials were indicted. *See* Att. 11 at 77; *see also* Judgment of Efrain Faggionatto Márquez of 5/24/05, Att. 12 as translated at Att. 13 (identifying Mr. Nadal as one of the Edenor employees indicted.) Argentinean officials seized 150 million pesos (approximately $50 million U.S. dollars) of Edenor property, as an attachment to satisfy a potential judgment. Att. 11 at 77.

During his deposition on April 4, 2006, Mr. Nadal hid the fact that he had been criminally indicted, along with Edenor. Astonishingly, when asked if he had ever had any criminal matters brought against him, he replied "No." Nadal Dep., Att. 8 at 8. Instead, he claimed he left Argentina because all his deals had been completed. Att. 8 at 26-27. He described his experience with Edenor as a "positive" one and denied that EDF, or its board, ever expressed any dissatisfaction with his performance. Nadal Dep., Att. 8 at 84-86.

Defendants also omitted from their discovery responses any reference to Mr. Nadal's indictment and the conviction of Edenor. For example, Plaintiff requested in her Fourth Request for Production of Documents to EDFINA the following (the answers follow):

5

**RFP #25:** Please produce all documents regarding Mr. Nadal's contract or contracts relating to his mission, job and/or position and compensation in Argentina Edenor from 2000-2002.

**ANSWER:** Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exits

**RFP #30:** Please produce all documents regarding the audit(s) conducted of Edenor in 2000 and 2001.

**ANSWER:** Defendants object to this Request on the ground that it calls for documents that are not relevant or reasonably likely to lead to the discovery of admissible evidence Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

Att. 14 at pp 25 and 30

No documents respecting the indictments or criminal conviction of the Company over which Mr. Nadal managed were produced Moreover, other deponents conceded the material important. Yann Laroche ("Mr. Laroche") the Deputy General Manager of EDF, who was deposed in Paris, France on April 21, 2006, testified when Mr. Nadal was assigned to the United States from Argentina, he kept his R1 ranking, the highest executive ranking, and that Mr. Nadal's assignment from Argentina to the United States was "more of a horizontal rather than lateral" move Laroche Dep, Att. 15 at 85 Numerous times in Mr Laroche's deposition he claimed Edenor was a strategic and very important subsidiary of EDF in 2000. *See* Laroche Dep., Att. 15 at 15-16, 22, 32. Mr Laroche repeatedly stated that Mr Nadal's evaluations were positive, even systematically positive. *See* Laroche Dep., Att. 15 at 49-53. However, Mr Laroche, as the second highest ranked office of EDF and a member of the governing Committee of EDF, had to have been aware that, on May 30, 2003, an Argentinean federal judge indicted Edenor and its Officers and Directors, including Mr Nadal and Fernando Ponasso ("Mr. Ponasso") with criminal charges. *See* Att 12, translated at Att. 13, and In light of PCB's at Att.

6

16. Mr. Laroche failed to disclose the true reason for Mr. Nadal's leaving Argentina -- under a cloud of significant allegations of mismanagement and criminal activity

Mr. Laroche knew his representations were false at the time he made them. As a member of the EDF Executive Committee, Mr. Laroche would have had full knowledge of the criminal investigation of Edenor launched in Argentina in 2000, the criminal charges against Mr. Nadal and Mr. Ponasso in 2003, and the conviction of Edenor in 2005. Mr. Laroche was clearly aware of the financial and environmental fiasco initiated during Mr. Nadal's 1999-2001 assignment with Edenor, yet failed to disclose any of this information during the deposition, and instead, as pointed out above, affirmatively covered up Mr. Nadal's conduct.

In May 2003, EDF, through François Roussely, and under a congressional investigation in France for its 2001 investment in Argentina, failed to disclose the potential liability of Edenor to the French investigators. *See* Testimony of F. Roussely of 5/20/03, Att. 5 at 14, with Translation at Att. 6; *see* Form 6-K Filing of Edenor S.A., Att. 11 at 77; *see also* Nadal Dep., Att. 8 at 38-39 (Edenor's issues with the dangerousness of transformers and explosions began by 2000.)

During this litigation, both Mr. Nadal and EDF concealed relevant information they knew was fatal to their claim, that Mr. Nadal was appointed for business reasons to the United States. In comparing any of Ms. Gaujacq's qualifications to Mr. Nadal's, there can be no honest attempt to asset that Mr. Nadal's qualifications were superior, or even equal, to those of Ms. Gaujacq. Similarly, taking as true the very worst claims Defendants can or may assert against Ms. Gaujacq, they collectively pale in comparison to the seriousness of the conduct engaged in by Mr. Nadal.

7

This evidence and these material facts were purposely concealed by the Defendants during discovery. The discovery of this evidence substantially negates any legitimate basis for summary judgment in favor of Defendants, and at a minimum cries out to these issues being best weighed by a jury.

## CONCLUSION

For the above reasons, and for those set forth in her previously filed Opposition to Defendants' Motion for Summary Judgment, Ms. Gaujacq respectfully requests that Defendants' Motion for Summary Judgment be denied. Further, because of the concealment of this very relevant and critical information, Plaintiff seeks an award of costs and attorneys' fees in defending against the Motions for Summary Judgment.

March 5, 2008                                  Respectfully Submitted,

/s/
_____
Elaine Charlson Bredehoft
D.C. Bar No. 441425
Carla D. Brown
D.C. Bar No. 474097
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

Counsel for Plaintiff
    Catherine Gaujacq

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March 2008, a copy of the foregoing Motion and Memorandum for Leave to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment was filed electronically via ECF and mailed via first class mail, postage prepaid, to

>Laura B. Hoguet, Esq.
>Dorothea W. Regal, Esq.
>Randi S. May, Esq.
>HOGUET NEWMAN & REGAL, LLP
>10 East 40th Street
>New York, NY 20016
>Counsel for Defendants EDF, SA
>    and EDFINA
>
>Morgan D. Hodgson, Esq
>David A. Clark, Esq
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036
>Counsel for Defendant Christian Nadal

                                          /s/ ECB
                                    Elaine Charlson Bredehoft