ATTACHMENT 12

*Resumen:* el Juez Federal de Zárate-Campana, Dr. Efraín Faggionato Márquez determinó, en la causa 2512, que los transformadores de la empresa EDENOR SA. contenían PCBs en distintas concentraciones. Los PCBs integran una lista entre los diez contaminantes orgánicos mas persistentes del planeta. A continuación se transcriben partes de los considerandos y las resoluciones del juez decretando el procesamiento de directivos de la empresa y de miembros del Ente Nacional Regulador de la Energía Eléctrica, y trabando embargo sobre sus bienes y los de la empresa EDENOR S.A.

**RESUELVO:**

I. DECRETAR EL PROCESAMIENTO de DANIEL JOSÉ LELLO, de las demás condiciones personales obrantes en el legajo, por considerarlo autor penalmente responsable del delito de contaminación peligrosa para la salud, conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación).

II. DECRETAR EL PROCESAMIENTO de LUCIANO PIRONIO, de las demás condiciones personales obrantes en el legajo, por considerarlo autor penalmente responsable del delito de contaminación peligrosa para la salud, conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación).

III. DECRETAR EL PROCESAMIENTO de JULIO ADALBERTO MARQUEZ, de las demás condiciones personales obrantes en el legajo, por considerarlo autor penalmente responsable del delito de contaminación peligrosa para la

salud, conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación)

IV. DECRETAR EL PROCESAMIENTO de JUAN ANTONIO LEGISA, de las demás condiciones personales obrantes en el legajo, por considerarlo autor penalmente responsable del delito de incumplimiento de los deberes de funcionario público, conforme lo previsto y reprimido por el artículo 248 del Código Penal, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de un millón de pesos ($1.000.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación).

V. DECRETAR EL PROCESAMIENTO de MARIA CRISTINA MASSEI, de las demás condiciones personales obrantes en el legajo, por considerarla autor penalmente responsable del delito de incumplimiento de los deberes de funcionario público, conforme lo previsto y reprimido por el artículo 248 del Código Penal, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de doscientos cincuenta mil pesos ($250.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación)

VI. DISPONER LA FALTA de MERITO de FRANCISCO FERNANDO PONASSO, HENRI LAFONTAINE, HENRI MARCEL ROGER DUCRE, CRISTIAN ROLLAND NADAL, conforme al artículo 309 del Código Procesal Penal de la Nación

SOBRESEER a JUAN CARLOS CASSAGNE, HUGO RICARDO PENTENERO, RICARDO FLAMMINI, YVES DESROUSSEAUX, EDUARDO VICH, EMILIO JOSÉ CÁRDENAS, JAVIER ANTONIO GONZÁLEZ NORBERTO ANTONIO GONZÁLEZ, EDUARDO JAVIER ROMERO, MARIO JOSÉ GUARAGNA, PATRICE MEES, CRISTIAN PARIS, BO GOSTA KALLSTRAND, JOSÉ MANUEL CALDERERO, ALBERTO LÓPEZ GARCÍA, JESÚS BURILLO ANDREU, ALFREDO LLORENTE LEGAZ, RAMÓN VÁZQUEZ GONZÁLEZ, RICARDO EUSEBIO RODRÍGUEZ, OSCAR ERMELINDO MASSEI, CARLOS EUGENIO GARAT, conforme al artículo 336, inciso 4° del Código Procesal Penal de la Nación, haciendo mención que la formación del presente sumario en nada afecta el buen nombre y honor del que gozaren los mencionados

ORDENAR EL EMBARGO PREVENTIVO sobre los activos de la empresa Distribuidora de Energía Norte SA (EDENOR), hasta cubrir la suma ciento cincuenta millones de pesos ($ 150.000.000), que se entiende prudente para cautelar la reparación del daño causado el remedio ambiental y las costas causídicas (arts 518,519 y 520 CPPN)

## LO QUE SE TIENE POR PROBADO

En esta causa está probado que:
a. Hay presencia de PCBs en la tierra (suelo y el agua)

b. Los transformadores de la empresa EDENOR SA contenían y contienen PCBs en distintas concentraciones

c. El mantenimiento de dichos transformadores no fue el adecuado puesto que existieron averías que permitieron el derrame de su líquido refrigerante (que es el que contiene PCBs) y hasta el incendio de dichos transformadores

d. El derrame del contenido líquido de dichos transformadores se desparramó sobre el suelo y percoló a la napa de agua

e. El incendio de transformadores con contenido de PCBs, por combustión de este elemento químico, libera "dibenzoparadioxinas", que potencian el carácter cancerígeno de los PCBs

f. Hubo y siguen existiendo transformadores que contienen PCBs como sustancia refrigerante, en el ámbito territorial al cual se circunscribió esta investigación

g. Lo antes expuesto fue negado por la autoridad de control (Ente Nacional Regulador de la Energía) y por la empresa (Empresa Distribuidora de Energía Norte SA)

## ALGUNOS DATOS ACLARATORIOS

a. Los PCBs son utilizados como sustancia refrigerante en esta clase de industria durante mucho tiempo anterior a la de la presente pesquisa

b. Está permitido - con limitaciones de acuerdo a cantidades determinadas - el uso de PCBs como integrantes del elemento refrigerante de los transformadores, por un tiempo determinado hasta su total eliminación

c. Los PCBs integran una lista entre las diez (10) sustancias químicas como contaminantes orgánicos mas persistentes del planeta

*(Fuente: Programa de las Naciones Unidas para el Desarrollo - PNUD- 1997)*

# ATTACHMENT 13

Federal Judge of Zárate Bell Doctor Efraín Faggionatto Márquez, who in the cause 2512 determined: Bell, May 24, 2005.

I RESOLVE:

I. DECREEING THE PROSECUTION of DANIEL JOSÉ LELLO, from the other personal conditions presented to the Court, by considering him responsible author for the crime of dangerous contamination for the health, as specified and repressed by the article 56 of the Law 24051, enjoining embargo on goods of his property until covering the sum of five hundred thousand pesos ($500.000), let the order be executed diligently by the official Justice of the Court (article 518 of the Criminal Code of the Nation).

VI. DECREEING THE LACK of MERIT of FRANCISCO FERNANDO PONASSO, from the other personal conditions presented to the Court, according to the article 309 of the Criminal Code of the Nation.

IX. DECREEING THE LACK of MERIT of CRISTIAN ROLLAND NADAL, from the other personal conditions presented to the Court, according to the article 309 of the Criminal Code of the Nation

XXXI. ORDERING THE PREVENTIVE EMBARGO against the assets of Empressa Distribuidora de Energia Norte SA (EDENOR), to the amount of one hundred and fifty millions pesos ( 150,000,000), as a prudent escrow to provide for the repairs and environmental remedy and the associated costs (Arts 518, 519, and 520 Code of criminal of the Nation)

ATTACHMENT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CATHERINE GAUJACQ | ) | |
| | ) | |
| Plaintiff, | ) | **ECF** |
| | ) | |
| v. | ) | Civil Action No. C5-969 (JGP) |
| | ) | |
| ELECTRICITE DE FRANCE | ) | |
| INTERNATIONAL NORTH AMERICA, | ) | |
| INC., ELECTRICITE DE FRANCE, S.A. | ) | |
| and CHRISTIAN NADAL, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE OF DEFENDANTS ELECTRICITE DE FRANCE, S.A. AND ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC. TO PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants Electricité de France, S.A. ("EDF") and Electricité de France International North America, Inc. ("EDFINA") (referred to herein as "Defendants") respond to Plaintiff's Fourth Request for Production of Documents to Defendant Electricité de France, S.A. ("EDF"), dated April 7, 2006, and Plaintiff's Fourth Request for Production of Documents to Defendant Electricité de France International North America, Inc. ("EDFINA"), dated April 7, 2006 (together "Plaintiff's Fourth Request for the Production of Documents"), as follows:

### GENERAL OBJECTIONS AND RESPONSES

1.    Defendants object to Plaintiff's Fourth Request for the Production of Documents to the extent it is duplicative of the requests in Plaintiff's First Request for Production of Documents to Defendant EDFINA, dated October 28, 2005, Plaintiff's First Request for Production of Documents to Defendant EDF, dated November 21, 2005, Plaintiff's Second

Request for Production of Documents to Defendant EDFINA, dated November 22, 2005, Plaintiff's Second Request for Production of Documents to Defendant EDF, dated November 22, 2005, Plaintiff's Third Request for Production of Documents to Defendant EDF, dated January 24, 2006 and/or Plaintiff's Third Request for Production of Documents to Defendant EDFINA, dated January 24, 2006 (collectively, "Plaintiff's Prior Document Requests"), and Defendants hereby incorporate by reference and repeat each and every previous objection made by Defendants, or either of them, in response to Plaintiff's Prior Document Requests in response to each and every request that is duplicated.

2.    Defendants object to Plaintiff's Fourth Request for the Production of Documents on the ground that it is unreasonably cumulative of Plaintiff's Prior Document Requests.

3.    Defendants object to Plaintiff's Fourth Request for the Production of Documents on the ground that Plaintiff has had ample opportunity by discovery in this action to obtain the information sought in Plaintiff's Fourth Request for the Production of Documents.

4.    Defendants make these objections and responses without waiver of any right or privilege to object to the introduction of evidence, in this or in any other action or proceeding, of any information contained in any of the documents or the introduction of the documents themselves, upon the grounds of competency, relevancy, materiality, hearsay, authenticity, or any other ground. Defendants make no representation of authenticity with respect to any document or tangible thing produced hereunder.

5    The answers given in response to Plaintiff's Fourth Request for the Production of Documents and the documents produced in response thereto are given without prejudice to Defendants' rights to present as evidence additional facts and documents which they may later

2

discover or identify or which have been mistakenly omitted by them from the responses or the production of documents.

6.    Defendants object and respond on the basis of their understanding of and interpretation of the requests in Plaintiff's Fourth Request for the Production of Documents. If Plaintiff understands or interprets any of the requests in Plaintiff's Fourth Request for the Production of Documents differently, Defendants reserve the right to supplement any of these responses and the documents produced pursuant hereto, either with additional objections or otherwise.

7.    Defendants object to Plaintiff's Fourth Request for the Production of Documents to the extent that it asks for documents, or portions thereof, which are protected by the attorney-client privilege, the work product doctrine, or any other privilege, immunity or protection available under the law, and no document or portion of any document containing such privileged information will be produced. Defendants do not intend by this response or objection to waive any claim of privilege or immunity.

8.    Inadvertent production of any document subject to any applicable privilege or doctrine, including, but not limited to, the privileges and doctrine set forth above, is not intended to be, and shall not operate as, a waiver of any such privilege or doctrine, in whole or in part; nor is any such inadvertent production intended to be, nor shall it constitute, a waiver of the right to object to any use of such document or of the information contained therein.

9.    Defendants object to Plaintiff's Fourth Request for the Production of Documents to the extent it seeks documents generated after Plaintiff's institution of litigation against the defendants Nadal, EDF and EDFINA or any of them.

10.    All documents produced pursuant to this Response will be produced subject to the terms of a Protective Order agreed among the parties and submitted to the court on December 6, 2005.

## SPECIFIC RESPONSES

Subject to and without waiver of the foregoing General Objections and those set forth in Defendants' responses to Plaintiff's Prior Document Requests, which are hereby incorporated by reference into each and every one of the specific responses that follow, Defendants respond as follows:

## REQUEST NO. 1

For the time period of January 2000 to the present, please provide documents related to the rank, pay, gender, performance history, professional qualifications and background and current position of all employees with the same rank as Ms. Gaujacq (R3) and all employees with the same rank as Mr. Nadal (R1).

## RESPONSE TO REQUEST NO. 1

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employees whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) it seeks

4

documents regarding categories of other EDF employees whereas Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) it seeks documents regarding the treatment of a multitude of other EDF employees whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals described therein. Defendants further object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests to the extent it seeks documents regarding the pay levels of persons with the rank of R1 and those with the rank of R3. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome.

## REQUEST NO. 2

For the time period of January 2000 to present, please provide documents related to the rank, pay, gender, performance history, professional qualifications and background and current position of all employees with the same rank as the minimum rank purportedly assigned to whomever holds the position of President of EDFINA (R2)

## RESPONSE TO REQUEST NO. 2

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

5

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employees whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) it seeks documents regarding categories of other EDF employees whereas Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) it seeks documents regarding the treatment of a multitude of other EDF employees whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals described therein. Defendants further object to this Request on the ground that it is duplicative of Plaintiff's prior document requests to the extent it seeks documents regarding the pay levels of persons with the rank of R2. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome. Defendants further object to this Request to the extent it reflects inaccurate premises and/or presumptions.

## REQUEST NO. 3

For the time period of 1990 to present, please provide documents regarding all individuals who have held the position of President of EDFINA, including each individual's resumes, the position each individual held after his appointment as President of EDFINA, and copies of the Expatriation Contracts for each

## RESPONSE TO REQUEST NO. 3

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employees whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) it seeks documents regarding categories of other EDF employees whereas Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) it seeks documents regarding the treatment of a multitude of other EDF employees whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals described therein. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome.

7

## REQUEST NO. 4

For the time period 1990 to present, please provide documents reflecting the rank, pay and professional qualifications of each EDF employee that served as president of EDFINA.

## RESPONSE TO REQUEST NO. 4

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employees whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) it seeks documents regarding categories of other EDF employees whereas Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) it seeks documents regarding the treatment of a multitude of other EDF employees whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals described therein. Defendants further object to this Request on the grounds that it is ambiguous,

8

and that it is overbroad and unduly burdensome. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

## REQUEST NO. 5

For the time period 2000 to 2005, please provide documents reflecting all expenses paid by EDF and/or EDFINA on behalf of Catherine Gaujacq.

## RESPONSE TO REQUEST NO. 5

Defendants object to this Request on the ground that the stated time period is overbroad and it is otherwise overbroad and unduly burdensome. Defendants further object to this Request on the ground that it calls for the production of documents within the possession, custody or control of Plaintiff. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

## REQUEST NO. 6

For the time period of 2000 to 2003, please provide documents reflecting the salary paid by EDF to Catherine Gaujacq, including all W-2s issued by EDF and/or EDFINA regarding Ms. Gaujacq.

## RESPONSE TO REQUEST NO. 6

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Defendants further object to this Request on the ground that it calls for the production of documents within the possession, custody or control of Plaintiff. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged

9

documents responsive to this Request to the extent they have not previously been produced herein and to the extent such documents are in its possession, custody or control, if any exist.

## REQUEST NO. 7

For the time period 2000 to present, please provide documents related to any and all EDF Pension Plan(s) and/or Capital Account Plan

## RESPONSE TO REQUEST NO. 7

Defendants object to this request on the ground that it is overbroad in its stated time period and unduly burdensome. Defendants further object to this Request on the ground that it is ambiguous in its lack of definition of the term "Capital Account Plan." Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

## REQUEST NO. 8

For the time period 2000 to present, please provide documents related to any and all EDF and/or EDFINA Preferred Stock Offering or Plan.

## RESPONSE TO REQUEST NO. 8

Defendants object to this request on the ground that it is overbroad in its stated time period and unduly burdensome. Defendants further object to this Request on the ground that it is ambiguous in its lack of definition of the term "EDF and/or EDFINA Preferred Stock Offering or Plan." Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

## REQUEST NO. 9

Please provide general memorandum from the taxes counsel of EDF ("Une note generale d'information etablie par le Service Fiscal de la Direction Financiere d'EDF") referenced in Article 14 of Ms. Gaujacq's Expatriation Contract.

## RESPONSE TO REQUEST NO. 9

Defendants will produce the document described in this Request if it exists.

## REQUEST NO. 10

Please provide documents regarding Francoies Denni [sic], including any complaints by or about him and any judgment or rights regarding him.

## RESPONSE TO REQUEST NO. 10

Defendants object to this Request on the grounds that it is ambiguous and overbroad. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

## REQUEST NO. 11

For the time period 1999 to 2005, please provide documents sufficient to show the dates and names of each person having check-signing authority for EDFINA in the United States.

## RESPONSE TO REQUEST NO. 11

Defendants object to this Request on the grounds that it is ambiguous in its reference to "dates," overbroad in its stated time period, and duplicative of requests in Plaintiff's Prior Document Requests. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

11

## REQUEST NO. 12

Please provide documents showing procedures and policies regarding the giving of promotions and/or raises or bonuses for all EDF and/or EDFINA employees.

## RESPONSE TO REQUEST NO. 12

Defendants object to this Request on the grounds that it is unclear, ambiguous and overbroad. Defendants further object to this Request on the ground that it is duplicative of requests in Plaintiff's Prior Document Requests. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

## REQUEST NO. 13

Please provide documents reflecting any comparisons made between Ms. Gaujacq and any other EDF or EDFINA employee other than Mr. Nadal.

## RESPONSE TO REQUEST NO. 13

EDF and EDFINA object to this Request on the ground that it is duplicative of requests in Plaintiff's Prior Document Requests to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employees whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) it seeks

12

documents regarding categories of other EDF employees whereas Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) it seeks documents regarding the treatment of a multitude of other EDF employees whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals described therein. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome.

## REQUEST NO. 14

For the time period of 2003 to present, please produce documents relating to all complaints, formal and informal, made by any employee of EDF and/or EDFINA respecting gender discrimination or retaliation because of complaining of discrimination, any investigation, the result of any such investigation, any action taken, any follow-up by EDF and/or EDFINA relating to the complaining employee or the subject of the complaint, and the current employment status (including position held) of the complaining employee and the subject of the complaint.

## RESPONSE TO REQUEST NO. 14

EDF and EDFINA object to this Request on the ground that it is duplicative of requests in Plaintiff's Prior Document Requests to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals as described therein. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome.

## REQUEST NO. 15

For the time period of 2004 to present, please produce all EE0-1 documents submitted to the EEOC or any other agency

## RESPONSE TO REQUEST NO. 15

EDF and EDFINA object to this Request on the ground that it is duplicative of requests in Plaintiff's Prior Document Requests to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible

14

evidence in that (1) Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; (2) Plaintiff's claim is a claim of alleged individual discrimination and not a claim of a pattern or practice of discrimination directed to other employees; and (3) Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of any such individuals as described therein. Defendants further object to this Request on the grounds that it is ambiguous, and that it is overbroad and unduly burdensome.

## REQUEST NO. 16

Please produce documents reflecting any comparison between treatment of female and non-female employees of EDF and/or EDFINA, including any documents that would support a claim that EDF and/or EDFINA does not discriminate on the basis of gender and any documents that would support a claim that EDF and/or EDFINA does discriminate on the basis of gender.

## RESPONSE TO REQUEST NO. 16

EDF and EDFINA object to this Request on the ground that it is duplicative of requests in Plaintiff's Prior Document Requests to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible

evidence in that  (1) Plaintiff's claim is a claim of alleged discrimination under United States

laws and not a claim of discrimination under French law; (2) Plaintiff's claim is a claim of

alleged individual discrimination and not a claim of a pattern or practice of discrimination

directed to other employees; and (3) Plaintiff's claim is a claim of alleged discrimination

concerning alleged inequality in treatment between Plaintiff and Defendant Nadal and not a

claim of alleged inequality in treatment between Plaintiff and any other employee  Defendants

further object to this Request on the ground that it calls for the production of documents the

disclosure of which would constitute an unwarranted invasion of the personal privacy of any

such individuals as described therein  Defendants further object to this Request on the grounds

that it is ambiguous, and that it is overbroad and unduly burdensome.

## REQUEST NO. 17

Please produce all documents reflecting the identity of and level of participation
of any EDF and/or EDFINA employee who acted upon, made decisions regarding, or gave
opinions related to any of Ms. Gaujacq's complaints of discrimination and/or retaliation from
2004 to present

## RESPONSE TO REQUEST NO. 17

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior

Document Requests.  Defendants further object to this Request on the grounds that it is vague,

ambiguous and unduly burdensome.  Defendants further object to this Request to the extent it

calls for documents that are protected from disclosure by the work product doctrine and/or the

attorney-client privilege  Notwithstanding and without waiving these or any other objections,

Defendants will produce non-privileged documents responsive to this Request to the extent they

have not previously been produced herein, if any exist.

16

## REQUEST NO. 18

Please produce all documents regarding the performance evaluations of Benoit Dreux from January 2000 to the present.

## RESPONSE TO REQUEST NO. 18

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal, and the performance of any other EDF employee, such as Mr. Dreux, is not at issue in this case. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr. Dreux, a French employee of EDF. Defendants further object to this Request on the ground that it is overbroad in its stated time period.

## REQUEST NO. 19

Please produce all documents regarding the performance evaluation of Jean-Luc Foret from January 2000 to the present

## RESPONSE TO REQUEST NO. 19

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected

17

and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal, and the performance of any other EDF employee, such as Mr. Foret, is not at issue in this case. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr. Foret, a French employee of EDF. Defendants further object to this Request on the ground that it is overbroad in its stated time period.

### REQUEST NO. 20

Please produce all documents regarding the performance evaluations of Richard Schomberg from January 2000 to the present.

### RESPONSE TO REQUEST NO. 20

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between

Plaintiff and Defendant Nadal, and the performance of any other EDF employee, such as Mr.

Schomberg, is not at issue in this case. Defendants further object to this Request on the ground

that it calls for the production of documents the disclosure of which would constitute an

unwarranted invasion of the personal privacy of Mr. Schomberg, a French employee of EDF.

Defendants further object to this Request on the ground that it is overbroad in its stated time

period.

<h3 style="text-align:center">REQUEST NO. 21</h3>

Please produce all documents regarding the performance evaluations of Adja Ba
from January 2000 to the present.

<h3 style="text-align:center">RESPONSE TO REQUEST NO. 21</h3>

EDF and EDFINA object to this Request on the ground that it seeks the same type of

documents regarding employees of EDFINA to which Defendants previously objected and which

were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March

10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is

not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's

claim is a claim of alleged discrimination concerning alleged inequality in treatment between

Plaintiff and Defendant Nadal, and the performance of an EDFINA employee, such as Ms. Ba, is

not at issue in this case. Defendants further object to this Request on the ground that it calls for

the production of documents the disclosure of which would constitute an unwarranted invasion

of the personal privacy of Ms. Ba. Defendants further object to this Request on the ground that it

is overbroad in its stated time period.

## REQUEST NO. 22

Please produce the 941's and 942's for EDF and EDFINA for 2002-2005.

## RESPONSE TO REQUEST NO. 22

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

## REQUEST NO. 23

Please produce all documents regarding any valuation of the laptop used by Ms Gaujacq during her tenure as President of EDFINA, the original cost of the laptop, appreciation or depreciation, cost analysis, and the offer or offers to sell the laptop to Ms. Gaujacq.

## RESPONSE TO REQUEST NO. 23

Defendants object to this Request on the ground that it calls for documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

## REQUEST NO. 24

Please produce all documents regarding EDF's and/or EDFINA's policies for clearing data from laptops.

## RESPONSE TO REQUEST NO. 24

Defendants will produce non-privileged documents responsive to this Request, if any exist.

20

## REQUEST NO. 25

Please produce all documents regarding Mr Nadal's contract or contracts relating to his mission, job and/or position and compensation in Argentina Edenor from 2000 – 2002.

## RESPONSE TO REQUEST NO. 25

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist

## REQUEST NO. 26

Please produce all documents regarding Mr Nadal's contract or contracts relating to his mission job, and/or positions, and compensation from 2002 and 2003

## RESPONSE TO REQUEST NO. 26

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Defendants further object to this Request to the extent it reflects inaccurate premises or presumptions. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist

## REQUEST NO 27.

Please produce all documents regarding audit(s) conducted of Mr Nadal's division of EDF in 1992

### RESPONSE TO REQUEST NO. 27

Defendants object to this Request on the grounds that it is oppressive, vexatious and harassing in that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. Defendants further object to this Request on the ground that it is ambiguous.

### REQUEST NO. 28

Please produce all documents regarding audit(s) conducted of Mr. Nadal's division of EDF in 1993 and 1994 while Mr. Nadal was an Executive Vice President.

### RESPONSE TO REQUEST NO. 28

Defendants object to this Request on the grounds that it is oppressive, vexatious and harassing in that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. Defendants further object to this Request on the ground that it is ambiguous.

### REQUEST NO. 29

Please produce all documents regarding the audit(s) conducted of the Development position at EDF in 1997 while Mr. Nadal was Vice President of Strategy and Development.

### RESPONSE TO REQUEST NO. 29

Defendants object to this Request on the grounds that it is oppressive, vexatious and harassing in that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. Defendants further object to this Request on the ground that it is ambiguous.

### REQUEST NO. 30

Please produce all documents regarding the audit(s) conducted of Edenor in 2000 and 2001.

### RESPONSE TO REQUEST NO. 30

Defendants object to this Request on the ground that it calls for documents that are not relevant or reasonably likely to lead to the discovery of admissible evidence. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist.

### REQUEST NO. 31

### [OMITTED IN PLAINTIFF'S REQUEST]

### REQUEST NO. 32

Please produce all documents constituting or interpreting EDF's Guide for Expatriation Missions.

### RESPONSE TO REQUEST NO. 32

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Defendants further object to this Request to the extent that it calls for documents that are protected from disclosure by the work product doctrine and/or the attorney-client privilege. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced, if they exist.

23

## REQUEST NO. 33

Please produce all Expatriation Contracts (or other contracts) of Richard Schomberg from 2000 to present.

## RESPONSE TO REQUEST NO. 33

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal, and any contracts between EDF and any other EDF employee, such as Mr. Schomberg, is not at issue in this case. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr. Schomberg, a French employee of EDF. Defendants further object to this Request on the grounds that it is overbroad in its stated time period and unduly burdensome.

## REQUEST NO. 34

Please produce all Expatriation Contracts (or other contracts) of Benoit Dreux from 2000 to the present.

24

## RESPONSE TO REQUEST NO. 34

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal, and any contracts between EDF and any other EDF employee, such as Mr Dreux, is not at issue in this case   Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr. Dreux, a French employee of EDF. Defendants further object to this Request on the grounds that it is overbroad in its stated time period and unduly burdensome

## REQUEST NO. 35

Please produce all Expatriation Contracts (or other contracts) of Jean-Luc Foret from 2000 to the present

## RESPONSE TO REQUEST NO. 35

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence in that Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment between Plaintiff and Defendant Nadal, and any contracts between EDF and any other EDF employee, such as Mr. Foret, is not at issue in this case. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr. Foret, a French employee of EDF. Defendants further object to this Request on the grounds that it is overbroad in its stated time period and unduly burdensome.

## REQUEST NO. 36

Please produce all documents (including disks) reflecting the results (including all documents obtained) of any and all searches, image scans, or other devices used or employed on any computer used by Catherine Gaujacq, including specifically her laptop and desk computers.

## RESPONSE TO REQUEST NO. 36

Defendants object to this Request on the ground that the documents it calls for are protected from disclosure by the work product doctrine and/or the attorney-client privilege. Defendants further object to this Request on the ground that it calls for documents that are the property of a third party and not within Defendants' possession, custody or control and cannot be obtained without payment to the third party.

## REQUEST NO. 37

Please produce all documents relating to the position offered to Catherine Gaujacq in 2004

### RESPONSE TO REQUEST NO. 37

Defendants object to this Request on the ground that it is duplicative of Plaintiff's Prior Document Requests. Notwithstanding and without waiving this or any other objections, Defendants will produce non-privileged documents responsive to this Request to the extent they have not previously been produced herein, if any exist.

### REQUEST NO. 38

Please produce all documents related to Mr. Virleux including Mr. Virleux's qualifications, work history, compensation, current position, level ratings, mission, job responsibilities, and all contracts with Mr. Virleux of any nature.

### RESPONSE TO REQUEST NO. 38

EDF and EDFINA object to this Request on the ground that it seeks the same type of documents regarding other French employees of EDF to which Defendants previously objected and which were the subject of a Motion to Compel that the Court deemed withdrawn by order dated March 10, 2006, with no subsequent motion to reconsider having been filed by Plaintiff.

Defendants further object to this Request on the ground that it is overbroad and unduly burdensome. Defendants further object to this Request on the ground that it calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence in that (1) it seeks documents regarding actions of a French company in France with respect to its French employee, Mr. Virleux, whereas Plaintiff's claim is a claim of alleged discrimination under United States laws and not a claim of discrimination under French law; and (2) it seeks documents regarding the treatment of another EDF employee whereas Plaintiff's claim is a claim of alleged discrimination concerning alleged inequality in treatment

27

between Plaintiff and Defendant Nadal and not a claim of alleged inequality in treatment between Plaintiff and any other employee. Defendants further object to this Request on the ground that it calls for the production of documents the disclosure of which would constitute an unwarranted invasion of the personal privacy of Mr Virleux, a French employee of EDF. Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist

## REQUEST NO. 39

Please produce all documents sufficient to reflect all commercial projects worked on by EDFINA from 2000 to the present

## RESPONSE TO REQUEST NO. 39

Defendants object to this Request on the grounds that it is vague, overbroad and unduly burdensome Defendants further object to this Request to the extent that the information it seeks is not relevant or reasonably likely to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that it reflects incorrect premises or presumptions Defendants further object to this Request to the extent that it seeks documents that are in the possession, custody or control of the Plaintiff Notwithstanding and without waiving these or any other objections, Defendants will produce non-privileged documents responsive to this Request, if any exist

28

Dated: May 11, 2006

HOGUET NEWMAN & REGAL

By:_____ /s/_____
Dorothea W. Regal, Esq., D.C. Bar No. NY0064
10 East 40th Street
New York, New York 10016
(212) 689-8808

*Counsel for Defendants Electricité de France, S.A. and Electricité de France International North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing RESPONSE OF DEFENDANTS ELECTRICITE DE FRANCE, S.A. and ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC. TO PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS by electronic mail upon the counsel below, pursuant to the agreement of counsel for all parties to accept service by such method, on May 11, 2006:

Elaine Charlson Bredehoft (ebredehoft@charlsonbredehoft.com)
Kathleen Z. Quill (kquill@charlsonbredehoft.com)
CHARLSON BREDEHOFT & COHEN, P.C.
11260 roger Bacon Drive
Suite 201
Reston, Virginia 20190
(703) 318-6800

*Counsel for Plaintiff*

Ronald S. Cooper (rcooper@steptoe.com)
Morgan D. Hodgson (mhodgson@steptoe.com)
David Clark (dclark@steptoe.com)
STEPTOE & JOHNSON
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*

_____/s/_____
DOROTHEA W. REGAL

ATTACHMENT 15

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                                    Friday, April 21st, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - -

IN THE MATTER OF                    )
                                    )
CATHERINE GAUJACQ                   )
                  Plaintiff,        )
                                    )CIVIL ACTION NO:
v.                                  )1:05CV0969 (JGP)
                                    )
ELECTRICITE DE FRANCE               )
INTERNATIONAL NORTH AMERICA         )
INC., et al                         )
                  Defendants.       )

- - - - - - - - - - - - - - - - - -

DEPOSITION OF YANN LAROCHE

Friday, April 21st, 2006
at  8 30 am

Taken at the offices of:

Gide Loyrette Nouel
26, cours Albert 1er
Location 4
75008, Paris
France

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                         Friday, April 21st, 2006

Page 15

09:00:39    1    being in charge of the Edenor subsidiary justified the R1

2    ranking as well?

3              MS. HOGUET:  Objection to form.  You may continue.

4              A.  The responsibilities that were his before he

09:01:25    5    was appointed at Edenor clearly justified being R1.  And

6    then, of course, being the general manager of Edenor, also

7    in terms of responsibilities, justified this because it was

8    a very major subsidiary.

9              Q.  Were there other major subsidiaries that,

09:01:51   10    because of their importance and significance, were justified

11    R1 ranking for the person who managed them?

12             A.  Yes   Well, honestly it would depend on the

13    year we're talking about, since obviously subsidiaries do

14    tend to evolve or change.  But since you seem to be

09:03:13   15    referring to the year 2000, clearly there was a similar

16    subsidiary nearby, which was the company called Light, in

17    Brazil.  That was also an R1-type responsibility.  By the

18    by, the person who is in charge of that subsidiary to date,

19    and who holds the job of directeur général, general manager,

09:03:45   20    is R1.

21             Q.  What was it about the Brazil subsidiary that

22    made it important enough that the person in charge of the

23    Brazil subsidiary held an R1 ranking?

24             A.  You know, the ranking of any person into the

09:05:24   25    R1 category is not random.  There is an assessment or

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

Case 1:05-cv-00969-HHK    Document 145-11    Filed 03/05/2008    Page 41 of 53
CATHERINE  GAUJACQ  v  EDFINA,  et  al.
Yann  Laroche                              Friday,  April 21st,  2006

Page 16

09:05:30    1    analysis that is carried out, not only as to the job

           2    description itself: the responsibilities that are held, both

           3    financially, industrially speaking, or in terms of human

           4    relations.  And then these various responsibilities are

09:05:46    5    assessed and lead to the ranking into the R1 category.

           6         Light in Brazil is just as important as Edenor in

           7    Argentina in those terms, and both of the subsidiaries make

           8    a substantial contribution on the EDF Group balance sheet,

           9    and hold a very major place within the group.  That is why

09:06:15   10    it is justified that they should be deemed to belong to R1.

          11         Q.  What is the substantial contribution to the

          12    balance sheet that Edenor and Light make such that it

          13    justifies the R1 ranking?

          14              MR. CLARK:  Objection to form.

09:07:42   15         A.  I think we need to understand clearly what

          16    I mean by "contribution".  I said earlier that the place

          17    that was held by the subsidiary within the group played

          18    a very important role.  So, by "contribution", one not only

          19    means the contribution to the final results, the bottom

09:08:55   20    line figures on the balance sheet.  In fact, the subsidiary

          21    has considerable weight in terms of turnover, balance sheet,

          22    and that of course justified being ranked as R1; but this is

          23    not the only contribution that could be made to the group.

          24    There are many other elements, such as for instance the

09:09:23   25    number of headcounts, the responsibilities in terms of

Case 1:05-cv-00969-HHK    Document 145-11    Filed 03/05/2008    Page 42 of 53
CATHERINE GAUJACQ v EDFINA, et al.
Yann Laroche                              Friday, April 21st, 2006

Page 22

09:30:49   1    entrust this position to somebody who was an expert in this

           2    field.  That is all I really know.

           3              Q.  What was the strategic mission for Edenor

           4    between 2000 and 2004?

09:31:09   5              A.  Edenor was a distribution subsidiary.  That

           6    would actually correspond to the description I just gave you

           7    of the Hungarian subsidiary; in other words, it dealt with

           8    the management of the network, the distribution or the

           9    supply of electricity, it managed its customer pool, and of

09:33:11  10    course customer relations.

          11              But it goes without saying that of course the size

          12    of the Argentinian unit had nothing to do with the Hungarian

          13    one.  And the fact that it should be considerably present in

          14    big cities such as Buenos Aires meant that there were many

09:33:44  15    possibilities of in fact having an influence or being

          16    represented outside of Buenos Aires.  Because you can

          17    understand yourself, when you are a top-ranking manager of

          18    relations within such a big city, it goes without saying

          19    that you establish contacts with the public authorities, the

09:34:07  20    local authorities, the administration or even the

          21    government.

          22              Q.  And what was the strategic mission for Light

          23    between 2000 and 2004?

          24              A.  I would say it was the same; obviously in

09:34:49  25    a different context, since this was the Brazilian context,

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                              Friday, April 21st, 2006

Page 32

| | | |
|---|---|---|
| 10:26:53 | 1 | investments, political parties, the United Nations, economic |
| | 2 | operators present on the American territory; and somebody |
| | 3 | who would have a certain degree of know-how in terms of |
| | 4 | strategy and high-level relations. |
| 10:27:15 | 5 | This is why Christian Nadal, who had quite a lot |
| | 6 | of experience in terms of strategy, for instance, through |
| | 7 | the responsibilities that he had held in terms of |
| | 8 | development and strategy within the group, and also the fact |
| | 9 | that he had been the person in charge of a very major |
| 10:27:34 | 10 | company in South America at that stage, was felt by the |
| | 11 | group to be best suited to deal with such a wide mission, |
| | 12 | and better suited than Catherine Gaujacq. |
| | 13 | Q. Do you know whether Catherine Gaujacq had had |
| | 14 | high relations with these various parties at any time during |
| 10:28:04 | 15 | 2000-2004? |
| | 16 | A. Again, on a personal basis I have no detailed |
| | 17 | knowledge of Catherine Gaujacq's achievements, since, again, |
| | 18 | she ranked R3. But when the top management or the Chair of |
| | 19 | EDF decided to select Christian Nadal as its US |
| 10:30:03 | 20 | representative, it would have been in the light of all of |
| | 21 | the elements that he might have obtained. Because obviously |
| | 22 | it goes without saying that, when you appoint somebody with |
| | 23 | such a degree of responsibility, before you reach |
| | 24 | a decision, especially as a chairman of the group, you are |
| 10:30:26 | 25 | going to reap all the opinions that you can obtain and |

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                          Friday, April 21st, 2006

Page 49

| | | |
|---|---|---|
| 11:49:10 | 1 | only -- we regularly review the evolution of their career, |
| | 2 | what their prospects for the future may be. |
| | 3 | During the discussions or the reviews that I saw, |
| | 4 | for instance in 2004, and discussions that I held with |
| 11:49:36 | 5 | Fernando Ponasso -- and more than that with Mr. Creuzet, |
| | 6 | because that of course pertained to his sector of |
| | 7 | activity -- the opinions that were expressed concerning |
| | 8 | Christian Nadal were always very positive. |
| | 9 | Q. Was there a written review for Christian Nadal |
| 11:49:59 | 10 | in 2004? |
| | 11 | A. As I indicated earlier, the assessment of |
| | 12 | an R1-ranking staff is usually informal, and doesn't lead to |
| | 13 | written documents. Sometimes it does, but usually -- well, |
| | 14 | it will be up to the reporting manager whether or not to put |
| 11:51:14 | 15 | this in writing. |
| | 16 | I do not know whether in this particular case |
| | 17 | there was anything in writing; sometimes it is put down in |
| | 18 | writing, sometimes it is not. There is no rule. |
| | 19 | THE WITNESS: How do you translate "rule", in |
| 11:51:49 | 20 | French? |
| | 21 | THE INTERPRETER: "Régle". |
| | 22 | THE WITNESS: Can I add something? |
| | 23 | MS. BREDEHOFT: Yes, please. |
| | 24 | A. In fact, the group policy consists in |
| 11:52:25 | 25 | demanding that each year there be an interview between the |

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.
Yann Laroche                          Friday, April 21st, 2006

Page 50

| 11:52:30 | 1 | staff and his supervising manager, but this does not |
| | 2 | necessarily lead to a written report. |
| | 3 | Q. Have you ever seen a written performance |
| | 4 | review on Christian Nadal? |
| 11:53:43 | 5 | A. No, I only see written reports of that type |
| | 6 | when naturally I have drafted them myself, concerning some |
| | 7 | of my reporting staff; and also when we have performance |
| | 8 | review meetings. For instance, during the meeting of the |
| | 9 | executive committee, the members of the executive committee |
| 11:54:08 | 10 | might come with their own documents, but I neither see them |
| | 11 | nor check them; it does not come within my purview. |
| | 12 | Q. Are you able to tell me anything specific |
| | 13 | about the accomplishments of Christian Nadal since he became |
| | 14 | President of EDFINA with respect to strategic thinking, |
| 11:54:25 | 15 | high-level contacts, or any other measurement of |
| | 16 | performance? |
| | 17 | MR. CLARK: Objection to form. |
| | 18 | A. I don't totally understand the word |
| | 19 | "specific". What do you mean by "specific"? |
| 11:55:09 | 20 | Q. Any detail, anything specific to his job |
| | 21 | performance; not generally. |
| | 22 | A. Well, you need to understand that my mission, |
| | 23 | my responsibility is that of a general manager. I belong to |
| | 24 | the top four managers of the group, as I explained earlier, |
| 11:57:33 | 25 | so it is certainly not within my purview to check all the |

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                          Friday, April 21st, 2006

Page 51

| 11:57:38 | 1 | writings or reports that are written on the various |

11:57:38  1    writings or reports that are written on the various

          2    managers.

          3            Now, as far as R1 managers are concerned, we hold

          4    regular meetings, for instance within the meetings of the

11:57:50  5    executive committee, where we take this opportunity to

          6    review the performance.  In fact what happens is that each

          7    of the members of the executive committee gives a report on

          8    the R1 staff under their responsibility.  Of course so to do

          9    they have all sorts of elements at their disposal.

11:58:14  10   Now, during these meetings that took place during

          11   the period of time that you are interested in, I have always

          12   heard information or opinions that were positive concerning

          13   the strategic reflection or high level contacts, whatever

          14   else you put in your list of questions, concerning the

11:58:37  15   missions that have been entrusted to Christian Nadal, and

          16   I certainly never heard a negative comment.

          17            Q.  Can you tell me any strategic strategy that

          18   Christian Nadal implemented since he has been President of

          19   EDFINA?

11:58:59  20            MS. HOGUET:  I object to the form of the question.

          21            A.  I think I have to make things absolutely

          22   clear.  I am not N plus 1 vis-à-vis Christian Nadal; in

          23   other words, I am not the person he reports to directly.  It

          24   is up to that person to assess the added value which is

12:00:29  25   contributed by Christian Nadal in his position and his

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                        Friday, April 21st, 2006

Page 52

| 12:00:32 | 1 | accomplishments. |

2        As a deputy directeur général in charge of human

3    relations, it is my job to make sure that the group policies

4    are applied, that the yearly interviews do take place.

12:00:53    5    Again, during all of the meetings that I have attended, as

6    I indicated earlier, I have only heard positive things as to

7    the actions or accomplishments of Christian Nadal.

8        Q.  But you can't speak to specifics; is that

9    correct?

12:01:46    10        A.  Naturally I can't go into the specifics.  But

11    again, I am not the person that Christian Nadal reported to

12    at any point in time whatever.  But, I repeat, during the

13    reviews that take place between the members of the executive

14    committee, they have at their disposal all of the elements

12:02:07    15    that are required to express an opinion.

16        Q.  Has Christian Nadal ever received any type of

17    disciplinary action as a result of his conduct towards

18    Catherine Gaujacq?

19        A    Mr. Christian Nadal was never the subject of

12:02:51    20    disciplinary action of any type.

21        Q.  Including with respect to Catherine Gaujacq?

22        A.  I was speaking in general terms.  But, again,

23    I have no detailed knowledge of any of the operations or

24    activities undertaken by Christian Nadal.  But what I do

12:04:05    25    know are the assessments and opinions that were expressed

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                           Friday, April 21st, 2006

Page 53

| | | |
|---|---|---|
| 12:04:09 | 1 | concerning him, that were systematically positive. What |
| | 2 | I can say for sure is that Christian Nadal was never the |
| | 3 | subject of any disciplinary procedure, and frankly I fail to |
| | 4 | see why this would have been the case. |
| 12:04:23 | 5 | Q. Did EDF ever investigate Christian Nadal's |
| | 6 | conduct towards Catherine Gaujacq? |
| | 7 | A. In fact, if I may, I'm going to answer your |
| | 8 | question in several steps, because it might take a while. |
| | 9 | Personally, I became aware of the fact that |
| 12:08:06 | 10 | Catherine Gaujacq had some complaints against |
| | 11 | Christian Nadal's behavior back in July of 2004, if I am not |
| | 12 | mistaken. It seems that these difficulties had arisen |
| | 13 | several weeks before. This is when we -- and when I say |
| | 14 | "we", I mean myself, Mr. Creuzet and Mr. Ponasso -- |
| 12:08:40 | 15 | understood that for several months now Catherine Gaujacq had |
| | 16 | expressed her wish to turn down the offer that had been made |
| | 17 | to her to become Christian Nadal's deputy, and she refused |
| | 18 | to sign the agreement. So in July that was brought to our |
| | 19 | knowledge, that she was complaining about Christian Nadal. |
| 12:09:06 | 20 | At the time, since she was ranked R3, we |
| | 21 | necessarily had to consult with her direct manager; ie, we |
| | 22 | had to consult with Mr. Ponasso, who had previously been the |
| | 23 | manager and was now the person Christian Nadal was reporting |
| | 24 | to. This is why Mr. Ponasso at the time tried to understand |
| 12:09:36 | 25 | the situation. And, by the way, it was part of his |

Trevor McGowan
thecourtreporter@gmail.com

6b402843-7706-490b-bd7f-b327e07b11b4

CATHERINE GAUJACQ v EDFINA, et al.

Yann Laroche                          Friday, April 21st, 2006

Page 85

15:37:37    1              If the position is available, then when the expat

            2    comes home, providing of course he or she has accepted the

            3    job, they can take on this position immediately. But it is

            4    also possible that the expat might not be able to take on

15:38:06    5    that position immediately because, for instance, it would

            6    not be available yet. In that case the expat might have to

            7    wait one, two, up to six months, in which case he or she

            8    would be given a transitional job in the meantime, awaiting

            9    the freeing of that position. In which case, obviously if

15:38:38   10    the expatriate has been away for three years -- plus one in

           11    most cases -- that would give him or her the opportunity to

           12    get more familiar with the parent company, to establish

           13    contacts and to readapt, let's say, to the parent company

           14    environment.

15:39:00   15              This is our usual practice.

           16         Q.  Was Christian Nadal's appointment as general

           17    delegate of North America a delegation, a demotion,

           18    a promotion, or a lateral move?

           19         A.   When Christian Nadal came back from Argentina

15:40:34   20    he ranked R1 at Edenor in Argentina, and he was appointed to

           21    a job in Washington that also ranked, or that we assessed at

           22    R1-ranking. Therefore I would say that it was more of

           23    a horizontal move. We would use the term "horizontal"

           24    rather than "lateral" in our jargon.

15:41:05   25         Q.   While Catherine Gaujacq was still employed by

Trevor McGowan
thecourtreporter@gmail.com

# ATTACHMENT 16

Recommend this site Hacenos Home Bookmark this site



IAE

Universidad Aus

Pilar - Bs  Ace  Argentina

Updated  25/06/03
Mail@webpilar.com

| HOME | NOTAS | FOROS | SERVICIOS | DATOS PILAR |

**Noticias**                                                    Info@

02/06/03                                                    Press Release

# In light of PCBs

Then transcribe the first measure ordered by the court Zarate
Bell during May by which cites made a statement to the whole
directory EDENOR at ENRE, provincial officials and the Realtor
Carlos Garat.

**Bell May 30, 2003**
**I** - and received insert bear in mind what informed
**II** Existing state of suspicion required for this stage of the
process, cúmplase inquiries with the following statements
(Article 294 of the Code of Criminal Procedure of the Nation):

**A: With regard to the signing Edenor SA**
1) President, Mr Franz Ferdinand Ponasso
2) Vice-President, Mr Patrice Mees
3) 2000, Mr Cristian Nadal
4) current General Manager, Mr Henry Lafontaine
5) Director, Mr Yves Desrousseaux
6) Director, Lord Jesus Andreu Burillo
7) Director, Mr. Alberto Garcia Lopez
8) Director, Mr Christian Paris
9) Director, Mr. Alfredo Llorente Legas
10) Director, Mr Ramon Vazquez
11) Director, Mr. Eduardo Vich
12) Director, Mr. Alberto Alvarez
13) Director, Mr Emilio Garcia Diez
14) Director, Mr  Antonio Capdepon
15) Director, Mr  Marc Amedee Riutort
16) Director, Mr. Pierre Baradat
17) Director, Mr John Madrigal
18) Director, Mr. Cesario Jose'Luis
19) Director, Mr  Juan Carlos Cassagne
20) Director, Mr  Hugo Ricardo Pentenero
21) Director, Mr. Ricardo Flammini
22) Director, Mr. Eduardo Javier Romero
23) Director, Mr William Nestor Perez
24) Director, Mr maximum July Fonrouge
25) Director, Mr Bo Kallistrand
26) Director, Mr Jose Miguel Granged Bruñen

Mail

27) Director, Mr Jean Francois Talbot
28) Director, Mr Jose Caldero
29) Director, Mr Henri Marcel Roger Ducre
30) Director, Mr Gilles Jehan
31) Director, Mr Gilbert Cotto
32) Director, Mr. Bruno Notrosso
33) Director, Mr Norberto Gonzalez
34) Director, Mr Oscar Eduardo Marano
35) Director, Mr Jorge Emilio Cardenas
36) Director, Mr Mario Jose Cuaragua
37) Director, Mr Javier Gonzalez Fraga
38) Director, Mr Jean Luc Aschard
39) Director, Mr Julio Ricardo Loria
40) Director, Mr Jean Christophe Philbe
41) Director, Mr. Eduard Dahomi
42) Director, Mr Didier Lamethe
43) Director, Mr Mario Martin
44) Director, Mr Jose Patricio Richards
45) Operational Planning Manager (Previous Technical Manager Pilar) Mr Daniel Lello
46) Sub Manager Environment Mr. Julio Marquez
47) Sub Manager quality supply area Pilar Mr Luciano Pironio

**Regarding the B-Ente Nazionale Electricity Regulator (ENRE)**
**1)** 2000 Mr Juan Antonio Legisa
**2)** Head of the Environment Department during 2000 Mrs. Cristina Massei.

**C) For the Secretariat of Environmental Policy of the Province of Buenos Aires**
**1)** Secretary of Environmental Policy in 2000, Mr. Ricardo Eusebio Rodriguez.

**D)** For the Secretariat, Sustainable Development and Environmental Policy of the Nation
**1)** Head of the Secretariat during 2000 Mr Oscar Massei.

**E)** Directorate of Environment of the City Pillar
**1)** Secretary for the Environment, Mr. Carlos Garat.

**III. A)** members of the Board of signature Edenor SA Fijase hearing from the day on August 7 this year, three per working day at 9.00, 10.30 and 12.00, in chronological order according to the list above detailed and up on August 29 this year
**B)** For those responsible for the ENRE habilitese hearings on 2 September of this year, at 9.00 and 12 pm.
**C)** In respect of the Secretary of Environmental Policy of the Province of Buenos Aires, set for hearing on September 3 this year at 9.00.
**D)** As the proprietor of the Ministry of Sustainable Development and Environmental Policy of the Nation, provide for hearing on 4 September this year at 9.00
**E)** Secretary of the Environment of the City of Pilar, set for

Type - click

hearing on September 5 this year at 9.00.

**IV-Take** reason, and through the notifíquese cúmplase
actuary with the proceedings aimed at securing effective
notification of the above named.

**Federico Fagionatto Efrain Marquez**
**Federal Judge**

Faced with me
**Dr. Andres German Cancels**
**Federal Secretary**

In the same date was met EVIDENCED
**Dr. Andres German Cancels**
**Federal Secretary**

 

Forum General of the City    Stop your opinion without
censure



Home News I Forums I I I I Services Shopping I Write Us