IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CATHERINE GAUJACQ,

Plaintiff,

v.

ELECTRICITE DE FRANCE
INTERNATIONAL NORTH AMERICA,
INC., ELECTRICITE DE FRANCE, S.A. and
CHRISTIAN NADAL,

Defendants

Civil Action No. C5-969 (HHK)

---

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Laura B. Hoguet *(D.C. Bar No. 200915)*
Dorothea W. Regal *(D.C. Bar No. NY0064)*

HOGUET NEWMAN REGAL &
KENNEY, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
*Counsel for Defendants Electricité de
France, S. A. and Electricité de France
International North America, Inc.*

Morgan D. Hodgson *( D.C. Bar No. 186521)*
David Clark *(D.C. Bar No. 473279)*

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000
*Counsel for Defendant Christian Nadal*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS RELEVANT TO THIS MOTION ..........................................2

      I.      GAUJACQ'S CLAIM OF A NADAL "INDICTMENT" IS FALSE AND
              INADMISSIBLE .........................................................................................4

              A.      Plaintiff's Documents Prove Nadal Was Never Indicted.................4

              B.      Plaintiff's Claims of Misrepresentation and Nondisclosure by
                       Defendants Have No Basis ...............................................................9

              C.      Plaintiff's Allegations Are Impermissible under FRCP Rule 56 and
                       Fail to Meet Its Evidentiary Requirements ......................................10

      II.     THE ALLEGATIONS OF "MISMANAGEMENT" OF EDENOR
              HAVE NO BASIS IN FACT NOR RELEVANCE TO THE ISSUES IN
              THIS CASE ................................................................................................11

      III.    THE FRENCH AGENCY'S LETTER IS IRRELEVANT TO THIS
              COURT'S DECISION ON THE QUESTION OF EXTRATERRITORIAL
              APPLICATION OF US EMPLOYMENT LAWS .......................................16

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

## CASES

Brooks v. Chrysler Corp., 786 F.2d 1191 (D.C. Cir. 1986)...............................................11

Carmona v. Toledo, 215 F.3d 124 (1st Cir. 2000).........................................................11

EEOC v. Arabian America Oil Co., 499 U.S. 244 (1991)..................................................17

Shekoyan v. Sibley International, 409 F.3d 418 (D.C. Cir. 2005)....................................18

Tolliver v. Federal Republic of Nigeria, 265 F. Supp. 2d 873 (W.D. Mich. 2003),
    aff'd on other grounds, 128 Fed. Appx. 469, 2005 WL 783350, 2005 U.S.
    App. LEXIS 5827 (6th Cir. 2005) ...............................................................................8

Wilburn v. Robinson, 480 F.3d 1140 (D.C. Cir. 2007) ....................................................11

## STATUTES

Fed. R. Civ. P. 11 ...............................................................................................................5

Fed. R. Civ. P. 56..............................................................................7, 8, 10, 11, 13, 14, 16

Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal"), through undersigned counsel, submit this memorandum in opposition to Plaintiff's Motion For Leave To Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Mot.") [Dkt. # 145].

## PRELIMINARY STATEMENT

Plaintiff's motion seeks leave to add false, scurrilous and irrelevant allegations to fully briefed summary judgment motions of Defendants EDF and EDFINA [Dkt. #101] and Nadal [Dkt. #107], with the obvious intent to manufacture an issue of fact that might thwart summary judgment against her. The supplemental material she seeks to add is patently false – as proved by the very documents she has put forward on her motion -- and highly prejudicial and utterly irrelevant to the summary judgment motions before this Court. It does not and cannot raise a genuine issue of material fact, and Plaintiff should not be permitted to insert such material in this case.[1]

Plaintiff has set forth false and insulting allegations against Nadal in the "Supplemental Memorandum In Support Of Plaintiff's Opposition to Defendants' Motion for Summary Judgment" [Dkt. #145-5 through #145-11], submitted as "Attachment C" to her motion (hereafter referred to as "Plaintiff's Proposed Supplement" or "Pl. Proposed Supp."). Plaintiff states, as purported "fact," that an "indictment" was issued against Nadal

---

[1] Defendants note that Plaintiff's "Certificate under Local Rule 37(E)" (Pl. Mem. at 1) is in error as to whether the parties "could come to an agreement on the issue" of supplementation of Plaintiff's opposition to Defendants' summary judgment motions. Plaintiff's counsel never indicated in her e-mail communication (in December 2007) the nature of any supplemental material she would seek to put before this Court. The e-mail exchange is attached as Attachment "A" to Defendants' Response and Opposition to Plaintiff's Motion for a Status Conference and/or Hearing on Summary Judgment [Dkt. #146].

in Argentina, when her own evidence proves conclusively that he was never so charged. Her allegations concerning Defendants' alleged nondisclosure of the purported "indictment" and its supposed negative impact on Nadal's qualifications (unsupported and irrelevant themselves) likewise have no basis since the claimed "indictment" is a fabrication.

Plaintiff's motion for leave should be denied.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

The employer in this case is Defendant Electricité de France, S.A. (EDF), a state-owned utility company headquartered in Paris, France.[2]  Defendant Electricité de France International North America, Inc. (EDFINA) is an indirect wholly-owned subsidiary of EDF and represents EDF in the United States.  Plaintiff, Catherine Gaujacq ("Gaujacq"), a French citizen, was a long-time employee of EDF in France who was assigned to a temporary post, for a fixed term, as EDF's "Déléguée Générale" (Delegate General) to North America, in which post she served as President of EDFINA.  Defendant Christian Nadal, a French citizen, is a high-ranking executive of EDF, who was appointed in 2004 to succeed Gaujacq, upon the expiration of Gaujacq's term, as EDF's "Délégué Général" (Delegate General) to North America, in which post he now serves as President of EDFINA.

Upon the expiration of her term of office in the United States, Gaujacq refused to return to France to take up her next assigned post at EDF, whereupon EDF terminated her

---

[2]    At the time of the events alleged in the Complaint, EDF was 100% owned by the Republic of France; following a public offering of equity interest in 2005, EDF is now partly publicly held but still majority-owned by the Republic of France.  EDF, headquartered in Paris, France, has over 160,000 employees.  EDFINA is a separate company from EDF, incorporated and located in Washington, D.C., and has fewer than 15 employees.

employment, effective January 7, 2005. Plaintiff instituted this action against EDF, EDFINA and Nadal asserting, *inter alia*, claims under Title VII, the Equal Pay Act ("EPA") and the District of Columbia Human Rights Act ("DCHRA"), alleging sexual harassment by Nadal, sex discrimination and retaliation. All decisions as to the terms and conditions of Gaujacq's employment throughout her years of employment with EDF, including her compensation and the termination of her employment, were made by EDF in France, not EDFINA.

From 1999 through 2001, Nadal spent two years in Buenos Aires, Argentina, as the Chief Executive Officer of an Argentine electric company called "EDENOR" (Empresa Distribuidora y Comercializadora del Norte S.A.), an EDF affiliate in which EDF held a substantial equity interest. Pl. Proposed Supp. Att. 3 [Dkt. #145-6]. Nadal's tenure at EDENOR ended a full two years before EDF appointed him to replace Gaujacq as EDF's Delegate General to North America in 2004 (see Def. 56.1 ¶31)[3], and even longer before Nadal's relocation from Paris to Washington, DC in June 2004, when Gaujacq resigned as President of EDFINA and Nadal succeeded to that role. (Def. 56.1 ¶63).[4] According to Plaintiff's own documents, the purported Argentine "indictment" she falsely claims occurred was in May 2005, nearly four years after Nadal left EDENOR, and long after the acts complained of in this case. Therefore, even if this claimed incident were true (and it is

---

[3] References to "Def. 56.1" are references to the Statement of Defendants EDF, EDFINA and Nadal pursuant to FRCP Rule 56.1 and Local Rule 7(b) filed in support of Defendants' motions for summary judgment [Dkt. # 101].

[4] Gaujacq's three-year expatriate assignment expired July 31, 2004, and she was directed to report to her new position back in France by November 2, 2004. (Def. 56.1 ¶122-23, 137). She was terminated effective January 7, 2005 following her refusal to return to France to take up her post. [Def. 56.1 ¶141].

not), it would not be even remotely relevant to the issues pending before this Court on Defendants' motions for summary judgment.

The Court need not reach the matter of relevance as to Plaintiff's claimed "indictment" and her other charges regarding EDENOR and Nadal because they are offered without valid evidentiary support. She has engaged in a sleight-of-hand deception upon this Court by attaching new documents, mostly in Spanish, and with a few uncertified, partial translations, that simply do not say what she says they do. The purported "facts" she proposes to supplement her opposition are not even facts.[5]

## I.    GAUJACQ'S CLAIM OF A NADAL "INDICTMENT" IS FALSE AND INADMISSIBLE

Plaintiff has stated as purported "fact" that Nadal was "indicted" in Argentina. Pl. Proposed Supp. at 5. This is an outright falsehood.

### A.    Plaintiff's Documents Prove Nadal Was Never Indicted

The very documents that Plaintiff cites for this incendiary and false accusation -- a partially translated Spanish document and one other in English -- prove that Nadal never was indicted as she falsely claims. Her assertions are baseless and irrelevant.

Plaintiff states:  "On May 24, 2005, Edenor, three of its managers, including Mr. Nadal, and some Argentinean officials were indicted. *See* Att. 11 at 77; *see also* Judgment of Efrain Faggionatto Márquez of 5/24/05, Att. 12 as translated at Att. 13 (identifying Mr. Nadal as one of the employees indicted)." Pl. Proposed Supp. at 5.

---

[5]    Defendants do not claim that the October 2007 letter from the French agency La HALDE, declining to intervene in her complaint as she had recently requested, is false. Rather, it is simply irrelevant to the facts here and cannot affect this Court's determination of the legal issue of extraterritorial application of Title VII, the Equal Pay Act and the DCHRA to acts and decisions of the French company EDF made in France regarding the terms and conditions of Gaujacq's employment. See Pt. III, *infra*.

These documents not only do not support Plaintiff's claim that there was a Nadal "indictment," but they affirmatively negate it and prove it false.  Plaintiff and her counsel have woefully failed to make reasonable inquiry that their "allegations and factual contentions have evidentiary support"[6] as required for any court filing.  Fed. R. Civ. P. 11.  This Court should deny Plaintiff leave to file a brief containing such falsities.

Even rudimentary review of the documents that Plaintiff proposes to submit on this point shows the falsity of the accusation.   Nadal is not even mentioned in the first document she cites (Pl. Proposed Supp. Att. 11) [Dkt. #145-9 & #145-10].  That document is a Form 6-K filed by EDENOR with the U.S. Securities and Exchange Commission for the month of August 2007.  It contains a brief description of a legal action in Argentina for alleged environmental pollution from the company's PCBs, reporting that three unidentified EDENOR employees were indicted in 2005 and a preliminary attachment of EDENOR assets was ordered. The EDENOR statement also reports that the charges against the unnamed individuals were dismissed that same year and the preliminary attachment revoked because environmental pollution was not proved. The EDENOR 6-K states in pertinent part:

> 21.  <u>LEGAL ACTION FOR ALLEGED ENVIRONMENTAL POLLUTION</u>
>
> On May 24, 2005, three of EDENOR's employees were indicted on charges of polychlorinated biphenyl (PCB)-related environmental contamination.  In connection with this alleged violation, the judge ordered a preliminary attachment on the Company's assets in the amount of 150 million to cover the potential cost of damage repair, environmental restoration and court costs.  On May 30, 2005, the Company filed appeals against both the charges against its employees and the attachment order.  On December 15, 2005, the Court of Appeals dismissed the charges against all three defendants and, accordingly, revoked the attachment order against the

---

[6]  This is the standard under Rule 11 of the Federal Rules of Civil Procedure ("FRCP") for any factual representation made in court.

Company's assets. The decision of the Court of Appeals, which was based on the fact that the existence of pollution could not be proved, also established that the trial judge should order the acquittal of two ENRE public officers who had been indicted on related charges. An appeal against this decision was filed in the Tribunal Casación (the highest appellate body for this matter), which on April 5, 2006 ruled that the appeal against the decision regarding EDENOR's employees and the Company was not admissible (Note 27a).

The Company's management estimates there are no legal grounds for any action against the company or its employees in connection with this matter. .
. . .

Pl. Proposed Supp. Att. 11, at 77. The EDENOR Form 6-K also contains the following update:

27.    SUBSEQUENT EVENTS

a)    Alleged environmental pollution

On July 16, 2007, the Company was notified that on July 11, 2007 the Investigating Judge ruled the definitive acquittal of all Company officials and employees that had been indicted in the case, thus ordering the closing of the case. This decision may be appealed (Note 21).\

Id. at 84.

Thus, Plaintiff's Proposed Attachment 11 in no way implicates Nadal; indeed, it does just the opposite. As she knows, Nadal was not an employee of EDENOR in May 2005 – he had left EDENOR long before, returning to EDF in 2001. And his name nowhere appears in Proposed Attachment 11.

Plaintiff's other claimed support for the alleged Nadal "indictment" is her Proposed Attachment 12 [Dkt. #145-11]. That document conclusively proves the falsity of her accusation because it states that Nadal is expressly *excluded* from the persons as to whom criminal proceedings were pursued. That document is an undated decision, in Spanish, of an Investigative Judge in Argentina (though Plaintiff has given it the date of May 24, 2005 in her uncertified, partial translation submitted as Plaintiff's Proposed Attachment 13 [Dkt.

#145-11]).[7]  A certified translation of Plaintiff's Proposed Attachment 12 is submitted herewith as Defendants' Attachment ("Def. Att.") 1.  In portions omitted from Gaujacq's partial translation (Pl. Proposed Supp. Att. 13), this decision decrees the indictment of five named individuals for an alleged contamination violation. Def. Att. 1, ¶¶ I – V; Pl. Proposed Supp. Att. 12, ¶¶ I – V.  It is obvious at a glance that Nadal is not one of the people indicted.

To the contrary, Nadal is identified as one of the people as to whom there is no cause ("falta de mérito") for a prosecution.  Def. Att. 1, ¶ VI; Pl. Proposed Supp. Att. 12, ¶ VI. .[8]  The paragraph of Plaintiff's Proposed Attachment 12 that mentions Nadal states the following:

> VI.  TO FIND AN ABSENCE OF MERIT in the case of FRANCISCO FERNANDO PONASSO, HENRI LAFONTAINE, HENRI MARCEL ROGER DUCRE, and CHRISTIAN ROLLAND NADAL, pursuant to Article 309 of the National Criminal Procedure Code.

Def. Att. 1, ¶VI; Pl. Proposed Supp. Att. 12, ¶VI; see also Pl. Proposed Supp. Att. 13,  ¶IX.

---

[7]  Defendants object to Plaintiff's submission of the Proposed Attachments to her proposed filing for failure to comply with FRCP Rule 56(e).  Fed. R. Civ. P. 56(e).  The Proposed Attachments are not identified by source, are not certified or authenticated, are not translated, are incomplete, and are not accompanied by affidavit meeting the requirements of Rule 56(e).  Defendants do not waive such objection by submitting certified translations and full copies of her documents in this Opposition, which are provided solely to enable the Court to understand the contents of the documents that Plaintiff impermissibly has sought to interject into this action.

[8]  Plaintiff's partial translation is inaccurate on its face, as should be clear even to a non-Spanish speaker.  For example, in Plaintiff's Proposed Attachment 12, paragraph VI refers to four individuals: Ponasso, Lafontaine, Ducre and Nadal (all of whom are listed as not to be prosecuted).  But in Plaintiff's translation, paragraph VI refers only to one individual, Ponasso, and Nadal has been put in a newly added paragraph IX, which does not exist in the original Spanish document at all.  And Plaintiff has inserted the following phrase in her translation, which clearly does not exist in the original: "from the other personal conditions presented to the Court." Pl. Proposed Supp. Att. 13 ¶ IX.  Defendants respectfully refer the Court to Def. Att. 1 to this filing, a certified translation of Plaintiff's Proposed Attachment 12, for an accurate translation thereof.

Thus, contrary to Plaintiff's shocking representation to this Court, the document plainly shows that no criminal proceeding was brought against Nadal because there was "no merit" – no cause -- to do so.  A cursory review of the relevant Argentine criminal procedure (which Plaintiff could and should have done) reveals that, pursuant to Article 309 of the National Criminal Procedure Code (referenced in the above paragraph mentioning Nadal and others), the Investigating Judge is required to declare the lack of cause to a case ("falta de mérito") within a specified time after a preliminary investigation if there is not sufficient evidence to warrant the issuance of an indictment.  See Alejandro D. Carrió & Alejandro M. Garro, *Argentina*, in Criminal Procedure, A Worldwide Study 40 (Prof. Craig M. Bradley 2d ed. 2007), the relevant excerpt of which is attached to this filing for the Court's convenience, as Def. Att. 2.    The Investigative Judge's finding, then, proves that Nadal was not indicted.

Nor does any other document support Plaintiff's claim of an "indictment" against Nadal.  Plaintiff's Proposed Attachment 16 [Dkt. #145-11]) is nothing more than a garbled part-English, part-Spanish document that includes Nadal's name as one in a list of over 50 names.[9]  For the convenience of the Court in understanding what this document is (and without waiving their objection to it under FRCP Rule 56(e)), Defendants have located the original Spanish version of this document on the Internet and attach it here, along with a certified English translation thereof, as Def. Att. 3.  It is a press release that sets forth what appears to be a notice dated May 30, 2003 (one and one-half years after Nadal left

---

[9]    This Proposed Attachment 16, as well as Proposed Attachment 9, apparently Internet news postings, are hearsay, not admissible for the truth of the statements therein.  See Tolliver v. Federal Republic of Nigeria, 265 F. Supp. 2d 873, 876 (W.D. Mich. 2003), aff'd on other grounds, 128 Fed. Appx. 469, 2005 WL 783350, 2005 U.S. App. LEXIS 5827 (6th Cir. 2005).

EDENOR), identifying over 50 people to be questioned regarding an environmental matter involving EDENOR, including EDENOR's board of directors, ENRE (Argentina's environmental regulatory agency) and others. Nadal is included as a past officer of EDENOR. This press release is patently not an "indictment" of any of the persons listed, nor is it a criminal proceeding. It merely provides notice of planned examination of a large number of witnesses. And that notice was followed by the decision of the Investigating Judge two years later which indicated the indictment of five individuals and held that there was no cause for proceedings to be brought against Nadal and many others. Def. Att. 1, ¶VI; Pl. Proposed Supp. Att. 12, ¶VI; Def. Att. 2.

### B. Plaintiff's Claims of Misrepresentation and Nondisclosure by Defendants Have No Basis

Plaintiff's strident claims of misrepresentation, withholding of evidence and nondisclosures by Defendants, unsupportable in any event, fall like a house of cards without the underpinning of the purported Nadal "indictment." Plaintiff's accusations (Pl. Proposed Supp. at 1-2, 5-7) are patently without any basis whatsoever.

Since Nadal was never the subject of any prosecution, his negative response at his deposition to the question "Have you ever had any criminal proceedings brought against you?" was true, contrary to Plaintiff's scurrilous assertion to the contrary. Pl. Proposed Supp. at 5. Likewise, Plaintiff's argument that Defendants failed to produce documents referencing the purported but nonexistent Nadal "indictment" (Pl. Proposed Supp. at 6) is equally specious. Plaintiff's own brief shows that she requested (1) documents "regarding Mr. Nadal's contract" relating to his position at EDENOR from 2000 to 2002 and (2) documents "regarding the audit(s)" of EDENOR in 2000 and 2001 (Pl. Proposed Supp. Att. 14 [Dkt. 145-11] at pp. 25, 30). Defendants produced the documents responsive to those

requests.  In response to other document requests Defendant EDF also produced its Annual Reports for years 2000-2005, which included reports on EDF's business and investment in EDENOR.  Plaintiff's document requests never sought documents regarding any criminal indictment or investigation in Argentina, or anything that would remotely suggest such topics, and Defendants had no demand or notice even to search for any such documents, much less any obligation to produce any such documents.

### C. Plaintiff's Allegations Are Impermissible under FRCP Rule 56 and Fail to Meet Its Evidentiary Requirements

In a further apparent attempt to create an illusion of relevance, Plaintiff has misrepresented the timing of the events she claims occurred.  For example, she invents, out of whole cloth, without any support whatsoever, that the "true reason" Nadal left EDENOR "involved his indictment," Pl. Proposed Supp. at 2.  Of course, Nadal could not have left for such a reason because it never happened.  But even her unsupported theory is impossible to reconcile with the timeline in this case.  Plaintiff's own documents establish that Nadal left EDENOR at the end of 2001 (Pl. Proposed Supp. Att. 3, Att. 8 at 26), but the document she (wrongly) claims shows his "indictment" was not issued until 2005. Elsewhere in her filing Plaintiff also falsely claims that "Nadal's indictment took place before he was assigned to replace Ms. Gaujacq," Pl. Proposed Supp. at 2, again compounding her misstatements to the Court.  Plaintiff makes similar misrepresentations about EDENOR.  See Part II, *infra*.

The Court should deny Plaintiff's motion for leave to supplement her opposition to summary judgment because the proposed supplemental material does not constitute evidence cognizable under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 56.  A party opposing summary judgment must produce evidence that is "capable of being

converted into admissible evidence." Wilburn v. Robinson, 480 F.3d 1140, 1143 n.2 (D.C. Cir. 2007). Evidence offered by a party opposing summary judgment must also show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(d). Finally, such evidence must be not only relevant to the issues in the case, but material.

Plaintiff's attachments, and the unfounded accusations that accompany them, meet none of these requirements. The proffered documents are not supported as required by affidavit, Fed. R. Civ. P. 56(e), and the translations and partial translations proffered along with them are not authenticated as required to oppose summary judgment. Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). Given that the documents are used only to support false accusations, they certainly do not create any "genuine issues" in dispute. And they are not material to any issue in this case.[10]

## II.   THE ALLEGATIONS OF "MISMANAGEMENT" OF EDENOR HAVE NO BASIS IN FACT NOR RELEVANCE TO THE ISSUES IN THIS CASE

Plaintiff assumes, without evidentiary basis, that the financial loss EDF incurred in its investment in EDENOR was somehow caused by Nadal, or by the environmental matter referenced in the EDENOR 6-K, or by the nonexistent Nadal "indictment." Plaintiff further assumes, without evidentiary basis, that the 2005 legal action against EDENOR in Argentina for alleged environmental pollution was somehow Nadal's fault. She then argues, without any attempt to bridge the gap in logic, that these unsupported and

---

[10]   Plaintiff's documents are also unfairly prejudicial and would, if allowed to be filed, only obfuscate the facts. Plaintiff's brief is likewise prejudicial in that it (incorrectly) states that Nadal was "indicted" and implies (without evidentiary basis) that Defendants were responsible for PCB contamination in Argentina. Cf. Brooks v. Chrysler Corp., 786 F.2d 1191, 1198 (D.C. Cir. 1986) (court in products liability action properly excluded "minimally probative" documents because they contained "inflammatory" customer complaints and suggested that defendants were cavalier in dealing with federal safety agency).

unwarranted assumptions are evidence that EDF's reasons in finding Nadal eminently qualified for appointment to the position in the United States are "false and pretextual." Pl. Proposed Supp. at 2; see also id. at 4-8.

This is all sheer nonsense. As with the nonexistent Nadal "indictment," these assumptions and arguments rely upon purported "facts" that Plaintiff's own documents prove are demonstrably false. Thus, her statements that EDENOR was "convicted" of a crime (Pl. Proposed Supp. at 1, 6, 7)[11] are belied by the very same documents she cites for the nonexistent Nadal "indictment." There was only a preliminary attachment of EDENOR assets in May 2005, which was revoked in December 2005 at the same time as the proceedings that had begun against three EDENOR employees (not including Nadal) were dismissed. Pl. Proposed Supp. Att. 11 at 77, 84; Def. Att. 1 at 2. There is nothing in any of the documents Plaintiff proposes to supplement her opposition that in any way suggests that any financial loss EDF incurred in connection with its investment in EDENOR is or was attributable to Nadal or his management of EDENOR during 1999-2001, the years he was the CEO.

Nor is there any basis even to suppose such a thing, particularly in light of the revolutionary acts of the new government in Argentina in January 2002 (after Nadal left EDENOR). These included the new government's extreme devaluation of the Argentine peso (resulting in an immediate loss in most foreign investments in Argentina), a revocation of the extant currency convertibility laws, and a state-imposed reduction on utility company rates. These extraordinary developments are described in EDENOR's

---

[11] She also refers to a purported "indictment" of EDENOR, but she gives no evidence that the company was indicted or even whether a company, as opposed to an individual, is indictable under Argentine law. Plaintiff's documents do refer to indictments of certain individuals employed by EDENOR (not including Nadal), as discussed above.

Form 6-K, which Plaintiff has attached to her motion. Pl. Proposed Supp. Att. 11 at 83, 70. They were also widely reported in the media. E.g., Larry Rohter, Argentina Is Still Shaky Despite Currency Measures, The New York Times (Jan. 11, 2002) (devaluation of the peso by nearly 30 percent), attached as Def. Att. 4.

The state of EDF's investment in EDENOR was not a matter that Plaintiff pursued during discovery in this case, although she had ample opportunity to do so if she had chosen. She clearly knew about Nadal's involvement at EDENOR because, as she admits in this motion, she questioned Nadal and EDF top executive Yann Laroche ("Laroche") about it in deposition, and documents were requested and produced regarding EDENOR. See Pl. Proposed Supp. at 4-6.

Her accusation that Laroche gave "false" testimony at his deposition (Pl. Proposed Supp. at 7) concerning EDENOR and the high esteem in which EDF held Nadal is scurrilous and defamatory. Once again, as with the matter of the nonexistent Nadal "indictment," this accusation, unsupported by affidavit or documents, fails to meet the standards under Rule 56 of the Federal Rules of Civil Procedure. This Court should not countenance such baseless and highly prejudicial statements.

First, the accusation assumes again (wrongly and without basis) that Nadal was "indicted" and that he in some way caused EDF to incur a financial loss with respect to its investment in EDENOR. As discussed above, there is no evidentiary support whatsoever offered for this view, and the known facts are to the contrary.

Second, Laroche's testimony was entirely truthful. Plaintiff has not identified any Laroche testimony that is "false." She cites Laroche's testimony that Nadal had the highest executive ranking in EDF ("R-1"), that EDENOR was an important EDF subsidiary in

2000 and that Nadal's evaluations were systematically positive. Pl. Proposed Supp. at 6. She has not set forth any fact that makes his testimony in any way questionable. Instead, she vainly seeks to impugn Laroche with assumptions, having no evidentiary support, based on purported "facts" that her own documents prove are false.

Specifically, she says that Laroche "had to have been aware that, on May 20, 2003, an Argentinean federal judge indicted Edenor and its Officers and Directors, including Mr. Nadal . . . with criminal charges." Pl. Proposed Supp. at 6. This is patently baseless. Aside from the fact that her statement that Laroche "had to have been aware" is pure conjecture on her part, as opposed to Rule 56(g)-quality evidence, there was no indictment of any person in 2003. Plaintiff's own documents show that the only indictments that did take place regarding alleged environmental pollution occurred in late May 2005. Pl. Proposed Supp. Att. 11-13. Further, as demonstrated above, there was no "indictment" issued against Nadal *at any time* -- in 2003 or 2005. Id.; see also Def. Att. 1-2. She also states, falsely and without any evidentiary support: "Laroche failed to disclose the true reason for Mr. Nadal's leaving Argentina – under a cloud of significant allegations of mismanagement and criminal activity." Pl. Proposed Supp. at 7. This is a total fabrication and, again, misrepresents to this Court the timing of the events. There is not a shred of evidence in the record of any "cloud" or "mismanagement" or "criminal activity" that had anything to do with Nadal's leaving EDENOR. As the documents Plaintiff has submitted on this motion reveal, Nadal left EDENOR in 2001 and returned to France, where he then undertook a new position. Pl. Proposed Supp. Att. 3 at CN00188-89, Att. 8 at 26. The "indictment" that was issued, which expressly excluded Nadal, was issued in May 2005, and the general witness notice, which listed Nadal among over 50 individuals to be

examined, was published in May 2003.  Obviously events in 2003 and 2005 cannot possibly be deemed to have been the reason Nadal left EDENOR at the end of 2001.[12]

Finally, Plaintiff's references to statements of EDF representatives before the French Assemblée Nationale in 2003 have no bearing on any issues before this Court and do not even say what she claims.  The document she refers to (Pl. Proposed Supp. Atts. 4 & 5 [Dkt. #145-7 & #145-8]) purports to be a transcription of a session of the French Assemblée in which certain EDF representatives made statements concerning EDF investments in South America.  Because EDF was 100% owned by the Republic of France until 2005, it is not remarkable that the company would be called upon in 2003 to review its financial investments to the appropriate government oversight body.  Plaintiff purports to use the EDF statements to support her claim regarding EDF's purpose in appointing Nadal to be CEO of EDENOR in 1999, Pl. Proposed Supp. at 4, but the cited segment and her proffered translation say nothing about Nadal or his appointment.  She further makes the outlandish and wholly unsupported claim that former EDF President François Roussely "failed to disclose" to the French Assemblée Nationale what she calls the "potential liability" of EDENOR, Pl. Proposed Supp. at 7, with no evidence that he "failed" to do anything, no evidence that the question came up in the session before the French

---

[12]    Plaintiff further confounds the dates and facts in her statement that: "Laroche would have had full knowledge of the criminal investigation of Edenor launched in Argentina in 2000, the criminal charges against Mr. Nadal . . . in 2003, and the conviction of Edenor in 2005."  Pl. Proposed Supp. at 7.  Plaintiff has not produced any evidence of a criminal investigation in 2000 or of any "criminal charges" against Nadal in 2003 or otherwise, or of a "conviction" of EDENOR in 2005 or otherwise.  Plaintiff's documents merely show that in 2003 Nadal was listed as one among many witnesses to be examined in connection with an investigation (Pl. Proposed Supp. Att. 16; Def. Att. 3); that the investigation concluded in 2005 with a declaration of no cause for any criminal proceeding to be brought against Nadal and others (Pl. Proposed Supp. Att. 12: Def. Att. 1-2); and that a preliminary attachment of EDENOR's assets was imposed in May 2005 and revoked in December 2005 (id.; Pl. Proposed Supp. Att. 11 at 77, 84) .

Assemblée or was of any relevance, and of course, no indication of any knowledge in 2003 that two years later, in 2005, there would be a temporary preliminary attachment imposed on EDENOR assets.   Once again, Plaintiff's filing, and the attachments upon which she purports to rely, fall far short of any evidence that can be used under Rule 56 in opposition to a motion for summary judgment.

### III. THE FRENCH AGENCY'S LETTER IS IRRELEVANT TO THIS COURT'S DECISION ON THE QUESTION OF EXTRATERRITORIAL APPLICATION OF US EMPLOYMENT LAWS

According to Plaintiff's proffered supplemental documents, in March 2007, while the summary judgment motions were pending, Plaintiff requested "the intervention" of La HALDE, an anti-discrimination agency in France, in her complaint.[13]   In October 2007, the agency sent her a letter responding that it declined to do so.   Pl. Proposed Supp. Att. 1 (French) & Att. 2 (Pl. translation) [Dkt. #145-6].

Plaintiff should not be permitted to supplement her opposition with the La HALDE letter because it is not relevant to Defendants' motions for summary judgment.[14]   It does not in any way purport to rule upon the pending legal issue concerning extraterritorial application of US law, nor would it have any competency to do so, and it does not affect any material fact.

Plaintiff incorrectly argues that the La HALDE letter should somehow be considered a refutation of Defendants' legal position on what she refers to as "the appropriate jurisdiction."   Pl. Proposed Supp. at 1.   Plaintiff is barking up the wrong tree.

---

[13]   Plaintiff does not provide her March 2007 request to La HALDE, but it is referred to in the agency's letter, as stated in Plaintiff's translation, as "a complaint alleging harassment from your direct supervisor in the United States based on your gender." Pl. Proposed Supp. Att. 2.

[14]   Defendants also object to the La HALDE proposed Attachments as not supported in conformance with FRCP Rule 56(e).

Defendants do not contest, and never have contested, the jurisdiction of this Court. Defendants have not made a jurisdictional or a forum argument.  Rather, Defendants' argument is one of applicability of US law.

Specifically, Defendants' position is that Title VII, the EPA and the DCHRA do not apply extraterritorially to reach acts and decisions of a French company made in France with respect to French employment and compensation practices, see EDF/EDFINA SJ Mem. at 16-20,[15] and that the alleged discrimination of which Gaujacq complains consists of acts and decisions made by the French company EDF on French territory, that being EDF's appointment of Nadal, her compensation level and EDF's termination of her employment, see EDF/EDFINA SJ Mem. at 22-26.  The only events Gaujacq complains of that are even alleged to have occurred in the United States are a few instances of alleged testy treatment by Nadal (*not* claimed to be sexual advances), notably a person with whom Gaujacq admits she had less than three hours' total contact.  (Def. 56.1 ¶99).[16]

As discussed in Defendants' moving papers, there is a "presumption against extraterritoriality," and "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991).  See EDF/EDFINA SJ Mem. at 17.  Defendants' position is that, under the applicable test, the "center of gravity" of Plaintiff's employment relationship with EDF was France and the acts and decisions affecting the terms and conditions of her employment occurred in France, and that accordingly Title VII, the EPA

---

[15]  References to "EDF/EDFINA SJ Mem." are to the Memorandum of Law in Support of Motion for Summary Judgment of Defendants Electricité de France, S.A. and Electircité de France International North America, Inc., dated October 16, 2006 [Dkt. #101].

[16]  Defendants demonstrated in their moving papers that this alleged conduct was neither severe or pervasive nor based on plaintiff's gender.  See EDF/EDFINA SJ Mem. at 27-32.

and the DCHRA do not apply extraterritorially to those acts and decisions. See EDF/EDFINA SJ Mem. at 18-19.

The applicability of US laws does not, and indeed cannot, depend on whether or not a foreign agency chooses to act on a complaint. It is up to the US courts, interpreting US law, to determine whether US law applies. In this case, the evidentiary facts have established that the "center of gravity" of Plaintiff's employment relationship with EDF was France and that the acts and decisions of EDF concerning her compensation, her termination and the other terms and conditions of her employment all occurred in France. The La HALDE letter does not alter those facts, and it is those facts which drive the legal decision as to whether, under US law, Title VII, the EPA and the DCHRA apply to the acts complained of in this case.[17]

Moreover, Defendants note that the reason stated in the La HALDE letter for not intervening in Plaintiff's complaint is that the complaint was not within the agency's competence because, it assumed, Gaujacq's complaint concerned alleged acts of discrimination that took place somewhere other than on French territory. Pl. Proposed Supp. Att. 2 (competence is "about discrimination acts unlawful under French Law or International engagement and perpetrated on French territory or under French jurisdiction"). This formulation is perfectly consistent with Defendants' position.

The letter of La HALDE declining Plaintiff's request to intervene in her complaint, made during the pendency of her case before this Court, has no bearing on any material fact

---

[17]    Gaujacq's citation to Shekoyan v. Sibley Int'l, 409 F.3D 418 (D.C. Cir. 2005), does nothing to advance her position. That decision stands for the proposition that a foreign national, working for a US-headquartered company outside the US, does not have the protection of Title VII because extraterritorial application of the statute is limited to US citizens. The case is thus factually inapposite and not pertinent here.

or on the legal question whether Title VII, the EPA and the DCHRA apply extraterritorially to the actions of EDF complained of in this case. Plaintiff's motion for leave to supplement her opposition to Defendants' motions for summary judgment with the La HALDE letter and her cumulative legal argument related thereto should be denied.

## CONCLUSION

Plaintiff's Motion for Leave to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment should be denied in its entirety.

Dated: March 20, 2008

Respectfully Submitted,

_____/s/_____
Laura B. Hoguet
*D.C. Bar No.200915*
Dorothea W. Regal
*D.C. Bar No. NY0064*
HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
*Counsel for Defendants Electricité de France, S. A. and Electricité de France International North America, Inc.*

*Of Counsel*:
Kathleen L. Lowden

Morgan D. Hodgson
*D.C. Bar No. 186521*
David Clark
*D.C. Bar No. 473279*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*