IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
|    Plaintiff, | ) |
|       v. | ) No. 1:05CV0969 (HHK) |
| ELECTRICITE DE FRANCE<br>  INTERNATIONAL NORTH AMERICA,<br>  INC., et al. | ) |
|    Defendants. | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby submits this Reply in Support of her Motion for Leave to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

Defendants premise their Opposition on disputed material facts, a selective reading of the relevant documents, and their own self-serving belief that they were not required to disclose Christian Nadal's federal criminal proceedings in Argentina when the rules of discovery so clearly required the disclosure of this information. Defendants were not forthcoming with information regarding Mr. Nadal's criminal proceedings in Argentina until they could no longer hide it. The information Ms. Gaujacq discovered only scratches the surface regarding the proceedings in Argentina and EDENOR's troubles, which began during Mr. Nadal's reign as its Chief Executive Officer ("CEO"). The impact of this information, which was properly requested and unjustifiably withheld contrary to the rules of discovery, is undeniable. Now, Defendants attempt to justify their conduct by arguing over the semantics and language used to translate the

relevant documents pertaining to Mr. Nadal and EDENOR.  Ms. Gaujacq would not be in the position of arguing over the meaning of the indictments and criminal proceedings against Mr. Nadal if Defendants' had been forthcoming with the information in the first place as *required* under the Rules of this Court and in response to Ms. Gaujacq's plainly stated discovery requests.  If Defendants had produced the information during discovery as they were required to do, Ms. Gaujacq could have questioned Mr. Nadal, Yann Laroche, and EDF's corporate designee with respect to the criminal proceeding during discovery and before the Summary Judgment submissions were filed.  The material facts described by Defendants in their Opposition as irrelevant contain disputed facts that should be decided by the trier of fact, the jury.[1]

Instead Defendants misrepresent the underlying proceedings, even distorting the basis for Ms. Gaujacq's very claims before the Court, describing them, in part, as "sexual harassment." Defs.' Opposition of 3/20/08 ("Defs.' Br.") at 3.  Defendants are well aware that Ms. Gaujacq has never alleged "sexual harassment."  Rather, Plaintiff complained that Mr. Nadal created a hostile workplace/environment and that Mr. Nadal discriminated and engaged in retaliatory actions against Ms. Gaujacq.  *See generally* Complaint.  Defendants' Opposition is laced with these mischaracterizations and, when dissected, highlights that there are multiple disputed material facts.

Defendants' Opposition is nothing more than a patently desperate effort to explain and justify its now-thwarted attempt to withhold relevant information regarding the main actors in this dispute, Christian Nadal and Yann Laroche.  Defendants' attempt to conceal the facts is a telling decision, which affirms that the withheld information is fatal to Defendants' arguments

---

[1] Moreover, Defendants' failure to timely submit their Opposition is a basis for this Court to strike their arguments.  Defendants' Opposition was due on March 19, 2008.  Without any request for an extension from Plaintiff or this Court, Defendants submitted their Opposition on March 20, 2008.  The Opposition should, therefore, be stricken.

2

and claim that Mr. Nadal was assigned to replace Ms. Gaujacq because he was more qualified. Defendants' actions make clear that the decision to replace Ms. Gaujacq with a less qualified individual, who led his prior company, and himself, to criminal proceedings and indictments, was discriminatory, and the reasons given for Ms. Gaujacq's termination were pretextual.

## ARGUMENT

### I. THE DECISION OF THE HALDE IS RELEVANT AND CONFIRMS THAT A JURY SITTING IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA SHOULD DECIDE THE MERITS OF MS. GAUJACQ'S CLAIMS

The decision of the HALDE is relevant to parties' arguments respecting Summary Judgment as it rebuts Defendants' claim that U.S. law should not apply and demonstrates that this Court is the only appropriate forum where Ms. Gaujacq can hold Defendants accountable for their conduct.

In their Opposition, Defendants recognize that the HALDE refused to investigate Ms. Gaujacq's complaint because it concluded the acts of discrimination took place somewhere other than on French territory. Defs.' Br. at 18. Despite their arguments in earlier sections of their Opposition, Defendants claim, "This formulation is perfectly consistent with Defendants' position." *Id.* Yet, in stark contrast to Defendants' endorsement of the HALDE's finding that the discriminatory acts occurred somewhere other than France, Defendants contend, "All decisions as to the terms and condition of Gaujacq's employment throughout her years of employment with EDF, including her compensation and the termination of her employment, **were made by EDF in France**, not EDFINA." *Id.* at 3 (Emphasis added.) Defendants cannot have it both ways. Defendants contradict themselves by, on one hand, affirming the HALDE's conclusion that the discriminatory acts occurred outside of French territory, while, on the other

3

hand, maintaining that all relevant decisions regarding Ms. Gaujacq's post were made on French territory.

Ms. Gaujacq has maintained, *inter alia*, that Defendants' decision to breach her contract, remove her from her position, and terminate her, were discriminatory and that her termination, removal, and failure to be re-assigned to an appropriate position, acts which EDF directed and condoned, were retaliatory acts aimed at punishing her for reporting discrimination. *See generally* Complaint. Under any evaluation, the basis for Defendants' inability to commit to a position is clear – they are able to recognize that Ms. Gaujacq's inability to redress the Defendants' conduct in any other forum or under any other law provides further support to her plea to this Court to deny Defendants' Motion for Summary Judgment and allow her to have her claims decided by a jury.

## II. DEFENDANTS ARE UNABLE TO REBUT THE RELEVANCE OF THE PROCEEDINGS IN ARGENTINA AND THE SIGNIFICANCE OF THEIR FAILURE TO DISCLOSE NADAL'S INVOLVEMENT

Defendants inexplicably defend their and Mr. Nadal's refusal to admit that Mr. Nadal had been part of a criminal proceeding by claiming, in essence, that his involvement was limited to a judicial interrogation as part of a criminal proceeding.  This is not true.  Even if it were true, a judicial interrogation IS a criminal proceeding.  Even under the Defendants' own translation of the documents, Mr. Nadal was the subject of a criminal proceeding where he was called by a Judge to be questioned regarding his involvement with EDENOR.  Yet, he unequivocally denied, under oath, that a criminal proceeding had ever been brought against him.  *See* Atts. 17 at p. 8.

Moreover, Defendants attempt to obfuscate the fact that they did not produce a single document or any information regarding the underlying criminal proceedings against Mr. Nadal and EDENOR by arguing the alleged judicial interrogation is not a criminal proceeding.  This

4

issue of semantics and translation could have, and should have been, decided long ago, but would never have even come to light if Plaintiff had not discovered it herself.  If Defendants had produced the information as required, Ms. Gaujacq could have deposed Mr. Nadal, Yann Laroche, and the corporate designee of EDF on these matters – all of these depositions occurred after the 2003 and 2005 proceedings against Mr. Nadal.

      An examination of Defendants' own submission underscores Ms. Gaujacq's arguments as to the relevance of Mr. Nadal's time in Argentina and rebuts that he had the outstanding record as Defendants' previously claimed in discovery and in their Summary Judgment Motion.  Defendants attached to their Opposition portions of a treatise providing an overview of international criminal procedure in the World, particularly in Argentina.  Defs.' Br., Exh. 3.  Notably, it explains that the very point of the "judicial interrogation," to which they admit Mr. Nadal was a subject, is to determine whether there is sufficient basis "to believe that a criminal offense has been committed and whether the defendant participated in it."  *Id.* at 40.  Logically, there must first be a reason to suspect the individual participated in a crime and there was a reason for Nadal to be suspected of participating in a crime. *See* Article 294 of the Code of criminal procedure of the Nation of Argentina as Attachment 18 translated in English as Attachment 19; The Argentinean Code of criminal procedure of the Nation of Argentina can also be found at http://www.infoleg.gov.ar/infolegInternet/anexos/0-4999/383/texact.htm.

      Defendants' attempt to dismiss Mr. Nadal's criminal proceedings as non-existent or otherwise insignificant must be rejected.  Defendants cannot withhold the requested information because they made the unilateral decision that it was too minor to be relevant.  More telling, however, are the noticeably absent statements under oath and penalty of perjury from Mr. Nadal and Yann Laroche, or any other officer of EDF, respecting Mr. Nadal's criminal investigation in

5

Argentina. Defendants had an opportunity with their Opposition to have Mr. Nadal, Yann Laroche, or any other EDF officer, state the truth, plainly and simply, respecting the nature of the proceedings that Defendants chose to conceal from this Court. Instead, the Defendants chose expensive evasive tactics and verbiage to delay the course of justice and try to confuse the Court with their Opposition, this time using highly and purposely improper challenged translations on the nature of Argentinean Criminal Law on the theme of Indictment vs. Conviction. See Att. 20.

Defendants paint a backdrop of the proceedings surrounding Mr. Nadal, cavalierly portraying him as answering few questions regarding EDENOR before the Argentine court.[2] *See generally* Defs.' Br. Defendants support their contention by claiming the other individuals identified in the May 24, 2005 Judgment were accused of "allegedly" committing a crime and maintain the Argentine court found there was no basis for even an indictment against Mr. Nadal. Defs.' Br. at 7. This is not the case. Defendants' proffered translation of the indictment of Mr. Nadal, falsely indicates that the other individuals were indicted for "allegedly" committing crimes. Defs.' Br., Exh. 1. In fact, the word "allegedly" does not appear anywhere in the document, and the identified individuals were convicted after a criminal investigation for being "considered criminally responsible." *See e.g.* Att. 21 (certified translation of the Indictment of Daniel José Lello stating he was criminally responsible for committing a criminal act of

---

[2] Defendants' claim throughout their brief that Ms. Gaujacq's translations do not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure must be rejected. First, Defendants do not deny that the documents Ms. Gaujacq submitted pertain to the criminal investigation of Mr. Nadal and EDENOR. Although Ms. Gaujacq contests the Defendants' translations, the relevance of the documents is undeniable. Second, Defendants are missing the point. They cannot refuse to produce relevant documents and then attempt to absolve themselves from their misconduct by criticizing Ms. Gaujacq's translations. Under Defendants' own analysis, the documents proffered must only be "'capable of being converted into admissible evidence.'" Defs.' Br. at 11 *citing Wilburn v. Robinson*, 480 F.3D 1140, 1143 n.2 (D.C. Cir. 2007). The documents proffered by Ms. Gaujacq are admissible or otherwise capable of being admissible evidence.

hazardous pollution.) Moreover, a closer examination of a portion of the translation from Mr. Lello's conviction shows that his assets were seized to "cover[] the amount of five hundred thousand pesos" not to "secure" that amount as Defendants claim. *See* Att. 21; *see also* Defs. Br., Exhibit 1. Mr. Nadal was subject to a criminal proceeding in Argentina for failing to manage EDF's subsidiary EDENOR.[3]

Moreover, the economic condition in Argentina cannot be used by Defendants to portray Mr. Nadal as unconnected to EDENOR's troubles during his reign. From 1999 until 2002 Argentina was in a deep economic recession (- 3.4% in 1999), with complete political instability, and with severe civil unrest. *See Attachment C*. However, the criminal investigation of the environmental criminal case against Edenor in Argentina started in 2000, during Mr. Nadal's tenure as CEO of Edenor, by Mr. Nadal's own admission. *See* Att. 17 at p. 39.

The fact that Mr. Nadal was indicted after he left Argentina is also of no significance. It is logical that it would take time for an investigation to produce indictments. Mr. Nadal was indicted with criminal charges in criminal case # 2512 on May 30, 2003, together with a long list of others, including Edenor and EDF Executives, in accordance with Article 294 of the Code of criminal procedure of the Nation of Argentina, because there was enough reason to suspect that he had participated in the commission of a crime. *See* Atts. 18 & 19.

During this litigation, both Mr. Nadal and EDF concealed relevant information they knew was fatal to their contention that Mr. Nadal was appointed for business reasons to the United States. In comparing any of Ms. Gaujacq's qualifications to Mr. Nadal's, there can be no honest attempt to assert that Mr. Nadal's qualifications were, or performance record was, superior, or

---

[3] For further discussion of the impact of EDENOR's misconduct in Argentina, see also the May 25, 2005 article from *La Nacion*, explaining the indictment and criminal acts of EDENOR's management (Attachment 22 as translated at 23).

7

even equal, to those of Ms. Gaujacq. Similarly, taking as true the very worst claims Defendants can or may assert against Ms. Gaujacq, they collectively pale in comparison to the seriousness of the conduct engaged in by Mr. Nadal.

## **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in her Motion to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Ms. Gaujacq requests that she be allowed to supplement her Memorandum in Opposition to Defendants' Motion for Summary Judgment.

March 31, 2008                                     Respectfully Submitted,

                                                                    _____/s/_____
                                                                    Elaine Charlson Bredehoft
                                                                    D.C. Bar No. 441425
                                                                    Carla D. Brown
                                                                    D.C. Bar No. 474097
                                                                    Kathleen Z. Quill
                                                                    D.C. Bar No. 489079
                                                                    CHARLSON BREDEHOFT & COHEN, P.C.
                                                                    11260 Roger Bacon Drive
                                                                    Suite 201
                                                                    Reston, Virginia 20190
                                                                    (703) 318-6800

                                                                    Counsel for Plaintiff
                                                                       Catherine Gaujacq

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 31st day of March 2008, a copy of the foregoing Reply to Defendants' Opposition to Motion for Leave to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment was filed electronically via ECF and mailed via first class mail, postage prepaid, to:

> Laura B. Hoguet, Esq.
> Dorothea W. Regal, Esq.
> Randi S. May, Esq.
> HOGUET NEWMAN & REGAL, LLP
> 10 East 40th Street
> New York, NY 20016
> Counsel for Defendants EDF, SA
>     and EDFINA
>
> Morgan D. Hodgson, Esq.
> David A. Clark, Esq.
> 1330 Connecticut Avenue, N.W.
> Washington, D.C. 20036
> Counsel for Defendant Christian Nadal

                                                         /s/ ECB_____
                                                     Elaine Charlson Bredehoft