ATTACHMENT 17

COPY

Page 1

1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

2

3    - - - - - - - - - - - - - - - - x
                                     :
4    CATHERINE GAUJACQ,              :
                                     :
5              Plaintiff,            :
                                     :
6         vs.                        :    No. 1:05CV0969(JGP)
                                     :
7    ELECTRICITE DE FRANCE           :
     INTERNATIONAL NORTH AMERICA,    :
8    INC , et al.,                   :
                                     :
9              Defendants.           :
                                     :
10   - - - - - - - - - - - - - - - - x
11                         Washington, D.C.
12                         Tuesday, April 4, 2006
13        Deposition of CHRISTIAN NADAL, defendant, called
14   for examination by counsel for the plaintiff, pursuant
15   to notice, at the office of David A. Clark, Esq.,
16   Steptoe & Johnson, LLP, 1330 Connecticut Avenue,
17   Northwest, Washington, D.C  20036, before Carol A.
18   Lowe, a Registered Professional Reporter, beginning at
19   9:40 a.m., when were present on behalf of the
20   respective parties:
21

Page 6

1  stands for Electricite De France -- in North America
2     Q    And so if we use EDF in this deposition, you
3  understand that to mean Electricite De France; is that
4  correct?
5     A    EDF stands for Electricite De France, yes
6     Q    Okay   And if we use EDFINA in this
7  deposition, what does that mean to you?
8     A    EDFINA is a subsidiary of EDF, wholly owned
9  by EDF and operating in -- based in D C  and operating
10  on behalf of EDF for some operations in the United
11  States and Canada
12     Q    And does it stand for Electricite De France
13  International North America?
14     A    Yes
15     Q    Okay   And how long have you held the
16  position of general delegate of EDF in North America?
17     A    The decision by Francois Roussely -- Roussely
18  is -- you have it? R-O-U-S-S-E-L-Y  Francois
19  Roussely, president of EDF, assign me that position in
20  the beginning of 2004
21     Q    And what was Mr  Roussely's position at that
22  time?

Page 7

1     A    Chairman and CEO of EDF
2     Q    Have you ever had your deposition taken
3  before?
4     A    No
5     Q    Do you have an understanding of what takes
6  place in a deposition?
7     A    I work with my lawyers on this aspect  I --
8  I think  I guess, yes
9     Q    You attended Catherine Gaujacq's deposition;
10  correct?
11     A    Yes
12     Q    And you also attended the deposition of one
13  of the corporate designees of EDF and EDFINA; correct?
14     A    Yes
15     Q    Okay   And you watched that process
16     A    Yes
17     Q    Okay   And you understand that you are giving
18  your answers under oath today; correct?
19     A    Yes
20     Q    And do you understand that to mean that under
21  the penalty of perjury you are telling the truth, the
22  whole truth and nothing but the truth?

Page 8

1     A    Yes
2     Q    Okay  And do you understand that that oath
3  applies to you?
4     A    What do you mean?
5     Q    Do you have any belief that because you are a
6  French citizen that the United States laws do not
7  apply to you?
8     A    No  No  No  I understand  Well, I don't
9  know  It's a legal aspect  I don't know, but I
10  understand  I am intending to tell the truth, of
11  course  And this is what my lawyers told me, also,
12  tell the truth  I don't know the legal aspect, but I
13  understand  I will do that
14     Q    All right  Other than Catherine Gaujacq's
15  deposition and Mr  DeBotherel's deposition as a
16  corporate designee of EDF and EDFINA, have you ever
17  attended any other deposition?
18     A    No
19     Q    Have you ever had any criminal proceedings
20  brought against you?
21     A    No
22     Q    Okay  Have you -- how would you describe

Page 9

1  your health today?
2     A    My health? Standard for my age
3     Q    Okay  Standard for your age? Is that what
4  you said?
5     A    Yes
6     Q    Okay  Are you taking any types of
7  medications?
8     A    No
9     Q    Okay  Is there any reason that you would not
10  be able to provide full and truthful answers in
11  response to my questions today and tomorrow?
12     A    I don't know
13     Q    Okay  If at any time that becomes the case
14  or you believe that, please let me know --
15     A    Okay
16     Q    -- okay?
17     A    Thank you
18     Q    Great  I'm going to show you what has been
19  marked as Deposition Exhibit No  1  That has already
20  been provided to counsel  And while we -- before the
21  deposition in consultation with counsel we had -- your
22  counsel went through and marked certain parts of that

a37d4c8e-b5b5-4f30-9a8e-28d6a2a46385

Page 38

1  and making analysis with transparency  And as he was
2  afraid of the results he stayed backwards, not --
3  again, the same position then before, not helping the
4  company, staying very prudent when at that time we
5  needed to go and -- and defend the company
6      Q   So you believed that Mr Ponasso did not
7  defend the company and should have defended the
8  company during these claims
9      A   Yes; should have a bit more  Yes
10     Q   What else should he have done?
11     A   I'm sorry?
12     Q   What else did you think that Mr  Ponasso
13  should have done?
14     A   Well, when we -- we had a lot of technical
15  work about that  He was not involved in that, but
16  as -- even as a nonexecutive chairman of the board he
17  was supposed to speak with the politicians in -- not
18  in formal meeting but in informal meetings or in
19  private activities but to -- to defend the company,
20  stick to the position of the company
21         And he avoided these contacts  And he
22  avoided speaking of -- of the issue with the

Page 39

1  authorities and other people
2      Q   What period of time did this dispute take
3  place with the claims against the company about the
4  dangerousness of the transformers and the explosions?
5      A   I did not say "dispute"  I say these facts
6  Let us say these facts  Well, the first example
7  occurred mainly by the year 2000, end of 1999 and the
8  year 2000, up to the vote of the board in beginning of
9  2001 on the accounting
10         And the second was mainly in 2001 or maybe
11  end of -- the incidents started -- incidents, I mean
12  technical incidents, started by the end of 2000 and
13  lasting in 2001
14     Q   Were those still ongoing when you left in
15  early 2002?
16     A   Yes  My successor had to deal with some
17  aspects, but the main -- we had replaced some
18  transformers  And we had done the main -- main job in
19  2001
20     Q   What position did Fernando Ponasso take after
21  EDF acquired 100 percent of Edenor?
22     A   He stayed -- for a while he stayed in the

Page 40

1  same position  Everybody stayed in the same position
2  from July 2001 up to my departure and even up to
3  February or March 2002
4      Q   And then what position did Fernando Ponasso
5  take?
6      A   I think it was the time when he became head
7  of the Branch Americas
8      Q   For EDF
9      A   For EDF
10     Q   Had Fernando Ponasso worked for EDF any time
11  prior to 2002?
12     A   No  He became a -- an EDF employee by
13  February or March, I guess  I'm not sure, because I
14  don't know the detail of his situation; but I think he
15  became an EDF employee at that time  And he was not
16  before
17     Q   Whose decision was it to appoint Fernando
18  Ponasso to the head of the Branch of Americas for EDF?
19     A   It should be President Roussely, CEO of the
20  company
21     Q   Of EDF
22     A   Of EDF

Page 41

1      Q   And was that an R-1 position that Mr Ponasso
2  took?
3      A   Probably
4      Q   Okay  During -- were there any other
5  disputes that -- or issues or disagreements that you
6  and Mr Ponasso had while you were in Argentina other
7  than the two that you have described to me?
8         MS REGAL:  I'm going to object to the form
9  of the question  Could you read it back?
10         (The last question was read )
11         MS REGAL:  I object to the form of the
12  question  You may answer
13     A   Well, another very important issue -- we had
14  a lot of employees and a lot of contractors -  was the
15  way of dealing with unions -- with unions
16         I cannot give a lot of details about that,
17  but it was another topic in which he wanted to avoid
18  risk and conflicts  And, of course, it's always a
19  risky situation when you have to negotiate
20         It's always a risky situation, because you
21  have to negotiate  You have to -- and sometimes have
22  a -- a conflict with the unions  Even if you reach an

11  (Pages 38 to 41)

ATTACHMENT 18

**Capítulo IV**

**INDAGATORIA**

**Procedencia y término**

<u>**Art. 294.-**</u> Cuando hubiere motivo bastante para sospechar que una persona ha participado en la comisión de un delito, el juez procederá a interrogarla; si estuviere detenida, inmediatamente, o a más tardar en el término de veinticuatro (24) horas desde su detención

Este término podrá prorrogarse por otro tanto cuando el magistrado no hubiere podido recibir la declaración, o cuando lo pidiere el imputado para designar defensor.

**RESUELVO:**

I. DECRETAR EL PROCESAMIENTO de DANIEL JOSÉ LELLO, de las demás

condiciones personales obrantes en el legajo, por considerarlo autor

penalmente responsable del delito de contaminación peligrosa para la salud,

conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando

a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de

quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento

que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del

Código Procesal Penal de la Nación)



Technovate Translations
40 Sheppard Ave West, Suite 604
Toronto, Ontario
M2N 6K9

## Translator's Declaration

I **ROBERTO REY** of the **COLOMBIA** make oath and say:

1. That I am well acquainted with both the SPANISH and ENGLISH languages

2. That I hereby certify that the attached CRIMINAL PROCESSING OF DANIEL LELLO translation was translated by me from SPANISH depicted in the attached documents into ENGLISH

3. That I have compared the translation with the original document(s) of which the photocopies are attached herewith; and

4. That, to the best of my knowledge, this translation is, in every respect a complete and correct translation of the said SPANISH language.

In witness whereof I have hereto subscribed my name in the city of BOGOTÁ, in the state/province CUNDINAMARCA in the country of COLOMBIA, this 31st day of MARCH of 2008.

Mar. 31/2008

Translator

Technovate Translations
Daniel Riber

Date

**Capítulo IV**

**INDAGATORIA**

**Procedencia y término**

<u>Art. 294.-</u> Cuando hubiere motivo bastante para sospechar que una persona ha participado en la comisión de un delito, el juez procederá a interrogarla; si estuviere detenida, inmediatamente, o a más tardar en el término de veinticuatro (24) horas desde su detención.

Este término podrá prorrogarse por otro tanto cuando el magistrado no hubiere podido recibir la declaración, o cuando lo pidiere el imputado para designar defensor.

**RESUELVO:**

I. DECRETAR EL PROCESAMIENTO de DANIEL JOSÉ LELLO, de las demás

condiciones personales obrantes en el legajo, por considerarlo autor

penalmente responsable del delito de contaminación peligrosa para la salud,

conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando

a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de

quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento

que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del

Código Procesal Penal de la Nación).

**Chapter IV**

**QUESTIONING**

**Applicability and Term**

<u>Art. 294.-</u> If there are sufficient reasons to believe that a person has been involved in perpetuating a crime, the judge will proceed to question the person; if the person is arrested, proceed immediately or at the latest, within a term of twenty four (24) hours from detainment.

This term may be extended for some time if the magistrate has not been able to hear the statement or when the defendant has requested a lawyer.

**RESOLUTION:**

I ORDER THE CRIMINAL PROCESSING OF DANIEL JOSÉ LELLO,

of the remaining personal conditions acknowledged in the docket, as he is deemed criminally

responsible for dangerous contamination against health, in accordance to the crime provided

for and controlled by Article 56 of Law 24.051, mandating a seizure on his

property, until covering the amount of five hundred thousand pesos

($500.000), the Officer of the Justice Tribunal must prepare the mandate

(Article 518 of the National criminal Procedure Code).

ATTACHMENT 19

**Chapter IV**

**QUESTIONING**

**Applicability and Term**

**Art. 294.-** If there are sufficient reasons to believe that a person has been involved in perpetuating a crime, the judge will proceed to question the person; if the person is arrested, proceed immediately or at the latest, within a term of twenty four (24) hours from detainment.

This term may be extended for some time if the magistrate has not been able to hear the statement or when the defendant has requested a lawyer.

ATTACHMENT 20

As an example of the malicious techniques used by Defendants, let the Court appreciate the subtlety on one sample translation

## Original text:

**RESUELVO:**
I DECRETAR EL PROCESAMIENTO de DANIEL JOSÉ LELLO, de las demás condiciones personales obrantes en el legajo, por considerarlo autor penalmente responsable del delito de contaminación peligrosa para la salud, conforme lo previsto y reprimido por el artículo 56 de la Ley 24 051, mandando a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del Código Procesal Penal de la Nación).

## Malicious translation from the Defendants:

BE IT RESOLVED:

I, TO DECREE THE INDICTMENT of DANIEL JOSÉ LELLO, identified in the record, for allegedly committing the criminal act of pollution hazardous to health, as defined and penalized by Article 56 of Law 24,051, accompanied by an order to attach the assets that he owns in an amount sufficient to secure the sum of five hundred thousand pesos ($500,000) The court order to be served by an officer of the Court of Justice (Article 518 of the *National Criminal Code*) is to be drawn up

Comparing Defendants' malicious translation with the original text, even a non-Spanish reader can understand that the crime is not **"allegedly"** committed **"Allegedly"** translates in Spanish with **"Alegado".** DANIEL JOSE LELLO in this case is considered the **author, criminally responsible,** as indicated in the certified translation bellow:

## CERTIFIED TRANSLATION

**RESOLUTION:**
I ORDER THE CRIMINAL PROCESSING OF DANIEL JOSÉ LELLO, of the remaining personal conditions acknowledged in the docket, as he is deemed criminally responsible of dangerous contamination against health, in accordance to the crime provided for and controlled by Article 56 of Law 24 051, mandating a seizure on his property, until covering the amount of five hundred thousand pesos ($500 000), the Officer of the Justice Tribunal must prepare the mandate (Article 518 of the National criminal Procedure Code)

ATTACHMENT 21

**Chapter IV**

**QUESTIONING**

**Applicability and Term**

**Art. 294.-** If there are sufficient reasons to believe that a person has been involved in perpetuating a crime, the judge will proceed to question the person; if the person is arrested, proceed immediately or at the latest, within a term of twenty four (24) hours from detainment.

This term may be extended for some time if the magistrate has not been able to hear the statement or when the defendant has requested a lawyer.

**RESOLUTION:**

I ORDER THE CRIMINAL PROCESSING OF DANIEL JOSÉ LELLO,

of the remaining personal conditions acknowledged in the docket, as he is deemed criminally

responsible for dangerous contamination against health, in accordance to the crime provided

for and controlled by Article 56 of Law 24 051, mandating a seizure on his

property, until covering the amount of five hundred thousand pesos

($500 000), the Officer of the Justice Tribunal must prepare the mandate

(Article 518 of the National criminal Procedure Code).



Technovate Translations
40 Sheppard Ave. West, Suite 604
Toronto, Ontario
M2N 6K9

## Translator's Declaration

I **ROBERTO REY** of the **COLOMBIA** make oath and say:

1. That I am well acquainted with both the SPANISH and ENGLISH languages

2. That I hereby certify that the attached CRIMINAL PROCESSING OF DANIEL LELLO translation was translated by me from SPANISH depicted in the attached documents into ENGLISH

3. That I have compared the translation with the original document(s) of which the photocopies are attached herewith; and

4. That, to the best of my knowledge, this translation is, in every respect a complete and correct translation of the said SPANISH language.

In witness whereof I have hereto subscribed my name in the city of BOGOTÁ, in the state/province CUNDINAMARCA in the country of COLOMBIA, this 31st day of MARCH of 2008.

Mar. 31/2008

Translator

_____          _____
Technovate Translations                          Date
Daniel Riber

**Capítulo IV**

**INDAGATORIA**

**Procedencia y término**

<u>**Art. 294.-**</u> Cuando hubiere motivo bastante para sospechar que una persona ha participado en la comisión de un delito, el juez procederá a interrogarla; si estuviere detenida, inmediatamente, o a más tardar en el término de veinticuatro (24) horas desde su detención

Este término podrá prorrogarse por otro tanto cuando el magistrado no hubiere podido recibir la declaración, o cuando lo pidiere el imputado para designar defensor.

**RESUELVO:**

I. DECRETAR EL PROCESAMIENTO de DANIEL JOSÉ LELLO, de las demás

condiciones personales obrantes en el legajo, por considerarlo autor

penalmente responsable del delito de contaminación peligrosa para la salud,

conforme lo previsto y reprimido por el artículo 56 de la Ley 24.051, mandando

a trabar embargo sobre bienes de su propiedad hasta cubrir la suma de

quinientos mil pesos ($500.000), debiéndose confeccionar el mandamiento

que será diligenciado por el oficial de Justicia del Tribunal (artículo 518 del

Código Procesal Penal de la Nación).

**Chapter IV**

**QUESTIONING**


**Applicability and Term**

**Art. 294.-** If there are sufficient reasons to believe that a person has been involved in perpetuating a crime, the judge will proceed to question the person; if the person is arrested, proceed immediately or at the latest, within a term of twenty four (24) hours from detainment.

This term may be extended for some time if the magistrate has not been able to hear the statement or when the defendant has requested a lawyer.


**RESOLUTION:**

I. ORDER THE CRIMINAL PROCESSING OF DANIEL JOSÉ LELLO,

of the remaining personal conditions acknowledged in the docket, as he is deemed criminally

responsible for dangerous contamination against health, in accordance to the crime provided

for and controlled by Article 56 of Law 24.051, mandating a seizure on his

property, until covering the amount of five hundred thousand pesos

($500.000), the Officer of the Justice Tribunal must prepare the mandate

(Article 518 of the National criminal Procedure Code).

ATTACHMENT 22



Información general
Miércoles 25 de Mayo de 2005

Por presunta contaminación ambiental con PCB

# Embargan a Edenor por $ 150 millones
## La justicia federal procesó a tres funcionarios de la empresa y a dos del ENRE

La causa comenzó en 2000 por la denuncia de una vecina de Del Viso La empresa, que dice que no contaminó, apelará la medida ante la Cámara Federal de San Martín

La justicia federal dictó ayer el procesamiento de tres funcionarios técnicos de Edenor y dispuso un embargo preventivo de $ 150 millones a la empresa por presunta contaminación ambiental. La misma determinación tomó con dos funcionarios del Ente Nacional Regulador de la Electricidad (ENRE), a quienes procesó por incumplimiento de los deberes de funcionario público y les trabó un embargo por 1.000.000 de pesos y 250.000 pesos, respectivamente.

La causa, que se inició de oficio en 2000, a raíz de la denuncia de Mabel Bastías de Lorenzo, por presunta contaminación con bifenilos policlorados (PCB) de los transformadores eléctricos de la empresa, será apelada por Edenor ante la Cámara Federal de San Martín, según informó la compañía mediante un comunicado.

'Este fallo es algo histórico. Nunca pensé que la justicia del hombre pudiera hacer algo porque no creía en ella. Con esto, ahora estoy esperanzada", dijo Mabel Bastías, madre de Nahuel, que murió tras padecer leucemia, según ella a causa de la contaminación por PCB.

El juez federal de Zárate y Campana Efraín Fagionatto Márquez procesó a tres funcionarios técnicos de Edenor -Daniel Lello, Luciano Pironio y Adalberto Márquez- por considerarlos autores "penalmente responsables del delito de contaminación peligrosa para la salud", según consta en la resolución a la que tuvo acceso LA NACION. A los tres les trabó un embargo preventivo por 500.000 pesos.

En tanto, a Juan Antonio Legisa, ex director del ENRE, y a María Cristina Massei, agente de ese organismo, los procesó por incumplimiento de los deberes de funcionario público y dispuso el embargo preventivo en sus bienes por 1.000.000 de pesos y 250.000 pesos, respectivamente. El magistrado, además, dispuso la falta de mérito de tres imputados y sobreseyó a otros 20 acusados.

La empresa rechazó de plano la decisión judicial. "De la causa no surge que Edenor haya incumplido el deber de cuidado o de mantenimiento de objetos peligrosos. No se encontró PCB en tierra, ni en vegetales, ni en muestras de raspados e hisopados, ordenados en la causa. Tampoco se ha detectado contaminación de aguas superficiales ni profundas que tengan vinculación con elementos utilizados por Edenor. Las contaminaciones halladas no tienen relación alguna con las actividades de Edenor ni con rastros de PCB", se expresó en un comunicado.

## Bajos niveles

"Los únicos peritajes que determinaron un bajo nivel de PCB fueron extraídos del interior de algunos de los transformadores analizados, que estaban en buen funcionamiento y no presentaban pérdidas de refrigerante, es decir que no estaban en condiciones de ocasionar contaminación alguna", continuó.

La empresa recordó, además, que sólo el 18 de noviembre de 2002 las autoridades nacionales fijaron, a través de la ley 25.670, aún no reglamentada, la obligatoriedad de la eliminación gradual del PCB, al establecer como plazo el año 2010.

Según Mabel Bastías, "la contaminación no se borra con el codo. Tenemos plena confianza de que esto va a seguir adelante. Cuando todo esto empezó, cada uno de los vecinos se acordaba de los transformadores que tenía cerca de su casa, a la vuelta. Al principio, decían que esos equipos no tenían PCB; ahora, dicen que tienen otras concentraciones".

Mabel y su esposo, Guillermo Lorenzo, no se mudaron de su casa en Del Viso a pesar de que creen que su hijo Nahuel murió como consecuencia de la presunta contaminación que generaron los transformadores eléctricos.

"Yo no tengo por qué mudarme. La empresa tiene que remediar lo que provocó. Hay muchos Nahueles en el barrio por los que tenemos que velar. Ahora que Nahuel no está, a mí de acá no me saca nadie', dijo la mujer.

**Laura Rocha**

http://www.lanacion.com.ar/informaciongeneral/nota.asp?nota_id=707065
LA NACION | 25 05 2005 | Página 20 | Información general

Copyright 2005 SA LA NACION | Todos los derechos reservados

ATTACHMENT 23



General Information
Wednesday 25th 2005

For presumed environmental contamination with PCB

# Attachment on Edenor asset of $ 150 million

**Federal justice convicted three civil employees of the company and two of the ENRE**
**The cause began in 2000 with the denunciation of a neighbor of Del Viso. The company, that says**
**that it did not contaminate, will appeal the ruling before the Federal Court of San Martín**

Federal justice ruled yesterday the conviction of three technical civil employees of Edenor and had a preventive attachment of $ 150 million on the company's assets for presumed environmental contamination. The same ruling convicted two civil employees of the Regulating National Board of Electricity (ENRE), convicted of breach of the duties of government official with attachment on their assets up to 1.000.000 pesos and 250,000 pesos, respectively

The case, that began in 2000, as a result of the denunciation of Mabel Bastías de Lorenzo, for presumed contamination with policlorados bifenilos (PCB) of the electrical transformers of the company, will be appealed by Edenor before the Federal Court of San Martín, according to information from the company by means of an official notice

"This outcome is something historical. I never thought that the justice of men could do something because I did not believe in her. With this, now I am hopeful ", said Mabel Bastías, mother of Nahuel, who died after suffering leukemia, according to her because of the contamination by PCB

The federal judge of Zárate and Campana Efraín Fagionatto Márquez convicted three technical civil employees of Edenor - Daniel Lello, Luciano Pironio and Adalberto Márquez- to consider them authors "legally responsible for the crime of contamination hazardous for the health", according to the decision to which the NATION had access. To the three he attached a 500,000 pesos penalty to their assets

As for Juan Antonio Legisa, ex- director of the ENRE, and María Cristina Massei, agent of that organism, he convicted them with breach of the duties of government official and attached on their personal property 1,000,000 pesos and 250,000 pesos, respectively. The magistrate, in addition, ruled the lack of merit for three indicted (put into examination) and withdrawal of case to 20 other defendants.
The company rejected the judicial decision "From the case it does not arise that Edenor has failed to take good care of or to maintain dangerous equipments. No PCB was found in the soil, neither in vegetables, nor in scraped samples ( ...hisopados), ordered in the case. Superficial or groundwater contamination has not been detected either, that has entailment with elements used by Edenor. The found contaminations are not related to the activities of Edenor nor with signs of PCB ", was expressed in an official notice

**Low levels**

"The only expert works that determined a low level of PCB were extracted of the interior of some of the analyzed transformers, that were in good working condition and did not present/display losses of coolant, is to say that they could not cause some contamination some", continued

The company reminds, in addition, that only since November 18th 2002 the national authorities determined, through law 25,670, not yet voted, the mandatory gradual elimination of PCB, establishing like the term as year 2010

According to Mabel Bastías, "the contamination does not flock with the elbow. We have total confidence this is going to follow ahead. When all this began, each one of the neighbors remembered the transformers that he had near their house, to the return. In the beginning, they said that those equipments did not have PCB; now, they say that they have other concentrations ".

Mabel and her husband, Guillermo Lorenzo, did not move from their house in De Viso although they think that their son Nahuel died as a result of the presumed contamination generated by the electrical transformer.

"I do not plan to move. The company must remedy what they caused. There are many Nahuels in the district we must protect. To me the fact that now Nahuel is dead does not remove anybody from here ", said the woman to me.

**Laura Rocha**
http://www.lanacion.com.ar/informaciongeneral/nota.asp?nota_id=707065
LA NACION | 25.05.2005 | Páge 20 | general information
Copyright 2005 SA LA NACION | All rights reserved

http://www.lanacion.com.ar/herramientas/printfriendly/printfriendly.asp?origen=3ra&nota.    3/30/2008