UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 1:05CV0969 (HHK) |
| ) | |
| ELECTRICITE DE FRANCE ) | |
| INTERNATIONAL NORTH AMERICA, ) | |
| INC., ELECTRICITE DE FRANCE, S.A. ) | |
| and CHRISTIAN NADAL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS**

Dorothea W. Regal *(D.C. Bar No. NY0064)*
Laura B. Hoguet *(D.C. Bar No. 200915)*

HOGUET NEWMAN REGAL &  KENNEY, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
*Counsel for Defendants Electricité de
France, S. A. and Electricité de France
International North America, Inc.*

Morgan D. Hodgson *( D.C. Bar No. 186521)*
David A. Clark *(D.C. Bar No. 473279)*

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000
*Counsel for Defendant Christian Nadal*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS RELEVANT TO THIS MOTION............................. 4

ARGUMENT......................................................................................................... 7

    I.     DEFENDANTS FULLY COMPLIED WITH THEIR DISCOVERY
          OBLIGATIONS ...................................................................................... 7

          A.     Plaintiff Did Not Ask For The EDENOR Documents
                  She Claims Were "Withheld"......................................................... 8

          B.     Defendants' Witnesses Properly Answered
                  Plaintiff's Deposition Questions....................................................... 12

    II.    PLAINTIFF'S LACK OF DILIGENCE
          PRECLUDES REOPENING DISCOVERY................................................. 15

    III.   THE INFORMATION THAT PLAINTIFF CLAIMS SHE
          NEEDS TO INVESTIGATE IS NOT RELEVANT .................................... 18

    IV.   PLAINTIFF IS NOT ENTITLED TO SANCTIONS .................................. 23

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

Atkins v. Fischer, Civ. A. No. 98-0800, 2002
    U.S. Dist. LEXIS 26492 (D.D.C. May 6, 2002)....................................................15

Berkeley v. Home Ins. Co., 68 F.3d 1409 (D.C. Cir. 1995)......................................16, 17

Bonds v. Dist. of Columbia, 93 F.3d 801 (D.C. Cir. 1996)........................................23

Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999)........................................................21

Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231
    (D.C. Cir. 1999) ............................................................................................18

Dag Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95
    (D.D.C. 2005) ................................................................................................16

Dey v. Colt Const. & Dev. Co., 28 F.3d 1446 (7th Cir. 1994)................................22

Gaghan v. Guest Servs., Inc., No. Civ.A. 0301096,
    2005 WL 3211591 (D.D.C. Oct. 26, 2005) ..........................................................21

Hatcher-Capers v. Haley, 762 F. Supp. 393 (D.D.C. 1991) ....................................22

Hazward v. Runyon, 14 F. Supp. 2d 120 (D.D.C. 1998)..........................................21

Hussain v. Nicholson, 435 F.3d 359 (D.C. Cir.), cert. denied,
    127 S. Ct. 494 (2006)......................................................................................16

Kakeh v. United Planning Org., Inc., 537 F. Supp. 2d 65
    (D.D.C. 2008) ........................................................................................16, 17

Lattimore v. Nw. Coop. Homes Ass'n, Civ. A. No. 90-0049,
    1992 WL 118383 (D.D.C. May 19, 1992)..............................................................13

Messina v. Krakower, 439 F.3d 755 (D.C. Cir. 2006) ............................................18

Minebea Co. v. Papst, 221 F.R.D. 11 (D.D.C. 2004) ..............................................18

Perkinson v. Houlihan's/D.C., Inc., 108 F.R.D. 667 (D.D.C. 1985),
    aff'd, 821 F.2d 686 (D.C. Cir. 1987).....................................................................15

Peterson v. Hantman, 227 F.R.D. 13 (D.D.C. 2005)................................................8

Rowland v. Walker, 245 F. Supp. 2d 136 (D.D.C. 2003),
    aff'd, 2003 WL 21803321 (D.C. Cir. Jul. 31, 2003)................................................16

Scott-Blanton v. Universal City Studios Prods. LLP,
   246 F.R.D. 344 (D.D.C. 2007) ............................................................. 15, 18,
                                                                                                      21

U.S. ex rel Fago v. M & T Mortgage Corp., 235 F.R.D. 11
   (D.D.C. 2006) ........................................................................................... 8

## STATUTES & RULES

Fed. R. Civ. P. 16(b) ...................................................................................... 15, 16

Fed. R. Civ. P. 37 ........................................................................................... 15

Fed. R. Civ. P. 37(a)(1) ................................................................................. 23

Fed. R. Civ. P. 37(a)(5)(A) ........................................................................... 23, 24

Fed. R. Civ. P. 37(a)(5)(B) ........................................................................... 24

Fed. R. Civ. P. 37(b)(2)(A) ........................................................................... 23

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................... 23

Fed. R. Civ. P. 56(f) ...................................................................................... 15, 18
                                                                                                      22

Defendants Electricité de France, S.A. ("EDF"), Electricité de France International North America, Inc. ("EDFINA") and Christian Nadal ("Nadal"), through undersigned counsel, submit this memorandum in opposition to Plaintiff's Motion to Compel and for Sanctions ("Pl. Mot.") [Dkt. #150].

## PRELIMINARY STATEMENT

Plaintiff is back again with yet another motion seeking to delay resolution of Defendants' pending motions for summary judgment. Unconstrained by her duty to present the Court with a full and accurate picture of the facts, she made the false assertion in last month's motion, her Motion For Leave To Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Motion For Leave") [Dkt. #145], that Defendant Nadal had been "indicted" in Argentina for alleged environmental pollution by EDENOR, the Argentine electric company of which he had once served a brief term as CEO. Had she read the very documents on which she purported to rely, she would have known that Nadal was never subject to such an action.[1]

Undaunted, and abandoning as she must her earlier suggestion of an "indictment," Plaintiff has retooled her characterizations of Argentine environmental issues and concocted a fallback scenario. Now she represents -- again without basis and contrary to actual facts -- that Defendants "hid" in discovery what she claims to be "highly relevant documents" and "key information" regarding an Argentine investigation of alleged pollution by EDENOR and regarding EDF's financial loss on the sale of its investment in

---

[1] Plaintiff's Proposed Supplement Attachment ("Pl. Prop. Supp. Att.") 11 (EDENOR Form 6-K) [Dkt. #145-9, #145-10]; Pl. Prop. Supp. Att. 12 ("indictment") [Dkt. #145-11]; Defendants' Opposition to Plaintiff's Motion For Leave To Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Def. Opp. To Motion For Leave") [Dkt. #147] at 1-9.

EDENOR. Her claim is false: Defendants hid nothing and fully complied with all discovery requests.

Based on her unsupportable allegations, Plaintiff now asks the Court to "sanction" Defendants by reopening discovery, nearly two years after the close of discovery, and then either to allow her to supplement her opposition to summary judgment or, alternatively, to deny Defendants' summary judgment motion entirely and proceed to trial.

Plaintiff's motion under Rule 37 of the Federal Rules of Civil Procedure ("FRCP"), is brought without the requisite prior conference with Defendants.[2] The motion is deficient in every respect. Defendants fully complied with their discovery obligations, so there is no impropriety to sanction. There is no pending or unanswered discovery demand from Plaintiff and, therefore, no basis for a motion to compel. Plaintiff has not even met the diligence requirements for reopening discovery, to say nothing of the strict requirements for consideration of sanctions. The supposedly "hidden" information is and has always been publicly available – as demonstrated by the fact that the source of Plaintiff's information is EDENOR's public SEC filing and the Internet – and so could have been raised by Plaintiff at any time she cared to do so.

---

[2] Plaintiff's purported "Certificate Under Local Rule 7(m)" (Pl. Mot. at 2) is a sham. Defendants were provided no advance notice on the Motion to Compel, much less an opportunity for a conference, either telephone or face-to-face. Plaintiff's representation that her "position" on her instant motion was set forth in her Reply in Support of her Motion for Leave to Supplement her Opposition to Summary Judgment [Dkt. #149], which Defendants opposed, does not comply with Local Rule 7(m). First, Plaintiff's Reply was the last word on that motion, Defendants being without a right of sur-reply. Second, her prior motion sought leave to supplement her opposition to summary judgment on the basis of her false accusation that Nadal had been "indicted." It said nothing about reopening discovery or seeking sanctions. Finally, she had also failed to comply with the Rule 7(m) conference requirement before filing her prior motion, as Defendants noted in their opposition thereto. Def. Opp. To Motion For Leave at 1 n.1.

Finally, information about EDENOR's alleged environmental pollution, which dates back to industrial practices that occurred many years before Nadal even began his brief term there as CEO, is irrelevant. This case, is, after all, at its core, a sex discrimination case under Title VII and the Equal Pay Act, with Plaintiff alleging that EDF impermissibly selected Nadal to head EDFINA -- claims that turn on EDF's witnesses' unrebutted testimony in the record.

Plaintiff had every opportunity in this litigation to request any information she believed was important to make her case. Indeed, as shown in the deposition excerpts she submits in support of this motion, she questioned witnesses about EDENOR, about Nadal's tenure at EDENOR, about EDENOR's environmental issues, and about EDF's investment in EDENOR. Defendants produced the documents she requested. She served 13 separate document demands, with a total of 578 numbered requests,[3] in which she could have, but did not, request the information she claims was "withheld." Defendants produced over 13,000 pages of documents to Plaintiff. Declaration of Dorothea W. Regal, Esq., dated May 8, 2008 ("Regal Decl."), ¶2. She made a motion to compel two

---

[3] Defendants have duly responded as follows to all of the following demands:

| | |
|---|---|
| 1st Document Request to EDFINA (72 requests) | Response 12/12/05 |
| 1st Document Request to Nadal (51 requests) | Response 12/12/05 |
| 1st Document Request to EDF    (72 requests) | Response 1/3/06 |
| 2nd Document Request to EDF (19 requests) | Response 1/3/06 |
| 2nd Document Request to EDFINA (19 requests) | Response 1/3/06 |
| 2nd Document Request to Nadal (7 requests) | Response 1/3/06 |
| 3rd Document Request to EDF (16 requests) | Response 2/27/06 |
| 3rd Document Request to EDFINA (16 requests) | Response 2/27/06 |
| 3rd Document Request to Nadal(16 requests) | Response 2/27/06 |
| 4th Document Request to Nadal (133 requests) | Response 2/27/06 |
| 4th Document Request to EDF (39 requests) | Response 5/11/2006 |
| 4th Document Request to EDFINA (39 requests) | Response 5/11/2006 |
| 5th Document Request to Defendants(79 requests) | Response 6/05/2006 |

3

months after the close of fact discovery [Dkt. #86], in which she had the opportunity to request the Court to order disclosure of any information she believed she had not received. Notably she did not then request the information she now claims was "withheld." Plaintiff completed all of the fact discovery she considered necessary and, until her March 5, 2008 Motion For Leave, represented that she was ready – indeed anxious -- for this Court to decide Defendants' summary judgment motions on the record she had created, without seeking additional discovery under FRCP Rule 56(f).

Plaintiff's about-face reveals, however, that she has apparently realized that the record, even if amplified by her proposed supplemental briefing, will not permit her to avoid summary judgment. Thus, she seeks any foothold to create some leverage and to leapfrog the summary judgment process. The Court should not countenance such behavior and should deny Plaintiff's motion in its entirety.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

The employer in this case is Defendant Electricité de France, S.A. (EDF), a state-owned utility company headquartered in Paris, France.[4] Defendant Electricité de France International North America, Inc. (EDFINA) is an indirect, wholly-owned subsidiary of EDF and represents EDF in the United States. Plaintiff, Catherine Gaujacq ("Gaujacq"), a French citizen, was a long-time employee of EDF in France who was assigned to a temporary post, for a fixed term, as EDF's "Déléguée Générale" (Delegate General) to North America, in which post she served as President of EDFINA. Defendant Christian

---

[4]  At the time of the events alleged in the Complaint, EDF was 100% owned by the Republic of France; following a public offering of equity interest in 2005, EDF is now partly publicly held but still majority-owned by the Republic of France. EDF, headquartered in Paris, France, has over 160,000 employees. EDFINA is a separate company from EDF, incorporated and located in Washington, D.C., and has fewer than 15 employees.

Nadal, a French citizen, is a high-ranking executive of EDF, who was appointed in 2004 to succeed Gaujacq, upon the expiration of Gaujacq's term, as EDF's "Délégué Général" (Delegate General) to North America, in which post he now serves as President of EDFINA.

Upon the expiration of her term of office in the United States in 2004, Gaujacq refused to return to France to take up her next assigned post at EDF, whereupon EDF terminated her employment, effective January 7, 2005. Plaintiff instituted this action against EDF, EDFINA and Nadal asserting, *inter alia*, claims under Title VII, the Equal Pay Act and the District of Columbia Human Rights Act, alleging sex discrimination and retaliation by all Defendants, and harassment by Nadal on the basis of gender. All decisions as to the terms and conditions of Gaujacq's employment throughout her years of employment with EDF, including her compensation and the termination of her employment, were made by EDF in France, not EDFINA.

From 1999 through 2001, Nadal spent two years in Buenos Aires, Argentina, as the Chief Executive Officer of an Argentine electric company called "EDENOR" (Empresa Distribuidora y Comercializadora del Norte S.A.), a company in which EDF held an equity interest. (Pl. Mot. at 6). Nadal's tenure at EDENOR ended a full two years before EDF appointed him to replace Gaujacq as EDF's Delegate General to North America in 2004 (see Def. 56.1 ¶31),[5] and even longer before Nadal's relocation from

---

[5]  References to "Def. 56.1" are references to the Statement of Defendants EDF, EDFINA and Nadal pursuant to FRCP Rule 56.1 and Local Rule 7(b), filed in support of Defendants' motions for summary judgment [Dkt. # 101].

Paris to Washington, DC in June 2004, when Gaujacq resigned as President of EDFINA and Nadal succeeded to that role. (Def. 56.1 ¶69).[6]

EDENOR is not a party to this case, and there are no allegations that EDENOR had anything to do with any of the acts complained of in this case.

The events concerning EDENOR that Plaintiff claims reflect poorly on Defendant Nadal took place in 2005, well after EDF appointed Nadal to his US post and well after all the acts Gaujacq alleges were unlawful. The preliminary attachment of EDENOR assets and the simultaneous bringing of charges against three EDENOR employees (not including Nadal) for alleged environmental pollution by EDENOR occurred in May 2005 and were dismissed in December 2005, according to Plaintiff's own documents: EDENOR's Form 6-K filed with the US Securities & Exchange Commission, Pl. Mot. Att. 21 at p.77 [Dkt. #150-20], and the Argentine charges, Pl. Mot. Att. 22 (Spanish version) [Dkt. 150-22], a certified English translation of which is attached to the accompanying Regal Declaration as Attachment 1 (Regal Decl. Att. 1).[7] The sale of EDF's equity interest in EDENOR reportedly occurred on July 12, 2005. [8] Therefore, the acts of the Argentine authorities with respect to EDENOR and others in May 2005, as

---

[6] Gaujacq's three-year expatriate assignment expired July 31, 2004, and she was directed toreport to her new position back in France by November 2, 2004. (Def. 56.1 ¶122-23, 137).She was terminated effective January 7, 2005 following her refusal to return to France to take up her post. (Def. 56.1 ¶141).

[7] Defendants have previously objected to Plaintiff's inadmissible translations and lack of authentication of the exhibits on which she relies and incorporate their positions as stated in their prior filing. See Def. Opp. To Motion For Leave [Dkt. #147] at 4, 7 n.7, 8 n.9, 11. Defendants make the same objection to Plaintiff's Attachments 17 and 18 submitted on this motion.

[8] Plaintiff's document, "Avis no. 2005-A8 de la Commission des participations et des transferts du 12 juillet 2005 relatif à la cession de Edenor par Electricité de France," published in the Journal Officiel de la République Française, J.O. 199 du 27 août 2005 (the "Commission Opinion"), stating the French government's opinion on and lack of objection to the sale, indicates that the sale of EDF's interest in EDENOR took place on July 12, 2005. Pl. Mot. Att. 12 (French version) [Dkt. #150-14], as translated by Plaintiff at Pl. Mot. Att. 13 [Dkt. #150-14].

well as EDF's sale of its EDENOR interest in July 2005, are not remotely relevant to the issues before this Court on Defendants' motions for summary judgment.

The close of fact discovery was May 31, 2006. Order dated October 14, 2005 [Dkt. #17]. Defendants filed their motions for summary judgment on October 16, 2006 [Dkt. ##101-108]. Plaintiff filed her opposition on November 20, 2006 [Dkt. ##118-127], and Defendants filed their reply papers on December 8, 2006 [Dkt. #130 & #131]. By order dated February 13, 2007 [Dkt. #139], the Court (Judge Penn) confirmed that by prior Minute Order of August 24, 2006, it had lifted previously set pretrial and trial dates and stated that the Court would schedule a date for trial, if necessary, only after it had resolved the summary judgment motions.

## ARGUMENT

### I.

### DEFENDANTS FULLY COMPLIED
### WITH THEIR DISCOVERY OBLIGATIONS

Plaintiff's strident claim of nondisclosure is manufactured: she is complaining that Defendants did not produce documents that she did not request, and that witnesses failed to answer questions that she did not ask. Plaintiff had ample opportunity throughout the months and months of fact discovery in this case to obtain all the information she wanted. Plaintiff never sought the information she now claims was "withheld." She chose not to. Even if she were seeking discovery of facts colorably on point (and she is not), discovery should not be permitted now because the rules of procedure require that there be some repose – some end to the discovery process. Plaintiff should not be permitted to reopen discovery now, nearly two years after the close of discovery and 17 months after she filed her opposition to Defendants' summary

7

judgment motions, when the subject of the requested discovery relates solely to events occurring long before her already exhaustive discovery requests were propounded and responded to.

A.    **Plaintiff Did Not Ask For The EDENOR Documents
She Claims Were "Withheld"**

Plaintiff contends that she asked for information about Argentine environmental actions involving EDENOR, but it is obvious from looking at her document requests and deposition questions that she did not.  The party seeking discovery "bears the burden of fashioning [document] requests appropriately."  Peterson v. Hantman, 227 F.R.D. 13, 17 (D.D.C. 2005).  Where a plaintiff fails to ask for the documents appropriately, defendant cannot be sanctioned for merely responding to the letter of plaintiff's request.  Id.; see also U.S. ex rel Fago v. M & T Mortgage Corp., 235 F.R.D. 11, 19 (D.D.C. 2006) (court will not compel defendant to produce documents plaintiff did not request).

In this case, Plaintiff's document requests did not call for documents regarding any investigation in Argentina, or any environmental regulation of the use of PCBs by the Argentine electric company EDENOR, or the details of EDF's investment decisions regarding its equity interest in EDENOR, or anything else that would remotely suggest such topics.  Defendants had no demand or notice even to search for any such documents, much less any obligation to produce them.

Plaintiff's own motion papers show that her argument is based on fantasy:  she never even sought the documents she is now claiming were "withheld."  Her complaint of purported noncompliance consists of the following:

8

1. <u>Plaintiff's requests for personnel files and performance evaluations for Nadal.</u>

Plaintiff requested Defendant Nadal to produce:

> "copies of all performance evaluations done of you"; and

> "a copy of your personnel file of Mr. Nadal [*sic*], and any files maintained by the Company [defined as EDF & EDFINA combined] that reference you, your compensation, benefits, performance, evaluations (formal or informal), qualifications and background."

Pl. Mot. at 18 (citing Att. 7, Req. No. 21 & 22. [These requests do not appear in the cited Attachment 7; they appear instead in Plaintiff's Attachment 2 (Nadal Supp. Response to Pl. 1st RPD), Req. 21 & 22.]

Neither of these requests asks about EDF's investment in EDENOR or the Argentine electric company's dealings with environmental regulators in Argentina or any Argentine investigation of PCB usage by the electric company or about EDF's investment in EDENOR. Nor does either request put EDF or Nadal on notice to search for any such information.

Defendants fully complied with these document requests. Plaintiff has chosen to omit from her brief the separate requests she made to EDF for these same documents and EDF's response, in which it stated that it would produce any responsive documents.[9]

---

[9] The request to EDF and its response were as follows:

> <u>Request No. 24</u>: Please produce the personnel file of Mr. Nadal, and any files maintained by the Company that reference Mr. Nadal, his compensation, benefits, performance, evaluations (formal or informal), qualifications and background.

> <u>Response to Request No. 24</u>:  EDF objects to this Request on the ground that it is overbroad and calls for the production of documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding and without waiving this or any other objections, <u>EDF will produce non-privileged documents responsive to this Request, if any exist</u>.

Instead, Plaintiff has tried to create an illusion of noncompliance by presenting the duplicative requests that she had made to the individual Defendant Nadal and his responses, which were limited to documents in his personal possession or control (as was expressly stated in the Nadal document response). Responsive documents were produced by EDF (EDF 679-939). Regal Decl. ¶ 3.

> 2. _Plaintiff's request to EDF for Gaujacq comparisons._ Plaintiff requested:
>
> > "all documents reflecting any comparison, whether favorable or unfavorable, made by the Company [defined as EDF and EDFINA combined] between Ms. Gaujacq and any other employee (past or present) of the Company, including, in particular, Mr. Nadal."

Pl. Mot. at 19 (citing Att. 7, Req. No. 22. [Again, this document request does not appear in the cited Attachment 7; it appears instead in Plaintiff's Attachment 4 (EDF Response to Pl. 1st & 2nd RPD), Req. No. 22.]

There is obviously nothing in the language of Request No. 22 that would suggest that information about EDENOR, a company in which EDF owned an equity interest, was being sought.

This request, like the others, also was complied with fully. As set forth in EDF's document response, EDF objected to the breadth of the request but stated that it would produce any responsive documents reflecting the requested comparison between Gaujacq and Nadal, Pl. Att. 4 (EDF Response to Pl. 1st & 2nd RPD) at 11. Plaintiff later requested the information to which EDF had objected, Pl. Att. 5 (Pl. 4th RPD to EDF), Req. No. 13, and the Court upheld EDF's objection to Plaintiff's fishing expedition for information on employees other than Nadal. Memorandum Order, filed November 9, 2006 [Dkt. #109].

---

Response of Defendant Electricité de France, S.A. To Plaintiff's First and Second Requests for Production of Documents, dated December 12, 2005 ("EDF Response to Pl. 1st & 2nd RPD") (emphasis added). This request and the response appear in Plaintiff's Attachment 4.

3.    Plaintiff's request to EDF for documents regarding Nadal's EDENOR contract. Plaintiff requested EDF to produce:

"all documents regarding Mr. Nadal's contract or contracts relating to his mission, job and/or position and compensation in Argentina Edenor [*sic*] from 2000 to 2002 [*sic*]."

Pl. Mot. at 19 (citing Pl. Att. 7, Req. No. 25). [This request does not appear in the cited Attachment 7); it appears in Plaintiff's Attachment 5 (Pl. 4th RPD to EDF), Req. No. 25.]

Again, as with the other requests, there is nothing in this request even remotely relating to a request for information about the Argentine government, environmental regulation, or investigations into PCB concerns. This request was also fully complied with, as Nadal's contract for his position at EDENOR was produced as requested (EDF 882-892). Regal Decl. ¶ 3.

4.    Plaintiff's request for EDENOR audit documents. Plaintiff requested:

"all documents regarding the audit(s) conducted of EDENOR in 2000 and 2001."

Pl. Mot. at 20 (citing Pl. Att. 7, Req. No. 30 or 35). [This request does not appear in the cited Attachment 7; it appears in Plaintiff's Attachment 5 (Pl. 4th RPD to EDF), Req. No. 30.]

Plaintiff is flatly wrong in claiming that the requested audits were withheld. Pl. Mot. at 9, 18, 20-21. This request was fully complied with. Defendants responded that, notwithstanding objections as to lack of relevance, they would produce responsive documents, and the audits of EDENOR by Arthur Andersen were produced for the stated periods (EDF 4759-4768). Regal Decl. ¶ 4. Defendants submit that it is Plaintiff's

obligation, before burdening the Court and Defendants with bringing a motion such as this, to at least familiarize herself with the document productions. [10]

### B.    Defendants' Witnesses Properly Answered Plaintiff's Deposition Questions

Defendants' witnesses all testified truthfully at their depositions and properly answered Plaintiff's deposition questions.    Plaintiff's accusation that Defendants' witnesses withheld information about EDENOR is unsupportable.

Nadal's denial of having ever been the subject of criminal proceedings is entirely truthful.    Nothing in Plaintiff's papers indicates otherwise.    In fact, the very document Plaintiff has put forward as the May 2005 "indictment" against three EDENOR employees expressly states that there is no basis ("falta de mérito") for any charge against Nadal and other EDENOR officers.    Pl. Mot. Att. 22 [Dkt. 150-22] (Spanish version); Regal Decl. Att. 1 (certified English translation).    Since Nadal was never the subject of any prosecution -- never arrested, charged, or indicted for any crime -- his negative response at his deposition to the question "Have you ever had any criminal proceedings brought against you?" was true.

Plaintiff's assertion to the contrary, Pl. Mot. at 13, is simply wrong and without authority.    She refers to what she calls an "interrogation," which Defendents presume is a reference to the same mistranslated witness notice she submitted with her prior Motion For Leave, Pl. Prop. Supp. Att. 16.    Nadal cannot reasonably be considered to have been an accused person in a criminal proceeding simply by having been included in a list of over 50 individuals – including the past and present senior officers of EDENOR -- that an investigating magistrate wished to question in connection with alleged environmental

---

[10]  Had Plaintiff's counsel complied with her "meet and confer" obligations (see note 2, *supra*), the prior production of such documents could have been brought to her attention then.

pollution by the company. Defendants submit a certified English translation of the notice as Attachment 2 to the Regal Declaration, along with a copy of the Spanish version. Regal Decl. Att. 2. See Def. Opp. To Motion For Leave at 8-9.

Nor did Nadal "conceal" the existence of any Argentine proceedings. Very early in his two-day deposition, Nadal testified that he had to "defend the company against claims" by Argentine authorities regarding oil in electric transformers that may have posed a risk, and that "we were not guilty." Nadal Tr. 36-39, Pl. Mot. Att. 14. Plaintiff's counsel chose not to explore this issue, asking Nadal no follow-up questions that day or the next. Similarly, Nadal was truthful and did not "conceal" information when he testified at deposition that he had a positive experience at EDENOR. Nadal Tr. 84-86, Pl. Mot. Att. 14. Nadal also testified concerning the EDF investment in EDENOR, including his recommendation to EDF not to buy at the height of the market and the impact of the subsequent Argentine currency devaluation. Nadal Tr. 88-95. Regal Decl. Att. 3.

Nadal answered all questions asked. He was not obliged to do more -- a witness has no obligation to volunteer information that he is not asked. Lattimore v. Nw. Coop. Homes Ass'n, Civ. A. No. 90-0049, 1992 WL 118383, at *8 n.3 (D.D.C. May 19, 1992). Plaintiff cannot hold Defendants responsible for her own counsel's lack of diligence or failure to ask pertinent questions at Nadal's deposition or thereafter.

As to EDF's Yann Laroche, Plaintiff's accusation that this witness gave "evasive and misleading" testimony at his deposition concerning EDENOR and the high esteem in which EDF held Nadal (Pl. Mot. at 15-17), is similarly without basis. First, the accusation assumes again (wrongly and without basis) that Nadal was involved in "criminal activity" and that Nadal's actions in some way caused EDF to incur a financial

13

loss with respect to its investment in EDENOR. As discussed above and in Defendants' opposition to Plaintiff's prior motion, Def. Opp. To Motion For Leave at 14-15, Plaintiff offers no evidentiary support whatsoever for her view, and the known facts are to the contrary, including the deposition testimony she cites.[11]

Second, Laroche's testimony was entirely truthful. Plaintiff has not identified any Laroche testimony that is false. Instead, Plaintiff states, falsely and without any evidentiary support: "Laroche failed to disclose the true reason for Mr. Nadal's leaving Argentina – under a cloud of significant allegations of mismanagement and criminal activity." Pl. Mot. at 15. This is a total fabrication and misrepresents to this Court the timing of the events. Nadal left EDENOR at the end of 2001 to return to a post at EDF in France. There is not a shred of evidence of any "cloud" or "mismanagement" or "criminal activity," much less any suggestion in the record that an Argentine investigation of decades-old PCB practices had anything to do with Nadal's departure or reflected on him negatively in any respect. Rather, as the documents Plaintiff has submitted on this motion reveal, Argentine proceedings indicting three lower-level EDENOR employees -- but expressly excluding Nadal and others -- occurred in May 2005. Even the general witness notice, which listed Nadal among over 50 individuals to be questioned, was not published until May 2003. It is only Plaintiff's made-up story – one that ignores the chronology of events -- that allows for such scurrilous and false accusations against Defendants.

---

[11] Contrary to Plaintiff's representation, it is impossible to read the quoted question to Laroche (Pl. Mot. at 15) as anything other than a question about Gaujacq's background, not Nadal's "prior work history," as Plaintiff states in her brief.

Finally, like Nadal, Laroche had no duty to volunteer any information not sought at his deposition. Plaintiff's failure to pursue topics at deposition and ask appropriate questions is not grounds for sanctioning Defendants.

## II.

## PLAINTIFF'S LACK OF DILIGENCE
## PRECLUDES REOPENING DISCOVERY

As a remedy for Defendants' failure to comply with discovery requests that she never made, Plaintiff asks the Court to reopen discovery and allow her to supplement [again] her opposition to Defendants' long-pending summary judgment motions.[12] But Plaintiff fails to offer any legal support as to why she should be allowed to reopen discovery at this late stage.[13] Plaintiff's motion should be denied, for she cannot meet the standard of diligence required for reopening discovery.

Although Plaintiff has brought her motion pursuant to Rule 37, Fed. R. Civ. P. 37, a motion for reopening discovery is properly brought under Rule 56(f) or Rule 16(b), Fed. R. Civ. P. 56(f), 16(b). Neither rule affords relief to Plaintiff here.

FRCP Rule 56(f) provides that a party may obtain additional discovery after a summary judgment motion has been filed where the non-moving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its

---

[12] Alternatively, Plaintiff requests as a "sanction," that the Court deny Defendants' motions for summary judgment. She offers no support for this extraordinary remedy, it is not permitted under the federal rules and it should be denied. See Part IV, *infra*.

[13] The cases she cites deal only with who should pay for additional discovery once it has been allowed. There is no warrant to impose any costs on Defendants here even if there were to be any additional discovery. Plaintiff's cases are inapposite. In Atkins v. Fischer, Civ. A. No. 98 0800, 2002 U.S. Dist LEXIS 26492 (D.D.C. May 6, 2002), discovery had been reopened because defendant was allowed to interpose a new affirmative defense. Perkinson v. Houlihan's/D.C., Inc., 108 F.R.D. 667 (D.D.C. 1985), aff'd, 821 F.2d 686 (D.C. Cir. 1987), involved egregious discovery abuse, not applicable here.

opposition." Fed. R. Civ. P. 56(f).[14] However, additional discovery will be denied where, as here, the party has failed to pursue discovery diligently. The rule, designed for use normally upon the filing of the summary judgment motion and before the non-movant's opposition, is not properly invoked "'to relieve counsel's lack of diligence'" or to allow parties to "'belatedly devise[] new theories to delay resolution of long-pending dispositive motions.'" Kakeh v. United Planning Org., Inc., 537 F. Supp. 2d 65, 71 (D.D.C. 2008) (quoting Berkeley v. Home Ins. Co., 68 F.3d 1409, 1414 (D.C. Cir. 1995)); see also Rowland v. Walker, 245 F. Supp. 2d 136, 140 (D.D.C.), aff'd, 2003 WL 21803321 (D.C. Cir. Jul. 31, 2003) ("A request to postpone resolution of a motion for summary judgment when the party opposing the motion has failed to avail himself of discovery to secure the information should be denied.").

Similarly, under Rule 16(b), Fed. R. Civ. P. 16(b), in order not to "reward the indolent and the cavalier" litigant, courts require a party to explain "why [he wasn't] able to come up with this material before." Dag Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 104, 105 (D.D.C. 2005) (Rule 16(b) motion denied where plaintiff had notice of issue during discovery period but failed to act); see also Hussain v. Nicholson, 435 F.3d 359, 364 (D.C. Cir.), cert. denied, 127 S. Ct. 494 (2006) (district court properly refused to reopen discovery in employment discrimination case where plaintiff made motion three months after discovery closed and several weeks after employer moved for summary judgment).

---

[14] In any event Plaintiff has not supported her request to reopen discovery as required by Rule 56(f), which requires an affidavit stating the reasons why the party is otherwise unable to present the necessary opposition to summary judgment. Scott-Blanton v. Universal City Studios Prods. LLP, 246 F.R.D. 344, 346-47 (D.D.C. 2007).

In this case, Plaintiff had every opportunity to pursue discovery regarding the EDENOR matters she now so belatedly raises, which took place between 2003 and 2005. In 2005 and 2006 she conducted extensive document discovery (578 separate numbered requests yielding over 13,000 pages of documents), examined Nadal for two full days (April 2006) and subsequently examined Laroche in Paris. Plaintiff was on notice of the Argentine proceedings at least as early as April 2006, when Nadal testified that he had to "defend the company against claims" by Argentine authorities about oil in electric transformers that may have posed a risk, and that "we were not guilty, " Nadal Tr. 36-39, Pl. Mot. Att. 14, but she elected not to inquire further. When Defendants moved for summary judgment in fall 2006, Plaintiff did not seek a continuance to permit further discovery under FRCP Rule 56(f) but filed her opposition on November 20, 2006.

Plaintiff's failure to pursue discovery regarding these claims -- or conduct her own timely investigation of the public record information she has now "discovered" [15] – indicates that either she knew this information was irrelevant and therefore unworthy of follow-up (see Part III, *infra*) or she viewed it as pertinent but neglected to act upon it during the discovery period. Neither scenario supports reopening discovery now.

Plaintiff's motion to reopen discovery, some 21 months after the close of discovery and 17 months after filing her opposition to summary judgment, should be denied based on her complete lack of diligence. See Berkeley, 68 F.3d at 1414-15 (discovery not reopened where party had evidence of alleged misrepresentation prior to filing opposition to summary judgment); Kakeh, 537 F. Supp. 2d at 71 (no Rule 56(f)

---

[15]  While Plaintiff claims that "quite by accident" she obtained "newly learned" information about Nadal's tenure at EDENOR (Pl. Mot. at 1-2), she neglects to say how or when she uncovered this publicly available information from 2005 or why she did not raise this issue long ago since it was publicly available.

relief where plaintiff made no effort to pursue discovery of witness referred to in deposition testimony); Minebea Co. v. Papst, 221 F.R.D. 11, 12 (D.D.C. 2004) (Rule 56(f) motion denied where party managed to file lengthy opposition papers containing numerous exhibits ).

**III.**

**THE INFORMATION THAT PLAINTIFF CLAIMS SHE
NEEDS TO INVESTIGATE IS NOT RELEVANT**

Plaintiff's motion should be denied for the additional reason that the "new" facts she seeks to import into this case are not relevant to the summary judgment motions. Her argument for relevance is implausible and based on rank speculation and falsity.

There is good reason why Plaintiff did not proceed under Rule 56(f) – under Rule 56(f), she would have to meet the burden of establishing that the facts she seeks to discover are "essential" to her opposition to summary judgment, Fed. R. Civ. P. 56(f), and she would, by affidavit, have to state concretely why additional discovery is needed to oppose a motion for summary judgment. Messina v. Krakower, 439 F.3d 755, 762 (D.C. Cir. 2006). See also Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999) (burden on non-moving party to identify facts to be discovered that would create triable issue). Where, as here, Plaintiff's theory of why the requested facts will defeat summary judgment is "implausible" and "does not rise above mere speculation," the additional discovery should be denied. Scott-Blanton, 246 F.R.D. at 348.

Plaintiff's web of misrepresentations and speculations attempts to create issues of fact where none exist. First, she continues to insist (as in her prior motion) that Nadal led EDENOR "into a criminal scandal" (Pl. Mot. at 11) when she knows full well – because

18

her own documents so prove -- that he was merely one of many individuals initially noticed and that the Argentine authorities made a specific finding of "no cause" to proceed with respect to him. See Def. Opp. to Motion For Leave [Dkt. # 147] at 4-9. Similarly, Plaintiff proclaims again without a shred of supporting fact (as she did in her prior motion) that Nadal in some way "mismanaged" EDENOR, Pl. Mot. at 7, 10. See Def. Opp. to Motion For Leave [Dkt. # 147] at 11-16. She then theorizes that this fabricated "mismanagement" by Nadal was the cause of (1) the Argentine investigation into alleged environmental pollution by EDENOR and (2) EDF's financial loss on its sale of its equity interest in EDENOR (Pl. Mot. at 11) . However:

(1)    The documents Plaintiff has put forward concerning the Argentine investigation into alleged pollution by EDENOR do not in any way implicate Nadal or the management of the company while he was CEO. In fact, rather than supporting her implicit argument that PCB use and contamination was a new problem caused by Nadal after his arrival at EDENOR in 1999, the May 2005 "indictment" document (implicating others, not Nadal) expressly notes: "PCBs have been used as a refrigerant in this branch of industry for a long time prior to this inquiry." Regal Decl. Att. 1, Clarifying Data (a), p.3 (certified English translation); Pl. Mot. Att. 22 (Spanish version). And her October 2000 press article in Clarin reports that EDENOR and the other Argentine electric company were phasing out use of PCBs as a coolant in transformers, as was happening in other countries as well. Pl. Mot. Att. 15 (Clarin article October 20, 2000).[16]   The Clarin article includes a statement made by Nadal (incomprehensible in Plaintiff's translation)

---

[16]  Plaintiff has failed to present the original Spanish version of that article, submitting instead a garbled English translation. Defendants submit for the Court the original Spanish version and a certified translation thereof. Regal Decl. Att. 4.

that "we still have 39 transformers with PCB, and we will remove them by the end of November." Regal Decl. Att. 4 (penultimate paragraph). Thus, far from evidencing any "mismanagement" on the part of Nadal, Plaintiff's documents show Nadal, as the then-current senior executive, taking steps to manage EDENOR's environmental activities and exposures effectively.

(2) The French Commission Opinion on EDF's sale of its interest in EDENOR says nothing about EDENOR's having been mismanaged by Nadal or any of its managers and states the French government's view that the reduction in value of the EDENOR holding was due to the extreme devaluation of the Argentine peso at the beginning of 2002 and the Argentine government's freeze on energy rates. Commission Opinion at II, pp. 1-2, Pl. Mot. Att. 12 (French version); Pl. Mot. Att. 13 (Plaintiff's English translation).

Then, notwithstanding her own "evidence," Plaintiff nonetheless completes her speculative ramblings with the ungrounded and chronologically unsupportable[17] theory, stated as fact, that "the true reason for Mr. Nadal's leaving Argentina [was] allegations of mismanagement and criminal activity." Pl. Mot. at 10, 15. See also Pl. Mot. at 3 (Nadal left EDENOR "in shame and under criminal and financial investigation"), Pl. Mot. at 5 (Nadal was sent to the United States to "perhaps hide him" after "multiple criminal inquiries resulted while he was in charge in Argentina"). This is sheer fiction. Plaintiff does not even pretend to offer any evidence to support these outlandish claims.

---

[17] The Argentine "indictment" was issued in May 2005. Pl. Mot. Att. 22; Regal Decl. Att. 1. Nadal left EDENOR in 2001. The timing of the Argentine proceeding shows that it could not have been a cause of Nadal's leaving EDENOR, as discussed in detail in Defendants' prior papers. Def. Opp. To Motion For Leave [Dkt. # 147] at 10-11.

Finally, having manufactured her own facts, Plaintiff then suggests how such facts might be relevant to her claims before this Court. All of this, according to Plaintiff, should be taken to mean that Nadal was not qualified to replace Plaintiff as President of EDFINA and did not deserve to retain his top "R-1" ranking among EDF executives, thus purportedly proving her Title VII and Equal Pay Act claims.[18] Pl. Mot. at 5-6.

Plaintiff's theory – that Nadal was removed from EDENOR because of criminal acts he did not commit and financial woes he was not responsible for – is at a minimum "implausible" and "does not rise above mere speculation." As such, it fails to satisfy FRCP Rule 56(f). Scott-Blanton, 246 F.R.D. at 348. Moreover, because sheer speculation and conjecture are insufficient to defeat Defendants' motions for summary judgment, allowing Plaintiff to proceed would be futile. Brown v. Brody, 199 F.3d 446, 459 (D.C. Cir. 1999) ("mere speculations" insufficient to create genuine issue of fact); Hazward v. Runyon, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (conjecture and surmise will not defeat summary judgment).

Perhaps most telling, in Plaintiff's zeal to defeat summary judgment, she has defeated her own arguments of sex discrimination. In order to prevail on her sex discrimination claim, Plaintiff must establish that the true reason that she was replaced by Nadal and then terminated was because of her gender. See, e.g., Gaghan v. Guest Servs., Inc., No. Civ. A. 0301096, 2005 WL 3211591, at *6 (D.D.C. Oct. 26, 2005) (defendants' legitimate, non-discriminatory reason not a pretext unless it is shown both that the reason was false and that discrimination was the real reason). But Plaintiff's argument that "the

---

[18] When discussing her Equal Pay Act claim, Plaintiff repeatedly refers to Nadal as "the person EDF chose as the comparator." Pl. Mot. at 2, 5, 6. This is yet another instance of Plaintiff playing fast and loose with the facts – she herself named Nadal as her EPA comparator in her Complaint. Compl. ¶¶ 332-33 [Dkt. #1].

true <u>reason</u> for Mr. Nadal's leaving Argentina [was] allegations of mismanagement and criminal activity," and that he was sent to the US to "hide him," Pl. Mot. at 5, 10 (emphasis added), simply negates her claim that the "true reason" EDF sent him to the US to replace Gaujacq was because he is a man.

Similarly, Plaintiff's Equal Pay Act claim fails, *inter alia,* so long as the pay differential between her and Nadal was based on a *bona fide* pay grade level system. <u>See</u> <u>Hatcher-Capers v. Haley</u>, 762 F. Supp. 393, 399 (D.D.C. 1991). Plaintiff's argument apparently is that EDF should have realized that Nadal was purportedly overpaid and undeserving of his "R-1" rating due to either the loss on EDF's sale of its EDENOR stock in 2005 or the Argentine investigation of alleged environmental pollution by EDENOR. Even assuming hypothetically that to be true, it does not in any way suggest that EDF's pay grade level system was not *bona fide* or that Nadal was not properly rated an "R-1" when he was appointed to succeed Plaintiff or thereafter. That appointment, of course, occurred years after Nadal's EDENOR position. It is not a court's job "to second-guess the employer's business judgment" in paying one employee more than another based on any reason other than sexual discrimination. <u>Dey v. Colt Constr. & Dev. Co.</u>, 28 F.3d 1446, 1462 (7th Cir. 1994).

Thus, the Court should refuse to reopen discovery for the additional reason that the information Plaintiff seeks to investigate through further discovery cannot possibly lead to "facts essential to justify the party's [here, Plaintiff's] opposition" to Defendants' pending motions. Fed. R. Civ. P. 56(f). Rather, pursuit of such information would be an untimely detour into irrelevant, immaterial topics and would delay resolution of this matter.

# IV.

## PLAINTIFF IS NOT ENTITLED TO SANCTIONS

Under FRCP Rule 37, Fed. R. Civ. P. 37, Plaintiff is not entitled to either of the sanctions she proposes: requiring Defendants to pay the expenses of conducting reopened discovery or denying Defendants' motions for summary judgment. While the district court has broad discretion to impose sanctions under Rule 37 for discovery violations, Bonds v. Dist. of Columbia, 93 F.3d 801, 807 (D.C. Cir. 1996), Defendants complied with all requested discovery, so there are no discovery violations to sanction.

As a sanction under Rule 37, where the court has ordered a recalcitrant party to comply with discovery, the rule provides that the court may order that party to pay the opposing party's "reasonable expenses incurred in making the motion" – not the expenses of conducting the discovery. Fed. R. Civ. P. 37(a)(5)(A). Only if the non-moving party fails to obey the court's order may the court then, in its discretion, provide additional relief to the moving party as a sanction, such as payment of reasonable expenses or other orders affecting the litigation. Fed. R. Civ. P. 37(b)(2)(A), (C). Here, Defendants did not fail to answer any questions or permit inspection of any requested documents, nor did they fail to comply with any discovery order. Therefore, no sanctions would be warranted even if the Court were to permit the reopening of discovery.

Moreover, Rule 37 requires that the moving party have "conferred or attempted to confer" with its opponent, and it prohibits the award of expenses to a moving party who has failed to do so. Fed. R. Civ. P. 37(a)(1), (a)(5)(A). Plaintiff concedes that she did not attempt such a conference (Pl. Mot. at 2), see note 2, *supra*, and therefore she would not be entitled to an award of expenses in any event.

Finally, where, as here, a party is forced to defend against a Rule 37 motion that is not justified, the non-moving party is itself entitled to protective relief. Fed. R. Civ. P. 37(a)(5)(B). Upon denial of Plaintiff's Rule 37 Motion to Compel, Defendants intend to ask the Court for an award of their expenses, including attorneys' fees, incurred in opposing Plaintiff's wholly unjustified motion to compel.

## CONCLUSION

Plaintiff's motion to reopen discovery and for sanctions should be denied because Defendants have fully complied with their discovery obligations and because Plaintiff's arguments are speculative and irrelevant. Plaintiff's pending motion for leave to supplement her opposition to summary judgment [Dkt. #145] should likewise be denied for the reasons stated in Defendants' filing in opposition thereto [Dkt. #147]. Finally, Defendants respectfully urge the Court to resist any further efforts by Plaintiff to forestall a resolution of Defendants' pending summary judgment motions. Following oral argument, the Court should grant Defendants' motions for summary judgment, for all of the reasons stated in their moving and reply papers in support of thereof.

Dated: May 8, 2008

Respectfully Submitted,

_____ /s/ _____
Dorothea W. Regal, *D.C. Bar No. NY0064*
Laura B. Hoguet, *D.C. Bar No. 200915*
HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, New York 10016
(212) 689-8808
*Counsel for Defendants Electricité de France, S. A. and Electricité de France International North America, Inc.*

*Of Counsel*:
Kathleen L. Lowden

24

Morgan D. Hodgson, *D.C. Bar No. 186521*
David A. Clark, *D.C. Bar No. 473279*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

*Counsel for Defendant Christian Nadal*