IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ | ) |
| Plaintiff, | ) |
| v. | ) No. 1:05CV0969 (HHK) |
| ELECTRICITE DE FRANCE INTERNATIONAL NORTH AMERICA, INC., et al. | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL AND FOR SANCTIONS**

The plaintiff, Catherine Gaujacq ("Ms. Gaujacq"), by counsel, hereby responds to Defendants' Opposition to Motion for Leave to Supplement Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Plaintiff hereby incorporates by reference the arguments contained in the Motion and Memorandum in Support of Motion to Compel and for Sanctions, previously filed with this Court on April 23, 2008.

Defendants concealed information relevant to Ms. Gaujacq's claims and want this information to remain hidden from the Court. It was not until Ms. Gaujacq discovered EDF's August 10, 2007 Form 6-K filed with the Securities and Exchange Commission ("SEC") for the United States initial public offering of EDENOR that Ms. Gaujacq scratched the very surface of the still concealed criminal investigation against EDENOR, resulting from Mr. Nadal's tenure in Argentina. Defendants had an opportunity to fully disclose this information but instead, realizing it would be fatal to their claims, chose to hide it. What Ms. Gaujacq has uncovered is the very tip of the iceberg, and even the initial glimpse of this information makes clear that it is

relevant to this dispute and must be fully unearthed. Defendants' claim that Plaintiff seeks to delay resolution of their Summary Judgment motions blatantly misrepresents what Plaintiff requests – that a full and accurate record be presented to and considered by the Court.

The information Ms. Gaujacq requests relates to the qualifications and performance of the person EDF chose as the comparator to Ms. Gaujacq on all aspects of her discrimination, Equal Pay and retaliation claims – Mr. Christian Nadal. If the information had been discovered, or is fully discovered now, it would defeat the very heart of Defendants' defenses – that Mr. Nadal was more qualified than Ms. Gaujacq, and that Mr. Nadal's performance record was far superior to that of Ms. Gaujacq's, justifying his significantly higher ranking, higher pay, greater budget and the replacement of Ms. Gaujacq in the United States at EDFINA by Mr. Nadal because of his superior financial connections and ambassador qualities, gained from his "distinguished career." The information virtually proves that the proffered reasons for Ms. Gaujacq's demotion and ultimate termination, were pretextual in comparison to how EDF handled Mr. Nadal's departure in shame and under criminal and financial investigation, from his earlier position in Argentina.

Defendants apparently recognize this information is fatal to their claims as they scramble to justify hiding it from Plaintiff and the Court. Defendants knew the responsive documents and information would be housed abroad and would be extremely difficult to obtain through ordinary discovery methods. Plaintiff, however, learned that Defendants were not candid or forthcoming with this Court and with Plaintiff, have hidden key information in a manner that defeats the very purpose of discovery under the Rules of this Court, and have permitted witnesses to provide false and evasive testimony in an effort to continue to hide the truth of Mr. Nadal's tenure in Argentina, a tenure which resulted in criminal prosecutions and a billion dollar loss to EDF.

Mr. Nadal was not appointed at the end of Ms. Gaujacq term. Ms. Gaujacq was demoted to allow EDF to assign Mr. Nadal to EDFINA, and Plaintiff had a three year contract to serve as EDFINA Vice-President starting June 1, 2004 as a direct report to Mr. Nadal. When Plaintiff complained about Mr. Nadal's discriminatory acts based on her gender, the company retaliated against her by demoting her, demanding her immediate return to Paris, and, ultimately terminating her. *See* Complaint.

The events and criminal actions Mr. Nadal was involved with took place starting October 2000, Mr. Nadal was identified along with 50 EDENOR officers and managers in May 24, 2003, and the Judgment of the criminal and civil case in Argentina took place in May 2005. Att. 18, Translated at Att. 19; *see also* Att. 22, Translated (in part) at Att. 23.[1] Thereafter, EDF announced its agreement to sell EDENOR to Groupo Dolphin for $100 million in July 2005, and the remaining shares through EDENOR IPO in 2007 both in Argentina and in the USA. *See* Att. 21.

## I.    DEFENDANTS' CLAIM THAT PLAINTIFF WAS NOT DILIGENT DURING DISCOVERY IS REBUTTED BY THE RECORD AND LACKS MERIT

Plaintiff adequately sought the information Defendants withheld, and her request for additional discovery and sanctions is properly before the Court. Defendants claim that a motion for reopening discovery must made under Rule 56(f) or Rule 16(b), and that Plaintiff has no authority to justify the sanctions she requests in her Motion. While Plaintiff could also make her Motion under these Rules, she is not precluded from moving for the relief sought under Federal Civil Procedure Rule 37.

---

[1] References to "Attachment(s)" refer to the Attachments in Plaintiff's Memorandum in Support of the instant Motion.

Under Rule 56(f), motions for continuance are granted "as a matter of course" where the party moving for a continuance diligently pursued discovery of the evidence in question. *Lowe v. Winter*, 2007 U.S. Dist. LEX 49962, *3-4 (D.C. 2007, Huvelle, J.).[2] Contrary to Defendants' claim that an affidavit is required under Rule 56(f), the Court has ruled that no affidavit is necessary where it received sufficient notice of the need for further discovery, and that pleadings, in addition to other items, may be considered "an adequate substitute for a Rule 56(f) affidavit." *Id.* at * 8 *citing First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F. 2d 1375, 1380-81 (D.C. Cir. 1988).[3]

Under any analysis this Court has the authority to fashion an appropriate remedy to address the evasive conduct of the Defendants. "The [D]istrict [C]ourt has broad discretion in managing discovery, and '[t]his deference [accorded by the circuit] extends to the [D]istrict [C]ourt's imposition of discovery sanctions.'" *Henry v. Onsa, et al.*, 2008 U.S. Dist. LEXIS 14217, *10 (D.C. 2008, Robinson, J.)(Citations omitted.). The Court has the ability to fashion and enforce a discovery sanction commensurate with the offending party's misconduct. *See generally Id.* This is particularly true here, as Defendants' refusal to adequately respond to

---

[2] Similarly, Motions under Federal Rule 16(b) are granted when the movant demonstrates good cause for the amendment of the Scheduling Order.

[3] *Although First Chicago* involved the conversion of a Rule 12(b)(6) and Rule 12(g) Motion to Dismiss to a Rule 56 Motion for Summary Judgment, the central holding of this case is applicable here --where Plaintiff has notified the Court that additional discovery is required prior to the disposition of Defendants' Motion for Summary Judgment, the Court has discretion to allow the additional discovery.

However, Plaintiff's counsel is submitting the necessary affidavit with this Reply. Att. 24.

Plaintiff's discovery requests and inquiries at depositions demonstrate a pattern of willfully evasive responses.

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of the opportunity to use the course as a serious dispute-settlement mechanism.
>
> *Perkinson, et al. v. Gilbert/Robinson, Inc., et al.*, 821 F.2d 686, 691 (D.C. Cir. 1987)(Citations omitted.).

Defendants' reliance upon *Rowland v. Walker*, 245 F. Supp. 2d 136, 140 (D.D.C. 2003) and *Hussain v. Nicholson,* 435 F.3d 359, 364, is misplaced. In *Rowland*, the plaintiff motioned the Court under Rule 56(f) to take discovery after the filing of defendants' motion for summary judgment to dismiss his race and gender discrimination claims. *See Id.* The plaintiff sought to obtain affidavits from a witness who had already been deposed and from other unnamed co-workers, who would allegedly state he was "fully successful" in his job duties. *Id.* at 139. Plaintiff had never previously sought or requested the information. *Id.* The Court concluded the "manner in which one person rated him on one job is irrelevant to how someone else rated him on another job" and that the affidavits were not relevant. Therefore, the Court refused to allow Plaintiff the additional discovery. Similarly, *Hussain*, 435 F.3d at 362, involved a claim of discrimination based on race and national origin. Although plaintiff's counsel took some depositions in connection with the proceedings before the E.E.O.C., he did *"no discovery at all"* during the time allotted for discovery by the District Court. *Id.* at 364 (Emphasis added.)

Unlike *Rowland* and *Hussein*, Ms. Gaujacq was diligent during discovery in this matter, she previously requested the information that should have led to the disclosures she now seeks, and the documents and testimony are relevant to the determination of this matter. There is a genuine issue of material fact as to why Mr. Nadal, particularly with his history, would justify a

5

ranking of R-1, the highest at EDF, while Ms. Gaujacq, with a virtually spotless career, was ranked only R-3, was paid substantially less than Mr. Nadal, and was given a budget half that of Mr. Nadal.

Contrary to Defendants' claims in their Opposition, Ms. Gaujacq did not allege discrimination based on gender because a man succeeded her. *See* Defs.' Br. at 22. Since the inception of the litigation, Ms. Gaujacq has contended that, after a demotion from President to Vice-President with a contract for three years to remain in the USA, Ms. Gaujacq complained to the company that Mr. Nadal discriminated against her because of her gender and was paid three times her compensation to take a position she had held successfully for four years. *See* Complaint. Ms. Gaujacq was terminated in retaliation for making the complaint. *Id*.

Contrary to Defendants' claim, Ms. Gaujacq did not have knowledge of the information she know seeks and could not have requested additional information during discovery.

## II.   DEFENDANTS DID NOT COMPLY WITH THEIR DISCOVERY OBLIGATIONS AND CANNOT FAULT PLAINTIFF FOR FAILING TO PURSUE INFORMATION THEY INTENTIONALLY WITHHELD

Defendants attempt to reward themselves for their own malfeasance by claiming Ms. Gaujacq could have decoded their evasive discovery responses and that they produced all the documents they deemed relevant to her requests. This is contrary to the very purpose of discovery in litigation and to the Rules of the Court. Similarly, Defendants' claim that Ms. Gaujacq had plenty of time to develop a full record ignores that defendants omitted information or were vague and evasive in their responses. The length of time between the close of the discovery and the instant motion is irrelevant because the Court is entitled to have a full and accurate record without regard to the passage of time. Moreover, the Court has not yet ruled on the Defendants' Motions for Summary Judgment.

### A. Plaintiff Served Multiple Requests for Documents that Required Defendants to Produce the Withheld Information

Attempting to hide behind their own evasive conduct, Defendants attempt to fault Plaintiff and punish her for not knowing the breadth and scope of information and documents Defendants purposely withheld from her and the Court. Contrary to Defendants' claim and, as outlined in her opening Memorandum, Plaintiff served multiple requests that required Defendants to produce the documents withheld. Had the documents been produced, Ms. Gaujacq would have conducted further inquiry during the discovery period.

A party to whom discovery is propounded "must provide true, explicit, responsive, complete, and candid answers." *Equal Rights Ctr. v. Post Props., Inc.,* 522 F. Supp. 2d 1, 2007 U.S. Dist. LEXIS 53462 (D.D.C. 2007) (quoting *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996)).

One of the primary "purpose[s] of discovery is to make a trial 'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible' . . . ." *Id.* (quoting *United States v. Proctor & Gamble*, 356 U.S. 677, 683, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)). Sanctions are appropriate against a party who "produced only vague, evasive, confusing, and cryptic responses to some of the interrogatories and no responses to others." *Id.*

Despite her multiple deposition questions to several deponents and her written discovery requests set forth in her Memorandum in Support of the instant Motion to Compel, Defendants were intentionally evasive in their responses. Very simply, Plaintiff was not aware of even the existence of the information she just discovered until she happened upon EDENOR's Form 6-K Securities and Exchange filing, dated August 10, 2007, Attachment 21. Through this document,

Plaintiff discovered the PCB criminal case and the financial mismanagement of EDENOR under Mr. Nadal's tenure as CEO.  Att. 21 at 77.

Defendants' contend that requests to Mr. Nadal and to EDF seeking documents pertaining to Mr. Nadal's performance were fully responded to by them.  Defs.' Br. at 9 (citing the Requests for Production to Mr. Nadal and EDF.)  Yet, EDF did not produce one written (formal or informal) evaluation of Mr. Nadal over his tenure as an employee of EDF and its affiliates, EDENOR & EDFINA.  Defendants erroneously claim none of Plaintiff's discovery requests or questions at deposition would have generated the information relating to EDENOR that Ms. Gaujacq recently discovered.

Unbelievably, Defendants now contend that Ms. Gaujacq had an opportunity to learn of the criminal proceedings because Mr. Nadal stated in his testimony that: (1) he had to defend the company against claims; and (2) that "we were not guilty."  Defs.' Br. at 17.  Defendants completely and utterly ignore Mr. Nadal's subsequent testimony where Plaintiff's counsel asked additional questions in response to Mr. Nadal's testimony.  Mr. Nadal was evasive and misleading in his responses, clear now that he was concealing the criminal proceedings.  Mr. Nadal refused to even acknowledge the situation with EDENOR, its criminal proceedings, or the newly discovered resulting indictments, as a "dispute."  When Plaintiff's counsel followed up on Mr. Nadal's responses, he replied, "I did not say 'dispute.'  I say these *facts*.  Let us say these *facts* . . . ."  Nadal Dep., Att 14 at 39 (Emphasis added).  During his deposition, Mr. Nadal was evasive in his responses and was not candid or forthcoming with responsive information.  *See* Att. 14  at 36-39.  Despite his involvement in the Argentinean judicial interrogation, Mr. Nadal categorically denied that he had been involved in a criminal proceeding when he was deposed on April 4, 2006.  Astonishingly, when asked if he had ever had any criminal proceedings brought

8

against him, (and while testifying individually and as the corporate designee), he unqualifiedly replied "No." Att. 14 at 8.

Ignoring the chronology of events fully set forth in Ms. Gaujacq's Memorandum in Support of the instant Motion, Defendants' also contend the EDENOR's troubles began after Mr. Nadal had departed from Argentina. However, criminal charges against Mr. Nadal were brought on May 30, 2003 for events that occurred in 2000, Attachment 18. The events and criminal actions Mr. Nadal was involved with took place starting October 2000, Mr. Nadal and EDENOR were subject to the criminal proceedings, along with EDENOR officers and managers on May 30, 2003. *See* Att. 22 as translated at Att. 23. Mr. Nadal was not a mere witness in the Argentine criminal proceedings. He was under investigation because there was reasonable suspicion he was involved in criminal activities, along with a long list of individuals. Atts. 22 & 23.

Mr. Laroche, the Deputy General Manager of EDF, who was deposed in Paris, France on April 21, 2006, repeatedly testified that Mr. Nadal's evaluations were positive, even systematically positive. *See* Laroche Dep., Att. 11 at 49-53. However, Mr. Laroche, as the second highest ranked officer of EDF and a member of the governing Committee of EDF, had to have been aware that, in June, 2003, an Argentinean federal judge investigated Mr. Nadal for criminal charges and found three EDENOR managers criminally liable: Daniel Lello, Luciano Pironio, and Julio Marquez, Att. 22, as translated at Att. 23

A witness has no obligation to volunteer information he is not asked, but has obligation to tell the truth under oath, and Mr. Nadal – as well as Mr. Laroche – purposefully concealed relevant information during their depositions, trying to avoid questions and facts crucial to their claim that Mr. Nadal was more qualified than Ms. Gaujacq based on his EDENOR experience.

9

B.  **The Information Sought is Relevant to the Pending Motion for Summary Judgment and to Any Resolution of this Matter**

Both Mr. Nadal and EDF concealed relevant information they knew to be fatal to their claim, attempting to classify Mr. Nadal's employment history with EDF as far superior (in fact, justifying two ranks higher) to Ms. Gaujacq's. Instead, Mr. Nadal's employment "history" was significantly inferior. This evidence and these material facts were purposely concealed by the Defendants during discovery and create a significant jury issue as to Mr. Nadal's qualifications to as compared to Ms. Gaujacq's, based on his historical performance with EDENOR in Argentina. The evidence strongly suggests that Defendants' motions for Summary Judgment should be denied and that a genuine jury issue exists with EDF's self-described comparator to Ms. Gaujacq, Mr. Nadal.

Moreover, the seriousness and egregiousness of Mr. Nadal's conduct while in Argentina, when viewing any conduct Defendants contend Ms. Gaujacq guilty of in attempting to justify her removal from EDF, demotion, and subsequent termination, cannot compare. Not removing Mr. Nadal from a position for far more serious conduct, while contending minimal conduct by Ms. Gaujacq, even if true, renders Ms. Gaujacq's removal highly suspect and presents a compelling jury issue on the true motivations – discrimination and retaliation.

Similarly, in comparing the Equal Pay claim and the ranking system testified to by Yann Laroche, there is a genuine issue of material fact as to why Mr. Nadal, particularly with his history, would justify a ranking of R-1, the highest at EDF, while Ms. Gaujacq, with an impeccable career, was ranked only R-3, was paid substantially less than Mr. Nadal and was given a budget half that of Mr. Nadal. By this Motion, Ms. Gaujacq seeks full and complete disclosure of the criminal investigation and financial information surrounding EDENOR, and all facts relating thereto, in response to her discovery requests, to reopen the three depositions of

Mr. Nadal, Mr. Laroche, who is the Deputy General Manager of EDF, and EDF's corporate designee, and to stay any ruling on summary judgment so that the Court can consider any new information raised by this revelation.

Most telling however, is that even after all of Mr. Nadal's misconduct in Argentina, EDF maintains that Ms. Gaujacq's alleged conduct, which, in comparison to Mr. Nadal's activities would be inconsequential, warranted a sanction more severe than anything given to Mr. Nadal. Even though she had not mismanaged her branch or caused it to become embroiled in a criminal and financial scandal, like Nadal, EDF gave her its second most severe "sanction" by automatically retiring her:

> Q: Now you could have terminated Catherine Gaujacq's employment and allowed her to still get her, pension; is that correct?
>
> A: Well, in the scale of sanction, the worse possible sanction is dismissal without pension, which means that the person in question would not perceive any pension whatsoever. The level just underneath that is automatic retirement, where the pension is preserved, but can only be paid to the party concerned when he or she reaches the normal retirement age.
>
> Q: And what did you do in Catherine Gaujacq's case?
>
> A: Her sanction consisted in automatically retiring her.

Laroche, Att. 11 at 99.

Thus, any claim by EDF that Ms. Gaujacq was terminated for anything other than retaliation and discrimination is rebutted by a simple comparison between her work history, performance, and termination, with Mr. Nadal's work history, performance and "horizontal" move to replace her as President of EDFINA. A jury can easily deduce the true motivations.

11

## **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in her Motion to Compel and for Sanctions, Plaintiff's Motion to Compel should be granted. Defendants should be required to respond fully and completely to all outstanding discovery requests no later than June 9, 2008, including delivering copies of all responsive pleadings and documents. Further, leave should be granted for continuation of the depositions of Mr. Nadal, Yann Laroche, individually, and as corporate designees of EDF, as described in her Memorandum in Support of Motion to Compel and for Sanctions and in her Reply in Support of her Motion to Compel and for Sanctions, and Ms. Gaujacq should be granted leave to supplement her summary judgment filings or dismiss the summary judgment motion, and set the matter for trial.

May 19, 2008                              Respectfully submitted,

/s/ ELAINE CHARLSON BREDEHOFT
_____
Elaine Charlson Bredehoft
D.C. Bar No. 441425
Carla D. Brown
D.C. Bar No. 474097
Kathleen Z. Quill
D.C. Bar No. 489079
CHARLSON BREDEHOFT & COHEN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800
(703) 318-6808 (facsimile)

*Counsel for Plaintiff,*
   *Catherine Gaujacq*

## CERTIFICATE OF SERVICE

I hereby certify that on the19th day of May 2008, a copy of Plaintiff's Reply Memorandum in Support of Motion to Compel and for Sanctions was filed electronically via ECF, to:

>Laura B. Hoguet, Esq.
>Dorothea W. Regal, Esq.
>HOGUET NEWMAN & REGAL, LLP
>10 East 40th Street
>New York, NY 20016
>
>*Counsel for Defendants EDF, SA
>     and EDFINA*
>
>Morgan D. Hodgson, Esq.
>David A. Clark, Esq.
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036
>
>*Counsel for Defendant Christian Nadal*
>
>
>         /s/ ELAINE CHARLSON BREDEHOFT
>  _____
>Elaine Charlson Bredehoft
>D.C. Bar No. 441425
>CHARLSON BREDEHOFT & COHEN, P.C.
>11260 Roger Bacon Drive, Suite 201
>Reston, Virginia 20190
>(703) 318-6800
>(703) 318-6808 (facsimile)
>
>*Counsel for Plaintiff,
>   Catherine Gaujacq*