IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHERINE GAUJACQ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELECTRICITE DE FRANCE )<br>  INTERNATIONAL NORTH AMERICA, )<br>INC., ELECTRICITE DE FRANCE, S.A. )<br>and CHRISTIAN NADAL, )<br>)<br>Defendants. )<br>_____) | No. 1:05CV0969 (HHK) |

### DEFENDANTS' NOTICE OF ADDITIONAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants, Electricité de France, S.A., Electricité De France International North America, Inc., and Christian Nadal, by counsel, hereby bring to the attention of the Court two recent court decisions issued by the United States Court of Appeals for the District of Columbia Circuit that are relevant to Defendants' Motions for Summary Judgment filed October 16, 2006.

Defendants will rely on these recent decisions in further support of their Motions for Summary Judgment and intend to refer to them in the Hearing on Summary Judgment scheduled for May 30, 2008.

They are:

1. <u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d 490 (D.C. Cir. 2008), a copy of which is attached hereto as Attachment 1; and

2. <u>Patterson v. Johnson</u>, 505 F.3d 1296 (D.C. Cir. 2008), a copy of which is attached hereto as Attachment 2.

May 27, 2008

        Respectfully Submitted,

        _____/s/_____
        Laura B. Hoguet, *D.C. Bar No.200915*
        Dorothea W. Regal, *D.C. Bar No. NY0064*

        HOGUET NEWMAN REGAL & KENNEY, LLP
        10 East 40th Street
        New York, New York 10016
        (212) 689-8808
        *Counsel for Defendants Electricité de France, S. A. and Electricité de France International North America, Inc.*

        Morgan D. Hodgson, *D.C. Bar No. 186521*
        David A. Clark, *D.C. Bar No. 473279*

        STEPTOE & JOHNSON LLP
        1330 Connecticut Avenue, N.W.
        Washington, D.C. 20036
        (202) 429-3000
        *Counsel for Defendant Christian Nadal*

# Attachment 1

**Westlaw.**

520 F.3d 490                                                                                                                           Page 1
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815
**(Cite as: 520 F.3d 490)**

▷

Brady v. Office of Sergeant at Arms
C.A.D.C.,2008.

United States Court of Appeals,District of Columbia Circuit.
Standley BRADY, Appellant
v.
OFFICE OF the SERGEANT AT ARMS, United States House of Representatives, Appellee.
No. 06-5362.

Argued Nov. 19, 2007.
Decided March 28, 2008.

**Background:** Demoted African-American supervisory employee of United States House of Representatives' Office of the Sergeant at Arms sued Office, alleging employment discrimination and hostile work environment in violation of Title VII. The United States District Court for the District of Columbia, 456 F.Supp.2d 1,Leon, J., granted summary judgment for Sergeant at Arms, and employee appealed.

**Holdings:** The Court of Appeals, Kavanaugh, Circuit Judge, held that:
(1) on summary judgment in Title VII disparate-treatment case, existence of prima facie case is irrelevant if employer has proffered non-discriminatory reason for adverse action, and
(2) employer's proffered reason for demotion, that employee had violated employer's sex harassment policy, was not pretext for race discrimination.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ⇐1536**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1534 Presumptions, Inferences, and Burden of Proof
            78k1536 k. Effect of Prima Facie Case; Shifting Burden. Most Cited Cases

**Federal Civil Procedure 170A ⇐2497.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2497 Employees and Employment Discrimination, Actions Involving
                    170Ak2497.1 k. In General. Most Cited Cases

On motion for summary judgment or judgment as a matter of law in Title VII disparate-treatment employment discrimination action governed by *McDonnell Douglas* burden-shifting analysis, if employer has asserted legitimate, non-discriminatory reason for challenged decision, question whether employee actually made out prima facie case is no longer relevant; federal district court need not, and should not decide question, but rather needs to decide only whether employee has produced sufficient evidence that employer's proffered reason was not real reason and that prohibited intentional discrimination occurred. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[2] Civil Rights 78 ⇐1555**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1555 k. Questions of Law or Fact. Most Cited Cases

**Federal Civil Procedure 170A ⇐2497.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2497 Employees and Employment Discrimination, Actions Involving

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

520 F.3d 490
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815
**(Cite as: 520 F.3d 490)**

Page 2

170Ak2497.1 k. In General. Most Cited Cases
When determining whether summary judgment or judgment as a matter of law is warranted for employer in Title VII employment discrimination action, court considers all relevant evidence presented by employer and employee. Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a)(1).

**[3] Civil Rights 78 ⇐1137**

78 Civil Rights
   78II Employment Practices
      78k1137 k. Motive or Intent; Pretext. Most Cited Cases
Employer's proffered reason for demoting African-American supervisor, that he grabbed his crotch in front of employees thereby violating employer's sex harassment policy, was not pretext for race discrimination, regardless of whether incident had not actually occurred, as supervisor contended; employer honestly and reasonably believed that incident had occurred, given three employees' accounts of it, followed by thorough and independent investigation that confirmed its probability. Civil Rights Act of 1964, § 703(a), 42 U.S.C.A. § 2000e-2(a).

*491 Appeal from the United States District Court for the District of Columbia (No. 02cv00802).
Lenore C. Garon argued the cause for appellant. With her on the briefs were Joseph D. Gebhardt and Charles W. Day, Jr.
Victoria L. Botvin, Attorney, Office of House Employment Counsel, argued the cause for appellee. With her on the brief was Gloria J. Lett, Attorney, Office of House Employment Counsel.

Before: GINSBURG and KAVANAUGH, Circuit Judges, and EDWARDS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge KAVANAUGH.

KAVANAUGH, Circuit Judge:
Seeking to punish and deter sexual harassment, the U.S. House Office of the Sergeant at Arms demoted Brady, a supervisor within the office, because it concluded that Brady grabbed his crotch in front of three employees. Brady sued under federal anti-discrimination laws, contending that he was demoted because of his race. The District Court granted summary judgment to the Sergeant at Arms on the ground that Brady had not made out a prima facie case of racial discrimination. In the alternative, the District Court ruled that Brady failed to present evidence sufficient for a reasonable jury to find that the Sergeant at Arms' stated reason for demoting Brady was not the actual reason and that the Sergeant at Arms intentionally discriminated against Brady on account of his race. We affirm based on that *492 alternative ground. In doing so, we emphasize that the question whether the plaintiff in a disparate-treatment discrimination suit actually made out a prima facie case is almost always irrelevant when the district court considers an employer's motion for summary judgment or judgment as a matter of law. See *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 514-15, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714-16, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

I

Brady worked as an assistant shift supervisor in House Garages & Parking Security, an entity within the Office of the Sergeant at Arms of the U.S. House of Representatives. In early 2001, two employees-one man and one woman-accused Brady of improper behavior in the workplace. They alleged that Brady grabbed his crotch in front of the two of them and another female employee. After learning of the incident, House Sergeant at Arms Wilson Livingood asked two supervisors to investigate. In the ensuing internal investigation, the two accusers claimed that Brady grabbed his crotch while discussing his need to use the restroom. The other employee who was present initially refused to discuss the incident, saying she did not want to be involved. After being required to give a statement,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

she said that Brady did not "present any offensive actions towards [her]." Joint Appendix ("J.A.") 214. She explained that Brady had acted "in a very joking manner," but she did not deny that Brady had grabbed his crotch in the way described by the other two employees. *Id.*

The two investigating supervisors found that the crotch-grabbing incident had likely occurred and that Brady violated the office's sexual harassment policy. One supervisor recommended demoting Brady. The other recommended firing him. Sergeant at Arms Livingood then determined that Brady "might have done it jokingly, but ... even in a joking manner, it offended two of his employees." Livingood Deposition Transcript (Nov. 10, 2005), J.A. 92. Particularly because Brady was a supervisor, Livingood concluded that "some action needed to be taken." *Id.* Livingood demoted Brady but did not fire him.

Brady asked Livingood to reconsider his decision. Livingood agreed to do so and hired a Washington, D.C., law firm to investigate. The law firm reviewed documents produced during the original investigation and interviewed 13 current and former employees. The firm concluded that it was "likely that an incident occurred that was most accurately described" by Brady's two initial accusers. Relman Report (June 28, 2001), J.A. 199. After receiving the law firm's report, Livingood affirmed Brady's demotion.

Brady sued, alleging racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, a law that applies to offices in the Legislative Branch as a result of the Congressional Accountability Act, 2 U.S.C. §§ 1302(a), 1311(a). The District Court granted summary judgment to the Office of the Sergeant at Arms, finding that Brady failed to make out a prima facie case of racial discrimination because he could not show that a similarly situated employee outside his racial group was treated differently. *Brady v. Livingood*, 456 F.Supp.2d 1, 7-8 (D.D.C.2006). In the alternative, the District Court stated that "even if plaintiff were able to establish a prima facie case of discrimination, defendant's Motion for Summary Judgment would still be granted because defendant's personnel actions were in fact undertaken for legitimate, non-discriminatory reasons." *Id.* at 9 n. 9.

Brady appeals; our review of the summary judgment is de novo.

*493 II

Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin.

The District Court concluded that Brady had not made out a "prima facie case" under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[FN1] The court's focus on the prima facie case was not atypical: When resolving an employer's motion for summary judgment or judgment as a matter of law in employment discrimination cases, district courts often wrestle with the question whether the employee made out a prima facie case.

> FN1. In a refusal-to-hire or refusal-to-promote discrimination case, the *McDonnell Douglas* prima facie factors are that: (i) the employee "belongs to a racial minority" or other protected class; (ii) the employee "applied and was qualified for a job for which the employer was seeking applicants"; (iii) despite the employee's qualifications, the employee "was rejected"; and (iv) after the rejection, "the posi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

520 F.3d 490  
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815  
**(Cite as: 520 F.3d 490)**

tion remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In firing, demotion, or other adverse-action cases, the factors sometimes have been articulated as: (i) the employee belongs to a protected class; (ii) the employee was still qualified for the position; (iii) despite still being qualified, the employee was fired, demoted, or otherwise adversely acted upon; and (iv) if the employee was removed, either someone else filled the position or the employer sought other applicants. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Some of our decisions have allowed or required plaintiffs to present other evidence to satisfy the test and occasionally phrased the test more generally to require evidence that "the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999); *see also Czekalski v. Peters,* 475 F.3d 360, 364 (D.C.Cir.2007); *George v. Leavitt,* 407 F.3d 405, 412 (D.C.Cir.2005). Disagreement and uncertainty over the content, meaning, and purpose of the *McDonnell Douglas* prima facie factors have led to a plethora of problems; as we underscore today, however, the factors are usually irrelevant.

[1] But judicial inquiry into the prima facie case is usually misplaced. In the years since *McDonnell Douglas,* the Supreme Court's decisions have clarified that the question whether the employee made out a prima facie case is almost always irrelevant. At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510-11, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). And by the time the district court considers an employer's motion for summary judgment or judgment as a matter of law, the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision-for example, through a declaration, deposition, or other testimony from the employer's decisionmaker. That's important because once the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is "no longer relevant" and thus "disappear[s]" and "drops out of the picture." *494St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As the Supreme Court explained a generation ago in *Aikens:* "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (internal quotation marks omitted). The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings. *See Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 762 (D.C.Cir.2002); *Wells v. Colorado Dep't of Transp.,* 325 F.3d 1205, 1227-28 (10th Cir.2003) (Hartz, J., concurring); *see also Vickers v. Powell,* 493 F.3d 186, 195 (D.C.Cir.2007); *Holcomb v. Powell,* 433 F.3d 889, 896-97 (D.C.Cir.2006); *George v. Leavitt,* 407 F.3d 405, 411-12 (D.C.Cir.2005); *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc).

Much ink has been spilled regarding the proper contours of the prima-facie-case aspect of *McDonnell Douglas.* But as we read the Supreme Court precedents beginning with *Aikens,* the prima facie case is a largely unnecessary sideshow. It has not benefited employees or employers; nor has it simplified or expedited court proceedings. In fact, it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

520 F.3d 490
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815
**(Cite as: 520 F.3d 490)**

Page 5

has done exactly the opposite, spawning enormous confusion and wasting litigant and judicial resources.

Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not-*and should not*-decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas.* Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin? *See Hicks,* 509 U.S. at 507-08, 511, 113 S.Ct. 2742; *Aikens,* 460 U.S. at 714-16, 103 S.Ct. 1478.FN2

> FN2. For those rare situations where it still matters whether the employee made out a prima facie case-namely, those cases in which the defendant does not assert *any* legitimate, nondiscriminatory reason for the decision-establishing a prima face case is "not onerous." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). For example, to make out a prima facie case, a plaintiff need not demonstrate that he or she was treated differently from a similarly situated employee or that the position was filled by a person outside the plaintiff's group. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312-13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Wiley v. Glassman,* 511 F.3d 151, 156 (D.C.Cir.2007); *Czekalski,* 475 F.3d at 365-66; *Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 850-51 (D.C.Cir.2006); *Chappell-Johnson v. Powell,* 440 F.3d 484, 488 (D.C.Cir.2006); *George,* 407 F.3d at 412-13; *Teneyck v. Omni Shoreham Hotel,* 365 F.3d 1139, 1150-51 (D.C.Cir.2004); *Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 762-63 (D.C.Cir.2002); *Stella v. Mineta,* 284 F.3d 135, 145-46 (D.C.Cir.2002). Rather, such evidence (or the lack of such evidence) may be relevant to the determination at summary judgment or trial whether intentional discrimination occurred.

III

[2] In this case, the employer Sergeant at Arms asserted a legitimate, non-discriminatory*495 reason for the adverse employment action-namely, that Brady committed sexual harassment. Under *Aikens* and related Supreme Court precedents, the question whether Brady actually made out a prima facie case is therefore irrelevant. So we turn directly to the central issue: whether Brady produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against Brady based on his race. When determining whether summary judgment or judgment as a matter of law is warranted for the employer, the court considers all relevant evidence presented by the plaintiff and defendant. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148-49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Czekalski v. Peters,* 475 F.3d 360, 364 (D.C.Cir.2007); *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C.Cir.1998) (en banc).

The employer produced deposition testimony from its decisionmaker Livingood that Brady was demoted because he grabbed his crotch in front of three other employees. The employer submitted additional supporting evidence: that two employees saw and complained about the incident; that the initially reluctant third witness did not deny that Brady had grabbed his crotch; that the incident was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

520 F.3d 490
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815
**(Cite as: 520 F.3d 490)**

Page 6

thoroughly and independently investigated; and that Brady's actions violated the office's sexual harassment policy.

A plaintiff such as Brady may try in multiple ways to show that the employer's stated reason for the employment action was not the actual reason (in other words, was a pretext). Often, the employee attempts to produce evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances. *See* 1 LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 8.04, at 8-66 (2d ed. 2007) ("Probably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment."); 1 BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 73 (4th ed. 2007) ("In most cases the key to proving pretext is comparative evidence."). Alternatively, the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision. If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts. *See George v. Leavitt,* 407 F.3d 405, 415 (D.C.Cir.2005) ( "[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."); *Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (employer prevails if it "honestly believes in the reasons it offers"); 1 LARSON § 8.04, at 8-73 ("[A]n employer's action may be based on a good faith belief, even though the reason may turn out in retrospect to be mistaken or false.").FN3

> FN3. Employees often try to cast doubt on an employer's asserted reason in other ways as well, such as pointing to: changes and inconsistencies in the stated reasons for the adverse action; the employer's failure to follow established procedures or criteria; the employer's general treatment of minority employees; or discriminatory statements by the decisionmaker. *See* 1 LARSON § 8.04, at 8-74 to -75; 1 LINDEMANN & GROSSMAN at 89; 1 ABIGAIL COOLEY MODJESKA, EMPLOYMENT DISCRIMINATION LAW § 1.9, at 1-134 to -39 (3d ed.2007).

[3] Brady's only argument for discrediting the employer's asserted non-discriminatory*496 reason is his contention that the underlying sexual harassment incident never occurred; he raises the specter that the original accusers were racially motivated and made up the incident. Brady further says it's the jury's job to decide factual and credibility questions of this kind. But Brady misunderstands the relevant factual issue. The question is not whether the underlying sexual harassment incident occurred; rather, the issue is whether *the employer honestly and reasonably believed* that the underlying sexual harassment incident occurred. *See George,* 407 F.3d at 415; *Fischbach,* 86 F.3d at 1183. Brady himself acknowledges that Livingood believed the incident occurred. *See* Brady Deposition Transcript, J.A. 70 ("Q: Is it your understanding that Mr. Livingood believed that you grabbed yourself? A: Yes."). Although Brady asserts that the accusations and ensuing investigation were racially tainted and the incident did not occur, he did not produce evidence sufficient to show that the Sergeant at Arms' conclusion was dishonest or unreasonable. *Cf. Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 855-57 (D.C.Cir.2006). Therefore, summary judgment for the Sergeant at Arms was proper.FN4

> FN4. Even if Brady showed that the sexual harassment incident was not the actual reason for his demotion, he still would have to demonstrate that the actual reason was a racially discriminatory reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

520 F.3d 490
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815
(Cite as: 520 F.3d 490)

Page 7

502, 514, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Of course, discrediting an employer's asserted reason is often quite probative of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Allowing Brady to end-run summary judgment in these circumstances would create significant practical problems. Employers obviously have to resolve factual disagreements all the time in order to make employment decisions regarding hiring, promotion, discipline, demotion, firing, and the like. In many situations, employers must decide disputes based on credibility assessments, circumstantial evidence, and incomplete information. But Brady's argument would mean that every employee who is disciplined, demoted, or fired for alleged misconduct could sue for employment discrimination based on race, color, religion, sex, or national origin and-merely by denying the underlying allegation of misconduct-*automatically* obtain a jury trial. Brady cites no support for that proposition, which would wreak havoc on district courts' orderly resolution of employment discrimination cases and improperly put employers in a damned-if-you-do, damned-if-you-don't posture when addressing disciplinary issues in the workplace.

Brady also implies that the Office of the Sergeant at Arms overreacted and adopted a hair-trigger approach to the reported incident. But many employers today aggressively react to sexual harassment allegations; an employer does not engage in discrimination on the basis of *race* by strictly and uniformly enforcing a policy against any remote hint or suggestion of sexual harassment in the workplace. It is not the Judiciary's place to micro-manage an employer's sexual harassment policies when resolving a claim of racial discrimination. As the Supreme Court has stated, "[c]ourts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

In sum, the Office of the Sergeant at Arms produced evidence of a legitimate, non-discriminatory reason for Brady's demotion: that Brady engaged in sexual *497 harassment in the workplace in violation of office policy. Brady failed to put forward sufficient evidence for a reasonable jury to find that the employer's legitimate, non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against him on the basis of race.

\* \* \*

We affirm the judgment of the District Court granting summary judgment to the Office of the Sergeant at Arms.

*So ordered.*

C.A.D.C.,2008.
Brady v. Office of Sergeant at Arms
520 F.3d 490, 102 Fair Empl.Prac.Cas. (BNA) 1815

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Attachment 2



505 F.3d 1296                                                                                           Page 1
505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285
(Cite as: 505 F.3d 1296)

H United States Court of Appeals,
District of Columbia Circuit.
Harvey L. PATTERSON, Appellant
v.
Stephen L. JOHNSON, Administrator, United States Environmental Protection
Agency, Appellee.
No. 05-5415.

Argued Sept. 7, 2007.
Decided Oct. 30, 2007.
Rehearing En Banc Denied Jan. 18, 2008.

**Background:** African-American federal employee in supervisory position brought Title VII action against employer agency, alleging race discrimination and retaliation. The United States District Court for the District of Columbia, Ellen Huvelle, J., 391 F.Supp.2d 140, entered judgment for agency. Employee appealed.

**Holdings:** The Court of Appeals, Williams, Senior Circuit Judge, held that:
(1) alleged actions of employee's manager, if proven, did not constitute adverse employment actions, and
(2) agency's proffered reasons for transferring employee were not pretexts for retaliation.
Affirmed.

West Headnotes

[1] Civil Rights 1119
78k1119 Most Cited Cases
Liability for discrimination under Title VII requires an adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 1119
78k1119 Most Cited Cases
In a Title VII case where the gravamen of the complaint is interference with the employee's managerial prerogatives, the interference can qualify as an adverse employment action only if it tended to materially impair the employee's job performance or prospects for advancement. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights 1126
78k1126 Most Cited Cases

[3] Civil Rights 1135
78k1135 Most Cited Cases
Alleged actions of federal supervisory employee's manager, of detailing three of employee's 57 subordinates to other duties, failing to designate employee as acting director of certain office for one day, vetoing clerical staff hiring and then reversing veto two days later, and failing to refer theft case involving employee's subordinate for formal investigation, if proven, did not constitute adverse employment actions under Title VII, pursuant to theory that they interfered with employee's managerial prerogatives. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights 1251
78k1251 Most Cited Cases

[4] United States 36
393k36 Most Cited Cases
Federal agency's proffered reasons for transferring supervisory employee, namely that he had requested to be transferred away from manager with whom his relationship was beyond repair, and that transfer responded to congressional concerns and furthered new mobility program aimed at all of agency's senior executives, was not pretext for retaliation in violation of Title VII, in that deciding official was concerned with incessant quarreling rather than employee's discrimination claims, and, even if deciding official breached promise not to involuntarily reassign employee, such fact did not in itself indicate retaliation. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*1297 Appeal from the United States District Court for the District of Columbia (No. 02cv02213).

Ellen K. Renaud argued the cause for appellant. With her on the briefs was Richard L. Swick. David H. Shapiro entered an appearance.

Oliver W. McDaniel, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Jeffrey A. Taylor, U.S. Attorney, and R. Craig

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

505 F.3d 1296                                                                                                              Page 2
505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285
**(Cite as: 505 F.3d 1296)**

Lawrence, Assistant U.S. Attorney. Michael J. Ryan, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and BROWN, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge WILLIAMS.

WILLIAMS, Senior Circuit Judge:

Harvey L. Patterson claims that his immediate supervisor engaged in unlawful racial discrimination against him through her various interventions into Patterson's management of his division at the Environmental Protection Agency ("EPA"). He also claims that his later transfer to another position within the EPA amounted to unlawful retaliation directed against his filing and pursuit of a discrimination complaint before the EPA's Office of Civil Rights. The district court granted summary judgment for the defendant. We affirm.

\* \* \*

Beginning in 1998, Patterson, an African-American, served as Director of the Superfund/RCRA Regional Procurement Operations Division ("SRRPOD") and as a member of the EPA's Senior Executive Service ("SES"). SRRPOD is a division of the Office of Acquisition Management ("OAM"), which itself is within the Office of Administration and Resources Management ("OARM").

During the summer of 2000, Judy S. Davis, a Caucasian, became Patterson's immediate supervisor upon her promotion to Acting Director of OAM (a promotion made permanent the following year). Patterson alleges that trouble between him and Davis began almost immediately and that their relationship suffered from serious differences in management philosophy. The disparate treatment that Patterson alleges depends entirely on actions by Davis as his superior; those actions, and more broadly the interaction between him and Davis, also form the background for the allegedly retaliatory transfer. We address the allegations of disparate treatment first, then those of retaliation.

*Discrimination claims.* These need not detain us long. As a threshold matter, Patterson first contacted an EEO counselor on February 28, 2002. His claims that are based on alleged actions taken more than 45 days earlier were not properly exhausted, see 29 C.F.R. § 1614.105(a)(1); see also *Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C.Cir.2006), so summary judgment as to those claims was clearly correct.

Patterson's remaining discrimination claims rest on evidence that Davis: (1) vetoed his hiring of clerical staff on February 25, 2002, thus usurping what he believed to be his prerogative (although she reversed that decision two days later); (2) detailed two employees out of SRRPOD in February and March 2002; (3) hired an interviewee over his objection in March 2002, and then immediately detailed that new employee out of SRRPOD; (4) failed *1298 to appoint him as Acting Director for the day of March 8, 2002; and (5) intervened in and refused to take disciplinary action regarding a case of possible theft involving one of Patterson's subordinates.

[1][2] Liability for discrimination under Title VII requires an adverse employment action, *Brown v. Brody,* 199 F.3d 446, 452-55 (D.C.Cir.1999). For the mine run of cases, we've adopted Supreme Court language, formulated in a slightly different context, and held that such adversity requires " 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C.Cir.2003) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). This formulation doesn't seem quite apt for a case where the gravamen of the complaint is interference with the plaintiff's managerial prerogatives. Cf. *Ohal v. Bd. of Trs. of the Univ. of the Dist. of Columbia,* 100 Fed.Appx. 833, 834 (D.C.Cir.2004) (per curiam) (requiring "a *material* reduction of supervisory responsibilities" (emphasis added)). In such a case, we think the interference could qualify as an adverse employment action only if it tended to materially impair the plaintiff's job performance or prospects for advancement.

[3] Patterson provides no evidence that Davis's actions could have had any such effects. As SRRPOD Director he supervised approximately 57 employees; how the detail of just three of those subordinates to other duties might be materially adverse is not

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:05-cv-00969-HHK   Document 153   Filed 05/27/2008   Page 14 of 16

505 F.3d 1296
505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285
(Cite as: 505 F.3d 1296)

Page 3

apparent. Indeed, Patterson's official evaluations classed his management of SRRPOD as "outstanding," the highest of the five possible ratings. Joint Appendix ("J.A.") 634.

Likewise, there is no evidence that materially adverse consequences to Patterson's employment could have flowed from Davis's not designating him as Acting Director of OAM for a single day, see Taylor v. FDIC, 132 F.3d 753, 764-65 (D.C.Cir.1997), her veto of clerical staff hiring that she reversed just two days later, or her decision not to refer a theft case involving an SRRPOD employee for formal investigation. Patterson claims that these actions caused him to feel "undermin[ed]," J.A. 570, 577, but " 'purely subjective injuries,' such as ... loss of reputation, are not adverse actions." Holcomb v. Powell, 433 F.3d 889, 902 (D.C.Cir.2006); see also Forkkio v. Powell, 306 F.3d 1127, 1132 (D.C.Cir.2002) (holding that while "supervision" may have caused an employee "subjective injury," it did not "objectively harm his working conditions or future employment prospects").

*Retaliatory transfer.* This issue requires introduction of a new dramatis persona, Morris X. Winn, an African-American who was designated as Assistant Administrator for OARM in late 2001 and confirmed and appointed to that position in February 2002. Accession to this post made him the superior of both Davis and Patterson. Shortly after Winn's designation to lead OARM, Patterson arranged a meeting with him and discussed his difficulties working with Davis and his willingness to transfer to a comparable position within the EPA. Later, in December 2001, in one of the time-barred acts of alleged discrimination, Davis cancelled an approved leave of Patterson's so that he could attend a rescheduled OAM staff meeting. This precipitated another spat between Davis and Patterson, with Patterson then calling on Winn to intervene. Shortly thereafter, on January 4, 2002, Patterson sent Winn a draft EEO complaint in order "to give [Winn] a sense of some of what I have *1299 been dealing with for the last several years, and why I feel that the cost of repairing the relationship [with Davis] is far beyond what I'm willing to pay." J.A. 645.

At about this time Winn started to consider possible transfers for Patterson, and in February 2002 offered him a new position as his own Senior Advisor. Patterson declined that offer and asked to remain at SRRPOD unless the "other options" he had discussed with Winn became available. J.A. 644. Patterson recalled that Winn "offered several different positions" to him in early 2002, but that he declined each offer because he "did not think [they] were comparable [positions]." J.A. 147. As part of an agency exercise to shift SES employees to new positions within EPA, Patterson provided EPA's Office of Human Resources and Organizational Services with a list of five positions to which he would be willing to transfer. He was told that none of those positions was available.

On June 18, 2002, Patterson contacted Winn to inform him that "schisms in OAM are deepening and intensifying" and that absent some intervention "explosions may be close at hand." J.A. 659. The next day, Patterson forwarded Winn an e-mail chain in which Patterson and Davis argued over who would be named to a temporary detail assignment--a communication that Winn labeled "More of the same." J.A. 657. Soon thereafter, Winn proposed to Patterson that he be transferred to a new position-- Associate Director for Competition and Strategic Planning--that EPA was establishing within OARM's Office of Grants and Debarment. Patterson declined the offer, but Winn decided to transfer Patterson over his objection. When Winn signed paperwork creating the new position on July 3, 2002, he listed Patterson as the employee who would fill the position. Later that month, Winn formally requested Patterson's transfer and made it effective on August 1, 2002. Patterson alleges that this transfer constituted unlawful retaliation for the filing and pursuit of his EEO complaint. See 42 U.S.C. § 2000e-3(a).

We assume in Patterson's favor that the evidence made out a prima facie case of retaliation. Thus we assume that the temporal proximity of Patterson's discrimination complaint and transfer could support a jury's finding of a causal link, see Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C.Cir.1985); Winn received official notice of Patterson's formal complaint the day before he formally created the new position for Patterson, though he had long been aware of Patterson's discrimination complaint against Davis and had long contemplated a change in Patterson's position. And we assume that the sharp reduction in supervisory responsibilities associated with the transfer--Patterson had 57 subordinates in the old

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:05-cv-00969-HHK   Document 153   Filed 05/27/2008   Page 15 of 16

505 F.3d 1296                                                                                                                Page 4
505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285
**(Cite as: 505 F.3d 1296)**

position, but none in the new (at least at the outset)-- could support a jury's finding that such a transfer **"could well dissuade a reasonable worker from making or supporting a charge of discrimination."** *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2409, 165 L.Ed.2d 345 (2006); see also *id.* at 2415; cf. *Czekalski v. Peters,* 475 F.3d 360, 364-65 (D.C.Cir.2007).

[4] The remaining question is whether, in light of the justifications offered by the EPA, a reasonable jury could infer from Patterson's prima facie case and any other evidence that the transfer was a response to Patterson's protected activity rather than a result of the legitimate, nondiscriminatory reasons proffered by the EPA. See *Broderick,* 437 F.3d at 1231-32.

The EPA argues that Winn transferred Patterson because he had requested to be transferred away from a supervisor *1300 with whom his relationship was admittedly beyond repair, and that the transfer responded to insistent congressional concerns and furthered a new mobility program aimed at all of the EPA's senior executives. Indeed, at their very first meeting, Patterson had asked Winn to transfer him out of OAM (and thus away from Davis's supervision) and into a comparable position elsewhere in OARM. Weeks after Patterson informed Winn of his draft EEO complaint, Winn had asked Patterson to serve as his own Senior Advisor, but Patterson declined that offer. Moreover, the position to which Winn ultimately transferred Patterson was important to the EPA. Members of Congress had long been concerned that EPA issued too few of its grants on a competitive basis, and at the time of the transfer they were demanding that EPA establish a "competition advocate" who would implement grant-making reforms then undertaken mainly on paper. Winn believed that Patterson's experience with procurement contracts made him uniquely qualified for the task. Finally, Winn also claimed that Patterson's transfer request provided him with an opportunity to further the EPA's new "SES Mobility Program," through which officials expected to transfer at least one third of senior executives as a means to counteract SES members' having become "entrenched" in their particular positions in the EPA. For all of those reasons, Winn believed that transferring Patterson--even over Patterson's objection--was in the best interests of the EPA. See 5 U.S.C. § 3131 ("The Senior Executive Service shall be administered so as to ... enable the head of an agency to reassign senior executives to best accomplish the agency's mission.").

To rebut EPA's justifications, Patterson raises two arguments. First, Patterson interprets Winn's expressions of irritation at the ongoing bickering between him and Davis as indicating hostility to Patterson's statutorily protected complaints of discrimination. Second, he notes his own deposition testimony recounting that Winn and other EPA officials "said that no one would be moved involuntarily" and that "[t]here would be no forced moves." J.A. 145. We will assume for the purposes of summary judgment that even a transfer precipitated by an employee's own request, but to a position not of his choosing, breached those assurances.

As to the first, it seems clear that Winn's problem was not with discrimination claims but with incessant quarreling. For months, Patterson had informed Winn of his complaints against Davis and his desire to transfer out of OAM. Indeed, Patterson provided Winn with a draft of his EEO complaint six months before the transfer, and there is no evidence that Winn objected to Patterson's filing that complaint. Instead, Winn merely expressed exasperation with his squabbling subordinates: on receiving a chain of disputatious e-mails between Davis and Patterson, seemingly calling on him to referee the fight, he forwarded it to his deputy, noting "More of the same." J.A. 657-58. Having reached his "upset quotient," he asked the deputy to "make sure this thing gets fixed. I'm spending too much of my time reading e-mails." J.A. 224. The e-mail wrangling had no racial element on its face, and Winn's express reaction shows no more than that he found it a diversion from more pressing duties.

As to the allegation that Winn broke a promise in reassigning Patterson to a post not of Patterson's choice, any such breach of promise is not in itself evidence of retaliation. Patterson doesn't argue, much less submit evidence, that promise-breaking and retaliation are correlated in such a way that one is a sign of the other. It is *1301 not enough for plaintiff to show that Winn's decision was "not just, or fair," see *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994)); he must show that it was retaliatory.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

505 F.3d 1296 Page 5
505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285
**(Cite as: 505 F.3d 1296)**

Although Patterson offers evidence that Winn's only other transfer under the SES mobility program moved an employee to a position of that employee's choice, the sample size is far too small to be meaningful, and Patterson concedes that SES mobility transfers by other managers were sometimes to positions the transferees did not desire. Cf. *id.* (finding no inference of pretext to be drawn from a "departure from the prescribed procedure [that] had become the norm").

Accordingly, the judgment of the district court is *Affirmed*.

505 F.3d 1296, 101 Fair Empl.Prac.Cas. (BNA) 1597, 90 Empl. Prac. Dec. P 42,997, 378 U.S.App.D.C. 285

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.